SETH P. CHAZIN (CSBN 133777)
Attorney at Law
1164 Solano Avenue
Albany, CA 94706
Telephone: (510) 507-8100
Facsimile: (510) 525-0087

Attorney for Defendant
RODIL NOCHEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RODIL NOCHEZ, et al.<br><br>　　　　　　　Defendant. | No. CR-08-0730 WHA<br><br>NOTICE OF MOTION AND MOTION FOR ORDER FOR INSPECTION AND COPYING OF GRAND JURY RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES [SUPPORTING DECLARATION AND EXHIBITS FILED SEPARATELY]<br><br>Date: August, 18, 2009<br>Time: 1:00 p.m.<br>Judge: William H. Alsup |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES OF AMERICA AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that on August 18, 2009 at 1:00 p.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable William H. Alsup of the above-entitled court, defendant Rodil Nochez, on behalf of all defendants in this matter, will and hereby does move this Court for an order allowing the defendants to inspect and copy grand jury records pertaining to this case

1 as more particularly set forth in the attached Memorandum of Points and Authorities.

2     This Motion is based on the instant Notice of Motion and Motion, the Fifth and Sixth Amendment(s) to the Constitution of the United States, the attached Memorandum of Points and Authorities, the Declarations and Exhibits attached hereto, the files and records in the case, and any and all other matters that may come to the Court's attention prior to or during the hearing of this Motion.

**DATED: July 8, 2009**                                 **Respectfully submitted,**

                                                                                      /s/
                                             **SETH P. CHAZIN**
                                             **Attorney for Defendant**
                                             **RODIL NOCHEZ**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. STATEMENT OF THE CASE

The Second Superseding Indictment was filed in this Court on January 29, 2009.  It charges a total of 31 persons with a total of 53 substantive counts.  The charges have been described in detail elsewhere and are not pertinent to this motion.

The matter has been set for trial on May 10, 2010.

## 2. INTRODUCTION TO ARGUMENTS SUPPORTING MOTION

The defendants in this case are preparing a motion challenging the District's jury selection procedures.  The defendants are beginning their examination of jury issues early on, reviewing available information on the operation of this Court's jury services.  There is a history of jury litigation in the Northern District, of which the defendants are aware, which includes *United States v. Layton*, 519 F.Supp. 946 (N.D. Cal. 1981); *see also* Order Granting In Part and Denying In Part Defendants' Motion for Discovery Pursuant to Defendants' Motion to Dismiss in *United States v. Walder Rausini*, CR-95-0319SI, filed April 29, 1999.  This, as far as the defense is aware, is one of the few inquiries into the Court's jury selection processes since the end of the last Census decade (2000).

In another Northern District case, *U.S. v. Rubalcaba*, et al, CR-00-0654 CRB (the so-called 'Nuestra Familia' case), the defense filed a motion for discovery of jury records on August 28, 2002.  An agreement between the Government and defense eventually allowed the release of a number of jury records, some of which were reviewed by demographer Dr. John Weeks, who has been involved in research pertinent to numerous jury challenges.

The research in the *Rubalcaba* case was followed by research in two subsequently filed potential capital cases in the San Jose Division of the Court, including *U.S. v. Duong*, CR 01-20154 JF.  Some of the pertinent field work was done through consultation with Dr. Weeks, and at least one other demographer was asked to review pertinent data in another capital case defended by the Federal Defender is this District.

Thus, there has been on-going research in this District into the representativeness of

the jury pool since Census 2000.

Here, the case law on which the defense relies interprets a statutory scheme that provides the accused the ability to move to dismiss an indictment, or stay proceedings, on the ground of a substantial failure to comply with provisions of the Jury Selection Act.  The defendants in this case were indicted near the end of a Census decade, and have the benefit of published census data which demonstrates the extent to which the composition of the District has significantly changed since the *Layton* and *Rausini* cases. The defendants here rely on 28 U.S.C. § 1867, and relevant case law, to bring this motion.

### 3. DISCUSSION

**A. The law clearly supports granting discovery of records and papers pertinent to the Court's jury composition**

The Jury Selection Act provides that: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.  On its face, the Jury Selection Act provides that "before the voir dire examination begins...the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of a substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury." *Id*. at § 1867(a).

In *Test v. United States*, 420 U.S. 28, 30 (1975),  the United States Supreme Court stated that section 1867(f) provides that:
> . . . A litigant has essentially an unqualified right to inspect jury lists . . . indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge.

