UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<span style="color:red">**ORIGINAL**</span>

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | PAGES 1 – 100 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. CR 08-00730WHA |
| | ) | |
| IVAN CERNA, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | WEDNESDAY, JUNE 24, 2009 |



**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:          JOSEPH P. RUSSONIELLO, ESQ.
                        UNITED STATES ATTORNEY
                        450 GOLDEN GATE AVENUE
                        SAN FRANCISCO, CALIFORNIA  94102
                   BY:  WAI SHUN WILSON LEUNG,
                        ASSISTANT UNITED STATES ATTORNEY

                        UNITED STATES DEPARTMENT OF JUSTICE
                        950 PENNSYLVANIA AVENUE NW
                        WASHINGTON, D.C.  20530
                   BY:  THERYN G. GIBBONS, TRIAL ATTORNEY


FOR DEFENDANT          SUGARMAN & CANNON
IVAN CERNA:            44 MONTGOMERY STREET, SUITE 2080
                       SAN FRANCISCO, CALIFORNIA  94104
                   BY: CHRISTOPHER J. CANNON, ATTORNEY AT LAW


REPORTED BY:           RAYNEE H. MERCADO
                       CSR. NO. 8258

```
 1                    A P P E A R A N C E S  (CONT'D.)

 2

 3    FOR DEFENDANT            BADAMI & LEONIDA
      MARVIN CARCAMO:          510 7TH STREET
 4                             SAN FRANCISCO, CALIFORNIA  94103
                          BY:  ELLEN V. LEONIDA, ATTORNEY AT LAW
 5

 6    FOR DEFENDANT            LAW OFFICES OF HARRIS B. TABACK
      ANGEL GUEVARA:           345 FRANKLIN STREET, SUITE 102
 7                             SAN FRANCISCO, CALIFORNIA  94102
                          BY:  HARRIS B. TABACK, ATTORNEY AT LAW
 8

 9    FOR DEFENDANT            MARK ROSENBUSH, ATTORNEY AT LAW
      MORIS FLORES:            214 DUBOCE AVENUE
10                             SAN FRANCISCO, CALIFORNIA  94103

11

12    FOR DEFENDANT            LAW OFFICES OF MARTIN SABELLI
      GUILLERMO HERRERA:       500 LIBERTY STREET
13                             SAN FRANCISCO, CALIFORNIA  94114
                          BY:  MARTIN A. SABELLI, ATTORNEY AT LAW
14

15    FOR DEFENDANT            SWANSON, MC NAMARA & HALLER, LLP
      JONATHAN CRUZ-RAMIREZ:   300 MONTGOMERY STREET, SUITE 1100
16                             SAN FRANCISCO, CALIFORNIA  94104
                          BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
17

18    FOR DEFENDANT            LAW OFFICES OF MARTIN SABELLI
      WALTER CRUZ-ZAVALA:      500 LIBERTY STREET
19                             SAN FRANCISCO, CALIFORNIA  94114
                          BY:  MARTIN A. SABELLI, ATTORNEY AT LAW
20

21    FOR DEFENDANT            MARK GOLDROSEN, ATTORNEY AT LAW
      WALTER PALMA:            255 KANSAS STREET, SUITE 340
22                             SAN FRANCISCO, CALIFORNIA  94103

23

24

25
```

```
 1                    A P P E A R A N C E S  (CONT'D.)

 2

 3   FOR DEFENDANT            BERMAN, GLENN & HAIGHT
     DANIEL PORTILLO:         THE HEARST BUILDING, SUITE 1100
 4                            THIRD & MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94103
 5                       BY:  HOWARD J. BERMAN, ATTORNEY AT LAW

 6   FOR DEFENDANT            LAW OFFICE OF PETER GOODMAN
     ERICK LOPEZ:             400 MONTGOMERY STREET, SECOND FLOOR
 7                            SAN FRANCISCO, CALIFORNIA  94104
                         BY:  PETER GOODMAN, ATTORNEY AT LAW
 8

 9   FOR DEFENDANT CARLOS     JAMES P. VAUGHNS, ATTORNEY AT LAW
     GARRIDO:                 6114 LASALLE AVENUE, SUITE 289
10                            OAKLAND, CALIFORNIA  94611

11   FOR DEFENDANT WALTER     SWANSON, MC NAMARA & HALLER, LLP
     CHINCILLA-LINAR:         300 MONTGOMERY STREET, SUITE 1100
12                            SAN FRANCISCO, CALIFORNIA  94104
                         BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
13

14   FOR DEFENDANT            MARK GOLDROSEN, ATTORNEY AT LAW
     CESAR ALVARADO:          255 KANSAS STREET, SUITE 340
15                            SAN FRANCISCO, CALIFORNIA  94103

16

17   FOR DEFENDANT            LAW OFFICE OF ERIK G. BABCOCK
     DOUGLAS LARGAESPADA:     1212 BROADWAY, SUITE 726
18                            OAKLAND, CALIFORNIA  94612
                         BY:  ERIK G. BABCOCK, ATTORNEY AT LAW
19

20   FOR DEFENDANT            LAW OFFICE OF FRANK BELL
     WILBERT CASTILLO:        333 BRADFORD STREET, SUITE 270
21                            REDWOOD CITY, CALIFORNIA  94063
                         BY:  FRANK O. BELL, ATTORNEY AT LAW
22

23   FOR DEFENDANT            LAW OFFICE OF BRIAN BERSON
     MELVIN MALDONADO:        235 MONTGOMERY STREET, SUITE 625
24                            SAN FRANCISCO, CALIFORNIA  94104
                         BY:  BRIAN P. BERSON, ATTORNEY AT LAW
25
```

```
1                    A P P E A R A N C E S  (CONT'D.)

2

3    FOR DEFENDANT            LAW OFFICES OF GERI LYNN GREEN, LC
     MANUEL FRANCO:          155 MONTGOMERY STREET, SUITE 901
4                             SAN FRANCISCO, CALIFORNIA  94104
                        BY:  JOSEPH NOBLE, ATTORNEY AT LAW
5

6    FOR DEFENDANT            IAN G. LOVESETH, ATTORNEY AT LAW
     RODRIGO MOLINA:          810 EDDY STREET
7                             SAN FRANCISCO, CALIFORNIA  94109

8

9    FOR DEFENDANT            LAW OFFICES OF BRENDAN P. CONROY
     MAURICIO URIAS:          255 KANSAS STREET, SUITE 340
10                            SAN FRANCISCO, CALIFORNIA  94103
                        BY:  BRENDAN P. CONROY, ATTORNEY AT LAW
11

12   FOR DEFENDANT            COLEMAN & BALOGH
     JUDITH SOSA:             225 BUSH STREET, SUITE 1600
13                            SAN FRANCISCO, CALIFORNIA  94104
                        BY:  ETHAN A. BALOGH, ATTORNEY AT LAW
14

15   FOR DEFENDANT            LAW OFFICE OF JOHN M. RUNFOLA
     JOHN LACSAMANA BRIEZ:    PIER 9, SUITE 100
16                            SAN FRANCISCO, CALIFORNIA  94111
                        BY:  JOHN M. RUNFOLA, ATTORNEY AT LAW
17

18   FOR DEFENDANT            SETH CHAZIN, ATTORNEY AT LAW
     ARISTIDES CARCAMO:       1164 SOLANO AVENUE
19                            ALBANY, CALIFORNIA  94706

20

21   FOR DEFENDANT            SWANSON, MC NAMARA & HALLER, LLP
     RAFAEL MONTOYA:          300 MONTGOMERY STREET, SUITE 1100
22                            SAN FRANCISCO, CALIFORNIA  94104
                        BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
23

24

25
```

```
1                  A P P E A R A N C E S (CONT'D.)

2

3   FOR DEFENDANT:        LAW OFFICES OF GEORGE C. BOISSEAU
    RENE MONTES-MAYORGA:  740 4TH STREET, SECOND FLOOR
4                         SANTA ROSA, CALIFORNIA  95404
                      BY: GEORGE C. BOISSEAU, ATTORNEY AT LAW
5

6   FOR DEFENDANT         SETH CHAZIN, ATTORNEY AT LAW
    RODIL NOCHEZ:         1164 SOLANO AVENUE
7                         ALBANY, CALIFORNIA  94706

8

9   FOR DEFENDANT         SETH CHAZIN, ATTORNEY AT LAW
    DANIEL GONZALEZ:      1164 SOLANO AVENUE
10                        ALBANY, CALIFORNIA  94706

11

12  FOR DEFENDANT         SETH CHAZIN, ATTORNEY AT LAW
    MARLON LUMANG:        1164 SOLANO AVENUE
13                        ALBANY, CALIFORNIA  94706

14

15  FOR SAN FRANCISCO     SAN FRANCISCO POLICE DEPARTMENT
    POLICE DEPARTMENT:    THOMAS J. CAHILL HALL OF JUSTICE
16                        850 BRYANT STREET, SUITE 545
                          SAN FRANCISCO, CALIFORNIA  94103
17                    BY: RONNIE M. WAGNER, LEGAL COUNSEL

18

19                        --OOO--

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | WEDNESDAY, JUNE 24, 2009                                    1:22 P.M. |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  UNITED STATES OF AMERICA VERSUS IVAN |
| 4 | CERNA, MARVIN CARCAMO, ANGEL GUEVARA, MORIS FLORES, GUILLERMO |
| 5 | HERRERA, JONATHAN CRUZ-RAMIREZ, WALTER CRUZ-ZAVALA, WALTER |
| 6 | PALMA, DANIEL PORTILLO, ERICK LOPEZ, CARLOS GARRIDO, WALTER |
| 7 | CHINCHILLA-LINAR, CESAR ALVARADO, DOUGLAS LARGAESPADA, WILBERT |
| 8 | CASTILLO, MELVIN MALDONADO, MANUEL FRANCO, RODRIGO MOLINA, |
| 9 | MAURICIO URIAS, JUDITH SOSA, JOHN BRIEZ, ARISTIDES CARCAMO, |
| 10 | RAFAEL MONTOYA, RENE MONTES-MAYORGA, RODIL NOCHEZ, DANIEL |
| 11 | GONZALEZ, AND MARLON LUMANG. |
| 12 | COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE |
| 13 | RECORD. |
| 14 | **MR. LEUNG:**  WILSON LEUNG FOR THE -- |
| 15 | **INTERPRETER CLAUS:**  I'M SORRY.  I WANTED TO WAIT FOR |
| 16 | A PROPER MOMENT. |
| 17 | WE'RE ADJUSTING ONE OF THE RECEIVERS.  IF I COULD |
| 18 | JUST HAVE ONE SEC. |
| 19 | **THE COURT:**  OF COURSE. |
| 20 | (OFF-THE-RECORD DISCUSSION.) |
| 21 | **INTERPRETER CLAUS:**  YOUR HONOR, WE TESTED ALL OF |
| 22 | THESE. |
| 23 | **THE COURT:**  TAKE YOUR TIME.  LET'S GET IT WORKING. |
| 24 | (OFF-THE-RECORD DISCUSSION.) |
| 25 | **THE COURT:**  WILL CHANGING BATTERY ON THE TRANSMITTER |

1    WORK?

2              **INTERPRETER CLAUS:**  YOUR HONOR, WE HAD FRESH

3    BATTERIES ON ALL OF THEM AS OF THIS MORNING.  BUT WE MAY HAVE

4    TO DO SOMETHING ELSE.

5                   (OFF-THE-RECORD DISCUSSION.)

6              **INTERPRETER CLAUS:**  SHOULD BE ALL SET, YOUR HONOR.

7              **THE COURT:**  ALL RIGHT.  PLEASE HAVE OUR APPEARANCES.

8              WE'VE HEARD FROM MR. LEUNG.

9              **MR. LEUNG:**  YOUR HONOR, WILSON LEUNG FOR THE

10   GOVERNMENT.  WITH ME AT COUNSEL TABLE ARE THERYN GIBBONS FROM

11   THE U.S. DEPARTMENT OF JUSTICE GANG UNIT AND SPECIAL AGENT BEN

12   HORTON FROM IMMIGRATION CUSTOMS ENFORCEMENT.

13              GOOD AFTERNOON, YOUR HONOR.

14              **MS. WAGNER:**  RONI WAGNER FOR THE SAN FRANCISCO

15   POLICE DEPARTMENT.

16              **THE COURT:**  OKAY.

17              **MR. BABCOCK:**  THE COURT WANT TO HEAR FROM EVERYBODY?

18              **THE COURT:**  WELL, ARE YOU GOING TO APPEAR FOR

19   EVERYONE?

20              **MR. BABCOCK:**  NO, I'M GOING TO APPEAR FOR

21   MR. LARGAESPADA.  ERIK BABCOCK FOR DOUGLAS LARGAESPADA.

22              **THE COURT:**  ALL RIGHT.  THEN?

23              **MR. BALOGH:**  GOOD AFTERNOON, YOUR HONOR, ETHAN

24   BALOGH ON BEHALF OF JUDITH SOSA.  SHE'S PRESENT OUT OF CUSTODY.

25              **MR. GOLDROSEN:**  GOOD AFTERNOON, YOUR HONOR.  MARK

1    GOLDROSEN APPEARING FOR CESAR ALVARADO, WHO'S PRESENT IN

2    CUSTODY.  I'M SPECIALLY APPEARING FOR TONY BRASS, WHO'S COUNSEL

3    FOR WALTER PALMA, ALSO PRESENT IN CUSTODY.

4              **THE COURT:**  JUST A SECOND.  WAIT A MINUTE.

5              I GOT -- TONY BRASS.  THERE HE IS, OKAY.  I GOT IT.

6              **MR. TABACK:**  GOOD AFTERNOON, YOUR HONOR.  HARRIS

7    TABACK FOR ANGEL GUEVARA, WHO'S PRESENT AND IN CUSTODY.

8              **THE COURT:**  UM-HMM.

9              **MR. BELL:**  GOOD AFTERNOON, YOUR HONOR.  FRANK BELL

10   ON BEHALF OF WILBERT CASTILLO.  THAT'S DEFENDANT NO. 17.  HE IS

11   PRESENT IN CUSTODY ASSISTED BY A SPANISH-SPEAKING INTERPRETER.

12             **THE COURT:**  GOOD.

13             **MR. RUNFOLA:**  GOOD AFTERNOON, YOUR HONOR.  JOHN

14   RUNFOLA FOR JOHN BRIEZ.  HE'S IN CUSTODY.

15             **THE COURT:**  OKAY.  THANK YOU.

16             **MR. VAUGHNS:**  AFTERNOON, YOUR HONOR, PHIL VAUGHNS ON

17   BEHALF OF CARLOS GARRIDO, WHO'S PRESENT IN CUSTODY.

18             **MR. CHAZIN:**  I'M SETH CHAZIN APPEARING WITH RODIL

19   NOCHEZ, WHO'S PRESENT OUT OF CUSTODY.  AND I'M ALSO SPECIALLY

20   APPEARING FOR SHANNA KEATING ON BEHALF OF ARISTIDES CARCAMO,

21   NINA WILDER ON BEHALF OF DANIEL GONZALEZ, AND LINDA FULLERTON

22   ON BEHALF OF MARTIN (SIC) LUMANG.

23             OKAY.

24             **THE COURT:**  THE THIRD ONE WAS WHO?

25             **MR. CHAZIN:**  THE LAST ONE?

```
1              THE COURT:  NO, NINA WILDER.

2              MR. CHAZIN:  OH, DANIEL GONZALEZ.

3              THE COURT:  DANIEL GONZALEZ.  ALL RIGHT.  JUST A

4    MINUTE.

5              MR. CHAZIN:  TOWARDS THE BOTTOM.

6              THE COURT:  YES, THAT'S FOR FULLERTON.  WHO DOES

7    NINA WILDER REPRESENT?

8              MR. CHAZIN:  DANIEL GONZALEZ.

9              THE COURT:  IT SAYS JODIE LINKER ON THAT.

10             MR. CHAZIN:  YEAH, THAT'S --

11             THE COURT:  THAT'S A MISTAKE.

12             MR. SABELLI:  IF THE COURT -- WALTER CRUZ-ZAVALA.

13   THAT'S RANDY SUE POLLACK'S CLIENT, AND I HAD INTENDED TO STAND

14   IN FOR HER.

15             THE COURT:  WE'RE NOT THERE YET.

16             OKAY.  I GOT IT.  I'M CAUGHT UP NOW.

17             MR. CHAZIN:  GREAT.

18             MR. SWANSON:  GOOD AFTERNOON, YOUR HONOR.  ED

19   SWANSON ON BEHALF OF RAFAEL MONTOYA.  I'M ALSO SPECIALLY

20   APPEARING FOR ANN MOORMAN, WHO REPRESENTS WALTER CHINCHILLA,

21   AND SUSAN RAFFANTI, WHO REPRESENTS JONATHAN CRUZ-RAMIREZ, ALL

22   THREE IN CUSTODY, YOUR HONOR.

23             THE COURT:  OKAY.

24             MR. BERMAN:  GOOD AFTERNOON, YOUR HONOR.  HOWARD

25   BERMAN APPEARING SPECIALLY FOR JEFFRY GLENN REPRESENTING DANIEL
```

1    PORTILLO.

2            **THE COURT:**  SAY THAT AGAIN.  YOU'RE REPRESENTING

3    WHO?

4            **MR. BERMAN:**  JEFFRY GLENN.  ATTORNEY JEFFRY GLENN.

5            **THE COURT:**  HOW FAR DOWN ON THE LIST?  I DON'T SEE

6    YOU ON HERE.

7            **THE CLERK:**  DEFENDANT IS NO. 9.  HE'S SPECIALLY

8    APPEARING FOR ATTORNEY JEFFRY GLENN.

9            **THE COURT:**  I SEE.

10           **THE CLERK:**  FOR DEFENDANT DANIEL PORTILLO.

11           **THE COURT:**  I SEE IT NOW.  OKAY.

12           **MR. BERMAN:**  THANK YOU.

13           **THE COURT:**  I GOT IT.

14           **MR. CONROY:**  GOOD AFTERNOON, YOUR HONOR.  BRENDAN

15   CONROY FOR MAURICIO URIAS, WHO'S PRESENT IN CUSTODY.

16           **THE COURT:**  OKAY.  I KNOW YOU'RE ON HERE.  THERE WE

17   ARE.  GOOD.

18           **MR. LOVESETH:**  GOOD AFTERNOON, YOUR HONOR.  IAN

19   LOVESETH APPEARING ON BEHALF OF RODRIGO MOLINA.

20           **THE COURT:**  ALL RIGHT.  WELCOME.

21           **MR. BOISSEAU:**  GOOD AFTERNOON, YOUR HONOR.  GEORGE

22   BOISSEAU ON BEHALF OF MR. MONTES-MAYORGA, WHO'S PRESENT BEFORE

23   THE COURT.

24           **MR. ROSENBUSH:**  GOOD AFTERNOON, YOUR HONOR.  MARK

25   ROSENBUSH FOR DEFENDANT NO. 4, MORIS FLORES.

```
1              THE COURT:  GOT IT.

2              GOOD AFTERNOON.  JOSEPH NOBLE SPECIALLY APPEARING

3    FOR ATTORNEY GERI GREEN ON BEHALF OF MANUEL FRANCO, WHO IS

4    PRESENT AND IN CUSTODY.

5              THE COURT:  GOT IT.  THANK YOU.

6              MS. LEONIDA:  GOOD AFTERNOON, YOUR HONOR.  ELLEN

7    LEONIDA APPEARING FOR MARVIN CARCAMO, NO. 2.

8              THE COURT:  NO. 2?  LEONIDA?

9              MS. LEONIDA:  LEONIDA.  YES.

10             THE COURT:  THANK YOU.

11             MR. GOODMAN:  GOOD AFTERNOON, YOUR HONOR.  PETER

12   GOODMAN APPEARING FOR ERICK DAVID LOPEZ, WHO'S IN CUSTODY.

13             MR. CANNON:  GOOD AFTERNOON, YOUR HONOR.

14   CHRISTOPHER CANNON FOR IVAN CERNA.

15             THE COURT:  ALL RIGHT.

16             NOW, DID MR. BERSON COME THROUGH?

17             MR. BERSON:  I'M HERE.

18             THE COURT:  OH, THERE YOU ARE.

19             MR. BERSON:  FOR MELVIN MALDONADO.

20             THE COURT:  ALL RIGHT.  GOT YOU.

21             MR. SABELLI:  AND GOOD AFTERNOON, YOUR HONOR.

22   MARTIN SABELLI FOR GUILLERMO HERRERA, WHO'S NO. 5, AND HE'S

23   PRESENT.  AND I'M ALSO STANDING IN FOR RANDY SUE POLLACK FOR

24   WALTER CRUZ-ZAVALA.

25             THE COURT:  YES.  LOOKS TO ME LIKE EVERYONE IS
```

```
 1   ACCOUNTED FOR.

 2                MR. SABELLI:  THANK YOU, YOUR HONOR.

 3                THE COURT:  ALL RIGHT.  THANK YOU ALL FOR COMING.

 4                AND WE HAVE SEVERAL MATTERS TO BE DISCUSSED.  I

 5   WOULD LIKE TO TAKE UP FIRST EITHER THE BRADY MOTION OR THE

 6   MOTION FOR PROTECTIVE ORDER FOR THE -- THE GOVERNMENT'S MOTION

 7   FOR PROTECTIVE ORDER AND THEN SAVE SOME OF THE OTHER THINGS.

 8                NOW, I NEED TO LEAVE AT 3:30, TWO HOURS FROM NOW, SO

 9   I THINK WE CAN GET EVERYTHING DONE IN THE TIME WE HAVE, BUT BE

10   MINDFUL OF THE -- OF THE CLOCK.

11                THE CLERK:  INTERPRETERS, I'M NOT SURE --

12                THE COURT:  HAVE OUR INTERPRETERS BEEN SWORN?  I

13   THOUGHT -- HAVE YOU BEEN SWORN IN THIS CASE?

14                THE CLERK:  THERE'S FOUR OF THEM.

15                THE COURT:  WOULD ALL THE INTERPRETER PLEASE RAISE

16   YOUR HAND AND BE SWORN IN.

17                     (INTERPRETERS SWORN.)

18                THE COURT:  ALL HAVE SAID "YES."  THANK YOU.

19                ALL RIGHT.

20                MR. LEUNG, WHICH WOULD YOU LIKE TO TAKE UP FIRST?

21                MR. LEUNG:  I BELIEVE IF WE ADDRESS THE GOVERNMENT'S

22   MOTION FOR PROTECTIVE ORDER FIRST, WE MAY BE ABLE TO REACH SOME

23   SORT OF CONCLUSION AT LEAST FOR PURPOSES OF TODAY'S PROCEEDING.

24                MR. SABELLI:  WE THINK SO, YOUR HONOR.  WE, OF

25   COURSE, LIKE TO BE ENLIGHTENED BY THE COURT'S COMMENTS WITH
```

1    RESPECT TO THAT MOTION IF THE COURT WISHES TO SHARE THOSE.    AND

2    WE UNDERSTAND THE COURT'S PERSPECTIVE, BUT WE BELIEVE THAT WE

3    CAN DISPOSE OF THIS MOTION FAIRLY RAPIDLY.

4            IF THE COURT HAS ANY PARTICULAR VIEWS OR QUESTIONS

5    IT WANTS TO POSE TO US, WE'D BE HAPPY TO ANSWER THOSE FIRST, SO

6    WE CAN ALERT THE COURT TO WHAT WE THINK --

7            **THE COURT:**  I WAS NOT -- I WAS GOING TO -- THE

8    GOVERNMENT TOOK SOME LIBERTIES WITH MY EARLY ONE.  I WAS GOING

9    TO CUT BACK ON SOME OF THOSE CHANGES.  BUT BASICALLY I WASN'T

10   GOING TO GRANT A PROTECTIVE ORDER UNLESS THERE'S A GOOD REASON.

11           AND THEN I WAS GOING TO GIVE YOU ALL AN OPPORTUNITY

12   TO COMMENT ON SOME OF THE DEADLINES.  NOT TODAY, BECAUSE I

13   THOUGHT THE BEST THING TO DO WAS PUT IT OUT FOR COMMENT AND

14   THEN LET YOU COMMENT ON THE PROPOSED DEADLINES.  BUT THAT'S

15   JUST MY TENTATIVE VIEW.

16           IT DOES SEEM TO ME THAT A PROTECTIVE ORDER IS IN --

17   IS NEEDED TO PROTECT THE SECURITY OF WITNESSES IN THIS CASE.

18           BUT I'M -- YOU KNOW, SINCE YOU'VE ASKED, I'VE GIVEN

19   YOU A TENTATIVE THOUGHT.  THAT'S REALLY AS FAR AS I HAVE

20   THOUGHT IT THROUGH.

21           **MR. LEUNG:**  WE HAD ALSO DISCUSSED PERHAPS WORKING

22   OUT SOME OF THE ISSUES OF TIMING AMONG OURSELVES AS WELL AND

23   ALSO CONFERRING AND PROVIDING ANY -- ANY JOINT SUBMISSION TO

24   THE -- FOR THE COURT'S CONSIDERATION AS WELL IN LIGHT OF THE

25   FACT THAT THE ENFORCEMENT OF THE SUBPOENAS ISN'T IMMEDIATE.

```
1              THE COURT:  THE ENFORCEMENT OF WHAT?

