UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

## ORIGINAL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | PAGES 1 - 98 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. CR 08-00730WHA |
| | ) | |
| IVAN CERNA, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | SAN FRANCISCO, CALIFORNIA |
| _____ | ) | TUESDAY, MARCH 17, 2009 |

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

FOR PLAINTIFF:              JOSEPH P. RUSSONIELLO, ESQ.
                           UNITED STATES ATTORNEY
                           450 GOLDEN GATE AVENUE
                           SAN FRANCISCO, CALIFORNIA  94102
                      BY:  WAI SHUN WILSON LEUNG,
                           ASSISTANT UNITED STATES ATTORNEY

                           UNITED STATES DEPARTMENT OF JUSTICE
                           950 PENNSYLVANIA AVENUE NW ROOM 7651
                           WASHINGTON, D.C.  20530
                      BY:  LAURA GWINN, TRIAL ATTORNEY


FOR DEFENDANT              MARK ROSENBUSH, ATTORNEY AT LAW
IVAN CERNA:                214 DUBOCE AVENUE
                           SAN FRANCISCO, CALIFORNIA  94103


REPORTED BY:               RAYNEE H. MERCADO
                           CSR. NO. 8258

```
 1                    A P P E A R A N C E S (CONT'D.)

 2

 3   FOR DEFENDANT           BADAMI & LEONIDA
     MARVIN CARCAMO:         510 7TH STREET
 4                           SAN FRANCISCO, CALIFORNIA  94103
                        BY:  ELLEN V. LEONIDA, ATTORNEY AT LAW
 5

 6   FOR DEFENDANT           LAW OFFICES OF HARRIS B. TABACK
     ANGEL GUEVARA:          345 FRANKLIN STREET, SUITE 102
 7                           SAN FRANCISCO, CALIFORNIA  94102
                        BY:  HARRIS B. TABACK, ATTORNEY AT LAW
 8

 9   FOR DEFENDANT           MARK ROSENBUSH, ATTORNEY AT LAW
     MORIS FLORES:           214 DUBOCE AVENUE
10                           SAN FRANCISCO, CALIFORNIA  94103

11

12   FOR DEFENDANT           LAW OFFICES OF MARTIN SABELLI
     GUILLERMO HERRERA:      500 LIBERTY STREET
13                           SAN FRANCISCO, CALIFORNIA  94114
                        BY:  MARTIN A. SABELLI, ATTORNEY AT LAW
14

15   FOR DEFENDANT           LAW OFFICES OF SUSAN RAFFANTI
     JONATHAN CRUZ-RAMIREZ:   483 NINTH STREET, SUITE 200
16                           OAKLAND, CALIFORNIA  94607
                        BY:  SUSAN M. RAFFANTI, ATTORNEY AT LAW
17

18   FOR DEFENDANT           LAW OFFICES OF MARTIN SABELLI
     WALTER CRUZ-ZAVALA:     500 LIBERTY STREET
19                           SAN FRANCISCO, CALIFORNIA  94114
                        BY:  MARTIN A. SABELLI, ATTORNEY AT LAW
20

21   FOR DEFENDANT           LAW OFFICES OF ANTHONY J. BRASS
     WALTER PALMA:           3223 WEBSTER STREET
22                           SAN FRANCISCO, CALIFORNIA  94123
                        BY:  ANTHONY J. BRASS, ATTORNEY AT LAW
23

24

25
```

```
1                   A P P E A R A N C E S (CONT'D.)

2


3    FOR DEFENDANT           BERMAN & GLENN
     DANIEL PORTILLO:        THE HEARST BUILDING, SUITE 1100
4                            THIRD & MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94103
5                        BY: JEFFRY M. GLENN, ATTORNEY AT LAW

6


7    FOR DEFENDANT           LAW OFFICE OF PETER GOODMAN
     ERICK LOPEZ:            400 MONTGOMERY STREET, SECOND FLOOR
8                            SAN FRANCISCO, CALIFORNIA  94104
                         BY: PETER GOODMAN, ATTORNEY AT LAW
9


10   FOR DEFENDANT WALTER    LAW OFFICES OF ANN C. MOORMAN
     CHINCHILLA-LINAR:       803 HEARST AVENUE
11                           BERKELEY, CALIFORNIA  94710

12


13   FOR DEFENDANT           MARK GOLDROSEN, ATTORNEY AT LAW
     CESAR ALVARADO:         255 KANSAS STREET, SUITE 340
14                           SAN FRANCISCO, CALIFORNIA  94103

15


16   FOR DEFENDANT           LAW OFFICE OF ERIK G. BABCOCK
     DOUGLAS LARGAESPADA:    1212 BROADWAY, SUITE 726
17                           OAKLAND, CALIFORNIA  94612
                         BY: ERIK G. BABCOCK, ATTORNEY AT LAW
18

19   FOR DEFENDANT           LAW OFFICE OF FRANK BELL
     WILBERT CASTILLO:       333 BRADFORD STREET, SUITE 270
20                           REDWOOD CITY, CALIFORNIA  94063
                         BY: FRANK O. BELL, ATTORNEY AT LAW
21

22   FOR DEFENDANT           LAW OFFICE OF BRIAN BERSON
     MELVIN MALDONADO:       235 MONTGOMERY STREET, SUITE 625
23                           SAN FRANCISCO, CALIFORNIA  94104
                         BY: BRIAN P. BERSON, ATTORNEY AT LAW
24

25
```

```
 1                A P P E A R A N C E S (CONT'D.)

 2

 3   FOR DEFENDANT          LAW OFFICE OF BRIAN BERSON
     RODRIGO MOLINA:        235 MONTGOMERY STREET, SUITE 625
 4                          SAN FRANCISCO, CALIFORNIA  94104
                        BY:  BRIAN P. BERSON, ATTORNEY AT LAW
 5

 6   FOR DEFENDANT          LAW OFFICES OF ANTHONY J. BRASS
     MAURICIO URIAS:        3223 WEBSTER STREET
 7                          SAN FRANCISCO, CALIFORNIA  94123
                        BY:  ANTHONY J. BRASS, ATTORNEY AT LAW
 8

 9   FOR DEFENDANT          COLEMAN & BALOGH
     JUDITH SOSA:           225 BUSH STREET, SUITE 1600
10                          SAN FRANCISCO, CALIFORNIA  94104
                        BY:  ETHAN A. BALOGH, ATTORNEY AT LAW
11

12   FOR DEFENDANT          LAW OFFICE OF JOHN M. RUNFOLA
     JOHN LACSAMANA BRIEZ:  PIER 9, SUITE 100
13                          SAN FRANCISCO, CALIFORNIA  94111
                        BY:  JOHN M. RUNFOLA, ATTORNEY AT LAW
14

15   FOR DEFENDANT          STIGLICH & HINCKLEY, LLP
     JOSE ANTUNEZ:          502 7TH STREET
16                          SAN FRANCISCO, CALIFORNIA  94103
                        BY:  MICHAEL L. HINCKLEY, ATTORNEY AT LAW
17

18   FOR DEFENDANT          SWANSON, MC NAMARA & HALLER, LLP
     ARISTIDES CARCAMO:     300 MONTGOMERY STREET, SUITE 1100
19                          SAN FRANCISCO, CALIFORNIA  94104
                        BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
20

21   FOR DEFENDANT          SWANSON, MC NAMARA & HALLER, LLP
     RAFAEL MONTOYA:        300 MONTGOMERY STREET, SUITE 1100
22                          SAN FRANCISCO, CALIFORNIA  94104
                        BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
23

24

25
```

**A P P E A R A N C E S (CONT'D.)**

FOR DEFENDANT:            LAW OFFICES OF GEORGE C. BOISSEAU
RENE MONTES-MAYORGA:      740 4TH STREET, SECOND FLOOR
                          SANTA ROSA, CALIFORNIA  95404
                     BY:  GEORGE C. BOISSEAU, ATTORNEY AT LAW


FOR DEFENDANT            SETH CHAZIN, ATTORNEY AT LAW
RODIL NOCHEZ:            1164 SOLANO AVENUE
                        ALBANY, CALIFORNIA  94706


FOR DEFENDANT            LINDA A. FULLERTON, ATTORNEY AT LAW
MARLON LUMANG:           54 RAILROAD AVENUE #11
                        RICHMOND, CALIFORNIA  94801



                          --oOo--

1    TUESDAY, MARCH 17, 2009                                2:14 P.M.

2                         P R O C E E D I N G S

3              **THE CLERK:**  CALLING CRIMINAL CASE C08-0730, UNITED

4    STATES VERSUS IVAN CERNA, MARVIN CARCAMO, ANGEL GUEVARA, MORIS

5    FLORES, GUILLERMO HERRERA, JONATHAN CRUZ-RAMIREZ.  WALTER

6    CRUZ-ZAVALA, WALTER PALMA, DANIEL PORTILLO, ERICK LOPEZ, WALTER

7    CHINCHILLA-LINAR, CESAR ALVARADO, MELVIN MALDONADO, RODRIGO

8    MOLINA, MAURICE URIAS, JUDITH SOSA, JOHN BRIEZ, JOSE ANTUNEZ,

9    ARISTIDES CARCAMO, RAFAEL MONTOYA, RENE MONTES-MAYORGA, RODIL

10   NOCHEZ, MARLON LUMANG, DOUGLAS LARGAESPADA.

11             COUNSEL, PLEASE STATE YOUR APPEARANCES.

12             **MR. LEUNG:**  WILSON LEUNG FOR THE GOVERNMENT.  WITH ME

13   AT COUNSEL'S TABLE, YOUR HONOR, IS LAURA GWINN TRIAL ATTORNEY

14   WITH THE U.S. DEPARTMENT OF JUSTICE.

15             GOOD AFTERNOON.

16             **THE COURT:**  THANK YOU.  WELCOME BACK.

17             **MS. RAFFANTI:**  SUSAN RAFFANTI APPEARING FOR JOHN

18   CRUZ-RAMIREZ, WHO'S PRESENT IN CUSTODY, BEING ASSISTED BY THE

19   SPANISH INTERPRETER.

20             **MR. TABACK:**  GOOD AFTERNOON, YOUR HONOR.  HARRIS

21   TABACK ON BEHALF OF MR. ANGEL GUEVARA, WHO IS PRESENT IN COURT.

22   HE'S ALSO BEING ASSISTED BY THE SPANISH INTERPRETER.

23             **MR. GOLDROSEN:**  GOOD AFTERNOON, YOUR HONOR.  MARK

24   GOLDROSEN APPEARING ON BEHALF OF CESAR ALVARADO, WHO'S PRESENT

25   IN CUSTODY, ASSISTED BY THE SPANISH INTERPRETER.

1    **MR. CHAZIN:** GOOD AFTERNOON, YOUR HONOR. SETH CHAZIN

2 APPEARING FOR RODIL NOCHEZ WHO'S PRESENT, OUT OF CUSTODY.

3    **MS. FULLERTON:** LINDA FULLERTON, APPEARING WITH

4 MARLON LUMANG WHO'S IN CUSTODY, NO TRANSLATION NECESSARY.

5    **MR. BELL:** YOUR HONOR, FRANK BELL APPEARING FOR

6 WILBERT CASTILLO. MR. CASTILLO IS IN CUSTODY, BUT HE'S NOT IN

7 THE COURTHOUSE AND WAS NOT BROUGHT FORWARD TODAY.

8    **THE COURT:** I'M SORRY, MR. BELL. WHO IS YOUR -- YOUR

9 CLIENT IS WHO?

10    **MR. BELL:** WILBERT CASTILLO. I'M -- I THINK HE'S

11 DEFENDANT 17, IF I HAVE THAT CORRECTLY.

12    **THE COURT:** AND HE DIDN'T GET HERE.

13    **MR. BELL:** NO. I DON'T KNOW WHY. I WAS JUST ADVISED

14 BY THE CLERK THAT HE WASN'T ON THE LIST AND WASN'T BROUGHT HERE.

15    **THE COURT:** ALL RIGHT.

16    **MR. BELL:** THANK YOU.

17    **MS. MOORMAN:** GOOD AFTERNOON, YOUR HONOR. ANN

18 MOORMAN OF BEHALF OF WALTER CHINCHILLA-LINAR, AND HE'S PRESENT.

19 HE'S BEING ASSISTED BY THE SERVICES OF THE INTERPRETER.

20    **THE COURT:** THANK YOU.

21    **MS. LEONIDA:** GOOD AFTERNOON, YOUR HONOR. ELLEN

22 LEONIDA FOR MARVIN CARCAMO. HE'S PRESENT IN CUSTODY, BEING

23 ASSISTED BY A SPANISH INTERPRETER.

24    **THE COURT:** I'M SORRY. OKAY. CARCAMO. I GOT IT.

25 YES. THANK YOU.

1          **MR. RUNFOLA:**  GOOD AFTERNOON, YOUR HONOR.  JOHN

2   RUNFOLA APPEARING FOR JOHN BRIEZ, WHO'S IN CUSTODY.

3          **THE COURT:**  ALL RIGHT.  THANK YOU.

4          **MR. GOODMAN:**  AFTERNOON, YOUR HONOR.  PETER GOODMAN

5   APPEARING FOR ERICK LOPEZ, WHO IS IN CUSTODY ASSISTED BY THE

6   SPANISH INTERPRETER.

7          **THE COURT:**  ALL RIGHT.

8          **MR. BALOGH:**  GOOD DAY, YOUR HONOR.  ETHAN BALOGH.  I

9   SPEAK FOR JUDITH SOSA.  SHE'S PRESENT, OUT OF CUSTODY.  AND IF

10  IT'S ALL RIGHT WITH THE COURT, WE'LL PLACE HER IN THE FRONT ROW

11  FOR THE PROCEEDINGS.

12         **THE COURT:**  JUST ONE SECOND.

13         **MR. BALOGH:**  NUMBER 23.

14         **THE COURT:**  HER NAME AGAIN.

15         **MR. BALOGH:**  JUDITH SOSA.

16         **THE COURT:**  SOSA.  YES.  ALL RIGHT.  I GOT IT HERE.

17         ALL RIGHT.

18         **MR. GLENN:**  AFTERNOON, YOUR HONOR, APPEARING FOR

19  DANIEL PORTILLO, YOUR HONOR.

20         AND I'M ALSO APPEARING SPECIALLY FOR HARRY SINGER FOR

21  MR. MAURICIO URIAS.  MR. SINGER IS TREATING (SIC), AND I BELIEVE

22  THERE'S GOING TO BE ANOTHER ATTORNEY APPEARING ON THIS CASE.

23         **THE COURT:**  I'M -- WELL, YOUR NAME, THOUGH, IS MR. --

24         **MR. GLENN:**  JEFFRY GLENN.  YES, SIR.  THANK YOU, YOUR

25  HONOR.

1          **THE COURT:**  AND WHAT DO YOU MEAN, ANOTHER ATTORNEY'S

2     APPEARING --

3          **MR. GLENN:**  WELL, I BELIEVE THAT THERE'S GOING TO BE

4     ANOTHER ATTORNEY APPEARING FOR MR. SINGER, WHO I DON'T BELIEVE

5     IS ABLE TO CONTINUE.

6          **THE COURT:**  OH, ALL RIGHT.  SO MR. -- MOMENTARILY --

7     I MEAN, FOR THE PRESENT, YOU ARE APPEARING FOR MR. SINGER.

8          **MR. GLENN:**  YES, I AM, YOUR HONOR.

9          **THE COURT:**  ALL RIGHT.  THANK YOU.

10         **MR. GLENN:**  THANK YOU.

11         **MR. HINCKLEY:**  AFTERNOON, YOUR HONOR.  MIKE HINCKLEY

12    APPEARING FOR LYDIA STIGLICH OF BEHALF OF JOSE ANTUNEZ, WHO IS

13    PRESENT IN CUSTODY AND BEING ASSISTED BY THE SPANISH

14    INTERPRETER.

15         **THE COURT:**  THANK YOU.

16         **MR. ROSENBUSH:**  GOOD AFTERNOON, YOUR HONOR.  MARK

17    ROSENBUSH FOR MORIS FLORES.  HE'S PRESENT IN COURT.

18         I'M ALSO APPEARING SPECIALLY FOR CHRIS CANNON, WHO IS

19    OUT OF TOWN TODAY ON BUSINESS.  AND THAT WOULD BE FOR DEFENDANT

20    IVAN CERNA, WHO IS ALSO PRESENT IN COURT.

21         **THE COURT:**  THANK YOU.

22         **MR. BRASS:**  GOOD AFTERNOON, YOUR HONOR.  TONY BRASS

23    APPEARING FOR WALTER PALMA.  HE'S IN CUSTODY.  HE DOES NOT

24    REQUIRE THE SERVICES OF A SPANISH INTERPRETER.

25         **THE COURT:**  THANK YOU.

1    **MR. BOISSEAU:**  GOOD AFTERNOON, YOUR HONOR.  GEORGE

2  BOISSEAU ON BEHALF OF RENE MONTES-MAYORGA, WHO'S IN CUSTODY,

3  YOUR HONOR.

4    **THE COURT:**  THANK YOU.

5    **MR. SWANSON:**  GOOD MORNING, YOUR HONOR -- AFTERNOON.

6  ED SWANSON ON BEHALF OF RAFAEL MONTOYA, WHO IS IN CUSTODY WITH

7  THE SPANISH LANGUAGE INTERPRETER.  ALSO APPEARING SPECIALLY FOR

8  ARISTEDES CARCAMO ON BEHALF OF SHANA KEATING.

9    **THE COURT:**  WAIT A MINUTE.

10    I'M SORRY.  I --

11    **MR. SWANSON:**  RAFAEL MONTOYA --

12    **THE COURT:**  OKAY.  I GOT IT.  CARCAMO AND MONTOYA.

13  GOT IT.

14    **MR. SWANSON:**  YES.

15    **MR. BABCOCK:**  AFTERNOON, JUDGE.  ERIC BABCOCK FOR

16  DOUGLAS LARGAESPADA, WHO IS NOT PRESENT, BUT HIS APPEARANCE WAS

17  WAIVED BY YOUR HONOR.

18    **THE COURT:**  ALL RIGHT.

19    YES.  THANK YOU.

20    **MR. BERSON:**  AFTERNOON, YOUR HONOR.  BRIAN BERSON FOR

21  MELVIN MALDONADO.  HE'S IN CUSTODY.  HE'S GOT THE EARPHONES ON

22  FOR THE INTERPRETER.

23    I'M ALSO APPEARING SPECIALLY FOR RODRIGO MOLINA,

24  WHO'S LAWYER'S IAN LOVESETH.

25    **THE COURT:**  THANK YOU.

1          **MR. SABELLI:**  GOOD AFTERNOON, YOUR HONOR, MARTIN

2     SABELLI FOR MR. HERRERA, WHO IS DEFENDANT NO. 5.  HE IS PRESENT

3     AND ASSISTED BY A SPANISH LANGUAGE INTERPRETER.

4          AND I AM ALSO APPEARING SPECIAL FOR RANDY SUE POLLOCK

5     NOR HER CLIENT WALTER CRUZ-ZAVALA.

6          THANK YOU, YOUR HONOR.

7          **THE COURT:**  THANK YOU.

8          ANYONE ELSE?  I KNOW -- AND I JUST MISSED IT, BUT

9     LET'S MAKE SURE MR. PATTON AND ALVARADO --

10         **MR. GOLDROSEN:**  MR. PATTON'S NOT IN THE CASE ANYMORE

11    I TOOK FOR CESAR ALVARADO A -- LONG AGO.

12         **THE COURT:**  SO --

13         **MR. GOLDROSEN:**  SO MARK GOLDROSEN.

14         **THE COURT:**  I GOT IT.  THIS LIST, THEN, IS A LITTLE

15    OUT OF DATE.

16         OKAY.  SO THAT -- SETH CHAZIN, I KNOW.

17         **MR. CHAZIN:**  I'M HERE.

18         **THE COURT:**  I KNOW.  I SAW YOU, BUT YOU MADE AN

19    APPEARANCE --

20         **MR. CHAZIN:**  YES, FOR MR. NOCHEZ.

21         **THE COURT:**  ALL RIGHT.  GREAT.

22         WELL, THEN THAT ACCORDING TO MY LIST, EVERYTHING'S

23    FINE EXCEPT, MR. BELL, YOUR CLIENT IS NOT HERE.

24         **MR. BELL:**  THAT'S CORRECT, YOUR HONOR.

25         **THE COURT:**  WELL, WHAT DO WE DO ABOUT THAT?

1          **MR. BELL:**  I DON'T KNOW WHAT TO DO ABOUT IT AT THE

2   MOMENT, BUT IT MIGHT BE THE SUBJECT OF SOME SORT OF A MOTION IN

3   THE FUTURE, SO WE'LL SEE.

4          I -- ACCORDING TO THE CLERK, HE WASN'T ON THE LIST.

5   I ASSUME SINCE I FILED A DOCUMENT BEFORE HEARING TODAY THAT IT

6   WOULD BE ON THE LIST, BUT IT WASN'T.  SO -- AND HE WAS A LATE

7   ARRESTEE, AS I INDICATED IN MY MOTION, SO I'M NOT QUITE SURE

8   WHAT TO DO ABOUT TODAY, FRANKLY.

9          **THE COURT:**  WHAT DOES THE GOVERNMENT SAY?

10          **MR. LEUNG:**  YOUR HONOR, IT WOULD SEEM AS IF THE

11   DEFENDANT'S PRESENCE IS NOT CRUCIAL TO OUR PROCEEDING.  IF THE

12   DEFENDANT WANTS TO -- TO PERSONALLY APPEAR BEFORE YOUR HONOR,

13   PERHAPS WE CAN SCHEDULE IT FOR A FUTURE DATE, BUT THE REST OF

14   THE CASE CERTAINLY SHOULD BE ALLOWED TO PROCEED.

15          I DON'T SEE ANY PREJUDICE ARISING FROM THE

16   DEFENDANT'S ABSENCE FROM TODAY'S PROCEEDING.

17          **THE COURT:**  WE DON'T KNOW YET.  I MEAN, DEPENDS ON --

18   WHAT IF I WERE TO SET THE CASE FOR TRIAL, YOU KNOW, NEXT WEEK?

19   HE MIGHT NOT BE READY.  DEPENDS ON WHAT WE DECIDE.

20          HERE'S WHAT I -- THE ONLY WAY TO DEAL WITH IT, I

21   THINK, IS THIS:  MR. BELL, YOU GET A -- "GET OUT OF JAIL FREE"

22   CARD, SO TO SPEAK.  YOU -- NOTHING THAT IS GOING TO BE DECIDED

23   TODAY IS BINDING ON YOUR CLIENT WITHOUT HIS HAVING -- IN OTHER

24   WORDS, IF I WERE TO DECIDE X, Y, Z.  THEN -- AND YOU AND YOUR

25   CLIENT TALK IT OVER AND YOU DON'T LIKE IT THEN AND YOU WANT TO

1    COME BACK TO COURT AND BE HEARD ON THAT AGAIN, THEN I'M GOING TO

2    GIVE YOU AN ABSOLUTE RIGHT TO DO THAT AS LONG AS IT'S DONE

3    PROMPTLY.

4            **MR. BELL:**  THANK YOU.

5            **THE COURT:**  BUT NOT -- YOU KNOW, HE SHOULD BE HERE,

6    AND I DON'T KNOW WHY THE LIST DIDN'T HAVE IT.  WELL, YOU KNOW,

7    MAYBE THAT'S MY FAULT FOR NOT HAVING THE RIGHT LIST.  SO --

8            **MR. BELL:**  ALL RIGHT.  THANK YOU.  I APPRECIATE THE

9    OPPORTUNITY.

10           **THE COURT:**  BUT THAT'S THE ONLY WAY I THINK THAT WE

11   CAN DEAL WITH IT FOR NOW.

12           **MR. BELL:**  ALL RIGHT.  THANK YOU.

13           **THE COURT:**  THANK YOU.

14           **MR. BRASS:**  YOUR HONOR?

15           **THE COURT:**  YES, SIR.

16           **MR. BRASS:**  THERE'S ONE MORE APPEARANCE.  I JUST

17   RECEIVED WORD THAT BRENDAN CONROY ACCEPTED THE APPOINTMENT FOR

18   MAURICIO URIAS.  I BELIEVE HE REPORTED TO THE SAN FRANCISCO

19   COURTHOUSE, NOT -- BEING NEW TO THE CASE AND NOT KNOWING THAT WE

20   WERE HERE.  SO I WILL APPEAR FOR MR. CONROY TODAY.

21           **THE COURT:**  SOMEBODY EARLIER SAID THAT THEY WERE

22   APPEARING FOR MR. SINGER.

23           **MR. BRASS:**  YES.

24           **MR. GLENN:**  I'M APPEARING SPECIALLY, YOUR HONOR.

