BRENDAN CONROY CSBN 114726
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, CA 94103
(415) 565-9600

For Defendant MAURICIO URIAS

| United States of America | No. CR 08-0730 WHA |
|---|---|
| Plaintiff | **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND TRAVERSE SEARCH WARRANT** |
| vs | |
| Ivan Cerna, et al. | Date: January 5, 2009<br>Time: 2:00pm<br>Location: 19th Floor, Courtroom 9 |
| Defendant | |
| | Before the Honorable William Alsup<br>United States District Judge |

# NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE AND TRAVERSE SEARCH WARRANT

TO: Joseph P. Russoniello, United States Attorney and W.S. Wilson Leung, Assistant United States Attorney.

PLEASE TAKE NOTICE that on January 5, 2009 at 2:00pm, or as soon thereafter as the matter may be heard in the above-entitled Court, the defendant herein will move for an order suppressing all evidence obtained as a result of the unlawful search warrant served in this case.

Mauricio Urias, by and through his counsel, pursuant to the Fourth Amendment to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statues, case law and local rules, hereby moves this Court to enter an Order suppressing all evidence and fruits of evidence that resulted from the government's search of 3__ F___V___ Drive,

1  South San Francisco, CA on October 22, 2008.[1] This motion is based on the memorandum of
2  points and authorities and exhibits served and filed herewith, on such supplemental declarations,
3  affidavits, memorandum of points and authorities as may hereafter be filed with the court, on all
4  the papers and records on file in this action, and on such oral and documentary evidence as may be
5  presented at the hearing of the motion.
6  Dated: _____

_____
BRENDAN CONROY
Attorney for Defendant
Mauricio Urias

---

[1] Address redacted pursuant to Fed. R. Crim. P. 49.1.

**TABLE OF CONTENTS**

I.  Introduction and Statement of the Case ........................................................................4

II. Argument……………………………………………………………………………..6

    A.  Under *People v.* Franks, a search warrant must be voided, and evidence therefrom suppressed if the warrant affidavit contains intentional or reckless false statements or omissions without which the affidavit lacks probable cause.............6

    *B.*  The warrant affidavit, purged of falsities and supplemented by omissions, does not support a finding of probable cause, as the remaining information is irredeemably stale...................................................................................................................9

    C.  A substantial preliminary showing has been made that the affidavit's false statements and omissions were misleading in a manner which affected the probable cause determination..................................................................................12

III. Conclusion......................................................................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND STATEMENT OF THE CASE**

The instant case was filed after an investigation by federal law enforcement agents of alleged members of the San Francisco, California and Richmond, California based segments of "La Mara Salvatrucha," or "MS-13." Among the charges lodged, the government alleges that Mr. Urias was involved in eight separate narcotics transactions.

As a result of the investigation, on October 20, 2008, the government applied for a warrant to search, among other locations, 3__ F___V___ Drive, South San Francisco, CA, alleged to be Mr. Urias's residence.[2]

In the affidavit accompanying the warrant application, Immigrations and Customs Enforcement (ICE) Special Agent Christopher Merendino offered broad statements about the general behavior of both MS-13 gang members and drug dealers.[3] Merendino stated that the locations would include "evidence, fruits, and instrumentalities" of a variety of crimes because "individuals engaged in organized criminal activity – such as the conduct of the MS-13 racketeering enterprise – typically keep and maintain records, documents, weapons, and other 'tools of their trade' . . . for long periods, if not permanently, . . . simply because such items are needed to conduct their criminal enterprise."[4]

As to drug related activity, Merendino noted that "I know drug dealers often keep detailed ledgers and records of their narcotics transactions for long periods because, among other reasons, drug trafficking is often conducted on credit with deals involving many different suppliers and buyers at the same time, and because most drug dealers do not realize the inculpatory nature of

---

2   Attached as Exhibit A.
3   Exhibit A, PP. 18-20 (SW0107-108).
4   Exhibit A, P. 20 (SW0108).

4
**Motion to Suppress Evidence**

1  such records."[5]

2  Subsequent to the boilerplate allegations about gang and drug dealing activities,

3  Merendino included four brief paragraphs suggesting probable cause to search 3__ F___V___

4  Drive.[6]

5  Paragraph 38 states that 3__ F___V___ Drive matches Urias's DMV records, and that

6  Urias was observed leaving the residence on September 15, 2008, but alleges no illegal activity

7  associated with the home.

