SETH P. CHAZIN (CSBN 133777)
Attorney at Law
Law Offices of Seth P. Chazin
1164 Solano Avenue
Albany, CA 94706
Telephone: (510) 507 - 8100
Facsimile: (510) 525 – 0087

Attorney for Defendant
RODIL NOCHEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>V.<br><br>RODIL NOCHEZ, ET AL.,<br><br>DEFENDANTS. | Case No.: CR-08-0730-WHA<br><br>REPLY TO GOVERNEMNT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT<br><br>Date:  January 19, 2010<br>Time:  2:00 p.m.<br>Court:  Hon. William H. Alsup |

## INTRODUCTION

Defendant Nochez has moved this Court to dismiss the instant charges for outrageous government conduct.  Outrageous government conduct occurs when the "[g]overnment's conduct [is] so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).  This language indicates that a court hearing such a motion should focus on the conduct of the government.  Unlike an entrapment defense, the court's focus should not be on the conduct of the defendant during the commission of the alleged crimes.  In that vein, the Ninth Circuit laid out a five-factor test to

determine whether the government's conduct was permissible. *United States v. Bonanno*, 852 F.2d 434, 437-38 (9th Cir. 1988).  Should the government fail to satisfy any one of those factors, the charges must be dismissed for outrageous government conduct.  *Id*.  As discussed below, the government's agents in this case failed to satisfy all five of the factors.  Furthermore, as shown below, the government in this case schemed to turn an otherwise law-abiding citizen with a steady job into a thief, thus creating crime, harming and endangering private citizens, and engaging in conduct "so grossly shocking and so outrageous as to violate the universal sense of justice." *Smith* at 897.  Consequently, this Court should dismiss the charges against Mr. Nochez.

**ARGUMENT**

### I.  THERE IS NO EVIDENCE THAT DEFENDANT NOCHEZ WAS ENGAGED IN THE THEFT OF VEHICLES PRIOR TO CI-1218'S INTERVENTION.

In its response, the government repeatedly asserts that Mr. Nochez was involved in stealing cars before being approached by CI-1218.  However, the government furnishes no evidence to support this claim other than an oblique reference by agent Merendino citing a hearsay statement made by CI-1218 in his declaration served with the government's response.  Mr. Nochez has never been convicted, accused, nor even suspected of stealing a vehicle prior to the bringing of the instant indictment.  In fact, Mr. Nochez has no prior criminal convictions whatsoever.

In an attempt to mislead the Court, the government erroneously argues that Mr. Nochez must have been in the business of stealing cars prior to CI-1218's involvement because he allegedly stated he could steal several cars a night at the January 9, 2007 vehicle buy.  This argument defies reason. The government has alleged in counts 50-52 and 56-60 that Mr. Nochez assisted CI-1218 with the sales of stolen vehicles as early as November of 2006, three months

before the statements in question were made. *See* Ex. A (ICE Report 242). The statements made in the January 9, 2007 transcript thus shed no light on whether Mr. Nochez was stealing cars prior to CI-1218's involvement. The government has failed to demonstrate that Mr. Nochez had ever engaged in stealing cars prior to the government's introduction of CI-1218 as a government agent.

CI-1218, on the other hand, has a lengthy rap sheet with a variety of convictions and many months served in jail. In fact, CI-1218 was convicted of auto theft in November of 2007, for which he was sentenced to six months in jail and three years probation. *See* Declaration of Jake Bergman ¶4. The theft of the vehicle occurred in October 2007, only nine months after CI-1218 cooperated with ICE's investigation of Mr. Nochez. *Id*. CI-1218 was also arrested for vehicle theft in July 2006. *Id*. The charges in that theft were dismissed. *Id*.

Perhaps more shocking, CI-1218 was arrested for those two auto thefts while working for the government in this case. CI-1218's service as a government agent in this case dates back to at least April of 2006. *See* Ex. B (summary of recorded call between CI-1218 and defendant Sosa). His two arrests for auto theft, therefore, occurred during his tenure as a government agent. Nonetheless, the government felt it appropriate to turn him loose on the streets, encouraging others to steal cars or deliver stolen vehicles while committing auto thefts himself. This government conduct caused great harm to innocent victims who lost the use of their cars for many months.

The government's sole basis for alleging that Mr. Nochez was involved in stealing cars prior to the government's involvement is a bald claim made by CI-1218, an unreliable informant with a rich criminal past. Absent any other reliable information, the Court should find that Mr. Nochez has no history of stealing vehicles.

## II. CI-1218 FURNISHED THE NECESSARY EXPERTISE TO STEAL CARS AND PARTICIPATED IN THE ALLEGED THEFTS.

The government has stated that CI-1218 did not participate in any of the thefts. This is not true. By his own admission in the body wire recording from January 9, 2007, CI-1218 was involved in at least one of the thefts. At the January 9, 2007 vehicle buy, the government recording reveals a conversation regarding a confrontation that occurred when one of the vehicle theft victims confronted the thieves. *See* Declaration of Christine Y. Wong, Ex. B at 10, Government's Response to Defendant's Motion to Dismiss Indictment for Outrageous Government Conduct. In referring to this confrontation, CI-1218 refers to a woman confronting him at the scene of a theft: "Fucking bitch, I think she even got up without a skirt." *Id*. The statement and the surrounding conversation evidence that CI-1218 was in fact present during and participated in the theft of at least one of the vehicles. Consequently, the government cannot claim that CI-1218 merely provided buyers for defendants Nochez and Gonazalez.

