IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER RE DEFENDANTS' MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT** |
| RODIL NOCHEZ and DANIEL GONZALEZ, | |
| Defendants. | |

### INTRODUCTION

Defendants Rodil Nochez and Daniel Gonzalez have brought a motion to dismiss the indictment due to purportedly outrageous government conduct. Pursuant to Federal Rule of Criminal Procedure 12(d), "[t]he court must decide every pretrial motion before trial unless it finds good cause to defer the ruling." For the following reasons, the Court finds good cause in this instance to defer ruling on defendants' motion until after trial.

### STATEMENT

Defendants Nochez and Gonzalez are jointly charged with eight counts of violating 18 U.S.C. 553(a), attempted exportation of stolen vehicles. Each count corresponds to a vehicle that defendants allegedly stole and delivered to undercover agents as part of a storefront sting operation. In August 2006, California Highway Patrol officers and Immigration and Customs Enforcement Agents jointly set up the sting operation in a warehouse in North Richmond. Defendants allege that the agents and a confidential informant identified as 1218 induced them and others to steal 16 vehicles from innocent civilians between October 2006 and February

2007. None of the vehicles were returned to their legal owners. Defendants claim that the undercover agents encouraged defendants to continue stealing cars.

According to defendants, 1218 played a central role in every stage of the car theft ring. They assert that he was an experienced car thief who was arrested in July 2006 on auto theft charges and thereafter entered a cooperation agreement with the government and agreed to recruit others to steal cars. Defendants claim that they were not involved in stealing cars until 1218 enticed them to steal the cars for which they are charged in this action. They allege that 1218 became a tenant in defendant Nochez's home and thereafter pressured and persuaded them to steal cars. They claim that 1218 provided the necessary expertise and the equipment to steal the vehicles, including an ignition switch used to steal at least several of the cars.

The government claims in its opposition to defendants' motion that 1218 did not participate in stealing any cars as part of the sting operation. There is circumstantial evidence, however, that 1218 participated in at least one of the vehicle thefts committed by defendants based on the government's transcript of a recording from a vehicle buy on January 9, 2007 (Wong Decl. Exh. B). In the recording, defendant Nochez told one of the undercover agents that halfway through stealing the vehicle they were confronted by its owners who approached them half-dressed and red-eyed. 1218 stated, "I think she even got up without a skirt" (Wong Decl. Exh. B at 10). Defendant Nochez then described how the man and woman hit the window of the vehicle but it did not break before the vehicle turned on. This sequence implies that 1218 was in the vehicle while it was being stolen.

Defendants claim that the government was the only customer for any of the cars that they stole. They also claim that they had no involvement with the attempted exportation of vehicles beyond the statements of the government agents who purchased the purportedly stolen cars from them that the vehicles would be shipped overseas.

**ANALYSIS**

**1.    OUTRAGEOUS GOVERNMENT CONDUCT.**

"Outrageous government conduct" warranting dismissal of the indictment occurs either (1) where the government promotes actual harm to innocent persons or (2) where although no

2

persons are harmed, the government's involvement in the criminal activity is excessive or shocking. *United States v. Russell*, 411 U.S. 423, 431–32 (1973). In *Russell*, the government undercover agent supplied an essential chemical for manufacturing a narcotic drug. The Ninth Circuit had reversed the conviction but the Supreme Court overruled the reversal, explaining in dictum that "while we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed." *Russell*, 411 U.S. at 431–32.

The Ninth Circuit has stated that "[u]nacceptable governmental conduct occurs when the government agents act brutally by using physical or psychological coercion against the defendant or the agents engineer and direct the criminal enterprise from start to finish." *United States v. Bonanno*, 852 F.3d 434 (9th Cir. 1988) (holding that evidence did not establish outrageous government conduct where defendant and accomplices, not FBI informant, suggested criminal fraudulent purchase order scheme and there was no evidence of any reluctance by defendant to engage in scheme). *Bonanno* listed five factors for courts to consider in deciding whether the government's conduct was permissible, including whether:

> (1) the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress at the time the government agent became involved,
>
> (2) the agent's participation was not necessary to enable the defendants to continue the criminal activity,
>
> (3) the agent used artifice and stratagem to ferret out criminal activity,
>
> (4) the agent infiltrated a criminal organization and
>
> (5) the agent approached persons already contemplating or engaged in criminal activity.

