JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
CHRISTINE Y. WONG (NYBN 3988607)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6758/7301
    Facsimile: (415) 436-6753
    E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No: S3-CR-08-0730-WHA |
| v. | GOVERNMENT'S MOTION IN LIMINE SEEKING PRECLUSION OF DEFENDANT'S EXPERT WITNESS |
| RODIL NOCHEZ,<br>    a/k/a "Chino," | |
| Defendant. | |

      The Government respectfully moves *in limine* for a ruling from the Court excluding a so-called voice identification expert witness recently proffered by the defendant. The testimony of this expert witness should be precluded because the defendant's expert notice is inadquate. In addition, the subject of the proposed expert testimony is not beyond the common knowledge of the juries and, thus, is inadmissible under Fed. R. Evid. 702. Finally, the Government respectfully seeks a Daubert hearing, if necessary, to determine the admissibility of the proffered expert testimony.

//

I. **Background**

Rodil Nochez is set for trial on Tuesday, March 2, 2010, on eight counts of attempted exportation of a stolen vehicle.  At approximately 2:21 pm on Friday, February 26, 2010, Seth Chazin, Esq., counsel for the defendant, sent an e-mail to the Government stating that

> I just determined that I will be offering the testimony of voice ID expert Tito Poza.  I wanted to provide you a copy of his CV as soon as possible, therefore it is attached to this message.  I will also be forwarding a summary of his intended testimony later today.

See Exhibit A hereto.

At approximately 9:03 pm on Saturday, February 27, 2010, Mr. Chazin sent another e-mail to the Government, forwarding "an initial summary of testimony that will be presented by Tito Poza."  The forwarded information was an e-mail sent by Mr. Poza to Mr. Chazin roughly eight hours earlier that stated the following:

> Lay persons can, under certain conditions, identify voices with reasonable accuracy.  Under most forensic conditions, however, such identifications are likely to be inaccurate and, therefore, misleading.  In particular, scientific studies (Frances McGeehee, 1936, 1939) have shown that when an aural identification is made more that [sic] 3 months after the listener has last heard an unfamiliar voice (a voice the listener doesn't hear on a regular basis), then that identification has virtually no probative value.
>
> Additionally, the findings from studies carried out by scientist working in the field of Statistical Decision Theory have shown that subjective judgments are extremely sensitive to unintentional bias.  For this reason, absent the use of a proper identification protocol when making any attribution as to the identity of unfamiliar voices on audio recordings, such attributions will, most likely, be inaccurate and unreliable.
>
> In other words, when transcripts, or attributions of voices in transcripts, are made many months after the actual events are recorded, such attributions can not be relied upon as accurate, unless the person making the attributions has a history of regular conversational interaction with the persons the recorded voices are being attributed to.

See Exhibit B hereto.

As of the time of the filing of this motion, Mr. Chazin has provided no further information to the Government relating to Mr. Poza's testimony.

//

1

## II.    Discussion

2        The testimony of Mr. Poza should be precluded.  First, the defendant's expert notice is

3  inadequate.  More significantly, the proffered subject of the so-called expert testimony — the

4  unreliability of witness voice identification — is not beyond the common knowledge of jurors

5  and is therefore inadmissible under Fed. R. Evid. 702.  Finally, the defendant has failed to

6  establish the reliability of Mr. Poza's testimony, and at minimum, a <u>Daubert</u> hearing should be

7  held before any of this testimony is allowed into evidence.

8        ### A.    The Defendant's Expert Notice Is Inadequate

9        As an initial matter, the expert notice provided by the defendant is inadequate.[1]  Fed. R.

10  Crim. P. 16(b)(1)(C) provides that the defendant must provide "a written summary of any

11  testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of

12  Evidence as evidence at tria" and that this summary "must describe the witness's opinions, the

13  bases and reasons for those opinions, and the witness's qualifications."[2]

14        Here, the defendant has provided a CV for his proffered expert and forwarded the pithy e-

15  mail excerpted above.  <u>See</u> Exhibits A and B.  The opinion itself — to the extent it exists — is

16  rather vague.  Reading these materials generously, it appears that the proffered expert will offer

17  the opinion that voice identification by someone who last heard an "unfamiliar voice" more than

18  three months after that person last heard the voice is inherently inaccurate.  The bases and the

19  reasons for this opinion, however, is not clear from the materials provided.  Accordingly, the

20  defendant's proffered expert opinion should be precluded due to a ridiculously inadequate notice.

21  <u>Cf</u>. <u>United States</u> v. <u>Finley</u>, 301 F.3d 1000, 1016-17 (9th Cir. 2002) (reversing district court's

22  exclusion of defense expert as Rule 16 sanction and noting that two letters submitted to the

23  Government describing the defendant's mental condition and statements made in court provided

24  sufficient notice under Rule 16(b)(1)(C)).

25

---

26        [1]  The Government would also note that the defendant's expert notice — made just one

27  business day before trial — is also untimely.

28        [2]  By letter dated December 2, 2008, the Government sought discovery under Fed. R. Crim. P. 16(b).

**B.     The Proffered Expert Testimony Is Not Admissible Under Fed. R. Evid. 702**

More significantly, in addition to failing to comply with Fed. R. Crim. P. 16(b)(1)(C), the defendant's proffered expert testimony is simply not admissible under Fed. R. Evid. 702.

Rule 702 of the Federal Rules of Evidence allows for expert opinion testimony by a "witness qualified as an expert by knowledge, skill, experience, training or education" where the testimony will "assist the trier of fact to understand" matters of "scientific, technical, or other specialized knowledge." United States v. Reed, 575 F.3d 900, 922 (9th Cir. 2009). "Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." Moses v. Payne, 555 F.3d 742, 755 (9th Cir. 2009). In contrast, Rule 702 "makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986) cited in United States v. Freeman, 498 F.3d 893, 905 (9th Cir. 2007).

The decision whether to admit expert testimony is reviewed for abuse of discretion. See, e.g., Reed, 575 F.3d at 922; United States v. Calderon-Segura, 512 F.3d 1104, 1109 (9th Cir. 2008); United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).

In this case, the Government expects to present the testimony of an undercover officer who met with and spoke with the defendant on at least five occasions in 2006 and 2007. The officer also subsequently reviewed both video and audio recordings of these meetings. From both his memory and from his review, he has identified the voice of the defendant in several recordings that have been transcribed. Thus, the Government surmises that the defendant is seeking to call Mr. Poza to offer "expert" testimony that the officer's voice identification of the defendant in the transcripts cannot be relied upon as accurate due to the passage of time. This is improper.

As an initial matter, the defendant's proffered expert testimony is inapplicable here. Mr. Poza's e-mail specifically states that his opinion and whatever "research" may back it pertain to voice identification by a listener who last heard an "unfamiliar" voice more than three months previously. In contrast, as noted above, the officer conducting the voice identification in this

case can hardly be described as "unfamiliar" with the defendant's voice.  As noted above, the officer met with the defendant on at least five occasions and will testify as to the contents of those conversations.  In addition, the officer has also reviewed video and audio recordings of those meetings.  Unlike, perhaps, a person who heard someone speak once or twice and then tries to identify the speaker's voice years later, the officer cannot even remotely be deemed to be unfamiliar with the defendant's voice.  Mr. Poza's proffered expert testimony, thus, is completely inapplicable to the facts presented here.

In addition, voice identification is specifically not a subject of expert opinion.  Voice recognition is based simply on normal senses and perceptions possessed by ordinary people.  Therefore, voice identification — unlike, for instance, psychological disorders, cosmic string theory, or ballistics evidence — can hardly be said to be beyond the "common knowledge of the average layperson."  Consistent with the ordinary, common nature of voice recognition, Fed. R. Evid. 901(a)(5) specifically provides that a voice can be identified simply by testimony from someone "hearing the voice at any time under circumstances connecting it with the alleged speaker."  "So long as the identifying witness is 'minimally familiar' with the voice he identifies, Rule 901(b) is satisfied."  See United States v. Plunk, 153 F.3d 1011, 1023 (9th Cir. 1998), abrogated on other grounds by Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).  Indeed, the commentary note to example (5) of Rule 901 specifically recognizes that voice identification is *not* the subject of expert testimony.  See Fed. R. Evid. 901, commentary note to example (5) ("Since aural voice identification is not a subject of expert testimony, the requisite familiarity may be acquired either before or after the particular speaking which is the subject of the identification, in this respect resembling visual identification of a person rather than identification of handwriting.").

Because voice recognition and identification falls within the common knowledge of the average layperson, the defendant's proffered expert testimony is inadmissible under Rule 702.  See, e.g., United States v. Simmons, 431 F. Supp.2d 38, 75 (D.D.C. 2006) ("It should also be noted that, even were the Court to find that its decision to exclude the testimony was error, this Court would find it to be harmless.  In light of the fact that the jury heard defendant McGill's

voice for several days while he testified, they were able to make their own comparison, as voice

identification is not necessarily an area outside the ken of the average jury.").  Rather, the jury —

who will see and hear the defendant's cross-examination of the officer — will be quite capable of

determining for itself whether the officer's testimony relating to voice identification should be

deemed credible or not.  There is simply no need for Mr. Poza to weigh in on this issue.

### C.    The Defendant Has Not Established The Reliability Of Mr. Poza's Testimony

Finally, if the Court does not preclude Mr. Poza's testimony outright, it should hold a

Daubert hearing before allowing it into evidence.

> Under Daubert, a district judge must initially determine "whether
> the expert is proposing to testify to (1) scientific knowledge that
> (2) will assist the trier of fact to understand or determine a fact in
> issue."  The judge must thereafter assess "whether the reasoning or
> methodology underlying the testimony is scientifically valid and
> . . . whether that reasoning or methodology properly can be applied
> to the facts in issue."  In assessing the validity of a scientific theory
> or technique, the judge should consider a number of factors:
> whether the theory or technique "can be (and has been) tested" by
> other scientists; whether it has been subjected to peer review and
> publication; the known or potential rate of error; the existence and
> maintenance of standards controlling the techniques's operation;
> and whether the technique has gained general acceptance in the
> relevant scientific community."

United States v. Jones, 24 F.3d 1177, 1179 (9th Cir. 1994) (quoting Daubert v. Merrell Dow

Pharmaceuticals, 509 U.S. 579 (1993)).

It is unclear what are the bases and reasons, if any, of Mr. Poza's (surmised) expert

opinion.  Accordingly, before his testimony can be allowed into evidence, the defendant must

establish the reliability of Mr. Poza's techniques at an evidentiary hearing.

//

**III.    Conclusion**

        For the foregoing reasons, the defendant should be precluded from presenting the testimony of his so-called expert at trial.  In addition, the Court should conduct a <u>Daubert</u> hearing in order to determine whether this expert testimony is admissible.

DATED: February 28, 2010

                                        Respectfully submitted,

                                        JOSEPH P. RUSSONIELLO
                                        United States Attorney


                            By:   /s/
                                        W.S. WILSON LEUNG
                                        CHRISTINE Y. WONG
                                        Assistant United States Attorneys