The court added that the only limitation authorized by Congress on the disclosure of this information is that it must be made at reasonable times.  *Id*. at 30, fn. 4.  To avail him or herself of the right to access of otherwise protected jury records, ". . . a litigant needs only allege that he [or she] is preparing a motion challenging jury selection procedures." *United States v. Layton*, 519 F.Supp. 946, 958; *see also*, *Test v. United States*, *supra*, 420 U.S. at 30.

A defendant is entitled to inspect and copy jury records in order to perfect and make his motion

to stay or dismiss under section 1867(a), and to comply with section 1867(b), which requires that a sworn statement of facts accompany a motion to dismiss. *See People of the Territory of Guam v. Palomo*, 511 F.2d 255, 258 (9th Cir. 1975). As noted, however, "[t]o avail himself of the right of access to jury selection records, a litigant need only allege that he is preparing a motion to challenge the jury selection process." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996), relying in part on *United States v. Alden*, 776 F.2d 771 at 773.

The defendants are doing just that. The nature of the prima facie case made in order to secure an order for inspection of jury records is not critical, because the accused have the unqualified right to inspection under *Test*.

The court in *Government of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979) noted that it does not matter whether any accompanying affidavit ". . . established a prima facie case of defective jury selection . . . [because] a defendant is denied access to the very materials containing the information necessary to the filing of a motion to dismiss for defective jury selection [where the right to unqualified inspection is not respected]." *See also United States v. Orlando-Figueroa*, 229 F.3d 33, 42, (1st Cir. 2000) (stating that only a formal motion challenging the composition of a jury selection process must be supported by a sworn statement and "not a request to examine the jury selection records"). *See also United States v. Alden*, 776 F.2d 771, 773 (8th Cir. 1985); *accord United States v. Beaty*, 465 F.2d 1376, 1379-80 (9th Cir. 1972) (reversing the District Court's denial of inspection of jury records because the motion was not supported by a sworn statement of facts showing a probability of merit of the proposed jury challenge, and rejecting a contention that the granting of such a motion would "create serious security problems").

**B. Based on the pertinent law and prior decisions of this Court, the defense should be provided access to: (a) the manual of procedures used by the clerk to compile the master and qualify jury wheels; (b) the names on the 2008 and 2009 qualified jury wheels; (c) any other statistical compilations compared by the clerk's office concerning the makeup of the jury pool from which the grand jury that indicted the defendants was drawn.**

In *United States v. Beaty*, *supra*, a District Court's order denying access to jury records was reversed. 465 F.2d at 1379-82. While this court has discretion to "fashion" the manner of inspection of current jury records, an accused can review old records specific to the composition of a master jury

1 wheel (or master list), as well as the contents of records or papers used in connection with the jury
2 selection process. *Id*. at 1381-82. The unqualified right to inspection covers not only matters covered
3 by section 1867, but also matters comprehended within the statutes' overall purpose. *Alden*, *supra*, 776
4 F.2d at 773.

5      A motion challenging a jury selection system, or the composition of a past Grand Jury, is
6 focused on the manner by which such juries are composed – as well as their actual composition. A
7 claim that either Grand or Petit Juries are not properly selected at random from a fair cross section of
8 the community, as required by the Sixth Amendment, violates specific case law, as well as the pertinent
9 statutory scheme. *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1975); *United States v. Rodriguez-Lara*,
10 421 F. 3d 932, 941-43 (9th Cir., 2005). *See also* 28 U.S.C. §§ 1861, et seq. [Jury Selection and Service
11 Act of 1968]. This state of affairs was recognized by subsequent case law, including the seminal *Test*
12 case, *supra*.

13      Admittedly, this Court may be guided by actions previously taken. As noted in the supporting
14 declaration of counsel, whenever jury records have been sought recently, some of the disclosures sought
15 by the defense here were granted. This was the case both in *Rausini*, CR-95-0319 SI, and in
16 *Rubalcaba*, CR 00-0654.

17      While this Motion does not specifically incorporate any attempt at a prima facie showing of a
18 violation of the fair cross section requirement in this case, it can easily be demonstrated to the Court
19 that the demographic composition of the Bay Area, and indeed, the composition of jury eligibles within
20 the Northern District have changed since the 1990 Census.[1]

21      There has been significant growth, and shifting of population profiles in the Northern District of
22 California. As is true of California generally, the Northern District of California became increasingly
23 ethnically diverse in the ten years between 1990 and 2000. There have been significant changes in the
24 populations of cognizable groups, including large growths in Bay Area Asian and Hispanic (including
25 Spanish surname origin) communities. While the defense need not make a prima facie showing at this
26 point, it proffers the supporting exhibits to provide the Court with at least some basic information about

27 ---
28 [1] See Exhibit A, Media Summaries of Census Data

6

the population shift in the Northern District. Demographers point out that Census 2000 was conducted in such a way as to make it easier than it has been in the past to assess exactly which population groups in a given geography have increased, or decreased. The demographic situation in the Northern District has changed measurably, and significantly, since the last serious inquiries into the operation of the Court's jury selection system.[2]

The showing available here is similar to that considered in *United States v. Rodriguez-Lara*, *supra*, 491 F. 3d 932. There the demographic basis of the available jury challenge was the change from the 1990s into the new Census 2000 decade in the Eastern District's population of what the Court termed "eligible Hispanics." The challenge in that case was being researched beginning in 2003. *Id.* at 937-38. The District Court was found to have erroneously denied the defense the appointment of an expert in demography based on a showing made in part from Census figures (as is the case here) and the Court's JS-12s (records which provide some juror demographics and utilization data). *Id*. at 944-45. JS-12s are among the records sought here.

**C. The defendants also have the right to inspect the master jury wheel record and related records if any deficiencies in the current jury selection process are established which demonstrate the likelihood of a substantial failure to currently comply with the provisions of 28 U.S.C. 1867.**

The defendants in this case are entitled to review jury records, including current jury composition records, to assess whether a deficiency in the system can be shown and to ensure that any Petit Juries involved in this case are selected at random from a fair cross section of the community, as required by the Sixth Amendment. *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1975); *Test v. United States*, *supra*; *see also* 28 U.S.C. §§ 1861, et seq. [Jury Selection and Service Act of 1968]. The right to inspect the jury records derives from the accused's constitutional right to an impartial jury of his

---

[2] While the defense fully realizes that the information submitted on this point is conclusory, the Court may wish to review Exhibit A, which includes an excerpt from the publication of some early post-Census 2000 figures concerning Hispanic demographic composition. Exhibit A also includes some demographic information about California and the nation from 1990 to 2007, showing changes in population, and includes a March 2, 2006 release from 2006 release from the State of California summarizing the population changes. The defense in this case anticipates presenting the Court with detailed Census figures, adjusted for jury eligibles, at the pertinent time. The information provided here is attached simply to offer documentation of an obvious point --- the *Rausini*, et al. order was issued prior to the publication of the result of Census 2000.

7

peers.

**D. Insofar as the government may seek death in the case of some of the defendants, the Fifth, Sixth and Eighth Amendments require a heightened propriety of all jury procedures.**

The Government may seek death against one or more of the defendants . For some time, the "fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (citations omitted). It is well established that when the accused's life is at stake, a court must be, "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). As observed in one Circuit, the "importance of non-discriminatory jury composition is magnified in capital cases, where juries are required to consider as a mitigating factor, any aspect of the defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Gibson v. Zant*, 705 F.2d 1543, 1546 (11th Cir. 1983). Since in a death penalty case, the jury bears the responsibility of deciding whether to impose death, it is required to do ". . . nothing less . . . than express the conscious of the community." *Witherspoon v. Illinois*, 391 U.S. 510, 519 (1968). For understandable reasons, the death-eligible defendants, and indeed all of the defendants in this case, have an interest in the constitutionally reliable, and valid, operation of the jury system.

This is especially true in the aftermath of the decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which provides that jurors must engage in all the fact finding functions necessary for the imposition of death, a decision compelled by *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). *Ring* holds that the Sixth Amendment right to trial by jury applies to the "factfinding necessary to put [the accused] to death." 536 U.S. at 609. The importance of jury composition to the "guarantees of jury trial" was discussed in *Duncan v. Louisiana*, 391 U.S. 145 (1968), a case relied upon in *Ring*, *supra*.

While it does not appear either in the pertinent statute or case law that the level of "unqualified" right to inspect and copy jury records increases with the severity of punishment, the plain meaning of many cases interpreting the Eighth Amendment's command in death penalty cases is clear: courts must

do what is reasonably necessary to achieve the reliability required for the imposition of death.

## CONCLUSION

For the reasons set forth here, Mr. Nochez, on behalf of all defendants, respectfully submits that this Motion for Inspection and Copying of Jury Records should be granted, and that to date, reasonable efforts for informal access to these records have been made, and that the requested order should issue.

                                                       /s/
                                        SETH P. CHAZIN
                                        Attorney for Defendant
                                        RODIL NOCHEZ