2              MR. LEUNG:  OF THE SUBPOENAS THAT THE DEFENSE HAS

3    ISSUED ISN'T IMMEDIATE.  SO WE THOUGHT THAT PERHAPS THE --

4              THE COURT:  OH, YOU'RE TALKING ABOUT A DIFFERENT

5    PROTECTIVE ORDER.  I'M TALKING ABOUT -- THE GOVERNMENT MADE

6    ONE -- A MOTION FOR -- TO JUSTIFY YOUR REDACTIONS.

7              MR. LEUNG:  CORRECT.

8              THE COURT:  IS THAT THE ONE WE'RE TALKING ABOUT?

9              MR. LEUNG:  THAT'S PART OF IT AS WELL, YOUR HONOR.

10             THE COURT:  OKAY.  WELL, I'M ONLY ADDRESSING THAT

11   PART NOW.  I'M NOT ADDRESSING THE GENERAL ISSUE OF -- THAT

12   MS. WAGNER'S HERE ON.  I'M -- I'M ADDRESSING ONLY THE PART OF

13   THE MOTION THAT WAS -- I GUESS IT'S -- IT WAS THE --

14             MR. SABELLI:  I BELIEVE IT'S THE GOVERNMENT'S MOTION

15   FOR A PROTECTIVE ORDER, YOUR HONOR.

16             THE COURT:  THAT'S WHAT IT'S CALLED.

17             MR. LEUNG:  IN SOME WAY, IT'S RELATED BECAUSE A LOT

18   OF INFORMATION THAT THE SFPD IS BEING SUBPOENAED TO PRODUCE HAS

19   BEEN PRODUCED IN REDACTED FORM BY THE GOVERNMENT.  AND SO

20   IT'S -- IT'S RELATED.

21             MR. SABELLI:  IF WE COULD BACK UP A STEP, I THINK

22   WHAT MR. LEUNG IS SAYING THAT HE MOVED FOR THIS PROTECTIVE

23   ORDER BECAUSE THE SUBPOENAS WERE IMMINENT.  AT THIS POINT, IN

24   LIGHT OF YESTERDAY'S HEARING, I DON'T BELIEVE THAT ENFORCEMENT

25   OF THOSE SUBPOENAS IS IMMINENT.  THAT GIVES THE PARTIES SOME
```

1   ROOM TO POSSIBLY MEET AND CONFER WITH RESPECT TO THIS

2   PROTECTIVE ORDER.

3          THAT BEING SAID, THE DEFENSE POSITION IS THAT WE

4   VERY STRONGLY OBJECT TO THE PROVISIONS OF THE PROTECTIVE ORDER

5   THAT MR. LEUNG HAS PROPOSED.  WE BELIEVE THERE'S A PROTECTIVE

6   ORDER ALREADY IN PLACE THAT WAS VERY CLOSELY NEGOTIATED BY THE

7   PARTIES, SIGNED BY THE PARTIES, PURSUANT TO WHICH INFORMATION

8   WAS RELEASED TO THE PARTIES AND UPON WHICH THE DEFENSE HAS

9   OPERATED.  WE BELIEVE THAT PROTECTIVE ORDER IS SUFFICIENT AND

10  SHOULD CONTINUE.

11         WE ALSO BELIEVE THAT WE WERE ENTITLED TO MORE OF A

12  SHOWING THAN MR. LEUNG MADE IF HE WAS TO TRY TO AMEND THAT

13  PROTECTIVE ORDER.  THAT BEING SAID, WE BELIEVE THAT GIVEN THAT

14  THERE'S NO REAL RUSH ON THIS RIGHT NOW GIVEN THE STATUS OF THE

15  SUBPOENA ISSUES, MR. LEUNG AND THE DEFENSE OR THE GOVERNMENT

16  AND THE DEFENSE CAN SIT DOWN AND TRY TO WORK OUT ANY

17  DIFFERENCES.

18         RIGHT NOW, WE HAVE A WHOLE WORLD OF DIFFERENCES.

19  WE'VE PLOTTED OUT THE DIFFERENCES BETWEEN THE PROPOSED

20  PROTECTIVE ORDER THAT MR. LEUNG HAS AND THE ORDER THAT THIS

21  COURT ISSUED IN THE DOWN-BELOW GANG CASE.  WE BELIEVE THERE ARE

22  SIGNIFICANT DIFFERENCES ON THE LEVEL OF 30.  WE'VE MAPPED THEM

23  OUT, AND WE WANT TO DISCUSS THOSE WITH MR. LEUNG AND SEE IF WE

24  CAN COME UP WITH A RESOLUTION.

25         MAYBE WE WON'T BE ABLE TO RESOLVE IT COMPLETELY.

1    MAYBE WE'LL NARROW IT DOWN TO TWO OR THREE ISSUES.  WE DON'T

2    KNOW.  BUT WHAT WE'RE SAYING TO THE COURT IS WE'D LIKE TO

3    PRESERVE THE STATUS QUO FOR THE TIME BEING AND MEET WITH

4    MR. LEUNG AND SEE IF WE CAN WORK OUT A PROTECTIVE ORDER THAT

5    SATISFIES HIM AND SATISFIES THE NEEDS OF THE DEFENSE FOR A

6    SIXTH AMENDMENT -- SIXTH AMENDMENT EFFECTIVE DEFENSE, YOUR

7    HONOR.

8           SO WE'D ASK FOR A PERIOD OF TIME -- PROBABLY TWO

9    WEEKS IS SUFFICIENT -- FOR MR. LEUNG TO SIT DOWN WITH US AND

10   TRY TO WORK IT OUT.

11          **THE COURT:**  WELL, I'M NOT TOO FAR OFF ON WHAT YOU'RE

12   SUGGESTING, BUT I'M STILL CONFUSED ON -- ON THIS MOTION, I'M

13   ONLY CONCERNED WITH THE MATERIAL THAT THE FEDERAL PROSECUTOR

14   TURNS OVER TO YOU AND WHAT PROTECTION THERE SHOULD BE ON THAT.

15          AND I AM NOT YET -- I KNOW THERE'S A DIFFERENT

16   ISSUE, BUT I DO REGARD IT AS A DIFFERENT ISSUE CONCERNING WHEN

17   MS. WAGNER TURNS OVER MATERIAL, WHETHER OR NOT IT SHOULD BE

18   REDACTED OR TO THE SAME EXTENT, OR WHETHER OR NOT THERE'S A

19   DIFFERENT STANDARD FOR IT.  SO WHEN YOU -- WHEN YOU SPEAK, IT

20   SOUNDS LIKE YOU'RE MELDING THOSE TWO TOGETHER.

21          **MR. SABELLI:**  I DON'T MEAN TO, YOUR HONOR.  LET ME

22   BE A LITTLE BIT MORE CLEAR, THEN.

23          THE ISSUE WITH RESPECT TO WHAT HAPPENS WITH THIS

24   SUBPOENAS, I'M NOT ADDRESSING THAT RIGHT NOW.  HOWEVER, THE

25   PROTECTIVE ORDER THAT MR. WILSON HAS PROPOSED TO THE COURT

```
1   WOULD GOVERN NOT ONLY MATERIALS DISCLOSED BY THE PROSECUTION

2   BUT ALSO MATERIALS INVESTIGATED OR PRODUCED OR DISCOVERED BY

3   THE DEFENSE THROUGH ITS OWN INVESTIGATION.  "DISCOVERED" IS THE

4   WRONG WORD THERE.  OBTAINED BY THE DEFENSE THROUGH ITS OWN

5   INVESTIGATION.

6          SO THE PROTECTIVE ORDER THAT MR. WILSON HAS

7   SUGGESTED GOVERNS NOT ONLY MATERIAL TURNED OVER BY THE

8   PROSECUTION BUT ALSO MATERIAL DEVELOPED INDEPENDENTLY BY THE

9   DEFENSE.

10          THE PURPOSE THAT MR. LEUNG HAS STATED FOR THAT IS TO

11  PROTECT WITNESS IDENTITIES NO MATTER WHERE THE DEFENSE GETS THE

12  INFORMATION.  SO FOR EXAMPLE -- JUST TO GIVE THE COURT AN

13  EXAMPLE, IF I WANT TO TALK TO MY CLIENT'S MOTHER, WHO'S IN THE

14  AUDIENCE HERE TODAY, I'VE IDENTIFIED THROUGH SOME OTHER SOURCE

15  THAN THE GOVERNMENT, I WOULD HAVE TO NOTIFY THE GOVERNMENT AND

16  OBTAIN THE GOVERNMENT'S PERMISSION FORMALLY IN ORDER --

17          THE COURT:  I ALREADY STRUCK THAT PART OUT.

18          MR. SABELLI:  I UNDERSTAND.

19          THE COURT:  THAT'S NOT FAIR TO YOU.  SO YOU COME UP

20  WITH THE INFORMATION ON YOUR OWN, I HOPE YOU WOULD USE GOOD

21  JUDGMENT AND NOT PUT SOMEBODY'S LIFE IN DANGER.  BUT NO ONE HAS

22  THE RIGHT TO SAY TO YOU, YOU CAN'T FOLLOW UP AND GO INTERVIEW

23  SOMEBODY WITHOUT THE GOVERNMENT'S CONSENT.

24          MR. SABELLI:  I UNDERSTAND.  THAT'S EXACTLY OUR

25  POSITION.  THERE ARE -- THERE'S A WHOLE SPECTRUM OF OBJECTIONS
```

```
1    WE HAVE TO THE DIFFERENCES BETWEEN THE DOWN-BELOW ORDER AND THE

2    PROPOSED ORDER IN THIS CASE.  WE'D JUST LIKE A CHANCE TO TRY TO

3    WORK THEM OUT WITH MR. LEUNG.

4            THE COURT:  WELL, YOU HAVE HAD A CHANCE.  LOOK, I --

5    YOU HAVE HAD A CHANCE.  THE THING ABOUT IT IS I AM UP TO SPEED

6    ON IT NOW.  IF I WAIT TWO WEEKS, I WILL FORGET.  THEN I HAVE TO

7    GO BACK INTO IT AGAIN.

8            IF YOU -- ARE YOU GOING TO BE ABLE TO SPEAK FOR

9    EVERYONE, OR IS THIS JUST A SMALL SUBGROUP?

10           MR. SABELLI:  YOUR HONOR, I WOULD SAY THAT I SPEAK

11   FOR THE MAJORITY OF THE DEFENSE.  WE HAD A MEETING BEFORE.

12   THOSE WHO WERE NOT AT THE MEETING -- MEMBERS OF THE JOINT

13   DEFENSE WERE PART OF THE JOINT DEFENSE EFFORT HERE.  I'M NOT

14   SURE THAT THERE'S ANYBODY HERE FROM THE JOINT DEFENSE WHO WOULD

15   OBJECT TO THAT REQUEST.  IF THEY ARE HERE, THEY COULD

16   CERTAINLY --

17           THE COURT:  WELL, LET ME ASK YOU THIS.  ON THE

18   DEFENSE SIDE, RAISE YOUR HAND IF YOU -- WITHOUT COMMITTING

19   ABSOLUTELY BUT DO YOU THINK THERE'S A 90 PERCENT CHANCE THAT

20   MR. SABELLI WILL WORK OUT SOMETHING SATISFACTORY TO YOU IF IT'S

21   SATISFACTORY TO HIM.  JUST RAISE YOUR HAND SO I CAN GET A --

22   LOOKS LIKE EVERYBODY.

23           IS THERE ANYONE WHO DISAGREES WITH THAT ON THE

24   DEFENSE SIDE?

25           MR. SABELLI:  WELL, I'M GOING TO DISAGREE WITH THAT,
```

1    YOUR HONOR.

2                        (LAUGHTER.)

3              **MR. SABELLI:**  'CAUSE WHAT -- I DIDN'T SAY I'M GOING

4    TO WORK OUT SOMETHING SATISFACTORY.  I'M SAYING WE CAN NARROW

5    THE ISSUES, BECAUSE I THINK ULTIMATELY MR. LEUNG MAY INSIST ON

6    SOME THINGS THAT WE ARE NOT HAPPY WITH.  BUT I THINK WE CAN

7    NARROW THE ISSUES --

8                    (SIMULTANEOUS COLLOQUY.)

9              **THE COURT:**  ALL RIGHT.  ALL RIGHT.  TWO WEEKS FROM

10   TODAY IS WHAT, DAWN?  JULY 8TH?

11             **THE CLERK:**  I'M SORRY.  YEAH, IT IS.

12             **THE COURT:**  JULY 8TH AT NOON, NOT 5:00 -- NOON, YOU

13   CAN SUBMIT A JOINT REPORT WITH THE GOVERNMENT THAT SAYS WHAT

14   YOU HAVE REACHED BY WAY OF AGREEMENT AND THEN WHAT YOU'VE

15   REACHED -- NOW, IF IT'S -- SHOULDN'T BE SOMETHING LIKE WE'VE

16   REACHED THIS AGREEMENT CONTINGENT ON -- THAT'S JUST TOO HARD

17   FOR ME.

18             BUT IF YOU -- I HOPE YOU CAN COMPLETELY AGREE ON

19   ITEMS THAT -- THE ENTIRE THING, THEN I'D PROBABLY JUST GO WITH

20   YOUR PROPOSAL SINCE ALL THE LAWYERS WERE IN AGREEMENT, WHY

21   SHOULD I DISAGREE.  BUT IF THERE'S SOME AREA FOR DISAGREEMENT,

22   I'M GOING TO HAVE TO USE MY OWN JUDGMENT.  I'VE ALREADY COME

23   PREPARED TODAY TO GIVE YOU THAT.  I'VE ALREADY WRITTEN IT UP

24   AND READY TO SIGN IT.  BUT I THINK YOUR PLAN IS A LITTLE

25   BETTER.  SO LET'S SEE IF YOU CAN'T COME UP WITH SOMETHING

```
1    BETTER.  THEN WE'LL LET MY ATTEMPT GO FOR NOW.  OKAY?

2              MR. SABELLI:  THAT'S FAIR, YOUR HONOR.  THANK YOU.

3              THE COURT:  ALL RIGHT.  SO TWO WEEKS FROM TODAY AT

4    NOON.

5              ALL RIGHT.  ENOUGH ON THE GOVERNMENT'S MOTION FOR

6    PROTECTIVE ORDER.

7              SHALL WE TURN NOW TO THE -- LET'S -- SOMEBODY NEED A

8    COUGH DROP?  AND I FORGOT MY COUGH DROPS.  WHO IS THAT?

9              WOULD YOU LIKE SOME WATER?

10             MR. BERMAN:  I THINK I'M FINE.  THANK YOU.

11             THE COURT:  OKAY.  I USUALLY HAVE A WHOLE BATTERY OF

12   COUGH DROPS FOR THIS OCCASION, BUT --

13             WHAT DO YOU WANT TO TAKE UP NEXT?  MS. WAGNER'S

14   ISSUE?  OR DO YOU WANT TO TAKE UP THE BRADY ISSUE?

15             MR. LEUNG:  SHALL WE DO THE BRADY ISSUE, YOUR HONOR?

16             THE COURT:  LET'S DO THE BRADY ISSUE.

17             OKAY.  THIS IS A MOTION --

18             MR. BALOGH, YOU'RE GOING TO ARGUE THIS?

19             MR. BALOGH:  YES, YOUR HONOR.

20             THE COURT:  OKAY.

21             I'M HAPPY TO HAVE YOU ARGUE IT.

22             MR. BALOGH:  THANK YOU KINDLY.

23             THE COURT:  AND THEN I'M UP TO SPEED ON THE ISSUES

24   SO YOU DON'T NEED TO GO INTO THE -- BUT --

25             THE INTERPRETER:  YOUR HONOR, I APOLOGIZE.
```

1          **THE COURT:**  WE HAVE A PROBLEM?

2          **THE INTERPRETER:**  -- BUT WE ARE HAVING ONE PROBLEM

3    WITH ONE SET OF EARPHONES.  AND I THINK I HAVE A SOLUTION IF I

4    COULD JUST HAVE TWO MINUTES, YOUR HONOR.

5          **THE COURT:**  WE'LL TAKE A TWO-MINUTE BREAK.

6              (PAUSE IN THE PROCEEDINGS.)

7          **THE INTERPRETER:**  THANK YOU, YOUR HONOR.  ALL SET.

8          **THE COURT:**  OKAY.

9          **MR. SABELLI:**  YOUR HONOR, MAY I ASK A QUESTION ABOUT

10   THE PROTECTIVE ORDER MOTION?  WOULD THE COURT BE WILLING TO

11   RELEASE ITS TENTATIVE RULING?  THAT MIGHT GIVE US SOME GUIDANCE

12   WITH RESPECT TO ISSUES THE COURT MAY HAVE ALREADY DECIDED ON.

13   I THOUGHT THE COURT --

14         **THE COURT:**  NO, I WOULD BE -- I WAS GOING TO GIVE

15   YOU AN OPPORTUNITY TO CRITIQUE SOME OF THE DEADLINES ANYWAY.

16   IF THAT'S WHAT YOU WANT, I WILL -- I WILL PUT OUT A TENTATIVE

17   AND LET YOU --

18         **MR. SABELLI:**  I THINK IT WILL JUST GIVE US SOME

19   GUIDANCE IN TERMS OF OUR NEGOTIATIONS.  THAT'S ALL.  IT MIGHT

20   MAKE THINGS A LITTLE EASIER TO RESOLVE.

21         **THE COURT:**  IT COULD ALSO HARDEN YOUR POSITIONS.  IT

22   WORKS BOTH WAYS.  IS THAT WHAT YOU WANT, MR. LEUNG?

23         **MR. LEUNG:**  THAT'S FINE WITH THE GOVERNMENT, YOUR

24   HONOR.

25         **THE COURT:**  ALL RIGHT.  I'LL PUT OUT A TENTATIVE

1    PROBABLY TOMORROW, YOUR HONOR.

2           **MR. SABELLI:**  THANK YOU VERY MUCH, YOUR HONOR.

3           **THE COURT:**  OKAY.  LET'S GO TO THE BRADY.

4           **MR. BALOGH:**  BEFORE WE BEGIN, YOUR HONOR, WE HAVE

5    TWO SUBPOENAS THAT ARE OUTSTANDING FOR DOCUMENTS RELATING TO

6    THIS MOTION FOR TESTIMONY IN CASE THERE'S AN EVIDENTIARY

7    HEARING HELD.

8           ONE OF THOSE SUBPOENAS HAS BEEN ISSUED TO

9    SAN FRANCISCO POLICE DEPARTMENT SERGEANT DION MCDONNELL, WHO'S

10   SITTING IN THE SECOND ROW IN HIS DRESS BLUES RIGHT NEXT TO

11   OFFICER FERNANDO (SIC), AND I BELIEVE THE SAN FRANCISCO POLICE

12   DEPARTMENT'S COUNSEL SHOULD HAVE RESPONSIVE DOCUMENTS.

13          I'M HAPPY TO HAND UP A COPY OF THE SUBPOENA AND LET

14   THE COURT KNOW WHICH DOCUMENTS WE ARE SEEKING, AS THEY RELATE

15   SOLELY TO THE NOTION OF ACCESS GIVEN TO UNITED STATES ATTORNEYS

16   OFFICE, THE F.B.I., AND THE DEPARTMENT OF IMMIGRATION AND

17   CUSTOMS ENFORCEMENT REGARDING THEIR REVIEW AND/OR COLLECTION OF

18   DOCUMENTS IN CONNECTION WITH OPERATIONS (SIC) DEVIL HORNS AND

19   THIS CASE NUMBER.

20          AND WE SEEK THESE DOCUMENTS, OBVIOUSLY, BECAUSE

21   THERE'S BEEN A FACTUAL ISSUE RAISED -- I'M NOT QUITE SURE THE

22   LEVEL OF DISPUTE SINCE THERE'S NO DECLARATION -- AS TO WHETHER

23   OR NOT THE GOVERNMENT'S HAD ACCESS AND WHETHER THIS IS A JOINT

24   INVESTIGATION.  AND THESE MATERIALS WILL SPEAK TO THAT ISSUE.

25          WE'D LIKE THEM TO BE PRESENTED FOR THE RECORD.  SO

```
1   THE FIRST WE'D ASK IS WHETHER OR NOT THE SAN FRANCISCO POLICE

2   DEPARTMENT HAS COMPLIED WITH THIS SUBPOENA TO ASK THEM TO HAND

3   UP THE DOCUMENTS.

4            THE COURT:  ALL RIGHT.  MS. WAGNER, WHAT DO YOU SAY?

5            MS. WAGNER:  YOUR HONOR, AS COUNSEL HAS CORRECTLY

6   POINTED OUT, SERGEANT MCDONNELL IS HERE AND PRESENT IN RESPONSE

7   TO THE SUBPOENA THAT WAS ISSUED.  AND SO WE ARE COMPLIANT IN

8   THAT REGARD.

9            ADDITIONALLY, THE DEPARTMENT DID IDENTIFY A

10  MEMORANDUM CONTAINING INFORMATION ABOUT ACCESS TO OUR FILES.

11  IT'S IN THE FORM OF A CHRONOLOGICAL, AND SERGEANT MCDONNELL

12  DOES HAVE IT HERE WITH HIM.  HOWEVER, THE DEPARTMENT WOULD

13  REQUEST THAT THE COURT REVIEW THAT AND -- AND COMPARE THAT TO

14  THE PROFFER OF RELEVANCY THAT THE DEFENSE HAS SUBMITTED BEFORE

15  RELEASING ANYTHING OR ORDERING ITS RELEASE.

16           THE COURT:  I DON'T UNDERSTAND WHAT YOU MEAN.  I

17  MEAN, IT IS POSSIBLY RELEVANT TO KNOW HOW CLOSELY THE FEDS AND

18  THE CITY WORK -- WORKED ON BRINGING THIS PROSECUTION.  SO I --

19  I THINK THIS IS A PLAUSIBLE SUBPOENA AND DOESN'T SOUND

20  BURDENSOME.

21           MS. WAGNER:  AND -- CORRECT, YOUR HONOR.  THEREFORE,

22  WE DID PRODUCE THAT DOCUMENT AND BRING IT.  I WAS -- I WOULD

23  JUST REQUEST A FURTHER PROFFER OF MATERIALITY, AND I WOULD

24  LODGE IT --

25           THE COURT:  I THINK IT'S MATERIAL.  WHY -- THAT
```

```
 1    OBJECTION IS OVERRULED.

 2               SO DO YOU HAVE IT HERE?

 3          MS. WAGNER:  I DO, YOUR HONOR.

 4          THE COURT:  WHY DON'T YOU HAND IT UP AND GIVE IT TO

 5    COUNSEL AND LET ME HAVE A COPY.  GIVE IT TO THE GOVERNMENT.

 6                    (PAUSE IN THE PROCEEDINGS.)

 7          MS. WAGNER:  IF I MAY APPROACH, YOUR HONOR.

 8          THE COURT:  DAWN CAN TAKE IT.  AND YOU NEED TO GIVE

 9    COPIES TO COUNSEL.

10                    (PAUSE IN THE PROCEEDINGS.)

11          THE COURT:  SO, MR. BALOGH, ARE YOU -- HAVE YOU SEEN

12    THESE?

13          MR. BALOGH:  NO, I HAVE NOT.

14          THE COURT:  DO YOU HAVE COPIES?

15          MS. WAGNER:  I DON'T, YOUR HONOR.

16          THE COURT:  HERE, LET COUNSEL TAKE A LOOK.  YOU'VE

17    GIVEN ME FOUR PAGES.  I CAN KIND OF GUESS WHAT'S IN THERE.

18    I'VE LOOKED AT IT BRIEFLY, BUT, COUNSEL, TAKE A MOMENT TO LOOK

19    THROUGH IT.

20                    (PAUSE IN THE PROCEEDINGS.)

21          MR. BALOGH:  IF I MAY, YOUR HONOR, I'LL JUST --

22    SINCE IT'S SO BRIEF, I'LL RECITE TO THE RECORD WHAT WE HAVE,

23    AND IF THE COURT WILL ALLOW, I'LL MAKE COPIES FOR MR. LEUNG AND

24    ALL DEFENSE COUNSEL IN THIS CASE.  THERE'S FOUR PAGES OF

25    DOCUMENTS THAT ARE DEEMED IN COMPLIANCE WITH THE SUBPOENA.
```

1   WE'VE HANDED UP.  WE'D ASK THE COURT TO FILE A COPY OF THE

2   SUBPOENA THAT WE'VE HANDED UP OFTEN AS A SUBPOENA TO BE

3   ENFORCED BY THIS FOUR-PAGE PRODUCTION.

4          THE FIRST PAGE IS ONE-PAGE LETTER DATED OCTOBER

5   19TH, 2007.  IT'S ADDRESSED TO LIEUTENANT ERNESTO

6   FERNANDO (SIC) WHO I'VE INDICATED IS IN THE SECOND ROW SEATED

7   NEXT TO SERGEANT MCDONNELL.  IT'S REGARDING AN OKAY TO TRANSFER

8   SEVERAL SEIZED FIREARMS RELEVANT TO THIS INVESTIGATION ENTITLED

9   DEVIL HORNS.  IT TRANSFERS CUSTODY TO ALLOW THE TRACING CENTER

10  OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS TO EXPEDITE

11  PROCESSING AND EXPAND THE SCOPE OF TESTING THE FIREARMS.

12         IT LISTS FOUR FIREARMS, WHICH I WILL NOT LIST.  IT

13  LISTS THEM BY CALIBER AND SERIAL NUMBER.  IT'S SIGNED BY

14  CHRISTOPHER MERENDINO, SENIOR SPECIAL AGENT.  IT'S APPROVED BY

15  CAPTAIN KEVIN R. CASHMAN, STAR 9346 (SIC) OF THE INVESTIGATIONS

16  BUREAU.

17         THE SECOND -- THE REMAINING THREE PAGES ARE -- THE

18  SECOND PAGE IS A CONFIDENTIAL INTERAGENCY OPERATIONS REQUEST.

19  THE OUTSIDE AGENCY'S REQUESTING ASSISTANCE OF THE UNITED STATES

20  DEPARTMENT OF JUSTICE.  IDENTIFIES CHIEF KEVIN CORNWILE

21  (PHONETIC) WITH A WASHINGTON, D.C. TELEPHONE NUMBER AS THE

22  CONTACT PERSON.

23         THIS REQUEST IS BEING SUBMITTED BY LIEUTENANT

24  ERNESTO FERNANDO, WHO I HAVE IDENTIFIED EARLIER.  THE NOTION OF

25  THIS INTERAGENCY REQUEST IS TO ASSIST THE UNITED STATES

```
 1   DEPARTMENT OF JUSTICE ON MS-13 INVESTIGATION.  GTF OFFICERS

 2   WILL ASSIST IN GANG-TRACKING INFO AND INVESTIGATIONS PER

 3   D-G-O-S DOT I-S, IF I'M READING THAT CORRECTLY.  "REFER TO

 4   ATTACHED LETTER."  THERE IS NO LETTER ATTACHED.

 5            IT IS APPROVED BY LIEUTENANT FERNANDO ON SEPTEMBER

 6   5TH, 2007, BY CAPTAIN STAR 936, WHICH I BELIEVE IS CORNWILE

 7   (SIC), 9/6/07, AND BY ACTING -- THE DEPUTY CHIEF INVESTIGATIONS

 8   AN ILLEGIBLE SIGNATURE AS WELL, NO STAR NUMBER ON THE 8TH OF

 9   SEPTEMBER 2007.  APPARENTLY ONE AT LEAST ONE LETTER -- ATTACHED

10   LETTER IS PLAINLY MISSING, SUGGESTING INCOMPLETE PRODUCTION.

11            FINALLY, THE PRODUCTION IN RESPONSE TO OUR SUBPOENA

12   INCLUDES A TWO-PAGE SAN FRANCISCO POLICE DEPARTMENT

13   CHRONOLOGICAL OF INVESTIGATION.  IT DATES FROM SEPTEMBER 6TH,

14   2007, BEGINNING AT 1200 HOURS, AND IT RECORDS EVENTS IN

15   SEPTEMBER, OCTOBER, AND NOVEMBER THROUGH NOVEMBER 21ST, 2007,

16   ABOUT ASSISTING AND -- WITH THE INVESTIGATION PROVIDING

17   INFORMATION -- I'M NOT GOING TO READ EVERY ENTRY INTO THE

18   RECORD, BUT THAT SHOULD MAKE A FAIRLY GOOD INDICATION OF AT

19   LEAST THE SUBSTANCE OF THIS PRODUCTION.

20            BESIDES NOTING THE APPARENT INCOMPLETENESS OF IT

21   BASED ON ITS FACE, I WOULD JUST NOTE FOR THE RECORD THAT THE

22   ATF, WHICH IS ONE OF THE AGENCIES IDENTIFIED AS THE TRANSFER OF

23   WEAPONS IS PART OF THIS INVESTIGATION, IS A FEDERAL AGENCY

24   WHICH THE GOVERNMENT CLAIMS IS NOT ITS AGENT FOR THE PURPOSES

25   OF BRADY IN RESPONSE TO OUR MOTION.
```

```
1              WITH THAT, I'LL MAKE COPIES FOR EVERYONE IF THE

2    COURT IS SO INCLINED.

3              THE COURT:  YEAH, I THINK THAT'S A GOOD IDEA.

4              OKAY.  WAS THERE A DOCUMENT ATTACHED THERE,

5    MS. WAGNER, THAT SOMEHOW GOT DELETED?

6              MS. WAGNER:  (REVIEWING DOCUMENT.)

7              IF I MAY HAVE AN OPPORTUNITY ASK MY WITNESS.

8              MR. BALOGH:  YOUR HONOR, WHAT I WOULD SUGGEST IS I

9    THINK AT THE END OF THIS HEARING I HAVE ANOTHER SUBPOENA ISSUE

10   I WOULD LIKE TO TALK ABOUT -- MAYBE THIS WOULD BE PART OF OUR

11   DISCUSSION BUT AN EVIDENTIARY HEARING TO THE EXTENT THAT

12   SAN FRANCISCO POLICE DEPARTMENT OR SERGEANT MCDONNELL IS GOING

13   TO ATTEST TO THE COMPLETENESS OF THE RESPONSE TO THIS TARGETED

14   BUT BROAD SUBPOENA, WE'RE GOING TO WANT THAT WITH LIVE

15   TESTIMONY OR WITH A DECLARATION UNDER PENALTY OF PERJURY

16   BECAUSE IF THESE ARE THE ONLY FOUR DOCUMENTS, IF THERE'S ONLY

17   ONE PAGE MISSING, I THINK SOMEONE NEEDS TO BE UNDER PENALTY OF

18   PERJURY TO MAKE THAT ATTESTATION.

19             I'M NOT GOING TO BE COMFORTABLE WITH COUNSEL

20   REPEATING SOMETHING THAT WAS WHISPERED INTO THE AUDIENCE WITH

21   ALL DUE RESPECT.

22             MR. LEUNG:  YOUR HONOR, I THINK IT REMAINS TO BE

23   SEEN WHETHER WE NEED AN EVIDENTIARY HEARING FOR THE MOTION.  I

24   THINK IT COULD BE DISPOSED OF ON THE LAW.

25             MS. WAGNER:  AND, YOUR HONOR, THE DEPARTMENT WOULD
```

1    LIKE TO STATE FOR THE RECORD, THAT THE SUBPOENA ATTACHMENT IS

2    EXTREMELY BROAD.  AND ALSO THAT COUNSEL SENT A SUPPORTING

3    LETTER TO MY ATTENTION PURPORTING TO EXPLAIN THE MEANING OF THE

4    ATTACHMENT.  THE ATTACHMENT IN ITS BREADTH AND VAGUENESS

5    OBLIGED COUNSEL TO MAKE INFERENCES WITH RESPECT TO WHAT

6    MATERIALS WERE DEMANDED.

7             AND AS I UNDERSTOOD IT, WERE DESCRIPTIVE DOCUMENTS

8    AS TO THE REVIEW AND COLLECTING OF MATERIALS BY I.C.E. FROM

9    SAN FRANCISCO POLICE DEPARTMENT RELATIVE TO OPERATION DEVIL

10   HORNS.  AND THAT'S WHAT COUNSEL ATTEMPTED TO PROVIDE.

11           **MR. BALOGH:**  YOUR HONOR, COULD WE ASK MS. WAGNER --

12   I NOTICE SHE HAS THAT LETTER WITH US (SIC).  I'D ASK HER TO

13   READ IT INTO THE RECORD.

14           **THE COURT:**  NO, NO, LET'S NOT --

15           **MR. LEUNG:**  OBJECTION.

16           **THE COURT:**  LET'S NOT GET INTO THIS.  LOOK, WE HAVE

17   PRODUCED WHAT WE HAVE PRODUCED SO FAR.  SO THERE'S NOTHING MORE

18   FOR MS. WAGNER TO DO FOR THE MOMENT.  BUT PLEASE HAVE A SEAT,

19   AND WE'RE GOING TO HAVE HEAR THE LEGAL ARGUMENT ON THE BRADY

20   PART.  MAYBE WE NEED AN EVIDENTIARY HEARING.  I DON'T KNOW.

21           **MR. BALOGH:**  BEFORE WE GET TO THAT, I'D LIKE THE

22   COURT TO NOTE THE SECOND SUBPOENA I'VE HANDED UP IS A SUBPOENA

23   CALLING FOR SIMILAR DOCUMENTS AND THE TESTIMONY OF SPECIAL

24   AGENT CHRISTOPHER MERENDINO.  IT WAS SERVED, AS REFLECTED IN

25   THE SUBPOENA -- WE'VE SERVED UP AND ASKED BE FILED AS PART OF

```
1    THE RECORD IN THIS CASE -- ON JUNE 12TH, 2009, ON RENE DELEON,

2    THE LEGAL ASSISTANT AT THE IMMIGRATIONS CUSTOM AND ENFORCEMENT

3    CHIEF COUNSEL'S OFFICE.

4              AND I UNDERSTAND THAT MR. MERENDINO IS NOT APPEARING

5    TODAY, NOR HAS HE TENDERED RESPONSIVE DOCUMENTS, NOR HAS HE

6    RESPONDED IN ANY WAY TO THE SUBPOENA BY MOTION TO QUASH OR

7    OTHERWISE.  AND SO WE'D LIKE TO HAVE THE COURT ISSUE AN ORDER

8    TO SHOW CAUSE TO AGENT MERENDINO ABOUT WHY HE SHOULD NOT BE

9    HELD IN CONTEMPT AND TO ORDER COMPLIANCE WITH THE SUBPOENA

10   THAT'S BEEN ISSUED WITHIN THE COURT'S POSSESSION.

11        MR. LEUNG:  ACTUALLY, YOUR HONOR, I BELIEVE THAT

12   MR. BALOGH HAS BEEN ABUSING THE SUBPOENA PROCESS.  AGENT

13   MERENDINO WAS TRANSFERRED TO MAIN JUSTICE OR I.C.E.'S

14   HEADQUARTERS SOME FOUR OR FIVE MONTHS AGO.  HAD HE WANTED AGENT

15   MERENDINO HERE, HE SHOULD HAVE CONTACTED ME OR SOMEONE ELSE

16   WITHIN MY OFFICE.

17             AGENT MERENDINO IS ACTUALLY PRESENT OUT OF THE

18   COUNTRY ON AN ASSIGNMENT AS WELL.  TO THE EXTENT, HOWEVER, THAT

19   WE WERE GOING TO PROCEED WITH AN EVIDENTIARY HEARING, WHICH WAS

20   NOT PART OF THE COURT'S FINAL SCHEDULING ORDER FOR TODAY, I

21   DON'T UNDERSTAND WHY MR. BALOGH FELT COMPELLED TO SUBPOENA

22   WITNESSES --

23        THE COURT:  WELL, LOOK, YOU PUT OUT A PRESS RELEASE.

24   JUST TO GET RIGHT DOWN TO IT, YOU PUT OUT A PRESS RELEASE.

25   IT'S OFFICIAL.  IT'S NOT -- IT'S OFFICIAL, AND IT SAYS THAT
```

```
 1   THIS IS A JOINT THING WITH THE SAN FRANCISCO POLICE DEPARTMENT.

 2              WHY DON'T I JUST TAKE YOUR WORD?

 3         MR. LEUNG:  BECAUSE THAT'S NOT THE RELEVANT INQUIRY

 4   UNDER BRADY, YOUR HONOR.

 5         THE COURT:  WHAT IS, THEN?

 6         MR. LEUNG:  IT'S WHETHER THE SAN FRANCISCO POLICE

 7   DEPARTMENT IS PART OF A SEPARATE GOVERNMENTAL ENTITY WHICH IT

 8   IS.  IT'S PART OF THE GOVERNMENT OF CALIFORNIA, YOUR HONOR.

 9   AND UNDER CLEARLY ESTABLISHED NINTH CIRCUIT LAW, THE FEDERAL

10   GOVERNMENT AND THE STATE GOVERNMENT, STATE AND LOCAL

11   GOVERNMENTS ARE SEPARATE ENTITIES.

12              AND I WOULD CITE --

13         THE COURT:  WHAT, THEN, WOULD IN YOUR VIEW -- LOOK,

14   IT'S VERY CLEAR THAT A MAJOR PIPELINE OF INFORMATION HAS -- WAS

15   ESTABLISHED BETWEEN THE SFPD AND YOUR OFFICE OR THE I.C.E., FOR

16   PURPOSES OF THIS CASE.  YOU WOULD AGREE WITH THAT, WOULDN'T

17   YOU?

18         MR. LEUNG:  I WOULD AGREE THAT THE POLICE HAVE

19   HELPED US BY PROVIDING INFORMATION --

20         THE COURT:  NO, NO.  A MAJOR PIPELINE.

21         MR. LEUNG:  I WOULD NOT SAY "MAJOR PIPELINE," YOUR

22   HONOR.  THE CITY HAS A POLICY AGAINST COOPERATING WITH

23   IMMIGRATION AND CUSTOMS ENFORCEMENT.

24         THE COURT:  SO THAT'S NOT WHAT THE PRESS RELEASE

25   SAID.  BUT IN ANY EVENT --
```

```
 1              MR. BALOGH:  THAT'S NOT --

 2              THE COURT:  WAIT, MR. -- I'M -- I WANT TO -- WHAT DO

 3    YOU THINK IS YOUR BRADY OBLIGATION WITH RESPECT TO THE SFPD?

 4              MR. LEUNG:  OUR BRADY OBLIGATIONS WITH RESPECT TO

 5    THE SFPD, WHICH IS CONSISTENT WITH NINTH CIRCUIT CASE LAW, IS

 6    TO -- IS THAT WE HAVE A DUTY OF INQUIRY, YOUR HONOR.  WE DO

 7    NOT, HOWEVER, CONTROL THEIR FILES.  WE DO NOT CONTROL WHAT THEY

 8    DO.  WE CANNOT GO IN THERE AND CONDUCT THE REVIEW OURSELVES.  I

 9    THINK THE NINTH CIRCUIT IN HERRING, H-E-R-R-I-N-G, HELD SO AS

10    WELL.

11              AND UNDER THE CIRCUMSTANCES, YOUR HONOR, THE

12    GOVERNMENT HAS BEEN COMPLYING WITH ITS BRADY OBLIGATIONS.  WE

13    HAVE MADE THE INQUIRIES AND THERE'S BEEN NOTHING EXCULPATORY TO

14    DATE, BUT WE WILL CONTINUE TO BE MINDFUL OF OUR BRADY

15    OBLIGATIONS.

16              THE COURT:  WHAT DO YOU MEAN, YOU MADE AN INQUIRY?

17              MR. LEUNG:  WE HAVE -- THE -- THE SAN FRANCISCO

18    POLICE DEPARTMENT OFFICERS AND OTHER PERSONNEL WITH WHOM WE'VE

19    BEEN IN CONTACT HAVE BEEN ASKED WHETHER THERE'S ANYTHING

20    EXCULPATORY IN THEIR FILES.

21              THE COURT:  AND THE GOVERNMENT IS SAYING NO.  I

22    UNDERSTAND HOW THAT WORKS.  THEY SAY NO.

23              AND THEN -- AND THEN THE OTHER SIDE HAS TO FILE A

24    SUBPOENA SAYING COME TO COURT.  AND THEN SUDDENLY, THE

25    DOCUMENTS START COMING OUT OF THE WOODWORK.
```

```
 1              THAT'S THE WAY IT WAS IN THE DOWN-BELOW GANG.  I SET
 2    AN EVIDENTIARY HEARING TO GET TO THE BOTTOM OF THESE -- THESE
 3    CONSTANT CHARGES THAT THE SFPD WASN'T TURNING OVER OR YOUR
 4    OFFICE WASN'T TURNING OVER THE RECORDS.  SO I SAID OKAY,
 5    SUBPOENA THE POLICE.
 6              WELL, AS SOON AS THE POLICE GOT SUBPOENAED, WE WERE
 7    ABOUT TWO DAYS FROM THE HEARING, MR. HALL SUDDENLY DISCOVERED
 8    LOTS OF DOCUMENTS.
 9              NOW, IF YOU JUST ASK THE POLICE, DO YOU HAVE
10    EXCULPATORY DOCUMENTS, THEY'RE GOING TO THINK FOR A FEW MINUTES
11    AND SAY NO, I DON'T THINK SO.
12              MR. LEUNG:  WELL --
13              THE COURT:  THEY'RE NOT GOING TO GO BACK AND LOOK.
14              MR. LEUNG:  IN ADDITION TO THAT, YOUR HONOR, THE
15    POLICE HAVE PROVIDED US WITH DOCUMENTS THAT WE'VE REQUESTED,
16    AND WE'VE MADE OUR OWN INQUIRY -- OR WE'VE CONDUCTED OUR OWN
17    REVIEW BASED ON THE DOCUMENTS THAT HAVE BEEN PRODUCED.  THUS
18    FAR, WE'VE PROVIDED OVER 40,000 PAGES OF DISCOVERY.
19              THE COURT:  YEAH, BUT THAT'S THE DOCUMENTS YOU WANT
20    TO USE.  HOW ABOUT THE DOCUMENTS THAT HELP THEM?
21              MR. LEUNG:  WELL, THE DEFENSE -- THE DEFENSE'S
22    POSITION WOULD BE TO ASK THE GOVERNMENT ESSENTIALLY TO BE ITS
23    INVESTIGATORS, TO LOOK INTO ANY AND ALL --
24              THE COURT:  THAT'S WHAT THE LAW SAYS YOU GOT TO DO.
25              MR. LEUNG:  THAT IS NOT BRADY, YOUR HONOR,
```

1    RESPECTFULLY.

2         **THE COURT:** BRADY -- SO YOU CAN ONLY -- YOU'RE

3    SAYING YOU CAN ASK THE -- YOU CAN ASK THE SAN FRANCISCO PD FOR

4    ALL THE DOCUMENTS THAT HELP YOU BUT THEN NOT DO DUE DILIGENCE

5    TO MAKE SURE YOU'RE GETTING THE DOCUMENTS THAT HELP THEM.

6         **MR. LEUNG:** NO, YOUR HONOR.  THAT IS NOT WHAT WE'RE

7    SAYING.  WE'RE SAYING THAT UNDER BRADY, UNDER FEDERALISM, WE

8    HAVE THE DUTY OF INQUIRY WHICH WE HAVE COMPLIED WITH.

9         BUT THE LAW -- AND I WOULD REFER TO HERRING AGAIN --

10   PRECLUDES THE COURT FROM ORDERING THE FEDERAL GOVERNMENT TO

11   CONDUCT A REVIEW OF THE FILES OF A SEPARATE STATE GOVERNMENT.

12        IN ADDITION, YOUR HONOR, BY ANALOGY, THEN --

13        **THE COURT:** WHAT ABOUT THE PRICE CASE?  THAT WAS

14   EXACTLY WHAT HAPPENED IN PRICE, WASN'T IT?

15        **MR. LEUNG:** I DON'T KNOW IF THAT WAS WHAT HAPPENED

16   IN PRICE.

17        **THE COURT:** WELL, IT WAS A STATE AGENCY.

18        **MR. LEUNG:** THE GOVERNMENT CERTAINLY HAS AN

19   OBLIGATION TO -- TO AT LEAST INQUIRE.  HOWEVER, IN SHYROCK

20   (PHONETIC), IN HERRING, IN DOMINGUEZ-VILLA, IN AICHELE,

21   THEY'RE -- EACH OF THOSE -- IN EACH OF THOSE CASES, THE NINTH

22   CIRCUIT HELD THAT THE GOVERNMENT IS UNDER NO DUTY TO REVIEW

23   STATE LAW ENFORCEMENT RECORDS NOT WITHIN ITS POSSESSION OR

24   CONTROL.  IT CAN'T BE QUITE CLEARER THAN THAT, YOUR HONOR.

25        MOREOVER, THERE'S A SLIPPERY SLOPE HERE.  AT ONE

```
1    POINT, DEFENSE ASKED WHETHER WE CONSIDERED THE EL SALVADORAN

2    NATIONAL POLICE OUR AGENT FOR BRADY PURPOSES, AND OUR RESPONSE

3    WAS NO.  THERE CERTAINLY COULD POSSIBLY BE POTENTIAL BRADY

4    MATERIAL IN THE LAW ENFORCEMENT RECORDS OF -- OF, SAY,

5    EL SALVADORAN, HONDURAN, AND OTHER FOREIGN NATIONAL AGENCIES.

6            HOWEVER, BRADY CLEARLY ESTABLISHES THAT IT'S A

7    QUESTION OF CONTROL AND POSSESSION THAT DETERMINES THE SCOPE OF

8    THE GOVERNMENT'S BRADY OBLIGATIONS.

9            AND IT'S WELL-SETTLED NINTH CIRCUIT LAW THAT STATE

10   AGENCIES SUCH AS THE CDC AND LOCAL POLICE FORCES ARE NOT UNDER

11   THE CONTROL OF THE FEDERAL GOVERNMENT, AND THEIR FILES ARE NOT

12   IN THE CONTROL OR POSSESSION OF FEDERAL GOVERNMENT.

13           AND, AGAIN, ALL THIS COULD BE RATHER MOOT BECAUSE WE

14   HAVE BEEN COMPLYING WITH BRADY.  HOWEVER, THE MOTION FILED BY

15   THE DEFENSE WOULD SEEM TO EXPAND THE REALM OF BRADY TO MAKE THE

16   FEDERAL GOVERNMENT STRICTLY LIABLE FOR ANY ITEM OF INFORMATION

17   OUT THERE THAT MAY TURN UP AT ANY TIME IN THE REMOTE FUTURE.

18   AND THAT'S WHAT WE OBJECT TO.

19           THE COURT:  YOU WOULDN'T BE -- EVEN IF IT WAS IN THE

20   FEDERAL FILES, THAT'S NOT THE -- YOU WOULDN'T BE NECESSARILY

21   VIOLATING BRADY IF SOME OBSCURE DOCUMENT IN AN OBSCURE PLACE IN

22   THE FEDERAL FILE WASN'T UNCOVERED.

23           MR. LEUNG:  WE WOULD AGREE WITH THAT, YOUR HONOR --

24               (SIMULTANEOUS COLLOQUY.)

25           MR. LEUNG:  -- WOULD MAKE THE FEDERAL GOVERNMENT AND
```

1   THIS PROSECUTION LIABLE FOR THAT OBSCURE --

2           **THE COURT:**  WELL, THEY'RE WRONG ON THAT.  BUT WHAT

3   BOTHERS ME ABOUT YOUR POSITION IS THAT YOU CAN USE THIS AS A

4   PIPELINE TO THE SFPD, GET MASSIVE AMOUNTS OF INPUT FOR

5   PROSECUTORIAL PURPOSES, BUT WHEN IT COMES TO BRADY, JUST SAY,

6   OH, BY THE WAY, DO YOU HAVE ANY EXCULPATORY MATERIAL?  OH, I

7   DON'T THINK WE DO.  OKAY.  THANKS.  I'VE DONE MY DUTY OF

8   INQUIRY.

9           **MR. LEUNG:**  WELL, YOUR HONOR, IT'S THE SAME INQUIRY.

10  WE ASKED THE POLICE WHETHER THEY HAVE ANY INCULPATORY EVIDENCE,

11  AND WE'RE RELYING UPON --

12          **THE COURT:**  YOU SENT PEOPLE DOWN THERE TO LOOK,

13  RIGHT?  DIDN'T PEOPLE GO DOWN THERE AND LOOK AT THE FILES?

14          **MR. LEUNG:**  WE NEED THE PERMISSION OF THE POLICE IN

15  ORDER TO ACCESS THEIR FILES.  WE DON'T GO IN THERE AND JUST

16  PULL THEIR FILES.

17          **THE COURT:**  BUT DID YOU SAY -- YOU SENT SOMEBODY

18  DOWN THERE TO LOOK THROUGH THEIR FILES.

19          **MR. LEUNG:**  AFTER WE GOT PERMISSION AND AFTER --

20          **THE COURT:**  ALL RIGHT.  BUT YOU DON'T WANT TO ASK

21  PERMISSION TO SEND THEM DOWN TO LOOK FOR BRADY.

22          **MR. LEUNG:**  WELL, YOUR HONOR, THAT WOULD NOT BE --

23  THAT WOULD BE BEYOND THE SCOPE OF THE BRADY OBLIGATIONS OF THE

24  GOVERNMENT.  THERE'S NO -- THE CASE LAW HOLDS THAT THE

25  GOVERNMENT IS UNDER NO OBLIGATION TO CREATE BRADY FOR THE

1    DEFENSE.

2             **THE COURT:**  SOMETHING'S WRONG WITH THAT PICTURE.  IT

3    DOESN'T SOUND RIGHT TO ME.  IT'S TRUE THAT PROSECUTOR CAN'T BE

4    ORDERED TO GO DOWN THERE THEMSELVES.  BUT AS BETWEEN -- YOU

5    HAVE A DUTY TO LEARN AND YOU GOT TO DO WHATEVER'S -- WHATEVER

6    IS REQUIRED TO DO A DUTY TO LEARN.  AND SEEMS TO ME YOU OUGHT

7    TO PUT AT LEAST AS MUCH EFFORT IN TRYING TO LEARN THE

8    EXCULPATORY AS THE INCULPATORY.  AND YOU WANT TO HAVE IT A

9    DIFFERENT STANDARD.

10            NOW, I'M GOING TO LOOK AT THE CASE LAW AND SEE.

11   THIS IS -- THIS DOESN'T SOUND RIGHT TO ME.  IT SOUNDS UNFAIR

12   THAT -- I KNOW FROM PRIOR PRACTICE IN THIS OTHER CASE -- I KNOW

13   THOSE FILES DOWN THERE ARE PROBABLY FULL OF THINGS THAT COULD

14   BE USED BY THE DEFENSE TO IMPEACH SOME WITNESSES.

15            PROBABLY NOT VERY MUCH EXCULPATORY MATERIAL THERE,

16   BUT THERE -- THERE'S PROBABLY A LOT THAT COULD BE USED TO

17   IMPEACH GOVERNMENT WITNESSES.

18            **MR. LEUNG:**  WELL --

19            **THE COURT:**  THAT'S WHAT HAPPENED -- I GOT THIS -- I

20   GOT THIS CASE THAT I WAS THINKING OF, THE PRICE CASE.  IT'S

21   BRAND NEW.  MAY 21.  AND THE FEDERAL PROSECUTOR THERE DID NOT

22   TURN OVER THE MATERIAL THAT SHOWED THAT A KEY WITNESS -- AND IT

23   WAS PORTLAND POLICE.  PORTLAND POLICE HAD ALL KINDS OF

24   INFORMATION THAT THE GOVERNMENT'S CHIEF WITNESS WAS A -- WAS A

25   FRAUD, REALLY JUST A TOTAL CRIMINAL, AND THAT WAS WITHHELD.

```
 1          YOU'RE SAYING THAT'S OKAY.  AS LONG AS YOU DON'T

 2   KNOW ABOUT IT AND YOU ASK THE QUESTION, IS THERE ANY MATERIAL

 3   THERE.

 4          MR. LEUNG:  IT WOULD DEPEND ON THE PARTICULAR FACT

 5   AND CIRCUMSTANCES OF THE CASE, YOUR HONOR.  WE WOULD NOTE THAT

 6   BRADY INHERENTLY -- BRADY AND GIGLIO INHERENTLY ARE RETROACTIVE

 7   ASSERTIONS CONCERNING THE CONDUCT OF THE GOVERNMENT.

 8          HERE, IT'S -- THE MOTION IS A BIT ODD BECAUSE IT'S

 9   COUCHED AS A BRADY MOTION, IT'S COUCHED AS A -- AS A MOTION TO

10   HAVE THE GOVERNMENT ENFORCE ITS BRADY OBLIGATIONS, WHICH THE

11   GOVERNMENT HAS INDICATED IT WILL COMPLY WITH, AND WHICH -- AND

12   WHICH UNDER HERRING, THE COURT CANNOT MAKE THE GOVERNMENT GO

13   AND CONDUCT A REVIEW.  AND YET, IT SEEKS TO CLAIM PROSPECTIVELY

14   AN ANTICIPATORY VIOLATION OF BRADY; YET, IT DOES NOT SUFFICE

15   TO -- TO -- YET, THERE'S ABSOLUTELY NO SHOWING MADE UNDER BRADY

16   ITSELF THAT THERE'S BEEN A VIOLATION THUS FAR.

17          'CAUSE IN BRADY, YOU HAVE TO SHOW FAILURE TO

18   DISCLOSE, EITHER EXCULPATORY OR IMPEACHMENT INFORMATION THAT

19   RESULTS IN PREJUDICE.

20          THE COURT:  WELL, THAT'S TRUE.  IT'S TRUE, BUT, YOU

21   KNOW, THE -- THE -- THE NINTH CIRCUIT IN THAT W. R. GRACE CASE

22   AT A MINIMUM SAID THAT A JUDGE CAN MAKE YOU TURN OVER YOUR

23   WITNESS LIST AHEAD OF TIME.  THERE'S NO DOUBT IN MY MIND THAT

24   THAT OUGHT TO ALSO APPLY TO WHEN YOU TURN OVER THE BRADY

25   MATERIAL, AND -- AND YES, IF YOU GOOF UP AND YOU DON'T TURN
```

1    OVER THE BRADY MATERIAL IN TIME, THEN WE LATER, ON A 2255, WE

2    HAVE TO DECIDE WHETHER TO SET ASIDE THE CONVICTION.

3          FROM A CASE MANAGEMENT POINT OF VIEW, THE JUDGE HAS

4    A STRONG INTEREST OF MAKING SURE IT'S DONE RIGHT THE FIRST TIME

5    AND THAT WE DON'T HAVE TO SET ASIDE ANY CONVICTIONS, THAT THE

6    CONVICTIONS WILL HOLD UP ON APPEAL AND HOLD UP ON 2255.  SO

7    I -- THE JUDGE IN A CASE LIKE THIS WOULD ALWAYS HAVE AN

8    INTEREST IN MAKING SURE THAT GOVERNMENT IS DOING IT RIGHT.

9          **MR. LEUNG:**  AND THE GOVERNMENT DOES AS WELL, YOUR

10   HONOR.

11         **THE COURT:**  YES.  OF COURSE, YOU DO.  AND I -- AND I

12   THINK YOU ARE ACTING IN TOTAL GOOD FAITH.  I DON'T DOUBT THE

13   BONA FIDES THERE.  BUT I -- I QUESTION -- I'M NOT SAYING YET

14   THAT YOU HAVE THE WRONG STANDARD, BUT I QUESTION THE STANDARD

15   UNDER WHICH YOU CAN USE THE SFPD AS A PIPELINE FOR INCULPATORY

16   AND SEND PEOPLE DOWN THERE TO MINE THE FILES BUT WHEN IT COMES

17   TO EXCULPATORY AND GIGLIO, ALL YOU GOT TO DO IS SAY, HEY, BY

18   THE WAY, YOU GOT ANYTHING LIKE THIS?  THEY THINK ABOUT IT A FEW

19   MINUTES AND SAY NO.  AND I KNOW THAT'S NOT ADEQUATE.

20         HERE'S THE FLIP SIDE OF THAT.  IF IT TURNS OUT THAT

21   YOU'RE RIGHT -- MS. WAGNER, I HOPE YOU'RE LISTENING -- AND,

22   OFFICER MCDONNELL, WE'RE GOING TO HAVE ON -- AN ENDLESS STREAM

23   OF SUBPOENAS THAT ARE GOING TO BE -- I'M GOING TO GIVE THEM THE

24   SAME RIGHT TO GO DOWN THERE AND LOOK THROUGH YOUR FILES AS --

25   THAT THE GOVERNMENT'S HAD, OR YOU'LL HAVE TO LOOK THROUGH THE

```
1   FILES, AND I KNOW YOU'LL SAY, OH, THAT'S SO BURDENSOME.  THAT'S

2   SO BURDENSOME.  BUT WE HAVE TO GIVE -- THE DEFENDANTS DESERVE A

3   FAIR HEARING.

4              MR. LEUNG:  WELL, YOUR HONOR --

5              THE COURT:  SO EITHER THE GOVERNMENT'S GOING TO HAVE

6   TO SAY, YES, WE'LL DO IT, OR THERE ARE GOING TO BE SUBPOENAS.

7              MR. LEUNG:  IF I COULD CLARIFY THAT, YOUR HONOR.

8   THE GOVERNMENT, AS A PRACTICAL MATTER, WOULD BE WILLING TO

9   CONDUCT THE REVIEW.  WHAT WE DON'T WANT IS FOR -- WHICH IS WHAT

10  THE DEFENSE MOTION WOULD SUGGEST IS TO HOLD AS A MATTER OF LAW

11  THAT THE SAN FRANCISCO POLICE DEPARTMENT AND ANY OTHER LOCAL OR

12  STATE LAW ENFORCEMENT AGENCIES ARE THE AGENTS OF THE

13  GOVERNMENT.

14             THE COURT:  WELL, WHAT DO YOU MEAN, YOU'RE WILLING

15  TO CONDUCT THE REVIEW?

16             MR. LEUNG:  WE ARE WILLING TO -- TO -- IF WE GET

17  PERMISSION TO REVIEW THE FILES OF SAN FRANCISCO POLICE

18  DEPARTMENT, WE WILL CONDUCT THE REVIEW OURSELVES.  WE WILL

19  ASSIST IN THE CONDUCT OF THE REVIEW.  HOWEVER --

20             THE COURT:  "WE" BEING WHO?

21             MR. LEUNG:  "WE" BEING THE FEDERAL GOVERNMENT, BEING

22  LAW ENFORCEMENT AGENTS AND OTHERS.

23             THE COURT:  WELL, THAT'S --

24             MR. LEUNG:  "WE" BEING ME AS WELL.

25             THE COURT:  SUBJECT TO SOME OF THESE PARTICULARS
```

1    BEING WORKED OUT, THAT MIGHT BE A WAY TO OBVIATE THIS WHOLE

2    PROBLEM.

3              **MR. LEUNG:**  CERTAINLY, YOUR HONOR.

4              **THE COURT:**  THEN WE DON'T HAVE TO HAVE A LOT OF

5    RULINGS.  BUT RIGHT NOW, I GOT MOTIONS, AND I NEED TO MAKE

6    RULINGS.

7              **MR. LEUNG:**  BUT WE THINK IT'S LEGALLY UNTENABLE FOR

8    THE DEFENSE TO ARGUE THAT EVERY LOCAL AND STATE AGENCY FROM

9    WHICH THE FEDERAL GOVERNMENT HAS GOTTEN ANY PIECE OF

10   INCULPATORY INFORMATION BECOMES AGENTS FOR PURPOSES OF BRADY.

11   THAT IS CONTRARY TO WELL-ESTABLISHED LAW.

12             **THE COURT:**  WELL, WHEN -- WHEN, IF EVER, COULD A

13   STATE AGENCY, IN YOUR VIEW, BE SUCH AN AGENT?

14             **MR. LEUNG:**  I DON'T THINK IT CAN BE.  I THINK, FOR

15   INSTANCE, IF A LOCAL LAW ENFORCEMENT OFFICER IS -- IS ASSIGNED

16   TO A FEDERAL CONTROL TASK FORCE, THAT'S ONE SITUATION, BECAUSE

17   UNDER THOSE CIRCUMSTANCES, THAT TASK FORCE OFFICER BECOMES

18   SUBJECT TO THE CONTROL OF THE FEDERAL GOVERNMENT.

19             OTHERWISE, THE -- THE OFFICER IS WORKING FOR A

20   DIFFERENT SOVEREIGN; THAT IS, THE STATE GOVERNMENT.  OTHERWISE,

21   YOUR HONOR, THE FEDERAL GOVERNMENT COULD BE -- COULD BE HELD

22   STRICTLY LIABLE FOR, AS YOU POINTED OUT --

23             **THE COURT:**  NO, IT'S NOT STRICT LIABILITY.  IT'S --

24   THERE HAS TO BE SOME -- NO ONE CAN EXPECT, EVEN THE FEDERAL

25   GOVERNMENT, TO FIND SOME NUGGET OF GOLD UNDER SOME OBSCURE ROCK

1    EVEN IN A FEDERAL FILE.

2              **MR. LEUNG:**  WELL, THAT'S WHAT THE DEFENSE MOTION --

3              **THE COURT:**  WELL, THEY'RE WRONG ABOUT THAT.  THEN

4    NOBODY -- THAT'S IMPOSSIBLE.  I SPENT 25 YEARS LOOKING FOR

5    DOCUMENTS IN VARIOUS PLACES, AND YOU CAN NEVER BE CERTAIN THAT

6    YOU'VE FOUND EVERYTHING, EVEN WHEN YOU'RE ACTING WITH THE

7    UTMOST GOOD FAITH, AND THE GOVERNMENT'S NOT GOING TO BE HELD --

8    THAT'S A RIDICULOUS STANDARD, MR. BALOGH.

9              **MR. BALOGH:**  DID I SAY THAT?

10                  (LAUGHTER.)

11             **THE COURT:**  I'M NOT -- BUT WHAT YOU CAN'T -- BUT IT

12   DOES HAVE TO BE A LOT MORE -- A LOT MORE DUE DILIGENCE THAN

13   SIMPLY ASKING SOMEBODY ON THE PHONE, BY THE WAY, ARE THERE ANY

14   EXCULPATORY DOCUMENTS, 'CAUSE YOU KNOW THEY'RE GOING TO SAY NO.

15             YOU HAVE TO -- YOU KNOW, MAYBE I CAN'T ORDER YOU TO

16   GO DOWN THERE YOURSELF, BUT SOMEBODY'S GOT TO GO DOWN THERE AND

17   DO SOME DUE DILIGENCE.  ONCE THE DUE DILIGENCE IS DONE, IF

18   SOMETHING'S MISSED, FINE, IT'S MISSED.  BUT IT'S NOT -- THAT

19   WOULDN'T BE A BRADY VIOLATION.

20             **MR. BALOGH:**  WELL, MAY I BE HEARD, YOUR HONOR?

21             **THE COURT:**  OKAY.

22             **MR. BALOGH:**  THANK YOU.

23             I AGREE WITH MR. LEUNG ABOUT VERY LITTLE.  I DO

24   AGREE WITH ONE THING HE SAID, THAT WHEN THINGS ARE IN YOUR

25   POSSESSION, THAT'S CLEARLY A BRADY OBLIGATION.  BRADY IS NOT

1    GOVERNED BY AGENCY.  <u>BRADY</u> IS GOVERNED BY TWO THINGS, DILIGENCE

2    AND ACCESS.

3              JUST LIKE WITH STATE AGENCIES, CIVILIAN WITNESSES

4    CAN HAVE <u>BRADY</u> INFORMATION.  A CIVILIAN WITNESS CAN BE

5    INTERVIEWED AND SAY I HAVE THESE DOCUMENTS AND THEY INCULPATE

6    MR. BABCOCK'S CLIENT.  THESE OVER HERE, THEY EXCULPATE

7    MR. GOODMAN'S CLIENT.  A FEDERAL AGENT LEARNING THIS CAN'T SAY,

8    OH, I'LL TAKE THOSE REGARDING BABCOCK.  OH, THOSE GOODMAN ONES,

9    YOU'RE NOT OUR AGENT, YOU'RE NOT IN OUR CONTROL, IF HE

10   SUBPOENAS YOU, GOOD FOR THEM.  BUT WE'RE NOT LAYING HANDS ON

11   IT.  IT'S NOT -- IT'S NOT OURS.

12             THAT'D BE A <u>BRADY</u> VIOLATION, WHEN A GOVERNMENT AGENT

13   WORKING ON THIS CASE LEARNS OR SHOULD LEARN OF EXCULPATORY

14   INFORMATION THAT REQUIRES AN AFFIRMATIVE DUTY TO OBTAIN IT AND

15   PRODUCE IT AS A PREDICATE TO ANY FAIR TRIAL.  PLAIN AND SIMPLE.

16   WHETHER IT'S --

17             **THE COURT:**  WHAT IS THE DECISION THAT -- IN YOUR

18   MR. BABCOCK EXAMPLE -- I'VE NEVER SEEN SUCH A DECISION.  WHERE

19   DID YOU GET THAT IDEA?

20             **MR. BALOGH:**  THAT'S <u>KYLES</u> VS. -- THAT'S <u>KYLES</u> VS.

21   <u>WHITLEY</u>.  THAT'S THE DUTY TO LEARN.  IF YOU'RE TOLD OF

22   INFORMATION AND YOU DECIDE NOT --

23             **THE COURT:**  I THOUGHT THAT INVOLVED POLICE, THOUGH.

24   THAT DIDN'T INVOLVE A PRIVATE LAWYER.

25             **MR. BALOGH:**  NO, I'M TALKING ABOUT THE -- I'M

1    TALKING ABOUT ANY GOVERNMENT AGENT INVESTIGATING THE --

2    INTERVIEWING A WITNESS WHO HAS THIS TYPE OF INFORMATION.

3              THE POINT I'M MAKING IS HE'S SAYING IT HAS TO DO

4    WITH AGENCY.  IF A FEDERAL INVESTIGATOR INTERVIEWS A CIVILIAN

5    WITNESS AND THE CIVILIAN WITNESSES SHOWS THEM A FILE OF

6    DOCUMENTS, ONE INCULPATORY, ONE EXCULPATORY, ONCE THE FEDERAL

7    AGENT LEAVES THE EXCULPATORY -- HE HAS -- TO PICK IT UP AND

8    PROVIDE IT.  HE CAN'T SAY, OH, I DON'T COLLECT EXCULPATORY

9    INFORMATION.  THIS ISN'T MY JOB.  HE KNOWS ABOUT IT, AND

10   THAT -- THAT KNOWLEDGE IS TRANSMUTED TO THE U.S. ATTORNEY, AND

11   THAT NEEDS TO BE TURNED OVER.  I'M TALKING ABOUT A FEDERAL

12   AGENT.

13             THAT'S WHERE BRADY COMES FROM.  WHEREVER HE FINDS

14   BRADY.  WHEREVER HE FINDS IT IN AN SFPD FILE, IN AN ATF FILE,

15   IN ANY FILE ON THE STREET FROM A CIVILIAN WITNESS.  THAT

16   CIVILIAN WITNESS DOESN'T BECOME AN AGENT FOR BRADY.  IT'S ABOUT

17   ACCESS.

18             AND IN THIS CASE, WHAT THE RECORD ALREADY SHOWS SO

19   FAR, AT LEAST WITH RESPECT TO THE SFPD IS THE FEDERAL AGENCY

20   RUNNING THIS INVESTIGATION HAS HAD ACCESS.  THAT IS ONE REASON

21   WE NEED TO HAVE AN EVIDENTIARY HEARING, BECAUSE MR. LEUNG

22   FOCUSED OUR MOTION ON PERSPECTIVE, WHAT THIS COURT'S GOING TO

23   REQUIRE THEM TO DO.

24             THE FIRST STEP IS TO FIND OUT WHAT HAVE THEY DONE.

25   DID THEY HAVE ACCESS TO ALL THIS EXCULPATORY STUFF AND OPT NOT

1    TO TAKE IT?  THAT'S A QUESTION I THINK'S IMPORTANT TO RESOLVE

2    REGARDING THE QUESTION OF WHETHER OR NOT THERE'S BEEN FEALTY

3    AND FIDELITY TO BRADY.

4            SO THE FIRST STANDARD IS ACCESS TO MATERIAL, AND

5    THAT INCLUDES EVERY AGENCY THAT HAS WORKED ON THIS CASE.  THEY

6    LIST IN THIS PRESS RELEASES IDENTIFYING EVERY STATE, LOCAL, AND

7    INTERNATIONAL AGENCY WHO'S WORKED ON IT, WHO'S PARTICIPATED.

8    WE NEED TO KNOW WHAT INFORMATION WAS SHARED AND HOW MUCH ACCESS

9    DID THEY HAVE.  DID THEY COLLECT THE EXCULPATORY INFORMATION OR

10   DID THEY NOT.

11           AND IF THEY DIDN'T, I WOULD LIKE TO KNOW WHY.

12           **THE COURT:**  WELL, LET ME GIVE YOU AN EXAMPLE.  LET'S

13   SAY THAT I NOTICE THAT THE CALIFORNIA HIGHWAY PATROL WAS LISTED

14   IN -- IN THE -- JOE RUSSONIELLO'S THING SAYING THAT THIS

15   PROSECUTION HAD BEEN BROUGHT.

16           LET'S SAY -- I'M MAKING THIS PART UP 'CAUSE I DON'T

17   KNOW.  BUT LET'S SAY THAT THE ONLY THING THAT EVER GOT

18   COLLECTED WAS THAT -- WAS A DUI ON ONE DEFENDANT THAT THE

19   HIGHWAY PATROL SAID -- LET'S SAY THEY SENT IT IN SAYING WE

20   HEARD YOU GOT THIS INVESTIGATION GOING.  WE GOT THIS DUI ON ONE

21   OF THE PEOPLE IN YOUR INVESTIGATION.  HERE IT IS.  WE HOPE IT'S

22   OF USE TO YOU.  END OF STORY.

23           **MR. BALOGH:**  AND HAS THAT DUI BEEN PRODUCED TO US IN

24   DISCOVERY?

25           **THE COURT:**  LET'S SAY IT'S BEEN PRODUCED.

1        **MR. BALOGH:**  OKAY.

2        **THE COURT:**  AND SO THEN THE -- ARE YOU SUGGESTING,

3   THEN, THAT THE PROSECUTOR HAS A DUTY TO FIND OUT EVERY RANDOM

4   EXCULPATORY PIECE OF INFORMATION THAT MIGHT APPLY TO ANY OF THE

5   30-SOME-ODD DEFENDANTS?

6        **MR. BALOGH:**  NO.  AS STATED IN YOUR EXAMPLE, IF THE

7   CHP READ ABOUT THIS IN THE PAPER AND SENT THEM THE DUI FILE,

8   GOD BLESS THE CHP, AND THEY'RE OUT OF THIS.

9        **THE COURT:**  ALL RIGHT.  SO WHAT IF THE PROSECUTOR

10  CALLED UP AND SAID, WE WOULD LIKE TO HAVE -- WE HEARD FROM A

11  SOURCE THAT YOU HAVE SOME INFORMATION ON A DUI FROM ONE OF THE

12  DEFENDANTS.  IS THAT TRUE?

13        AND THEY SAY YES.

14        CAN YOU SEND US THAT FILE?

15        AND THEY SAID YES AND THEN SENT THE FILE.

16        DOES THAT -- BECAUSE IT'S INITIATED BY THE

17  PROSECUTOR, DOES NOW THE PROSECUTOR HAVE A DUTY TO GO THROUGH

18  AND FIND ANYTHING AND EVERYTHING THAT MIGHT BE USED TO IMPEACH

19  SOMEBODY IN THIS CASE?

20        **MR. BALOGH:**  THAT ENTIRE FILE'S BEEN PRODUCED.

21        **THE COURT:**  ENTIRE FILE'S BEEN PRODUCED.

22        **MR. BALOGH:**  NO, I DON'T BELIEVE SO.  NOT ON THOSE

23  FACTS EITHER.

24        **THE COURT:**  SO WHY IS IT ANY DIFFERENT IF THEY CALL

25  UP THE SFPD AND SAY, WE'D LIKE TO COME DOWN AND LOOK THROUGH

1    YOUR RECORDS AND FIND STUFF TO HELP US?

2              **MR. BALOGH:**  'CAUSE THEN THEY HAVE ACCESS, AND THEN

3    THEIR DUTY KICKS IN.  THEY'RE THERE.  AND YOUR EXAMPLE'S --

4    EVEN THE ACCESS YOU HAVE HERE, I DON'T THINK THAT FAIRLY

5    CHARACTERIZES WHAT HAPPENED, WHICH IS WHY WE NEED AN

6    EVIDENTIARY HEARING.  BUT THAT IS WHY WE COME IN ON THE FIRST

7    LEVEL.

8              THEY HAD ACCESS TO THESE DOCUMENTS, AND THE CONCERN

9    IS, WELL, THEY FLIP THROUGH THEM, IT'S INCULPATORY,

10   INCULPATORY, INCULPATORY -- IMPEACHING, WE DON'T TAKE THOSE

11   WITH US.

12                     (SIMULTANEOUS COLLOQUY.)

13             **THE COURT:**  THE FEDERAL AGENT --

14             **MR. BALOGH:**  THAT CAN BE A YOUNGBLOOD VIOLATION

15   RIGHT THERE, ARIZONA VS. YOUNGBLOOD.

16             **THE COURT:**  WELL, LET'S NOT GET INTO -- ALL RIGHT.

17   SO YOU'RE PUTTING A LOT OF EMPHASIS ON THE FACT THAT SOMEBODY

18   PHYSICALLY FROM THE FEDS WENT DOWN, FEDERAL AGENT --

19                     (SIMULTANEOUS COLLOQUY.)

20             **THE COURT:**  -- AND SAT AT THE HALL OF JUSTICE FOR A

21   FEW DAYS AND REVIEWED FILES.

22             **MR. BALOGH:**  THAT'S ONE WAY TO GET THERE.  THERE'S

23   TWO --

24             **THE COURT:**  WHY ISN'T THAT RIGHT, MR. LEUNG?  WHY

25   ISN'T THAT RIGHT, THAT IF A FEDERAL AGENT WENT DOWN AND SORTED

1    IT ALL OUT, THEY HAVE A DUTY TO SORT THE -- GET THE BRADY

2    MATERIAL AT THE SAME TIME THEY GET THE STUFF THAT YOU'RE GOING

3    TO USE.

4              **MR. LEUNG:**   THAT IS CORRECT, YOUR HONOR.  IF A

5    FEDERAL AGENT WENT DOWN TO THE POLICE AND WAS GIVEN ACCESS TO

6    THE POLICE FILES AND FOUND EXCULPATORY INFORMATION AND FAILED

7    TO -- AND THE GOVERNMENT FAILED TO DISCLOSE IT, THEN THAT WOULD

8    BE A BRADY VIOLATION.  THE GOVERNMENT DOESN'T -- DOESN'T

9    DISPUTE THAT.

10             WHAT THE GOVERNMENT DISPUTES IS THE -- WHAT THE --

11   IS WHETHER THE SFPD BECOMES AN AGENT BY VIRTUE OF ITS PROVIDING

12   INFORMATION TO THE FEDERAL GOVERNMENT.

13             MR. BALOGH'S EXAMPLE ABOUT A FEDERAL LAW ENFORCEMENT

14   OFFICER INTERVIEWING A CIVILIAN WHO MAY HAVE EXCULPATORY

15   INFORMATION AND THEN FAILING TO DISCLOSE IT MISCONSTRUES THE

16   CONCEPT OF BRADY.  MR. BALOGH IS FIXATED ON DILIGENCE AND

17   CONTROL.

18             BUT THE IMPORTANT INQUIRY REMAINS AGENCY, BECAUSE AT

19   THAT POINT, WHEN THE LAW ENFORCEMENT OFFICER INTERVIEWS THAT

20   CIVILIAN WITNESS, THE LAW ENFORCEMENT OFFICER, WHICH IS A

21   FEDERAL AGENT, HAS CUSTODY AND CONTROL AND POSSESSION OF

22   EXCULPATORY INFORMATION.  THE CIVILIAN WITNESS DOESN'T BECOME

23   AN AGENT BY VIRTUE OF BEING INTERVIEWED.  RATHER, THE FEDERAL

24   AGENT WHO CONDUCTS THE INTERVIEW REMAINS THE AGENT.  AND AS

25   SOON AS HE ACQUIRES CUSTODY AND POSSESSION OF THE INFORMATION,

1    THEN IT'S THE GOVERNMENT'S OBLIGATION TO DISCLOSE IT.

2            **MR. BALOGH:**  LET'S SAY HE DOESN'T TAKE IT FROM THE

3    WITNESS.

4            **MR. LEUNG:**  THEN THAT WOULD BE A BRADY VIOLATION.

5    THAT WOULD BE CORRECT.  BUT THE INQUIRY -- THE RELEVANT CONCEPT

6    OF AGENCY IS THAT THE LAW ENFORCEMENT AGENT AT THAT POINT IN

7    TIME IS AN AGENT OF THE FEDERAL PROSECUTION.  THERE'S NO

8    DISPUTE ABOUT THAT.

9            I THINK WHAT MR. BALOGH, BY EXTENSION IN HIS MOTION,

10   WOULD ASK IS THAT THE GOVERNMENT MUST UNDERTAKE A REVIEW OF

11   EVERY SINGLE FILE OUT THERE; THAT IS, THE AGENT -- THE FEDERAL

12   AGENTS MUST REVIEW ALL KNOWN CIVILIAN WITNESSES, AND,

13   THEREFORE, GARNER UP OR INVESTIGATE AND FIND ANY POSSIBLE BRADY

14   MATERIAL THAT'S OUT THERE.  THAT'S WHAT THE MOTION SAYS ON ITS

15   FACE.

16           IT'S NOT ENOUGH FOR THE FEDERAL GOVERNMENT TO

17   CONDUCT A REVIEW OF FILES RELATED TO PARTICULAR DEFENDANTS.

18   RATHER, I BELIEVE -- AND I THINK THIS IS A GOOD-FAITH READING

19   OF THE MOTION -- WHAT THE DEFENSE WANTS IS FOR THE GOVERNMENT

20   TO REVIEW THE FILES OF EVERY SINGLE AGENCY THAT'S PROVIDED

21   INFORMATION IN THE FEDERAL PROSECUTION, AND THAT'S CLEARLY

22   WRONG.

23           SO BY -- BY THE CHP EXAMPLE, AGAIN, IF THE CHP, AT

24   THE GOVERNMENT'S REQUEST -- AT THE FEDERAL GOVERNMENT'S REQUEST

25   PRODUCED A FILE RELATING TO A DEFENDANT, THE GOVERNMENT WOULD

1    BE HAPPY TO REVIEW THAT FILE AND SEE WHETHER THERE'S

2    EXCULPATORY INFORMATION AS WELL.

3            BUT THE GOVERNMENT'S READING OF THE DEFENSE MOTION

4    IS THAT IF WE GET THAT FILE, WE THEN HAVE AN OBLIGATION TO

5    REVIEW EVERY SINGLE FILE OF THE CHP FOR POSSIBLE BRADY

6    MATERIAL.

7            **THE COURT:**  ARE YOU GOING -- GO BACK TO WHAT

8    ACTUALLY HAPPENED HERE.  WHEN YOUR FEDERAL AGENTS WENT TO THE

9    HALL OF JUSTICE TO REVIEW DOCUMENTS, DID THEY COPY EVERYTHING

10   THEY LOOKED AT?

11           **MR. LEUNG:**  WE COPIED -- IT DEPENDS ON THE

12   PARTICULAR FILES, YOUR HONOR.  SOME THINGS WERE NOT DEEMED

13   RELEVANT.  WE CERTAINLY DID NOT IGNORE BRADY.  I CAN MAKE THAT

14   REPRESENTATION TO THE COURT.

15           WE REVIEWED FILES IN TOTO, OR AT LEAST WE REVIEWED

16   WHAT WE WERE GIVEN, AND WE COPIED EVERYTHING THAT WE WERE

17   ALLOWED TO COPY.

18           **THE COURT:**  WELL, BUT DID YOU COPY EVERYTHING THAT

19   YOU HAD ACCESS TO?

20           **MR. LEUNG:**  NO, BECAUSE A LOT OF THE MATERIALS WERE

21   NOT RELEVANT.  THEY CERTAINLY WEREN'T BRADY, AND I WOULD MAKE

22   THAT REPRESENTATION BECAUSE THE AGENTS WERE INSTRUCTED

23   SPECIFICALLY TO COLLECT EXCULPATORY INFORMATION AS WELL.

24           **THE COURT:**  WHAT ABOUT IMPEACHMENT MATERIAL?

25           **MR. LEUNG:**  SAME THING -- WELL, YOUR HONOR -- YES,

1    BECAUSE THESE WERE DEFENSE -- THESE WERE FILES OF CASES AGAINST

2    THE DEFENDANTS.

3            **MR. SABELLI:**  YOUR HONOR, MAY I BE HEARD ON THIS

4    ISSUE?

5            **MR. BALOGH:**  ACTUALLY, I'D LIKE TO FINISH MY

6    PRESENTATION, MR. SABELLI.  THANK YOU.

7            **THE COURT:**  LET'S HEAR.

8                    (SIMULTANEOUS COLLOQUY.)

9            **MR. BALOGH:**  I HAVE A COUPLE OF PROBLEMS BEFORE WE

10   MOVE ON TO THE AGENCY ISSUE.  LET'S GET THE CHP EXAMPLE.

11   HERE'S WHERE -- JOINT INVESTIGATION, THE SECOND PRONG WHICH

12   GOES BEYOND ACCESS.

13           IF THE CHP IS WORKING WITH THE SAME CONFIDENTIAL

14   INFORMANTS, MARTINEZ AND BAD BOY, OR THE SFPD GOES TO

15   DEBRIEFINGS WITH MARTINEZ AND BAD BOY, AND THEY PLAN CONTROLLED

16   PURCHASES, AND THEY PLAN RECORDINGS OF GUN TRANSACTIONS OR THEY

17   PLAN RECORDINGS WITH THE CHP OF STOLEN CARS, AND THEY

18   PARTICIPATE, AND THEY GO TO THE MEETING BEFOREHAND WHEN ALL THE

19   AGENTS GET TOGETHER IN THE MORNING, AND THEY PLAN HOW THEIR

20   DAY'S GOING TO GO, AND THEY EXECUTE THEIR PLAN TOGETHER AND

21   THEN DEBRIEF AFTERWARDS, WHEN THERE'S THAT LEVEL OF

22   INVOLVEMENT, WE GET NOT ONLY -- WE THEN HAVE AN OBLIGATION

23   FOR -- AN ATTESTATION OF ALL THE FILES RELATED TO THE

24   DEBRIEFINGS FOR BAD BOY AND THE DEBRIEFINGS FOR MARTINEZ THAT

25   ARE IN THE CHP'S POSSESSION, THAT THEY'VE BEEN SEARCHED, AND WE

1    GET ALL THAT IMPEACHMENT, THAT ALL THEIR WORK REGARDING ANY

2    WITNESS THAT'S -- MAKES STATEMENTS INCONSISTENT WITH OTHER

3    STATEMENTS OF OTHER WITNESSES, THUS THERE'S A CONFLICT IN

4    FACTS, WE GET THOSE DOCUMENTS.

5              AND THAT BECOMES AN OBLIGATION OF THIS FEDERAL

6    PROSECUTION 'CAUSE THEY'RE THE ONES THAT GOT THE CHP INVOLVED

7    TO GO RECORD STAGED BUY -- CAR BUYS.

8              **THE COURT:**  WHAT ARE YOU SAYING --

9              **MR. BALOGH:**  WELL -- AND THEY'RE THE ONES THAT GOT

10   BAD BOY INVOLVED --

11             **THE COURT:**  I DON'T KNOW WHO BAD BOY IS, BUT --

12             **MR. BALOGH:**  HE'S A CONFIDENTIAL INFORMANT NO. 2,

13   SF1211.

14             **THE COURT:**  OKAY.  IN THIS CASE, THOUGH, WE JUST

15   HEARD MR. LEUNG SAY THAT THE FEDERAL AGENT WHO WENT TO THE

16   HALL OF JUSTICE WAS SPECIFICALLY LOOKING FOR BRADY MATERIAL AND

17   GATHERED ANY BRADY MATERIAL THAT THEY HAD ACCESS TO.

18             **MR. BALOGH:**  I DON'T THINK THAT'S EXACTLY WHAT HE

19   SAID.  THEY SAID THEY PHOTOCOPIED SOME STUFF, THEY DEEMED SOME

20   STUFF IRRELEVANT --

21             **THE COURT:**  BUT NONE OF NON- -- HE SAID ALL OF THE

22   STUFF THAT WAS NOT COPIED INCLUDED ZERO BRADY MATERIAL.

23             **MR. BALOGH:**  THEN WE NEED AT LEAST A DECLARATION

24   UNDER PENALTY OF PERJURY, BECAUSE RIGHT NOW IN THE FACTUAL

25   RECORD, WE HAVE THEM DENYING THAT THE ATF, A FEDERAL AGENT, IS

1  AN AGENT FOR BRADY.  WE HAVE THEM -- A NOTICE TELLING US THAT

2  THE D.E.A. WHO TESTED THE DRUGS ON AT LEAST SIX COUNTS IN THIS

3  INDICTMENT IS NOT AN AGENT FOR BRADY.  THEY LATER AMEND THAT.

4          WE HAVE A GOVERNMENT WHO SAID TODAY NO LESS THAN

5  FIVE TIMES, THEY UNDERSTAND AND WILL COMPLY WITH BRADY, AND THE

6  ONLY THING IN THE RECORD IS STATEMENTS THAT PROVE THEY DON'T

7  UNDERSTAND IT AND NOT ONE DECLARATION TO CONTEST THE JOINT

8  NATURE OF THIS INVESTIGATION TO PROVE THAT ALL THESE STATE

9  AGENCIES WERE, IN FACT, PARTICIPATING IN THE JOINT

10  INVESTIGATION.  AND THEY ASK YOU NOW TO SAY, WE'LL FIX IT, JUST

11  DON'T ISSUE ANY ORDERS, JUDGE, PLEASE.

12          AS OPPOSED TO HAVING HEIGHTENED COMFORT WITH THE

13  GOVERNMENT'S ACTS SO FAR, MY -- MY HEART IS RACING.  THIS IS

14  THE SOLE PREDICATE TO A FAIR TRIAL.  AND NOTHING THEY HAVE DONE

15  TO DATE SATISFY (SIC) ME, SO WITH ALL DUE RESPECT TO MY

16  COLLEAGUE MR. LEUNG, HAVING HIM SAY TO YOU, YOUR HONOR, OH,

17  THEY PHOTOCOPIED ALL THE BRADY I TOLD THEM TO, THAT'S NOT GOING

18  TO DO IT FOR ME ON THIS FACTUAL RECORD.

19          I THINK WE NEED AN EVIDENTIARY HEARING WITH SWORN

20  WITNESSES, WE NEED COMPLIANCE WITH THESE SUBPOENAS, AND LET

21  THEM TELL THIS COURT UNDER OATH WHAT THEY DID, WHEN THEY DID

22  IT, WHAT THEY COLLECTED, AND IF THEY HAVE ALL THOSE DOCUMENTS,

23  THEN THIS IS NOTHING.  THEN THIS IS A TEMPEST IN A TEAPOT.  BUT

24  IF THEY HAVEN'T COLLECTED THEM OR THEY'VE COLLECTED THEM AND

25  NOT PRODUCED THEM, WE HAVE REAL ISSUES.

1          **THE COURT:**  BUT WE DON'T HAVE -- IS THERE ANY REASON

2    EVEN TO BELIEVE THAT THERE'S BEEN A <u>BRADY</u> VIOLATION?

3          **MR. BALOGH:**  IS THERE ANY REASON TO BELIEVE THEY'VE

4    SEARCHED FOR ANY EXCULPATORY DOCUMENTS?

5          **THE COURT:**  YES, THE PROSECUTOR SAYS HE HAS.

6          **MR. LEUNG:**  AND A REPRESENTATION FROM THE GOVERNMENT

7    IS USUALLY SUFFICIENT IN MOST CIRCUITS.

8          **THE COURT:**  EVEN THE -- EVEN IN THE <u>PRICE</u> CASE, IT

9    SAYS THAT YOU HAVE TO HAVE SOME PLAUSIBLE BASIS FOR BELIEVING

10   THAT THERE'S BEEN A <u>BRADY</u> VIOLATION BEFORE YOU GET INTO AN

11   EVIDENTIARY HEARING.

12         **MR. LEUNG:**  AND YOUR HONOR, WE WOULD --

13              (SIMULTANEOUS COLLOQUY.)

14         **MR. BALOGH:**  -- ABOUT, ONE, THE NATURE OF THE ACCESS

15   FOR 15 AGENCIES THAT HAVE BEEN LISTED THAT WE'VE SET FORTH THE

16   FACTUAL BASIS FOR JOINT INVESTIGATION.  WE'VE SUPPORTED THIS BY

17   ADMISSIONS OF A PARTY OPPONENT.  THEY'VE CONTESTED THIS IN THE

18   BRIEF BUT NOT IN DECLARATION FORM.

19         THE RECORD IN THIS CASE STANDS RIGHT NOW THAT THIS

20   IS A JOINT INVESTIGATION WHICH THE UNITED STATES CONTROL HAS --

21   HAS EXERTED CONTROL OVER ALL THESE STATE AGENCIES.

22         MR. LEUNG SAYS HE CHALLENGES THAT FACTUALLY, BUT

23   HE'S NOT OFFERED ONE SHRED OF COMPETENT EVIDENCE TO CHALLENGE

24   THE ADMISSIONS OF JOSEPH P. RUSSONIELLO, THE OTHER PRESS

25   RELEASES ISSUED FROM THE F.B.I., AND JUST THE FACTUAL

1   CIRCUMSTANCES OF THIS CASE, AND MS. WAGNER'S DECLARATION, IN

2   WHICH SERGEANT MCDONNELL ATTESTS UNDER PENALTY OF PERJURY THAT

3   THEY HAVE HAD ACCESS.

4              SO TO AVOID THE JOINT NATURE INVESTIGATION FINDING,

5   WHICH IS THE ONLY ONE THE COURT CAN FIND RIGHT NOW ON THIS

6   RECORD, THERE NEEDS TO BE AN EVIDENTIARY HEARING AT WHICH WE'RE

7   ENTITLED TO EXAMINE WITNESSES, BOTH FROM THE SFPD AND ICE.

8              **MR. LEUNG:**  YOUR HONOR --

9              **MR. BALOGH:**  BUT ON THIS RECORD, THAT'S THE ONLY --

10  THAT'S -- IT'S A JOINT INVESTIGATION.  THEY'RE IN CONTROL.

11             **THE COURT:**  ALL RIGHT.  WE'RE GOING TO BRING TO IT A

12  CLOSE.

13             GO AHEAD, MR. LEUNG.

14             **MR. LEUNG:**  WELL, YOUR HONOR, WE WOULD NOTE THAT --

15  I AM NOT -- I AM AT AWARE OF ANY NINTH CIRCUIT CASE LAW THAT

16  AFFIRM HOLDING AN EVIDENTIARY HEARING BEFORE ANY CLAIM OF BRADY

17  VIOLATION TO ASCERTAIN WHETHER THE GOVERNMENT IS COMPLYING WITH

18  ITS BRADY OBLIGATIONS.  RATHER, EVERY CASE ALLEGING A BRADY

19  VIOLATION HAS BY DEFINITION OCCURRED AFTERWARDS.

20             **THE COURT:**  WELL, MAYBE, BUT I DO THINK THAT A JUDGE

21  WOULD HAVE THE AUTHORITY, IF THERE WAS SOME REASON TO BELIEVE

22  THERE HAS BEEN A BRADY VIOLATION, TO HOLD AN EVIDENCE HEARING,

23  SO I DON'T BUY THAT ARGUMENT.  BUT I DO THINK THERE SHOULD BE

24  SOME REASON TO BELIEVE THAT THERE'S BEEN A VIOLATION.

25             BUT I COME BACK TO SOMETHING THAT WE TOUCHED ON

1    EARLIER, AND THAT WAS THAT IF YOU TAKE THE LOGICAL -- THE LOGIC

2    OF YOUR POSITION, THEN THE DEFENSE HAS A RIGHT TO SERVE RULE

3    17C SUBPOENAS ON MS. WAGNER AND TO MAKE OFFICER MCDONNELL KEEP

4    COMING DOWN TO THE COURTHOUSE WITH BOXES OF MATERIAL WHERE THEY

5    WILL HAVE THE RIGHT TO GO THROUGH IT AND HAVE THE SAME --

6    ROUGHLY THE SAME ACCESS THAT YOU HAD.

7            AND THAT HAS NOTHING TO DO WITH <u>BRADY</u>.  THAT'S

8    JUST --

9            **MR. LEUNG:**  THAT'S DISCOVERY, YOUR HONOR.  THAT'S

10   SUBJECT TO RULE 17C, CORRECT, AND SUBJECT TO MOTIONS TO MODIFY

11   OR QUASH.

12           **THE COURT:**  AND I -- AND -- WELL, IT'D BE -- YES,

13   BUT -- BUT, I KNOW FROM PRIOR EXPERIENCE, I'M TROUBLED BY -- I

14   THINK THOSE FILES PROBABLY HAVE ADDITIONAL MATERIAL.

15           NOW, I WANT TO SAY TO THE DEFENSE -- MR. SWANSON

16   KNOWS THIS BECAUSE HE HAD A EGREGIOUSLY OVERBROAD SUBPOENA THAT

17   WAS SO BROAD THAT NO JUDGE COULD POSSIBLY ENFORCE IT, AND SO I

18   DON'T THINK THAT'S THE WAY TO GO.  BUT RULE 17 SUBPOENA THAT

19   SAID I WANT TO SEE -- ONE OF YOU LAWYERS -- I FORGOT WHO

20   SAID -- I'LL LIMIT IT TO ONE FILE, AND I WON'T SAY WHO IT WAS,

21   BUT THAT WAS VERY REASONABLE, AND I ORDERED THEM TO BRING DOWN

22   THE ONE FILE.

23           NOW, MAYBE 15 FILES WOULD BE OKAY AS LONG AS IT'S

24   SOMETHING THAT IS MANAGEABLE.  I'M GOING TO APPROVE THESE RULE

25   17C SUBPOENAS TO -- ON SOMETHING THAT IS MANAGEABLE, BUT THESE

1   BROAD, QUOTE, BIG FIRM -- THINGS WITH LONG DEFINITIONS AND LONG

2   INSTRUCTIONS AND PAGE AFTER PAGE AFTER -- TOO MANY CATEGORIES,

3   TOO MANY -- IT WASN'T EVEN A PARTICULAR FILE.  IT WAS ANYTHING

4   ON SUBJECT "X," THAT'S TOO MUCH.  WE CAN'T HAVE THAT.  IT'S NOT

5   ENFORCEABLE.

6           SO I BRING -- THIS COMES BACK TO THE REASON I'M OFF

7   ON THIS SPEECH, THOUGH, MR. LEUNG, IS YOU SAID EARLIER, I -- I

8   WOULD WANT TO SEE THIS IN WRITING AND MAYBE THIS IS SOMETHING

9   THAT YOU COULD ROLL INTO YOUR CONVERSATION WITH MR. SABELLI, IF

10  THERE WAS A CONCRETE PROGRAM WHEREBY THE GOVERNMENT WOULD SAY

11  HERE'S WHAT WE'RE GOING TO DO AND THE RESOURCES THAT WE WILL

12  COMMIT TO GOING TO THE HALL OF JUSTICE TO REVIEW THE MATERIALS,

13  AND WE PROMISE WE'RE GOING TO TURN OVER ALL THE -- ANYTHING

14  THAT'S EVEN ARGUABLY BRADY MATERIAL, AT LEAST MAYBE THAT WOULD

15  BE A REASON TO POSTPONE ANY RULE 17C SUBPOENAS, AND MAYBE THAT

16  WOULD OBVIATE THE PROBLEM.

17          **MR. LEUNG:**  BEGINNING WITH THE PRODUCTION OF THE

18  FIRST ITEMS OF DISCOVERY IN THIS MATTER LAST NOVEMBER, YOUR

19  HONOR, WE HAVE PUT IN WRITING THAT THE GOVERNMENT UNDERSTANDS

20  ITS BRADY OBLIGATIONS AND WILL CONTINUE TO COMPLY WITH THEM.

21  THUS FAR, WE HAVE FOUND NO BRADY MATERIALS.  I WOULD STATE ON

22  THE RECORD AGAIN AS AN OFFICER OF THE COURT THAT WE ARE AWARE

23  OF OUR BRADY OBLIGATIONS AND WILL COMPLY WITH THEM.

24          **THE COURT:**  BUT, YOU KNOW, THE PROSECUTORS SAY THAT

25  IN EVERY CASE.  IT SOUNDS LIKE A BROKEN RECORD, BUT, YOU KNOW,

1    THERE'S GOT TO BE SOME KIND OF -- THERE'S GOT TO BE SOMETHING

2    DOWN THERE THAT CAN HELP THE DEFENSE AND TO SAY THERE'S ZERO

3    MATERIAL JUST SOUNDS --

4              **MR. LEUNG:**  YOUR HONOR --

5              **THE COURT:**  IT'S HARD TO BELIEVE.

6              **MR. BALOGH:**  MAYBE I HAVEN'T SEEN IT, YOUR HONOR,

7    BUT I'VE SEEN NO IMPEACHMENT MATERIAL ABOUT THE CONFIDENTIAL

8    INFORMANTS.

9              CAN YOU ATTEST WE HAVE THEIR CRIMINAL RECORDS, ALL

10   THE PROMISES THEY'VE MADE IN THIS CASE, ALL THE BENEFITS

11   THEY'VE RECEIVED, THE MONIES THEY'VE GOTTEN REGARDING, LET'S

12   SAY, JAIME MARTINEZ; THAT'S ALL BEEN PRODUCED TO US?

13             **MR. LEUNG:**  NO, BECAUSE THAT AS WE DISCUSSED --

14             **MR. BALOGH:**  IS BRADY.

15             **MR. LEUNG:**  THAT'S GIGLIO.

16             **THE COURT:**  WELL, ISN'T THAT PART OF BRADY?

17             **MR. LEUNG:**  THAT IS PART OF BRADY, AND, YOUR HONOR,

18   WE HAD DISCUSSED WITH THE DEFENSE -- WE HAD TOLD THE DEFENSE

19   THAT WE WERE NOT PROVIDING -- THAT WE WERE PROVIDING RULE 16

20   MATERIAL.  THAT'S 3500 MATERIAL, THAT IS --

21             (SIMULTANEOUS COLLOQUY.)

22             **THE COURT:**  WELL, NO, IF IT'S A JENCKS ACT THING,

23   THE NINTH CIRCUIT'S VERY CLEAR, EVEN BRADY, YOU DON'T GET THAT

24   UNTIL AFTER THE TRIAL STARTS.

25             **MR. BALOGH:**  THAT'S NOT JENCKS ACT.  THEIR

1    CRIMINAL -- JENCKS IS PRIOR STATEMENTS THEY'VE MADE.  THEIR

2    CRIMINAL RECORD, PROMISES BY THE GOVERNMENT, THIS IS

3    IMPEACHMENT MATERIAL.  THAT'S WHAT BRADY SAYS.

4          THE COURT:  WELL, IF IT'S NOT A STATEMENT, THEN IT'S

5    NOT JENCKS ACT.

6          MR. BALOGH:  AND HE JUST SAID HE HASN'T GIVEN TO IT

7    TO US AFTER TELLING YOU HE'S COMPLIED.

8          MR. LEUNG:  WE HAVE COMPLIED WITH BRADY, YOUR HONOR.

9    BRADY HOLDS THAT WE MUST PRODUCE MATERIAL IN A TIMELY MANNER TO

10   ALLOW THE DEFENSE TO USE IT AT TRIAL.

11          MR. BALOGH:  OR MOTIONS.  GAMEZ-ORDUNEZ (PHONETIC).

12          THE COURT:  DEPENDS ON THE CIRCUMSTANCES, BUT WHY

13   HAVEN'T YOU TURNED OVER THE IMPEACHMENT MATERIAL HE JUST --

14   MR. BALOGH --

15          MR. LEUNG:  THE -- MOST OF THE IMPEACHMENT MATERIAL

16   IS JENCKS ACT.  ALSO WE DO NOT WISH TO IDENTIFY OUR POTENTIAL

17   WITNESSES BY DISCLOSING CRIMINAL RECORDS AT THIS POINT.

18          THE COURT:  WELL, OKAY.  LET'S JUMP TO THAT FOR A

19   SECOND.  IN THE ORDER THAT I WAS GOING TO PUT OUT ON BRADY

20   MATERIAL, I WAS GOING TO GIVE YOU A DEADLINE BEFORE TRIAL THAT

21   WOULD BE, YOU KNOW, SUBSTANTIALLY INTO THE FUTURE, SHORTLY

22   BEFORE TRIAL BUT BEFORE TRIAL SO THAT YOU -- BUT YOU -- THAT'S

23   THE KIND OF MATERIAL YOU WOULD HAVE TO TURN -- AND IT IS BRADY

24   MATERIAL, BUT I'M -- IT CONCERNS ME FOR YOU -- YOU HAVE BEEN

25   TELLING ME FOR AN HOUR YOU'VE COMPLIED WITH BRADY AND TURNED IT

1   ALL OVER AND -- OR THAT THERE WASN'T ANY, AND YET, THERE IS

2   BRADY MATERIAL BUT YOU'RE WISHING TO HOLD IT BACK.

3              WELL, IT'S OKAY TO HOLD IT BACK SO LONG AS WE KNOW

4   THAT THAT'S -- THERE'S A PLAN IN PLACE AS TO WHEN ALL THAT

5   KIND --

6              **MR. LEUNG:**  THAT'S CORRECT, YOUR HONOR.  THE

7   GOVERNMENT WAS UNDER THE -- THE GOVERNMENT HAD UNDERSTOOD THAT

8   IT WOULD PRODUCE IMPEACHMENT MATERIAL, GIGLIO MATERIAL PURSUANT

9   TO A SCHEDULE TO BE SET BY THE COURT, WHICH IS IN ADVANCE OF

10  TRIAL, AND WE HAVE ADVISED DEFENSE COUNSEL OF THIS, THAT WE

11  WOULD PRODUCE IMPEACHMENT MATERIAL IN THE FUTURE, THAT RIGHT

12  NOW, WE WERE PRODUCING RULE 16 MATERIAL AND BRADY MATERIAL,

13  BRADY IN THE TRUE SENSE OF BEING EXCULPATORY INFORMATION.

14             **THE COURT:**  WELL, ALL RIGHT.  THAT IS AN IMPORTANT

15  LIMITATION, THOUGH, ON WHAT -- BECAUSE I HAVE ALWAYS THOUGHT OF

16  BRADY AS BEING EVERYTHING, GIGLIO, INCRIMINATING -- I'M

17  SORRY -- EXCULPATORY PLUS IMPEACHMENT OF THE GOVERNMENT

18  WITNESSES.

19             **MR. LEUNG:**  THEN LET ME CLARIFY, YOUR HONOR.  WE

20  INTEND TO PRODUCE GIGLIO IMPEACHMENT MATERIAL THAT'S NON-JENCKS

21  ACT IN THE FUTURE, AND IF THE COURT WANTS TO SET A SCHEDULE,

22  THEN THAT'S FINE.

23             WE HAVE ADVISED DEFENSE COUNSEL THAT WE ARE NOT

24  PRODUCING IMPEACHMENT MATERIAL AT THIS POINT AND THAT WE WERE

25  LIMITING OUR PRODUCTION TO RULE 16 AND TRUE BRADY EXCULPATORY

```
1    MATERIAL.  AND I BELIEVE MR. BALOGH WAS PRESENT AT THAT

2    MEETING.  I DON'T THINK HE WAS PARTICULARLY HAPPY, BUT HE WAS

3    PRESENT.  A WHILE BACK --

4              THE COURT:  WELL --

5              MR. BALOGH:  I'M NOT --

6              THE COURT:  YOU CAN'T BE ASKING FOR THE -- YOU KNOW,

7    IF THEY PRODUCED -- THEY KNOW PROBABLY WHO THEIR WITNESSES ARE

8    GOING TO BE.  LET'S ASSUME HYPOTHETICALLY THERE ARE SOME

9    COOPERATING WITNESSES.  AND FOR THEM TO TURN OVER THE

10   IMPEACHMENT MATERIAL ON THOSE COOPERATING WITNESSES WOULD BE

11   TANT- -- IT WOULD BE REVEALING WHO THEIR WITNESSES ARE.  AND I

12   DON'T THINK YOU'RE ENTITLED TO THAT YET.

13             MR. BALOGH:  I'M NOT SAYING I AM.  WHAT I'M

14   CONCERNED ABOUT IS WHAT HAPPENED HERE, WHICH IS, JUDGE, WE'VE

15   GIVEN THEM ALL THE BRADY.  WE'RE COMPLYING WITH BRADY, AND WE

16   SEND THAT MESSAGE SO LOUDLY, AND WHEN YOU GET CALLED ON IT, WE

17   GET A LITTLE BACK PEDALING, NO, NO, NO, NO, NO, TRUE, TRUE

18   BRADY, WHICH -- A TERM I'VE NEVER --

19             MR. LEUNG:  I WOULD DISPUTE THAT ASSERTION, YOUR

20   HONOR --

21                  (SIMULTANEOUS COLLOQUY.)

22             MR. LEUNG:  -- VIGOROUSLY.

23             MR. BALOGH:  -- NUANCE -- OH, THAT'S GIGLIO, NO,

24   GIGLIO IS BRADY -- V. LAMBERT.  IT'S ALL ONE THING.

25   EXCULPATORY OR IMPEACHMENT EQUALS BRADY.
```

```
 1              THE COURT:  LOOK --

 2                    (SIMULTANEOUS COLLOQUY.)

 3              THE COURT:  I GOT BRING TO THIS MOTION TO AN END, SO

 4    WE'RE GOING TO -- AND ALSO, MR. SABELLI, YOU SAID YOU WANTED TO

 5    SAY SOMETHING ON THIS, OR NOT?

 6              MR. SABELLI:  YOUR HONOR --

 7              MR. BALOGH:  -- I HAVE FOUR PIECES, AND I'LL CLOSE.

 8    I'LL CEDE THE FLOOR.

 9              THE COURT:  ALL RIGHT.

10              MR. BALOGH:  ONE, IF THEY HAVE NO CONTROL OVER SFPD.

11    WE'RE GOING TO ACCEPT THESE REPRESENTATIONS.  WE AT LEAST NEED

12    AN EVIDENTIARY HEARING ON COMPLIANCE.  DID THE SFPD THEN COMPLY

13    WITH THEIR ACCESS?  DID THEY GIVE THEM ACCESS TO THIS

14    IMPEACHMENT MATERIAL?  AND WE'D ASK FOR AN EVIDENTIARY HEARING

15    ON THAT FACT BECAUSE MR. LEUNG IS NOW SAYING WE MAY HAVE HAD

16    ACCESS, BUT WE ONLY HAD ACCESS AS MUCH AS THEY GAVE US.  AND SO

17    WE AT LEAST HAVE SOMEBODY FROM THE SFPD CONFIRM THAT ALL THAT

18    BRADY IMPEACHMENT MATERIAL --

19              THE COURT:  HOW IS THE SFPD GOING TO KNOW?  THEY'RE

20    NEVER GOING TO KNOW FOR SURE.

21                    (SIMULTANEOUS COLLOQUY.)

22              THE COURT:  MAYBE YOU WOULD KNOW.  MR. LEUNG WOULD

23    KNOW, BUT THE SFPD --

24              MR. BALOGH:  THE GANG TASK FORCE OFFICERS WHO WERE

25    INVOLVED IN THE INVESTIGATION SHOULD KNOW, BUT THAT'S MY FIRST
```

| | |
|---|---|
| 1 | REQUEST.  THE SECOND PIECE YOU SAID, WE DON'T KNOW WE'VE HAD A |
| 2 | BRADY VIOLATION. |
| 3 | YOUR HONOR, WITH ALL DUE RESPECT, AGAIN, THE |
| 4 | GOVERNMENT STILL TODAY SAYS THE ATF IS NOT AN AGENCY SUBJECT TO |
| 5 | BRADY.  WE JUST READ INTO THE RECORD THAT THE ATF RECEIVED GUNS |
| 6 | FROM THE SFPD TO TEST THEM FOR THIS VERY CASE.  THEY'RE A |
| 7 | FEDERAL AGENCY WORKING ON THIS CASE.  THE AGENT WHO TESTED THE |
| 8 | GUNS HAS A HISTORY OF FALSIFYING RECORDS IF THEIR EQUIPMENT HAS |
| 9 | BEEN FOUND TO BE FAULTY. |
| 10 | MR. LEUNG SAYS HE DOESN'T HAVE TO TELL US THIS. |
| 11 | THAT'S THE ATF'S PROBLEM.  THEY'RE NOT OUR AGENT.  THAT'S THE |
| 12 | BRADY VIOLATION.  THAT'S THE LACK OF UNDERSTANDING.  THAT'S -- |
| 13 | MR. LEUNG:  ACTUALLY, IT WOULD BE A BRADY VIOLATION |
| 14 | IF WE FAILED TO DISCLOSE THAT MATERIAL IN TIME FOR TRIAL. |
| 15 | MR. BALOGH:  MR. -- |
| 16 | (SIMULTANEOUS COLLOQUY.) |
| 17 | MR. LEUNG:  MY APOLOGIES. |
| 18 | MR. BALOGH:  THREE, WHEN WE TALK ABOUT TIMING, YOUR |
| 19 | HONOR, AS WE'VE HAD THIS DISCUSSION BEFORE ABOUT REASONABLY IN |
| 20 | ADVANCE OF TRIAL.  I URGE THE COURT BEFORE WE ISSUE ANY ORDER |
| 21 | TO READ CLOSELY GAMEZ-ORDUNEZ.  WE GET IMPEACHMENT MATERIAL |
| 22 | BEFORE ANY FOURTH AMENDMENT MOTION, AT A MINIMUM, BEFORE ANY |
| 23 | PROCEEDING WHERE THE GOVERNMENT TAKES A CONTRARY POSITION TO -- |
| 24 | WHERE THEY HAVE FACTS THAT ARE CONTRARY TO WHAT THEY PRESENT. |
| 25 | THE COURT:  I AGREE. |

```
 1                    (SIMULTANEOUS COLLOQUY.)

 2            THE COURT:  IF THERE'S A SUPPRESSION MOTION OR A --

 3    SOMETHING LIKE THAT AND THE GOVERNMENT TRIES PUT ON EVIDENCE X,

 4    AND THEY GET OTHER NON-X EVIDENCE, THEY GOT TO TURN THAT OVER

 5    THEN.

 6            MR. BALOGH:  IN THIS CASE, THERE WILL BE FOURTH

 7    AMENDMENT MOTIONS AT STAGE THREE.  THERE WAS BASICALLY OMNIBUS

 8    SUBPOENA AFFIDAVIT AUTHORED BY CHRISTOPHER MERENDINO THAT

 9    RELIED HEAVILY ON STATEMENTS BY AGENT JAIME MARTINEZ, WHO IS

10    THE FIRST CONFIDENTIAL INFORMANT, CSSF1211 AND BAD BOY, AKA BAD

11    TOE, ET CETERA.

12            WE KNOW THESE PEOPLE'S NAME SO ROVIARO DOESN'T COME

13    IN.  WE GET THEIR STUFF.  THIS IS NOT A SECRET.  THIS IS NOT

14    WHAT YOU WERE JUST MENTIONING TO ME ABOUT OTHER TRIAL WITNESSES

15    THAT WE DON'T KNOW ABOUT WHO WE'RE TRYING TO PROTECT UNDER

16    ROVIARO.  WE KNOW THESE PEOPLES, AND THEIR STATEMENTS TO

17    MERENDINO WERE PART AND PARCEL TO HIS PROBABLE CAUSE SHOWING

18    FOR A HOST OF SEARCHES TO CHALLENGE THOSE SEARCHES, TO EVALUATE

19    THAT AFFIDAVIT.

20            WE NEED THE IMPEACHMENT MATERIAL THAT WAS AVAILABLE

21    THAT MERENDINO KNEW ABOUT WHEN HE AUTHORED THAT OMNIBUS SEARCH

22    WARRANT AFFIDAVIT.  SO AT LEAST WITH RESPECT TO TWO PRIME

23    WITNESSES, MARTINEZ AND BAD BOY, WE NEED THAT IMPEACHMENT

24    MATERIAL IN ADVANCE OF THE STAGE THREE MOTIONS, REASONABLY

25    ADVANCE SO WE CAN MARSHAL IT, USE IT, AND PREPARE THOSE
```

1   MOTIONS.

2              I THINK THAT'S ALL I HAVE TO SAY, YOUR HONOR.

3          **THE COURT:**  THANK YOU.  ALL RIGHT.

4          DID YOU WANT TO SAY --

5          **MR. LEUNG:**  I THINK THAT WOULD BE INCORRECT

6   CONCERNING THE DISCLOSURE OF IMPEACHMENT MATERIALS FOR AN

7   EVIDENTIARY HEARING, YOUR HONOR.  I THINK, LIKE ANY OTHER

8   EVIDENTIARY HEARING OR TRIAL, IMPEACHMENT MATERIAL MUST BE

9   PROVIDED FOR THE WITNESSES.  WHAT -- THE WITNESSES WILL BE

10  DETERMINED BASED ON WHAT TYPE OF MOTIONS ARE FILED AND WHAT

11  INQUIRIES ARE RAISED.  THERE MAY BE DISPUTED ISSUES OF FACT,

12  THERE MAY NOT BE, BUT WE CAN CROSS THAT BRIDGE LATER.

13             I WOULD JUST NOTE THAT FOR THE RECORD.

14         **THE COURT:**  MR. SABELLI?

15         **MR. SABELLI:**  YES, YOUR HONOR.  I'VE GOT A COUPLE OF

16  POINTS I'D LIKE TO MAKE.  I'M SORRY FOR INTERRUPTING COUNSEL

17  EARLIER.

18             MAYBE PART OF THE -- I'M GOING TO START WITH MY --

19  I'M GOING TO LEAD WITH MY CHIN A LITTLE BIT, AND THEN I'M GOING

20  TO GET TO THE SUBSTANCE OF WHAT I WANT TO SAY HERE.

21             I THINK MAYBE A LITTLE BIT OF THE MISUNDERSTANDING

22  HERE IS BECAUSE THE COURT'S FINAL SCHEDULING ORDER AT PAGE 5,

23  PARAGRAPH 6, SPECIFICALLY ADDRESSES THE TIMING OF BRADY

24  DISCLOSURES.  SO THERE MAY BE SOME ISSUE THERE.

25         **THE COURT:**  WHAT PAGE?  I GOT IT RIGHT HERE.

1          **MR. SABELLI:**  PAGE 5, PARAGRAPH 6.

2          **THE COURT:**  I SEE IT, BUT I DON'T UNDERSTAND YOUR

3    POINT.

4          **MR. SABELLI:**  WELL, THERE'S SOME TENSION ABOUT

5    WHETHER OR NOT MR. WILSON HAS YET DISCLOSED ITEMS THAT HE

6    NEEDED TO DISCLOSE, AND I WANT TO BACK UP A STEP.  THIS MOTION

7    HAS COME TO THE COURT BECAUSE THE DEFENSE IS VERY CONCERNED --

8    MR. BALOGH AND THE REST OF THE DEFENSE, WE'VE BEEN VERY

9    CONCERNED THAT -- WITH EXACTLY WHAT THE COURT SAID EARLIER,

10   THAT IF WE GO VERY FAR DOWN THE ROAD, AND WE LATER DISCOVER

11   THAT GOVERNMENT HAS NOT DONE THE BRADY REVIEW THAT IS REQUIRED

12   BY LAW, EVERYTHING WE'VE DONE, ALL THE WORK THAT THIS COURT HAS

13   DONE, THE PROSECUTION HAS DONE, THE DEFENSE HAS DONE, WILL BE

14   UNDONE.  AND WE'LL BE BACK AT SQUARE ONE.

15         SO WE BROUGHT THIS TO THE COURT'S ATTENTION, AND

16   THAT'S WHY WE'RE ASKING FOR THE COURT TO ADDRESS IT NOW.  AND I

17   THINK MR. BALOGH'S DONE A WONDERFUL JOB OF BRINGING IT TO THE

18   COURT'S ATTENTION.  BUT I THINK WE NEED AN EVIDENTIARY HEARING

19   TO UNDERSTAND EXACTLY WHAT'S GOING ON HERE.

20         I -- I INTERRUPTED EARLIER BECAUSE MR. LEUNG HAD

21   MADE A SERIES OF DECLARATIVE COMMENTS ABOUT EXACTLY WHAT HIS

22   AGENTS HAD DONE, HOW THEY HAD GONE DOWN, WHAT THEY HAD LOOKED

23   FOR, WHAT WAS IN THEIR MINDS.  ALL OF THAT SHOULD BE TAKEN IN

24   THE FORM OF EVIDENCE.

25         WE SHOULD KNOW HOW MANY TIMES THEY WENT DOWN THERE,

```
1    WHO WENT DOWN THERE, WHAT THEY WERE INSTRUCTED, WHAT THEY WERE

2    LOOKING FOR, WHAT THEIR UNDERSTANDING WAS OF BRADY, WHAT THEIR

3    UNDERSTANDING WAS OF GIGLIO, WHAT THEY WERE LOOKING FOR.  ALL

4    OF THAT CANNOT BE DONE SIMPLY BY OFF-THE-CUFF COMMENTS.  AND I

5    DON'T SAY THIS WITH ANY DISRESPECT TO MR. LEUNG.  BUT ALL THAT

6    REQUIRES AN EVIDENTIARY HEARING.  AND THAT'S MY PRINCIPAL POINT

7    HERE, YOUR HONOR, IS THAT IN ORDER TO UNDERSTAND EXACTLY WHERE

8    WE STAND HERE, WE ARE GOING TO NEED TO HAVE THESE AGENTS,

9    THE -- WHEN I SAY "AGENT," I MEAN, THE FEDERAL AGENTS AND THE

10   SAN FRANCISCO POLICE OFFICERS ON THE STAND UNDER OATH TELLING

11   US EXACTLY WHAT'S BEEN DONE SO THAT WE UNDERSTAND AND WE HAVE

12   THE PROCEDURE FOUNDATION FOR THE COURT'S RULINGS ON THESE

13   ISSUES.

14          SO MY FUNDAMENTAL POINT HERE IS, YOUR HONOR, BEFORE

15   WE CAN PROCEED, WE NEED TO HAVE AN EVIDENCE HEARING ON THESE

16   POINTS.  THE AMOUNT -- THE NUMBER OF COMMENTS MADE BY MR. LEUNG

17   ABOUT WHAT WAS ACTUALLY DONE IS DIRECTLY SUPPORTIVE OF MY

18   ARGUMENT.  WE CAN'T PROCEED NOT KNOWING WHETHER OR NOT WHAT

19   MR. LEUNG HAS REPRESENTED HERE IS SUPPORTED BY WHAT THE AGENTS

20   AND THE SAN FRANCISCO POLICE OFFICERS WOULD SAY.

21          AND I JUST WANT TO TAKE A STEP BACK AND SAY THE

22   WHOLE DISCUSSION ABOUT AGENCY, WE CAN SORT OF PUT THAT ASIDE

23   FOR A SECOND.  FROM OUR POINT OF VIEW -- FROM MY POINT OF VIEW

24   AT LEAST -- MAYBE NOT FROM MR. BALOGH'S POINT OF VIEW -- THAT

25   WHAT MATTERS HERE IS THE CONTROL THAT THE FEDERAL AGENTS HAVE,
```

1    DID THEY HAVE THE CONTROL TO SAY, GIVE ME EXCULPATORY EVIDENCE,

2    AND THE SAN FRANCISCO POLICE DEPARTMENT GAVE IT.  I THINK THE

3    ANSWER TO THAT QUESTION IS YES.

4            IF THEY HAD THAT CONTROL, THEN THEY WOULD HAVE HAD

5    THE CONTROL TO SAY GIVE ME THE EXCULPATORY STUFF AS WELL.  AND

6    THERE'S NO EVIDENCE THAT ANY OF THAT HAS BEEN COLLECTED, NONE

7    WHATSOEVER.  AND SO WHAT I WOULD ASK THIS COURT TO DO IS TO

8    TAKE A STEP BACK --

9            **THE COURT:**  WELL, NO, THAT'S NOT -- MAYBE EVIDENCE,

10   BUT WE HAVE THE REPRESENTATION FROM MR. LEUNG THAT WHEN THEY

11   DID THE REVIEW, THE FEDS DID THE REVIEW AT THE HALL OF JUSTICE,

12   THEY SPECIFICALLY LOOKED FOR EXCULPATORY -- NOT FOR GIGLIO.  WE

13   NOW HAVE THAT CLARIFICATION, BUT THEY LOOKED FOR SOME

14   EXCULPATORY AND FOUND NOTHING.  SO WE DO HAVE THAT

15   REPRESENTATION.  IT'S NOT EVIDENCE.  BUT -- IT'S NOT SWORN TO

16   UNDER OATH, BUT IT'S A REPRESENTATION BY THE GOVERNMENT.

17           **MR. SABELLI:**  YOUR HONOR, IT'S -- BASED ON MY

18   EXPERIENCE OF THE SAN FRANCISCO POLICE DEPARTMENT GANG TASK

19   FORCE --

20           **MR. BALOGH:**  -- DID MR. LEUNG, WHEN HE SAID THEY

21   LOOKED FOR EXCULPATORY EVIDENCE, DID THEY ALSO LOOK FOR

22   IMPEACHMENT EVIDENCE, SINCE HE DEFINED THEM DIFFERENTLY THAN

23   YOU AND I USED IT.  DID THEY ALSO LOOK FOR IMPEACHMENT EVIDENCE

24   REGARDING ANY WITNESS.

25           **MR. SABELLI:**  YOUR HONOR, BASED ON MY EXPERIENCE

```
 1    WITH THE SAN FRANCISCO GANG TASK FORCE, THERE HAD TO BE VERY

 2    SPECIFIC REQUESTS MADE ABOUT INFORMATION.  FOR EXAMPLE, NOT

 3    EVERY GANG TASK FORCE MEMBER KEEPS INFORMATION IN AN OFFICIAL

 4    FILE.  SOME KEEP PLENTY OF INFORMATION IN DESK DRAWERS AND FROM

 5    THE DOWN-BELOW --

 6              THE COURT:  I REMEMBER THAT, YES.

 7              MR. SABELLI:  OKAY.  THAT'S AN IMPORTANT POINT.

 8    WHAT I WANT TO DO --

 9              THE COURT:  BUT HERE'S THE THING.  WHENEVER YOU GIVE

10    ME A SUBPOENA THAT SAYS -- OR YOU WANT TO GIVE IT TO MS. WAGNER

11    THAT SAYS, GIVE ME EVERYTHING YOU HAVE ON SUBJECT AND THEN YOU

12    NAME THE PERSON'S NAME, AND THAT IS ONE OF ABOUT 72 ITEMS ON

13    THERE, THAT IS JUST IMPOSSIBLE TO COMPLY WITH.

14              MR. SABELLI:  I UNDERSTAND.

15              THE COURT:  AND SO WHAT YOU SHOULD DO IS SAY, GIVE

16    ME EVERY FILE ON THIS PARTICULAR GANG OR ANY OF THESE

17    PARTICULAR CRIMES THAT HAPPENS TO BE IN OFFICER SO-AND-SO'S

18    DESK DRAWER.  THAT, I CAN UNDERSTAND.  THAT CAN BE -- THAT'S A

19    MANAGEABLE THING, BUT TO -- THE KIND OF BONE-CRUSHING SUBPOENAS

20    THAT I'VE BEEN SEEING IN THIS CASE ARE JUST UNENFORCEABLE.

21              MR. SABELLI:  WELL, I UNDERSTAND.  AND IN TERMS OF

22    BONE-CRUSHING I GUESS WE'RE EVEN.  ED GOT THE BONE-CRUSHING --

23              THE COURT:  ED SWANSON WAS THE BONE-CRUSHER.

24              MR. SABELLI:  HE WAS BONE-CRUSHED AS WELL, FROM WHAT

25    I UNDERSTAND.  WE'RE GOING TO TAKE GUIDANCE FROM THE COURT.
```

1    WE'RE GOING TO REFASHION AND WE'RE GOING TO SUBMIT SUBPOENAS

2    THAT ARE RESPONSIVE OR COMPLY WITH WHAT THE COURT'S ASKING FOR.

3    NOW, TO THE EXTENT WE CAN DO TAKE, WE'RE GOING TO DO THAT, YOUR

4    HONOR.  AND SO WE'RE GOING TO BE GUIDED BY THAT.

5              BUT I WANT TO STAY ON THE BRADY ISSUE FOR A MOMENT.

6    WHAT I'M SAYING IS THIS:  IT IS NOT CLEAR TO ME WHETHER OR NOT

7    MR. LEUNG HAS HAD SPECIFIC CONVERSATIONS WITH SPECIFIC AGENTS.

8    HAS HE HAD THEM WITH ALL OF HIS AGENTS?  HAS HE HAD -- HAS IT

9    BEEN MR. MORENO (PHONETIC) OR OTHERS WHO'VE GONE DOWN AND DONE

10   IT?  HOW HAS THE FRENCH TELEPHONE PROCEEDED FROM MR. LEUNG TO

11   MR. MORENO TO SOMEBODY ELSE?  WHAT EXACTLY WAS THE

12   UNDERSTANDING WHAT "EXCULPATORY" MEANS?  WAS THERE ANY

13   DISCUSSION -- AND MR. BALOGH POINTS OUT THERE PROBABLY

14   WASN'T -- ABOUT IMPEACHMENT EVIDENCE?  WHAT WAS -- WHO ACTUALLY

15   DID THE SEARCH?  WAS IT THE FEDERAL AGENT?  OR WAS IT THE

16   SAN FRANCISCO POLICE OFFICER?

17             THESE ARE ALL QUESTIONS THAT CLEARLY NEED TO BE

18   ADDRESSED.  AND MR. LEUNG'S BROAD REPRESENTATIONS THAT WE KNOW

19   WHAT WE'RE DOING -- AND, AGAIN, I TAKE HIM AT GOOD FAITH, JUST

20   AS THE COURT DOES.  THOSE BROAD REPRESENTATIONS DO NOT SUGGEST

21   THE PRECISE ANALYSIS OR THE PRECISE FACTUAL RIGOR THAT THIS --

22   THAT THE RULING SHOULD BE BASED UPON.

23             SO IF WE WERE TO HAVE THESE AGENTS ON THE STAND, WE

24   WOULD ASK THEM THOSE QUESTIONS.  HOW MANY AGENTS.  WHO ELSE

25   WENT DOWN THERE?  WHAT WERE YOU TOLD?  WHAT WOULD YOU CONSIDER

```
1    TO BE EXCULPATORY EVIDENCE WITH RESPECT TO MR. HERRERA?  DID

2    THAT INCLUDE MITIGATION EVIDENCE WITH RESPECT TO MR. HERRERA,

3    BECAUSE MY CLIENT IS IN A PARTICULARLY DIFFICULT POSITION

4    BECAUSE HE'S FACING WHAT THE PROSECUTION ALLEGES IS A

5    CAPITAL-ELIGIBLE PROSECUTION.

6            AND SO WE HAVE A MITIGATION COMPONENT THAT'S VERY

7    IMPORTANT HERE.  AND I WANT TO DROP A FOOTNOTE.  OUR BRADY

8    SUBMISSION POINTED OUT THE IMPORTANCE OF FOREIGN EVIDENCE, AND

9    THAT SORT OF HAS NOT BEEN ADDRESSED.  AND I'M HAPPY WITH

10   ADDRESSING IT IF THE COURT HAS CONCERNS WITH RESPECT TO TIME.

11   THAT'S REALLY -- THAT'S MORE OF A MR. HERRERA ISSUE THAN IT IS

12   FOR EVERYBODY, ALTHOUGH I THINK OTHER DEFENDANTS MAY WANT TO

13   JOIN IN THAT.

14            BUT WHAT I WANT TO SAY IS THIS, YOUR HONOR, THAT THE

15   BROAD REPRESENTATIONS MADE BY MR. WILSON DO NOT SUPPORT THE

16   FINDING THAT THIS COURT NEEDS TO MAKE TO RULE ON THIS ISSUE.

17   AND SO WE WOULD ASK THAT WE SCHEDULE AN EVIDENTIARY HEARING,

18   THAT ALLOWED TO PREPARE FOR THIS HEARING, AND THAT WE HAVE THAT

19   HEARING WITHIN A REASONABLE PERIOD OF TIME SO THAT THESE ISSUES

20   CAN BE SETTLED.

21            THE COURT:  ALL RIGHT.  THANK YOU.

22            MR. LEUNG, I'LL GIVE YOU THE LAST WORD, BUT WE'VE

23   GOT TO MOVE ON TO THE NEXT ISSUE.

24            MR. LEUNG:  THANK YOU.

25            UNDER BRADY, THERE IS NO NINTH CIRCUIT CASE LAW
```

```
1    WHICH SPECIFICALLY SAYS THAT THERE IS TO BE AN EVIDENCE H

2    HEARING TO DETERMINE WHETHER THE GOVERNMENT IS VIOLATING BRADY

3    PROSPECTIVELY.  BRADY IS INHERENTLY A RETROACTIVE ANALYSIS,

4    YOUR HONOR.

5              THE COURT:  WELL, BUT -- OKAY.  LET'S ASSUME ALL OF

6    THAT IS RIGHT FOR A MOMENT.  ASSUME FOR THE SAKE OF ARGUMENT.

7    STILL, THESE DEFENDANTS WOULD BE ENTITLED TO SERVE A RULE 17C

8    SUBPOENA ON THE LOCAL SAN FRANCISCO POLICE AND HAVE THEM COME

9    IN, AND THEY COULD BE EXAMINED ON THE -- WHAT EXCULPATORY

10   MATERIAL THEY MAY HAVE OR IMPEACHMENT MATERIAL THEY MAY HAVE.

11   WE COULD SPEND DAYS GOING THROUGH THAT WITH OFFICERS AND

12   MS. WAGNER HAVING TO GO THROUGH AND PULL DOCUMENTS, AND THAT

13   HAS -- THAT'S JUST DISCOVERY UNDER 17C.

14             MR. LEUNG:  EXACT -- WELL, YOUR HONOR --

15             THE COURT:  SO WHY DON'T WE JUST DO THAT?  NOW,

16   THAT'S AN EVIDENCE HEARING.  IT WOULDN'T NECESSARILY BE A BRADY

17   ONE.  BUT IF -- IF I HAD TOTAL CONFIDENCE THAT THE EARTH HAD

18   BEEN SCOURED DOWN AT THE HALL OF JUSTICE, AND EVERY DESK DRAWER

19   AND SO FORTH, TO FIND THE EXCULPATORY MATERIAL, WE WOULDN'T

20   NEED TO DO THAT.

21             MR. LEUNG:  BUT I THINK THE COURT --

22             THE COURT:  BUT YOU'RE JUST TELLING ME THAT, RIGHT?

23   YOU HAVEN'T PUT IT UNDER OATH.  THERE'S NOTHING IN WHAT KIND OF

24   SUBMISSION HAVE YOU MADE THAT IS IN DETAIL AND UNDER OATH BY

25   YOUR AGENTS TO EXPLAIN WHAT YOU'VE DONE?
```

1          **MR. LEUNG:**  WELL, YOUR HONOR, FIRST OF ALL, I THINK

2     THE COURT JUST ANSWERED THE QUESTION, WHICH IS THAT THE RULE 17

3     SUBPOENAS THROUGH WHICH THE DEFENSE IS SEEKING TO GET DISCOVERY

4     IS NOT BRADY.  AND THE MOTION -- THE SO-CALLED BRADY MOTION

5     THAT'S PENDING RIGHT NOW IS MERELY AN ATTEMPT AT EXPANDING THE

6     SCOPE OF DISCOVERY TO CREATE IMPEACHMENT MATERIAL AGAINST

7     AGENTS, TO CREATE -- TO GO ON A FISHING EXPEDITION OF THE SAN

8     FRANCISCO POLICE RECORDS UNDER THE GUISE OF BRADY.

9          **THE COURT:**  A FISHING -- WELL, I'M NOT GOING TO

10    ALLOW A FISHING EXPEDITION, BUT I WOULD ALLOW NARROWLY DIRECTED

11    REQUESTS FOR FILES THAT BEAR SOME RELEVANCE TO THE CASE AND,

12    YEAH, THAT WOULD BE NORMAL.  I WOULD ALLOW THAT THEY HAVE THE

13    RIGHT TO DO THAT.

14         **MR. LEUNG:**  CERTAINLY.

15         **THE COURT:**  AND EVEN IF THEY'RE HOPING TO FIND

16    EXCULPATORY MATERIAL, EVEN IF -- EVEN IF THEY DON'T KNOW FOR

17    CERTAIN THAT IT'S THERE.

18         **MR. LEUNG:**  AND --

19         **THE COURT:**  SO --

20         **MR. LEUNG:**  BUT --

21         **THE COURT:**  AND, YES, THAT COULD IN TURN PROVE THAT

22    THERE HAS BEEN A BRADY VIOLATION, BUT -- BUT NOT YET.  NOT YET.

23         **MR. LEUNG:**  YOUR HONOR, THERE CAN'T BE A BRADY

24    VIOLATION UNLESS THERE'S PREJUDICE.  AND THERE IS NO PREJUDICE

25    UNLESS THE DEFENDANT'S CONVICTED.  THAT'S THE BRADY ANALYSIS.

1          **THE COURT:**  BUT THEN IT'S TOO LATE TO -- TOO TO LATE

2     TO UNDO THE HARM.

3          **MR. LEUNG:**  WELL, NO, AT THAT POINT, THEN THE

4     CONVICTION WILL BE REVERSED AND --

5          **THE COURT:**  GREAT.

6          **MR. LEUNG:**  -- AND THE PROSECUTOR GETS DISBARRED.

7     THAT'S THE -- THAT'S REMEDY, YOUR HONOR.

8          **THE COURT:**  YOU WOULDN'T WANT THAT.  YOU WOULDN'T

9     GET DISBARRED.  I DON'T KNOW.  MAYBE YOU WOULD, BUT I DOUBT IT,

10    BUT WE WOULD CERTAINLY HAVE A LOT OF WORK TO DO ALL OVER AGAIN.

11    WHY DON'T WE TRY TO DO IT -- YOU KNOW, MAKE SURE WE DO IT RIGHT

12    THE FIRST TIME?

13         **MR. LEUNG:**  AND WE DO -- AND CERTAINLY, YOUR HONOR,

14    BUT THERE'S NO CASE LAW UNDER THE NINTH CIRCUIT THAT SAYS THAT

15    THE COURT SHOULD RIDE SHOTGUN AND TELL THE GOVERNMENT HOW TO

16    COMPLY WITH BRADY.  NOR IS THERE NINTH CIRCUIT LAW THAT SAYS

17    THE COURT SHOULD HOLD AN EVIDENTIARY HEARING TO MONITOR HOW THE

18    GOVERNMENT COMPLIES WITH BRADY.

19         **MR. BALOGH:**  THERE IS, YOUR HONOR.  IT'S CALLED

20    UNITED STATES VS. CHAPMAN.  IT WAS DECIDED LAST YEAR BY THE

21    NINTH CIRCUIT.  THE DISTRICT JUDGE WAS JAMES C. MANN.  HE HAD

22    DISCOVERY DEADLINES FOR BRADY.  THE GOVERNMENT VIOLATED THEM.

23    HE DISMISSED THE INDICTMENT MID-TRIAL.  THE GOVERNMENT APPEALED

24    AND LOST.  THEY SAID THE DISTRICT JUDGE'S JOB TO ENFORCE BRADY

25    WAS ADMIRABLE BY SETTING DEADLINES AND REQUIRING THE GOVERNMENT

```
 1   TO MEET THE DEADLINES AND THE GOVERNMENT'S FAILURE TO MEET THE

 2   BRADY DEADLINES AND THEN TO TRY TO EXPLAIN AWAY --

 3            THE COURT:  ALL RIGHT.  ALL RIGHT.

 4            MR. LEUNG:  THAT IS CORRECT, 'CAUSE THERE WAS A

 5   VIOLATION OF AN ORDER.

 6            THE COURT:  WELL --

 7                 (SIMULTANEOUS COLLOQUY.)

 8            THE COURT:  WE'VE GONE AT -- ALL RIGHT.  WE GOT TO

 9   MOVE TO THE NEXT ISSUES.  ALL RIGHT.  THAT ONE IS -- I'M NOT

10   SURE WHERE THAT IS, BUT I'VE HEARD ALL THE ARGUMENT THAT WE

11   HAVE TIME FOR.

12            OKAY.  THE NEXT ITEM IS MRS. WAGNER AND THE ISSUE OF

13   WHETHER OR NOT THESE RULE 17C SUBPOENAS -- AND, MS. WAGNER, YOU

14   HAVE THE RIGHT -- WHETHER OR NOT YOU HAVE THE RIGHT ONCE YOU

15   GET A SUBPOENA TO GO OUT AND PUBLISH IT TO THE WORLD IF YOU

16   WANT AND CERTAINLY TO SHOW IT TO THE UNITED STATES ATTORNEY.

17            AND MY TENTATIVE VIEW IS YES, YOU DO, JUST LIKE A

18   GRAND JURY WITNESS HAS THE RIGHT TO GO OUT AND -- AND OVER THE

19   GOVERNMENT'S GREAT CONSTERNATION AND EXPLAIN WHAT THEY SAW AND

20   HEARD IN THE GRAND JURY ROOM.

21            NOW, THE COURT CAN PUT THE RECORDS UNDER SEAL, AND

22   THE PUBLIC CAN'T HAVE ACCESS TO THAT.  AND CERTAINLY WE WOULD

23   NEVER HAVE ACCESS TO THE REASONS WHY THE SUBPOENA WAS ISSUED,

24   BUT THE FACT OF THE SUBPOENA AND THE MATERIAL THAT'S PRODUCED,

25   TO MY MIND, THE DEFENSE IS WAY OVERREACHING TO CLAIM THAT THEY
```

```
1    CAN -- THEY CAN PUT DUCT TAPE OVER THE LIPS OF THE -- OF

2    MS. WAGNER AND KEEP HER FROM TALKING.

3              ALL RIGHT.  WHO'S GOING TO ARGUE THIS?

4              MR. ROSENBUSH:  YOUR HONOR --

5              THE COURT:  SO YOU'RE THE ONE THAT REALLY OUGHT TO

6    ARGUE IT BECAUSE RIGHT NOW, I'M IN FAVOR OF MS. WAGNER.

7              MR. ROSENBUSH:  YOUR HONOR, I DID FILE A WRITTEN

8    RESPONSE TO THE COURT'S TENTATIVE RULING IN THIS REGARD.

9              THE COURT:  WHEN DID THAT COME IN?

10             MR. ROSENBUSH:  THAT WAS DOCUMENT NO. 389.

11             THE COURT:  DO YOU HAVE A COPY?

12             MR. ROSENBUSH:  I HAVE MY COPY HERE.

13             THE COURT:  WELL, I DON'T THINK THEY GAVE THAT TO

14   ME.

15             MR. SABELLI:  DOES THE COURT HAVE OUR FILING?  WE

16   SPECIFICALLY ADDRESSED THE FIRST AMENDMENT ISSUES.

17             THE COURT:  YES, I REMEMBER READING YOURS.

18             MR. SABELLI:  WE FILED THAT ON FRIDAY, YOUR HONOR.

19   IF THE COURT HAS A COPY OF OUR --

20             THE COURT:  I MIGHT HAVE IT ACTUALLY AFTER ALL.  I

21   REMEMBER -- I REMEMBER YOURS, MR. SABELLI, AND IF I LOOK AT --

22   IF I LOOK AT IT, I'LL PROBABLY REMEMBER THE OTHER ONE.

23             YES, MARK ROSENBUSH.  I HAVE IT RIGHT HERE.

24             MR. ROSENBUSH:  OKAY.  YOUR HONOR, THE COURT HAD

25   ADDRESSED WHAT SIXTH AMENDMENT CONCERNS WERE AT ISSUE.  AND,
```

1    ESSENTIALLY, THE COURT IN ITS TENTATIVE RULING HAD SAID THAT IT

2    BELIEVED THAT THE POLICE DEPARTMENT HAD CERTAIN FIRST AMENDMENT

3    RIGHTS WHICH WERE AT ISSUE.  THE FIRST AMENDMENT RIGHTS ARE NOT

4    ABSOLUTE.  AND THERE ARE MANY INSTANCES IN WHICH BALANCING HAS

5    TO BE DONE BY A COURT TO DECIDE WHETHER FIRST AMENDMENT RIGHTS

6    ARE OVERRIDDEN.

7            **THE COURT:**  WHERE IS THERE EVEN A SIXTH AMENDMENT

8    RIGHT?  YES, YOU HAVE A SIXTH -- I WANT TO TELL YOU WHERE I

9    AGREE WITH YOU.  IF YOU COME TO ME AND SAY, HERE ARE MY REASONS

10   WHY I NEED TO GET -- TO PURSUE CERTAIN LINE OF DISCOVERY, THEN

11   THAT GOES UNDER SEAL, AND YOU NEVER HAVE TO SERVE THAT ON

12   ANYBODY.  THAT'S JUST BETWEEN YOU AND THE COURT.

13           SO THAT STAYS UNDER -- NO ONE GETS ACCESS TO THAT

14   SECRET WORK PRODUCTS STRATEGY.

15           BUT THEN, THE SUBPOENA ITSELF IS A PUBLIC DOCUMENT

16   THAT -- WELL, IT CAN BE PUT UNDER SEAL SO THAT NO ONE'S GOING

17   TO FIND OUT VIA THE COURT FILES.  BUT THEN YOU SERVE IT ON --

18   LET'S SAY YOU WERE TO SERVE THAT, AS SOMEBODY DID HERE, ON A

19   FEDERAL AGENT.  AND YOUR VIEW IS THAT THE FEDERAL AGENT CAN BE

20   ORDERED -- AND -- TO -- TO BE QUIET ABOUT THE FACT THAT THEY'VE

21   BEEN SUBPOENAED?

22           **MR. ROSENBUSH:**  NO.  AND WE'RE NOT -- I'M NOT

23   TALKING HERE ABOUT A SUBPOENA THAT WAS ISSUED -- WHERE THE

24   SUBPOENA RECIPIENT WAS A FEDERAL AGENT.

25           **THE COURT:**  NO, IT'S THE STATE.

1          **MR. ROSENBUSH:**  THE SUBPOENA RECIPIENT WAS THE

2   POLICE DEPARTMENT.  I'M SUGGESTING NOW IN THE COURT'S TENTATIVE

3   RULING, IT INVITED BRIEFING FROM EVERYBODY ON THIS ISSUE.  AND,

4   IN FACT, THE GOVERNMENT DID NOT GIVE THE COURT A BRIEF.  THE

5   SAN FRANCISCO POLICE DEPARTMENT DID NOT GIVE THE COURT A BRIEF.

6   I'M THE ONLY ONE WHO SUBMITTED A BRIEF.

7          **THE COURT:**  WELL, I KNOW --

8                    (SIMULTANEOUS COLLOQUY.)

9          **THE COURT:**  THAT DOESN'T MEAN YOU WIN.

10          **MR. ROSENBUSH:**  OF COURSE.  OF COURSE.

11          THE COURT ALSO INVITED OTHER DEFENSE LAWYERS --

12   BECAUSE THERE WERE OTHER SUBPOENAS DUCES TECUM THAT HAVE BEEN

13   ISSUED IN THIS CASE, SOME UNDER SEAL AND EX PARTE AND SOME NOT,

14   AND THE COURT INVITED EVERYBODY TO ADDRESS THOSE ISSUES.

15          BUT I THINK THOSE ISSUES DIFFER DEPENDING ON THE

16   SUBPOENA THAT IS IN QUESTION.  THE SUBPOENA THAT IS IN QUESTION

17   THAT I'M CONCERNED WITH WAS AN EX PARTE SUBPOENA.  IT WAS FILED

18   UNDER SEAL, AND IT'S VERY NARROW.

19          NOW, THERE ARE CERTAIN WAYS IN WHICH THE PRODUCENCE

20   BEING REVEALED TO THE GOVERNMENT WOULD TEND TO REVEAL DEFENSE

21   STRATEGY.

22          **THE COURT:**  I AGREE WITH THAT.

23          **MR. ROSENBUSH:**  I ALSO BELIEVE THAT IT -- THAT THERE

24   ARE PROBLEMS WITH SAFETY OF VARIOUS INDIVIDUALS.  I HAVE

25   ADDRESSED -- THAT'S A SUBJECT MATTER THAT I CANNOT ADDRESS IN

1    OPEN COURT, BUT I HAVE MADE A SHOWING TO THE COURT UNDER SEAL.

2    I SUBMITTED THE COURT A DECLARATION WITH RESPECT TO THE

3    SUBPOENA THAT I SUBMITTED AS TO WHAT THE SAFETY ISSUES ARE FOR

4    VARIOUS INDIVIDUALS AND WHAT THE SPECIFIC DEFENSE STRATEGY AND

5    TACTICS ARE THAT COULD BE REVEALED IF, IN THE CASE OF THIS

6    PARTICULAR SUBPOENA, THE POLICE DEPARTMENT WAS PERMITTED TO

7    REVEAL A PRODUCEMENT AND THE PRODUCED DOCUMENTS TO THE

8    GOVERNMENT.

9              SO IN THIS INSTANCE, I WOULD ASK THE COURT TO PLEASE

10   REVIEW MY UNDERSEAL DECLARATION AND TAKE THAT INTO ACCOUNT WHEN

11   IT FEELS IN THE CASE OF THIS PARTICULAR SUBPOENA THERE ARE

12   CONCERNS THAT OVERRIDE THE POLICE DEPARTMENT, WHICH IS AN

13   ORGANIZATION, NOT A PERSON, THEIR FIRST AMENDMENT INTERESTS.

14             SO I HAVE A VERY NARROWLY FOCUSED ISSUE.  I'M NOT

15   PRETENDING TO ASK THE COURT TO MAKE A RULING FOR EVERY SUBPOENA

16   DUCES TECUM THAT'S ISSUED IN THE CASE.  I'M ASKING THE COURT TO

17   MAKE THE RULING WITH RESPECT TO THIS EX PARTE, UNDER-SEAL

18   SUBPOENA BASED ON THE REPRESENTATIONS THAT I HAVE MADE TO THE

19   COURT BY DECLARATION UNDER SEAL.

20             **THE COURT:**  OKAY.  I'LL DO THAT.

21             ANYONE ELSE WANT TO BE HEARD?

22             **MR. SABELLI:**  -- DEFENSE SIDE, YOUR HONOR, I SIMPLY

23   WANTED TO POINT OUT THAT WE SPECIFICALLY ADDRESSED THE FIRST

24   AMENDMENT ISSUE -- EVEN THOUGH THE COURT'S TENTATIVE RULING WAS

25   FOCUSED ON MR. ROSENBUSH'S SUBPOENA, WE UNDERSTOOD THAT PERHAPS

1    IT MIGHT AFFECT THE COURT'S APPROACH TO OTHER SUBPOENAS.  AND

2    SO WE SPECIFICALLY ENGAGED THE QUESTION OF WHETHER OR NOT

3    MS. WAGNER WOULD HAVE A FIRST AMENDMENT RIGHT TO SPEAK TO

4    MR. LEUNG ABOUT WHAT WAS IN THE SUBPOENAS.

5            WE ADDRESSED A NUMBER OF OTHER ISSUES, BUT

6    SPECIFICALLY WITH RESPECT TO THE FIRST AMENDMENT ISSUE THAT THE

7    COURT RAISED THIS MORNING OR THIS AFTERNOON, WE ADDRESSED THAT

8    AT PAGES 3 THROUGH 6.  AND WE CITED SPECIFICALLY THE

9    BUTTERWORTH CASE, WHICH I THINK IS VERY INSTRUCTIVE.

10           IT'S A GRAND JURY SECRECY CASE IN FLORIDA.  A

11   REPORTER IS PART OF A GRAND JURY, AND HE WANTS TO REPORT ABOUT

12   IT AFTERWARD.  AND THE COURT SAID NO, YOU CAN'T DO THAT DURING

13   THE PENDENCY OF THE GRAND JURY PROCEEDINGS.  YOU CAN'T DO THAT.

14           **THE COURT:**  YOU -- EVEN WHEN HE WAS -- HE WAS CALLED

15   BEFORE THE GRAND JURY?

16           **MR. SABELLI:**  YES, YOUR HONOR.

17           **THE COURT:**  AND THE JUDGE SAID YOU SHOULD NOT DO A

18   REPORT ON THIS, EVEN THOUGH THE ORDINARY CITIZEN COULD?

19           **MR. SABELLI:**  I DON'T KNOW THAT THE JUDGE SAID AN

20   ORDINARY CITIZEN COULD.  WHAT THE JUDGE SAID WAS THAT EVEN

21   THOUGH YOU HAVE A HEIGHTENED FIRST AMENDMENT RIGHT BECAUSE YOU

22   ARE A REPORTER, SO IT ENGAGES NOT ONLY FREEDOM OF EXPRESSION

23   BUT FREEDOM OF THE PRESS, THIS COURT HAS THE AUTHORITY TO

24   PROHIBIT YOUR SPEECH ON THIS ISSUE DURING THE PENDENCY OF THE

25   GRAND JURY PROCEEDINGS BECAUSE OF A GREATER INTEREST -- A

```
 1   TEMPORARILY GREATER INTEREST.  AND THAT'S BUTTERWORTH V. SMITH,

 2   494 U.S. 624 AT 632 THROUGH 633.

 3               THE COURT:  494 U.S. WHAT?

 4               MR. SABELLI:  U.S. 624 -- YOUR HONOR, IT'S CITED AT

 5   PAGE -- AT THE BOTTOM OF PAGE 3 OF OUR --

 6               THE COURT:  SOUNDS LIKE U.S. SUPREME COURT --

 7               MR. SABELLI:  IT IS.

 8               THE COURT:  I THOUGHT YOU SAID IT WAS A JUDGE IN

 9   FLORIDA.

10               MR. SABELLI:  WELL, IT WAS UPHOLDING THE -- THE

11   SECRECY, YOUR HONOR, THE FINDING.

12               THE COURT:  THAT GOT APPEALED ALL WAY TO THE

13   SUPREME COURT, AND THAT WAS UPHELD BY THE SUPREME COURT?

14               MR. SABELLI:  YES, YOUR HONOR.  AND IT'S CITED AT

15   PAGES 3 -- FIRST AT PAGE 3, AND THEN IT'S DISCUSSED THROUGHOUT

16   PAGE 4 OF OUR -- OF OUR BRIEF.

17               DOES THE COURT HAVE OUR BRIEF, YOUR HONOR?

18               THE COURT:  I DO, RIGHT HERE.

19               MR. SABELLI:  THE COURT CAN START AT THE BOTTOM OF

20   PAGE --

21               THE COURT:  IT SAYS IN BUTTERWORTH, THE SUPREME

22   COURT UPHELD A FLORIDA STATUTE THAT TEMPORARILY BANNED GRAND

23   JURY WITNESSES FROM DISCLOSING THE CONTENTS OF THEIR TESTIMONY

24   WHILE THE GRAND JURY INVESTIGATIONS WAS PENDING.

25               COURT REASONED THAT THE NEED FOR GRAND JURY SECRECY
```

1    DURING THAT DISCRETE PERIOD OUTWEIGHED -- YES, OKAY.

2         **MR. SABELLI:**  AND SO, YOUR HONOR, THIS COURT HAS THE

3    AUTHORITY TO DO SO.  AND WE WOULD SUGGEST THAT THE

4    SAN FRANCISCO POLICE DEPARTMENT'S COUNSEL TEMPORARY INTEREST IN

5    WANTING TO COMMUNICATE WITH MR. LEUNG ABOUT WHAT'S IN A

6    SUBPOENA IS A MUCH LESS WEIGHTY FIRST AMENDMENT INTEREST THAN

7    THAT OF A REPORTER WHO WAS PART OF A GRAND JURY PROCEEDING.

8         **THE COURT:**  LET'S SUBTRACT THE FIRST AMENDMENT OUT

9    OF THIS.  LET'S ASSUME THAT THERE'S NO FIRST AMENDMENT RIGHT.

10   STILL, WHERE IS THE SIXTH AMENDMENT RIGHT TO KEEP A RECIPIENT

11   OF A SUBPOENA FROM GOING TO THE FEDERAL AUTHORITY AND SAYING,

12   I'VE BEEN SUBPOENAED.  THERE'S NO SUCH RIGHT.  THERE'S NO CASE

13   IN THE HISTORY OF THE UNIVERSE THAT SAYS THAT.

14        **MR. SABELLI:**  YOUR HONOR, WHAT THERE IS IS AN

15   ATTORNEY-CLIENT AND A WORK PRODUCT PRIVILEGE, PARTICULARLY IN

16   THE CASE OF AN INDIGENT DEFENDANT THAT MUST USE THE RULE 17

17   ROUTE WHICH WOULD OTHERWISE BE COMPROMISED.

18        **THE COURT:**  AND I SAID EARLIER, THE REASONING, THE

19   WORK PRODUCT PART GOES UNDER SEAL, STAYS UNDER SEAL, AND NOBODY

20   ELSE EVER GETS THAT.  THAT PART -- SO WE'RE NOT FIGHTING OVER

21   THAT.

22        BUT WHEN THE SUBPOENA ITSELF HITS THE SFPD OR THE

23   RECIPIENT, WHATEVER THE SUBPOENA RESPONDENT IS, SURELY THEY

24   HAVE A RIGHT TO -- TO GO TO THE FEDS AND SAY, I'VE RECEIVED

25   THIS SUBPOENA.

```
1              WHAT IF IT WAS -- WHAT IF IT WAS A VICTIM FAMILY?
2    WHAT IF IT WAS A VICTIM FAMILY, AND THEY'VE BEEN COOPERATING
3    WITH THE GOVERNMENT AND -- AND SUDDENLY THEY GET THIS SUBPOENA,
4    AND YOU'RE SAYING THAT A JUDGE CAN SAY TO THEM, BY THE WAY,
5    DON'T -- YOU HAVE -- YOU MAY NOT GO AND TELL ANYONE THAT YOU'VE
6    RECEIVED THIS SUBPOENA?  IT WOULD HAVE TO BE AN EXTRAORDINARY
7    CIRCUMSTANCE TO ALLOW SOMETHING LIKE THAT.
8              MR. SABELLI:  YOUR HONOR, CAN I JUST UNPACK THAT FOR
9    A SECOND?
10             THE COURT ASKED ME WHAT'S THE BASIS OF THE SIXTH
11   AMENDMENT RIGHT.  AND THEN QUESTION OF THE COURT WAS -- SAID
12   SOMETHING DIFFERENT.  WHAT THE COURT SAID IS, YOU KNOW, WHAT --
13   DOESN'T THE SUBPOENA RECIPIENT HAVE A RIGHT TO GO --
14             THE COURT:  ALL RIGHT.  WHAT -- THOSE ARE TWO
15   DIFFERENT THINGS.
16             MR. SABELLI:  THEY'RE TWO DIFFERENT THINGS.
17             THE COURT:  ONCE THE WORK PRODUCT IS UNDER SEAL,
18   WHERE -- IT ENDS THERE, DOESN'T IT?
19             MR. SABELLI:  NO, YOUR HONOR, BECAUSE, AS
20   MR. ROSENBUSH HAS POINTED OUT -- AND HE'S MADE A SPECIFIC
21   SHOWING WITH RESPECT TO HIS CASE.  MY SUBPOENAS AREN'T THERE
22   YET, SO I HAVEN'T MADE MY SPECIFIC SHOWING YET.  BUT I THINK
23   THAT THE U.S. ATTORNEY COULD WORK BACKWARDS FROM THE
24   INFORMATION THAT SFPD LEGAL INTENDS TO RELEASE TO UNDERSTAND
25   SOME OF OUR LITIGATION STRATEGY.  AND THAT WOULD BE REQUIRING
```

1    US TO REVEAL WORK PRODUCT, POSSIBLY ATTORNEY-CLIENT MATERIAL,

2    SIMPLY BY VIRTUE OF THE FACT THAT MY CLIENT IS INDIGENT AND

3    GOING THROUGH THIS ROUTE.  WE DON'T THINK THAT'S FAIR.

4              I DON'T HAVE A PROBLEM WITH MS. WAGNER TELLING

5    MR. LEUNG, I'VE RECEIVED A SUBPOENA.  BUT ALL OF THE OTHER

6    MATERIALS, THERE'S NO REASON FOR IT.  THERE'S NO --

7              **THE COURT:**  THINK ABOUT THE LOGIC OF THAT.  LET'S

8    SAY SOMEBODY IS WELL HEALED AND THEY DON'T NEED AN INDIGENT

9    LAWYER.  THEY GOT PLENTY OF MONEY, AND THEY WANT TO SERVE A

10   SUBPOENA ON SOMEBODY.  THEY DON'T HAVE TO REVEAL TO THE JUDGE

11   WHAT THEIR WORK PRODUCT IS.  BUT IT'S GOING TO BE THE SAME

12   SUBPOENA, CALL FOR THE SAME DOCUMENTS AS THE ONE YOU WANT TO

13   SERVE, SO IT'S --

14             I'M FOCUSING ON THE SUBPOENA ITSELF.  WHERE WOULD

15   MR. BIG WITH ALL THE MONEY AND -- A WELL-HEALED DEFENDANT, HE

16   WOULDN'T -- HE'D HAVE A RIGHT TO GET THE GOVERNMENT -- GET THE

17   JUDGE TO ISSUE AN ORDER SAYING DON'T TELL ANYONE THAT YOU'VE

18   BEEN SERVED --

19             **MR. SABELLI:**  NO, YOUR HONOR.

20             YEAH, GO ON.

21             **MR. ROSENBUSH:**  YOUR HONOR, I WOULD REQUEST THAT THE

22   COURT LOOK AT IT THIS WAY:  THE COURT IS TRYING TO FIND ONE

23   RULE TO APPLY TO ALL SUBPOENA DUCES TECUM.  THE REASON THAT THE

24   INFORMATION CONTAINED IN THE APPLICATION FOR THE SUBPOENA IS

25   SUBMITTED TO THE COURT UNDER SEAL AND KEPT UNDER SEAL IS

1    BECAUSE REVEALING THAT INFORMATION COULD REVEAL DEFENSE

2    STRATEGY AND TACTIC.

3              **THE COURT:**  THAT'S NEVER GOING TO BE REVEALED.

4              **MR. ROSENBUSH:**  THAT'S CORRECT.

5              **THE COURT:**  THAT INFORMATION STAYS UNDER SEAL.

6              **MR. ROSENBUSH:**  THAT'S CORRECT.  BUT WHAT I'M SAYING

7    IS THAT IN SOME CIRCUMSTANCES, REVEALING -- THE DOCUMENTS

8    THEMSELVES THAT ARE PRODUCED PURSUANT TO THE SUBPOENA OR THE

9    DOCUMENTS THAT ARE CALLED FOR WOULD REVEAL THE SAME TRIAL

10   STRATEGY.

11             **THE COURT:**  WELL, WHY WOULDN'T MR. BIG WITH THE

12   BIG-TIME LAWYER HAVE THE RIGHT TO KEEP -- IT'S GOING TO REVEAL

13   IT TO HIM, TOO, THEN.

14             **MR. ROSENBUSH:**  WHAT I'M SAYING IS THAT HAS TO BE

15   DECIDED ON A CASE-BY-CASE BASIS, WHICH IS WHY I SUBMITTED A

16   DECLARATION UNDER SEAL DIRECTLY ADDRESSING THOSE FACTS WITH

17   RESPECT TO MR. FLORES' SUBPOENA DUCES TECUM.  SO I DON'T THINK

18   THERE IS ONE RULE THAT APPLIES IN EVERY CIRCUMSTANCE.  I THINK

19   THEY HAVE TO BE -- THE COURT HAS TO LOOK CASE BY CASE AT THE

20   CIRCUMSTANCES.

21             **MR. SABELLI:**  WE AGREE WITH THAT, YOUR HONOR.  BUT

22   WE FILED OUR BRIEF MAINLY BECAUSE WE WANTED TO ENGAGE ON THE

23   FIRST AMENDMENT ISSUE, WHICH WE THINK IS IMPORTANT.

24             **THE COURT:**  ALL RIGHT.  BUT -- OKAY.

25             ALL RIGHT.  MS. WAGNER, WHAT WOULD YOU LIKE TO SAY?

```
1          MS. WAGNER:  I'D LIKE TO SAY, YOUR HONOR, THAT THE

2    COURT HAS ALREADY FOCUSED EXACTLY ON POINT WITH THE CONCEPT

3    THAT THE APPLICATION ITSELF REMAINS UNDER SEAL, AND THAT'S WHAT

4    THE AUTHORITIES THAT DEFENDANT HIMSELF HAS CITED TO SUPPORT;

5    THAT IS, THE SEALING OF THE APPLICATION WHICH CONTAINS THE WORK

6    PRODUCT, THE TRIAL STRATEGY, AND OTHER -- OTHER CONCERNS

7    RELATIVE TO PROTECTING ALL OF -- ALL OF THE DEFENDANTS'

8    STRATEGIES.

9          BUT THE DEFENDANT CANNOT SIMULTANEOUS DEMAND BRADY

10   DISCOVERY WHILE FORBIDDING COMMUNICATION FROM THE SAN FRANCISCO

11   POLICE DEPARTMENT WITH THE PROSECUTION.  DOESN'T MAKE ANY

12   SENSE.  WE'RE NOT, AT THE OUTSET, PRIVY TO THE THEORY OF THE

13   PROSECUTION.  AND IN ORDER TO IDENTIFY RELEVANT AND MATERIAL

14   DISCLOSURES, IT -- IT'S ABSOLUTELY IN CONFLICT WITH ITSELF.

15         MOREOVER, THE U.S. ATTORNEY HAS A DUE PROCESS RIGHT

16   SUCH THAT THE DEFENDANT SHOULDN'T BE TRYING TO PREVENT THEM

17   FROM ASSERTING THEIR OWN PRIVILEGES.  AND IT'S -- THERE WAS NO

18   NEED TO BRIEF FURTHER BECAUSE THE TENTATIVE RULING WAS CORRECT,

19   AND THERE'S NO AUTHORITY ADVANCED HERE THAT SUPPORTS ANYTHING

20   BEYOND THAT THE APPLICATION SHOULD REMAIN UNDER SEAL.

21         MR. ROSENBUSH:  YOUR HONOR, I HAVE ONLY ONE THING TO

22   SAY WITH RESPECT TO THAT.  THIS SUBPOENA DUCES TECUM HAS

23   NOTHING TO DO WITH THE PRODUCTION OF BRADY MATERIALS, SO IT

24   DOESN'T INVOLVE THE POLICE DEPARTMENT ANALYZING WHAT THE

25   GOVERNMENT'S OBLIGATIONS ARE TO GIVE THE DEFENSE INFORMATION.
```

1        THE ISSUE HERE IS THE DEFENSE THEORY OF THE CASE.

2   THAT'S WHAT'S BEING DISCUSSED WITH RESPECT TO THE ISSUANCE AND

3   COMPLIANCE WITH THIS SUBPOENA DUCES TECUM, SO THE GOVERNMENT

4   DOESN'T NEED TO BE CONCERNED WITH WHAT THE GOVERNMENT'S

5   OBLIGATION FOR DISCOVERY IS.

6        **MR. LEUNG:**  YOUR HONOR, IF I MAY?

7        **THE COURT:**  YES.  YES.

8        **MR. LEUNG:**  JUST BRIEFLY, YOUR HONOR.

9        THE DEFENSE WOULD HAVE ITS CAKE AND EAT IT TOO.

10  THEY WOULD SEEK TO CUT SUBPOENAS FOR DISCOVERY, YET PREVENT

11  ANYONE FROM TALKING ABOUT WHAT THEY'VE SUBPOENAED.  AND THAT,

12  AS THE COURT POINTED OUT IN ITS TENTATIVE RULING, IS COMPLETELY

13  UNSUPPORTED.  WITNESSES TO THE GRAND JURY, GOVERNMENT WITNESSES

14  WHO ARE INTERVIEWED, ALL HAVE THE RIGHT TO SPEAK WITH WHOMEVER

15  THEY WANT.

16       LIKEWISE, THE ATTORNEY-CLIENT PRIVILEGE, THE WORK

17  PRODUCT PRIVILEGE, AND EVEN THE SIXTH AMENDMENT IS NOT

18  ABSOLUTE.  IT DOESN'T PREVENT ANYONE WHO MAY BE INTERVIEWED BY

19  AN ATTORNEY FROM SPEAKING WITH ANYONE ELSE.  LIKEWISE, A PARTY

20  THAT IS SUBPOENAED BY A DEFENSE ATTORNEY SHOULD ALSO HAVE THE

21  RIGHT TO TALK ABOUT WHAT HAS BEEN SUBPOENAED OR WHAT HAS BEEN

22  PRODUCED AS A RESULT OF THE SUBPOENA.

23       TO THE EXTENT THAT THE PRODUCEMENT WOULD DISCLOSE

24  POTENTIAL WORK PRODUCT OR THEORIES, THEN THAT'S TOO BAD BECAUSE

25  LIFE WORKS LIKE THAT.  YOU CANNOT GET THE MATERIALS UNLESS

1   YOU'RE WILLING TO DISCLOSE SOME OF YOUR THEORY.  THE MERE

2   ASKING OF THE MATERIAL DISCLOSES THE FACT THAT THERE IS A

3   THEORY BEHIND IT AND COULD BE REVERSE-ENGINEERED.  SO --

4           **THE COURT:**  WELL, SOMETIMES IT CAN BE

5   REVERSE-ENGINEERED, AND SOMETIMES IT CAN'T.  BUT --

6           **MR. LEUNG:**  SOMETIMES IT CAN'T.

7           **THE COURT:**  BUT IF THE NATURE OF THE REQUEST IS THAT

8   IT GETS REVERSE-ENGINEERED, THEN MAYBE THAT'S JUST LIFE.

9           **MR. LEUNG:**  THAT IS CERTAINLY LIFE, YOUR HONOR, AND

10  THAT THERE'S NO CONSTITUTIONAL RIGHT NOT TO HAVE YOUR THEORY

11  REVERSE-ENGINEERED.

12          **MR. ROSENBUSH:**  YOUR HONOR, THE GOVERNMENT IS NOW

13  ARGUING WITHOUT CITATION OF AUTHORITY WHAT THE COURT ASKED THE

14  GOVERNMENT TO BRIEF TODAY.  I DON'T THINK IT'S PROPER FOR

15  ARGUMENT TO BE MADE IN THIS FASHION.

16          **THE COURT:**  ALL RIGHT.

17          LET ME ASK YOU BOTH THIS QUESTION:  LET'S SAY YOU

18  HAD A TRIAL AND ONE SIDE OR THE OTHER THOUGHT THERE WAS A

19  WITNESS WHO WAS ABOUT TO COMMIT PERJURY.  AND LET'S SAY IT

20  SEEMED VERY LIKELY THAT PERJURY WAS ABOUT TO BE COMMITTED.  AND

21  THE LAWYER WANTED TO -- LET'S SAY HAD IN CAMERA OR -- LET'S SAY

22  BOTH LAWYERS WERE PRESENT, AND THIS WAS BROUGHT TO THE

23  ATTENTION TO THE JUDGE.  AND THEY SAID WE WANT TO GET A

24  SUBPOENA FOR WITNESS "X," WHO WILL BE ABLE TO COMPLETELY DEBUNK

25  WHAT THIS WITNESS IS ABOUT TO SAY.

```
1            SO THE SUBPOENA ISSUES ON THAT.  IN THAT LIMITED

2    KIND OF A CIRCUMSTANCE, COULD THE JUDGE THEN ISSUE, IN ADDITION

3    TO THE SUBPOENA, A SEPARATE ORDER SERVED ON THAT RECIPIENT

4    SAYING DO NOT TELL ANYBODY OTHER THAN YOUR OWN LAWYER THAT YOU

5    HAVE BEEN SERVED WITH A SUBPOENA?

6            MR. LEUNG:  YOUR HONOR --

7            THE COURT:  THAT COULD BE -- THE GOVERNMENT MIGHT

8    ASK FOR THAT, THE DEFENSE MIGHT ASK FOR THAT.

9            MR. LEUNG:  THE QUESTION IS -- IF THE QUESTION IS

10   COULD THE COURT, THEN THE GOVERNMENT WOULD SAY YES, THE COURT

11   HAS THAT AUTHORITY.  THE COURT HAS THE AUTHORITY TO ISSUE GAG

12   ORDERS IN TRIALS.  THE COURT HAS THE RIGHT TO LIMIT THE FLOW OF

13   PUBLIC INFORMATION.  IT COULD PLACE THINGS UNDER SEAL.

14           THE ISSUE, HOWEVER, IS SHOULD IT.  AND THAT, AS

15   MR. ROSENBUSH INDICATED, DEPENDS ON THE FACTS.  BUT IT'S SUCH

16   AN EXTRAORDINARY STEP TO TAKE THAT IN MOST SITUATIONS, YOUR

17   HONOR, THE GOVERNMENT WOULD THINK THAT THAT SHOULD NOT

18   ACCOMPANY A SUBPOENA, UNLESS THERE ARE ISSUES OF SAFETY OR

19   SOMETHING AKIN TO, SAY, GRAND JURY SECRECY PROCEEDINGS, WHICH

20   IS SPECIFICALLY CODIFIED IN RULE 6E OF THE CRIMINAL PROCEDURES.

21   THERE SHOULD BE SOME SORT OF EXTRAORDINARY SHOWING TO ISSUE

22   WHAT IS ESSENTIALLY A GAG ORDER ON A WITNESS.

23           AND WE WOULD NOTE THAT IN THAT HYPOTHETICAL, YOUR

24   HONOR, THAT WOULDN'T BE A GOVERNMENT WITNESS BECAUSE THE

25   GOVERNMENT WOULD -- ITS WITNESSES BEFORE --
```

1          **THE COURT:**  WELL, NO, THE DEFENSE MIGHT BELIEVE

2      THAT -- YOU KNOW, LET'S SAY IT'S A THREE-TIME CONVICTED

3      COOPERATOR WHO IS ABOUT TO COMMIT PERJURY AND THE FEDERAL

4      PROSECUTOR DOESN'T KNOW, BUT THE OTHER SIDE HAS FIGURED OUT

5      THEY'VE GOT A GREAT WITNESS AVAILABLE BUT THEY DON'T WANT TO

6      TESTIFY AND THEY NEED A SUBPOENA TO BRING THEM IN.  THEY DON'T

7      WANT THE PROSECUTOR TO KNOW BECAUSE THE PROSECUTOR MIGHT TELL

8      THE WITNESS, AND THEN THE PERJURY MIGHT NOT OCCUR.

9              I THINK THAT MAYBE IN A CASE LIKE THAT, IT COULD

10     WORK EITHER WAY.  IT COULD BE THE GOVERNMENT WANTS IT.  I COULD

11     IMAGINE BOTH SIDES WANTING TO HAVE A TEMPORARY GAG ORDER TO

12     PREVENT THE IMPEACHMENT WITNESS FROM -- FROM LETTING ANYBODY

13     KNOW THAT THEY'RE IN THE HALLWAY.

14          **MR. LEUNG:**  WELL, THE ISSUE IS, IS THERE A DEFENSE

15     RIGHT TO --

16          **THE COURT:**  MAYBE NOT.  MAYBE NO.  NO.  BUT I --

17     MAYBE ON THIS GOES BACK TO MR. ROSENBUSH'S PROPOSITION THAT

18     THERE POSSIBLY COULD BE A CIRCUMSTANCE WHERE, IN ADDITION TO A

19     SUBPOENA, THERE WOULD BE A SEPARATE ORDER DIRECTED TO THE

20     RECIPIENT SAYING DON'T TALK TO ANYBODY ABOUT THIS BUT YOUR

21     LAWYER.

22          **MR. ROSENBUSH:**  THAT'S CORRECT, JUDGE.  AND HERE,

23     WE'RE NOT CONTENDING THERE'S A PROBLEM WITH THE POLICE

24     DEPARTMENT REVEALING TO THE GOVERNMENT THAT THERE IS A

25     SUBPOENA.  THEY CAN GIVE THE GOVERNMENT THE SUBPOENA.  IT'S THE

1   PRODUCEMENT AND THE DOCUMENTS IN RESPONSE THAT ARE OF CONCERN,

2   AND WE'VE MADE A SHOWING AS TO WHY THAT WOULD BE A PROBLEM.

3          **THE COURT:**  YOU'RE SAYING THAT THOSE DOCUMENTS COULD

4   ALSO BE PRODUCED TO THE GOVERNMENT.

5          **MR. ROSENBUSH:**  NO, WHAT I'M SAYING -- IN THE CASE

6   OF THIS PARTICULAR EX PARTE SUBPOENA, I DO NOT HAVE AN

7   OBJECTION AS MR. FLORES' COUNSEL TO THE GOVERNMENT GETTING A

8   COPY FROM THE SAN FRANCISCO POLICE DEPARTMENT OF THE SUBPOENA

9   ITSELF AND THE PROOF OF SERVICE.

10         WHAT I AM OBJECTING TO IS THE GOVERNMENT BEING GIVEN

11  PRODUCEMENT, THE LIST OF ITEMS THAT ARE CALLED FOR BY THE

12  SUBPOENA AND THE ACTUAL DOCUMENTS.  AND THE REASON --

13         **THE COURT:**  WHEN YOU SAY "PRODUCEMENT," YOU MEAN THE

14  LIST OF CALLED-FOR MATERIALS.

15         **MR. ROSENBUSH:**  YES.  YES, SIR.

16         **THE COURT:**  BUT WHY -- THE GOVERNMENT'S NOT GOING TO

17  THREATEN ANY WITNESS.

18         **MR. ROSENBUSH:**  I HAVE ADDRESSED THAT IN -- IN MY

19  DECLARATION.

20         **THE COURT:**  ALL RIGHT.  I GOING TO LOOK AT IT, THEN.

21  I MISSED THAT SOMEHOW.  ALL RIGHT.  I'M GOING TO LOOK AT IT

22  AGAIN.

23         OKAY.  CAN WE PUT THIS UNDER SUBMISSION?

24         **MS. WAGNER:**  SUBMITTED, YOUR HONOR.

25         **MR. ROSENBUSH:**  YES.

1          **MR. LEUNG:**  SUBMITTED, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  THE NEXT ITEM IS --

3              (OFF-THE-RECORD DISCUSSION.)

4          **THE COURT:**  THE NEXT ITEM IS -- I THINK WE'VE DONE

5   EVERYTHING EXCEPT DEFENDANT LOPEZ HAS A SEPARATE MATTER.  YOU

6   WANT TO DO THAT IN -- IN FULL VIEW OF EVERYONE ELSE OR --

7          **MR. GOODMAN:**  FULL VIEW, SURE.

8          **THE COURT:**  ALL RIGHT.  OKAY.  IT'S YOUR MOTION.

9          **MR. GOODMAN:**  YOUR HONOR, THIS WAS A NOTICED MOTION

10  FOR THE PRODUCTION OF MATERIALS FROM THE SAN FRANCISCO POLICE

11  DEPARTMENT RELATED TO THE CREDIBILITY OF VARIOUS OFFICERS.

12          THE REASON IT WAS FILED IS BECAUSE THE GOVERNMENT

13  HAS TAKEN A POSITION THAT THE SFPD OFFICERS ARE NOT THEIR

14  AGENTS.  AND, THEREFORE, THE RULE 17 SUBPOENA IS THE PROPER

15  WAY, AS FAR AS I COULD TELL, TO GO ON THIS.

16          UNDER THE LOCAL RULES, IT WAS INCUMBENT UPON ME TO

17  SERVE THE GOVERNMENT WITH NOTICE THAT I HAD REQUESTED A

18  SUBPOENA ALONG THOSE LINES.  I HAVE ATTEMPTED TO NARROW IT TO

19  SPECIFIC INFORMATION RELATED TO OFFICERS THAT THE FIVE MOVING

20  DEFENDANTS BELIEVE ARE GOING TO BE WITNESSES IN THE CASE.

21          AND I THINK, GIVEN THE SHOWING THAT'S BEEN MADE,

22  WHICH IS A FACT-SPECIFIC SHOWING, WE'RE ENTITLED TO ISSUANCE OF

23  THE TWO SUBPOENAS WE'VE REQUESTED.

24          **THE COURT:**  THESE ARE OFFICERS, RIGHT?

25          **MR. GOODMAN:**  THESE ARE SAN FRANCISCO POLICE

1    OFFICERS.

2              **THE COURT:**  WHAT'S THE PROBLEM WITH PRODUCING

3    IMPEACHMENT MATERIALS AS TO OFFICERS?

4              **MS. WAGNER:**  YOUR HONOR, THE DEPARTMENT'S NOT IN

5    RECEIPT OF THE LOPEZ SUBPOENA YET.

6              **MR. GOODMAN:**  WE DID NOT SERVE THE SAN FRANCISCO

7    POLICE DEPARTMENT YET.  WE HAD ASKED FOR ISSUANCE OF THE

8    SUBPOENA, WHICH, ONCE IT'S ISSUED, WE WILL THEN SERVE ON THE

9    DEPARTMENT --

10             **THE COURT:**  WELL, I WOULD FEEL THAT THAT IS NO --

11   CIVILIAN WITNESS PROBLEM SECURITY, THAT WE OUGHT TO DO -- WE

12   OUGHT TO DO THAT.  NOW, HOW OVERBROAD IS YOUR --

13                       (LAUGHTER.)

14             **MR. GOODMAN:**  HOPEFULLY NOT TOO OVERBROAD.  I MEAN,

15   WHAT WE'VE DONE IS WE'VE NARROWED IT TO SPECIFIC OFFICERS WHO

16   THE FIVE MOVING DEFENDANTS BELIEVE ARE GOING TO BE WITNESSES IN

17   EITHER MOTIONS, PRETRIAL MOTIONS, OR AT TRIAL.  AND SO IT'S

18   NARROWED IN THAT INSTANCE.

19             IT'S ALSO NARROWED IN TERMS OF THE TYPE OF

20   INFORMATION THAT WE ARE REQUESTING FROM THE FILES.  THE ONE

21   AREA THAT I THINK DOES NEED TO BE ADDRESSED IS ASSUMING THAT

22   THE POLICE DEPARTMENT PRODUCES THE PERSONNEL RECORDS THAT WE'VE

23   REQUESTED, WHO SHOULD REVIEW THEM.

24             AND WHAT WE'RE REQUESTING IS THAT EITHER THIS COURT

25   OR THE MAGISTRATE OR SPECIAL MASTER BE APPOINTED TO REVIEW

1    THOSE FILES FOR THE INFORMATION.

2              **THE COURT:**  WELL, IT WOULD PROBABLY HAVE TO BE ME.

3    THERE'S NO SUCH THING AS A SPECIAL MASTER IN A CRIMINAL CASE --

4              **MR. GOODMAN:**  ALL RIGHT.

5              **THE COURT:**  -- UNLESS THE RULES HAVE BEEN CHANGED,

6    SO IN THE -- MAYBE A MAGISTRATE JUDGE WOULD -- POSSIBLY DO IT,

7    BUT NORMALLY I'D DO IT UNLESS IT'S TOO VOLUMINOUS.

8              **MR. GOODMAN:**  I THINK THEY ARE GOING -- YOU KNOW,

9    BASED ON MY EXPERIENCE WITH LOOKING -- WITH MAKING THESE KINDS

10   OF MOTIONS IN STATE COURT, I THINK AT LEAST FOR SOME OF THE

11   OFFICERS, THERE ARE GOING TO BE VOLUMINOUS FILES THAT NEED TO

12   BE REVIEWED.  AND I BELIEVE THAT ALSO IN THIS DISTRICT,

13   MAGISTRATES HAVE BEEN APPOINTED TO REVIEW PERSONNEL RECORDS --

14             **THE COURT:**  THAT'S PROBABLY TRUE.

15             **MR. LEUNG:**  ACTUALLY, YOUR HONOR?

16             **THE COURT:**  YES.

17             **MR. LEUNG:**  AS THE GOVERNMENT NOTED, AS PART OF ITS

18   BRADY RESPONSE, THIS IS SIMPLY A HENTHORN REQUEST.  AND

19   TYPICALLY, THE -- ANY FILES THAT ARE RESPONSIVE ARE PRODUCED TO

20   THE COURT, ARE REVIEWED IN CAMERA BY THE GOVERNMENT AND THE

21   COURT.  I BELIEVE MR. GOODMAN WOULD ASK THAT THE GOVERNMENT BE

22   PRECLUDED FROM THE --

23             **THE COURT:**  WELL, NO, YOU DON'T GET TO REVIEW THEM.

24   THE -- MS. WAGNER TURNS THEM OVER TO ME, AND I REVIEW THEM.

25   YOU DON'T GET TO REVIEW THEM.

1              **MR. LEUNG:**  OFTENTIMES THE COURT ALSO INVITES THE

2     GOVERNMENT TO --

3              **THE COURT:**  TO SANITIZE THE FILE BEFORE IT'S TURNED

4     OVER?

5              **MR. LEUNG:**  NOT SANITIZE BUT TO HELP OUT WITH THE

6     REVIEW.

7              **MR. GOODMAN:**  AND, YOUR HONOR, THE PROBLEM WITH THAT

8     IS, IN MY EXPERIENCE, THE GOVERNMENT HAS A MUCH MORE

9     RESTRICTIVE VIEW.

10             **THE COURT:**  I DON'T DO IT THAT WAY.  I GO THROUGH,

11    AND IF I FEEL LIKE -- WELL, FIRST OF ALL, IF IT'S OVERBROAD,

12    IT'S JUST GOING TO BE DENIED.

13             **MR. GOODMAN:**  I UNDERSTAND THAT.

14             **THE COURT:**  BUT IF IT'S NARROWLY DIRECTED AND

15    REASONABLE, THEN THE FILES COME IN TO ME, AND I GO THROUGH

16    THERE AND I ERR ON THE SIDE OF GIVING YOU MATERIAL.  BUT IF

17    IT'S JUST -- I CAN'T EVEN IMAGINE HOW IT COULD BE USEFUL, I

18    DON'T ALLOW YOU TO GET THAT.

19             **MR. GOODMAN:**  AND THERE ARE SPECIFIC CATEGORIES OF

20    INFORMATION THAT WE HAVE REQUESTED THAT I THINK ALL WILL BEAR

21    ON THE ISSUE OF THE CREDIBILITY OF THE OFFICERS EITHER AT THE

22    PRETRIAL HEARING OR AT TRIAL.  AND THOSE ARE IN THE SUBPOENAS

23    THAT WERE PROVIDED.

24             **THE COURT:**  WHERE IS THE ORDER?  SEEMS LIKE I SHOULD

25    SIGN YOUR ORDER, AND THEN -- THAT'S WITHOUT PREJUDICE TO

1  MS. WAGNER BRINGING A MOTION FOR A PROTECTIVE ORDER.

2          **MR. GOODMAN:**  HERE ARE THE TWO ORDERS AND THE

3  SUBPOENAS.

4          **THE COURT:**  HAND THOSE UP.  SO I'M GOING TO SIGN

5  THESE TO GET THE PROCESS GOING.  AND THEN, MS. WAGNER, YOU CAN

6  LOOK AT IT AND SEE IF YOU THINK YOU CAN LIVE WITH IT.  IF YOU

7  CAN'T, THEN BRING A MOTION FOR PROTECTIVE ORDER.

8          **MS. WAGNER:**  YES, YOUR HONOR.

9          **THE COURT:**  ALL RIGHT.  I HOPE THESE ARE REALLY --

10 MR. GOODMAN, REALLY NARROW.

11         **MR. GOODMAN:**  IF THEY AREN'T, I'M SURE YOU'LL HEAR

12 FROM MS. WAGNER.

13         **THE COURT:**  OKAY.  HERE, SIGNED.  OKAY.  SO THAT

14 PROCESS IS MOVING ALONG.

15         WHAT -- I THINK THAT'S ALL I HAVE ON MY LIST, BUT

16 WHAT MORE DO WE HAVE TO DO TODAY?

17         **MR. SABELLI:**  YOUR HONOR, WE WANTED -- THE DEFENSE

18 WANTED TO ALERT THE COURT TO ONE FACT, AND THAT IS OUR

19 SECOND-STAGE MOTIONS ARE DUE JULY 10TH.

20         **THE COURT:**  GREAT.

21         **MR. SABELLI:**  WE INTEND ON FILING THOSE.  WITH

22 RESPECT TO THE DISCOVERY MOTION, WHICH IS PART OF THAT LIST, WE

23 WILL FILE WHATEVER MOTIONS WE'RE ABLE TO DO AT THIS POINT.

24         WE'VE RECEIVED -- MAYBE THIS IS A SLIGHT

25 EXAGGERATION, BUT I WOULD SAY -- AND I'M NOT ASKING THE

1   GOVERNMENT TO AGREE -- BIBLICAL AMOUNTS OF DISCOVERY NEAR THE

2   APRIL 30TH CUTOFF DATE.  I THINK FROM OUR -- FROM OUR DISCOVERY

3   COORDINATOR, THE NUMBER WAS 135 DISCS OF INFORMATION.  I DON'T

4   KNOW IF THOSE ARE COMPLETE DISCS OR NOT.  WE HAVEN'T COMPLETELY

5   ANALYZED WHETHER OR NOT SOME OF THAT MATERIAL IS REPETITIVE.

6   IT'S A WHOLE BUNCH OF MATERIAL.

7           SO WE'RE GOING TO BE ABLE TO FILE SOME OF THE

8   DISCOVERY MOTIONS WITH RESPECT TO THE MATERIAL THAT WE'VE BEEN

9   ABLE TO ANALYZE, BUT WE'VE RECEIVED A WHOLE BUNCH OF

10  INFORMATION RIGHT UP TO THE DEADLINE ON APRIL 30TH, AND IT'S

11  SIMPLY BEEN HUMANLY IMPOSSIBLE TO GO THROUGH ALL OF IT --

12          **THE COURT:**  WELL, WHAT THE SCHEDULING ORDER SAYS IS

13  IT'S DUE ON THAT DATE, ALL DISCOVERY MOTIONS AS TO DISCOVERY

14  PROBLEMS WHICH COUNSEL KNOW OR SHOULD HAVE KNOWN ABOUT IN THE

15  EXERCISE OF REASONABLE DILIGENCE.

16          SO I GUESS IF YOU DON'T INCLUDE A MOTION AND LATER

17  ON THE JUDGE SAYS, OKAY.  YOU SHOULD HAVE KNOWN ABOUT THAT ONE,

18  THEN IT WILL BE TOO LATE.

19          **MR. SABELLI:**  I UNDERSTAND, YOUR HONOR.

20          **THE COURT:**  BUT ON THE OTHER HAND, YOU CAN ALWAYS

21  SAY, WELL, IT WAS BIBLICAL, BIBLICAL DEFENSE.

22          **MR. SABELLI:**  WE'LL SUPPORT THAT WITH A DECLARATION.

23  WE'LL SUPPORT THAT WITH A DECLARATION, YOUR HONOR.

24          **THE COURT:**  AND THEN, YOU KNOW, DELUGE, 40 DAYS AND

25  40 NIGHTS OF DOCUMENTS.

```
 1              MR. SABELLI:  IT'S MORE THAN THAT, YOUR HONOR.

 2              THE COURT:  MAYBE THAT WILL WORK.  I CAN'T -- WE'LL

 3    HAVE TO WAIT AND SEE.  BUT JUST -- YOU GOT TO -- YOU GOT TO

 4    EXERCISE DILIGENCE, DO YOUR ABSOLUTE BEST TO EXERCISE

 5    DILIGENCE, AND WHAT MORE CAN I SAY?

 6              MR. SABELLI:  WE WILL, YOUR HONOR.  WE SIMPLY WANTED

 7    THE COURT TO KNOW.

 8              THE COURT:  ALL RIGHT.

 9              MR. SABELLI:  THANK YOU.

10              MR. LEUNG:  THANK YOU, YOUR HONOR.

11              THE COURT:  ALL RIGHT.  ANYTHING MORE TODAY?

12              I HAVE ONE OTHER SMALL THING.  AND THAT IS THAT THE

13    MARSHALS --

14              DAWN, WHAT IS THE DAY THAT -- WE GOT TO MOVE THIS TO

15    WEDNESDAY?  MOVE IT OFF OF WEDNESDAY, RIGHT?

16              THE CLERK:  WE'RE MOVING IT OFF OF WEDNESDAY TO

17    TUESDAY, AND THAT'S ALREADY BEEN TAKEN CARE OF.  THE NEXT

18    HEARING WAS SET FOR AUGUST 19TH, AND IT'S BEEN MOVED TO AUGUST

19    18TH.

20              THE COURT:  THE REASON IS THE -- GIVEN THE SIZE AND

21    THE HUGE -- HUGE COMMITMENT OF TIME IT IS FOR THE MARSHALS, WE

22    HAD TO GET OTHER JUDGES ON THE COURT TO CANCEL THEIR HEARINGS

23    TODAY.  BUT IF WE MOVED IT TO TUESDAY, THEY DON'T HAVE TO DO

24    THAT.

25              SO IN THE FUTURE, I THINK WE'RE GOING TO BE -- WE'RE
```

```
 1   GOING TO CHANGE THESE HEARING DATES.

 2            HAVE WE ALREADY SENT OUT THE NOTICE?

 3       THE CLERK:  UM-HMM.

 4       THE COURT:  OKAY.  THE NOTICES HAVE ALREADY BEEN

 5   SENT OUT.  SO GO BACK AND LOOK IN YOUR COMPUTER AND YOU'LL FIND

 6   IT.

 7            I THINK WE'RE DONE.

 8            HAVE WE EXCLUDED TIME TILL THE NEXT HEARING?  HOW

 9   FAR ALONG ARE WE ON THIS?

10       MR. LEUNG:  WE HAVE, YOUR HONOR.  ALTHOUGH IT

11   ESCAPES ME.  I COULD PREPARE A SPEEDY TRIAL EXCLUSION ORDER,

12   AND I WILL SUBMIT IT TO A REPRESENTATIVE OF THE DEFENSE OR --

13       MR. SABELLI:  WE'LL CIRCULATE IT THROUGH THE

14   DEFENSE.

15            ON BEHALF OF MR. HERRERA, WE HAVE NO OBJECTION TO

16   THE EXCLUSION OF TIME.

17       THE COURT:  ALL RIGHT.  ANYONE OBJECT TO EXCLUDING

18   TIME TILL THE NEXT HEARING, WHICH IS GOING TO BE -- WHAT IS

19   THAT?

20       MR. LEUNG:  AUGUST 18TH.

21       THE COURT:  WHEN?

22       MR. LEUNG:  IS THAT AUGUST 18TH?

23       THE COURT:  AUGUST 18TH.  ALL RIGHT.

24            THEN THE COURT'S GOING TO FIND -- HEARING NO

25   OBJECTION THAT THE TIME BETWEEN TODAY AND AUGUST 18TH SHOULD BE
```

1    EXCLUDED AND THAT THE NEED FOR THE CONTINUANCE OUTWEIGHS THE

2    NEED OF THE PUBLIC AND THE DEFENDANTS.

3             ALL RIGHT.

4             **MR. LEUNG:**  THANK YOU, YOUR HONOR.

5             **THE COURT:**  ALL RIGHT.  WE'RE IN RECESS.

6             (PROCEEDINGS WERE CONCLUDED AT 3:21 P.M.)

7                         --OOO--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        **CERTIFICATE OF REPORTER**

4              I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED

5     STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

6     THAT THE FOREGOING PROCEEDINGS IN C08-0730WHA, USA V. CERNA, ET

7     AL., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND

8     WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO

9     TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

10    RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF

11    FILING.

12             THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

13    TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

14    COURT FILE.

15

16    _____

17              RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

18                   THURSDAY, AUGUST 6, 2009

19

20

21

22

23

24

25

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*