25           **THE COURT:**  THAT WAS MR. GLENN.

```
 1              MR. BRASS:  AND THEN HE INDICATED THAT THERE WOULD BE

 2  ANOTHER LAWYER IN THE CASE PERHAPS.  THAT HAS, IN FACT, TAKEN

 3  PLACE.  I BELIEVE BRENDAN CONROY HAS ACCEPTED THE APPOINTMENT TO

 4  REPRESENT MR. URIAS, SO -- BUT COULD NOT BE HERE, SO I'M

 5  STANDING IN SPECIALLY FOR MR. CONROY.

 6              THE COURT:  THANK YOU FOR DOING THAT.  ALL RIGHT.

 7              YES.

 8                   (OFF-THE-RECORD DISCUSSION.)

 9              THE COURT:  WE GOT AN INTERPRETER THAT NEEDS TO BE

10  SWORN.  ALL THE INTERPRETERS HERE HAVE BEEN SWORN IN THIS CASE.

11              INTERPRETER CLAUS:  YOUR HONOR, I BELIEVE I WAS SWORN

12  LAST TIME IN THIS CASE.  BUT THERE ARE TWO COLLEAGUES, AND I

13  WAS.

14              INTERPRETER SAFDIE-ENOCH:  I WAS SWORN.

15              INTERPRETER GLASSER:  ANYONE NOT YET SWORN.

16              THE COURT:  OKAY.  LET'S SWEAR YOU IN.

17              THE INTERPRETER:  MY NAME IS CAROL GLASSER.

18              THE COURT:  VERY WELL.  LET'S SWEAR YOU IN.

19                   (INTERPRETER SWORN.)

20              THE COURT:  OKAY.  I WANT TO HAVE AT SOME POINT TODAY

21  A FURTHER DISCUSSION.  I APPRECIATE ALL INPUT THAT I GOT FROM

22  THE LAWYERS.  I HAVE TAKEN IT TO HEART.  I'VE GIVEN YOU A -- YET

23  ANOTHER SCHEDULING ORDER, AND IT'S NOT YET FINAL.  BUT I MAY --

24  IT LOOKS FINAL AND I COULD SIGN IT, BUT I WANT TO GIVE YOU ONE

25  MORE CHANCE TO -- TO CRITIQUE IT, AND THEN WE'LL -- IN THE
```

```
 1   NEXT -- MAYBE BY THURSDAY OF THIS WEEK, I PLAN TO TRY TO GET AN

 2   ORDER OUT UNLESS, MR. BELL, YOU WANT TO HAVE A FURTHER HEARING

 3   ON IT --

 4          MR. BELL:  THANK YOU.

 5          THE COURT:  -- WITH MR. CASTILLO PRESENT.  SO ONE OF

 6   THE THINGS I WANT TO GO OVER TODAY IS THAT.  BUT BEFORE WE TURN

 7   TO THAT, THERE IS A MOTION THAT -- OH, DOES EVERYONE HAVE -- ALL

 8   THE LAWYERS HAVE A COPY OF WHAT WAS HANDED OUT EARLIER?  ANYONE

 9   NOT HAVE IT, 'CAUSE I HAVE A FEW EXTRAS.

10          OKAY.  LOOKS LIKE WE ALL HAD IT.  THANK YOU.

11          THERE'S A MOTION BY -- BY MR. BELOW (PHONETIC) TO

12   UNSEAL DOCUMENTS.  SO LET'S HEAR THAT MOTION.

13          MR. BALOGH:  GOOD AFTERNOON, YOUR HONOR.  IT'S

14   "BALOGH," IT RHYMES WITH "SHALLOW."

15          THE COURT:  "SHALLOW" AND "BALOGH."  OKAY.  BALOGH.

16   ALL RIGHT.  THANK YOU.

17          MR. BALOGH:  THANK YOU.

18          WELL, I NOTICED IN THE COURT'S PROPOSED FINAL

19   SCHEDULE ORDER, IT SORT OF HAS, TAKEN AT LEAST IN THIS CONTEXT,

20   TRYING TO SHAPE WHAT'S BEEN A GROWING PROBLEM IN THIS CASE FROM

21   THE DEFENSE POINT OF VIEW, WHICH IS NOT ONLY ARE DOCUMENTS BEING

22   FILED UNDER SEAL FROM THE PUBLIC AND THERE'S A STANDARD FOR THAT

23   UNDER COPLEY PRESS, BUT THEY'RE BEING SEALED FROM THE DEFENSE

24   SUCH THAT WE HAVE NO IDEA THE BASIS FOR IT, THE TERMS OF

25   SEALING, ANY GIST OF WHAT THEY ARE.
```

```
 1              IT'S, IN ESSENCE, SECRET EVIDENCE, SECRET

 2   COMMUNICATIONS WITH THE COURT.  AND AS WE KNOW FROM THE

 3   FUNDAMENTAL TENETS OF OUR ADVERSARY SYSTEM, THIS IS SOMETHING

 4   THAT'S FROWNED UPON, TO PUT IT MOST LIGHTLY.  THERE ARE HIGH

 5   STANDARDS TO HAVE SEALING FROM THE PUBLIC BECAUSE THESE ARE

 6   PRESUMPTIVELY PUBLIC PROCEEDINGS.  THERE ARE EVEN HIGHER

 7   STANDARDS TO KEEP THINGS PRIVATE FROM THE ADVERSARIES, THE

 8   DEFENDANTS IN THIS CASE.

 9              WHAT WE'VE ASKED FOR IS -- AT A MINIMUM, IS TO

10   UNDERSTAND THE NATURE OF AND SUBSTANCE OF WHAT THESE FILINGS

11   ARE, SOMEWHAT AKIN TO WHAT YOUR HONOR IS SUGGESTING YOU'RE GOING

12   TO ORDER AS PART OF YOUR FINAL PRETRIAL CONFERENCE, THAT IF THE

13   GOVERNMENT'S GOING TO MAKE ANY SORT OF ABBREVIATED SHOWING OR

14   SEEK TO WITHHOLD INFORMATION, WE GET TO KNOW A LITTLE BIT ABOUT

15   IT SO WE CAN ARTICULATE WHAT MAY OR MAY NOT BE WRONG ABOUT IT.

16              WE'VE MADE A MOTION BASED ON THE SECOND CIRCUIT CASE,

17   ABUBAMBRA (PHONETIC), WHICH I'M LIKELY MISPRONOUNCING, BUT WHICH

18   SETS FORTH THE STANDARD FOR AT LEAST PROVIDING DEFENSE, AT A

19   MINIMUM, THAT MUCH INFORMATION.

20              AND WE PRESENTED FOR YOUR COURT, THE NINTH CIRCUIT

21   CASE GUROLLA, WHICH SAYS, AT A MINIMUM, ANY TIME EITHER PARTY

22   MAKES A MOTION THAT'S EX PARTE, THE COURT NEEDS TO ISSUE AN

23   ORDER TELLING THEM WHY IT HAS BEEN ALLOWED TO BE FILED WITHOUT

24   THEIR INTERACTION, WITHOUT THEIR SEEING IT.

25              THE GOVERNMENT'S RESPONSE, QUITE SIMPLY, IS WE DID IT
```

```
1    PROPERLY AND WE CAN'T SHARE ANY MORE INFORMATION WITH YOU.  AND
2    THAT'S PLAINLY INSUFFICIENT UNDER ANY OF THE CASES WE'VE CITED.
3              THE COURT:  WHAT'S THAT NINTH CIRCUIT CASE?
4              MR. BALOGH:  GUROLLA, G-U-R-O-L-L-A.
5              THE COURT:  WHAT IS THE MINIMUM THAT YOU SAY -- GOT
6    TO DO TO SATISFY THAT?
7              MR. BALOGH:  WE GET AN ORDER FROM YOU TELLING US WHAT
8    YOU'VE SEALED AND THAT A SEALING ORDER HAS BEEN ISSUED AND THAT
9    IT'S MET THE STANDARD FOR SEALING IN THE NINTH CIRCUIT.
10             THE COURT:  WELL, IT'S TRUE WE HAVEN'T BEEN DOING
11   THAT.
12             MR. BALOGH:  AND THAT'S THE FIRST THING WE ASKED THE
13   GOVERNMENT FOR, WHICH IS --
14             THE COURT:  AND -- BUT, YOU KNOW, I DON'T KNOW WHAT
15   YOUR CLIENT'S SITUATION IS, BUT IF YOUR CLIENT WERE TO EVER WANT
16   TO COOPERATE AND WE HAD A -- A UNDER-SEAL HEARING, YOU'D
17   PROBABLY BE APOPLECTIC IF WE WERE TO ISSUE SUCH A NOTICE, SO HOW
18   DO I DEAL WITH -- WITH THAT PROBLEM?
19             MR. BALOGH:  LET ME ADDRESS IT IN TWO WAYS.  FIRST OF
20   ALL, AS FAR AS MY CLIENT'S COOPERATION, I THINK IT'S THE SAME AS
21   ALL OF OUR CLIENTS' COOPERATION.  WE WANT THEM TO COOPERATE WITH
22   US AS THEIR LAWYERS TO HELP THEM DEFEND THIS CASE AND THAT
23   REQUIRES DISCOVERY, AND THAT REQUIRES BEING PARTICIPANTS IN THE
24   ADVERSARY PROCESS, AND THAT MIGHT BE THE MOST FUNDAMENTAL THING
25   I'M ASKING FOR FROM MY CLIENT AND EVERY LAWYER'S ASKING FOR FROM
```

1    THEIR CLIENT 'CAUSE THIS CASE IS SERIOUS.

2           **THE COURT:**  I'M NOT SUGGESTING THAT YOUR CLIENT IS

3    COOPERATING.  BELIEVE ME, I'M NOT.

4           **MR. BALOGH:**  NO, NO, NO --

5           **THE COURT:**  WHAT I'M SAYING IS THAT WE GOT A LARGE

6    NUMBER, AND AS TIME GOES ON, I DON'T KNOW, BUT IF HISTORY IS ANY

7    GUIDE, ANYWHERE FROM ONE TO TEN OF THESE DEFENDANTS ARE GOING TO

8    WANT TO COME FORWARD AND COOPERATE, AND EVERY ONE OF THEM ARE

9    GOING TO WANT TO HAVE IT UNDER SEAL.

10          **MR. BALOGH:**  THE NOTION OF COOPERATION HAS OBVIOUSLY

11   BEEN LITIGATED BEFORE.  AT A MINIMUM, THOUGH, WHETHER OR NOT WE

12   AGREE THESE SHOULD BE PUBLIC DOCUMENTS, THAT'S NOT NARROWLY

13   TAILORED.  I'LL TELL YOU RIGHT NOW, YOUR HONOR.  YOU CAN GIVE ME

14   ALL OF THOSE DOCUMENTS TODAY, EVERY ONE THAT'S BEEN UNDER SEAL,

15   AND YOU COULD SAY TO ME, MR. BALOGH, ATTORNEYS' EYES ONLY.

16   YOU'RE FORBIDDEN FROM DISCUSSING THE CONTENTS FROM YOUR CLIENT

17   OR WITH ANYBODY ELSE.  AND IF YOU WANT RELIEF FROM THIS ORDER,

18   YOU'LL COME BACK TO MAKE A SHOWING AND THAT WILL BE UNDER SEAL.

19   AND YOU WILL IN NO WAY, SHAPE OR FORM REVEAL THIS INFORMATION

20   BUT YOU MAY USE IT BECAUSE YOU NEED TO DEFEND THIS CASE.

21          IN THIS VERY COURT, I RECEIVED SUCH AN ORDER FROM THE

22   HONORABLE SUSAN ILLSTON.  I ABIDED IT.  THERE WAS NO PROBLEM

23   WITH THAT.  BUT I WAS GIVEN ACCESS TO THE INFORMATION.  HAD I

24   FELT THE NEED AT THAT TIME TO SHOW IT TO MY CLIENT, DISCUSS IT

25   WITH MY CLIENT, I WOULD HAVE SOUGHT RELIEF.  I DIDN'T DO SO

1    UNTIL MORE THAN A YEAR LATER AFTER THAT CASE WAS OVER WHEN IT

2    BECAME APPARENT THAT AT THAT TIME MY CLIENT NEEDED TO KNOW.

3              THESE ARE ORDERS THAT ARE NARROWLY TAILORED.  THIS

4    COURT HAS LOTS OF ABILITIES TO MAKE SURE THAT THE GOVERNMENT'S

5    CONCERN ABOUT WHAT GETS LEAKED OUT IS MET, WHILE AT THE SAME

6    TIME GUARANTEEING ME AND ALL OF OUR CLIENTS THE OPPORTUNITY TO

7    ENSURE THEIR LAWYERS KNOW WHAT'S GOING ON AND THEIR LAWYERS SEE

8    HOW THIS CASE IS SHAPING, AND THE LAWYERS CAN DEFEND AGAINST

9    ALLEGATIONS, AND, FINALLY, MOST IMPORTANTLY, WE CAN KNOW WHAT'S

10   BEING SHARED WITH YOU.

11             I'M QUITE CONFIDENT AS WELL THAT IF I COULD HAVE SOME

12   TIME WITH YOU, YOUR HONOR, AND EXPLAIN MY CLIENT'S POSITION TO

13   YOU PRIVATELY, I MIGHT HAVE AN EFFECT ON HOW THE CASE GETS

14   TRIED.  I'M EQUALLY SURE THAT MR. WILSON LEUNG WOULD BE UPSET

15   WITH THAT.  THE GOVERNMENT WOULD OBJECT AND SAY, NO, THIS IS NOT

16   PROPER EX PARTE COMMUNICATION.  YOU WANT TO TALK ABOUT THE CASE

17   WITH THE JUDGE, I GET TO BE THERE.  THAT'S LAW SCHOOL, FIRST

18   YEAR.  AND I OBJECT TO MR. BALOGH TRYING TO HAVE A MEETING WITH

19   YOU TO TALK ABOUT HIS CLIENT --

20             **THE COURT:**  WELL, I HAVE MEETINGS WITH THE LAWYERS ON

21   THE C.J.A.

22             **MR. BALOGH:**  ABOUT THE SUBSTANCE OF LITIGATION?

23             **THE COURT:**  WELL, THEY HAVE TO EXPLAIN TO ME WHY THEY

24   WANT TO DO SOMETHING AND WHY IT'S WORTH THE MONEY AND -- YEAH,

25   SOMETIMES WE HAVE TO TALK ABOUT THE SUBSTANCE --

1    **MR. BALOGH:**  RIGHT.  OKAY.

2    **THE COURT:**  -- WITH THE DEFENSE LAWYERS.

3    **MR. BALOGH:**  EXCELLENT.  AND DO YOU WANT TO ANY OF

4    THOSE MEETINGS -- THERE'S A BODY OF CASE LAW WHICH TALKS ABOUT

5    EX PARTE COMMUNICATION TO GET RULE 17 SUBPOENAS TO HAVE AN

6    EXPERT HIRED BECAUSE OUR CLIENTS ARE TOO IMPECUNIOUS TO AFFORD

7    THEIR OWN.

8            IF WE WERE PRIVATE COUNSEL, WE WOULD NOT NEED TO HAVE

9    THESE MEETINGS WITH YOUR HONOR.  WE'D HAVE DEEP-WELL POCKETS

10   WITH OUR CLIENTS, AND WE COULD HIRE WHO WE LIKE WHEN WE LIKE,

11   AND WE'D NEVER TROUBLE YOU AT ALL.

12           BUT BECAUSE OF THE FUNDING MECHANISM THAT ARISES,

13   THAT THIS BODY OF CASE LAW THAT'S ARISEN THAT SAYS YOU CAN DO

14   THAT (SIC).

15           BUT IF MR. LEUNG WOULD LIKE NOTICE AND WOULD LIKE TO

16   KNOW WHAT WE'RE TALKING ABOUT, THAT'S COMPLETELY APPROPRIATE FOR

17   THE GOVERNMENT TO KNOW THAT THE DEFENSE IS SEEKING EXPERT FUNDS

18   FROM THE COURT AND IS MAKING A SHOWING EX PARTE.  I WOULD HAVE

19   NO OBJECTION TO THAT.

20           WHERE THE -- THE UNDER-SEAL DOCUMENTS, WE DON'T EVEN

21   KNOW WHAT THEY ARE YET.  AND THAT'S WHY WE WENT TO THE FIRST

22   TEST I TALKED ABOUT.  MAYBE MORE CAN BE SHOWN, MAYBE LESS CAN BE

23   SHOWN.  BUT WE CAN'T EVEN GET TO THAT PLACE UNTIL WE KNOW WHAT'S

24   GOING ON.

25           IT'S A VERY SENSIBLE REQUEST, YOUR HONOR.  I REALLY

1    THINK THE COURT SHOULD CONSIDER IT FIRMLY BECAUSE THIS IS, AS WE

2    KNOW JUST FROM THIS WEEK, EVEN AFTER WE FILED OUR MOTION

3    OBJECTING TO THIS, THE UNDER-SEAL FILINGS KEEP COMING.  AND I

4    DON'T BELIEVE WE HAVE A SYSTEM WHICH PERMITS SECRET EVIDENCE,

5    AND IT'S OF GRAVE CONCERN, I THINK, TO EVERYONE SITTING AT THIS

6    TABLE.

7              I'LL SUBMIT, YOUR HONOR.

8              **THE COURT:**  THANK YOU.

9              **MR. LEUNG:**  YOUR HONOR, NOT SURPRISINGLY, I DISAGREE

10   SUBSTANTIALLY WITH WHAT MR. BALOGH JUST SAID.  WE WOULD NOTE

11   THAT THE COURT HAS THE INHERENT AUTHORITY TO SEAL DOCUMENTS IF

12   IT'S PRESENTED WITH A COMPELLING REASON.  AND WE WOULD NOTE THAT

13   THE COURT'S AUTHORITY IS SUBJECT TO REVIEW FOR A -- ABUSE OF

14   DISCRETION.

15             NOW, THE NINTH CIRCUIT I'M NOT SURE REQUIRES THE

16   COURT TO ISSUE A STATEMENT OF ITS REASONS TO THE PUBLIC, AS LONG

17   AS THERE IS SUFFICIENT REASON IN THE RECORD FOR APPELLATE

18   REVIEW.

19             **THE COURT:**  WELL, WHAT DO YOU SAY TO THIS GUROLLA

20   CASE?

21             **MR. LEUNG:**  I WOULD POINT OUT SHYROCK (PHONETIC) IN

22   WHICH -- WHICH IS 342 F3D. 948 ON PAGES 982 TO -83 FROM 2003, IN

23   WHICH THE COURT IN CAMERA REVIEWED A -- A -- LARGE BODY OF

24   DOCUMENTS AND THEN RULED AND ON APPEAL.  THE NINTH CIRCUIT THEN

25   REVIEWED IN CAMERA THE SAME DOCUMENTS AND AFFIRMED THE COURT'S

1    DECISION.

2             SO LONG AS THERE IS A RECORD THAT CAN BE REVIEWED,

3    THEN THE -- THE SEALING IS PROPER AND SUBJECT TO ABUSE OF

4    DISCRETION REVIEW.  AND IN THIS CASE, YOUR HONOR, WITHOUT GOING

5    INTO THE DETAILS, WE WOULD RESPECTFULLY SUBMIT THAT THE

6    RECORD -- THE SEALED RECORD HAS WITHIN IT CLEARLY ESTABLISHED

7    THE NECESSITY FOR SEALING.

8             WE'D ALSO NOTE THAT THE SEALINGS WERE HARDLY EX PARTE

9    BECAUSE IT WASN'T THE GOVERNMENT SUBMITTING SUBMISSIONS TO THE

10   COURT BY ITSELF.

11            AND TO THE EXTENT THAT YOUR HONOR IS CONSIDERING

12   UNSEALING OR DISCLOSING INFORMATION, I BELIEVE OTHER INDIVIDUALS

13   WITH AN INTEREST WOULD ALSO LIKE TO BE HEARD ON THAT MATTER AS

14   WELL.

15            BUT BASICALLY, YOUR HONOR, I BELIEVE THE COURT HAS

16   COMPLIED WITH ALL RELEVANT NINTH CIRCUIT CASE LAW WITH RESPECT

17   TO THE SEALING OF DOCUMENTS AND EXERCISING ITS INHERENT

18   AUTHORITY.  THE RECORD IS CLEAR, ALBEIT IT'S UNDER SEAL, AND IT

19   CAN BE SUBJECT TO APPELLATE REVIEW.

20            **THE COURT:**  ALL RIGHT.  WHAT DO YOU SAY TO THIS

21   SHYROCK CASE --

22            **MR. BALOGH:**  WELL, I THINK --

23            **THE COURT:**  -- MR. BALOGH?

24            **MR. BALOGH:**  I THINK MY FRIEND, MY COLLEAGUE

25   MR. LEUNG TOLD US IN THAT CASE, THEY ISSUED AN ORDER, WHICH IS

```
1    ONE OF THE FIRST THINGS WE'VE ASKED FOR.  I DON'T BELIEVE
2    SHYROCK SAID THEY ISSUED AN ORDER THAT WASN'T SEEN BY THE
3    DEFENSE.  SO I THINK AT LEAST THAT POINT, HE'S INCORRECT ON.
4    AND I THINK SHYROCK AND ALL THESE CASES HAVE BOTH PARTS OF THE
5    TEST.  MR. LEUNG TELLS US ONE OF THEM, THE COMPELLING NEEDS.  SO
6    IT'S STIPULATED.
7              THE SECOND PART IS NARROWLY TAILORED TO SUPPORT THAT
8    INTEREST, AND THAT IS WHERE THE RUB IS IN THIS CASE.  WE WILL
9    ASSUME FOR PURPOSES OF OUR DISCUSSION THAT EVERY DOCUMENT HAS
10   SOME COMPELLING NEED THAT'S BEEN ARTICULATED BY THE GOVERNMENT.
11   EVEN IF THAT IS TRUE -- AND I DON'T KNOW THAT TO BE TRUE; IT'S
12   AN ASSUMPTION FOR THE SAKE OF ARGUMENT -- THE SEALING HAS TO BE
13   NARROWED -- NARROWLY TAILORED TO SUPPORT THAT INTEREST.  AND FOR
14   THE REASONS I'VE STATED ON THE RECORD TODAY, AN "ATTORNEYS' EYES
15   ONLY" DESIGNATION IS GOING TO BE SUFFICIENT TO MEET INTEREST,
16   AND IF NOT, WE SHOULD KNOW WHY NOT.
17             I'M ALSO UNFAMILIAR WITH ANY CASE, INCLUDING SHYROCK,
18   THAT IS -- SETS FORTH THE STANDARD FOR EX PARTE SEALINGS.  THE
19   BRIEF FILED BY THE GOVERNMENT TALKS ABOUT FOLTZ AND SHYROCK AND
20   CASES WHICH ARE GENERALLY TALKING ABOUT THINGS SHIELDED FROM THE
21   PUBLIC.  I'M NOT ASKING YOUR HONOR TO ISSUE ANYTHING TO THE
22   PUBLIC TODAY.  I'LL BE HAPPY TO ACCEPT EVERY ORDER THIS COURT
23   ISSUES ON THIS ISSUE UNDER SEAL TO ME AND MY COLLEAGUES.
24             WE AS DEFENDANTS WANT TO UNDERSTAND WHAT'S GOING ON.
25   WE AS DEFENDANTS WANT TO UNDERSTAND WHAT THE SECRET EVIDENCE IS.
```

```
 1   AND WE AS DEFENDANTS WANT TO KNOW IF WE'RE NOT GETTING THAT
 2   INFORMATION, WHAT'S THE REASONED BASIS FOR IT.  WE WANT TO KNOW
 3   WHAT QUESTIONS WE CAN ASK THE COURT IN THE FUTURE, TO KNOW IS
 4   THERE ANY TIME?
 5              ONE OF THE THINGS THE COURT SUGGESTED, THAT THIS
 6   MIGHT BE ABOUT COOPERATING DEFENDANTS.  WELL, THAT'S SEALED FOR
 7   ALL TIME?  THIS IS BRADY AND GIGLIO INFORMATION?  WE DON'T GET
 8   THIS BEFORE TRIAL?  WE DON'T GET THIS IN A REASONABLE TIME
 9   BEFORE TRIAL?  IT'S SEALED FOREVER?
10              WHAT WE WOULD NEED TO, AT A MINIMUM IN THAT
11   CIRCUMSTANCE, IS GO THROUGH EACH OF THESE AND DECIDE WHAT IS THE
12   TERM FOR WHICH THEY WILL BE SEALED AND WHEN WILL THEY BE
13   UNSEALED, UNSEALED TO THE LAWYERS AND PERHAPS UNSEALED TO THE
14   PUBLIC BECAUSE IF PEOPLE ARE COOPERATING AND ARE GOING TO
15   TESTIFY, THEY'RE GOING TO BE EXAMINED.  AND THAT'S GOING TO
16   HAPPEN IN A PUBLIC TRIAL UNLESS WE'RE GOING TO DISPENSE WITH
17   THAT AS WELL, WHICH I DON'T THINK WE ARE.
18              BUT I THINK THOSE ARE THE STEPS THE COURT NEEDS TO
19   TAKE.
20              THE COURT:  WELL, OBVIOUSLY, IF SOMEBODY TESTIFIES AT
21   A TRIAL, QUITE A LOT OF INFORMATION WOULD BE TURNED OVER IN
22   ADVANCE ONCE WE EVER GOT TO THAT STAGE, BUT --
23              MR. BALOGH:  BUT THAT'S --
24              (SIMULTANEOUS COLLOQUY.)
25              THE COURT:  WE'RE NOT ANYWHERE CLOSE TO THAT YET.
```

1    **MR. BALOGH:**  I'LL BE HAPPY ON BEHALF OF MS. SOSA TO

2    TALK ABOUT HOW CLOSE WE ARE TO TRIAL DEPENDING ON THE COURT'S

3    PROPOSED ORDER.  BUT UNDER BRADY AND GIGLIO, WE'RE SUPPOSED TO

4    GET THIS INFORMATION FAR ENOUGH ADVANCE OF TRIAL THAT NOT ONLY

5    CAN WE PREPARE FOR TRIAL WITH IT BUT WE CAN DO OUR OWN

6    INVESTIGATION BASED OFF IT.  WE HAVE TO HAVE REASONABLE TIME TO

7    MAKE USE OF IT.  AND GETTING --

8    **THE COURT:**  I AGREE WITH THAT GENERAL -- THE DEPENDS

9    ON THE FACTS AND CIRCUMSTANCES, BUT I DO AGREE WITH THE GENERAL

10   PROPOSITION THAT YOU'RE ENTITLED TO GET BRADY, GIGLIO MATERIAL

11   IN SUFFICIENT TIME TO BE ABLE TO MAKE EFFECTIVE USE OF IT.  AND

12   IF THAT MEANS BEFORE TRIAL, THEN THAT MEANS BEFORE TRIAL.  IF IT

13   MEANS DURING TRIAL, THEN DURING TRIAL IS GOOD ENOUGH.  BUT IT

14   DEPENDS ON WHAT THE INFORMATION IS.

15   **MR. BALOGH:**  BUT I JUST CAN'T IMAGINE A CIRCUMSTANCE

16   WHERE GIVING STUFF TO THIS GROUP, WELL-RESPECTED DEFENSE LAWYERS

17   IN THIS BAR, PEOPLE WHO ACCEPTED THIS CASE BY AND LARGE AT THE

18   REQUEST OF THIS COURT AS THEIR HONORED EMPLOYEES, IF YOU WILL,

19   THAT WE CANNOT GET THE STUFF ON AN ATTORNEYS'-EYES-ONLY BASIS,

20   THAT WE CANNOT BE TRUSTED TO FOLLOW THIS COURT'S ORDER.  I CAN'T

21   IMAGINE ANY CIRCUMSTANCE THAT WOULD SUPPORT THAT.  AND IF THERE

22   IS ONE, I'D LIKE THE COURT TO TELL ME.

23   **THE COURT:**  WELL, YOU KNOW, IN ANOTHER CASE, I MADE

24   THAT VERY ARGUMENT AS THE JUDGE AND SAID THAT REDACTIONS IN THE

25   POLICE REPORTS SHOULD BE TURNED OVER TO THE LAWYERS.  AND THE

```
1    GOVERNMENT TOOK AN APPEAL AND GOT ME REVERSED.

2              NOW WHERE WERE YOU WHEN I NEEDED YOU IN THAT?

3              (LAUGHTER.)

4         MR. BALOGH:  I WASN'T ARGUING RULE 16.  I WOULD HAVE

5    ISSUED UNDER GIGLIO, AND UNDER GIGLIO, IT WOULD HAVE BEEN, I

6    THINK, INSULATED FROM REVIEW AS OPPOSED TO A RULE 16 PRE-JENCKS

7    ORDER.

8         THE COURT:  I DON'T KNOW.  I DON'T KNOW.  IT WASN'T

9    JENCKS MATERIAL.  THIS WAS STRICTLY RULE 16, BUT THE NINTH

10   CIRCUIT SAID IT WASN'T RULE 16.

11        MR. BALOGH:  WE CAN CRAFT AN ORDER FOR THEM TO ORDER

12   JENCKS AND GIGLIO AND BRADY AND NOT RULE 16.  I THINK WE'LL BE

13   OKAY WITH UNITED STATES VS. FORT.

14        THE COURT:  ANYTHING -- ANYTHING MORE?

15        MR. BALOGH:  NO, YOUR HONOR.

16        THE COURT:  MR. LEUNG?

17        MR. LEUNG:  NO, YOUR HONOR.

18        THE COURT:  ALL RIGHT.  I'M GOING TO GO READ SOME OF

19   THESE CASES AND DECIDE WHAT TO DO.  AND IF I THINK WE NEED TO DO

20   MORE, I MAY GIVE SOME OPPORTUNITY FOR THE -- THE PARTIES WHO

21   WERE IN THESE PROCEEDINGS TO SAY SOMETHING MORE.  BUT THIS IS

22   NOT -- THIS IS NOT A SLAM-DUNK IN FAVOR OF THE GOVERNMENT.

23   THERE ARE SOME LEGITIMATE POINTS HERE.  THANK YOU.

24        MR. BALOGH:  THANK YOU, YOUR HONOR.

25        THE COURT:  BEFORE YOU SIT DOWN, THOUGH, CAN I CHANGE
```

```
 1    THE SUBJECT WHILE I GOT YOU UP HERE?  YOUR PAPERS WEREN'T VERY

 2    CLEAR.

 3                I'M INCLINED IF YOU WANT A -- IF YOU WANT MS. SOSA --

 4    SHE'S OUT OF CUSTODY, RIGHT?  SHE WAS THE GIRLFRIEND OF ONE OF

 5    THE DEFENDANTS.

 6                MR. BALOGH:  THAT'S WHAT THEY ALLEGE.

 7                THE COURT:  I'LL BE INCLINED, IF YOU WANT A TRIAL

 8    EARLY, I'LL GIVE YOU A TRIAL EARLY.  BUT, SEE, YOU SAY THAT AND

 9    IN YOUR PAPERS, YOU'RE BEING A LITTLE COY.  BUT IF YOU WANT A

10    TRIAL -- DON'T ASK FOR IT UNLESS YOU REALLY WANT IT.

11                MR. BALOGH:  I --

12                THE COURT:  SO DON'T -- YOU'RE BACK THERE IN THE

13    WEEDS SAYING SPEEDY TRIAL ACT, SPEEDY TRIAL ACT.  BUT, YOU KNOW,

14    WHEN IT COMES -- PUSH COMES TO SHOVE, DO YOU REALLY WANT AN

15    EARLY TRIAL?  SO YOU TELL ME.  IF YOU WANT TO BRING A MOTION, DO

16    YOU WANT AN EARLY TRIAL?

17                MR. BALOGH:  NO, I BELIEVE -- I'LL TELL YOU WHAT MY

18    POSITION IS.  I HOPE THAT BY THE MULTIPLE FILINGS I'VE HAD OVER

19    THE LAST MONTH THAT I'M NOT IN THE WEEDS ANYMORE AND I'M

20    VISIBLE.

21                THAT BEING THE CASE, WHAT MS. SOSA WOULD LIKE IS A

22    SPEEDY TRIAL ONCE THAT DISCOVERY IS COMPLETED, INCLUDING THAT

23    SHE'S HAD THE OPPORTUNITY TO REVIEW ALL OF THE GIGLIO

24    INFORMATION.  SHE'S RECEIVED IT.  ALL THE BRADY INFORMATION,

25    SHE'S RECEIVED IT.  ALL OF THE TRANSCRIPTS IN WHICH SHE IS
```

1 TRANSCRIBED, EITHER ONE OF HER CODEFENDANTS IN THE FIVE COUNTS

2 IN WHICH SHE'S CHARGED.

3         **THE COURT:** SO YOU'RE NOT THERE YET.

4         **MR. BALOGH:** BUT ONCE --

5         **THE COURT:** WHEN YOU GET TO THE POINT WHERE YOU FEEL

6 THAT YOU ARE WITHIN 6 OR 12 WEEKS, SOMETHING LIKE THAT, OF WHEN

7 YOU THINK A TRIAL WOULD BE PRACTICABLE JUST FOR HER, I WON'T SAY

8 YES NOW, BUT I WON'T SAY NO NOW EITHER. I THINK THAT THERE'S --

9 I'M SYMPATHETIC TO THE SPEEDY TRIAL -- ANYBODY WHO WANTS A

10 SPEEDY TRIAL, I LIKE THAT. AND I WOULD LIKE TO ACCOMMODATE YOU.

11         SO WHENEVER YOU GET TO THAT POINT, YOU LET ME KNOW,

12 AND -- BY BRINGING A MOTION, A FORMAL MOTION, BUT IF IT'S

13 GRANTED, THEN DON'T GO BACK AND SAY, OH, WAIT A MINUTE. NOW

14 I'VE CHANGED MY MIND. I WANT TO BE PART OF THE LARGER GROUP.

15         **MR. BALOGH:** I APPRECIATE THAT, AND, YOUR HONOR, WHEN

16 THE TIME COMES, I'LL BE SURE TO RAISE MY HAND.

17         **THE COURT:** THANK YOU.

18         **MR. BALOGH:** THANK YOU.

19         **THE COURT:** ALL RIGHT. THE MOTION TO UNSEAL IS UNDER

20 SUBMISSION.

21         WHILE I'M THINKING ABOUT IT, MR. BELL, WOULD THIS BE

22 TOO HARD ON YOU TO GET YOU TO SUBMIT ANYTHING YOU'RE GOING TO

23 SUBMIT FURTHER ON THIS AFTER TALKING WITH YOUR CLIENT ON THE

24 UNSEALED THING, SAY, BY -- TODAY'S TUESDAY -- BY THURSDAY.

25 WOULD THAT BE ALL RIGHT? COULD YOU DO THAT.

 1          **MR. BELL:**  WELL, I DON'T THINK I'M GOING TO HAVE AN

 2   OPPORTUNITY TO TALK TO HIM THAT EARLY BECAUSE OF MY --

 3                    (SIMULTANEOUS COLLOQUY.)

 4          **THE COURT:**  WHEN COULD YOU DO IT?

 5          **MR. BELL:**  PROBABLY --

 6          **THE COURT:**  I DON'T WANT TO WAIT TOO LONG, SO WHEN

 7   COULD YOU --

 8          **MR. BELL:**  I'D LIKE TO HAVE AT LEAST A WEEK FROM

 9   TODAY, IF THAT'S NOT A PROBLEM.

10          **THE COURT:**  ALL RIGHT.  HOW ABOUT TUESDAY NOON NEXT

11   WEEK?

12          **MR. BELL:**  THAT'S FINE.  THANK YOU.

13          **THE COURT:**  I WON'T GET AN ORDER OUT BEFORE THEN.

14          OKAY.

15          WE HAVE TO TURN NOW TO -- WHERE IS MY --

16          MR. SABELLI?

17          **MR. SABELLI:**  YES.

18          **THE COURT:**  WHERE IS OUR LEARNED COUNSEL?

19          **MR. SABELLI:**  -- HE HAD AN APPEARANCE IN MODESTO,

20   CALIFORNIA, TODAY, BUT HE'S PREPARED TO ACCEPT.  AND I BELIEVE

21   THE COURT'S ALREADY ORDERED THE -- MADE THE ORDER TO APPOINT

22   HIM.  HE'S PREPARED TO ACCEPT THAT ORDER.  THAT HEARING WAS

23   SCHEDULED, I BELIEVE, YESTERDAY.  IT WAS NOT ANTICIPATED THAT HE

24   WOULD NOT BE HERE TODAY.

25          **THE COURT:**  WELL, WE DON'T NEED HIM NECESSARILY HERE

1    TODAY, BUT HE IS ON BOARD --

2              **MR. SABELLI:**  HE IS ON BOARD, YOUR HONOR.

3              **THE COURT:**  ALL RIGHT.  GREAT.

4              **MR. SABELLI:**  HE'S ACCEPTED APPOINTMENT, AND WE'VE

5    RECEIVED THE ORDER AND THE SCHEDULING ORDER -- OR, RATHER, THE

6    APPOINTMENT ORDER FROM THE C.J.A. AS WELL.  THANK YOU.

7              **THE COURT:**  GOOD.  THANK YOU.

8              LET'S GO TO THE PROPOSAL THAT I HANDED OUT.  I'M NOT

9    GOING TO MAKE A DECISION TODAY ON THIS.  I WANT TO GIVE

10   EVERYBODY A CHANCE TO COMMENT, BUT CAN I JUST MAKE MY -- YOU

11   KNOW, SOME OF YOU COME IN ON THE C.J.A., AND YOU -- WE MEET IN

12   CHAMBERS, AND I -- I AM JUST CONSTITUTIONALLY BOUND AND

13   DETERMINED TO MOVE AHEAD.

14             AND EVERY JUDGE WITH MORE EXPERIENCE THAN ME THAT

15   I'VE TALKED TO ABOUT CASES LIKE THIS, SAY ABSOLUTELY YOU CANNOT

16   LET THE LAWYERS KEEP SAYING WE CAN'T DO ANYTHING UNTIL WE KNOW

17   EVERYTHING.  YOU HAVE TO SET DATES AND HOLD THE GOVERNMENT TO IT

18   AND HOLD THE DEFENSE TO IT AND MODIFY IT FOR GOOD CAUSE.

19             SO THAT IS SOME VERSION OF THAT WE'RE GOING TO DO.

20   YOU'RE NOT GOING TO TALK ME OUT OF SOME ORDER.  THERE'S GOING TO

21   BE A SCHEDULE, BUT YOU CAN TALK ME OUT OF SPECIFIC THINGS IN THE

22   ORDER.  I WANT TO -- I WANT TO COME UP WITH SOMETHING THAT'S

23   WORKABLE.  SO I -- I WILL WORK VERY HARD TO KEEP YOU ALL ON

24   TRACK, BUT I MUST ASK YOU TO HELP THE COURT GET THIS CASE OUT

25   OF -- IT'S GOING NOWHERE.  THIS CASE IS GOING NOWHERE FAST.

```
1              ALL RIGHT.  MR. GOLDROSEN, YOUR TURN.

2          MR. GOLDROSEN:  YES, YOUR HONOR.  THANK YOU.

3              I'VE HAD A CHANCE TO REVIEW BRIEFLY YOUR FINAL

4   SCHEDULING ORDER.  IT REMAINS -- IT REMAINS OUR POSITION THAT

5   WHAT WE SUBMITTED TO THE COURT IS A GOOD WAY TO GET THIS CASE

6   STARTED AND A GOOD WAY TO GET THINGS MOVING ALONG, AND IT'S

7   CONSISTENT WITH OUR ABILITIES TO EFFECTIVELY REPRESENT OUR

8   CLIENTS.

9              WHAT WE HAD ASKED THE COURT TO DO WHEN WE -- WHAT WE

10  URGE THE COURT TO DO IS AT THIS POINT, SIMPLY SET A DATE FOR

11  STAGE ONE MOTIONS THAT WE CAN FILE AND PREPARE IN A TIMELY

12  MANNER AND DEFER SETTING A -- A DATE FOR SECOND-ROUND MOTIONS

13  AND TRIAL UNTIL, WE SUGGESTED IN OUR PAPERS, JUNE 6TH UNTIL WE

14  GET A HANDLE ON WHAT IS GOING ON WITH THE 204 HOURS OF

15  SPANISH --

16                  (SIMULTANEOUS COLLOQUY.)

17          THE COURT:  I'M GOING TO GET THAT SOLVED FOR --

18          MR. GOLDROSEN:  I'M SORRY?

19          THE COURT:  WE HAD A MEETING IN CHAMBERS.  I GOT TWO

20  SUPPLIERS GOING WHO ARE GETTING BIDS.  I'M GOING TO GET THOSE

21  THINGS DONE.  I'M -- AND MY PLAN IS DON'T RELY ON THE

22  GOVERNMENT.  THE GOVERNMENT'S NEVER GOING TO GIVE YOU THOSE

23  THINGS UNTIL THE EVE OF TRIAL.  THEY DON'T HAVE THEIR ACT

24  TOGETHER.

25              I'M GOING -- YOU'RE GOING TO HAVE -- YOU'RE GOING TO
```

```
 1   HAVE TRANSLATIONS OF TRANSCRIPTS MONTHS BEFORE THE GOVERNMENT

 2   BECAUSE THE C.J.A. IS GOING TO PROVIDE IT TO YOU.

 3            WHERE IS JEANE DEKELVER?  SHE'S WORKING ON THIS SO

 4   HARD -- YOU CAN'T BELIEVE HOW HARD -- WE'RE GOING TO HAVE THIS

 5   PROBABLY BY SEPTEMBER 15TH, EVERYTHING WILL BE TRANSCRIBED.

 6   THEN THE GOVERNMENT WILL BE BEGGING YOU FOR YOUR COPIES.  'CAUSE

 7   THEY'LL BE BACKING -- THEY WON'T BE GOING TO TRIAL, AND THEY

 8   WOULDN'T EVEN HAVE COPIES YET.  SO YOU'RE WAY AHEAD OF THE

 9   CURVE.  WE'RE GOING TO GET YOU THERE.

10            MR. GOLDROSEN:  LET'S ASSUME THAT THE COURT'S DATE,

11   WHICH WE THINK IS A VERY OPTIMISTIC DATE --

12            THE COURT:  MAYBE THEN -- THEN I'LL MODIFY IT.  IF I

13   CAN'T DELIVER, THEN WE'RE GOING TO MODIFY IT.

14            MR. GOLDROSEN:  LET'S LOOK AT WHAT YOUR SCHEDULE --

15   HOW THAT WOULD WORK IF WE HAD A SEPTEMBER 15TH DATE.

16            THE COURT:  RIGHT.

17            MR. GOLDROSEN:  ROUND TWO MOTIONS ON AUGUST 7TH.

18            THE COURT:  RIGHT.

19            MR. GOLDROSEN:  AND THOSE MOTIONS WOULD INCLUDE

20   MOTIONS TO SUPPRESS EVIDENCE, MOTIONS TO OBJECT TO SEARCH

21   WARRANTS, MOTIONS REGARDING GANG EXPERTS, ALL OF THOSE MOTIONS.

22   THESE SPANISH RECORDINGS ARE VERY PERTINENT FOR ALL OF US TO BE

23   ABLE TO FORMULATE --

24            THE COURT:  WELL, EXPLAIN TO ME, IF YOU KNOW, WHAT

25   THEIR EXPERT REPORTS SAY AND THEIR SUMMARIES, YOU DON'T NEED TO
```

1   KNOW ANYTHING ABOUT WHAT'S ON THESE TRANSCRIPTS TO KNOW WHETHER

2   OR NOT THE GANG EXPERT OR THE DNA EXPERT OR THE FINGERPRINT

3   EXPERT -- IT HAS NOTHING TO DO WITH WHAT'S ON THOSE TAPES.

4            **MR. GOLDROSEN:**  I THINK WHAT'S ON THOSE TAPES

5   CERTAINLY DOES HAVE TO DO WITH EXPERTS AND WHETHER OR NOT THIS

6   IS A GANG AND CERTAIN GANG LANGUAGE, GANG TERMINOLOGY, GANG

7   PRACTICES, GANG CUSTOMS.  ALL OF THAT WOULD BE ON THOSE TAPES.

8            **THE COURT:**  POSSIBLY THAT -- POSSIBLY AS TO A GANG

9   EXPERT, I AGREE.

10           **MR. GOLDROSEN:**  THAT CERTAINLY WOULD BE RELEVANT TO

11  MOTIONS TO SUPPRESS EVIDENCE WHETHER THERE WAS PROBABLE CAUSE TO

12  DO SEARCHES, WHETHER THERE WERE -- WHETHER SEARCH WARRANTS ARE

13  ACCURATE, WHETHER THEY'RE BASED UPON RELIABLE INFORMATION, ALL

14  OF THAT GOES BACK TO WHAT'S ON THOSE 204 HOURS OF RECORDINGS.

15           IF YOU HAVE US FILING AUGUST 7TH, 2009 FOR THIS ROUND

16  OF MOTIONS, WE WOULD NEED THOSE TAPES WEEKS BEFORE THAT TO START

17  PREPARING THE MOTIONS.  SO YOU'RE TALKING ABOUT HAVING THOSE

18  READ IN JULY, AND I DON'T SEE THAT BEING A REALISTIC --

19  REALISTIC ACCOMPLISHMENT WITH RESPECT TO THOSE TAPES.

20           MY UNDERSTANDING IS THAT NOW BIDS ARE BEING SENT OUT

21  AND THAT THERE'S GOING TO BE SOME 60 HOURS' WORTH OF TAPES THAT

22  ARE GOING TO GO OUT TO THE VARIOUS BIDDERS TO SEE HOW WELL.

23           **THE COURT:**  WE'RE GOING TO SEE HOW GOOD THEY DO.  IF

24  THEY DO WELL, THEN WE'RE GOING TO GIVE THEM A LOT MORE WORK.

25  THIS IS GOING TO BE OUR OWN STIMULUS PACKAGE.  AND IF THEY DO

```
 1    WELL, WE'RE GOING TO GIVE THEM MORE WORK TO STIMULATE THEIR

 2    BUSINESS.

 3              MR. GOLDROSEN:  WELL, I APPRECIATE THAT, BUT I DON'T

 4    SEE THIS AS BEING A REALISTIC SCHEDULE IN -- WITH RESPECT TO

 5    WHEN WE NEED THOSE TAPES.

 6              THE COURT:  WELL --

 7              MR. GOLDROSEN:  SO OUR SUGGESTION IS --

 8              THE COURT:  I AGREE WITH YOU, THAT IF THE GOVERNMENT

 9    IS RELYING ON MATERIAL IN THOSE TAPES FOR ITS EXPERTS, THEN

10    PROBABLY YOU GOT TO HAVE THOSE TRANSCRIPTS, AT LEAST THE ONES

11    THE GOVERNMENT IS RELYING ON, AND MAYBE A LOT MORE.

12              MR. GOLDROSEN:  -- BE ABLE TO CROSS-EXAMINE --

13              THE COURT:  THAT IS A GOOD POINT, AND I GOT TO THINK

14    ABOUT THAT.  BUT WHAT HAS THAT GOT TO DO WITH DNA OR FINGERPRINT

15    OR BALLISTICS OR AUTOPSY RECORDS OR NARCOTICS?  THE GOVERNMENT'S

16    GOING TO HAVE A LOT OF THOSE, TOO.  WE COULD GET CRACKING ON

17    THAT.  BUT YOU WANT TO THROW EVERYTHING OUT THE WINDOW ON

18    ACCOUNT OF ONE PROBLEM.

19              MR. GOLDROSEN:  WELL, I THINK THE PROBLEM IS QUITE

20    PERVASIVE BECAUSE IT ALSO EXTENDS TO MOTIONS TO SUPPRESS

21    EVIDENCE, MOTIONS TO SUPPRESS STATEMENTS, SEVERANCE MOTIONS, ALL

22    OF THAT, SEVERANCE BASED ON PREJUDICIAL JOINDER WITH OTHER

23    DEFENDANTS BASED UPON WHAT OTHER DEFENDANTS SAID.

24              THE COURT:  WELL, I PROMISE YOU THIS:  IF THERE IS

25    A -- IF IT CAN BE ESTABLISHED -- AND CERTAINLY IT COULD BE IN
```

1    SOME -- IF THE -- IF THERE IS A DELAY IN GETTING THE RELEVANT

2    TRANSCRIPTS AND YOU NEED THOSE TRANSCRIPTS IN ORDER TO MAKE THE

3    MOTION, OF COURSE YOU'RE GOING TO GET A LATER DATE TO FILE THAT

4    MOTION.  THAT -- I AGREE WITH THAT.

5              SO I RECOGNIZE THE POTENTIAL PROBLEM, BUT YOU'RE JUST

6    SAYING IT'S A POTENTIAL PROBLEM.  WHY CAN'T WE TRY HARD TO SEE

7    IF WE CAN DO IT?

8              **MR. GOLDROSEN:**  WHAT WE'RE ASKING FOR IS WHY DON'T WE

9    JUST SET A DATE FOR THE FIRST ROUND OF MOTIONS AND SET A STATUS

10   DATE TO SEE WHERE WE ARE WITH THE TAPES.

11             **THE COURT:**  STATUS MEANS DELAY.  I KNOW WHAT THAT

12   WORD MEANS.  IT MEANS DELAY.

13             **MR. GOLDROSEN:**  I DON'T THINK IT MEANS DELAY.  IT

14   ALLOWS US TO MAKE AN INFORMED DECISION ABOUT WHEN BEST TO SET

15   THESE DATES, AND AN INFORMED DECISION, SMART DECISION, WILL BE

16   EFFICIENT FOR EVERYBODY RATHER THAN SET DATES IN THE DARK THAT

17   WE MAY NOT BE ABLE TO KEEP.

18             **THE COURT:**  ALL RIGHT.  I SEE YOUR POINT.  I'M NOT

19   NECESSARILY AGREEING WITH THAT LAST POINT, BUT FIRST POINT YOU

20   MADE, I THINK, IS -- HAS SOME MERIT TO IT.

21             OKAY.  WHAT ELSE?

22             **MR. GOLDROSEN:**  LET ME -- LET ME SPEAK ALSO ABOUT THE

23   STAGE ONE MOTIONS.  THE COURT -- WE SUGGESTED A DATE OF -- I

24   BELIEVE IT WAS JUNE 30TH.  THE COURT ADVANCED THAT DATE TO

25   MAY 13TH IN ITS PROPOSAL.  WE WOULD ASK THE COURT TO STAY WITH

1   THE JUNE 30TH, 2009, DATE THAT WE SUGGESTED AND THE GOVERNMENT

2   AGREED WITH FOR SEVERAL REASONS.

3          FIRST OF ALL, THE COURT HAS -- WE OFFERED TO DO

4   ADDITIONAL MOTIONS IN STAGE ONE, INCLUDING THE MOTION TO

5   DISCLOSE INFORMANTS.  THE COURT HAS EXPANDED ITS LIST OF STAGE

6   ONE MOTIONS, SO I COUNTED TEN THAT YOU LISTED, WHICH IS

7   SIGNIFICANTLY LONGER THAN WE HAD IN THE INITIAL SCHEDULING

8   ORDER.

9          SOME OF THOSE REFLECT -- CERTAINLY REFLECT SOME OF

10  THE COMPLEX ISSUES THAT INVOLVE DISCOVERY, REDACTIONS, AND

11  SIMILAR MATTERS.  SO CERTAINLY THERE ARE LOTS OF ISSUES THAT

12  WILL NEED TO BE RESOLVED IN THE STAGE ONE MOTIONS.  WHAT THE

13  COURT HAS DONE IS YOU'VE GIVEN US A MAY 13TH FILING DATE, WHICH

14  IS 13 DAYS AFTER THE CUTOFF DATE FOR DISCOVERY, WHICH PUTS A

15  TREMENDOUS BURDEN ON US TO GET READY --

16          **THE COURT:**  WAIT.  WAIT.  SEE, NO, I WAS VERY

17  CAREFUL.  LET'S GO DOWN.  RULE 8 MOTIONS.  YOU DON'T -- RULE 8

18  HAS NOTHING TO DO WITH DISCOVERY.  THAT'S A PLEADING.  MOTIONS

19  FOR BILL OF PARTICULARS, SAME THING.

20          **MR. GOLDROSEN:**  WELL, MOTIONS FOR BILL OF

21  PARTICULARS, IF THE DISCOVERY EXPLAINS A THEORY OF OUR CLIENTS'

22  INVOLVEMENT IN THE CASE, WE DON'T NEED TO MAKE MOTIONS FOR BILL

23  OF PARTICULARS.  SO I THINK THAT IS SOMETHING YOU DO NEED

24  DISCOVERY.

25          **THE COURT:**  NO.  NO.  IT'S POSSIBLE THAT DISCOVERY

1    WOULD BE A CURE FOR IT, BUT THAT IS SOMETHING DIRECTED TO THE

2    FACE OF THE PLEADING.  MOTIONS ALLEGING ANY DEFECT IN

3    INSTITUTING THE PROSECUTION, THAT HAS NOTHING TO DO WITH

4    DISCOVERY.

5              **MR. GOLDROSEN:**  I'M LOOKING AT THE --

6              **THE COURT:**  NOW, DISCLOSURE OF INFORMANTS, THAT DOES

7    HAVE TO DO WITH DISCOVERY.  BUT ONE OF YOU ASKED THAT I ADVANCE

8    THAT.  AND I PUT IT UP.  I DID THAT.

9              **MR. GOLDROSEN:**  WE DID ASK YOU TO ADVANCE IT, BUT IN

10   THE SCHEDULE WE HAD, WE HAD A TWO-MONTH TIME PERIOD BETWEEN THE

11   DATE IN WHICH THE RULE 16 DISCOVERY WOULD BE PROVIDED AND THE

12   DATE THAT THE MOTIONS WOULD BE FILED.

13             THE COURT INCLUDES AS ITS LAST MOTIONS, DISCOVERY

14   MOTIONS.

15             **THE COURT:**  SO WHEN DO YOU PLAN ON BRINGING ANY

16   DISCOVERY MOTIONS?

17             **MR. GOLDROSEN:**  WELL, THE DATE WE SUGGEST TO THE

18   COURT WOULD BE JUNE 30TH FOR ALL MOTIONS INCLUDING DISCOVERY

19   MOTIONS.  HAVE ONE ROUND THAT INCLUDES EVERYTHING.

20             BUT THE -- THE ONE ADDITIONAL WRINKLE, YOUR HONOR,

21   THAT WAS YOU -- YOU'VE ALSO EXTENDED THE SUPERSEDING INDICTMENT

22   CUT-OFF DATE.  YOU NOW HAVE THAT AT JUNE 30TH, WHICH IS A DATE

23   WE SUGGESTED BE -- HAVE FILED OUR MOTIONS.  AND IF WE HAVE A

24   SUPERSEDING -- RIGHT NOW, YOU HAVE A SUPERSEDING CUTOFF DATE

25   THAT IS LATER THAN THE DUE DATE FOR OUR MOTIONS ATTACKING THE

1    FACE OF THE INDICTMENT.

2              **THE COURT:**  LOOK, THE THING IS THIS:  I KNOW WHAT'S

3    GOING TO HAPPEN.  THEY'RE GOING TO WANT TO SUPERSEDE AND ADD

4    ADDITIONAL CHARGES.  THEY'RE NEVER GOING TO TAKE AWAY ANY OF THE

5    OLD CHARGES.  THOSE ARE NEVER GOING TO CHANGE.  WE KNOW WHAT

6    THEY ARE.  WE MIGHT AS WELL -- IF THERE'S SOMETHING WRONG WITH

7    THE WAY THEY'RE PLED NOW, IT'S NEVER GOING TO GO AWAY, WE SHOULD

8    BE ADDRESSING IT NOW.

9              THE IDEA THAT WE WOULD POSTPONE BRINGING MOTIONS

10   DIRECTED TO THE FACE OF THE INDICTMENT BECAUSE ON A HUNDRED-PAGE

11   INDICTMENT, THEY'RE GOING TO ADD AN EXTRA PARAGRAPH, NO.  'CAUSE

12   WE HAVE -- WE HAVE WHAT WE ALREADY HAVE, AND IT'S NOT GOING TO

13   CHANGE.

14             **MR. GOLDROSEN:**  WELL, WE DON'T KNOW THAT THAT'S ALL

15   THEY'RE GOING TO DO.

16             **THE COURT:**  WE DON'T KNOW ANYTHING FOR SURE, BUT IT'S

17   A PRETTY GOOD ESTIMATE.  THAT'S WHAT'S HAPPENED SO FAR.  MOST OF

18   THE SUPERSEDING INDICTMENTS HAVE JUST ADDED ADDITIONAL CHARGES

19   OR AN ADDITIONAL DEFENDANT.  MOST OF THE DEFENDANTS THE

20   COMPLAINT WILL STAY EXACTLY THE SAME.

21             SO WE GOT TO GET CRACKING ON IT.  IF THEY WERE TO --

22   IF YOU WERE TO BRING -- YES, IT'S POSSIBLE THAT YOU COULD

23   BRING -- WASTE TIME BRINGING A MOTION, 1 PERCENT CHANCE THAT YOU

24   COULD WASTE TIME BRINGING A MOTION THAT SUDDENLY THE GOVERNMENT

25   ROLLS OVER AND GIVES UP AND PURSUES A DIFFERENT THEORY, YES.

1    THAT COULD HAPPEN.

2            BUT I THINK THE CHANCES OF THAT HAPPENING ARE SO

3    SMALL, IT'S BETTER TO GET CRACKING ON WHAT WE KNOW IS IN THE

4    CASE.  THE FACE OF THE PLEADING DOESN'T DEPEND UPON ANY

5    DISCOVERY.  IT'S SOMETHING WE CAN DEAL WITH RIGHT NOW.  IT'S

6    EITHER ADEQUATE OR IT'S NOT ADEQUATE.

7            RIGHT?  I MEAN -- OKAY.  SO CONCEDING THAT THERE'S

8    SOME SMALL CHANCE THAT THE PLEADING COULD CHANGE SO DRAMATICALLY

9    THAT IT WOULD WASTE OUR TIME, THAT CHANCE IS SO TINY THAT WE

10   SHOULD JUST GO AHEAD AND GET MOVING ON IT.  THAT'S THE WAY I

11   FEEL.

12           THEN -- THEN IF HE -- IF THE GOVERNMENT THEN ADDS ONE

13   MORE COUNT OR ONE MORE PARAGRAPH, YOU'LL HAVE A BRAND-NEW

14   OPPORTUNITY TO ADDRESS THAT.

15           **MR. GOLDROSEN:**  YOUR HONOR, I HEAR WHAT THE COURT'S

16   SAYING AND -- AND -- AND WE -- I DON'T THINK IT'S FAIR TO

17   CATEGORIZE WHAT WE'VE SUGGESTED AS NOT MOVING ON THE CASE.  WE

18   SUGGESTED WE WILL MOVE.  WE'LL SET STAGE ONE MOTIONS.  JUNE 30TH

19   WILL BE THE DATE WE FILE.  CUTOFF DATE, APRIL 30TH, FOR

20   DISCOVERY.

21           AND THAT GIVES US ADEQUATE TIME TO REVIEW THE

22   DISCOVERY AND DO THE NUMEROUS MOTIONS THE COURT'S EXPECTED.

23           **THE COURT:**  YOU WON'T HAVE THE TRANSCRIPTS BY THEN.

24   HOW CAN YOU SAY YOU'RE GOING TO HAVE REVIEWED ALL THE DISCOVERY

25   WHEN WE KNOW THE TRANSCRIPTS ARE NOT GOING --

1        **MR. GOLDROSEN:**  REVIEW THE DISCOVERY THAT'S NECESSARY

2   FOR STAGE ONE MOTIONS, WHICH WILL BE THE DISCOVERY ISSUES

3   THAT -- THE DISCOVERY ISSUES THAT THE COURT'S INCLUDING IN STAGE

4   ONE MOTIONS AS WELL AS THE MOTIONS TO DEEM STATE LAW ENFORCEMENT

5   OR FEDERAL LAW ENFORCEMENT AS AGENTS -- THE MOTIONS THAT CONCERN

6   REDACTIONS?

7        **THE COURT:**  THAT OUGHT TO BE DONE RIGHT UP FRONT.

8   THAT MOTION SHOULD BE -- YOU DON'T NEED TO KNOW ANOTHER THING

9   ABOUT THAT TO BRING THAT MOTION.  YOU COULD BRING THAT MOTION

10  RIGHT NOW.

11       MR. SABELLI FILED A VERY GOOD THREE-PAGE THING.  I

12  THOUGHT THAT WAS WELL DONE.  I THINK THAT -- THAT DOES NOT

13  REQUIRE DISCOVERY TO VENTILATE THAT ISSUE.

14       **MR. GOLDROSEN:**  CERTAINLY REQUIRES DISCOVERY OF ALL

15  THE AGENCIES THAT ARE INVOLVED.  AND YOU ALSO HAVE INCLUDED HERE

16  MOTIONS THAT RELATE TO REDACTIONS AND THINGS LIKES THAT.  THAT

17  CERTAINLY NEEDS TO BE ADDRESSED AFTER ALL THE DISCOVERY IS

18  COMPLETED.

19       **THE COURT:**  POSSIBLY THAT -- ON THE REDACTIONS THAT'S

20  POSSIBLY A GOOD POINT.  BUT I DON'T THINK IT'S A GOOD POINT ON

21  WHO IS AN AGENT.

22       **MR. GOLDROSEN:**  MY POINT IS SIMPLY THIS:  THAT WE'RE

23  NOT TRYING TO AVOID ALL THIS WORK.  WE'RE SAYING THAT WE, IN OUR

24  EFFORT TO EFFECTIVELY REPRESENT OUR CLIENTS, WILL BE READY TO

25  FILE THESE MOTIONS ON JUNE 30TH.  THERE'S A LOT OF MOTIONS HERE.

1          AND WE'RE WILLING TO DO THE WORK BUT THAT'S THE DATE

2   THAT WE CAN HANDLE EFFECTIVELY.

3              **THE COURT:**  ALL RIGHT.  LET'S HEAR FROM MR. LEUNG.

4              **MR. LEUNG:**  YOUR HONOR, AS WE NOTE IN OUR PRETRIAL

5   CONFERENCE STATEMENT -- OR EXCUSE ME -- PRESTATUS CONFERENCE

6   STATEMENT, WE HAVE NO OBJECTION TO THE SCHEDULE PROPOSED BY THE

7   MAJORITY OF THE DEFENDANTS.

8          SO -- HOWEVER, IF THE COURT DOES WANT TO CURTAIL IT

9   WE WOULD BE PREPARED TO PROCEED ACCORDING TO THE COURT'S

10  SCHEDULE AS WELL.

11             **THE COURT:**  WELL, LET ME ASK YOU ABOUT ONE THING

12  WHICH DOES BOTHER ME.

13         AND THAT IS THE APRIL 30 DATE.  NOW, THAT'S THE DATE

14  YOU SAID THAT ALL THE COUNSEL, INCLUDING YOU, SAID THAT YOU

15  COULD LIVE WITH.  I HAD AN EARLIER DATE, BUT I CHANGED IT TO --

16  TO PLUG IN THE DATE THAT YOU SAID.  BUT I -- I'M SERIOUS ABOUT

17  THIS.  IT -- COME APRIL 30, IF YOU TURN SOMETHING OVER ON, LET'S

18  SAY MAY 30, YOU HAVE A BURDEN TO JUSTIFY THAT YOU -- YOU GOT TO

19  DO THIS, YOU GOT TO EXPLAIN THAT WE DIDN'T HAVE THAT UNTIL THE

20  LAST 14 DAYS.

21             **MR. LEUNG:**  UNDERSTOOD.

22             **THE COURT:**  SO -- AND THE REASON FOR THIS IS SO THEY

23  CAN PREPARE THEIR DEFENSE AND NOT BE GETTING -- ALL RIGHT.

24         SO CAN YOU -- IS THAT APRIL 30 DEADLINE ONE THAT

25  YOU'RE WILLING TO STAND BY?

1          **MR. LEUNG:**  YES, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.

3          NOW, THE DEFENSE, HAVE YOU ALL DONE YOUR REQUESTS IN

4   WRITING?  I KNOW YOUR RULE 16 REQUESTS, WE CAN'T -- YOU CAN'T

5   JUST SAY -- SOMETIMES THE LAWYERS DON'T LIKE TO DO A RULE 16

6   REQUEST BECAUSE THEN THEY HAVE NOT -- THEY HAVE RECIPROCAL

7   DISCOVERY.  YOU WON'T BE ABLE TO GET AWAY WITH THAT.  YOU GOT TO

8   DO IT IN WRITING AND SAY, I WANT ALL MY -- BECAUSE THE DAY WILL

9   COME WHEN YOU GOT TO TURN YOUR RECIPROCAL DISCOVERY OVER.  SO

10  HAS EVERYONE DONE A LETTER?  HAVE YOU GOTTEN A LETTER FROM

11  EVERYONE?

12          **MR. LEUNG:**  I BELIEVE SO, YOUR HONOR.  AND WE LOOK

13  FORWARD TO RECEIVING RECIPROCAL DISCOVERY.

14          **THE COURT:**  GREAT.  OKAY.  CAN YOU -- LET ME ASK YOU,

15  MR. LEUNG, CAN YOU DO YOUR EXPERTS BY JUNE 30?  AND I'M TALKING

16  ABOUT FULL REPORTS NOW, FULL SUMMARIES, WHATEVER'S REQUIRED BY

17  RULE 16, DNA, GUNS, FINGERPRINTS, BALLISTICS, AUTOPSY, ALL OF

18  THOSE THINGS.

19          **MR. LEUNG:**  YOUR HONOR, I DO NOT BELIEVE WE CAN BE

20  CONFIDENT THAT WE WILL GET ALL OUR EXPERTS' REPORTS DONE BY

21  THEN.  THIS IS A BIG CASE.  WE'RE RELYING A LOT ON VARIOUS

22  DIFFERENT AGENCIES AND OTHER GOVERNMENTAL ENTITIES, AS WELL AS

23  SOME PRIVATE LABS.  AND I CANNOT BE CONFIDENT THAT WE WILL GET

24  EVERYTHING READY FOR PRODUCTION BY JUNE 30TH.

25          **THE COURT:**  WELL, WHAT CAN YOU GET READY BY

1   JUNE 30TH?  AND THEN MAYBE WE DO IT IN TWO STAGES.  WE SHOULDN'T

2   HAVE TO -- WHAT CAN YOU PROMISE THAT YOU WILL HAVE READY BY

3   JUNE 30?

4            **MR. LEUNG:**  THAT IS A $60,000 (SIC) QUESTION, YOUR

5   HONOR.  WE WILL PRODUCE EVERYTHING WE HAVE AVAILABLE ON AN

6   ONGOING BASIS; HOWEVER, WE DO NOT KNOW WHICH PARTICULAR AGENCIES

7   AND ENTITIES WILL BE LAGGING BEHIND.

8            **THE COURT:**  WELL, IS THERE AN OUTSIDE DATE YOU CAN

9   GIVE ME THAT WOULD BE A DATE BY WHICH YOU WILL HAVE TURNED OVER

10  EVERY EXPERT REPORT AND SUMMARY THAT YOU WANT TO RELY ON AT

11  TRIAL --

12           **MR. LEUNG:**  I BELIEVE --

13           **THE COURT:**  -- FOR YOUR CASE-IN-CHIEF NOW, JUST FOR

14  YOUR CASE-IN-CHIEF.

15           **MR. LEUNG:**  CASE-IN-CHIEF, I BELIEVE THAT EARLY

16  SEPTEMBER WOULD BE A DATE I WOULD FEEL COMFORTABLE WITH.  AND WE

17  WOULD HAVE TO THROW SOME MONEY AROUND AS WELL.

18           **THE COURT:**  THROW -- AND WHAT DO YOU MEAN "THROW

19  MONEY"?

20           **MR. LEUNG:**  WE WOULD PROBABLY HAVE TO PROCURE

21  ADDITIONAL FUNDS TO SPEED UP TESTING.

22           **THE COURT:**  OH.

23           HAVE YOU TURNED OVER ANY EXPERT REPORTS YET?

24           **MR. LEUNG:**  WE HAVE TURNED OVER EXPERT REPORTS THAT

25  HAVE BEEN DONE THAT HAVE ALREADY BEEN RETURNED TO US, YES.  I

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1   DON'T KNOW THE EXACT NUMBERS.  THEY RELATE TO FIREARMS

2   EXAMINATION, SOME FINGERPRINTS, SOME DNA EVIDENCE.

3              WE REQUESTED MORE, AND WE HAVEN'T RECEIVED ANY.

4              **MR. TABACK:**  YOUR HONOR, IF I MAY, I REPRESENT

5   MR. GUEVARA, HARRIS TABACK.

6              **THE COURT:**  SURE.  COME ON UP HERE.

7              **MR. TABACK:**  I DIDN'T QUITE GLEAN FROM MR. LEUNG'S

8   RESPONSE WHETHER -- THE FACT THAT HE TURNED THOSE MATERIAL OVER

9   TO THE DEFENSE.  WE -- I HEARD HIM SAY THAT HE'S RECEIVED THEM

10  OR SOME OF THEM.  BUT TO BE QUITE HONEST WITH YOU, EVERY DAY THE

11  MAIL COMES, WE GET ANOTHER FEW OR, YOU KNOW, 3 TO 15 MORE

12  CD-ROMS OF MATERIALS.  AND, YOU KNOW, WE -- WE WORK VERY HARD TO

13  TRY TO COME UP TO SPEED AS SOON AS POSSIBLE, BUT I KNOW I'D BE

14  LYING TO YOU IF I TOLD YOU I'VE HAD A CHANCE TO READ EVERYTHING

15  YET.  THAT'S JUST NOT THE CASE.

16             SO I'M NOT AWARE OF THE MATERIALS HE'S REFERRING TO.

17  SO I'D LIKE THE RECORD TO REFLECT WHETHER THE GOVERNMENT'S

18  POSITION IS THAT THOSE MATERIALS HAVE ACTUALLY BEEN TURNED OVER

19  TO THE DEFENSE YET.

20             **THE COURT:**  OKAY.  TRY TO ANSWER THAT QUESTION.

21             **MR. LEUNG:**  I WILL SAY IT AGAIN.  WE HAVE PRODUCED

22  WHAT EXPERT REPORTS WE HAVE.

23             **THE COURT:**  BUT, HEY, YOU GOT MORE THAN ONE.

24             **MR. LEUNG:**  THERE WERE FINGERPRINT REPORTS, THERE

25  WERE SEVERAL DNA REPORTS FROM GUNS, AT LEAST ONE REPORT

```
1    CONCERNING GSR, GUN SHOT RESIDUE.  WE'VE REQUESTED FURTHER

2    REPORTS, AND WE ARE AWAITING THE RESULTS.

3              THE COURT:  WHAT ARE THE KIND OF REPORTS THAT WE'D BE

4    USING HERE BEYOND WHAT YOU'VE JUST DESCRIBED?

5              MR. LEUNG:  LARGELY THOSE, YOUR HONOR.  I THINK

6    THERE'S ALSO -- WE ARE ALSO TRYING TO PULL TOGETHER SOME AUTOPSY

7    REPORTS FROM SEVERAL HOMICIDES IN RESPONSE TO A REQUEST FROM

8    COUNSEL, AND WE SHOULD GET AT LEAST FIRST OF THOSE SOMETIME

9    LATER THIS WEEK, AT LEAST READY TO PRODUCE IT.

10             THE COURT:  DO YOU THINK YOU OUGHT TO BE USING -- AND

11   I'M NOT SAYING THAT SUCH A THING IS OKAY.  WE HAD A WHOLE ROUND

12   ON THIS BEFORE.  I'VE FORGOTTEN EXACTLY HOW IT CAME OUT, BUT --

13   THE OTHER CASE, BUT ARE YOU PLANNING ON USING A GANG EXPERT?

14             MR. LEUNG:  WE WILL LIKELY USE A GANG EXPERT, YOUR

15   HONOR.

16             MR. GOLDROSEN:  YOUR HONOR, I KNOW WITH RESPECT TO

17   THE -- AT LEAST ONE HOMICIDE THAT MY CLIENT IS CHARGED WITH,

18   WE'VE SPOKE WITH MR. LEUNG AND POINTED OUT TO HIM ALL THE EXPERT

19   REPORTS THAT WE ARE MISSING.  FOR EXAMPLE, WE DON'T HAVE THE

20   CORONER'S REPORT.  WE DON'T HAVE WHAT'S CALLED THE CRIME SCENE

21   INVESTIGATOR'S UNIT REPORT FROM SAN FRANCISCO POLICE DEPARTMENT,

22   WHICH WOULD INCLUDE A NARRATIVE BY THE CRIME SCREEN

23   INVESTIGATORS, A LIST OF ALL THE EVIDENCE THEY SEIZED, DIAGRAMS

24   SHOWING WHERE THE EVIDENCE WAS, ANY REQUEST FOR TESTING ON ANY

25   OF THE EVIDENCE, AND RESULTS OF ANY TESTING.  AND THAT'S BEEN
```

1   MISSING -- WE'VE HAD THIS DISCUSSION WEEKS AGO, IF NOT LONGER,

2   THAT WE HAD NONE OF THAT -- REPORTS OR EVIDENCE RELATING TO

3   EXPERTS WITH THAT --

4          **MR. LEUNG:**  WE HAVE PRODUCED DOCUMENTS RELATING TO

5   THE HOMICIDE THAT -- THAT WAS REFERRED TO.  WE ARE NOW TRYING TO

6   GET THE FULL FILE FROM THE VARIOUS -- FROM THE S.F.P.D. AND THE

7   CORONER'S OFFICE.

8          **THE COURT:**  I THINK THERE'S AN -- THIS IS JUST AN

9   ASIDE.  I'M THINKING ABOUT MR. SABELLI'S SUBMISSION.  THERE'S AN

10  INTERESTING QUESTION UNDER THE FORT CASE, AND YOU WILL REMEMBER

11  THAT THE -- THAT WAS UNDER RULE 16 AND THE WORK PRODUCT

12  EXCEPTION, THE -- WHAT THIS COURT HAD HELD WAS THAT THE

13  SAN FRANCISCO POLICE DEPARTMENT INVESTIGATIVE REPORTS WHICH HAD

14  BEEN TURNED OVER WITH REDACTIONS, THAT THOSE DID NOT QUALIFY AS

15  WORK PRODUCT, AND NOW THE NINTH CIRCUIT MAJORITY DISAGREED ON

16  THAT AND SAID, YES, THEY DO.  THEY QUALIFY AS OTHER GOVERNMENT

17  INVESTIGATIVE AGENCY -- BUT THE -- THE PROBLEM THAT I KEPT

18  POINTING OUT AND WHICH THE NINTH CIRCUIT RESERVED ON, I KEPT

19  POINTING OUT IN THE LAST CASE, GANG CASE, WAS THAT IF THE

20  GOVERNMENT IS CONTENDING THAT THE SAN FRANCISCO POLICE

21  DEPARTMENT WAS ITS AGENT, THEN THAT HAS IMPORTANT BRADY

22  IMPLICATIONS FOR WHERE YOU GOT TO GO SEARCH.

23          SO THIS IS PART OF THE MOTION THAT I THINK OUGHT TO

24  BE RESOLVED PRETTY QUICKLY, BECAUSE I THINK THIS HAS A

25  SIGNIFICANT POTENTIAL IMPACT ON WHERE THE GOVERNMENT SEARCHES

1  AND WHAT IT TURNS OVER AND -- SO --

2  **MR. GOLDROSEN:**  I THINK THE <u>FORT</u> DECISION VERY

3  BROADLY DEFINES "GOVERNMENT AGENT" AS TO INCLUDE NON-FEDERAL

4  PERSONNEL WHOSE WORK CONTRIBUTES TO A FEDERAL CRIMINAL CASE.

5  **THE COURT:**  YEAH, BUT THERE'S A FOOTNOTE WHICH SAYS

6  THAT WE'RE NOT REACHING THE FLIP SIDE PROBLEM UNDER <u>BRADY</u>.  AND

7  I -- AND I DON'T KNOW THE ANSWER TO THAT.  I CAN SEE YOUR

8  ARGUMENTS, BUT I DO THINK FROM A CASE MANAGEMENT POINT OF VIEW,

9  THIS IMPACTS WHAT YOU DO.  AND -- AND ON THE GOVERNMENT'S SIDE

10 AND WHAT YOU -- AND, IN FACT, WHAT YOU WOULD BE OBLIGATED TO DO.

11  SO THAT'S ONE OF THE REASONS, I WANT TO HAVE THAT

12 VENTILATED FIRST RATHER THAN TOWARD THE END.

13  **MR. LEUNG:**  WELL, YOUR HONOR, WE WOULD NOTE THAT RULE

14 16 AND <u>BRADY</u> ARE COMPLETELY SEPARATE OBLIGATIONS.

15  **THE COURT:**  I KNOW THEY ARE.  BUT THE "AGENT" CONCEPT

16 MAY BE THE SAME.  HOW CAN YOU BE AN AGENT FOR RULE 16 BUT NOT BE

17 AN AGENT FOR <u>BRADY</u>?  THAT'S THE PROBLEM.

18  **MR. LEUNG:**  I GUESS IT DEPENDS ON HOW THE NINTH

19 CIRCUIT LEFT IT IN <u>FORT</u>, YOUR HONOR.

20  **THE COURT:**  I THINK THAT'S A FAIR POINT.  AND -- BUT

21 NONETHELESS, IF I THINK WE OUGHT TO RESOLVE THAT, RESOLVE THAT

22 ISSUE.

23  MR. SABELLI.

24  **MR. SABELLI:**  YOUR HONOR, I'M STANDING FORWARD NOW

25 ONLY BECAUSE I FILED THE MOTION THAT IS FOCUSED ON THE POINT.

1    AND I --

2              **THE COURT:**  CALLED OBJECTION.

3          **MR. SABELLI:**  I CALLED IT AN OBJECTION.

4              **THE COURT:**  IT WASN'T A MOTION.  IT WAS AN OBJECTION.

5          **MR. SABELLI:**  THAT'S CORRECT, YOUR HONOR.  I OBJECTED

6    TO THE UNITED STATES' CHARACTERIZATION OF ITS SCOPE OF REVIEW

7    AND ITS DEFINITION OF "POSSESSION," BOTH FOR RULE 16 PURPOSES

8    AND FOR BRADY PURPOSES.

9              I THINK THAT'S A MOTION WE SHOULD LITIGATE

10   IMMEDIATELY.  AND I'M A LITTLE BIT DISTURBED BY WHAT I HEAR

11   TODAY, BECAUSE I THINK THE GOVERNMENT IN ITS PLEADING HAD

12   ACTUALLY INVITED THE COURT TO ADOPT THE AGENCY STANDARD OR THE

13   DEFINITION OF "AGENCY" UNDER BRADY FOR THE RULE 16 CONTEXT.

14             AND SO IF THE GOVERNMENT'S DOING THAT, ASKING FOR

15   THAT IN ITS PAPERS, THEN I THINK THE GOVERNMENT IN GOOD FAITH

16   HAS TO AGREE THAT THE SCOPE OF BRADY REVIEW WOULD INCLUDE, FOR

17   EXAMPLE, THE SAN FRANCISCO POLICE DEPARTMENT.  AND I THINK IF WE

18   DON'T ADDRESS THIS ISSUE RIGHT AWAY, WE'RE GOING TO HAVE

19   INCOMPLETE BRADY REVIEW BY THE GOVERNMENT THAT'S GOING TO CAUSE

20   A RIPPLE EFFECT DOWN THE LINE.  WE'RE GOING TO END UP HAVING AN

21   INCOMPLETE --

22             **THE COURT:**  WELL, THAT MAY BE RIGHT, AND I TEND TO

23   AGREE THAT WE SHOULD RESOLVE IT SOONER RATHER THAN LATER.

24         **MR. SABELLI:**  AND, YOUR HONOR, THERE'S --

25             **THE COURT:**  BUT YOU CALLED IT AN OBJECTION.  I THINK

1   THIS HAS TO BE A FORMAL MOTION.

2          **MR. SABELLI:**  I AGREE.

3          **THE COURT:**  AND NOT A, QUOTE, OBJECTION.

4          **MR. SABELLI:**  I AGREE.  AND I THOUGHT WE SHOULD

5   LITIGATE THIS IMMEDIATELY.  IT'S ONLY THAT I WAS REACTING TO

6   MR. WILSON'S (SIC) STATUS CONFERENCE STATEMENT, WHICH, OF

7   COURSE, WAS FILED TIMELY LAST THURSDAY.

8          AND SO MY POINT WAS SIMPLY TO PUT A FOOTNOTE ON THAT

9   SO THAT WE WOULDN'T LOSE TRACK OF THIS ISSUE.  I THINK IT'S AN

10  IMPORTANT ISSUE.  WE WILL CERTAINLY BEGIN TO LITIGATE THAT

11  MOTION.  I THINK IT'S AN IMPORTANT MOTION TO LITIGATE.

12         MAY I SAY ALSO THIS IS ASSOCIATED WITH A SECOND

13  PROBLEM THAT THE COURT HAD BEGUN TO DISCUSS WITH MR. GOLDROSEN

14  AND MR. LEUNG, AND THAT IS THE NOTION OF WHAT EXACTLY MR. LEUNG

15  WOULD HAVE TO SHOW IF HE CLAIMED HE RECEIVED SOMETHING AFTER

16  APRIL 30TH.

17         AND I BELIEVE THAT THE WAY THE COURT HAD ARTICULATED,

18  THE COURT WOULD REQUIRE MR. LEUNG TO SAY, I DID NOT ACQUIRE

19  THIS, IT WAS NOT IN MY POSSESSION UNTIL AFTER APRIL 30TH.

20         I BELIEVE THAT OUR POSITION IS THAT THE GOVERNMENT

21  WOULD NOT ONLY HAVE TO SHOW THAT IT CAME INTO ITS POSSESSION

22  AFTER APRIL 30TH BUT WOULD HAVE TO SHOW GOOD CAUSE WHERE IT WAS

23  NOT IN THE GOVERNMENT'S POSSESSION BEFORE APRIL 30TH.  AND IN

24  THAT SENSE, IN THAT RESPECT, I BELIEVE THE GOVERNMENT HAS TAKEN

25  THE POSITION -- AND I WOULD ASK MR. LEUNG WOULD HE EITHER

1  CONFIRM OR CORRECT ME IF I'M WRONG -- THAT IT HAS OUTSTANDING

2  REQUESTS FOR ALL INFORMATION WHICH PRESENTLY EXISTS RELATIVE TO

3  THIS CASE.

4  IN OTHER WORDS, MR. LEUNG ISN'T HOLDING BACK REQUESTS

5  TO THE SAN FRANCISCO POLICE DEPARTMENT OR TO THE SONOMA

6  SHERIFF'S COUNTY'S OFFICE OR SOMETHING LIKE THAT.  AND I THINK

7  THAT'S IMPORTANT BECAUSE OTHERWISE THE APRIL 30TH CUTOFF DATE

8  DOESN'T MEAN MUCH.  IT COULD JUST SIMPLY MEAN THAT MR. LEUNG IN

9  AUGUST WOULD SEND A LETTER TO SAN FRANCISCO AND ASK FOR

10  SOMETHING HE HADN'T ASKED FOR BEFORE.

11  SO I THINK THAT'S A MAJOR HOLE IN THE ORDER THAT

12  NEEDS TO BE PLUGGED UP, YOUR HONOR.  OTHERWISE, WE'RE SIMPLY

13  GOING TO GET THINGS LATER ON IN THE YEAR THAT MR. LEUNG HASN'T

14  ASKED FOR YET, AND I'M NOT SUGGESTING BAD FAITH AT ALL.  HE'S

15  GOT A WHOLE BUNCH OF WORK TO DO, SO DOES MS. GWINN, BUT I THINK

16  THAT'S A HOLE IN THE ORDER THAT NEEDS TO BE PLUGGED UP IF THAT

17  APRIL 30TH DATE IS GOING TO BE MEANINGFUL.

18  **MR. LEUNG:**  IF I MAY, YOUR HONOR.

19  **THE COURT:**  PLEASE.

20  **MR. LEUNG:**  I WILL STATE THAT THE GOVERNMENT'S

21  REFERENCE TO BRADY UNDER RULE 16 WAS MERELY TO POINT OUT THAT

22  THERE ARE AGENCY CONCEPTS OUT THERE WHICH MAY BE USEFUL IF THERE

23  IS RULE 16 LITIGATION.

24  CONTRARY TO MR. SABELLI'S CONCERNS, IT WAS NEVER

25  INTENDED TO BE AN ASSERTION CONCERNING THE GOVERNMENT'S

1   UNDERSTANDING OF ITS BRADY OBLIGATION.  THE GOVERNMENT

2   UNDERSTANDS ITS BRADY OBLIGATIONS AND WILL COMPLY WITH THEM AND

3   CONTINUE TO COMPLY WITH THEM.  WE ARE NOT CURTAILING THEM, NOR

4   CAN WE CURTAIL THEM SIMPLY BY UNILATERALLY ASSERTING IN A

5   PRETRIAL SUBMISSION TO THE COURT WHAT WE MAY FEEL THE BRADY

6   OBLIGATION IS.

7           BRADY IS INHERENTLY THE CONCEPT THAT CAN ONLY BE

8   LITIGATED AFTER THE FACT, YOUR HONOR.  THAT SAID, WE WILL

9   ENDEAVOR TO A -- TO PURSUE OUR BRADY OBLIGATIONS DILIGENTLY.  B,

10  WE WILL ALSO CONTINUE OUR RULE 16 -- TO ADHERE TO OUR RULE 16

11  OBLIGATIONS.  WE WILL NOT WITHHOLD ANY REQUESTS SIMPLY FOR

12  DILATORY REASONS.

13          **THE COURT:**  I DON'T THINK YOU WOULD EVER DO THAT.

14  I -- I WANT TO TELL YOU A STORY, AND I WANT TO PREFACE IT BY

15  SAYING THAT I BELIEVE THAT THE PROSECUTORS WE HAVE IN THIS CASE

16  ARE OUTSTANDING AND EXCELLENT AND HIGH STANDARDS AND ETHICS AND

17  EVERYTHING.  I DON'T THINK YOU WOULD FOR A SECOND INTENTIONALLY

18  TRY TO VIOLATE BRADY.

19          BUT I DO WANT TO TELL YOU A STORY.  I FELT THE SAME

20  WAY ABOUT THE PROSECUTORS IN THE -- IN THE CASE THAT -- THE

21  OTHER GANG CASE.  AND WE KEPT GETTING THESE, YOU KNOW, THE YEARS

22  WENT BY.  WE KEPT GETTING THESE INDICATIONS THAT DESPITE THE

23  GOVERNMENT'S STATEMENTS IN COURT THAT THEY HAD CHECKED WITH THE

24  POLICE AND THEY'VE TURNED OVER ALL OF THIS AND TURNED OVER ALL

25  THAT, AND THEN DEFENSE KEPT SAYING WITH, YES, BUT THERE SHOULD

1    BE A FILE CALLED XYZ AND THEY NEVER GAVE IT TO US.

2                AND, ANYWAY, FINALLY, I SAID OKAY.  WE'RE GOING TO

3    HAVE AN EVIDENTIARY HEARING.  THE DEFENSE, YOU GO SUBPOENA THE

4    POLICE THAT YOU WANT TO SUBPOENA AND SUBPOENA THE RECORDS, AND

5    THEN WE'LL HAVE AN EVIDENTIARY HEARING, AND THE POLICE OFFICERS

6    WILL TELL US DID THE FILE XYZ EXIST.

7                WELL, IT WAS AMAZING.  ABOUT THREE DAYS LATER, A

8    WHOLE BUNCH OF NEW DOCUMENTS EMERGED FROM THE POLICE DEPARTMENT,

9    AND THE GOVERNMENT TURNED IT ALL OVER, AND -- AND I THINK IT --

10   I THINK IT JUST CAUSED THE -- THE POSSIBILITY OF AN EVIDENTIARY

11   HEARING CAUSED THEM TO FOCUS ON IT.  SO I BELIEVE EVERY SINGLE

12   ONE OF THOSE PROSECUTORS WAS ACTING IN GOOD FAITH, THAT THEY

13   HONESTLY BELIEVED WHAT THEY WERE TELLING ME, BUT IT WAS WRONG.

14               SO SOMETIMES -- SOMETIMES THE -- THE -- SOMETHING

15   GETS LOST IN TRANSLATION WHEN IT GETS DOWN TO THE

16   HALL OF JUSTICE AND THEY DON'T -- THEY DON'T KNOW WHAT YOU'RE

17   TALKING ABOUT, SO THEY TELL YOU THEY'VE TURNED IT OVER AND, IN

18   FACT, THEY HAVEN'T, SO IT'S A PROBLEM.

19               **MR. LEUNG:**  IT'S ALSO AN INDICATION THAT THE -- THE

20   FEDERAL GOVERNMENT DOES NOT NECESSARILY CONTROL THE

21   HALL OF JUSTICE.

22               **THE COURT:**  WELL, I -- THAT'S TRUE.  THAT MAKES YOU

23   WONDER THEN WHY DID THE NINTH CIRCUIT SAY THAT THEY WERE YOUR

24   AGENTS.

25               **MR. LEUNG:**  I DON'T KNOW, YOUR HONOR.  AND I --

1          **THE COURT:**  IF YOU CAN'T CONTROL THEM --

2          **MR. LEUNG:**  AND THUS FAR, YOUR HONOR, WE HAVE NOT

3     ASSERTED ANY LAW ENFORCEMENT PRIVILEGE UNDER RULE 16.

4          **THE COURT:**  WELL, HAVE YOU BEEN MAKING REDACTIONS?

5          **MR. LEUNG:**  WE HAVE MADE REDACTIONS OF SENSITIVE

6     INFORMATION WE FEEL MAY JEOPARDIZE SAFETY.

7          **THE COURT:**  WELL, WHAT IS THE BASIS FOR THOSE

8     REDACTIONS IF IT'S NOT -- IF IT'S NOT BEING ASSERTED ON THE

9     GROUND IN THE NINTH CIRCUIT, WHICH WAS WORK PRODUCT?

10          THEN -- SEE, MY THEORY WAS YOU COULD DO THAT WITH THE

11     PROTECTIVE ORDER BY THE COURT, WHICH WAS THE WAY I WANTED TO DO

12     IT.  BUT THE -- THE GOVERNMENT DIDN'T LIKE THAT.  THEY WANTED --

13     THEY WANTED IT TO BE OUTSIDE OF RULE 16.  SO THE ONLY WAY TO GET

14     THERE WAS TO CALL IT WORK PRODUCT.

15          **MR. SABELLI:**  YOUR HONOR, THEN IF I UNDERSTAND THE

16     GOVERNMENT'S POSITION THEN -- AND I'M ADDRESSING THE GOVERNMENT

17     THROUGH THE COURT -- THE GOVERNMENT WOULD HAVE NO OBJECTION TO

18     THE DEFENSE SUBPOENAING POLICE RECORDS FROM THE SAN FRANCISCO

19     POLICE DEPARTMENT BECAUSE THERE IS NO WORK-PRODUCT PRIVILEGE IN

20     THE GOVERNMENT'S ESTIMATION IN THIS CASE.

21          **THE COURT:**  WELL, THAT'S WHAT MR. LEUNG SAID NOW, BUT

22     I'M -- I WOULDN'T -- I WANT HIM TO THINK THROUGH THE

23     IMPLICATIONS OF THAT.

24          **MR. LEUNG:**  WE HAVE NOT -- WE HAVE CHOSEN NOT TO

25     ASSERT IN THE DOCUMENTS THAT WE HAVE PRODUCED, I THINK, THAT THE

1    SUBPOENA TO THE POLICE DEPARTMENT WOULD -- WOULD BE AN END

2    AROUND RULE 16, WHICH I BELIEVE IS CONTRARY TO THE DISCOVERY

3    FRAMEWORK.

4              **THE COURT:**  WELL, IF THEY'RE NOT RULE 16 DOCUMENTS,

5    IT NO, THAT'S NOT RIGHT.  THEY COULD -- I DON'T -- I'M NOT SURE

6    THAT'S RIGHT.

7              THIS COULD BE I THINK THIS MOTION THAT MR. SABELLI IS

8    GOING TO BRING IS GOING TO BRING A LOT OF THESE PROBLEMS OUT.

9              I'M JUST TALKING HERE.  I'M NOT DECIDING ANYTHING

10   NOW.

11             **MR. LEUNG:**  FAIR ENOUGH.

12             **THE COURT:**  I THINK THESE ARE NOT EASY PROBLEMS TO

13   SOLVE, AND I BELIEVE WE OUGHT TO HAVE A HEARING DEVOTED TO IT.

14   SO --

15             YES, SIR.

16             **MR. BALOGH:**  THANK YOU, YOUR HONOR.  ETHAN BALOGH ON

17   BEHALF OF MS. SOSA.  AS LONG AS WE'RE TALKING ABOUT THE SAME TWO

18   ISSUES, I THOUGHT I'D BRING UP TO -- WHAT I SEE THE HOLE --

19   UNINTENTIONALLY.  THE COURT SAYS THE APRIL 30TH GIVES A DATE TO

20   THE GOVERNMENT FOR, QUOTE, RECEIPT OR ACQUISITION BY GOVERNMENT

21   COUNSEL OR ITS AGENTS, AND HAS THE SAME THING SAID A MOMENT

22   LATER WITH REGARD TO WHAT'S ACQUIRED LATER.

23             WE'D ASK THE COURT TO ADOPT THE LANGUAGE OF RULE 16

24   WHICH SAYS STUFF THAT'S IN THE POSSESSION OF GOVERNMENT COUNSEL

25   OR THROUGH THE EXERCISE OF DILIGENCE HE KNOWS -- OR DOCUMENTS

1   WHICH HE KNOWS OR THROUGH EXERCISE OF DILIGENCE COULD KNOW

2   EXISTS.  WE THINK THAT'S A BETTER STANDARD AND A BROADER

3   STANDARD AND AT LEAST ONE THAT'S IN COMPLIANCE WITH RULE 16.

4           **THE COURT:**  OKAY.  WHERE IS THAT IN THE RULE?

5           **MR. BALOGH:**  YOU'LL FIND IT UNDER 16(A)(1)(B) SMALL

6   1, LITTLE "I."  YOU'LL FIND THAT LANGUAGE AGAIN AT 16(A)(1)(F).

7   YOU'LL FIND THAT LANGUAGE AGAIN -- NO, THAT'S THE ONLY ONE THAT

8   APPLY OUTSIDE -- THE FIRST ONE IS -- OBVIOUSLY, IT'S

9   INTERROGATION SO THEY HAVE TO KNOW ABOUT IT BY THEIR AGENT.

10  (B)(1) IS RECORDED OR WRITTEN STATEMENTS, AND THAT APPLIES TO

11  THEM.  STUFF THAT'S WITHIN THE GOVERNMENT'S POSSESSION, CUSTODY

12  OR CONTROL, OR WHICH GOVERNMENT COUNSEL KNOWS OR THROUGH DUE

13  DILIGENCE COULD KNOW THAT THE STATEMENT EXISTS, ET CETERA, AND

14  GOING DOWN.

15          AND I THINK THAT WOULD BE SOMETHING FOR THE COURT TO

16  CONSIDER.

17          THE OTHER HOLE THAT WE'D ASK THE COURT TO PLUG

18  REGARDING THE APRIL 30TH DATE, IT TALKS ABOUT THE GOVERNMENT'S

19  BURDEN TO BE REGARDING NONCOMPLIANCE, IT DOESN'T SHOW WHAT THE

20  PENALTY IS FOR NONCOMPLIANCE AND W. R. GRACE, WHY THAT DISTRICT

21  COURT WAS UNANIMOUSLY UPHELD BY THE EN BANC COURT IS BECAUSE THE

22  COURT SAID IT WAS ENFORCING ITS ORDER, AND IT SAID THE COURT HAD

23  THE AUTHORITY TO ENFORCE ITS ORDERS IF THE COURT ISSUES A FINAL

24  SETTLEMENT -- FINAL SCHEDULING ORDER LIKE THIS WHICH DOESN'T SAY

25  WHAT THE PENALTY IS FOR LATE PRODUCTION, DOESN'T SAY IT SO

1  CLEARLY DOWN THE ROAD, THE COURT MAY HAVE A HARD TIME ENFORCING

2  ITS ORDER.  AND, OBVIOUSLY --

3              (SIMULTANEOUS COLLOQUY.)

4       **THE COURT:**  -- SAYS FAILURE TO SO PRODUCE WILL

5  PRECLUDE USE OF ANY SUCH EVIDENCE BY THE GOVERNMENT AS TO ANY

6  DEFENDANT WHO MADE A TIMELY REQUEST OTHER THAN FOR IMPEACHMENT

7  OR REBUTTAL.

8       WHY -- I DON'T UNDERSTAND WHY THAT ISN'T WHAT --

9  EXACTLY WHAT YOU'RE ASKING FOR.

10      **MR. BALOGH:**  IT IS, AND I MISREAD IT, YOUR HONOR.

11 THANK YOU VERY MUCH, AND I STAND CORRECTED.

12      **THE COURT:**  OKAY.  ALL RIGHT.

13      MR. LEUNG, YOU'VE BEEN OUT-GUNNED HERE BY THE OTHER

14 SIDE, OUTNUMBERED.  MAYBE NOT OUT-GUNNED.  SO LET'S HEAR FROM

15 YOU FOR A WHILE.

16      WHAT ARE SOME OF YOUR CONCERNS WITH THIS -- THIS

17 PROPOSAL?

18      **MR. LEUNG:**  WELL, YOUR HONOR, ONE OF THE GOVERNMENT'S

19 PRINCIPAL CONCERNS WAS THE PROPOSED SUPERSEDING INDICTMENT

20 CUTOFF DATE.  WE WOULD RESPECTFULLY SPLIT THAT THAT WOULD BE A

21 VIOLATION OF SEPARATION OF POWERS.  WE NOTE THAT IN THE COURT'S

22 PROPOSED ORDER, IT IS NO LONGER COUCHED AS A PROHIBITION AGAINST

23 SUPERSEDING.  RATHER, IT REFLECTS THE COURT'S DESIRE TO, I

24 SUPPOSE, MOVE THE CASE ALONG BY SEVERING --

25      **THE COURT:**  WELL, WAIT A MINUTE.  THAT'S WHY I -- I

1    ADOPTED YOUR APPROACH.

2              **MR. LEUNG:**  THAT'S EXACTLY RIGHT.

3              **THE COURT:**  THEN WHY ARE YOU COMPLAINING THEN?

4              **MR. LEUNG:**  I'M NOT COMPLAINING, YOUR HONOR.  I WOULD

5    JUST NOTE THAT I WOULD -- I WOULD LIKE THAT -- THAT IF THE COURT

6    WOULD CONSIDER A SEVERANCE, THAT IT NOT DO SO SPONTANEOUSLY AND

7    PRESUMPTIVELY, THAT IT WOULD INSTEAD WAIT FOR A MOTION FROM ONE

8    OF THE PARTIES AND THAT WE COULD LITIGATE TO SEE WHETHER, IN

9    FACT, A SEVERANCE WOULD BE NECESSARY.

10             **THE COURT:**  I DON'T KNOW ABOUT THAT.

11             **MR. GOLDROSEN:**  I DON'T SEE ANY HARM IN WHAT THE

12   COURT REQUIRED THE FIRST TIME, WHICH WOULD BE IT DIDN'T LIMIT

13   THE GOVERNMENT FROM FILING ANY NEW CHARGES AGAINST THE CURRENT

14   DEFENDANTS OR ADDING NEW DEFENDANTS.  THEY JUST HAD TO DO IT IN

15   A SEPARATE INDICTMENT.

16             **THE COURT:**  I'M OKAY WITH EITHER APPROACH.  I WAS

17   TRYING TO -- I THOUGHT BECAUSE I WOULD PRESUMPTIVELY SEVER

18   ANY -- ANY CHARGES AFTER THAT DATE.  I'M JUST GOING TO LEAVE

19   THAT PART THE WAY IT IS.  I THINK IT'S FINE.

20             WHAT ELSE DO YOU HAVE SOME PROBLEMS WITH, MR. LEUNG?

21             **MR. GOLDROSEN:**  YOUR HONOR, MR. BRASS HAD A COMMENT

22   HE WISHED TO MAKE.

23             **THE COURT:**  OKAY.  BUT HAVE WE COVERED EVERYTHING ALL

24   THE WAY UP TO THE TRIAL PART FOR YOU, MR. LEUNG?

25             **MR. LEUNG:**  CAN I HAVE A MOMENT, YOUR HONOR?

1              **MS. GWINN:**  ONE MOMENT.

2              **THE COURT:**  YES.

3              **MR. LEUNG:**  YOUR HONOR, THE COURT PROPOSES GIVING THE

4    GOVERNMENT 21 DAYS TO RESPOND TO THE MOTIONS -- THE STAGE ONE

5    AND STAGE TWO MOTIONS.  WE WOULD ASK IF WE COULD HAVE 30 DAYS

6    INSTEAD, GIVEN THE FACT THAT THERE IS THE POSSIBILITY OF UP TO,

7    SAY, 29 SEPARATE MOTIONS.

8              **THE COURT:**  LOOK, IF YOU GET -- I DON'T BELIEVE

9    THERE -- YOU KNOW, REALISTICALLY, I KNOW WHAT'S GOING TO HAPPEN

10   HERE.  THEY'RE NOT GOING TO FILE ANY MOTION FOR SELECTIVE

11   PROSECUTION.  THEY'RE NOT GOING TO FILE A BUNCH OF THESE JURY

12   COMPOSITION RECORDS, BUT IF I DON'T PUT THEM IN HERE, THEN

13   SOMEBODY WILL COME UP WITH IT LATER.

14              SO YOU'RE NOT GOING TO HAVE THAT MANY MOTIONS, BUT IF

15   IT TURNS OUT THAT YOU HAVE A WHOLE WHEELBARROW FULL OF MOTIONS,

16   I'LL GIVE YOU MORE TIME.  BUT YOU'RE PANICKING BEFORE YOU NEED

17   TO.  SO I DON'T -- I DON'T THINK THAT'S A GOOD -- THAT'S YOU

18   DON'T NEED MORE THAN 21 DAYS.

19              OKAY.  MR. GOLDROSEN, YOUR NEXT POINT?

20             **MR. GOLDROSEN:**  MR. BRASS --

21             **THE COURT:**  MR. BRASS, YOUR NEXT POINT?

22             **MR. BRASS:**  YOUR HONOR, MY CONCERN COMES FROM THE

23   COMMENT THAT THE GOVERNMENT DOESN'T CONTROL THE HALL OF JUSTICE.

24   I UNDERSTAND THE DIFFICULTIES IN CONTROLLING THE HALL OF

25   JUSTICE, BUT THAT HAS TWO IMPLICATIONS, ONE SPECIFIC TO

1    MR. PALMA, AND THE OTHER THAT AFFECTS EVERYBODY.

2         REGARDING MR. PALMA, THE TWO BIG-TICKET ITEMS IN THE

3    INDICTMENT FOR HIM ARE TWO SHOOTINGS THAT ARE ALLEGED ATTEMPTED

4    MURDERS.  THOSE CASES -- HE WAS NEVER ARRESTED.  THEY DON'T

5    APPEAR ON HIS RECORD AT ALL, SO I HAVE NO INFORMATION WHATSOEVER

6    TO EVEN BEGIN AN INVESTIGATION INTO THREE-YEAR-OLD SHOOTING

7    CASES WHERE I MAY WANT TO TALK TO WITNESSES, WHAT THEY HEARD,

8    WHAT THEY SAW.  AND I CAN'T EVEN GET GOING ON THAT WITHOUT

9    POLICE REPORTS.

10        SO I'M IN A LIFE-TOP CASE WITH DEADLINES BEING SET,

11   AND I DON'T HAVE A POLICE REPORT.  SO THAT'S A CONCERN FOR HIM

12   AND HIS STRUGGLE THROUGH THIS.

13        BUT MORE IMPORTANTLY, I THINK IF THE GOVERNMENT'S

14   GANG EXPERT IS GOING TO BE SOMEONE FROM THE GANG TASK FORCE IN

15   SAN FRANCISCO, THEY HAVE A LIBRARY OF INFORMATION THAT CONCERNS

16   PROBABLY THE MAJORITY, IF NOT ALL, OF THESE DEFENDANTS.  AND

17   THAT INFORMATION NEEDS TO BE GIVEN TO US, BECAUSE THAT WILL BE

18   THE BASIS OF THE EXPERT'S OPINION.  SO I THINK WE SHOULD ALSO

19   IDENTIFY THAT BY WAY OF DISCOVERY SO WE'RE NOT SURPRISED BY

20   DOZENS OF PHOTOGRAPHS OF VIDEO OR AUDIO RECORDINGS THAT COME

21   FROM THE LIBRARY THAT ARE NOT PART NECESSARILY OF THE

22   INFORMATION WHICH LED TO THE INDICTMENT BUT WILL COME LATER BY

23   WAY OF THE EXPERT'S TESTIMONY.

24        THAT'S A VERY DANGEROUS ROOM IN THE HALL OF JUSTICE

25   AND HAS A LOT OF INFORMATION THAT WE WOULD NEED TO KNOW IN

```
1   ADVANCE IF THAT'S COMING SO WE COULD ADDRESS IT AND CERTAINLY BE

2   PREPARED TO ADDRESS IT.

3             THE COURT:  WELL, DON'T GO AWAY.  LET ME ASK ABOUT

4   THE SECOND -- SEE, THE WAY I -- THE WAY THIS COULD PROBABLY COME

5   DOWN, MR. LEUNG, IS THAT YOU DESIGNATE AND GIVE A REPORT ON THE

6   INSPECTOR SO AND SO AT THE HALL OF JUSTICE WHO IS A GANG EXPERT.

7   TONY SOMEBODY.  TONY -- I'LL THINK OF HIS NAME.  I -- IT'S ON

8   THE TIP OF MY TONGUE -- WHO, YOU KNOW, HAS WORKED IN THE GANG

9   AREA IN SAN FRANCISCO FOR 20-PLUS YEARS.

10            AND THEN HE -- HE WILL NECESSARILY HAVE BEEN RELYING

11  UPON SOME REPORTS AND MATERIALS THAT ARE IN THE GANG TASK FORCE.

12  SO THEN THE OTHER SIDE WILL SAY, IN ORDER FOR TO US EFFECTIVELY

13  CROSS-EXAMINE HIM, WE NEED TO KNOW WHAT ELSE IS IN THOSE FILES,

14  OTHER REPORTS WRITTEN BY THE SAME INSPECTOR, AND, YOU KNOW,

15  DEALING WITH, LET'S SAY, THE SAME GANG OR -- OR SOME CLOSELY

16  RELATED EVENTS.

17            NOW, HOW ARE WE GOING TO DEAL WITH THAT?  ARE WE JUST

18  GOING TO TURN ALL THAT OVER IN ADVANCE?  THAT'D BE FINE WITH ME,

19  BUT -- BUT IF YOU THEN SAY, NO, THEY'RE NOT ENTITLED TO THAT,

20  THEN WE HAVE TO HAVE EVIDENTIARY HEARINGS, SUBPOENAS GO OUT.  I

21  DON'T KNOW WHAT THE ANSWER WILL BE NOW, BUT DON'T WE NEED TO

22  HAVE A PLAN TO DEAL WITH THAT PROBLEM?

23            MR. LEUNG:  PART OF THE PROBLEM IS -- IT DEPENDS ON

24  WHICH EXPERT WE USE, AND, B, WHICH EXPERTS WE USE, AND ALSO ON

25  WHAT SPECIFIC MATERIAL THAT THE EXPERT RELIES UPON IN
```

1    FORMULATING HIS OPINION IN THIS CASE.  CERTAINLY NOT EVERYTHING

2    THAT THE EXPERT HAS EVER READ CONCERNING GANG ACTIVITY, YOUR

3    HONOR, IS DISCOVERABLE.

4              **THE COURT:**  BUT HOW ABOUT REPORTS THAT HE WROTE IN

5    THE -- DEALING WITH THE SAME GANG OR THE SAME NEIGHBORHOOD OR

6    THE SAME CRIMES OR MURDERS OR WHATEVER?  I -- A DECENT ARGUMENT

7    CAN BE MADE BY MR. BRASS THAT HE SHOULD HAVE THAT MATERIAL FOR

8    IMPEACHMENT.

9              **MR. LEUNG:**  CERTAINLY THAT WOULD CONSTITUTE 3500

10   MATERIAL.

11             **THE COURT:**  SO WHY -- NO.  YOU MEAN --

12             **MR. LEUNG:**  FOR IMPEACHMENT.

13             **THE COURT:**  -- JENCKS ACT MATERIAL?  I DON'T THINK

14   SO.

15             WELL, IT MIGHT BE.  IT MIGHT BE A STATEMENT, BUT IT

16   COULD CERTAINLY BE BRADY MATERIAL.

17             **MR. LEUNG:**  IT WOULD DEPEND ON -- IT WOULD DEPEND ON

18   THE NATURE OF THE MATERIAL AND THE NATURE THAT IT WAS USED --

19   AND HOW IT WAS USED, IF AT ALL, BY THE EXPERT.

20             **THE COURT:**  WELL, LET'S SAY IT WASN'T USED AT ALL,

21   BUT HE HAD SAID SOMETHING DIRECTLY CONTRADICTORY TO WHAT HE SAYS

22   AT TRIAL.

23             **MR. LEUNG:**  THEN THAT WOULD CERTAINLY BE IMPEACHMENT

24   MATERIAL.

25             **THE COURT:**  YEAH, SO THAT WOULD HAVE TO BE PRODUCED.

1    SO WHAT IS OUR PLAN FOR FIGURING OUT WHAT THAT MATERIAL IS?

2              **MR. LEUNG:** IF --

3              **THE COURT:** SOMEBODY'S GOING TO HAVE TO REVIEW THOSE

4    FILES OVER THERE TO MAKE SURE THAT THE <u>BRADY</u> MATERIAL FOR THE

5    EXPERTS HAS BEEN PRODUCED, EVEN IF THEIR EXPERT IS NOT RELYING

6    ON IT.

7              **MR. BRASS:** IN SIMPLE TERMS, YOUR HONOR, FOR

8    INSTANCE, THERE WOULD BE A WALTER PALMA FILE IF THERE -- SUCH

9    EXISTED. IF IT DID, I DON'T WANT JUST THE GREATEST HITS THAT

10   WORK FOR THE GOVERNMENT'S CASE TO BE PRESENTED AT TRIAL AND I

11   DON'T KNOW WHAT THE REST OF IT WAS.

12             THAT ITEM CERTAINLY IN THE CASE OF MANY DEFENDANTS

13   EXISTS, SO WE WOULD BE ENTITLED TO THAT IN ITS CONTEXT, NOT

14   SIMPLY WHAT WORKS TO BE CONSISTENT WITH THE GOVERNMENT IN THEIR

15   CASE.

16             **MR. LEUNG:** WE CERTAINLY --

17             **THE COURT:** FAIR --

18             **MR. LEUNG:** WE HAVE PRODUCED TO THE DEFENDANTS, WITH

19   RELEVANT FILES FROM THE POLICE DEPARTMENT, WHAT ARE CALLED

20   ALPHABETICAL FILES. AND WE HAVE PRODUCED EXISTING ALPHABETICAL

21   FILES THAT WE'VE GOT FROM THE POLICE TO EACH DEFENDANT

22   INDIVIDUALLY.

23             **THE COURT:** HOW ABOUT THESE FILES THAT MR. BRASS WAS

24   SAYING HAVEN'T BEEN PRODUCED?

25             **MR. LEUNG:** I DON'T KNOW -- I DON'T -- MR. BRASS AND

1    I WILL CONFER FURTHER, AND IF WE, IN FACT, HAVE NOT PRODUCED

2    THEM, THEN WE WILL GET THEM AND WE WILL PRODUCE THEM.

3            **MR. BRASS:** AND A SEPARATE POINT -- NOW I MAY BE

4    GREEDY -- BUT IF THOSE FILES ARE FROM THE SAN FRANCISCO POLICE

5    DEPARTMENT AND THEY HAVE BEEN PRODUCED, THEN ISN'T THE

6    SAN FRANCISCO POLICE DEPARTMENT AN AGENT?  I MEAN ISN'T THAT --

7    IS THAT POINT CONCEDED?

8            **MR. LEUNG:** NO, IT'S NOT CONCEDED.  WE ALSO HAVE

9    PRODUCED PHONE RECORDS.  DOESN'T MEAN THAT AT&T IS AN AGENT.

10           **THE COURT:** WELL, I GO BACK.  IF THE POLICE

11   DEPARTMENT IS NOT AN AGENT WITHIN THE MEANING OF RULE 16 SUBPART

12   2 THAT SAYS, "THIS RULE DOES NOT AUTHORIZE THE DISCOVERY OR

13   INSPECTION OF REPORTS, MEMORANDA, OR OTHER INTERNAL GOVERNMENT

14   DOCUMENTS MADE BY AN ATTORNEY FOR THE GOVERNMENT OR OTHER

15   GOVERNMENT AGENT IN CONNECTION WITH INVESTIGATING OR PROSECUTING

16   A CASE" -- NOW POLICE REPORTS LIKE THE TYPE WE'RE TALKING ABOUT

17   ARE NOT MADE BY ATTORNEYS, BUT WHAT I HAD PREVIOUSLY HELD WAS

18   THE SAN FRANCISCO POLICE DEPARTMENT WAS NOT ANOTHER -- AN OTHER

19   GOVERNMENT AGENT OTHER THAN FEDERAL.

20           BUT THE NINTH CIRCUIT, TWO TO ONE, SAID NO, THAT

21   PICKS UP THE SAN FRANCISCO POLICE DEPARTMENT.  SO THAT'S WHY

22   THE -- YOUR OFFICE WAS ALLOWED TO GET AWAY WITH THOSE

23   REDACTIONS.

24           **MR. LEUNG:** WELL, YOUR HONOR, IN THIS CASE, WE HAVE

25   BEEN PRODUCING POLICE REPORTS.

1          **THE COURT:**  YOU SAY YOU'RE NOT RELYING ON THAT, SO IF

2     YOU'RE NOT RELYING ON THAT, I DON'T SEE WHAT YOU'RE RELYING ON.

3     WITNESS SECURITY IS A GOOD THING, BUT THAT'S THE PROTECTIVE

4     ORDER THAT THE COURT ISSUED.

5          **MR. LEUNG:**  WELL, YOUR HONOR, WE DO HAVE A PROTECTIVE

6     ORDER IN PLACE WITH THE MAJORITY OF THE DEFENDANTS IN WHICH WE

7     AGREED TO REDACT CONTACT INFORMATION AND SENSITIVE INFORMATION

8     SUCH AS SOCIAL SECURITY NUMBERS AND DATES OF BIRTH.  THAT WAS

9     STIPULATED TO AMONG THE PARTIES.

10          **THE COURT:**  DID I EVER SIGN THAT?

11          **MR. LEUNG:**  WE HAVE CIRCULATED --

12          **MR. BALOGH:**  I DON'T THINK THERE'S AN AGREEMENT.  I

13     THINK THE AGREEMENT WAS TO -- TO -- THAT YOU WERE TAKING THAT

14     POSITION, BUT I DON'T BELIEVE I OR --

15          **THE COURT:**  WELL, LET ME BE CLEAR.  I WOULD -- I

16     WOULD AUTHORIZE A -- AN -- A STRONG ATTORNEYS' EYES ONLY SO

17     THAT -- IF THE GOVERNMENT WANTED THAT, I WOULD CERTAINLY --

18     THAT'S VERY LEGITIMATE TO -- TO KEEP THAT KIND OF INFORMATION

19     VERY PROTECTED.

20          BUT THAT IS A DIFFERENT AVENUE FOR JUSTIFYING A

21     REDACTION THAN THE WAY IT WAS DONE IN THE -- THE DIAZ AND THE

22     FORT CASE.

23          I WANT YOU TO THINK THROUGH THE IMPLICATIONS OF WHAT

24     YOU'RE SAYING BECAUSE THEN -- THEN IT GOES OUT OF THE GOVERNMENT

25     HANDS AND GOES INTO MY HANDS AS TO WHAT THEY GET OR NOT GET, SO

1   YOU SHOULD --

2           **MR. LEUNG:**  THEN I WILL CONSIDER IT FURTHER.

3           **THE COURT:**  YOU SHOULD BE THINKING ABOUT THAT.

4       I -- OKAY.  LET'S -- LET'S TURN NOW TO SOME OF THESE

5   OTHER DATES.  STAGE TWO MOTIONS, WE'VE TALKED ABOUT DAUBERT.

6   SUPPRESSION MOTIONS.

7           HOW ABOUT SEPTEMBER 15TH AS WHEN WE GET THE FINAL

8   LIST OF WITNESSES AND THE CIVILIAN INCLUDING CIVILIAN WITNESSES

9   EXCEPT TO THE EXTENT THAT PRIOR COURT ORDER HAS ALLOWED A

10  POSTPONEMENT OF SUCH DISCLOSURE, AND YOU WOULD HAVE ALREADY

11  DONE -- SOUNDS LIKE YOU NEED MORE TIME ON YOUR EXPERT REPORTS.

12          **MR. LEUNG:**  YES, YOUR HONOR.  WE WOULD RESPECTFULLY

13  ASK THAT THAT DATE BE PUSHED BACK TO REFLECT OUR ADDITIONAL NEED

14  FOR FURTHER EXPERTS, FOR FURTHER -- FOR FURTHER TIME TO IDENTIFY

15  OUR EXPERTS.

16          **THE COURT:**  HOW ABOUT THE DEFENSE, RECIPROCAL

17  OBLIGATIONS?  YOU KNOW, THE DAY WILL COME WHEN YOU GOT TO TURN

18  YOURS OVER.  I -- AND I'M GOING TO THIS TIME BE VERY -- I DIDN'T

19  DO IT LAST TIME, BUT THIS TIME, I'VE LEARNED MY LESSON.  I'M

20  GOING TO HAVE A DEADLINE FOR RULE 12.1 AND 12.2 DEFENSE NOTICES.

21          **MR. GOLDROSEN:**  IT'S HARD TO REALISTICALLY GIVE THE

22  COURT A DATE IN THE ABSENCE OF WHAT'S IN THE SPANISH RECORDINGS.

23  I MEAN, THAT OUR -- OUR EXPERTS MAY BE GANG EXPERTS THAT ARE

24  GOING TO RELYING ON RECORDINGS TO REBUT WHAT THE GOVERNMENT'S

25  EXPERTS SAY, SO I DON'T KNOW HOW WE CAN --

```
 1              THE COURT:  I'M GOING TO RAISE HEAVEN AND EARTH TO

 2   GET YOU THOSE TRANSCRIPTS.

 3              MR. GOLDROSEN:  ALL RIGHT.

 4              THE COURT:  AND IF I DON'T GET THEM IN TIME, THEN I'M

 5   GOING TO GIVE THEM MORE TIME.  I'M LEANING TOWARDS PUSHING SOME

 6   OF THESE DATES BACK ANYWAY, BUT I -- WE JUST CAN'T KEEP COMING

 7   IN HERE AND SAYING UNTIL WE GET 203 HOURS, WE CAN'T DO ANYTHING.

 8              ALL RIGHT.  BUT I -- YOU KNOW, YOU GOT TO TURN OVER

 9   YOUR -- THE DAY WILL COME WHEN YOU GOT TO TURN OVER YOUR EXPERT

10   REPORTS AND SUMMARIES.

11              MS. MOORMAN:  YOUR HONOR?

12              THE COURT:  12.1 AND 12.2.

13              MS. MOORMAN:  MAY I JUST ADD BRIEFLY ONE POINT ON

14   THIS VERY SUBJECT IS -- ONE OF THE PROBLEMS WITH HOLDING US TO A

15   SEPTEMBER 15TH DEADLINE FOR DEFENSE RECIPROCAL DISCLOSURE -- AND

16   WE'RE HAPPY TO ABIDE BY A REASONABLE DISCLOSURE DEADLINE.  EVERY

17   LAWYER IN THIS ROOM -- THIS IS A RULE WE'VE LIVED WITH OUR

18   ENTIRE CAREERS.  WE WILL LIVE UP TO IT.

19              THE PROBLEM IS YOU'VE SET IT TO -- AS THE IDENTICAL

20   DAY BY WHICH WE RECEIVE THE FINAL TRANSCRIPTS AND THE

21   GOVERNMENT'S FINAL LIST OF WITNESSES AND EXHIBITS.  AND THAT IS

22   JUST -- IT'S JUST NOT REASONABLE AND MAY BE A GOOD JUMPING OFF

23   POINT FOR ME TO SAY WE'RE WORKING TOWARDS THE LAST PAGE OF THE

24   PROPOSED ORDER, BUT THE -- THE TRIAL DATE, I KNOW, IS TRIGGERING

25   SOME -- IN YOUR -- IN THE COURT'S ANALYSIS OF WHAT DEADLINES YOU
```

1    SHOULD SET.  YOUR THINKING IS BEING -- IN SOMEWHAT PREDICATED BY

2    THE TRIAL DATE THAT'S BEEN SUGGESTED.  AND I -- THIS IS MY TIME,

3    I'M GOING TO STAND UP AND ASK YOU TO RECONSIDER THAT TRIAL

4    DATE --

5            **THE COURT:**  WELL, WHEN DO YOU WANT THE TRIAL DATE?

6            **MS. MOORMAN:**  WELL, I THINK TO BE DIRECT --

7            **THE COURT:**  GOOD.

8            **MS. MOORMAN:**  -- JANUARY IS -- IS -- IT'S JUST TOO

9    SOON.  AND THE REASON I SAY THAT IS EVERYBODY --

10           **THE COURT:**  OKAY.  BUT WHEN IS -- WHEN CAN WE DO IT?

11   WHAT IS THE TRIAL DATE THAT YOU WOULD LIKE TO SEE?

12           **MS. MOORMAN:**  WELL, YOUR HONOR, I THINK A TRIAL

13   DATE -- I'M JUST GOING TO SPEAK FOR MYSELF AND MY CLIENT --

14           **THE COURT:**  YEAH.

15           **MS. MOORMAN:**  -- BASED ON WHAT I DO AND I DON'T HAVE

16   RIGHT NOW, AND THIS CASE WITH RESPECT TO MY CLIENT IS ABOUT

17   80 PERCENT DEPENDENT ON THESE CONVERSATIONS THAT HAVE YET TO BE

18   TRANSLATED BECAUSE THE GOVERNMENT IS RELYING IN THIS CASE NOT

19   JUST ON THE EXISTENCE OF SOME VIOLENT CRIME THAT OCCURRED THAT

20   PROBABLY WON'T BE DISPUTED THAT IT OCCURRED, BUT IT'S VERY MUCH

21   GOING TO BE DISPUTED WHO WAS INVOLVED IN IT AND WHO WAS

22   RESPONSIBLE.

23           AND THE GOVERNMENT'S LINK IN THE CHAIN IN THIS CASE

24   IS VERY MUCH DEPENDENT ON SOME INFORMANTS AND WHAT AND WASN'T --

25   WHAT WAS AND WAS NOT SAID DURING THESE CONVERSATIONS, MORE SO

1    THAN ANY OTHER CASE I'VE BEEN IN, ESPECIALLY A

2    NON-ENGLISH-SPEAKING CASE, HAVE I SEEN THE GOVERNMENT THROWING

3    ITS CASE-IN-CHIEF ON TO THE BACKS OF SOME INFORMANTS AND

4    ALLEGATIONS ABOUT WHAT WAS SAID DURING A VARIETY -- A LOT OF

5    CONVERSATIONS.

6              SO HAVING REPRESENTED THAT TO YOU, I NEED THE

7    TRANSLATIONS BECAUSE I DON'T BELIEVE NECESSARILY -- NO

8    DISRESPECT INTENDED TO MY LOYAL OPPOSITION -- I DON'T BELIEVE

9    WHAT'S BEEN PARAPHRASED IN REPORTS ABOUT WHAT WAS SAID DURING

10   CERTAIN CONVERSATIONS.  I WANT TO HEAR THEM, AND I WANT OUR

11   TRANSLATOR TO HEAR THEM.  AND I WANT OUR TRANSLATOR TO TRANSLATE

12   THEM USING HIS OR HER BEST SPANISH TO ENGLISH SKILLS AND VICE

13   VERSA, BUT ALSO HER BEST UNDERSTANDING OF EL SALVADORAN SLANG

14   AND COLLOQUIALISM.  AND THAT'S WHAT LOTS OF THIS CASE IS GOING

15   TO TURN ON.

16             NOW, OTHER PEOPLE HERE, I KNOW, WE'RE PREPARED TO SAY

17   IT'S ALSO GOING TO TURN ON BALLISTICS AND FINGERPRINTS AND

18   POSSIBLY SOME DNA, AND ALL OF THAT IS TRUE.  BUT THAT -- THE

19   SCHEDULING THAT YOU'VE SET I UNDERSTAND AND I RESPECT AND WE

20   AGREE TO BE HELD TO REASONABLE DEADLINES.

21             BUT BECAUSE YOUR DEADLINES ARE ALL PREMISED ON A

22   JANUARY 13TH TRIAL DATE.  I HAVE TO STAND UP AND OBJECT TO THAT

23   TRIAL DATE AS NOT REASONABLE.  I THINK A SUMMER OF '09, FALL OF

24   '09 DATE --

25             **MULTIPLE COUNSEL:**  TEN.

1          **MS. MOORMAN:**  WELL, THEY -- YES, 2010 IS WHAT WE'VE

2     TALKED ABOUT.

3          NOW, TO GET THE CASE MOVING ALONG AND IN TERMS THAT I

4     THINK WOULD BE SATISFACTORY TO THE COURT, I THINK TODAY OR

5     PERHAPS WITH SOME BRIEF REFLECTION, YOU SHOULD -- WE SHOULD LIVE

6     UP TO THIS APRIL 30TH DISCLOSURE DEADLINE.  WE SHOULD LITIGATE

7     IMMEDIATELY THE ISSUE OF "AGENCY" AS BEEN TOUCHED UPON BY THOSE

8     MORE ARTICULATE THAN ME, AND WE SHOULD ALSO LITIGATE

9     SIMULTANEOUSLY, I THINK, THE ISSUE OF REDACTIONS, BECAUSE WE

10     ALREADY HAVE REDACTIONS IN THIS CASE.  AND I -- I FIND

11     MARGINALLY PUZZLING THE EXPLANATIONS FOR THE REDACTIONS GIVEN

12     THUS FAR BY THE GOVERNMENT TODAY, GIVEN -- SPECIFICALLY IN

13     RESPONSE TO THIS COLLOQUY THAT JUST OCCURRED ABOUT THE

14     PROTECTIVE ORDER AND ITS SCOPE.

15          SO I THINK THOSE TWO ISSUES SHOULD BE LITIGATED

16     NEARLY IMMEDIATELY.  WE SHOULD LIVE UP TO THE APRIL 30TH

17     DISCLOSURE DEADLINE, AND WE COULD FILE STAGE ONE MOTIONS THAT

18     WE'VE ARTICULATED BY JUNE -- JUNE 30, AS WE'VE SUGGESTED, WHICH

19     GETS THE CASE MOVING.

20          AND I THINK IN THE COURSE OF THOSE TWO PIECES, THOSE

21     TWO STAGES, IF YOU WILL, OF LITIGATION, THINGS WILL BECOME MORE

22     CLEAR.  AND PARTICULARLY WHAT WILL BECOME MORE CLEAR IS THE

23     PROGRESS WITH RESPECT TO TRANSLATIONS AND ALSO WHAT WILL BE MORE

24     CLEAR IS THE PROGRESS WITH RESPECT TO DISCLOSURE OF ADDITIONAL

25     CONVERSATIONS BECAUSE IT WILL NOT SURPRISE ME THAT THERE WILL BE

1   ADDITIONAL CONVERSATIONS TO BE TURNED OVER BEYOND WHAT'S BEEN

2   DISCLOSED THUS FAR.

3           FURTHERMORE, I THINK MR. BRASS'S POINT NEEDS TO BE

4   ABSOLUTELY UNDERSCORED.  THE COURT HAS GAINED SOME FAMILIARITY

5   WITH THE PROCEDURES DOWN AT 850 BRYANT BY VIRTUE OF THE FORT AND

6   THE DIAZ CASE AND ALL THOSE DEFENDANTS THAT WERE IN THAT CASE

7   AND INCLUDING ME.  AND 850 BRYANT HAS SOME RULES THAT NEED TO

8   BE -- LIGHT NEEDS TO BE SHED ON THEM.

9           AND MR. BRASS'S POINT ABOUT THE ABSENCE OF REPORTS

10  THAT HE ARTICULATED -- MR. GOLDROSEN AND I HAVE BEEN TRYING TO

11  GET A CORONER'S REPORT ON A HOMICIDE FROM LAST JULY SINCE WE'VE

12  BEEN IN THE CASE.  AND IT'S NOT MR. LEUNG'S FAULT.  IT'S

13  BECAUSE, YOU KNOW, FIRE NEEDS TO BE LIT UNDER THE FEET OF

14  SAN FRANCISCO POLICE DEPARTMENT.

15          SO WE HAVE TO DECIDE HOW WE'RE GOING TO LIGHT THAT

16  FIRE BECAUSE WE DON'T KNOW WHAT THE RELATIONSHIP IS TO THE CASE,

17  SO I THINK WE NEED TO DECIDE THAT, AND WE NEED TO DECIDE THAT

18  SOON.

19          SO I REQUEST ON BEHALF OF MY CLIENT THAT THE COURT

20  ABANDON THE JANUARY 13TH TRIAL DATE AND THAT FOR THE TIME BEING

21  YOU ABANDON THE DATES THAT FALL WITHIN THE SEPTEMBER TIME FRAME,

22  AND WE LITIGATE THE AGENCY ISSUE UNDER RULE 16 AND THE GIGLIO

23  AND BRADY ISSUES THAT ARE COMMENSURATE WITH IT, AS WELL AS

24  POSSIBLY SOME ISSUES RELATING TO REDACTION ON A SCHEDULE

25  FORTHWITH, AND THAT WE SET -- WE FILE STAGE ONE MOTIONS BY

1  JANUARY (SIC) 30, AND THAT SOME POINT IN THAT TIME FRAME, WE CAN

2  GET STATUS CONFERENCES ON THE PROGRESS OF THE TRANSLATIONS AND

3  SET FUTURE PROCEEDINGS IN ACCORDANCE WITH THAT INFORMATION.

4             **THE COURT:**  OKAY.  I'LL CONSIDER IT.  THANK YOU.

5             MR. LEUNG, DO YOU WANT TO RESPOND TO ANY OF THAT?

6             **MR. LEUNG:**  NOT SPECIFICALLY TO MS. MOORMAN'S POINTS,

7  YOUR HONOR.

8             YOUR HONOR, WE WOULD NOTE THAT SEPTEMBER 15TH, 2009,

9  AS -- IN PARAGRAPH 7 OF THE PROPOSED REPORT (SIC), IT STATES

10 THAT SEPTEMBER 15TH, 2009, IS WHEN ALL TRANSLATIONS OR

11 TRANSCRIPTS THAT WILL BE SHOWN TO THE JURY MUST BE PROVIDED.

12            WE WOULD RESPECTFULLY ASK THAT THAT DATE EITHER BE

13 EXTENDED OR THAT IT NOT BE A CUTOFF DATE, BECAUSE WE INTEND TO

14 CONTINUE REVISING TRANSCRIPTS BECAUSE THEY CAN ALWAYS BE MADE

15 BETTER.

16            AND I THINK THAT --

17            **THE COURT:**  YEAH, BUT WE --

18            **MR. LEUNG:**  WE HAVE BEEN PRODUCING --

19            **THE COURT:**  THESE ARE IMPORTANT, AND IT SHOULDN'T BE

20 A MOVING TARGET.

21            **MR. LEUNG:**  CORRECT, YOUR HONOR.

22            **THE COURT:**  SO WHY CAN'T WE HAVE A -- A DATE BY WHICH

23 YOU'RE GOING TO LIVE OR DIE BY WHATEVER'S IN YOUR TRANSCRIPT,

24 AND THEN WE HAVE MOTION PRACTICE DIRECTED TO IT.  AND SO

25 MAYBE -- MAYBE ONE WORD GETS CHANGED TO A DIFFERENT WORD SO

```
 1   WE -- WE SETTLE ON WHAT THE TRANSCRIPT'S GOING TO LOOK LIKE.

 2   BUT IF WE JUST LET IT STAY OPEN, I KNOW WHAT WILL HAPPEN.  WE'LL

 3   BE ARGUING ABOUT THIS DURING THE TRIAL.

 4          MR. LEUNG:  WELL, YOUR HONOR, THE ACCURACY OF A

 5   TRANSCRIPT IS ULTIMATELY UP TO THE JURY TO DECIDE IF THERE ARE

 6   COMPETING VERSIONS.

 7          THE COURT:  YES, THAT'S TRUE.  BUT HERE, THE JURY'S

 8   NOT GOING TO UNDERSTAND SPANISH.  EVEN IF THEY DID UNDERSTAND

 9   SPANISH, PROBABLY THE RULE IS THAT WHAT THE INTERPRETER SAYS

10   FROM THE STAND IS WHAT COUNTS.

11          MR. LEUNG:  CORRECT.

12          THE COURT:  SO --

13          MR. LEUNG:  AND --

14          THE COURT:  THESE TRANSCRIPTS ARE GOING TO BE SHOWN,

15   THOUGH.  THEY MAY HAVE SOME EFFECT ON THE JURY.

16          MR. LEUNG:  YOUR HONOR, IN FACT, THE TRANSCRIPTS

17   WOULD BE THE EVIDENCE THAT WOULD BE PRESENTED TO THE JURY AND TO

18   THE EXTENT THAT THERE ARE DISAGREEMENTS CONCERNING THE ACCURACY

19   OF THE TRANSLATIONS, THEN COMPETING TRANSCRIPTS WOULD BE

20   PRESENTED TO THE JURY.  AND IT WOULD BE UP TO THE JURY TO DECIDE

21   BASED ON THE TESTIMONY OF THE RESPECTIVE INTERPRETERS.

22          THE COURT:  WELL, THE TRANSCRIPTS WON'T GO INTO THE

23   JURY ROOM.  THEY'RE NOT --

24          MR. LEUNG:  YOUR HONOR --

25          THE COURT:  THEY'RE JUST USED AS TO -- WHILE IT'S
```

1    BEING PLAYED -- ALLOWED AND THE -- THEN YOU SEE THAT UP ON THE

2    SCREEN AND THE TRANSLATOR THEN SAYS, HERE'S WHAT IT MEANS, A, B,

3    C, D.

4              **MR. LEUNG:**  YOUR HONOR, THE -- I BELIEVE THAT THE

5    BETTER PRACTICE WOULD BE TO JUST HAVE THE INTERPRETER TESTIFY AS

6    TO THE ACCURACY OF TRANSCRIPTS AND THE TRANSCRIPTS BECOME THE

7    EXHIBITS THEMSELVES, UNLIKE IN AN ENGLISH CASE WHERE THE

8    RECORDING ITSELF IS THE EVIDENCE BUT ANY TRANSCRIPTS COME IN TO

9    AID THE JURY.

10             **THE COURT:**  IT'S AN INTERESTING POINT.  I DON'T KNOW.

11   MAYBE YOU GOT --

12             **MR. LEUNG:**  PERHAPS --

13             **THE COURT:**  WE'LL EVENTUALLY GET AROUND TO DECIDING

14   HOW THIS IS A GOOD EVIDENTIARY POINT.

15             **MR. LEUNG:**  BECAUSE IF -- 'CAUSE THE PLAYING OF TAPES

16   WOULD REQUIRE A LOT OF TIME.  IN ADDITION, IF SOME JURORS DO

17   UNDERSTAND SPANISH, AND IN THE BAY AREA, THAT'S HIGHLY LIKELY,

18   IT WOULD BE DIFFICULT FOR THEM TO -- WELL, THEY -- WELL, FIRST

19   OF ALL, IT WOULD BE POINTLESS BECAUSE ASSUMING THAT MOST JURORS

20   DO NOT UNDERSTAND SPANISH, IT WOULD BE POINTLESS TO PLAY THE

21   TAPES.

22             **THE COURT:**  NO, THAT'S NOT NECESSARILY TRUE.

23   INFLECTION MIGHT MATTER, WHETHER THEY WERE LAUGHING OR JOKING,

24   WHETHER THERE WAS A SERIOUS CONVERSATION.  I MEAN, ALL THOSE

25   THINGS COULD --

1              **MR. LEUNG:**  FOR ISSUES --

2              **THE COURT:**  WE COULD GET THINGS OUT OF IT OTHER THAN

3     JUST THE WORDS THEMSELVES.

4              **MR. LEUNG:**  FOR ISSUES CONCERNING DEMEANOR CERTAINLY,

5     YOUR HONOR.  BUT WITH RESPECT TO THE MEANINGS OF THE RECORDINGS

6     THEMSELVES, YOUR HONOR, I WOULD RESPECTFULLY SUBMIT THAT THE

7     EVIDENCE WOULD BE THE TRANSCRIPTS THEMSELVES.

8              **THE COURT:**  I DON'T KNOW THAT THAT'S RIGHT.  I'M NOT

9     SAYING IT'S WRONG, BUT THAT'S -- IN MOST CASES, THE TRANSCRIPTS

10    ARE USED SOLELY TO ILLUSTRATE, NOT -- WHAT GOES INTO EVIDENCE IS

11    WHAT THE JURY HEARS.

12             **MR. LEUNG:**  PERHAPS WE SHOULD BRIEF THIS ISSUE AS

13    WELL.

14             **THE COURT:**  I THINK WE'RE GOING TO HAVE TO.

15             WE -- I'M NOT -- IT IS A DIFFERENCE BECAUSE THE JURY

16    IS GOING TO BE HEARING ENGLISH, AND THE TAPES ARE IN SPANISH.

17             **THE COURT:**  WE GOT ANOTHER INTERESTING PROBLEM FOR

18    US.

19             **MS. RAFFANTI:**  YOUR HONOR, AND THERE IS ANOTHER

20    LITTLE WRINKLE ON THAT.  I'M SUSAN RAFFANTI FOR

21    MR. CRUZ-RAMIREZ.  IN THE COURSE OF ALL THIS TALKING ABOUT THE

22    TRANSCRIPTS AND GETTING THE TRANSLATIONS, IT'S PRETTY APPARENT

23    THAT -- WE'VE HAD SOME TAPES TRANSLATED FOR SOME PEOPLE WHO WERE

24    THINKING THEY WERE GOING TO TRIAL.  AND THERE HAVE BEEN IN A

25    SUBSTANTIAL PERCENTAGE OF THE CONVERSATIONS DIFFERENCES BETWEEN

1   WHAT A INTERPRETER HIRED BY THE DEFENSE HAS BEEN ABLE TO HEAR

2   AND WHAT HAS APPEARED IN SOME OF THE ROUGH -- GIVEN THEY'RE

3   STILL JUST ROUGH TRANSCRIPTS THAT WE'VE GOTTEN FROM THE

4   GOVERNMENT.

5         SO AS WE OBTAIN WHAT IS GOING TO BE THE C.J.A., YOU

6   KNOW, PAID-FOR SET OF TRANSLATIONS, THE GOVERNMENT MEANWHILE IS

7   OBTAINING ITS OWN TRANSLATIONS, WHICH ARE BEING DONE WITH THE

8   HELP, AS I UNDERSTAND, FROM SOME OF THE NOTES WE'VE SEEN ON THE

9   TRANSCRIPTS OF THE INFORMANTS THEMSELVES, WHO ARE BASICALLY

10  GIVING THEIR IDEAS OF WHAT WAS SAID IN SOME CASES TO, I GUESS,

11  HELP THE TRANSLATORS.

12        SO I THINK WE ARE PRETTY CLEARLY GOING TO COME UP

13  WITH A SITUATION, ONCE WE DO HAVE THIS WHOLE BATCH OF

14  TRANSLATIONS, WHERE THE ONLY -- WHETHER THE TAPES THEMSELVES ARE

15  EVIDENCE OR TRANSCRIPTS ARE SOMEHOW EVIDENCE OR AN INTERPRETER

16  TESTIFYING ON THE STAND IS EVIDENCE, THERE ARE GOING TO BE

17  CONVERSATIONS WHERE WE HAVE DIFFERENCES BETWEEN A DEFENSE

18  TRANSLATION AND A GOVERNMENT TRANSLATION, WHICH I JUST THINK IS

19  SOMETHING THE COURT HAS TO CONSIDER WITH REGARD TO THESE DATES.

20        BECAUSE IF WE DO, INDEED, HAVE ALL OF THESE DEFENSE

21  TRANSLATIONS BY SEPTEMBER, THAT CAN'T BE THE SAME DATE THAT WE

22  ARE GOING TO HAVE DETERMINED WHAT -- WHICH TRANSLATIONS ARE

23  AGREED UPON BY THE PARTIES.

24        SO IT'S -- IT'S KIND OF ANOTHER LAYER.

25        **THE COURT:**  WELL, THAT'S WHY I WANTED TO HAVE THE

```
1    DATE IN SEPTEMBER SO THAT YOU WOULD HAVE SOME TIME TO SORT THAT

2    OUT, AND THEN YOU WOULD HAVE A -- YOU WOULD HAVE THE MOTIONS

3    THAT THE -- CONCERNING THE ACCURACY OF THE TRANSCRIPTS, AND THAT

4    WAS GOING TO BE ON A PRETRIAL CONFERENCE IN DECEMBER.  SO THAT

5    WAS -- TWO OR THREE MONTHS LATER.

6              MS. RAFFANTI:  WELL, YOUR HONOR, I THINK THAT DOES

7    HAVE TO BE ONE OF THE LATER MOTIONS ABOUT THE TRANSLATIONS.  AND

8    IF WE ARE MOVING THE TRIAL DATE -- IF THE COURT DOES -- DECIDED

9    TO MOVE THE TRIAL DATE A BIT OUT, PROBABLY WE CAN DO THAT IF WE

10   GET ALL OF OUR DEFENSE TRANSLATIONS BY SEPTEMBER, WHICH I STILL

11   THINK IS A BIT OPTIMISTIC.

12             THE COURT:  OKAY.  ALL RIGHT.

13             MR. GOLDROSEN, DO YOU HAVE MORE POINTS?

14             MR. GOLDROSEN:  NO, I'M READY TO SUBMIT.

15             THE COURT:  MR. SABELLI, DO YOU HAVE MORE POINTS?

16             MR. SWANSON:  YOUR HONOR, MR. SWANSON.  I HAVE TWO --

17   TWO POINTS I'D LIKE TO RAISE.  ONE REGARDING SOMETHING THE COURT

18   POINTED OUT EARLIER AND ONE REGARDING THE COURT'S ORDER.

19             WHEN THE COURT WAS TALKING ABOUT SCHEDULING OF TRIAL,

20   IT INDICATED THAT BASED ON ITS OWN EXPERIENCE, THERE ARE A

21   CERTAIN NUMBER OF PEOPLE WHO WILL PLEAD AND COOPERATE IN A CASE.

22             MY CONCERN ABOUT THE COURT HAVING MADE THAT

23   STATEMENT -- AND I JUST WOULD LIKE TO ADDRESS IT NOW HERE -- IS

24   THAT WAS BASED ON THE COURT'S EXPERIENCE, I UNDERSTAND.

25             THE COURT:  WELL, EVERY ONE --
```

1                  (SIMULTANEOUS COLLOQUY.)

2          **MR. SWANSON:**  BUT, YOUR HONOR, IF I COULD, WHAT I

3   DON'T WANT TO HAVE HAPPEN TODAY IS TO HAVE THIS GROUP OF

4   DEFENDANTS WALK AWAY FROM THIS COURTROOM WITH THE IMPRESSION

5   THAT THERE IS SOME REASON THAT THEY SHOULD BE THINKING THAT

6   THOSE AMONG THEM ARE COOPERATING.

7          WE'RE WORKING IN A SITUATION, YOUR HONOR, WHERE THESE

8   DEFENDANTS ARE HOUSED CLOSELY TOGETHER.  THEY ARE SHARING THE

9   SAME DISCOVERY MATERIAL.  WE HAVE A ROOM WHERE THEY CAN GO IN

10  AND OUT.  THE LAST THING I WOULD WANT TO HAVE HAPPEN IS THE

11  COURT'S COMMENT, WHICH I UNDERSTAND TO BE A HISTORICAL COMMENT

12  BASED ON ITS EXPERIENCE, TO BE MISINTERPRETED SOMEHOW TO CAUSE

13  INDIVIDUALS TO FEEL THAT THERE COULD BE REASONS FOR THEM TO BE

14  SUSPICIOUS WHICH WILL MAKE OUR ABILITY TO WORK WITH ALL OF OUR

15  CLIENTS MORE DIFFICULT.

16         **THE COURT:**  OKAY.  JUST A SECOND.  HOLD ON.  I WANT

17  TO COMMENT ON THAT BECAUSE -- YES, WHAT I SAID HERE, WHICH MAY

18  DEPEND IN PART ON HOW MANY PLEAD OUT.

19         **MR. SWANSON:**  VERY WELL.

20         **THE COURT:**  YOU COULD PLEAD OUT WITHOUT COOPERATING.

21  AND THAT -- IN MY LAST CASE, THAT'S WHAT ALL THE DEFENDANTS DID.

22  NOBODY COOPERATED.  I THINK I'M RIGHT ABOUT THAT, BUT THEY DID

23  PLEAD OUT.  SO BY THE -- BY THE TIME THE TRIAL CAME AROUND,

24  THERE WAS JUST ONE PERSON LEFT.  AND I HAD ALL THESE ELABORATE

25  PLANS FOR STAGE TRIALS, AND THEN IT TURNED OUT THAT BEHIND THE

1   SCENES, THEY WERE WORKING OUT PLEA AGREEMENTS.  NOT COOPERATION

2   AGREEMENTS, BUT JUST PLAIN OLD PLEA AGREEMENTS WITHOUT

3   COOPERATION.

4          THAT'S WHAT I -- I HAD -- THAT'S WHAT I MEANT TO SAY

5   HERE.  LOOKING BACK AT IT, I DID NOT SAY "COOPERATION."  EARLIER

6   I TALKED ABOUT COOPERATION IN CONNECTION WITH THE -- THE MOTION

7   FOR STUFF THAT'S UNDER SEAL.

8          **MR. SWANSON:**  BUT I APPRECIATE THE COURT'S POINT, AND

9   I MAY HAVE MISHEARD.  OBVIOUSLY, PEOPLE MAY PLEAD.  THAT DOESN'T

10  MEAN THAT PEOPLE ARE THEREFORE COOPERATING.

11         **THE COURT:**  I WOULD EXPECT THAT IN THE VAST MAJORITY

12  OF CASES, PEOPLE WILL PLEAD WITHOUT COOPERATING IF THEY PLEAD AT

13  ALL.

14         **MR. SWANSON:**  YOUR HONOR, THE OTHER THING REGARDING

15  PLEAS THAT I JUST WANTED TO BRING UP WAS THE VERY LAST PARAGRAPH

16  OF THE COURT'S PROPOSED ORDER.

17         **THE COURT:**  SURE.

18         **MR. SWANSON:**  I UNDERSTAND THAT THE COURT HAS

19  CONCERNS ABOUT LATE -- LATE PLEAS IN THIS CASE.  THE COURT'S

20  TALKING ABOUT ONCE THE JURY IS SWORN.  AND WHAT I WOULD ASK THE

21  COURT DO, NOTWITHSTANDING ITS EXPERIENCE IN OTHER MATTERS WHERE

22  IT WAS -- I THINK UNHAPPY WITH THE WAY THAT THINGS UNFOLDED, IS

23  AT LEAST LEAVE THE DOOR OPEN, IF IT'S AN APPROPRIATE FACTUAL

24  SETTING OR IF IT'S AN APPROPRIATE SITUATION FOR A C1C AGREEMENT

25  OR FOR A SITUATION WHERE EVEN SOMEONE COULD QUALIFY FOR

1   ACCEPTANCE FOR A NUMBER OF REASONS, THAT THAT BE POSSIBLE.

2            I APPRECIATE THE COURT'S SENDING THE SIGNAL IT

3   DOESN'T WANT TO SEE C1C'S.  IT DOESN'T WANT TO SEE REQUESTS FOR

4   FULL ACCEPTANCE, BUT TO PRECLUDE THAT BY ORDER AT THIS POINT

5   WITHOUT HAVING THE FACTUAL SITUATION BEFORE IT, I THINK WOULD BE

6   UNFORTUNATE.  AND I'D ASK THAT THE COURT COMMUNICATE THAT

7   DISAPPROVAL AND DISCOURAGEMENT WITHOUT COMPLETELY PROHIBITING

8   IT.

9            THAT'S ALL I HAD, YOUR HONOR.

10           **THE COURT:**  THANK YOU.

11           **MR. TABACK:**  YOUR HONOR, IF I MAY, HARRIS TABACK FOR

12  MR. GUEVARA.  MS. MOORMAN, I THOUGHT, SPOKE VERY ELOQUENTLY WITH

13  REGARDS TO HER POSITION AND HER CLIENT'S.  I WANT THE COURT TO

14  KNOW I JOIN IN MS. MOORMAN'S COMMENTS ON BEHALF OF MY CLIENT

15  MR. GUEVARA IN TERMS OF SETTING A TRIAL DATE.  IF THE COURT'S

16  SET ON SETTING A DATE AT THIS POINT, AND WE ALL THINK YOU ARE,

17  OBVIOUSLY, THAT IT'S MORE REALISTIC FOR ME TO FEEL THAT I COULD

18  COME AS CLOSE TO POSSIBLE IN A TIME FRAME THAT HOPEFULLY THE

19  COURT WOULD ACCEPT TO SATISFY MR. GUEVARA'S SIXTH AMENDMENT

20  RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL IN A VERY COMPLEX,

21  SERIOUS CASE.

22           I WOULD FEEL MORE COMFORTABLE WITH A TRIAL DATE IN

23  LATE SUMMER OR SUMMER OF -010 OR EARLY FALL OF -010.  I THINK

24  THE COURT'S JANUARY DATE, FRANKLY, MAKES IT VERY DIFFICULT FOR

25  ME TO SATISFY MR. GUEVARA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE

1    ASSISTANCE OF COUNSEL NO MATTER HOW HARD I WORK BETWEEN NOW AND

2    JANUARY.

3            SO I JUST WANT THE COURT TO KNOW IT'S MORE THAN

4    MS. MOORMAN THAT IS PUSHING THAT POSITION.

5            ADDITIONALLY, I WANT TO REITERATE THAT, LIKE HER

6    CLIENT, I FIND MYSELF IN A SITUATION WHERE A LARGE AMOUNT OF THE

7    GOVERNMENT'S CASE AGAINST MR. GUEVARA'S ROLE IN THE CHARGED

8    CONSPIRACY, NOT SO MUCH THE ACTUAL CHARGED COUNTS OF CONDUCT

9    THAT JUST RELATES TO HIM, BUT HIS ROLE IN THE CHARGED

10   CONSPIRACY -- AND BY THE WAY, YOU KNOW, THE CHARGED CONSPIRACY

11   HERE BEING THIS MS 13 GANG, THE GOVERNMENT HAS HAD, YOU KNOW,

12   MANY, MANY, MANY MONTHS PRIOR TO THIS INDICTMENT AND OTHER CASES

13   IT HAD BEEN INVOLVED IN TO LEARN HOW THIS -- THIS ORGANIZATION

14   WORKS, THE GENESIS OF IT, HOW IT OPERATES, BOTH HERE AND

15   INTERNATIONALLY.

16           I DON'T THINK THERE IS ANY LAWYER ON THE DEFENSE TEAM

17   THAT HAS BEEN IN -- HAD AN MS 13 CASE CHARGED HERE IN FEDERAL

18   COURT.  TO MOST OF US, THIS IS A NEW ENTERPRISE THAT WE'RE

19   TRYING TO -- TO GRAB A HOLD OF AS WELL, AND WE'RE TRYING TO

20   FIGURE OUT HOW TO BEST DEFEND AGAINST THAT RICO ALLEGATION.  AND

21   THAT'S PART OF WHAT WE'RE DOING.

22           AND IN TERMS OF THE SERIOUSNESS, AS MS. MOORMAN

23   POINTED OUT, THIS -- FOR MOST OF OUR CLIENTS, THIS IS A LIFE

24   CASE.  AND IF YOU AND US ARE SIX OR NINE MONTHS AWAY FROM

25   AGREEING ON A TRIAL DATE, I WOULD RESPECTFULLY SUGGEST TO YOUR

```
1    HONOR IN THE WORLD OF THINGS, THAT THAT CLOSENESS SHOULD BE

2    ENOUGH TO SATISFY THE COURT THAT YOU HAVE A GROUP OF AGGRESSIVE

3    DEFENSE LAWYERS WHO TAKE THEIR ROLE SERIOUSLY, WHO LOSE SLEEP

4    EVERY NIGHT WORRYING ABOUT THE FATE OF THEIR CLIENTS, FIGURING

5    OUT WAYS WE'RE GOING TO TRY TO DEFEND THIS CASE.

6             NOBODY IS JUST SORT OF NOT THINKING ABOUT THIS AND

7    IGNORING IT AND NOT DOING ANY WORK ON IT.  BUT IF WE'RE THAT

8    CLOSE, I WOULD HOPE THAT THE TIE WOULD ESSENTIALLY GO TO THE

9    RUNNER IN THAT SITUATION AND YOU WOULD GIVE US AS DEFENSE

10   LAWYERS THAT KNOW WHAT WE'RE DOING, HAVE AN IDEA OF HOW WE GOT

11   TO GO ABOUT DEFENDING THIS, KNOW APPROXIMATELY WHAT'S A

12   REALISTIC TRIAL DATE, THAT YOU WOULD DEFER TO THAT AND THAT IT

13   WOULD BE CLOSE ENOUGH TO SATISFY YOU THAT WE'RE GOING TO GET

14   THIS CASE RESOLVED OR TRIED.

15             THANK YOU.

16        THE COURT:  THANK YOU.

17             MR. SABELLI.

18        MR. SABELLI:  YOUR HONOR, I HAVE TWO VERY SPECIFIC

19   REQUESTS.

20        THE COURT:  OKAY.

21        MR. SABELLI:  ONE OF WHICH I MADE EARLIER AND ANOTHER

22   NEW REQUEST.  THE REQUEST I MADE EARLIER WAS THAT IF THE COURT

23   DOES ISSUE A SCHEDULING ORDER -- AND IT IS MY UNDERSTANDING THE

24   COURT INTENDS TO DO SO NEXT WEEK.  IF THE COURT DOES DO SO, I

25   WOULD ASK THAT THE GOVERNMENT'S DISCOVERY CUTOFF REQUIRE THE
```

1   GOVERNMENT AFTER APRIL 30TH TO SHOW GOOD CAUSE AS TO WHY

2   SOMETHING WAS NOT RECEIVED BY THE GOVERNMENT BEFORE APRIL 30TH,

3   AND THAT WOULD REQUIRE NOT ONLY AN AFFIRMATION BY MR. LEUNG --

4   AND AGAIN THERE'S NO ALLEGATION HERE OF BAD FAITH AT ALL.  I

5   UNDERSTAND THERE'S A LOT OF WORK AND A LOT OF THINGS PILING UP.

6   BUT HE WOULD HAVE TO AFFIRM NOT ONLY THAT -- THAT THE GOVERNMENT

7   RECEIVED THIS INFORMATION OR ACQUIRED IT AFTER APRIL 30TH, BUT

8   THAT THERE WAS GOOD CAUSE WHY IT WAS NOT ACQUIRED OR IN THE

9   GOVERNMENT'S POSSESSION BEFORE APRIL 30TH.

10           AND IN THAT RESPECT, I THINK IT'S IMPORTANT THAT THE

11  COURT, IN ITS SCHEDULING ORDER, REQUIRE THE GOVERNMENT TO MAKE

12  REQUESTS OF INFORMATION THAT IT BELIEVES WILL BE NECESSARY FOR

13  ITS CASE-IN-CHIEF IMMEDIATELY.

14           **THE COURT:**  SAY THAT AGAIN.

15           **MR. SABELLI:**  THAT THE COURT SHOULD REQUIRE THE

16  GOVERNMENT TO MAKE REQUESTS FOR INFORMATION FROM ANY AGENCIES

17  THAT IT CONSIDERS NOT TO BE GOVERNMENT AGENCIES FOR THE PURPOSES

18  OF RULE 16 OR BRADY -- THAT THE COURT REQUIRE THE GOVERNMENT TO

19  MAKE REQUESTS FOR NECESSARY INFORMATION IMMEDIATELY IF THE

20  GOVERNMENT INTENDS TO USE THAT INFORMATION IN ITS CASE-IN-CHIEF.

21           OTHERWISE, WE RUN INTO A PROBLEM.  AND THIS IS THE

22  HOLE THAT I TRIED TO INDICATE BEFORE, IN WHICH WE DON'T RECEIVE

23  FUNDAMENTAL INFORMATION, WHETHER IT'S THE KIND OF INFORMATION

24  MR. BRASS REFERRED TO OR NOT, BECAUSE THERE ARE OTHER KINDS OF

25  FUNDAMENTAL INFORMATION IN THIS CASE -- THAT WE DON'T RECEIVE IT

1    UNTIL LATER, AUGUST, SEPTEMBER, NOVEMBER, BECAUSE THE GOVERNMENT

2    HASN'T REQUESTED IT YET.

3              WHAT I DON'T WANT TO SEE IS A SITUATION IN WHICH THE

4    GOVERNMENT GIVES US SOMETHING IN NOVEMBER AND FILES ALONG WITH

5    THAT AN AFFIRMATION THAT IT DIDN'T RECEIVE IT UNTIL NOVEMBER,

6    AND THE ONLY REASON IT DIDN'T RECEIVE IT UNTIL NOVEMBER WAS THAT

7    THE GOVERNMENT DIDN'T ASK FOR IT.

8              THAT DOESN'T SERVE THE PURPOSES OF THIS COURT'S

9    ORDER.  IT DOES NOT -- DOES NOT ALLOW US TO CONSTITUTIONALLY

10   DEFEND OUR CLIENTS, AND IT DOESN'T MAKE ANY SENSE.  IF THE

11   GOVERNMENT KNOWS WHAT ITS CASE-IN-CHIEF IS GOING TO LOOK LIKE --

12   AND THEY SHOULD KNOW IT BY NOW FOR THE REASONS MR. TABACK JUST

13   ARTICULATED -- THEY ALSO KNOW WHAT THEY NEED TO ASK FOR.

14             AND SO I WOULD ASK VERY SPECIFICALLY THAT IF AND WHEN

15   THE COURT ISSUES A FINAL SCHEDULING ORDER, AS IT INTENDS TO DO,

16   I BELIEVE, THAT THAT SPECIFIC REQUIREMENT BE PLACED ON THE

17   GOVERNMENT.  OTHERWISE, THERE'S A HOLE SO BIG ANYTHING CAN WALK

18   THROUGH IT EXCEPT FOR I.C.E. AND F.B.I.  THE COURT'S BEEN VERY

19   SPECIFIC ABOUT I.C.E. AND F.B.I., BUT EVERYTHING ELSE IS

20   AMENABLE TO BEING TURNED OVER AFTER APRIL 30TH UNDER THIS

21   PRESENT ORDER.

22             AND I THINK THAT THAT'S A PROBLEM FOR THE DEFENSE

23   PREPARATION.  AND I WOULD ASK THE COURT TO ADDRESS IT IN THE WAY

24   THAT I JUST ARTICULATED.

25             **MR. LEUNG:**  YOUR HONOR, WE WOULD STRENUOUSLY OBJECT

1   TO THAT.  WE THINK THAT -- FRANKLY, I WILL SAY AGAIN, THE

2   GOVERNMENT HAS BEEN COMPLYING WITH ITS RULE 16 OBLIGATIONS.  WE

3   INTEND TO CONTINUE TO DOING SO, INCLUSION -- INCLUSIONS OF A FOR

4   CAUSE -- FOR GOOD CAUSE REQUIREMENT THAT NEEDS BE ADDRESSED VIA

5   AFFIRMATION IS SIMPLY TANTAMOUNT TO ALLEGING BAD FAITH ON THE

6   PART OF THE GOVERNMENT.

7            **MR. SABELLI:**  I'M NOT ALLEGING -- I WANT TO BE CLEAR

8   ABOUT THAT.

9                    (SIMULTANEOUS COLLOQUY.)

10           **MR. LEUNG:**  SECOND, YOUR HONOR, IT'S NOT -- IF WE

11  KNEW EXACTLY WHAT WE NEEDED NOW, WE WOULD HAVE MADE THE

12  INQUIRIES ALREADY.  WE WOULD HAVE GOTTEN THE STUFF.  AND WE

13  WOULD HAVE PRODUCED IT.

14           WHAT MR. SABELLI WOULD PROPOSE WOULD BE TO HAVE THE

15  GOVERNMENT ESSENTIALLY BE OMNISCIENT AT THIS POINT AND BE ABLE

16  TO FORETELL EVERY POSSIBLE PIECE OF EVIDENCE THAT IT WOULD

17  PRESENT AT TRIAL AND TO SEEK THAT EVIDENCE IMMEDIATELY

18  REGARDLESS OF WHAT THAT EVIDENCE MAY BE, REGARDLESS OF WHAT THE

19  ISSUES MAY BE.  AND WE THINK THAT IS SIMPLY AN UNREASONABLE

20  BURDEN, AND THAT CANNOT BE COMPLIED WITH.

21           **MR. SABELLI:**  TO BE CLEAR, YOUR HONOR, I'M NOT SAYING

22  THAT SOMETHING THE GOVERNMENT LEARNS ABOUT IN NOVEMBER THEY

23  CAN'T ASK ABOUT IN NOVEMBER.  OF COURSE, THEY CAN.

24           WHAT I'M SAYING IS THIS:  RIGHT NOW, THEY KNOW THAT

25  THEY WANT TO INCLUDE A CERTAIN INCIDENT, WHETHER IT'S A -- A

1  STEALING OF A CAR OR A MURDER.  THEY NEED TO ASK -- THEY KNOW --

2  THOSE THINGS ARE LISTED NOW IN THE INDICTMENT AS OVERT ACTS.

3  THE GOVERNMENT UNDERSTANDS FULL WELL THAT THAT WOULD BE PART OF

4  THE GOVERNMENT'S CASE-IN-CHIEF.  THEY NEED TO ASK FOR ALL THE

5  INFORMATION RELATED TO THOSE THINGS NOW.

6           IF THE GOVERNMENT LATER, AFTER APRIL 30TH, LEARNS OF

7  SOMETHING NEW, OKAY.  IF THEY LEARN ABOUT IT AFTER APRIL 30TH,

8  THAT'S A DIFFERENT SORRY.  BUT WHAT THEY KNOW RIGHT NOW AS PART

9  OF THEIR CASE-IN-CHIEF THEY SHOULD BE ASKING ABOUT RIGHT NOW.

10 OTHERWISE, YOUR HONOR, ALL WE'RE GOING TO GET IS TO GET A

11 LIMITED AMOUNT OF MATERIAL, AND THE OTHER MATERIAL, WHICH COULD

12 BE EVEN MORE VOLUMINOUS THAN WHAT WE HAVE ALREADY, MIGHT NOT

13 COME UNTIL MUCH LATER.

14      **MR. LEUNG:**  THE GOVERNMENT DOESN'T KNOW WHAT IT

15 DOESN'T KNOW.  THAT'S THE BOTTOM LINE.

16                (LAUGHTER.)

17      **MR. SABELLI:**  I'M NOT SURE THAT MR. WILSON (SIC)

18 WANTS TO BE EQUATING HIMSELF WITH THAT PERSON RIGHT NOW.

19      **MR. LEUNG:**  CERTAINLY NOT IN THIS DISTRICT.

20      **MR. SABELLI:**  THE GOVERNMENT DOES KNOW WHAT IT DOES

21 KNOW, WHICH IS WHAT THEY WANT TO DO IN THEIR CASE-IN-CHIEF.

22 SURE THERE MIGHT BE A PIECE HERE AND A PIECE THERE THAT THEY

23 WANT TO ADD LATER.  BUT THEY KNOW REALLY WHAT THEIR

24 CASE-IN-CHIEF IS GOING TO BE.  AND IF THEY KNOW IT, THEY SHOULD

25 BE ASKING THESE OTHER AGENCIES ABOUT THAT INFORMATION.

```
 1              IF THEY DON'T ASK FOR IT NOW, THEY SHOULDN'T BE

 2    ALLOWED TO ASK FOR IT SIX MONTHS FROM NOW BECAUSE THE PARTIES

 3    THAT ARE PREJUDICED BUT THAT ARE NOT THE GOVERNMENT BUT THE

 4    DEFENSE.

 5              MR. LEUNG:  WELL, PREJUDICE COULD BE ADDRESSED IN

 6    MANY DIFFERENT WAYS OTHER THAN PRECLUSION.

 7              THE COURT:  WELL, LOOK, I'LL THINK ABOUT THIS I --

 8    OKAY.

 9              WHAT ELSE WOULD ANYONE LIKE TO BRING UP?

10              MR. SABELLI:  YES, YOUR HONOR, I HAVE ANOTHER REQUEST

11    THAT APPLIES TO THIS ORDER AND THAT IS THIS:  I INTEND TO START

12    PREPARING THE MOTION THAT WE DISCUSSED EARLIER WITH RESPECT TO

13    "AGENCY."  I WOULD ASK THAT AS A PART OF THAT PREPARATION, THAT

14    THE GOVERNMENT BE REQUIRED TO LIST FOR US WHAT AGENCIES IT

15    CONSIDERS TO BE GOVERNMENT AGENCIES SO THAT I DO NOT HAVE TO

16    ADDRESS THOSE.  OTHERWISE, I'M JUST GUESSING AND I'M GUESSING.

17    THEY'VE GOT ALL THE DISCOVERY.  WE DON'T HAVE IT YET.  I WOULD

18    JUST BE GUESSING AS TO WHAT AGENCIES ARE INVOLVED HERE AND WHAT

19    AGENCIES THE GOVERNMENT IS GOING TO INCLUDE OR NOT INCLUDE.

20              OF COURSE, I'M GOING TO BRIEF IN A GENERAL LEVEL --

21    ON A GENERAL LEVEL WHAT I BELIEVE OR WHAT WE BELIEVE IS THE

22    PROPER DEFINITION OF "AGENCY" OR "POSSESSION."  BUT APPLYING IT

23    TO SPECIFIC AGENCIES IS AN ENTIRELY DIFFERENT ENTERPRISE.  AND

24    IF THAT'S THE CASE, I WOULD ASK THAT THE GOVERNMENT BE REQUIRED

25    TO LIST FOR US WITHIN ONE WEEK ALL OF THE AGENCIES THAT IT
```

1    CONSIDERS TO BE GOVERNMENT AGENCIES FOR RULE 16 AND <u>BRADY</u>

2    PURPOSES OR SEPARATELY, IF THE GOVERNMENT VIEWS THEM SEPARATELY,

3    SO THAT WE CAN ADDRESS THOSE IN A VERY CONCRETE AND EFFECTIVE

4    WAY AND START MOVING FORWARD WITH THE <u>BRADY</u> REVIEW AND AN

5    UNDERSTANDING OF WHAT WE'RE GETTING UNDER RULE 16.

6              **THE COURT:**  WHAT DO YOU SAY, MR. LEUNG?

7              **MR. LEUNG:**  I HAVE NO PROBLEMS WITH THAT, YOUR HONOR.

8              **THE COURT:**  HOW DO YOU PROPOSE TO COMMUNICATE THAT TO

9    THE DEFENSE?

10             **MR. LEUNG:**  WE COULD FILE SOMETHING WITH THE COURT, A

11   NOTICE OF --

12             **THE COURT:**  WHEN CAN YOU DO THAT?

13             **MR. LEUNG:**  WE COULD DO THAT IN A WEEK, YOUR HONOR.

14   ACTUALLY, I'M GOING TO BE GONE IN A WEEK.

15             **THE COURT:**  HOW ABOUT DOING IT BY FRIDAY?  CAN YOU DO

16   IT BY FRIDAY?

17             **MR. LEUNG:**  I THINK WE COULD DO IT BY FRIDAY, YOUR

18   HONOR.

19             **THE COURT:**  ALL RIGHT.  PLEASE TRY TO DO THAT.

20             **MR. SABELLI:**  I COULD SEE THE COURT IS CONTEMPLATIVE

21   RIGHT NOW.  I HAVE ISSUES THAT ARE RELEVANT TO MY CLIENT AND MY

22   CLIENT ONLY.  I'M NOT SURE THE COURT WANTS TO HOLD EVERYBODY

23   BACK FOR THAT PURPOSE OR WHETHER WE CAN HAVE A SEPARATE HEARING.

24   THEY HAVE TO DO WITH SCHEDULING AS WELL WITH RESPECT TO MR. --

25             **THE COURT:**  WELL, LET'S GO AHEAD.  I WANT IT -- IT

```
 1   MAY BEAR ON SOMETHING THAT OTHER PEOPLE WOULD LIKE TO COMMENT ON

 2   SO --

 3              MR. SABELLI:  YOUR HONOR --

 4         THE COURT:  WHAT ARE YOUR ISSUES?

 5              MR. SABELLI:  WHAT IS THE COURT'S VIEW -- IT'S

 6   UNCLEAR TO ME FROM READING THE ORDER, AND PERHAPS I'VE MISSED

 7   SOMETHING 'CAUSE I'VE JUST READ IT HERE IN COURT WHEN WE CAME TO

 8   COURT.

 9              WHAT IS THE COURT'S VIEW OF THE APPLICATION OF THIS

10   ORDER TO MR. HERRERA?  ARE MR. GRELE AND I TO FOLLOW THE SAME

11   FILING DEADLINES AS THE REST OF COUNSEL IN THIS CASE?

12              THE COURT:  WELL, IT'S A TWO-PART ANSWER.

13              PART ONE IS RIGHT NOW, THERE IS NO DEATH NOTICE AND

14   THERE MAY NEVER BE A DEATH NOTICE.  AND IF THAT WERE TO OCCUR,

15   YOU WOULD GO THE TRIAL ON THE SAME SCHEDULE AS EVERYBODY ELSE,

16   SO YOU GOT TO MEET ALL THE OTHER DATES JUST LIKE EVERYBODY ELSE.

17              HOWEVER, IF THE GOVERNMENT GIVES A STATUTORY NOTICE

18   THAT THEY'RE GOING TO SEEK THE DEATH PENALTY, THEN YOU'RE GOING

19   TO GET A LOT MORE TIME AND WE WILL GO OFF ON A DIFFERENT TRACK

20   FROM THAT POINT ON.

21              SO I -- I WANT TO HOLD YOU TO THE SCHEDULE UNTIL THAT

22   NOTICE COMES.  IT MAY NEVER COME.

23              MR. SABELLI:  TO UNDERSTAND --

24         THE COURT:  SO YOU GOT TO MEET ALL THESE DEADLINES

25   UNTIL THE NOTICE COMES.  AND AT THAT POINT, WE'RE GOING TO HAVE
```

```
 1   A NEW CONVERSATION.  I'M GOING TO GIVE YOU AND MR. GRELE A LOT

 2   MORE TIME BECAUSE IT'S A DIFFERENT SET OF PROBLEMS, AND YOUR

 3   TRIAL WILL BE AFTER THE MAIN TRIAL.  IT WON'T BE WITH THE OTHER

 4   TRIAL.

 5            MR. SABELLI:  I UNDERSTAND, YOUR HONOR.  AND I MAY

 6   FILE A WRITTEN OBJECTION TO THAT, BUT I HAVE A SPECIFIC POINT.

 7            THE COURT:  HOW CAN YOU OBJECT TO THAT?

 8            MR. SABELLI:  I CAN OBJECT TO IT, YOUR HONOR, BECAUSE

 9   THE NATURE OF OUR WORK MAY BE VERY DIFFERENT THAN THE NATURE OF

10   THE WORK THAT EVERYONE ELSE IS DOING IN TERMS OF MITIGATION.

11            THE COURT:  ALL RIGHT.  YOU'RE GOING --

12            MR. SABELLI:  I KNOW I'M STANDING UP HERE LAST.  I

13   KNOW IT'S THE END OF THE AFTERNOON.

14            THE COURT:  AND I WANT TO SAY FILING OBJECTIONS IS

15   NOT THE WAY -- YOU SHOULD BRING A MOTION.

16            MR. SABELLI:  I WILL.

17            THE COURT:  AND, PLEASE, EVERYONE ELSE, LISTEN TO

18   THIS PART.

19            LAWYERS ARE GOOD AT STANDING UP AND EXPRESSING

20   CONCERNS OR MAYBE SLIPPING A QUOTE CONCERN INTO THEIR PAPERS

21   WITHOUT MAKING A FORMAL MOTION.  THEN YEARS GO BY.  THEN

22   SOMETHING HAPPENS.  AND THEN THEY SAY, WELL, WE OBJECTED -- IN

23   THE NINTH CIRCUIT, WE OBJECTED TO THAT.  WELL, WHERE DID YOU

24   OBJECT?  WELL, YOU KNOW, WE EXPRESSED A CONCERN AND THE JUDGE

25   DIDN'T GRANT IT, SO IT MUST HAVE BEEN OVERRULED, AND IT'S NOT
```

1   VERY -- SOMETIMES IT IS CLEAR, AND OFTEN IT IS NOT CLEAR.

2            SO TO BE FAIR TO ME AND WITH THE -- YOU KNOW HOW MANY

3   DOCUMENTS WERE IN THE FORT CASE?  THERE WERE 2000 DOCUMENTS.

4            TO BE FAIR TO ME, I NEED TO HAVE A CONCRETE, SPECIFIC

5   MOTION THAT I COULD EITHER SAY "YES" OR "NO."  AND THEN IF I GET

6   REVERSED ON THAT, FINE.  I THINK JUST FILING AN OBJECTION IS --

7   THAT'S WHY I WANT YOU TO BRING A MOTION ON THIS.

8            **MR. SABELLI:**  I COMPLETELY AGREE, YOUR HONOR.  AND

9   IT'S NOT MY PRACTICE TO REFRAIN FROM FILING MOTIONS.  I'LL FILE

10  A MOTION TO THAT EFFECT --

11           **THE COURT:**  GOOD.

12           **MR. SABELLI:**  -- WHEN I CONSULT WITH MR. GRELE.

13           SECONDLY, YOUR HONOR, I WANTED TO POINT OUT TO THE

14  COURT, MR. GRELE AND I ARE IN A CAPITAL CASE THAT BEGINS IN THE

15  LAST WEEK OF AUGUST IN MODESTO THAT WE ANTICIPATE --

16           **THE COURT:**  OF THIS YEAR.

17           **MR. SABELLI:**  CORRECT.  AND THERE'S A WHOLE SERIES OF

18  DATES IN THIS PROPOSED SCHEDULING ORDER THAT WOULD BE IMPOSSIBLE

19  FOR MR. GRELE AND I TO MEET BECAUSE THEY OVERLAP COMPLETELY WITH

20  THE CAPITAL MURDER TRIAL IN MODESTO.  AND WE -- WE ARE GOING TO

21  BEGIN THAT TRIAL THE LAST WEEK OF AUGUST.

22           **THE COURT:**  IS THAT THAT ONE INVOLVING THE

23  HIGHWAY PATROLMAN?

24           **MR. SABELLI:**  YES, IT IS, YOUR HONOR.

25           **THE COURT:**  I'VE TALKED TO THAT JUDGE BEFORE BECAUSE

1    OF MR. GRELE.  SO THAT CASE -- THAT CASE NEVER -- WAS TO GO.  IT

2    GOT KICKED OVER --

3            **MR. SABELLI:**  HIS -- HIS COCOUNSEL IN THAT CASE

4    BECAME VERY ILL AND THAT IS WHY I AM NOW COCOUNSEL IN THAT CASE.

5            **THE COURT:**  WELL, ALL RIGHT.  WHAT ARE THE DATES HERE

6    THAT ARE PROBLEMATIC?

7            **MR. SABELLI:**  YOUR HONOR, WE ANTICIPATE -- WELL, OUR

8    SCHEDULED TRIAL DATE BEGINS IN THE LAST WEEK OF AUGUST, AND WE

9    ANTICIPATE THAT TRIAL TO LAST TWO MONTHS.  ALL OF SEPTEMBER, AND

10   ALL OF OCTOBER AND INTO THE BEGINNING OF NOVEMBER.  THAT IS THE

11   AMOUNT OF TIME THAT HAS BEEN SET ASIDE BY THE COURT.

12           **THE COURT:**  SO LAST WEEK OF AUGUST?

13           **MR. SABELLI:**  CORRECT.  THAT IS THE --

14           **THE COURT:**  UNTIL WHEN?

15           **MR. SABELLI:**  UNTIL THE END OF OCTOBER, FIRST WEEK OF

16   NOVEMBER.  WE'VE ASKED -- BEEN TOLD IT'S GOING TO BE A TWO-MONTH

17   TRIAL, SO ASSUMING THERE'S A DELIBERATION AFTER THE END OF THE

18   TRIAL, SECOND WEEK OF NOVEMBER, END OF THE FIRST WEEK OF

19   NOVEMBER.

20           **THE COURT:**  WHAT IS THE NAME OF THAT JUDGE AGAIN?

21           **MR. SABELLI:**  HURL JOHNSON, THE HONORABLE HURL

22   JOHNSON.

23           **THE COURT:**  ALL RIGHT.

24           **MR. SABELLI:**  H-U-R-L.

25           **THE COURT:**  GOT IT.  OKAY.  WELL, OKAY.  I'VE GOT YET

---

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1    ANOTHER PROBLEM, THEN.  ALL RIGHT?

2              **MR. SABELLI:**  THAT'S ALL I HAVE, YOUR HONOR.

3              **THE COURT:**  CAN I ASK ALL OF THE DEFENSE LAWYERS --

4    NOT THAT WE WILL DO THIS, BUT I WANT TO THINK ABOUT DOING IT

5    'CAUSE MS. MOORMAN SAID I SHOULD, ARE THERE ANY DATES IN 2010

6    THAT YOU HAVE TERRIBLE TRIAL -- FIRM TRIAL COMMITMENTS FOR THAT?

7              YOU KNOW, THE LAST THING I WANT TO DO IS CHANGE A

8    DATE, AND THEN MR. BABCOCK SAY, OH, WELL, THAT WON'T WORK

9    BECAUSE -- HE SHOULD HAVE STAYED WITH THE EARLIER DATE.

10             SO WHAT -- DO ANY OF YOU HAVE DATES THAT WILL NOT --

11   YOU KNOW, LIKE A CRIMINAL TRIAL THAT IS A FIRM DATE THAT'S SET

12   IN 2010.

13             MR. BABCOCK?

14             **MR. BABCOCK:**  WELL, AT THE COURT'S INVITATION, I

15   DON'T HAVE ANY FIRM TRIAL DATES IN 2010, YOUR HONOR.  I DO HAVE

16   SOME OTHER DATES.  I'D ASK THE COURT NOT TO SCHEDULE THIS CASE

17   DURING THE SUMMER OF 2010.

18             **THE COURT:**  WELL, THAT'S WHEN MS. MOORMAN WANTED IT

19   SCHEDULED.

20             **MR. BABCOCK:**  SEPTEMBER 6TH.  THAT'S THE DATE I'D

21   REQUEST.  IT'S THE FIRST MONDAY IN SEPTEMBER 2010.

22             **THE COURT:**  THAT'S SO FAR AWAY.

23             ALL RIGHT.  DOES ANYONE ELSE -- DOES ANYBODY -- ALL

24   RIGHT.  I UNDERSTAND YOUR POINT.

25             ANYONE WANT TO TELL ME THAT THEY GOT A TRIAL

 1    COMMITMENT IN 2010?   OKAY.   NO ONE'S SPEAKING UP.

 2                ANY OTHER POINTS TO BE RAISED TODAY?

 3                **MR. LEUNG:**   TWO HOUSEKEEPING MATTERS, YOUR HONOR.

 4                **THE COURT:**   YES, PLEASE GO AHEAD.

 5                **MR. LEUNG:**   THE GOVERNMENT WOULD ASK THAT TIME BE

 6    EXCLUDED IN THE INTEREST OF JUSTICE TO ENSURE THE EFFECTIVE

 7    PREPARATION OF COUNSEL.   I DON'T KNOW, HOWEVER, UNTIL WHEN WE

 8    WOULD EXCLUDE TIME.   SINCE THAT IS STILL UP IN THE AIR.

 9                PERHAPS WE SHOULD SET -- PERHAPS WE --

10                **THE COURT:**   NO, I DON'T WANT TO SET ANY MORE

11    STATUS -- STATUSES IN THIS THING.

12                **MS. MOORMAN:**   YOUR HONOR, MAYBE AN APPROPRIATE

13    PROPOSITION IN THAT REGARD WOULD BE -- THE CASE HAS BEEN DEEMED

14    COMPLEX PREVIOUSLY.   IS THAT TRUE?

15                **MR. LEUNG:**   TRUE.

16                **MS. MOORMAN:**   THAT ON BEHALF OF MY CLIENT, AND I

17    BELIEVE -- INVITE ANYBODY WHO DOESN'T AGREE TO THIS JUST TO STEP

18    FORWARD -- THAT WE WOULD AGREE TO THE EXCLUSION OF TIME UNTIL

19    THE -- NEXT FILING DATE THAT YOU IMPOSE.   SOUNDS LIKE WE'RE

20    GOING TO IMPOSE SOME FILING DATES.

21                **THE COURT:**   WE'RE GOING TO HAVE SOME FILING DATES

22    BEFORE THIS.   BUT WHY DON'T WE EXCLUDE TIME UP TO JUNE 30, AND

23    I'M GOING TO HAVE SOME DATES FOR FILINGS WELL BEFORE THAT.   I --

24    AT LEAST BY SOME MOTIONS SOON.

25                **MS. MOORMAN:**   OKAY.   SOMEONE MAY HAVE AN OBJECTION.

```
1              THE COURT:  BUT I'M CERTAIN THAT WE WILL BE BACK HERE

2    BEFORE JUNE 30TH.  THAT'S WHY I PICKED THAT DATE.

3              SO WILL THAT WORK?  CAN WE ALL AGREE ON JUNE 30TH?

4              MULTIPLE COUNSEL:  YES, YOUR HONOR.

5              MR. LEUNG:  AND THE SECOND HOUSEKEEPING MATTER.

6              THE COURT:  WELL, I GOT TO MAKE A FINDING.

7              FOR THE REASONS STATED, NAMELY THE NEED FOR THE

8    LAWYERS TO WORK HARD ON THIS CASE AND COME UP TO SPEED AND

9    COMPLEXITY AND THE TIME BETWEEN TODAY AND JUNE 30 WILL BE

10   EXCLUDED.  THE COURT FINDS THE NEED FOR THE CONTINUANCE

11   OUTWEIGHS THE NEED OF THE PUBLIC AND THE DEFENDANT'S SPEEDY

12   TRIAL.

13             ALL RIGHT.  WHAT ELSE?

14             MR. LEUNG:  SECOND ISSUE, YOUR HONOR.  OH SORRY.

15             MS. RAFFANTI:  SORRY, YOUR HONOR.

16             MR. LEUNG:  IT CONCERNS A CONSOLIDATION MOTION FOR A

17   RELATED CASE NOTICE THAT WAS FILED INVOLVING THE DEFENDANT

18   WALTER PALMA.  YOUR HONOR HAS ANOTHER CASE, A GUN CASE, I THINK,

19   CAPTIONED 08CR565.

20             THE COURT:  YEAH.  IS MR. PALMA IN THIS CASE?

21             MR. BRASS:  HE IS, YOUR HONOR.

22             THE COURT:  I THOUGHT HE WAS.

23             MR. LEUNG:  YES, YOUR HONOR.  AND WE WOULD

24   RESPECTFULLY --

25             THE COURT:  MR. BRASS, YOU REPRESENT HIM?
```

```
1              MR. BRASS:  YES, I DO.

2              THE COURT:  SO THERE'S YET ANOTHER CASE.

3              MR. BRASS:  THERE IS.  WE HAD MOTIONS IN THAT CASE,

4   YOUR HONOR, BEFORE YOUR HONOR.

5              THE COURT:  RIGHT.  SO WHAT ARE YOU ASKING ME TO DO?

6              MR. LEUNG:  WE WOULD ASK THAT THAT EARLIER CASE BE

7   CONSOLIDATED -- THAT THE TWO CASES BE CONSOLIDATED AND PUT ON

8   THE SAME TRACK ESSENTIALLY.

9              THE COURT:  WHAT DO YOU SAY?

10             MR. BRASS:  NO OBJECTION TO THAT, YOUR HONOR.

11             THE COURT:  ALL RIGHT.  "CONSOLIDATED."  THAT'S THE

12  WORD?  NOT "RELATED" BUT THE "CONSOLIDATED."

13             MR. BRASS:  THAT'S THE WORD MR. LEUNG CHOSE.

14             MR. LEUNG:  THAT'S THE WORD THAT I CHOSE, BUT MY

15  IDIOM MAY BE NOT SPECIFIC TO THE NORTHERN DISTRICT.

16             MS. MOORMAN:  IT'S OKAY.

17             MR. LEUNG:  IT'S OKAY?

18             THE COURT:  WHAT THAT MEANS IS IF IT'S CONSOLIDATED,

19  THEN IT'S NOT JUST RELATED BUT IT WILL BE SUBJECT TO THE SAME

20  SCHEDULE.

21             MR. LEUNG:  THAT'S FINE, YOUR HONOR.

22             MR. BRASS:  THAT'S FINE.  THANK YOU, YOUR HONOR.

23             MR. LEUNG:  THANK YOU.

24             THE COURT:  OKAY.  I THINK WE'RE AT THE END.  I'LL

25  GIVE IT ONE LAST OPPORTUNITY.
```

```
 1                 OKAY.  MS. --

 2          MS. RAFFANTI:  RAFFANTI.  YOUR HONOR, ONE LAST THING.

 3   I THINK IT WOULD BE EFFICIENT AND A GOOD USE OF THIS TIME TO LET

 4   ALL THE DEFENDANTS KNOW THAT WE HAVE JUST GOTTEN THIS ORDER

 5   WHERE THEY WILL ALL BE GETTING MP3 PLAYERS, THAT EACH DEFENDANT

 6   IS GOING TO HAVE FOUR OF THEM ACCESSIBLE TO THEM IN THE JAIL.

 7   AND THE PLAYERS WILL HAVE ALL OF THE CONVERSATIONS THAT WERE

 8   RECORDED IN THIS CASE ON THEM.

 9                 WE'RE ALSO GOING TO HAVE A LOG THAT WILL -- THESE

10   CONVERSATIONS -- THEY WILL SHOW THE NUMBER OF THE CONVERSATION

11   ON YOUR PLAYER WHEN YOU -- WHEN YOU USE IT AS YOU LISTEN TO

12   THEM.  AND THERE WILL BE A LOG, AND EACH ONE OF YOUR ATTORNEYS'

13   CAN TALK TO YOU FURTHER ABOUT IT, BUT WE THINK THAT PROBABLY YOU

14   WILL HAVE THEM WITHIN A WEEK.

15                 IS THAT RIGHT?  OKAY.

16                 THANK YOU, YOUR HONOR.

17          THE COURT:  I WANT TO THANK YOU FOR YOUR HELP IN

18   ORGANIZING THAT, AND ALSO MR. MOORE -- IS HE HERE TODAY?

19                 MR. MOORE, THANK YOU.

20          MS. RAFFANTI:  OUR HERO.

21          THE COURT:  YOU'RE A HELP IN GETTING THOUGH MP3

22   PLAYERS AND MS. JEANE DEKELVER CUT THROUGH THE RED TAPE, AND SO

23   THAT WAS A GOOD MOVE.  AND THEY -- ALL OF THE DEFENDANTS WILL BE

24   ABLE TO LISTEN TO THOSE CONVERSATIONS.

25          MR. BELL:  YOUR HONOR, I REALIZE YOU SAID ONE MORE,
```

1    BUT WE HAVEN'T TALKED ABOUT MR. CASTILLO'S SITUATION.

2              **THE COURT:**  ALL RIGHT.  LET'S GO AHEAD.

3              **MR. BELL:**  I WOULD LIKE TO SEE THE COURT'S FINAL

4    DECISION IN TERMS OF SCHEDULING ORDER BEFORE I DISCUSS IT WITH

5    MY CLIENT AND LET YOU KNOW.

6              **THE COURT:**  ALL RIGHT.  WELL, THAT'S FAIR.

7              **MR. BELL:**  AND --

8              **THE COURT:**  SO IF I GET ONE OUT EITHER THIS WEEK OR

9    EARLY NEXT WEEK, THAT WOULD PUT UP TO -- SO WHEN -- WHAT CAN

10   YOU -- COULD YOU LET ME KNOW ABOUT THE 30TH?  MARCH 30.

11             **MR. BELL:**  YOUR ORDER WOULD BE OUT ON WHAT DAY?

12             **THE COURT:**  WELL, IT WILL EITHER BE -- PROBABLY

13   FRIDAY OF THIS WEEK OR EARLY NEXT WEEK.

14             **MR. BELL:**  THAT'D BE FINE.

15             **THE COURT:**  ALL RIGHT.  MARCH 30, MR. BELL.

16        ALL RIGHT.

17             **MR. BELL:**  THANK YOU VERY MUCH, YOUR HONOR.

18             **THE COURT:**  ALL RIGHT.  I THINK WE'RE AT THE END, SO

19   UNLESS SOMEONE IS RAISING THEIR HAND, WE'RE GOING TO DECLARE THE

20   HEARING OVER.  AND SEE YOU AT A DATE TO BE SCHEDULED IN THE --

21   IN THE ORDER.

22        ALL RIGHT.  THANK YOU.

23             **MULTIPLE COUNSEL:**  THANK YOU, YOUR HONOR.

24         (PROCEEDINGS WERE CONCLUDED AT 4:15 P.M.)

25                    --OOO--

---

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1

2

3                    **CERTIFICATE OF REPORTER**

4          I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED

5    STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

6    THAT THE FOREGOING PROCEEDINGS IN CR08-00730WHA, USA V. CERNA,

7    ET AL., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER,

8    AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO

9    TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

10   RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF

11   FILING.

12          THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

13   TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

14   COURT FILE.

15

16   _____ *Raynee H. Mercado*

17          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

18                TUESDAY, MAY 12, 2009

19

20

21

22

23

24

25