8  Paragraph 39 describes a monitored narcotics transaction on January 22, 2008, where

9  Urias is alleged to have traveled directly from  3__ F___V___ Drive to the sale, and then later

10  returned with the informant to 3__ F___V___ Drive to retrieve suspected cocaine from under a

11  floorboard at the residence.

12  Paragraph 40 recounts a telephone call between ICE informant CS-2 and Urias on

13  October 15, 2008. Merendino presented the conversation as follows:

14  > According to CS-2, during this call, Urias stated that he was still in "business," i.e.,
> distributing narcotics, and, when CS-2 asked whether CS-2 could refer an "uncle,"
15  > i.e., a customer, to Urias, Urias stated that business was "very good" and that CS-
> 2's "uncle" should call him."[7]

16  The defense translation of the recorded phone call revealed a much different

17  conversation than that described in Merendino's affidavit.[8] Merendino both omitted significant

18  context and held out statements as direct quotes, when in fact they were, at best, nothing more than

19  speculation of the government's informant.

20  Specifically, the affidavit asserts that Urias stated he was still in "business." During

21  the phone call, neither CS-2 nor Urias utter the word "business." CS-2 asks Urias whether he is

---

5  *Id* at P. 20 (SW0108).
6  Exhibit A, PP. 38-41 (SW0115-116).
7  Exhibit A, P. 40 (SW0115).
8  Attached as Exhibit B.

still working as a bartender, and Urias responds that he still is, and the pay remains the same.[9] Furthermore, the affidavit indicated that Urias stated that business was "very good." Again, the translation shows that at no point did Urias utter the word business, nor the phrase "very good."

Prior to the phone call, the most recent evidence of narcotics activity at 378 Forest View alleged in the affidavit by the government dates to January 22, 2008, ten months prior to October 22, 2008, the intended execution date of the search warrant. The non-existent quotes are the underpinning of the informant's conclusions alleged in the affidavit. Those conclusions are the only evidence the government offered of illegal activity at 378 Forest View in the 10 months since the informant's prior contact with that address.

Paragraph 41 returns to the familiar boilerplate expectations of discovering ledgers and fruits of criminal enterprise, as well as the expectation that the under floor storage will still be present.

## II.

## ARGUMENT

### A. Under *People v. Franks*, a search warrant must be voided, and evidence therefrom suppressed if the warrant affidavit contains intentional or reckless false statements or omissions without which the affidavit lacks probable cause.

The United States Supreme Court has held that to insure that the independent reviewing magistrate's function has been properly and adequately performed, the lower courts must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates* (1983) 462 U.S. 213, 239. Pursuant to this function, trial courts must determine whether the issuing magistrate was provided with an accurate and substantial basis for concluding that a search of the particular location would in fact uncover evidence of a crime.

---

9   Exhibit B, p.4.

In *Franks v. Delaware*, the United States Supreme Court recognized that the sufficiency of an affidavit offered in support of an application for a search warrant may be subject to a sub-facial challenge.[10] The Court set forth the standards against which such an attack should be measured:

> In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.*, at p. 155-156.

Urias is entitled to a *Franks* evidentiary hearing to challenge the facial validity of a warrant upon making a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements and/or omissions, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.[11]

To meet this initial requirement, "[c]lear proof of deliberate or reckless omission is not required. Such proof is reserved for the evidentiary hearing. At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading."[12] In fact, where a substantial preliminary showing is made, "the court *must* hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause."[13]

Although *Franks* specifically addressed only the question of false statements made in affidavits, allegations of material omissions likewise provide a basis of attack to be measured by

---

10 *Franks v. Delaware* (1978) 438 U.S. 154
11 *United States v. Stanert* (9th Cir. 1985) 762 F.2d 775, 799.
12 *Id.*, at p. 781; s*ee also United States v. Kyllo* (9th Cir. 1994) 37 F.3d 526, 530.
13 *United States v. Burnes* (9th Cir. 1987) 816 F.2d 1354, 1357 (emphasis added); *see also United States v. Johns* (9th Cir. 1988) 851 F.2d 1131, 133; *United States v. Stanert, supra,* 762 F.2d at p. 780.

the same standard.[14] "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Id.*, at p. 781. Hence, whether judicial deception is brought about by material false statements or material omissions is of no consequence.[15]

Here, the affidavit contains quotes that are simply not present in a recorded phone call. While Urias mentions being employed, and offering to help CS-2's uncle find a job, at no point does he state that "business" is "very good," as directly quoted in the affidavit. Additionally, the government omits material context, namely that Urias states he is employed as a bartender, his occupation prior to his arrest on October 22, 2008.

The phone call was made from the ICE offices in San Francisco, in the presence of ICE Special Agents, and was recorded with clarity. There is no practical reason why the affidavit presented to the magistrate did not reflect the exact content of the call.

The assertion, with included quotes, that Urias stated that "business" is "very good" is directly misleading to the magistrate. If the government believed that Urias's job as a bartender was either a cover or a euphemism for narcotics trafficking, that information must be put before the magistrate, not carefully excised and replaced with broader conclusions dressed up as direct quotes.

In total, the assertions made in Paragraph 40 of the affidavit were not supported by the conversation they purported to represent, and served to mislead the magistrate about Urias's narcotics activity, and specifically activity at 3__ F___V___ Drive.

**B. The warrant affidavit, purged of falsities and supplemented by omissions, does not support a finding of probable cause, as the remaining information is irredeemably stale.**

For a search warrant to be valid, it must be supported by an affidavit establishing probable

---

14 *See United States v. Stanert, supra,* 762 F.2d at p. 780-781.
15 *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 973.

**Motion to Suppress Evidence**

1  cause to believe that the items sought will be found in the specific place to be searched.[16]  Probable

2  cause has been interpreted by the courts to require facts that would allow a person of reasonable

3  caution to believe that the evidence of a crime sought by the warrant will be found in the stated

4  place.[17] Mere suspicion, common rumor, or even strong reason to suspect are not enough to

5  establish probable cause.[18] Rather, courts use a "totality of the circumstances" approach to

6  determine if there is a fair probability that evidence of a crime will be found in the targeted

7  locale.[19] Moreover, "[s]ufficient information must be presented to the magistrate to allow that

8  official to determine probable cause; his action cannot be a mere ratification of the bare

9  conclusions of others."[20] Thus, the effect of the misrepresentations and omissions on the existence

10 of probable cause is considered cumulatively.[21]

**1. Ten-month-old information about eight individual drug sales is too stale to justify the issuance of the warrant**

The information on which the search warrant is based may not be stale. There "must be reasonably grounds for believing that the immediate search for which authority is sought may be fruitful."[22] Furthermore, "[t]he most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy."[23] While an important factor, "[t]he mere lapse of a substantial amount of time . . . does not control the issue of staleness."[24] Instead, the court must balance "the particular facts of the case and nature of the criminal activity and property sought."[25]

In *United States v. Greany*, the 9th Circuit considered a search of the premises of a

---

16 *United States v. Stanert, supra,* 762 F.2d at 778.
17 *Zercher v. Stanford Daily* (1978) 436 U.S. 547; *see also Illinois v. Gates* (1983) 462 U.S. 213.
18 *Henry v. United States* (1959) 361 U.S. 98, 101.
19 *Illinois v. Gates, supra,* at p. 238.
20 *Id.,* at p. 239.
21 *Stanert, supra,* at p. 782.
22 *Durham v. U.S.* (9th Cir. 1968) 403 F.2d 190, 193.
23         *Id.*
24 *United States v. Baker* (D. Hi. 1995) 888 F. Supp. 1521, 1527.
25 *Id.*

9
**Motion to Suppress Evidence**

1  marijuana growing operation that an informant had helped to construct.[26] In upholding the search,

2  the court held that "[w]hen the evidence sought is of an ongoing criminal business of a necessarily

3  long-term nature . . . rather than that of a completed act[,]" two year old information about the

4  operation was sufficient justification.[27]

5        In *United States* v. *Angulo-Lopez*, the court considered a several week delay between

6  information of ongoing drug trafficking and the execution of the warrant.[28] The court, in upholding

7  the search, held that it was acceptable for probable cause to "continue for several weeks, if not

8  months, of the last reported instances of suspect activity."[29]

9        Here, the affidavit alleges no criminal activity tied to the house in the ten months prior to

10  the execution of the search warrant application. Without evidence of ongoing criminal activity at

11  the home, the search falls well outside the accepted boundaries in *Angulo-Lopez*.

12        **2. The affidavit alleges insufficient evidence that 3__ F___V___ Drive was associated with ongoing criminal activity: only a single drug transaction, ten months past,**

13        **occurring away from the home.**

14        In Paragraph 15, Sections (e)(i-ix) of the affidavit, Merendino describes in some detail the

15  drug transactions alleged in association with the case. While Urias is alleged to have been involved

16  in eight of the transactions, only one has any association with the home. Only the final transaction,

17  January 22, 2008, mentions Urias going or coming from the home around the time of an alleged

18  drug transaction.[30] The affidavit does not allege any sort of processing or production of narcotics,

19  nor any type of ongoing activity that would bring it in line with *Greany*. Instead, the affidavit only

20  alleges drug transactions initiated at the behest of the government through their informant. At no

21  point does the affidavit allege any knowledge on the government or the informant's part of a

22  conspiracy to sell or process drugs involving the home at 3__ F___V___ Drive. There is no

---

26 *United States v. Greany* (9th Cir. 1991) 929 F.2d 523.
27 *Id*. at 525.
28 *United States v. Angulo-Lopez* (9th Cir. 1986) 791 F.2d 1394.
29 *Id.* at 1399.
30 Exhibit A, Paragraph 15(e)(ix) (SW0104).

1  evidence of ongoing activity to square this case with *Greany*, nor a delay of only several months to

2  reconcile the instant case with *Angulo-Lopez*.

3        Instead, the affidavit offers seven discrete transactions that have no association with 3__

4  F___V___ Drive other than it being the home of one of the alleged participants, and one single,

5  final transaction, ten months before the submission of the affidavit, that connected cocaine to the

6  house. Even bolstered by a good deal of boilerplate about ledgers and other records, items which

7  the informant never reported present in the home or at any of the sales, there is not nearly enough

8  evidence to connect the home at 3__ F___V___ Drive with any ongoing criminal enterprise that

9  would justify a search warrant based on ten month old information.

10

11        **3. Paragraph 40's account of the phone call between CS-2 and Urias does not suffice as evidence of ongoing criminal activity at 3__ F___V___ Drive.**

12

13        Here, the October 15, 2008 phone call from CS-2 to Urias, erroneously represented to the

14  court as proof of an ongoing drug conspiracy, is the only evidence the government offered to

15  connect 3__ F___V___ Drive with illegal activity in the ten months subsequent to CS-2's last

16  contact with the property. While the government does assert that Urias was seen leaving the

17  residence a month prior to the affidavit, there is no suggestion of narcotics activity attached to the

18  property or Urias himself at that time.[31]

19        It is apparent from the government's inducement of a call from CS-2 to Urias that the

20  government understood the need to shore up a ten month gap in information that would be, at best,

21  difficult to explain to the magistrate. A single phone call, especially one presented without context

22  and said to include non-existent quotes, cannot overcome the ten month staleness of the informant's

23  only previous contact with 3__ F___V___ Drive.

24

25  31 Exhibit A, Paragraph 38 (SW0115).

**Motion to Suppress Evidence**

### C. A substantial preliminary showing has been made that the affidavit's false statements and omissions were misleading in a manner which affected the probable cause determination.

Where a defendant makes a substantial preliminary showing that the affidavit contained deliberate or recklessly false statements or omissions necessary to the magistrate's finding of probable cause, the Fourth Amendment requires that he or she is entitled to an evidentiary hearing.[32] Clear proof is not required in order to obtain a *Franks* hearing.[33]

The defendant has listed the false statements in and omissions from the search. The defense has shown that because of the affiant's material omissions, the magistrate was not aware of relevant and crucial facts. These facts would have invalidated the government's assertions about the conversation between the informant and Urias, and eliminated a timely connection between the government's investigation and 3__ F___V___ Drive. In short, the affiant insured the affidavit was misleading and it mislead the magistrate in a manner critical to the probable cause determination.

## IV.
## CONCLUSION

The warrant affidavit contained intentional falsities and material omissions without which the warrant lacks probable cause. Therefore, defendant respectfully requests that this court afford him a *Franks* hearing, traverse the search warrant, and grant the motion to suppress evidence.

Dated: _____                    Respectfully submitted,

                                                 _____
                                                 BRENDAN CONROY
                                                 Attorney for the Defendant

---

[32] *Franks v. Delaware, supra,* 438 U.S. at p. 155-156; *United States v. Putney* (9th Cir. 1990) 906 F.2d 477, 478.
[33] *United States v. Stanert, supra,* 762 F.2d at p. 781.