Furthermore, CI-1218 provided the necessary expertise to steal the vehicles. In the government's transcript of the January 9, 2007 vehicle buy, CI-1218 states that "we only have one (1) switch and we're going to use it for all of them." Wong Decl., Ex. A at 4. The term "switch" apparently refers to an ignition switch that was used to steal several of the cars allegedly sold to the undercovers. *See* Bergman Decl. ¶5. This statement indicates that CI-1218 used the ignition switch to steal the cars that were later sold to the undercovers. The statement also shows that, at the time, CI-1218 intended to participate in more vehicle thefts. Thus CI-1218, an experienced car thief with a prior conviction and two arrests for auto theft, provided the key tool, and thus the expertise as well, to steal cars.

CI-1218's involvement in the thefts is also illustrated by statements he made relating to license plates. In the same recording mentioned above, CI-1218 states "Hey uh, give me the plates . . . Possibly to bring another one from over there." Wong Decl., Ex. A at 4. In that statement, CI-1218 is apparently requesting a license plate that he can affix to another stolen car that he intends to deliver. Yet again, CI-1218's expertise proved vital to the commission of the alleged crimes.

This scenario is not one where a government agent merely afforded a defendant the opportunity to commit a crime. This is a case where the government actively participated in the theft of vehicles from innocent private citizens.

### III. THE GOVERNMENT'S CONDUCT WAS IMPERMISSIBLE BECAUSE IT DID NOT SATISFY ANY, AND CERTAINLY NOT EACH AND EVERY, OF THE FIVE *BONNANO* FACTORS.

The government argues that the actions of CI-1218 and the government agents were appropriate because they were not impermissible under the factors set forth in *United States v. Bonanno*, 803 F.2d 422 (9th Cir. 1988). This interpretation is incorrect. In fact, the government's conduct failed to satisfy any of the five factors laid out in *Bonanno*. Furthermore, it is important to note that if any single factor is not satisfied, then the charges must be dismissed for outrageous government conduct. *Id*. at 437-38.

The first factor requires that the defendant "already [be] involved in a continuing series of similar crimes." *Id.* Here, the government has failed to show that Mr. Nochez was engaged in a series of thefts or exportations of vehicles. On the contrary, Mr. Nochez has never been accused of either crime in the past, nor has he ever been convicted of any crime whatsoever. The government's sole basis for alleging that Mr. Nochez had any prior involvement in stealing cars is furnished by a hearsay statement from CI-1218, a career

criminal who only months earlier had auto theft charges against him mysteriously dismissed. There is not a shred of reliable evidence that defendant Nochez was already involved in the theft or exportation of stolen vehicles at the time CI-1218 first approached Nochez and Gonazalez to assist him. In fact, it was CI-1218 who invited himself into Mr. Nochez's home as a tenant so that he could enlist Mr. Nochez's assistance in delivering stolen vehicles to the undercovers. *See* Bergman Decl. ¶3.

The second factor requires that "the agent's participation was not necessary to enable the defendants to continue the criminal activity." *Id.* Here, CI-1218 and the undercover agents' participation in the thefts and delivery of the vehicles for exporation was crucial. Absent CI-1218's auto theft expertise and ignition switch tool, the thefts could not have occurred. Mr. Nochez had no experience in stealing cars and there is no evidence indicating that he had any expertise whatsoever in stealing or exporting cars. Furthermore, prior to CI-1218's intervention, there is no evidence that Mr. Nochez engaged in any continuing criminal activity. Finally, the government concedes that the sole customer for the stolen cars was the government itself; the government cites no other means by which Mr. Nochez did or could have sold or delivered stolen cars for exportation. *See e.g.*, *Greene v. United States*, 454 F.2d 783, 787 (9th Cir. 1972) (holding that outrageous government conduct occurred, in part, because the undercover government agent was the sole purchaser of the defendants' bootleg whiskey).

The third factor requires that "the agent used artifice and strategem to ferret out criminal activity." *Id*. Here, there was no evidence of this criminal activity prior to CI-1218's involvement. Therefore it would be impossible for the government to "ferret out criminal activity," since no such activity existed.

The fourth factor requires that "the agent infiltrated a criminal organization." *Id*. Again, Mr. Nochez was not involved in any criminal activity or organization, therefore there was no organization to infiltrate. There is no evidence whatsoever that Nochez's involvement was anything more than his acquiescence to the solicitations and requests of CI-1218.

The fifth factor requires that "the agent approached persons already contemplating or engaged in criminal activity." *Id*. With no prior convictions and no evidence to the contrary, it is clear that Mr. Nochez was not engaged in nor even contemplating criminal activity. In fact, it was CI-1218 who earned Mr. Nochez's trust, inserted himself into Mr. Nochez's life and suggested renting a room in his home, which he did. *See* Bergman Decl. ¶3. Absent CI-1218's, and thus the government's, intervention, there is no evidence to support the assertion that Mr. Nochez would have ever contemplated stealing or delivering vehicles for exportation.

Again, if the government has failed to satisfy any single one of these factors, the Court is obligated to dismiss the charges for outrageous conduct. Here, the government failed to satisfy *all five*.

In its response, the government notes that "the commission of equally serious offenses by an undercover agent as a part of the investigation" is permissible. Government's Response p. 4 (citing *United States v. Stenberg*, 803 F.2d 422, 430 (9th Cir. 1986)). The *Stenberg* case involved the shooting of protected wildlife by an undercover agent. *Id*. The court denied a motion to dismiss for outrageous conduct because the defendants "were actively engaged in other similar criminal activity." *Id*. The court went on to say "But for the evidence of that additional unlawful activity we might well have reached a different

result . . . [u]nder different circumstances such active criminal behavior by a government agent might well result in our upholding a defense of outrageous government conduct." *Id.* The facts cited in *Stenberg*, a case that predates *Bonanno*, are inapplicable here.

Mr. Nochez was not "actively engaged in other similar criminal activity." On the contrary, Mr. Nochez has no prior history of vehicle theft or exportation of stolen vehicles and there is no evidence to suggest he was engaged in these activities prior to the introduction of CI-1218 and the actions of the government agents. The circumstances here are precisely the type of "different circumstances" *Stenberg* cites; one where the government creates crime and criminals.

Pursuant to the ruling in *Bonanno*, the government has acted impermissibly and a motion to dismiss for outrageous conduct must be granted.

**IV.  THE COURT MUST HEAR THE MOTION TO DISMISS FOR OUTRAGEOUS CONDUCT BEFORE TRIAL TO CONFORM TO ESTABLISHED NINTH CIRCUIT PRECEDENT**

The Court has asked the defense to address whether the instant motion should be heard after trial. Ninth Circuit precedent dictates that the hearing must occur before trial. *See United States v. Mausali*, __ F.3d 721, 2010 U.S. App. LEXIS 626 (9th Cir. January 11, 2010). In *Mausali*, the Ninth Circuit Court of Appeals held that "Outrageous government conduct claims involve alleged ''defects in the institution of the prosecution` itself,' questions of law that the court should decide <u>before trial</u>." *Id.* at 727 (citing *United States v. Nunez-Rios*, 622 F.2d 1093, 1098 (2d Cir. 1980))(emphasis added).

Aside from the Ninth Circuit's prohibition against postponing such a hearing, the Court also should not conduct the hearing post trial because it would not serve the ends of justice and

judicial economy.  The instant motion is one that may be dispositive of the case against Mr. Nochez.  Conducting the hearing post trial would then waste the Court's time and the government's resources (both prosecution and defense) trying a case that should ultimately be dismissed for outrageous government conduct and unnecessarily subject the defendant to the anxiety and stress of a lengthy jury trial.

It is also unclear why CI-1218's testimony cannot be secured pre-trial.  The Court has already ordered CI-1218 to be present at the *Franks* hearing for defendants Urias and Sosa's motion.  Furthermore, CI-1218 will likely testify at the trial of those defendants, which is scheduled to commence 16 days prior to Mr. Nochez's.  The Court could therefore order CI-1218 to testify at an evidentiary hearing on the instant motion.

Lastly, the Court notes that it may benefit from the testimony of other government witnesses and even the defendant's testimony post trial.  However, holding the hearing pre-trial would not bar the Court from profiting from such testimony.  Should the instant motion be denied, the defendant would remain entitled to seek reconsideration of this motion post-trial.

The Court must conform to Ninth Circuit precedent and hear this motion to dismiss for outrageous conduct before trial.  Doing so would also serve the ends of judicial economy.

## CONCLUSION

Mr. Nochez has never been suspected, accused, arrested for, or convicted of vehicle theft or exportation of stolen vehicles prior to the bringing of the instant indictment.  CI-1218, on the other hand, has a rich criminal history, including auto thefts.  Furthermore, CI-1218 had the expertise and tools necessary to steal cars, and, by his own admission, actually participated in the theft of at least one of the vehicles cited in the indictment.

It was the government, through the actions of its confidential informant 1218 and its special agents, who sought out down-on-their luck citizens to assist in the stealing of innocent victim's vehicles, and then provided the sole "marketplace" for the alleged exportation of these stolen vehicles. Such conduct is nothing short of outrageous, and this Court must refuse to validate such dangerous and predatory actions. In light of these facts and the foregoing arguments, Mr. Nochez respectfully requests that the Court dismiss the indictment for outrageous government conduct.

Respectfully submitted,

**DATED: January 15, 2009**                              /S/
**SETH P. CHAZIN**
**Attorney for RODIL NOCHEZ**