Defendants contend that the government has failed to establish any of the five *Bonanno* factors in this action. They argue that the government cannot establish the first factor because they were not involved in stealing cars until they were recruited by the government's confidential informant 1218. They argue that the government cannot establish the second factor because 1218's expertise, tools and participation were necessary for them to carry out the eight

3

1  thefts with which they are charged and because they would not nor could not have contemplated
2  exporting stolen cars without the suggestion and enticement of the undercover government
3  agents. They argue that the government cannot establish the third, fourth or fifth factors
4  because prior to 1218's involvement there was no ongoing or contemplated criminal activity nor
5  any criminal organization involved in stealing cars or exporting stolen cars. They furthermore
6  contend that the government's involvement in the theft of sixteen vehicles over a period of
7  many months from innocent civilians shocks the conscience, especially in light of the potential
8  danger posed to innocent people as illustrated between the confrontation between defendants
9  and 1218 and the owners of the vehicle allegedly stolen on January 9, 2007.

10  The Ninth Circuit has characterized outrageous government conduct in restrictive terms
11  such as "most narrow," "shocking to the universal sense of justice," "only the most intolerable
12  government conduct," and "slim category." *United States v. Bogart*, 783 F.2d 1428, 1434–35
13  (9th Cir. 1986), *petition for rehearing granted and case remanded in non relevant part, United*
14  *States v. Wingender*, 790 F.2d 802 (9th Cir. 1986).

15  Defendants' motion nevertheless is not frivolous and indeed raises potentially troubling
16  issues regarding this sting operation, namely that the government caused 16 or so innocent
17  victims to lose their cars. It is, however, premature to find that the government's conduct was
18  outrageous. The government disputes the extent of 1218's involvement in the theft of the
19  vehicles that defendants are accused of stealing. It also asserts that both defendants were
20  already involved in car thefts before being recruited by 1218 to steal vehicles for export as part
21  of the sting operation. A finding of outrageous government conduct would therefore depend at
22  least on a full hearing of the government's evidence against defendants and the participation of
23  1218 and other government agents, subject to cross-examination by defendants' counsel.

24  **2.    GOOD CAUSE TO DEFER RULING ON MOTION UNTIL AFTER TRIAL.**

25  On January 11, 2010, the Ninth Circuit stated that "[o]utrageous government conduct
26  claims involve 'defects in the institution of the prosecution itself,' questions of law that the
27  court should decide before trial." *United States v. Mausali*, 2010 U.S. App. LEXIS 626 at *6–7
28  (9th Cir. 2010). Defendants argue that *Mausali* stands for the proposition that their claim of

outrageous government conduct must be decided before trial after a pretrial evidentiary hearing. The defendant in *Mausali*, however, was in a very different procedural posture than defendants in the present action. In *Mausali*, the court of appeals affirmed dismissal of an appeal on the grounds of outrageous government conduct where the defendant had failed to assert the claim before trial. The principal holding in *Mausali* was that defendants were required to allege a defect in instituting the prosecution before trial or else waive the objection on appeal, not that the trial court must decide such a motion before trial.

Indeed, *Mausali* explicitly follows analogous holdings in the Second, Third and Eighth Circuits which all relied on Federal Rule of Criminal Procedure 12 to support their holdings that motions to dismiss for outrageous government conduct must be brought before trial. *See United States v. Nunez-Rios*, 622 F.2d 1093, 1098–99 (2d. Cir. 1980); *United States v. Pitt*, 193 F.2d 751, 760–61 (3d. Cir. 1999); *United States v. Henderson-Durand*, 985 F.2d 970, 973–74 (8th Cir. 1993). Rule 12(b)(3) provides, in pertinent part, that motions alleging a defect in the indictment must be raised before trial. The "should decide before trial" phrase in *Mausali* was uttered in the context of a case where the defendant had failed to raise the question before trial and thus had deprived the judge of the opportunity to decide the issue before trial. Of course, most Rule 12 motions are decided and should be decided before trial. Rule 12(d), however, provides that "[t]he court must decide every pretrial motion before trial *unless it finds good cause to defer a ruling*" (emphasis added).

Good cause exists here to defer a ruling on defendants' motion until after trial. Much of the evidence necessary to decide the motion will come in at trial. Not only would it be potentially duplicative and waste judicial resources to have an evidentiary hearing on the same topics before trial but such a hearing would be impractical because 1218 is in protective custody and is unavailable for a pretrial hearing absent extraordinary precautions. At trial, he will be subject to cross-examination. To the extent that evidence is necessary to decide defendants' motion which is not admitted at trial, the record can then be supplemented by a post-trial hearing out of the presence of the jury.

5

**CONCLUSION**

For the foregoing reasons, a ruling on defendants' motion to dismiss the indictment for outrageous government conduct is **DEFERRED** under Rule 12(b)(3).  Good cause shown, the motion will be decided after trial.  A post-trial evidentiary hearing shall be held if necessary to supplement the record.

**IT IS SO ORDERED.**

Dated: January 21, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE