1          VOLUME 1

2          PAGES 1 - 239

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5          BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

6    UNITED STATES OF AMERICA,       )
                                     )
7              PLAINTIFF,            )
                                     )
8     VS.                           )    NO. CR 08-0730 WHA
                                     )
9    IVAN CERNA, ET AL.             )    TUESDAY, MARCH 2, 2010
                                     )    SAN FRANCISCO, CALIFORNIA
10             DEFENDANTS.           )
     _____)

11

12

13                    **TRANSCRIPT OF PROCEEDINGS**

14   **APPEARANCES:**

15   FOR THE GOVERNMENT:     JOSEPH P. RUSSONIELLO
                             UNITED STATES ATTORNEY
16                           450 GOLDEN GATE AVENUE
                             SAN FRANCISCO, CALIFORNIA  94102
17                    BY:    **WILSON LEUNG**
                             **CHRISTINE WONG**
18                           ASSISTANT U.S. ATTORNEYS

19

20   FOR THE DEFENDANT:      **SETH P. CHAZIN**
                             **ATTORNEY AT LAW**
21                           1164 SOLANO AVENUE
                             ALBANY, CALIFORNIA  94706

22

23

24   *REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
                *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

25

1          <u>**PROCEEDINGS; TUESDAY, MARCH 2, 2010**</u>

2

3                    (PROCEEDINGS HELD IN OPEN COURT.)

4          **THE CLERK:**  CRIMINAL NO. CR 08-730, UNITED STATES

5   VERSUS RODIL NOCHEZ, ON FOR JURY TRIAL.

6          COUNSEL, PLEASE STATE YOUR APPEARANCES.

7          **MR. LEUNG:**  WILSON LEUNG FOR THE GOVERNMENT.  WITH ME

8   AT COUNSEL TABLE, YOUR HONOR, ARE CHRISTINE WONG, ASSISTANT

9   UNITED STATES ATTORNEY, AS WELL AS BEN HORTON, WHO IS A SPECIAL

10  AGENT WITH IMMIGRATION AND CUSTOMS ENFORCEMENT.

11         GOOD MORNING, YOUR HONOR.

12         **MS. WONG:**  GOOD MORNING.

13         **THE COURT:**  GOOD MORNING.

14         **MR. CHAZIN:**  GOOD MORNING, YOUR HONOR.  SETH CHAZIN,

15  APPEARING WITH MR. NOCHEZ, WHO IS PRESENT, OUT OF CUSTODY; ALONG

16  WITH MICHAEL SAFAI, WHO IS ASSISTING ME AS WELL.

17         **THE COURT:**  HOW DO YOU SPELL SAFAI?

18         **MR. CHAZIN:**  S-A-F-, AS IN FRANK, -A-I.

19         **THE COURT:**  WELCOME TO ALL OF YOU.

20         **THE INTERPRETER:**  MELINDA BASKER AND JACK MEDINA,

21  SPANISH INTERPRETERS, AND WE HAVE BEEN SWORN.

22         **MR. MEDINA:**  JACK MEDINA, SPANISH INTERPRETER.

23         **THE COURT:**  HAVE YOU BEEN SWORN?

24         **MR. MEDINA:**  YESTERDAY, YOUR HONOR.

25         **THE COURT:**  THAT'S RIGHT, YOU WERE.  WE ARE HERE FOR

1  TRIAL.  NO ONE EVER GAVE ME THE ONE-PAGE STATEMENT ABOUT THE

2  CASE.

3          **THE CLERK:**  THEY JUST DID.  IT'S UP THERE.

4          **THE COURT:**  OH, THEY JUST DID.

5          **MR. LEUNG:**  SORRY, YOUR HONOR.

6          **THE COURT:**  WELL, WHAT DO YOU BOTH PROPOSE TO DO

7  WHENEVER IT COMES -- ARE YOU PROPOSING AT SOME POINT TO GIVE THE

8  JURY THIS DOCUMENT?

9          **MR. LEUNG:**  I THINK IF THEY REQUEST A LIST OF THE

10  CHARGES, WE WOULD GIVE THEM THAT DOCUMENT.  AND IN THE --

11  HOWEVER, IN THE MEANTIME, IN DESCRIBING THE CHARGES TO THE JURY,

12  THE SHORT ONE-SENTENCE STATEMENT THAT WE HANDED OUT SHOULD BE

13  SUFFICIENT FOR PURPOSES OF DESCRIBING THE CHARGES TO THEM.

14          **THE COURT:**  DO YOU BOTH AGREE TO THAT?

15          **MR. CHAZIN:**  I THINK IT SHOULD BE ADEQUATE, THE

16  DESCRIPTION OF THE CHARGES THAT WE PRODUCED.  I THINK IT SHOULD

17  BE KEPT AT THAT.

18          **THE COURT:**  WELL, AT SOME POINT, BEFORE WE INSTRUCT

19  THE JURY, WE HAVE TO DECIDE WHETHER WE'RE GOING TO SEND IN THE

20  INDICTMENT, WHICH IS WHAT THE GOVERNMENT'S GOT TO PROVE, OR WE

21  SEND IN THIS EXCERPTED PART OF THE INDICTMENT.  IF WE WERE TO DO

22  THAT, I WOULD WANT TO CHANGE THIS 50 TO -- IT SOUNDS LIKE

23  THEY'RE 49 OTHER COUNTS AGAINST THE DEFENDANT.  THAT IS

24  PREJUDICIAL RIGHT OFF THE TOP.  SO YOU COULDN'T USE THIS

25  DOCUMENT, BUT MAYBE SOME VERSION OF IT WOULD WORK.

1          THE PROBLEM IS, AT THE END OF THE DAY, THE JURY HAS

2    GOT TO SAY, OKAY, SPECIFICALLY, WHAT WAS IT THE DEFENDANT WAS

3    CHARGED WITH AND HAS THE GOVERNMENT PROVEN THAT.

4          **MR. CHAZIN:**  I THINK THE VERDICT FORM, WON'T IT SET

5    FORTH THE INDIVIDUAL CHARGES THAT THEY NEED DECIDE UPON?  IT

6    SEEMS TO ME THAT WOULD BE THE CASE.

7          **THE COURT:**  I'D KEEP THAT IN MIND.  I WOULDN'T WANT

8    SOMEBODY TO ARGUE LATER THEY DIDN'T MAKE A FINDING ABOUT THE VIN

9    NUMBER.  THERE ARE EXTREMELY LONG VIN NUMBERS THAT ARE IN THE

10   COUNTS.  YOU ALL NEED TO BE THINKING ABOUT HOW WE'LL DEAL WITH

11   THAT WHEN WE GET TO THE VERDICT AND THE INSTRUCTION STAGE.

12          BUT, FOR NOW, I TOTALLY AGREE WITH YOU, ALL WE NEED

13   TO DO IS, BASICALLY, THIS ONE SENTENCE, WHICH IS ENOUGH FOR

14   PRESENT PURPOSES.  OKAY.

15          NOW, THE WAY THE QUESTIONING -- I THINK I'VE GONE

16   OVER THIS WITH YOU BEFORE, BUT I'LL DO THE INITIAL QUESTIONING,

17   AND, AT SOME POINT IN THE PROCESS, I'M GOING TO TURN IT OVER TO

18   YOU TO ASK QUESTIONS.  NORMALLY, ABOUT 15 MINUTES PER SIDE WOULD

19   BE ADEQUATE.

20          AND I ASK YOU NOT TO TRY TO INDOCTRINATE THE JURY OR

21   TO MAKE YOUR ARGUMENTS.  THE PURPOSE OF VOIR DIRE IS TO

22   ASCERTAIN IF THERE'S A BASIS FOR PREJUDICE.  SO THAT'S WHAT YOU

23   WANT TO USE IT FOR.

24          ANYTHING ELSE YOU WANT TO BRING UP BEFORE WE START

25   BRINGING IN THE VENIRE?

1          **MR. CHAZIN:**  YOUR HONOR, I WANTED TO JUST

2   DOUBLE-CHECK AND CLARIFY.  FIRST OF ALL, THE NUMBER OF

3   PEREMPTORIES THAT WE ARE GOING TO HAVE IS -- I BELIEVE YOU

4   INDICATED TEN?

5          **THE COURT:**  LET'S SEE.

6          **MR. CHAZIN:**  PLUS TWO.

7          **THE COURT:**  OKAY.  LET'S BE CLEAR ON THAT.  NORMALLY,

8   THE GOVERNMENT GETS SIX, AND YOU GET TEN, RIGHT?

9          **MR. LEUNG:**  CORRECT, YOUR HONOR.

10          **THE COURT:**  WHEN WE ARE GOING TO HAVE A JURY OF 14,

11   DO WE GET EXTRA PEREMPTORIES?

12          **MR. LEUNG:**  THERE ARE, I BELIEVE, TWO FOR THE

13   ALTERNATES.

14          **THE COURT:**  ONE FOR THE GOVERNMENT AND ONE FOR YOU,

15   IS THAT WHAT YOU MEAN?

16          **MR. LEUNG:**  I BELIEVE THAT'S CORRECT, YOUR HONOR.

17          **THE COURT:**  IS THAT CORRECT, MR. CHAZIN?

18          **MR. CHAZIN:**  I BELIEVE SO.

19          **THE COURT:**  ALL RIGHT.  SO THE WAY IT WILL WORK IS

20   EACH SIDE GETS A GRAND TOTAL NOW OF -- WE DID ALL THIS ONCE

21   BEFORE.  NOW I'M GOING TO MAKE A MISTAKE.  EVERYBODY IS GOING TO

22   GET -- WE HAVE 14.  SO WE HAVE TEN, SIX, AND TWO.  SO THAT ADDS

23   UP TO 32, RIGHT?  ISN'T THAT THE FINAL NUMBER THAT WE NEED TO

24   PASS FOR CAUSE IN ORDER TO MAKE THE SYSTEM WORK?

25          **MR. LEUNG:**  FORTY-TWO --

1          **THE COURT:**  THIRTY-TWO.

2          **MR. LEUNG:**  THIRTY-TWO, RIGHT, YOUR HONOR.

3          **THE COURT:**  ALL RIGHT, MR. CHAZIN?

4          **MR. CHAZIN:**  IT WOULD BE 14, PLUS 16, PLUS TWO.

5          **THE COURT:**  PLUS TWO.  WHEN I DO THE MATH, IT COMES

6  OUT AT 32.  DO YOU WANT ME TO SHOW YOU?

7          **MR. CHAZIN:**  NO, I WAS JUST AGREEING.

8          **THE COURT:**  OKAY.  ALL RIGHT.  SO THEN YOU WILL

9  EXERCISE -- YOUR PEREMPTORIES WILL BE ON THIS SHEET OF PAPER

10  RIGHT HERE, AND WHEN YOU -- WHEN YOU -- YOU WILL JUST GO ALL THE

11  WAY THROUGH TO THE END AND -- BUT IF THERE ARE TWO CONSECUTIVE

12  PASSES, THEN IF THERE ARE TWO CONSECUTIVE PASSES, THEN IT'S

13  OVER.  AND IF YOU PASS, IT COUNTS AS A PEREMPTORY ANYWAY.

14          WHEN I SAY IT'S OVER, THEN WE LOOK TO TAKE THE 12

15  LOWEST NUMBERS BY SEAT NUMBER, SEAT NUMBER.  THOSE WILL BE THE

16  PRIMARY JURY.  THEN THE NEXT TWO IN ORDER BY SEAT NUMBER WILL BE

17  THE ALTERNATES.

18          SO LET'S JUST TAKE THE CASE WHERE YOU BOTH PASS AT

19  THE VERY OUTSET, TO MAKE IT SIMPLE.  IT WILL NEVER HAPPEN, BUT

20  HYPOTHETICALLY IT COULD.  THEN THE FIRST 12 BY SEAT NUMBER WOULD

21  BE THE PRIMARY JURY, AND THE NEXT TWO WOULD BE THE ALTERNATES.

22  SO THAT'S THE SYSTEM.  ALL RIGHT?  SO YOU USE YOUR -- YOU'RE

23  FREE TO YOUR PEREMPTORIES AS YOU GO ALONG AGAINST THE PERSON WHO

24  IS SITTING AT THE, YOU KNOW, NUMBER 32, IF YOU WANT, OR NUMBER

25  ONE.  IT'S UP TO YOU HOW YOU WANT TO USE YOUR PEREMPTORIES.

1          **MR. CHAZIN:**  WE'LL RECEIVE A SHEET FROM THE --

2          **THE COURT:**  YES, IT'S RIGHT HERE.  DIDN'T YOU GET

3  THIS ALREADY?  DAWN, DID YOU GIVE THEM ALL THE SHEET?

4          **THE CLERK:**  I DID GIVE IT TO THEM ONCE BEFORE.  THEY

5  CAN HAVE A BLANK ONE NOW.

6          **THE COURT:**  IT LOOKS LIKE THIS (INDICATING), AND THE

7  GOVERNMENT MAKES THE FIRST CHALLENGE.  THEN YOU MAKE ONE,

8  GOVERNMENT MAKES THE NEXT ONE, THEN YOU MAKE TWO.  SO FORTH.

9  THAT IS THE -- THIS IS NOT MY FORM.  THIS IS THE ONE THAT'S BEEN

10  AROUND FOR YEARS HERE.

11          SO THERE WE ARE.  WE'RE SEVERAL HOURS AWAY FROM

12  HAVING TO DO THIS PIECE OF IT, BUT I GUESS THE THING I SHOULD

13  EMPHASIZE IS THAT THE SEAT PRIORITY DOES NOT DEPEND UPON WHEN IN

14  THE PROCESS SOMEBODY IS CALLED FORWARD FROM THE BACK OF THE

15  ROOM.  IT, RATHER, TURNS ENTIRELY, FOR SIMPLICITY, ON WHAT SEAT

16  NUMBER THEY ARE.

17          THE SEAT NUMBERS ARE ONE, THE ONE CLOSEST TO THE

18  COURT REPORTER, ALL THE WAY TO NUMBER SEVEN.  BACK ROW IS EIGHT

19  TO FOURTEEN.  FIFTEEN IS OVER THERE WHERE THE INTERPRETER IS.

20  AND YOU GO ACROSS TO 32 BY THE EXIT SIGN.  SO THERE WE ARE.

21  THAT WILL BE THE SEQUENCE.

22          SO LET'S SAY THAT SOMEBODY IS NUMBER ONE PERSON AT

23  THE VERY -- ALMOST AT THE VERY END OF THE VOIR DIRE THE NUMBER

24  ONE PERSON GETS EXCUSED FOR CAUSE, AND WE BRING FORWARD SOMEBODY

25  FROM THE BACK OF THE ROOM, AND THEY ARE EXAMINED AND THEY'RE

1  PASSED FOR CAUSE.  THAT PERSON HAS THE NUMBER ONE SEAT PRIORITY

2  EVEN THOUGH THEY WERE CALLED FORWARD LAST.  OKAY?  SO YOU DON'T

3  REALLY HAVE TO REMEMBER WHAT NUMBER THEY WERE CALLED FORWARD IN,

4  BUT YOU DO NEED TO KEEP TRACK OF THE SEAT NUMBER THEY HAVE.

5          **MR. CHAZIN:**  JUST A REMINDER FOR ME.  IF SOMEONE IS

6  EXCUSED, THEN YOU WILL FILL IT IN IMMEDIATELY?

7          **THE COURT:**  WELL, I WOULD SAY -- I WON'T -- NO, NOT

8  IMMEDIATELY.  ALMOST IMMEDIATELY.

9          FOR EXAMPLE, SOMETIMES I WILL EXCUSE THREE OR FOUR

10 BECAUSE I WANT TO GROUP THEM TOGETHER, I WANT TO EVALUATE THEIR

11 HARDSHIPS AT THE SAME TIME.  SO I MAY EXCUSE THREE OR FOUR

12 PEOPLE FOR HARDSHIP IN A GROUP AND THEN CALL FORWARD THE PEOPLE.

13 I TRY TO DO IT IN THE ORDER IN WHICH I EXCUSE THEM.  IN THAT

14 SENSE, I GUESS I'M AGREEING WITH YOU, BUT THE WORD "IMMEDIATELY"

15 IS INCORRECT, BECAUSE SOMETIMES IT'S BEST -- HERE'S ANOTHER

16 EXAMPLE.

17         SOMETIMES I MAY WANT TO HAVE A CONFERENCE WITH YOU

18 OUTSIDE THE PRESENCE OF THE JURY OVER WHETHER OR NOT TO EXCUSE

19 SOMEONE FOR CAUSE.  THERE MAY BE THREE OR FOUR PEOPLE IN THAT

20 CATEGORY.  SO WHILE THEY'RE ALL OUT ENJOYING A BREAK, WHICH THEY

21 ARE ENTITLED TO EVERY NOW AND THEN, WE WILL BE DOING SOME WORK.

22 SO I WON'T BE IMMEDIATELY EXCUSING ANYBODY, BUT I WILL BE -- I'D

23 SAY PROMPTLY IS THE WORD.  ALL RIGHT?

24         **MR. CHAZIN:**  YOUR HONOR, I HAVE ONE OTHER ISSUE, IF

25 WE'RE DONE WITH --

1           **THE COURT:**  SURE.  GO AHEAD.

2           **MR. CHAZIN:**  THAT IS JUST TO, AGAIN, CLARIFY, BECAUSE

3   OF THIS -- NUMBER ONE, WE DON'T WANT TO UNNECESSARILY

4   INCONVENIENCE ANY WITNESSES.  WE HAD CERTAIN WITNESSES UNDER

5   SUBPOENA, AND I WANTED TO AGAIN DOUBLE-CHECK ON THE COURT'S

6   POLICY REGARDING TELEPHONE STANDBY.  TO MAKE SURE THAT THERE'S

7   NO DELAY, IF WE NEED A WITNESS AND WE PREFER TO HAVE THEM ON

8   TELEPHONE STANDBY, BUT WE'LL FORCE THEM TO COME IN IF THE COURT

9   WON'T BACK US UP ON THAT.

10          **THE COURT:**  I'M OKAY WITH TELEPHONE STANDBY.  BUT

11  THESE ARE YOUR SUBPOENAS, RIGHT?

12          **MR. CHAZIN:**  CORRECT.

13          **THE COURT:**  THEY ARE YOUR SUBPOENAS.  AND IF YOU'RE

14  IN COMMUNICATION WITH YOUR OWN WITNESSES, YOU ARE FREE TO PUT

15  THEM ON TELEPHONE STANDBY.  BUT IT'S YOUR RESPONSIBILITY TO GET

16  THEM HERE.  DON'T BLAME ME IF THEY DON'T SHOW UP.  THEN I DON'T

17  KNOW WHAT WE WOULD DO.

18          I WOULD HAVE TO CONSIDER THE CIRCUMSTANCES AT THAT

19  TIME.  BUT IT RANGES ANYWHERE FROM WE GO AHEAD AND SEND THE CASE

20  TO THE JURY BECAUSE YOU DIDN'T HAVE YOUR WITNESS HERE, THAT

21  WOULD BE AT THE EXTREME END, ALL THE WAY DOWN TO WE HAVE TO GIVE

22  YOU A CONTINUANCE BECAUSE YOU ARE NOT READY.  THE BURDEN IS ON

23  YOU TO GET YOUR WITNESSES HERE, BUT IT IS FINE WITH ME IF YOU

24  HAVE THEM ON TELEPHONE STANDBY.

25          **MR. CHAZIN:**  JUST AS LONG AS I UNDERSTAND -- HAVE AN

```
 1  UNDERSTANDING THAT THE COURT IS STILL HONORING THE SUBPOENA AT
 2  THAT POINT.
 3           THE COURT:  WELL, ALL RIGHT.  I SEE YOUR POINT.
 4  THAT'S A TECHNICAL PROBLEM THAT I DON'T KNOW THE ANSWER TO
 5  BECAUSE IT DOESN'T COME UP VERY OFTEN.  I WOULD TRY TO ENFORCE
 6  THE SUBPOENA, BUT THE SUBPOENA DOES CALL FOR THEM -- YOU CAN
 7  TELL YOUR WITNESSES THIS:  THAT THE JUDGE HAS TOLD YOU -- FOR
 8  THAT MATTER, THEY OUGHT TO BE HERE RIGHT NOW.  WHY AREN'T THEY
 9  HERE?  TODAY IS THE DAY OF THE TRIAL.  RIGHT?  HAVE THEY BEEN
10  SUBPOENAED FOR RIGHT NOW?
11           MR. CHAZIN:  NOT FOR TODAY, BECAUSE WE ASSUMED
12  THERE'S NO WAY WE COULD EVER NEED THEM FOR TODAY.
13           THE COURT:  THAT'S PROBABLY TRUE.  WHAT DAY ARE THEY
14  SUBPOENAED FOR?
15           MR. CHAZIN:  MOST OF THEM, I BELIEVE, ARE SUBPOENAED
16  FOR THURSDAY.
17           THE COURT:  YOU CAN TELL THEM THAT THE JUDGE HAS SAID
18  THAT IF THEY PROMISE YOU AND THE COURT THAT THEY WILL APPEAR ON
19  THE DAY THAT YOU TELL THEM, WITH 24 HOURS NOTICE THEY'VE GOT TO
20  BE HERE, BY TELEPHONE.
21           MR. CHAZIN:  I WOULD ASK FOR 12, JUST BECAUSE WE
22  NEVER KNOW HOW THE TESTIMONY IS GOING TO GO.
23           THE COURT:  I DON'T KNOW ABOUT 12.  I THINK 24 IS
24  BETTER.
25           MR. CHAZIN:  OKAY.
```

```
 1                    ALL RIGHT.

 2             THE COURT:  WE'LL MAKE IT 20 HOURS, BECAUSE THEY'VE

 3   GOT TO BE HERE AT 7:30.  WE'LL SAY BY NOON ON THE DAY PRECEDING

 4   THE DAY YOU WANT THEM.

 5             MR. CHAZIN:  OKAY.

 6             THE COURT:  IF YOU GIVE THEM THAT MUCH NOTICE, THE

 7   COURT IS ORDERING THEM, AND YOU HAVE MY AUTHORITY TO SAY OVER

 8   THE TELEPHONE THAT THE COURT IS ORDERING THEM TO BE THERE ON THE

 9   ALTERNATIVE DAY.  IF THEY DON'T AGREE TO THAT EXPRESSLY ON THE

10   PHONE, THEN THEY MUST BE HERE ON THE DAY OF THE SUBPOENA.  THEN

11   I WILL ORDER THEM IN PERSON, AND IT WILL BE OFFICIAL.  ALL

12   RIGHT?

13             MR. CHAZIN:  SO AS LONG AS WE CALL THEM BY NOON THE

14   DAY BEFORE, THEY'RE OKAY TO COME A DAY OTHER THAN WHAT THEY'RE

15   SUBPOENAED FOR?

16             THE COURT:  THAT'S CORRECT.  BUT YOU MUST GET THEIR

17   AGREEMENT TO THAT.

18             MR. CHAZIN:  SURE.  IF NOT, WE'LL HAVE THEM COME IN.

19             THE COURT:  AND YOU'VE GOT TO COMMUNICATE TO THEM

20   THAT IS A COURT ORDER, THAT THEY -- IF THEY AGREE TO IT, THEY

21   ARE BOUND BY IT JUST AS IF THE SUBPOENA HAD CALLED FOR THE

22   ALTERNATIVE DATE.

23             MR. CHAZIN:  IN THAT VEIN, I WOULD LIKE TO GET SOME

24   INDICATION OF THE ORDER OF WITNESSES FROM THE PROSECUTION, IF

25   POSSIBLE.  THAT WOULD HELP US --
```

1            THE COURT:  WHO IS THE FIRST WITNESS GOING TO BE?

2            MR. LEUNG:  YOUR HONOR, IT IS ANTICIPATED AT THIS

3   POINT WE WILL CALL THE COOPERATOR FIRST, 1218, FOLLOWED BY THE

4   DOCUMENT CUSTODIAN FROM METRO PCS, FOLLOWED BY XAVIER SPENCER,

5   WHO IS THE UNDERCOVER OFFICER FOR CHP, FOLLOWED BY EIGHT VICTIM

6   WITNESSES WHO HAD THEIR CAR STOLEN.

7            THE ONLY WRINKLE, YOUR HONOR, IS WE HAD ANTICIPATED

8   BEING ABLE TO MOVE QUICKLY IN THIS TRIAL, AND WE HAD SUBPOENAED

9   THE VICTIM WITNESSES WHO ARE COMING IN FROM ALL OVER FOR

10  TOMORROW, I BELIEVE, BEGINNING AT 9:00 A.M.  IF WE ARE NOT READY

11  FOR THEM BY THAT POINT, WE WERE WONDERING IF WE COULD TAKE THEM

12  OUT OF ORDER SO WE CAN INCONVENIENCE THEM THE LEAST.

13           THE COURT:  IT DEPENDS WHERE WE ARE IN THE OTHER

14  WITNESSES.  I'LL BE OPEN TO THE POSSIBILITY, BUT IF MR. CHAZIN

15  HAS GOT 1218 ON THE ROPES AND THAT WOULD BE AN INTERRUPTION, I'M

16  GOING TO LET HIM CONTINUE TO BEAT UP ON 1218.  BUT IT JUST

17  DEPENDS ON HOW PREJUDICIAL IT WOULD BE.  I WOULD SAY 50-50 I

18  WOULD ALLOW THAT.

19           MR. LEUNG:  THANK YOU, YOUR HONOR.

20           THE COURT:  OKAY.  WHAT MORE CAN I DO FOR YOU BEFORE

21  WE BRING THE JURY IN, GET STARTED?

22           MR. CHAZIN:  I THINK THAT'S IT.  IF I COULD JUST

23  MAYBE HAVE ABOUT THREE MINUTES TO GET SET UP.

24           THE COURT:  IT WILL TAKE THREE MINUTES BEFORE WE GET

25  THEM IN HERE.

```
1              DAWN, CAN YOU CALL DOWN AND SEE IF THEY'RE READY?

2                    (PAUSE IN PROCEEDINGS.)

3         THE CLERK:  DAVID SAID THEY WOULDN'T BE READY UNTIL

4    8:00.  THEY ARE WATCHING THE VIDEO.

5         THE COURT:  WE WILL TAKE A SHORT RECESS UNTIL WE HAVE

6    THEM READY.  DAWN, WOULD YOU COME GET ME?

7         THE CLERK:  OF COURSE.

8         THE COURT:  OKAY.  SEE YOU THEN.

9                    (RECESS TAKEN.)

10                   (THE PROSPECTIVE JURY PANEL JURY ENTERED THE

11                   COURTROOM.)

12        THE COURT:  ALL RIGHT.  I WANT TO WELCOME ALL OF YOU

13   PROSPECTIVE JURORS TO THE U.S. DISTRICT COURT.

14        TO GET THINGS OFF TO A PROPER START, THE CLERK WILL

15   NOW CALL THE CASE.

16        THE CLERK:  IT'S CRIMINAL NO. CR 08-0730 WHA, UNITED

17   STATES OF AMERICA VERSUS RODIL NOCHEZ.

18        COUNSEL, PLEASE STATE YOUR APPEARANCES.

19        MR. LEUNG:  WILSON LEUNG FOR THE GOVERNMENT.  WITH ME

20   AT COUNSEL'S TABLE IS ASSISTANT UNITED STATES ATTORNEY CHRISTINE

21   WONG AND SPECIAL AGENT BENJAMIN HORTON OF IMMIGRATION AND

22   CUSTOMS ENFORCEMENT.

23        GOOD MORNING, YOUR HONOR.

24        THE COURT:  GOOD MORNING.

25        MR. CHAZIN:  GOOD MORNING, YOUR HONOR.  SETH CHAZIN
```

1   APPEARING WITH RODIL NOCHEZ, MY CLIENT.  AND MIKE SAFAI, WHO IS

2   ASSISTING ME AT TRIAL TODAY.

3            **THE COURT:**  WELCOME TO YOU.

4            EVERYONE HAVE A SEAT FOR A MOMENT.  LET ME AGAIN

5   WELCOME ALL OF OUR VENIRE.  WE ARE HERE TODAY TO PICK A JURY TO

6   DECIDE THIS CASE.  WE NEED 12 JURORS.  THIS IS A CRIMINAL

7   PROSECUTION BY THE GOVERNMENT.  WE NEED 12 JURORS FOR THAT AND

8   TWO ALTERNATES.  THAT WILL TAKE US ABOUT ANYWHERE FROM THREE TO

9   FOUR HOURS TO PICK THE JURY.  AND THEN WE WILL START THE CASE.

10  LET ME TELL YOU A BIT ABOUT WHAT THE CASE IS ABOUT, AND THEN I

11  WILL TELL YOU WHAT THE SCHEDULE WILL BE, AND THEN WE'LL JUST GET

12  RIGHT DOWN TO IT.

13           IN THIS CASE THE GOVERNMENT IS ON THIS SIDE OF THE

14  ROOM.  THAT'S THE UNITED STATES GOVERNMENT, REPRESENTED BY THE

15  UNITED STATES ATTORNEY'S OFFICE.  THAT'S ON THIS SIDE OF THE

16  ROOM.  I'M POINTING TO THE PROSECUTION.  (INDICATING.)

17           AND ON THIS SIDE OF THE ROOM IS THE DEFENSE,

18  REPRESENTED BY MR. CHAZIN, AND THE DEFENDANT IS MR. RODIL

19  NOCHEZ, N-O-C-H-E-Z.

20           THE GOVERNMENT ACCUSES MR. NOCHEZ OF EIGHT COUNTS OF

21  ATTEMPTED EXPORTATION OF A STOLEN VEHICLE, KNOWING THAT THE

22  VEHICLE WAS STOLEN, IN VIOLATION OF 18 UNITED STATES CODE

23  SECTIONS 553(A) AND SECTION 18 UNITED STATES CODE 2.

24           NOW, AT THE APPROPRIATE TIME, I WOULD GIVE YOU THE

25  DETAILS OF WHAT THOSE OFFENSES ARE UNDER THE STATUTES, BUT JUST

1  TO REPEAT, FOR NOW ALL YOU REALLY NEED TO KNOW ARE THERE ARE

2  EIGHT COUNTS ASSERTED, AND EACH OF THESE ARE ATTEMPTED

3  EXPORTATION OF A STOLEN VEHICLE, KNOWING THAT THE VEHICLE WAS

4  STOLEN AND THAT WOULD, IF PROVEN, BE IN VIOLATION OF 18 UNITED

5  STATES CODE SECTION 553(A) OR SECTION 2.

6          NOW, I'M GOING TO SAY THIS SEVERAL TIMES.  I WANT TO

7  HASTEN TO SAY THAT MERELY BECAUSE THE GOVERNMENT ACCUSES

8  SOMEBODY OF A CRIME MEANS NOTHING, ZERO.  EVERYONE IS PRESUMED

9  INNOCENT.  MR. NOCHEZ IS SITTING RIGHT THERE.  HE'S PRESUMED

10 INNOCENT, AND IT'S THE BURDEN OF THE GOVERNMENT TO PROVE GUILT.

11         SO, THE FACT THAT HE'S ACCUSED OF A CRIME MEANS

12 NOTHING, OTHER THAN WE HAVE AN OCCASION TO COME IN AND SEE IF

13 THE GOVERNMENT CAN BRING IN THE EVIDENCE TO PROVE ITS CASE.  THE

14 BURDEN IS ALWAYS ON THE GOVERNMENT.  I'LL GIVE YOU SOME MORE

15 DETAILS ON THAT LATER ON.

16         SO THAT'S WHERE WE ARE, AND WE NEED A JURY TO DECIDE

17 THE CASE.  THIS IS A FEDERAL COURT, A COURT OF THE UNITED STATES

18 OF AMERICA, AND YOU HAVE BEEN CALLED FORWARD TO POSSIBLY SERVE

19 AS A JUROR, TO TAKE AN OATH OF OFFICE, AND TO DECIDE THE CASE,

20 FAIR AND SQUARE, LISTENING TO THE EVIDENCE, APPLYING THE LAW AND

21 THEN MAKE A DECISION.

22         IT IS AN IMPORTANT WAY IN WHICH YOU GET AN

23 OPPORTUNITY TO SERVE YOUR COUNTRY.  WHEN I SAY THAT, I DON'T

24 MEAN SERVE THE PROSECUTION, I MEAN SERVE THE SYSTEM OF JUSTICE

25 THAT WE HAVE IN THIS COUNTRY AND IN THE UNITED STATES DISTRICT

1    COURTS.

2            SO, THAT IS OUR BACKGROUND.

3            NOW, HERE'S THE SCHEDULE THAT WE'RE GOING TO BE

4    FOLLOWING:  WE HAVE -- I'M TOLD THAT THIS, AS CASES GO, THIS

5    WILL BE ON THE SHORTER SIDE.  SOMETIMES YOU GET CALLED IN FOR A

6    FEDERAL CASE.  IT COULD BE SEVEN OR EIGHT WEEKS.  THIS IS NOT

7    SUCH A CASE.  THIS WOULD BE STARTING TODAY AND GOING THROUGH

8    FRIDAY.  IT WOULD BE ALL DAY EVERY DAY THIS WEEK, AND THEN GO

9    THROUGH FRIDAY.  THEN IT WOULD RESUME NEXT WEEK IF WE DON'T

10   HAVE -- IF WE HAVEN'T COMPLETED THE CASE BY THEN.

11           I WOULD ASK YOU TO BE AVAILABLE ALL THE WAY THROUGH

12   UNTIL FRIDAY OF THE FOLLOWING WEEK, MEANING NEXT WEEK, SO IT

13   WOULD BE FOUR DAYS THIS WEEK AND FIVE DAYS NEXT WEEK.  I

14   THINK -- IT'S UNLIKELY WE WILL NEED ALL OF THAT TIME, BUT I

15   NEVER KNOW.  AND IF YOU ARE GOING TO SERVE, YOU WOULD HAVE TO

16   COMMIT TO THAT TIMEFRAME, FOUR DAYS THIS WEEK, FIVE DAYS NEXT

17   WEEK.

18           THE LAWYERS AGREE THAT WOULD BE ADEQUATE TIME?

19           **MR. LEUNG:**  YES, YOUR HONOR.

20           **MR. CHAZIN:**  YES.

21           **THE COURT:**  ALL RIGHT.  NOW, WHAT IS OUR SCHEDULE?  I

22   HAVE FOUND THAT JURORS LIKE THE SCHEDULE THAT I'M ABOUT TO TELL

23   YOU BECAUSE IT ALLOWS THEM TO CARRY ON WITH THEIR LIVES WHILE

24   THEY ARE SERVING THEIR COUNTRY AND JURY SERVICE.  THE SCHEDULE

25   IS THIS.  WE START WITH -- THE LAWYERS COME IN EVEN EARLIER, BUT

1    THE JURORS COME IN AT 7:45, AND THEN YOU GET A BREAK AT

2    1:00 O'CLOCK.  THEN YOU GO HOME, YOU GO BACK TO WORK, YOU DO

3    WHATEVER YOU ARE GOING TO DO.

4         SO YOU HAVE THE REST OF THE DAY TO CARRY ON WITH YOUR

5    LIVES, AND THE BREAK COMES AT A POINT WHEN THE COMMUTE IS A LOT

6    EASIER THAN IT WOULD OTHERWISE BE.

7         SO IT IS TRUE THAT YOU HAVE TO BE HERE AT 7:45, AND

8    THAT SOMETIMES IS A LITTLE -- I DON'T WANT TO SAY PROBLEMATIC

9    FOR PEOPLE, BUT I'M AMAZED THAT TIME AFTER TIME, ALL 12 OR 14

10   PEOPLE ARE HERE ON TIME.  IN FACT, WE'VE HAD THEM HERE AS EARLY

11   AS 7:30 AND WE STARTED THE TRIAL.  WE WERE READY TO GO AT 7:30.

12   YOU SHOULD BE HERE BY 7:45.  WE WILL ALWAYS START WITH THE

13   EVIDENCE BY 8:00 A.M.  AND I WILL ALWAYS LET YOU OUT BY

14   1:00 P.M.

15        THERE WILL BE TWO BREAKS IN THERE, TWO CONVENIENCE

16   BREAKS, BUT NO LUNCH BREAK BECAUSE WE'RE GOING TO STOP EARLY

17   ENOUGH THAT YOU CAN GO GET LUNCH ON YOUR OWN.  I WILL TRY TO

18   SUPPLY YOU WITH GOOD FEDERAL COFFEE AND GOOD FEDERAL DONUTS

19   EVERY MORNING.  SO YOU WILL HAVE THAT TO LOOK FORWARD TO WHEN

20   YOU COME IN AT 7:45 IN THE MORNING.

21        THEN THE JURORS -- I KNOW THAT THIS IS A SACRIFICE

22   THAT YOU MAKE FOR YOUR COUNTRY, BUT I WILL SAY THIS:  THAT TIME

23   AND TIME AGAIN THE JURORS WRITE IN AFTERWARDS AND SAY, THIS IS

24   ONE OF THE BEST THINGS I'VE EVER DONE, I'M VERY GRATEFUL I HAD

25   THE OPPORTUNITY TO SERVE IN THIS MANNER.  SO I THINK WE HAVE

1    GOOD LAWYERS ON BOTH SIDES HERE.  I THINK YOU WILL FIND THAT THE

2    CASE WILL BE WELL PRESENTED AND BY BOTH SIDES, AND SO THIS IS A

3    GOOD OCCASION FOR YOU.

4            NOW, SO EVERYONE HAS IN MIND THE SCHEDULE.  YOU HAVE

5    TO BE HERE.  YOU CANNOT SAY, OH, I'LL BE LATE, I'LL BE AN HOUR

6    LATE, BUT I'LL LOOK AT SOMEBODY'S NOTES.  YOU KNOW HOW IT USED

7    TO WORK IN SCHOOL?  YOU COULD BE LATE AND TRY TO CRIB OFF OF

8    SOMEBODY ELSE'S NOTES?  IT CANNOT WORK THAT WAY.  WHEN SOMEBODY

9    IS LATE, WHICH, FORTUNATELY, DOESN'T HAPPEN TOO OFTEN, WE SIT IN

10   STONEY SILENCE, THE JURORS SITTING, THE LAWYERS SITTING HERE,

11   WAITING FOR THAT LAST PERSON TO ARRIVE.

12           IT IS EMBARRASSING FOR THAT LAST PERSON WHEN THEY

13   FINALLY ARRIVE.  YOU CANNOT DO THAT TO THE REST OF US.  IT'S

14   OKAY TO INCONVENIENCE ME, I DON'T MIND IT.  BUT TO INCONVENIENCE

15   THE OTHER JURORS IS NOT GOOD, SO YOU MUST BE COMMITTED TO BEING

16   HERE AT 7:45 AND TO STAYING UNTIL 1:00.

17           NOW, WHEN THE DELIBERATIONS START, I'LL REMIND YOU OF

18   SOME OF THIS LATER, BUT WHEN THE DELIBERATIONS START, SOMETIMES

19   THE JURORS LIKE TO GO ALL THE WAY THROUGH AT 4:00 O'CLOCK.

20   START AT, SAY, 7:45 AND GO UNTIL 4:00 O'CLOCK.  THAT'S FINE,

21   BECAUSE OFTEN THEY KNOW HOW CLOSE THEY ARE TO A VERDICT, AND I

22   JUST LEAVE IT TO UP THEM.

23           BUT DURING THE ACTUAL PRESENTATION OF THE EVIDENCE

24   AND THE PRESENTATION OF THE ARGUMENTS BY THE LAWYERS, 1:00

25   O'CLOCK IS THE -- WE ARE NOT GOING TO GO PAST 1:00.  THAT GIVES

1  YOU THE OPPORTUNITY TO GO BACK HOME, GO BACK TO WORK, TAKE CARE

2  OF THE REST OF YOUR LIVES WHILE YOU'RE SERVING YOUR COUNTRY.

3  OKAY.

4          SO, NOW, WHAT WE'RE GOING TO DO TODAY AT A MINIMUM IS

5  PICK THE JURY, AND I THINK, JUST TO PUT YOUR MIND AT EASE, THIS

6  WILL GO PAST 1:00 O'CLOCK, MOST LIKELY, BUT SOMETIMES WE ARE

7  DONE BY 1:00, BUT TODAY, IN ORDER TO MAKE SURE WE ACTUALLY GET

8  THE JURY SEATED, IF WE HAVE TO GO TO GO PAST 1:00 O'CLOCK, WE

9  WILL DO THAT.

10         THE PROCEDURE IS GOING TO BE FOR ME TO CALL FORWARD A

11  NUMBER OF YOU AND START ASKING YOU SOME QUESTIONS WHILE THE REST

12  OF YOU IN THE BACK OF THE ROOM PAY ATTENTION.  SO WHEN YOU ARE

13  CALLED FORWARD, YOU WILL KNOW WHAT THE QUESTIONS ARE AND CAN

14  ANSWER IN AN ABBREVIATED FORM VERY OFTEN.

15         SO NOW, THE FIRST THING I WANT TO DO IS FIND OUT IF

16  ANY OF YOU ARE SICK.  DO YOU HAVE THE FLU?  DO YOU HAVE A BAD

17  COLD?  BRONCHITIS?  ARE YOU HACKING AND COUGHING?  IF SO, RAISE

18  YOUR HAND.  ALL OF YOU WHO ARE RAISING YOUR HAND, I WANT YOU TO

19  COME DOWN.  REMEMBER YOU ARE UNDER OATH.  WE'LL START OVER HERE.

20         WHO RAISED YOUR HAND OVER HERE?  WILL YOU PLEASE COME

21  TO THE MICROPHONE DOWN HERE AND EXPLAIN TO ME YOUR PROBLEM SO I

22  CAN DECIDE TO EXCUSE YOU OR NOT.

23         WHY AM I DOING THIS?  BECAUSE JURY SERVICE IS A

24  HARDSHIP ON EVERYBODY, BUT YOU SHOULDN'T ALSO BE EXPOSED TO

25  PEOPLE WHO ARE GOING TO GET YOU SICK.  ALL RIGHT.  JUST ADJUST

1    THE MICROPHONE.  WHAT IS YOUR NAME, PLEASE?

2              **PROSPECTIVE JUROR MONTGOMERY:**  MARYLYNN MONTGOMERY.

3         **THE COURT:**  WHAT IS YOUR ILLNESS?

4              **PROSPECTIVE JUROR MONTGOMERY:**  I HAD A COLD LAST

5    WEEK, SO I STILL HAVE RESIDUALS OF HACKING EVERY NOW AND THEN

6    THROUGHOUT THE DAY.

7              **THE COURT:**  IF YOU TAKE COUGH DROPS, WILL YOU BE

8    OKAY?

9              **PROSPECTIVE JUROR MONTGOMERY:**  I TOOK SOME THIS

10   MORNING.  IT HELPED.  IT'S JUST INTERMITTENT.  IT'S NOT LIKE ALL

11   DAY.

12             **THE COURT:**  ARE YOU CONTAGIOUS, DO YOU THINK?

13             **PROSPECTIVE JUROR MONTGOMERY:**  NO.

14             **THE COURT:**  I AM GOING TO ASK YOU TO CONTINUE TO

15   STAND BY.  YOU HAVE DONE THE RIGHT THING TO TELL ME YOUR

16   SITUATION.  I DON'T THINK I CAN EXCUSE YOU, GIVEN THAT YOU'RE AT

17   THE END OF THE PROCESS.  YOU LOOK PERFECTLY HEALTHY RIGHT NOW.

18   I DON'T WANT THE REST OF YOU TO START ACTING SICK.  YOU MAY GO

19   HAVE A SEAT.

20             WHO'S NEXT?  ALL RIGHT.  I SEE YOUR HAND GOING UP

21   BACK THERE, PLEASE COME FORWARD.  WHAT IS YOUR NAME?

22             **PROSPECTIVE JUROR LIU:**  MY NAME IS EDMUND LIU.

23             **THE COURT:**  ARE YOU SICK?

24             **PROSPECTIVE JUROR LIEU:**  YES, I HAVE BEEN HAVING A

25   DRY COUGH FOR THE PAST COUPLE OF WEEKS.  I HAVE BEEN TRYING TO

1   DRINK FLUIDS AND WHATNOT, BUT IT STILL COMES EVERY ONCE IN A

2   WHILE.

3          **THE COURT:**  WHAT IS THE -- WHAT DO YOU HAVE -- HAVE

4   YOU GONE TO THE DOCTOR?

5          **PROSPECTIVE JUROR LIU:**  I'VE GONE TO A DOCTOR.  THEY

6   JUST TOLD ME IT'S JUST A DRY COUGH AND OUGHT TO DRINK PLENTY OF

7   FLUIDS.

8          **THE COURT:**  I NEVER HEARD OF DRY COUGH.  WHAT IS

9   THAT?

10         **PROSPECTIVE JUROR LIU:**  IT'S MORE A COUGH WHERE YOU

11  ARE NOT COUGHING UP PHLEGM.  IT'S JUST A HACKING COUGH, AND I'VE

12  HAD IT LIKE, I WOULD SAY, PROBABLY PAST TWO WEEKS NOW.

13         **THE COURT:**  ARE YOU CONTAGIOUS?

14         **PROSPECTIVE JUROR LIU:**  NO.

15         **THE COURT:**  DO YOU HAVE A FEVER?

16         **PROSPECTIVE JUROR LIU:**  NO.

17         **THE COURT:**  I'M GOING TO LET YOU -- I THINK YOU'VE

18  GOT TO STAY FOR THE TIME BEING.

19         **PROSPECTIVE JUROR LIU:**  THANK YOU.

20         **THE COURT:**  THANK YOU FOR BRINGING IT UP, THOUGH.

21         ANYONE ELSE?  ALL RIGHT.  BACK THERE.

22         GOOD MORNING.  WHAT'S YOUR NAME?

23         **PROSPECTIVE JUROR HOWELL:**  RYAN HOWELL.

24         **THE COURT:**  YOU'VE GOT TO COME TO THE MICROPHONE.

25         **PROSPECTIVE JUROR HOWELL:**  RYAN HOWELL.

```
 1              THE COURT:  WHAT'S YOUR SITUATION?

 2              PROSPECTIVE JUROR HOWELL:  I HAVE JUST A RESIDUAL

 3   COUGH FROM A COLD I'M GETTING OVER.

 4              THE COURT:  ARE YOU CONTAGIOUS?

 5              PROSPECTIVE JUROR HOWELL:  NO.

 6              THE COURT:  DO YOU HAVE A FEVER?

 7              PROSPECTIVE JUROR HOWELL:  NO.

 8              THE COURT:  ARE YOU GOING TO BE HACKING AND COUGHING?

 9              PROSPECTIVE JUROR HOWELL:  ONCE IN A WHILE.  I SHOULD

10   BE ALL RIGHT.  I'M FIT TO WORK, SO...

11              THE COURT:  WILL YOU TAKE COUGH DROPS AND SUPPRESS

12   THAT?

13              PROSPECTIVE JUROR HOWELL:  SHOULD BE FINE.

14              THE COURT:  ALL RIGHT.  THEN I AM GOING TO ASK YOU TO

15   STAY HERE.  THANK YOU, THOUGH, FOR BRINGING IT UP.

16              NEXT?  SOMEBODY OVER HERE RAISED THEIR HAND.

17              THE COURT:  YES.

18              PROSPECTIVE JUROR TSAI:  MY NAME IS NICK TSAI.

19              THE COURT:  YES.

20              PROSPECTIVE JUROR TSAI:  I GOT A RUNNY NOSE.

21              THE COURT:  YOU GOT A RUNNY NOSE?

22              PROSPECTIVE JUROR TSAI:  IT GOT THROUGH A FEW DAYS

23   AGO.  IT'S GETTING BETTER.

24              THE COURT:  DO YOU HAVE A FEVER?

25              PROSPECTIVE JUROR TSAI:  NO.
```

```
 1              THE COURT:  WHAT DO YOU MEAN, YOU HAVE A RUNNY NOSE?

 2              PROSPECTIVE JUROR TSAI:  A STUFFED NOSE.

 3              THE COURT:  DO YOU HAVE TO BLOW YOUR NOSE A LOT?

 4              PROSPECTIVE JUROR TSAI:  ONCE IN A WHILE.

 5              THE COURT:  ARE YOU GOING TO GET SOMEBODY ELSE SICK

 6  IF THEY'RE HERE?

 7              PROSPECTIVE JUROR TSAI:  CANNOT GUARANTEE.

 8              THE COURT:  THAT'S GOOD.  BUT WHAT DO YOU THINK?

 9  HAVE YOU GOTTEN ANYBODY ELSE IN YOUR HOUSEHOLD SICK LATELY?

10              PROSPECTIVE JUROR TSAI:  MY WIFE.

11              THE COURT:  WHEN DID YOU GET HER SICK?

12              PROSPECTIVE JUROR TSAI:  SHE WAS SICK COUPLE OF DAYS

13  AGO.

14              THE COURT:  WELL, WHEN DID -- DID YOU EVER HAVE A

15  FEVER AS PART OF THIS?

16              PROSPECTIVE JUROR TSAI:  MONDAY, I THINK.

17              THE COURT:  MONDAY THIS WEEK?

18              PROSPECTIVE JUROR TSAI:  YES.

19              THE COURT:  YESTERDAY?  YOU HAD A FEVER YESTERDAY?

20              PROSPECTIVE JUROR TSAI:  I GOT FEVER THE FIRST DAY.

21              THE COURT:  BUT YESTERDAY YOU HAD A FEVER?

22              PROSPECTIVE JUROR TSAI:  I'M SORRY.  IT'S NOT MONDAY.

23  LAST FRIDAY.

24              THE COURT:  LAST FRIDAY YOU HAD A FEVER?

25              PROSPECTIVE JUROR TSAI:  I GOT FEVER.  IT'S 99.
```

```
 1              THE COURT:  NINETY-NINE?  AND THEN THE FEVER WENT

 2   AWAY?

 3              PROSPECTIVE JUROR TSAI:  NO.  ONLY THE FIRST DAY.

 4              THE COURT:  DO YOU HAVE A FEVER NOW?

 5              PROSPECTIVE JUROR TSAI:  I GUESS NOT.

 6              THE COURT:  WELL, I DON'T THINK YOU'RE GOING TO GET

 7   ANYBODY SICK, CONTAGIOUS, SO I'M GOING TO ASK YOU TO STAY HERE.

 8   ALL RIGHT.

 9              PROSPECTIVE JUROR TSAI:  OKAY.

10              THE COURT:  ALL RIGHT.  ANYONE ELSE?  ANYBODY OUT

11   THERE FEEL LIKE YOU'RE GOING TO GET ANYONE ELSE SICK?  IF YOU

12   ARE, I'M GOING TO EXCUSE YOU.  AS I SAY, IT'S A BURDEN TO SERVE

13   AS A JUROR.  YOU SHOULDN'T BE BURDENED WITH GETTING SOMEBODY

14   ELSE'S ILLNESS.

15              OKAY.  GREAT.  ALL RIGHT.

16              AT THIS TIME I THINK THOSE ARE ALL THE PRELIMINARIES.

17   SO WHAT WE'RE GOING TO DO IS ASK -- WE'RE GOING TO BRING FORWARD

18   32 OF YOU.  YOU'LL SEE HOW THIS WORKS AS WE GO ALONG.  THERE'S

19   NO POINT EXPLAINING IT.  IT'S BETTER JUST TO DO IT AND YOU'LL

20   SEE.

21              THE ONE THING I NEED TO SAY, DURING ANY BREAKS, OR

22   EVEN WHILE WE ARE IN PROCESS, PLEASE DO NOT DISCUSS WITH EACH

23   OTHER, OR ANYONE ELSE ANYTHING HAVING TO DO WITH THIS CASE,

24   DON'T TALK WITH THE LAWYERS, DON'T TALK WITH THE PARTIES, DON'T

25   TALK WITH THE AGENTS, DON'T TALK WITH ANYONE ELSE WHO HAPPENS TO
```

1   BE IN THE COURTROOM.

2           YOU SAY, WHY IS THAT?  YOU HAVE TO HAVE A -- YOU

3   KNOW, YOU DON'T WANT TO BE CONTAMINATED BY SOME COMMENT THAT

4   SOMEBODY ELSE HAS MADE.  IF YOU DO, THEN I HAVE TO HAVE AN

5   EVIDENTIARY HEARING TO FIND OUT WHAT WAS SAID.  PLEASE DON'T.  I

6   KNOW YOU CAN DO IT THE RIGHT WAY.  JUST TAKE THAT ADMONITION TO

7   HEART.

8           ALL RIGHT.  SO AT THIS TIME WE ARE GOING TO CALL

9   FORWARD 32 NAMES.

10          **MR. CHAZIN:**  EXCUSE ME, YOUR HONOR.  I APOLOGIZE FOR

11  INTERRUPTING.  I WAS WONDERING IF IT WOULD BE OKAY WITH THE

12  COURT TO EXPLAIN WHY MY CLIENT, WHO DOES SPEAK SOME ENGLISH IS

13  STILL ASSISTED BY THE --

14          **THE COURT:**  I WOULD BE HAPPY TO DO THAT.  THAT'S AN

15  EXCELLENT POINT.  WOULD YOU LIKE TO MAKE THE EXPLANATION?

16          **MR. CHAZIN:**  YES, I WOULD, YOUR HONOR.

17          **THE COURT:**  YES.

18          **MR. CHAZIN:**  LADIES AND GENTLEMEN, I JUST WANT TO

19  EXPLAIN THAT MY CLIENT, MR. NOCHEZ, AS YOU CAN SEE HAS SOME

20  HEADPHONES ON AND YOU HEAR SOMEBODY TALKING.  THAT'S BECAUSE

21  HE'S BEING ASSISTED BY A SPANISH-SPEAKING INTERPRETER.  ALTHOUGH

22  HE DOES UNDERSTAND AND SPEAK ENGLISH, HIS FIRST LANGUAGE IS

23  SPANISH.  THAT IS WHY HE'S BEING ASSISTED BY THE

24  SPANISH-SPEAKING INTERPRETER, ESPECIALLY WHEN WE ARE GOING TO BE

25  TALKING ABOUT LEGAL MATTERS AND OTHER COMPLICATED WORDS OR

1   ISSUES.  THIS WILL MAKE IT MOST CLEAR FOR HIM.  THAT'S WHY.

2           **THE COURT:**  ALL RIGHT.  WHAT IS HAPPENING THERE IS

3   PERFECTLY NORMAL.  THIS IS DONE IN ANY TRIAL WHERE ONE OF THE

4   PARTIES HAS A NEED FOR TRANSLATION.  SO THERE'S ABSOLUTELY

5   NOTHING UNUSUAL ABOUT IT.  ALL RIGHT.

6           SO CAN WE NOW START CALLING FORWARD THE FIRST 32,

7   COUNSEL?  DOES THAT WORK?

8           **MR. LEUNG:**  THAT'S FINE WITH THE GOVERNMENT, YOUR

9   HONOR.

10          **MR. CHAZIN:**  YES, YOUR HONOR.

11          **THE COURT:**  ALL RIGHT.  VERY WELL.  LET'S DO THE

12  NAMES THEN.

13          **THE CLERK:**  ALL RIGHT.  TERRIS STORNETTA,

14  S-T-O-R-N-E-T-T-A.

15          **THE COURT:**  OKAY.  WHERE ARE YOU, PROSPECTIVE JUROR

16  STORNETTA?

17          **PROSPECTIVE JUROR STORNETTA:**  BACK HERE.

18          **THE COURT:**  COME FORWARD.  LET'S JUST HOLD OFF, AND

19  I'LL TELL YOU WHAT TO DO.

20          MS. STORNETTA, AM I SAYING THAT RIGHT?

21          **PROSPECTIVE JUROR STORNETTA:**  YES.

22          **THE COURT:**  COME FORWARD AND HAVE A SEAT IN THE FIRST

23  SEAT IN THE JURY BOX THAT IS CLOSEST TO THE COURT REPORTER.

24  JUST MAKE YOURSELF COMFORTABLE THERE.

25          ALL RIGHT.  NEXT.

```
 1              THE CLERK:  GARY CUEVAS, C-U-E-V-A-S.

 2              THE COURT:  HAVE SEAT NUMBER TWO, RIGHT BY

 3   MS. STORNETTA.

 4              THE CLERK:  CATHY TURNER, T-U-R-N-E-R.

 5              THE COURT:  OKAY, MS. TURNER.  I THINK YOU SEE THE

 6   PATTERN HERE.  PLEASE TAKE THE NEXT SEAT, WELCOME.

 7              NEXT.

 8              THE CLERK:  ANN SIMS, S-I-M-S.

 9              THE COURT:  ALL RIGHT.  MS. SIMS, YOU'RE NEXT.

10              THE CLERK:  JAN DIAZ, D-I-A-Z.

11              THE COURT:  NEXT.  THAT'S MS. DIAZ.  ALL RIGHT.

12              THE CLERK:  MARY PUGH, P-U-G-H.

13              THE COURT:  WHERE IS MARY PUGH?

14              PROSPECTIVE JUROR PUGH:  HERE.

15              THE CLERK:  THERE WE GO.

16              THE COURT:  OKAY.  ALL RIGHT.  NOW WE GO TO THE BACK

17   ROW, AND THAT WILL BE?

18              THE CLERK:  PARDEEP KAUR, K-A-U-R.

19              THE COURT:  OKAY.

20              THE CLERK:  DAVID MORGAN, M-O-R-G-A-N.

21              THE COURT:  MS. KAUR, AM I SAYING THAT RIGHT?

22              PROSPECTIVE JUROR KAUR:  YES.

23              THE COURT:  HAVE THE SEAT RIGHT THERE, THAT ONE RIGHT

24   THERE.  THANK YOU.

25              AND WHO'S NEXT?
```

1              **MS. WONG:**  KARL LAUFF, L-A-U-F-F.

2              **THE COURT:**  BY THE WAY, JUST SO YOU'LL ALL KNOW, AS

3    MR. LAUFF IS COMING FORWARD, THESE ARE RANDOMLY -- THESE ARE

4    RANDOM.  IT'S NOT ALPHABETICAL OR ANYTHING LIKE THAT.  OKAY.

5    NEXT.

6              **THE CLERK:**  BRUCE RUCKER, R-U-C-K-E-R.

7              MEGAN CARROLL, C-A-R-R-O-L-L.

8              **THE COURT:**  OKAY.

9              **THE CLERK:**  JOHN LOWENBERG, L-O-W-E-N-B-E-R-G.

10             JOHN MILLS, M-I-L-L-S.

11             **THE COURT:**  ALL RIGHT.  NOW WE NEED TO START A NEW

12   PLACE, AND WHO IS THE NEXT PERSON?  AND I'LL TELL THAT PERSON

13   WHERE THEY SHOULD SIT.

14             **THE CLERK:**  OKAY.  WOLFGANG HERDA, H-E-R-D-A.

15             **THE COURT:**  OKAY.  NOW, MR. HERDA, IF YOU WILL START

16   A NEW ROW RIGHT UNDER -- ON THE VERY FRONT WHERE I'M POINTING

17   UNDER THE THERMOSTAT, THAT WOULD BE GREAT.

18             JOANN MORGAN.  IT'S M-O-R-G-A-N.

19             TERESA ORTA, O-R-T-A.

20             LINDA PERRY, P-E-R-R-Y.

21             CAROLYN MERKIN, M-E-R-K-I-N.

22             **THE COURT:**  I'M GOING TO HAVE TO ASK YOU ALL TO SCOOT

23   TOGETHER A LITTLE CLOSER.  THANK YOU.

24             **THE CLERK:**  LORING BROWN, B-R-O-N -- I'M SORRY.

25   B-R-O-W-N.

```
1                    BENJAMIN HOVERMALE, H-O-V-E-R-M-A-L-E.

2           THE COURT:   ARE WE SAYING THAT RIGHT?

3           PROSPECTIVE JUROR HOVERMALE:   YES.

4           THE COURT:   OKAY.

5           THE CLERK:   MATTHEW WATHEN, W-A-T-H-E-N.

6           CORY GELDER, G-E-L-D-E-R.   ALL RIGHT.

7           THE COURT:   SO NOW WE ARE GOING TO START A NEW ROW.

8  IT'S GOING TO BE OVER THERE.   THAT WILL BE OUR LAST ROW.

9           THE CLERK:   PAULINE CLARKE, C-L-A-R-K-E.

10          THE COURT:   THE FIRST SEAT THERE.   RIGHT THERE.

11 THANK YOU.

12          THE CLERK:   GUILLERMO MONTOYA, M-O-N-T-O-Y-A.

13          THE COURT:   WELCOME.

14          THE CLERK:   JEREMIAH NOVELLY, N-O-V-E-L-L-Y.

15          THE COURT:   THANK YOU.

16          THE CLERK:   KIM-ANH NGUYEN-YOSHI, N-G-U-Y-E-N.

17          THE COURT:   ALL RIGHT.

18          THE CLERK:   REX NOMBRADO, N-O-M-B-R-A-D-O.

19          ROBERT FUGELSETH, F-U-G-E-L-S-E-T-H.

20          RUTH NATHAN, N-A-T-H-A-N.

21          THE COURT:   ALL RIGHT.

22          THE CLERK:   RUTH JOHNSON, J-O-H-N-S-O-N.   I'M SORRY.

23 NOT RUTH, BUT RELIA.   WHERE DID I GET RUTH?   RELIA JOHNSON.

24          THE COURT:   OKAY.

25          THE CLERK:   DANIEL BURGIN, B-U-R-G-I-N.
```

1          **THE COURT:**  ALL RIGHT.  MR. BURGIN, YOU GET TO BE THE

2     LAST ONE FOR THIS SEGMENT.

3          NOW, YOU WILL ALL NOTICE THAT WE HAVE CALLED A

4     MAJORITY OF YOU FORWARD.  IF -- USUALLY ABOUT HALF OF -- MAYBE

5     HALF OF YOU IN THE BACK WILL BE CALLED FORWARD YET, SO PLEASE

6     CONTINUE TO PAY ATTENTION TO ALL OF THE QUESTIONS THAT ARE ASKED

7     SO WHEN YOUR TURN COMES YOU'LL BE ABLE TO ANSWER MORE QUICKLY.

8          ALL RIGHT.  I WANT TO ASK EACH OF YOU BEFORE WE START

9     GETTING YOUR BIOGRAPHICAL INFORMATION, I'D LIKE TO ASK YOU IF

10    ANY OF YOU HAVE A HARDSHIP?

11         NOW, RECOGNIZING THAT YOU WERE SUPPOSED TO HAVE

12    ALREADY GOTTEN YOUR EXCUSE DONE, IF YOU HAVE ONE LONG AGO, I

13    STILL WANT TO ASK YOU IF YOU HAVE ANY HARDSHIP ISSUE THAT YOU

14    WOULD LIKE TO RAISE.  THAT DOESN'T MEAN THAT I WILL GRANT IT.  I

15    HAVE TO CONSIDER IT, AND WILL DO SO, BUT I WOULD LIKE TO GIVE

16    YOU THIS OPPORTUNITY.  YOU'VE NOW HEARD HOW LONG THE CASE WILL

17    GO, WHAT THE SCHEDULE WILL BE, AND I WOULD ASK YOU TO RAISE YOUR

18    HAND IF -- IS THE MICROPHONE READY TO GO?

19         **THE CLERK:**  YES, IT IS.

20         **THE COURT:**  THEN IF YOU DO HAVE A HARDSHIP, I WILL

21    CONSIDER IT.  I CAN'T SAY FOR SURE THAT I WILL GRANT IT, BUT

22    WE'LL SEE.

23         FIRST LET'S TAKE THE JURY BOX.  ANYONE OF YOU 14 HAVE

24    A HARDSHIP ISSUE THAT YOU WISH TO RAISE?

25         **THE COURT:**  I SEE SOME HANDS THAT WENT UP QUICKLY AND

1    THEN A FEW THAT KIND OF CAME ALONG AFTER THE FACT.  LET'S HAND

2    THE MICROPHONE TO THE FRONT ROWS.  FIRST -- IS IT MS. PUGH?

3              **PROSPECTIVE JUROR PUGH:**  YES.

4              **THE COURT:**  MS. PUGH, WHAT'S YOUR SITUATION?

5              **PROSPECTIVE JUROR PUGH:**  I AM CLASSIFIED AS A

6    NONEXEMPT EMPLOYEE AT MY JOB, SO I DON'T HAVE ANY JURY DUTY

7    REIMBURSEMENT.  SO WHEN I'M NOT THERE, THEN I'M NOT EARNING ANY

8    MONEY.

9              **THE COURT:**  WHAT IS YOUR JOB?

10             **PROSPECTIVE JUROR PUGH:**  I RUN AN ARTS STUDIO AT A

11   TEEN CLUB IN SANTA ROSA.

12             **THE COURT:**  SAY THAT AGAIN.  YOU RUN WHAT?

13             **PROSPECTIVE JUROR PUGH:**  AN ARTS STUDIO.  I'M AN ARTS

14   STUDIO COORDINATOR AT CHOPS'S TEEN CLUB IN SANTA ROSA.

15             **THE COURT:**  WHAT ARE YOUR HOURS OF EMPLOYMENT?

16             **PROSPECTIVE JUROR PUGH:**  IT'S PART TIME, AND I'M

17   HOURLY.

18             **THE COURT:**  CAN'T YOU WORK IN THE AFTERNOON AND COME

19   OUT FINE?

20             **PROSPECTIVE JUROR PUGH:**  THAT'S TRUE, IF WE DO GET

21   OUT AT 1:00 O'CLOCK, THEN I CAN GO BACK TO SANTA ROSA, GET THERE

22   BY 3:00.  THE PLACE CLOSES AT 7:00.

23             **THE COURT:**  I THINK IT WILL WORK OUT FINE.  THE ONLY

24   DAYS IT WILL BE A PROBLEM FOR YOU ARE CONCEIVABLY TODAY AND THE

25   DAYS THE JURY IS DELIBERATING.  ALL THE OTHER DAYS YOU WILL BE

1    OUT BY 1:00.

2              I UNDERSTAND.  YOU KNOW, THAT'S WHY IT'S A SACRIFICE

3    TO SERVE YOUR COUNTRY IN THIS WAY.  AND I APPRECIATE YOUR

4    WILLINGNESS TO DO IT.

5              ALL RIGHT.  MS. YU, DID YOU RAISE YOUR HAND?  WHAT IS

6    YOUR SITUATION?

7              **PROSPECTIVE JUROR YU:**  PREGNANT.  AND I HAVE TO USE

8    THE BATHROOM MORE THAN USUAL.  BESIDES THAT, EVERYTHING ELSE IS

9    FINE.

10             **THE COURT:**  YOU ARE PREGNANT?

11             **PROSPECTIVE JUROR YU:**  (NODS HEAD.)

12             **THE COURT:**  CONGRATULATIONS.  MAY I ASK HOW FAR ALONG

13   YOU ARE?

14             **PROSPECTIVE JUROR YU:**  THE THIRD TRIMESTER, DUE IN

15   JUNE.

16             **THE COURT:**  ARE YOU SAYING YOU ARE HAVE TO SEE THE

17   DOCTOR MORE THAN USUAL?

18             **PROSPECTIVE JUROR YU:**  NO, NO.  I HAVE TO USE THE

19   RESTROOM.

20             **THE COURT:**  HOW FREQUENT IS THAT?

21             **PROSPECTIVE JUROR YU:**  IT VARIES.

22             **THE COURT:**  WELL, FIRST I SHOULD SAY THIS, IF ANY --

23   IT'S UP TO YOU.  IF ANYONE WANTS TO RAISE AN ISSUE IN PRIVATE,

24   SOMETIMES THEY WANT TO, WE WILL HEAR YOU AT THE SIDEBAR, BUT IT

25   WILL TAKE A WHILE TO GET TO THAT.  I HAVE TO KIND OF SANDWICH IT

1   IN AMONG OTHER THINGS.

2          IS THIS SOMETHING YOU WANT TO DO MORE PRIVATELY, OR

3   DO YOU WANT TO TALK ABOUT IT HERE IN THE COURTROOM?

4          **PROSPECTIVE JUROR YU:**  I DON'T KNOW HOW OFTEN YOU

5   GUYS TAKE BREAKS.

6          **THE COURT:**  WE TAKE BREAKS ROUGHLY EVERY HOUR AND A

7   HALF.

8          **PROSPECTIVE JUROR YU:**  OKAY.

9          **THE COURT:**  YOU THINK YOU'LL BE OKAY?

10         **PROSPECTIVE JUROR YU:**  I HOPE SO.

11         **THE COURT:**  HERE'S THE OTHER THING.  WAIT, WAIT.  IF

12  YOU WERE TO EVER RAISE YOUR HAND -- THIS APPLIES TO ANY MEMBER

13  OF THE JURY.

14         IF A MEMBER OF THE JURY RAISES THEIR HAND AND SAYS,

15  CAN WE HAVE A FACILITIES BREAK, WE ARE GOING TO TAKE ONE RIGHT

16  THEN, OR, YOU KNOW, WITHIN 30 SECONDS.  BUT, YOU KNOW, IT'S

17  JUST -- IT HAPPENS EVERY NOW AND THEN.  SO WE WOULD DO THAT.

18         AND THE JURY ROOM IS RIGHT BACK BEHIND THIS DOOR, AND

19  THERE ARE TWO, YOU KNOW, FACILITIES IN THERE, AS WELL AS THE

20  JURY ROOM.

21         I THINK PROBABLY YOU'D BE OKAY.  ALL RIGHT.

22         WHO ELSE RAISED THEIR HAND?  LET'S GO TO MR. MILLS.

23         **PROSPECTIVE JUROR MILLS:**  I AM A LEAD ENGINEER AT A

24  VENTURE FUNDED STARTUP, AND MY TEAM IS IN PRAGUE.  PART IS IN

25  PRAGUE AND PART IS HERE.  I WORK ABOUT TEN-HOUR DAYS.  IT IS

1  HARD NOT TO BE AROUND TO MANAGE THESE GUYS.

2  I'M LOOKING FOR A SECOND ROUND OF FUNDING, AS WELL AS

3  PUTTING A PRODUCT OUT.  IT IS AN INTERESTING TIME.  MONEY IS

4  GOOD, NO PROBLEMS THERE, BUT TIME IS THE -- TIME IS THE ISSUE.

5  **THE COURT:**  WELL, SEE, HERE'S THE THING, THOUGH YOU

6  HAVE AN IMPORTANT JOB, AND POSSIBLY IMPORTANT COMPANY, AND AN

7  IMPORTANT TIME FOR YOUR COMPANY, BUT WE NEED A CROSS-SECTION

8  FROM THE WHOLE COMMUNITY, AND IT'S NOT A HARDSHIP ON YOU

9  PERSONALLY TO BE HERE.  IT'S A HARDSHIP ON YOUR COMPANY.

10  **PROSPECTIVE JUROR MILLS:**  WELL, I DO HOLD EQUITY IN

11  THE COMPANY, BUT YOU ARE RIGHT.  YOU ARE CORRECT.

12  **THE COURT:**  THE THING IS LOTS OF -- I SHOULDN'T SAY

13  LOTS OF PEOPLE, BECAUSE NOT VERY MANY PEOPLE START THEIR OWN

14  COMPANY, BUT THE HARDSHIP HAS TO BE ON YOU, NOT ON THE COMPANY.

15  SO I HAVE TO DENY THAT REQUEST.

16  **PROSPECTIVE JUROR MILLS:**  SURE.

17  **THE COURT:**  OKAY.  NEXT.

18  **PROSPECTIVE JUROR LOWENBERG:**  GOOD MORNING, YOUR

19  HONOR.  I ACTUALLY HAVE A TRIP PLANNED ON SUNDAY MORNING THROUGH

20  WEDNESDAY OF NEXT WEEK.  IT'S A BUSINESS TRIP TO THE EAST COAST.

21  **THE COURT:**  WHAT'S YOUR NAME?

22  **PROSPECTIVE JUROR LOWENBERG:**  JOHN LOWENBERG.

23  **THE COURT:**  AGAIN, THOUGH, BUSINESS TRIPS ARE -- IF

24  THIS WAS A PREPAID VACATION FOR YOUR FAMILY, THAT'S AN

25  AUTOMATIC -- I SHOULDN'T SAY THIS, BECAUSE THEN SOMEBODY IS

1   GOING TO SAY THEY'VE DONE THIS.  BUT, NO, BUSINESS TRIPS DON'T

2   QUALIFY AS -- YOU CAN RESCHEDULE YOUR BUSINESS TRIP.

3           **PROSPECTIVE JUROR LOWENBERG:**  I WOULD TEND TO AGREE

4   WITH YOU.  IT'S A BUSINESS CONFERENCE THAT WAS PAID FOR ACTUALLY

5   OUT OF MY POCKET, WHICH WAS $4,700 AND IT'S NON-REFUNDABLE.

6           **THE COURT:**  WAIT A MINUTE.  YOU PAID FOR IT?

7           **PROSPECTIVE JUROR LOWENBERG:**  YES, SIR.

8           **THE COURT:**  IT'S NON-REFUNDABLE?

9           **PROSPECTIVE JUROR LOWENBERG:**  THAT'S CORRECT.  IT'S

10  TOO SHORT OF A WINDOW TO HAVE IT REFUNDED.

11          **THE COURT:**  ALL RIGHT.  IS THERE A PENALTY YOU CAN

12  PAY AND GET YOUR MONEY BACK?

13          **PROSPECTIVE JUROR LOWENBERG:**  NO, SIR.

14          **THE COURT:**  HOW MUCH WOULD YOU LOSE?

15          **PROSPECTIVE JUROR LOWENBERG:**  $4,100, PLUS THE

16  AIRPLANE TICKET.  THAT'S NOT REFUNDABLE AS WELL.  THE HOTEL

17  WILL, OBVIOUSLY, BE REFUNDABLE.

18          **THE COURT:**  WHEN IS THE TRIP?

19          **PROSPECTIVE JUROR LOWENBERG:**  SUNDAY MORNING AT

20  9:00 A.M.

21          **THE COURT:**  WHY DIDN'T YOU BRING THIS UP EARLIER?

22  DIDN'T YOU -- WHEN YOU GOT YOUR SUMMONS, WASN'T THERE A PLACE TO

23  SAY YOU HAVE A --

24          **PROSPECTIVE JUROR LOWENBERG:**  THERE WAS.  AND THE

25  TRIP WAS PLANNED WITHIN THE LAST TEN DAYS.  I HAD ANOTHER TRIP

1   AS WELL, WHICH IS WHY I WAS TAKEN OUT OF THE NINE-WEEK.  I

2   TRAVEL A FAIR AMOUNT FOR BUSINESS.

3           **THE COURT:**  WELL, WHENEVER WILL YOU SERVE YOUR

4   COUNTRY AS A JUROR THEN?

5           **PROSPECTIVE JUROR LOWENBERG:**  ACTUALLY, I'VE DONE

6   THIS SEVERAL TIMES, TWICE, AND HAVE THOROUGHLY ENJOYED IT, AS

7   YOU SAID EARLIER.  BOTH WERE WEEK CASES.  ENJOYED IT THOROUGHLY.

8   IT'S UNFORTUNATE.  THE TRAVEL, IT CERTAINLY GOES IN STAGES.

9           **THE COURT:**  YOU WERE IN FEDERAL COURT TWICE BEFORE?

10          **PROSPECTIVE JUROR LOWENBERG:**  CIVIL COURT.

11          **THE COURT:**  YOU MEAN STATE COURT?

12          **PROSPECTIVE JUROR LOWENBERG:**  STATE COURT.  SORRY.

13          **THE COURT:**  HOW LONG AGO DID YOU DO THAT?

14          **PROSPECTIVE JUROR LOWENBERG:**  ONE WAS ONE AND A HALF

15   YEARS AGO, AND ONE WAS WHEN I WAS A YOUNGER MAN.

16          **THE COURT:**  ALL RIGHT.  I'M GOING TO EXCUSE YOU,

17   UNLESS THERE'S AN OBJECTION.  ANY OBJECTION?

18          **MR. LEUNG:**  NO OBJECTION FROM THE GOVERNMENT, YOUR

19   HONOR.

20          **MR. CHAZIN:**  NO, YOUR HONOR.

21          **THE COURT:**  ALL RIGHT.  SINCE IT'S GOING TO COME OUT

22   OF YOUR POCKET AND SINCE YOU PREVIOUSLY SERVED AS A JUROR,

23   ESPECIALLY RECENTLY ENOUGH.  OKAY.  YOU'RE EXCUSED,

24   MR. LOWENBERG.

25          **PROSPECTIVE JUROR LOWENBERG:**  THANK YOU, YOUR HONOR.

1          **THE COURT:**  ANYONE ELSE IN THE JURY BOX WISH TO RAISE

2     AN ISSUE OF HARDSHIP?  I SEE NO HANDS GOING UP.  PLEASE HAND

3     THAT MICROPHONE TO MRS. CARROLL.  SHE'S GOING TO BE THE KEEPER

4     OF THE MICROPHONE FOR A MOMENT.  LET'S CALL THE NEXT NAME TO

5     REPLACE MR. LOWENBERG.

6          GOOD LUCK TO YOU, MR. LOWENBERG.  JUST GO BACK TO THE

7     JURY ASSEMBLY ROOM AND TELL THEM I EXCUSED YOU, AND THEY'LL GIVE

8     YOU A DIFFERENT DATE TO COME IN IN THE FUTURE.

9          **PROSPECTIVE JUROR LOWENBERG:**  YES, SIR.  THANK YOU.

10         **THE COURT:**  YOU'RE WELCOME.  WHO'S NEXT?

11         **THE CLERK:**  ALICIA TORREGROSA, T-O-R-R-E-G-R-O-S-A.

12         **THE COURT:**  GOOD MORNING.  ARE WE SAYING YOUR NAME

13    CORRECTLY?

14         **PROSPECTIVE JUROR TORREGROSA:**  NO, BUT --

15         **THE COURT:**  TORREGROSA?

16         **PROSPECTIVE JUROR TORREGROSA:**  YES, THAT'S RIGHT.

17         **THE COURT:**  GREAT.  PLEASE HAVE THAT SEAT OVER THERE.

18    WOULD YOU LIKE TO RAISE ANY ISSUE OF HARDSHIP?

19         **PROSPECTIVE JUROR TORREGROSA:**  NO, I HAVE NONE.

20    THANK YOU.

21         **THE COURT:**  ALL RIGHT.  GREAT.  THANK YOU.  THAT

22    MEANS ALL 12 -- ALL 14 OF YOU ARE OKAY ON THE HARDSHIP FRONT.

23    WE'RE GOING TO COME BACK TO YOU TO GET BIOGRAPHICAL INFORMATION

24    LATER ON.  NOW WE TURN TO THE ROW OVER HERE NEAR THE THERMOSTAT,

25    AND I ASK IF ANY OF YOU WOULD LIKE TO RAISE YOUR HAND AND ASK

1    FOR A HARDSHIP EXCUSE?

2           SO WE HAVE ONE, TWO, THREE.  OKAY.  MS. CARROLL,

3    WOULD YOU MIND WALKING THE MICROPHONE OVER THERE?

4           SO I THINK IT WAS MS. MORGAN, RIGHT?  MS. MORGAN,

5    PLEASE USE THE MICROPHONE AND TELL US WHAT YOUR SITUATION IS.

6           **PROSPECTIVE JUROR J. MORGAN:**  I'M AN OFFICE MANAGER

7    OF A SMALL CONSTRUCTION COMPANY, AND I DO THE PAYROLL EVERY

8    THURSDAY, AND IT TAKES MOST OF THE DAY TO DO IT.

9           **THE COURT:**  THAT'S A HARDSHIP ON YOUR COMPANY, BUT

10   NOT ON YOU.

11          **PROSPECTIVE JUROR J. MORGAN:**  WELL, I'M PART OWNER OF

12   THE COMPANY, AND THERE IS NO ONE ELSE THAT KNOWS HOW TO DO

13   PAYROLL THERE.

14          **THE COURT:**  NO, NOT GOOD ENOUGH.

15          **PROSPECTIVE JUROR J. MORGAN:**  HOW DO I PAY MY MEN?

16          **THE COURT:**  YOU ARE GOING TO HAVE TO WORK IT OUT ON

17   WEDNESDAY AND AFTER COURT HERE.  YOU CAN DO IT AFTER YOU GET OUT

18   OF WORK.  I WORK LATE.  BUT THAT'S A HARDSHIP ON THE COMPANY,

19   BUT NOT ON YOU.  SO THAT I HAVE TO DENY THAT REQUEST.  I'M

20   SORRY, BUT THAT'S THE RULE.

21          ALL RIGHT.  WHO'S NEXT OVER THERE?  WHO RAISED THEIR

22   HAND?

23          **PROSPECTIVE JUROR MERKIN:**  GOOD MORNING, JUDGE.  I'M

24   CAROLYN MERKIN.  I AM SELF-EMPLOYED, AND I CURRENTLY AM WORKING

25   A JOB.  I'M TRYING TO GET A CONTRACT RENEWED OVER THE NEXT WEEK.

1   I DON'T KNOW IF IT MAY OR MAY NOT AFFECT IF I GET THAT CONTRACT

2   IF I'M OUT OF WORK FOR THE NEXT TWO WEEKS.  I'M ALSO CLOSING ON

3   A HOUSE NEXT WEEK.

4           **THE COURT:**  LET'S TAKE THESE ONE AT A TIME.  YOU'RE

5   SELF-EMPLOYED AS WHAT?

6           **PROSPECTIVE JUROR MERKIN:**  I'M A BUSINESS ANALYST.

7   RIGHT NOW I'M WORKING ON A MERGER BETWEEN WELLS FARGO AND

8   WACHOVIA.

9           **THE COURT:**  I'M SORRY.  THE MICROPHONE WENT OUT.  IT

10  SOUNDED LIKE TWO MEGA COMPANIES.

11          **PROSPECTIVE JUROR MERKIN:**  I'M A BUSINESS ANALYST,

12  AND I'M WORKING ON A MERGER BETWEEN WELLS FARGO AND WACHOVIA.

13          **THE COURT:**  YOU JUST WORK OUT OF YOUR HOME?

14          **PROSPECTIVE JUROR MERKIN:**  I GO TO THE OFFICE, AND I

15  WORK WITH PEOPLE ON THE EAST COAST, USUALLY.

16          **THE COURT:**  SO YOU HAVE YOUR OWN OFFICE SOMEPLACE?

17          **PROSPECTIVE JUROR MERKIN:**  NO.  I JUST GO THE

18  CLIENT'S OFFICE.  I DON'T HAVE MY OWN OFFICE.

19          **THE COURT:**  AND YOU'RE WORKING ON A MERGER?

20          **PROSPECTIVE JUROR MERKIN:**  YES.

21          **THE COURT:**  BETWEEN THOSE TWO COMPANIES?

22          **PROSPECTIVE JUROR MERKIN:**  CORRECT.

23          **THE COURT:**  I HOPE THAT'S PUBLIC INFORMATION.

24          **PROSPECTIVE JUROR MERKIN:**  IT'S PUBLIC, YEAH.  IT'S

25  PUBLIC.

1          **THE COURT:**  SO THEN ARE YOU SAYING YOU ARE NOT GOING

2  TO GET PAID?

3          **PROSPECTIVE JUROR MERKIN:**  I WOULDN'T GET PAID.

4          I'M ALSO CONCERNED IF I'M NOT THERE TO NEGOTIATE A

5  NEW CONTRACT, I MAY NOT HAVE IT RENEWED.  I DON'T KNOW IF IT

6  WOULD OR WOULD NOT AFFECT IT IF I'M BEING HERE.  SO I DON'T

7  KNOW.  I DON'T KNOW IF THAT QUALIFIES AS PERSONAL OR AS BUSINESS

8  HARDSHIP.

9          **THE COURT:**  WHAT IS THE -- TELL ME THE BURDEN ON YOU,

10 THOUGH.

11         **PROSPECTIVE JUROR MERKIN:**  MONEY.  I WON'T BE GETTING

12 PAID, AND ALSO WOULDN'T BE ABLE TO HELP OUT WITH THE BUSINESS

13 SIDE, WHICH, I KNOW, IS NOT ANY REASON FOR HARDSHIP.

14         **THE COURT:**  DO YOU HAVE A SPOUSE OR A PARTNER WHO IS

15 EMPLOYED?

16         **PROSPECTIVE JUROR MERKIN:**  YES.

17         **THE COURT:**  ALL RIGHT.  SO ARE THEY GOING TO

18 FORECLOSE ON YOUR HOUSE IF YOU DON'T WORK FOR TWO WEEKS?

19         **PROSPECTIVE JUROR MERKIN:**  NO, BECAUSE I'M SUPPOSED

20 TO CLOSE ON IT NEXT WEEK.  I'M BUYING, SO PROBABLY NOT.  I JUST

21 HOPE -- IT'S JUST A FINANCIAL HARDSHIP.

22         **THE COURT:**  IT DOESN'T SEEM LIKE A HUGE FINANCIAL

23 HARDSHIP.  IT SEEMS LIKE AN INCONVENIENT ONE THAT COULD BE A

24 HARDSHIP, BUT IT DOESN'T SEEM LIKE A -- CAN'T YOU GET THROUGH

25 THIS?  SOMEBODY LIKE YOU WHO CAN ANALYZE MERGERS AND ALL THAT,

1   WE NEED PEOPLE LIKE THAT TO SERVE ON JURIES TO HELP KEEP ALL THE

2   EVIDENCE STRAIGHT, SO FORTH, ANALYZE THE CASE FAIR AND SQUARE.

3   CAN'T YOU DO THAT?

4          **PROSPECTIVE JUROR MERKIN:**  I WILL DO WHAT I NEED TO

5   DO, YEAH.

6          **THE COURT:**  I'M GOING TO THINK ABOUT YOUR SITUATION,

7   BUT PROBABLY THE ANSWER IS NO.  ALL RIGHT.

8          SO WE'LL -- WHO ELSE RAISED THEIR HAND OVER THERE?

9   LET'S GO TO MS. GELDER.

10          **PROSPECTIVE JUROR VAN GELDER:**  VAN GELDER.

11          **THE COURT:**  VAN GELDER.

12          **PROSPECTIVE JUROR VAN GELDER:**  IT COMES UP THAT WAY

13   SOMETIMES BECAUSE OF THE SPACE.

14          **THE COURT:**  I'M SORRY.  PLEASE, WHAT'S YOUR

15   SITUATION?

16          **PROSPECTIVE JUROR VAN GELDER:**  THERE'S TWO THINGS.

17   ONE IS I HAVE BEEN WAITING FOR A FOOT SURGERY FOR ABOUT FOUR

18   MONTHS, AND THAT'S SCHEDULED -- AT LEAST PRE-OP IS TOMORROW, AND

19   I'D REALLY LIKE TO BE ABLE TO HANG ON TO THAT.

20          **THE COURT:**  WHAT TIME IS IT TOMORROW?

21          **PROSPECTIVE JUROR VAN GELDER:**  NINE FORTY-FIVE.

22          **THE COURT:**  IT'S ALREADY SCHEDULED FOR TOMORROW, THE

23   PRE-OP?

24          **PROSPECTIVE JUROR VAN GELDER:**  THE PRE-OP IS FOR

25   9:45.  I'M NOT SURE IF THE SURGERY WILL HAPPEN TOMORROW, BUT I

1   HAVE BEEN WAITING FOR THAT APPOINTMENT FOR FOUR MONTHS.

2          **THE COURT:**  THAT'S A GOOD POINT.  IS THE SURGERY

3   SCHEDULED TOMORROW OR THE PRE-OP?

4          **PROSPECTIVE JUROR VAN GELDER:**  IT'S THE PRE-OP, AND

5   THEY HAD -- I HAD TO KEEP THAT APPOINTMENT IN ORDER TO GET THE

6   SURGERY SCHEDULED, WHICH I'M NOT SURE -- WHICH, HOPEFULLY, WILL

7   HAPPEN THE END OF THIS WEEK OR NEXT WEEK.

8          **THE COURT:**  WHERE DO YOU REPORT FOR THE PRE-OP?

9          **PROSPECTIVE JUROR VAN GELDER:**  AT KAISER PERMANENTE

10  IN TERRA LINDA.

11         **THE COURT:**  I THINK THAT'S A GOOD EXCUSE.  I'M GOING

12  TO EXCUSE YOU UNLESS THERE'S AN OBJECTION.

13         **MR. LEUNG:**  NONE FROM THE GOVERNMENT, YOUR HONOR.

14         **MR. CHAZIN:**  NO, YOUR HONOR.

15         **THE COURT:**  ALL RIGHT, MS. VAN GELDER.  YOU'RE

16  EXCUSED.  PLEASE GO BACK TO THE JURY ASSEMBLY ROOM.  TELL THEM

17  WHAT HAPPENED.  THEY'LL GIVE YOU A DIFFERENT DATE, AND I HOPE

18  YOUR SURGERY GOES WELL.

19         ALL RIGHT.  LET'S REPLACE MS. VAN GELDER.

20         **THE CLERK:**  TAMMY SPATH, S-P-A-T-H.

21         **THE COURT:**  I'M SORRY.  HOW DO YOU SAY YOUR NAME?

22         **PROSPECTIVE JUROR SPATH:**  SPATH.

23         **THE COURT:**  OKAY.  WELCOME, AND HAVE A SEAT.  DO YOU

24  WANT TO RAISE ANY ISSUE?

25         **PROSPECTIVE JUROR SPATH:**  NO, YOUR HONOR.

1          **THE COURT:**  ALL RIGHT.  SO I'VE COVERED THAT ROW.

2    LET'S GO TO THIS ROW OVER HERE.  WHO HAS THE MIC?

3          I HEARD SOMEBODY HACKING AND COUGHING?  WHO DID I

4    HEAR?  ARE YOU OKAY?

5          **UNIDENTIFIED PROSPECTIVE JUROR:**  YES, YOUR HONOR.

6          **THE COURT:**  ALL RIGHT.  LET'S TAKE THE MICROPHONE

7    OVER TO THE NEXT ROW.  ANYONE OVER THERE LIKE TO RAISE A

8    HARDSHIP ISSUE?  TWO PEOPLE AT THE VERY END.

9          **PROSPECTIVE JUROR MONTOYA:**  RIGHT HERE, YOUR HONOR.

10         **THE COURT:**  WE WILL START AT THE FAR END THERE WITH

11   MR. BURGIN.

12         **PROSPECTIVE JUROR BURGIN:**  YES.  DAN BURGIN.  I'M

13   SELF-EMPLOYED AND, WELL, LIKE EVERYBODY, I GOT TO KEEP THE MONEY

14   MOVING FOR THE NORMAL REASONS LIKE EVERYBODY HAS, FOR HOME AND

15   BILLS AND THINGS.  BUT THE MAIN THING IS FOR MY MOTHER, I'M SOLE

16   SOURCE OF EMPLOYMENT, TAKING CARE OF HER IN A BOARD AND CARE.

17   SHE HAS $1,250 FOR SOCIAL SECURITY.  I MEAN -- YEAH, SOCIAL

18   SECURITY.  AND I HAVE TO MAKE UP THE REST, WHICH IS $3,000.

19   THAT'S JUST TO KEEP HER THERE EVERY DAY.

20         **THE COURT:**  TO KEEP HER WHERE?

21         **PROSPECTIVE JUROR BURGIN:**  AT THE BOARD AND CARE,

22   WHICH IS WOODCREST ON HOLLAND IN SANTA ROSA.  I HAVE INFORMATION

23   WITH ME TO PROVE THAT, THE AMOUNT AND PROOF SHE IS THERE.

24         EVERY DAY MEANS SOMETHING TO ME.  AND I WORK ON

25   EQUIPMENT, AND SO -- BECAUSE I'M PROBABLY LIKE A LOT OF PEOPLE

1  HERE, YOU KNOW, I DON'T HAVE A BUNCH OF BACK MONEY IN THE BANK.

2  EVERY WEEK, EVERY MONTH I GOT TO KEEP THEM ROLLING.

3          **THE COURT:**  WHAT DO YOU DO FOR A LIVING?

4          **PROSPECTIVE JUROR BURGIN:**  I'M WORK ON AG EQUIPMENT.

5  I'M A MECHANIC.  LIKE A SATELLITE.  I HAVE MY OWN TRUCK.  IT'S

6  LIKE A SHOP ON WHEELS.  AND I GO TO THE VINEYARDS, ANYPLACE THAT

7  CALLS ME, THE DAIRIES.  NO CONSTRUCTION.

8          **THE COURT:**  SO, ON A TYPICAL DAY, ARE YOU WORKING IN

9  THE MORNINGS?

10         **PROSPECTIVE JUROR BURGIN:**  YES.

11         **THE COURT:**  WOULD IT BE FEASIBLE FOR YOU TO DO YOUR

12  WORK IN THE AFTERNOON AFTER 1:00 O'CLOCK?

13         **PROSPECTIVE JUROR BURGIN:**  NOT NECESSARILY.  I GET

14  CALLS ALL THE TIME.  IF I GET A CALL, BECAUSE I NEED THE MONEY,

15  I'D WORK SATURDAYS AND SUNDAYS.  ALMOST EVERY SATURDAY.  BUT I

16  HAVE TWO TRACTORS TORN APART RIGHT NOW THAT I HAVE PARTS CAME IN

17  YESTERDAY THAT I SHOULD BE WORKING ON.

18         **THE COURT:**  WELL, IF ALL THAT IS TRUE, WHEN WOULD YOU

19  BE ABLE TO DO JURY SERVICE?

20         **PROSPECTIVE JUROR BURGIN:**  I TELL YOU THE TRUTH WHEN

21  I WILL BE ABLE TO DO JURY DUTY IS GIVE ME ABOUT SIX YEARS.  I

22  PLAN ON RETIRING WITH SOCIAL SECURITY.  AND I DON'T KNOW HOW

23  LONG MY MOM IS GOING TO BE AROUND.  SHE'S 86, GOING TO BE 87 IN

24  AUGUST.

25         **THE COURT:**  BUT YOUR MOM -- ARE YOU SAYING YOU GO

1   VISIT YOUR MOM EVERY DAY?

2          **PROSPECTIVE JUROR BURGIN:**  I VISIT MY MOM A LOT.  I

3   BROUGHT HER DOWN -- SHE WAS LIVING IN CORNING BY HERSELF WITH

4   HER DOG AND A COUPLE OF CATS.  IN JUNE ALL THE WHEELS FELL OFF.

5   I HAVE THREE BROTHERS.  THEY ARE UNABLE TO HELP ME.  THAT'S WHY

6   I SAY I'M THE ONE THAT TAKES CARE OF IT.  IT SOUNDS LIKE A SOB

7   STORY.

8          **THE COURT:**  ARE YOU SAYING --

9          **PROSPECTIVE JUROR BURGIN:**  I KNOW EVERYBODY'S GOT

10  ONE.

11         **THE COURT:**  ARE YOU SAYING IT WOULD BE A HARDSHIP

12  BECAUSE YOU WOULD BE UNABLE TO VISIT YOUR MOM OR THAT THEY WOULD

13  KICK HER OUT OF THE HOME BECAUSE YOU WOULDN'T HAVE ENOUGH MONEY

14  TO PAY THE RENT?

15         **PROSPECTIVE JUROR BURGIN:**  WELL, NO.  I CAN VISIT MY

16  MOTHER, AND THEY PROBABLY WOULDN'T KICK HER OUT.  BUT, I MEAN,

17  RIGHT FROM THE GET-GO, LIKE EVERYBODY, LIKE I WAS SAYING, I'VE

18  GOT A HOUSE PAYMENT THAT IS ASTRONOMICAL.  THAT'S MY FAULT, BUT

19  I'M NOT ASKING ANYBODY TO TAKE CARE OF IT.  I'M TAKING CARE OF

20  IT.  I'VE GOT ALL THE OTHER BILLS EVERYBODY HAS, THE CREDIT

21  CARDS, A CAR PAYMENT, INCLUDING A PAYMENT ON MY WORK TRUCK THAT

22  I NEED EVERY DAY.

23         SO I DON'T -- BUT I DON'T THINK THAT THE PEOPLE --

24  THEY'RE VERY NICE PEOPLE.  THEY WOULDN'T KICK MY MOM OUT IF I

25  MISSED A PAYMENT, BUT THEN I WOULD HAVE TO CATCH THAT UP.  I

1   MEAN, THAT'S WHY I STARTED OFF WITH I GOT TO KEEP THE MONEY

2   ROLLING EVERY DAY AND I NEED AT LEAST 30 BILLABLE HOURS EVERY

3   WEEK, AND SOME WEEKS I DON'T GET IT.

4            **THE COURT:**  ARE YOU THE ONLY BREAD WINNER IN YOUR

5   HOUSEHOLD?

6            **PROSPECTIVE JUROR BURGIN:**  NO, I'M NOT.  MY WIFE

7   WORKS.

8            **THE COURT:**  WHAT DOES SHE DO?

9            **PROSPECTIVE JUROR BURGIN:**  SHE'S AN OFFICE MANAGER

10  FOR HANSEL LEASING IN SANTA ROSA.

11           **THE COURT:**  ALL RIGHT.  I'M GOING TO THINK ABOUT YOUR

12  SITUATION.

13           **PROSPECTIVE JUROR BURGIN:**  OKAY.  THANK YOU.

14           **THE COURT:**  NOW, WHO ELSE RAISED THEIR HAND?

15  MS. JOHNSON, DIDN'T YOU RAISE YOUR HAND?

16           **PROSPECTIVE JUROR JOHNSON:**  YES, YOUR HONOR.  I'M

17  JUST CONCERNED ABOUT MY WORK SCHEDULE.  I WORK FROM 11:30 AT

18  NIGHT UNTIL 8:00 O'CLOCK IN THE MORNING.  I WANT TO MAKE SURE I

19  DON'T LOSE ALL MY REST.  I'M ON A SCHEDULE, WHEN I GET HOME FROM

20  WORK I EAT -- PEOPLE SAY BREAKFAST.  BUT I EAT DINNER.  I LIKE

21  TO LAY DOWN EVERY DAY BY 1:15 TO GET ALL MY REST.

22           **THE COURT:**  WHAT DO YOU DO?

23           **PROSPECTIVE JUROR JOHNSON:**  I WORK AT THE HOSPITAL,

24  SAN FRANCISCO GENERAL HOSPITAL, IN THE EMERGENCY DEPARTMENT.

25           **THE COURT:**  ARE YOU A MEMBER OF THE UNION?

1          **PROSPECTIVE JUROR JOHNSON:**  YES.

2          **THE COURT:**  YOU WOULD HAVE TO BE HERE AT 7:45.  SO

3  YOU'D HAVE TO LEAVE WORK EARLY ENOUGH TO BE HERE AT 7:45.

4          **PROSPECTIVE JUROR JOHNSON:**  RIGHT.

5          **THE COURT:**  OR WHY COULDN'T YOU JUST TAKE OFF FROM

6  WORK?  IF YOU'RE A MEMBER OF THE UNION, DON'T THEY HAVE A

7  PROVISION THAT YOU GET PAID FOR JURY SERVICE?

8          **PROSPECTIVE JUROR JOHNSON:**  I DON'T KNOW.  I CAN TALK

9  TO MY SUPERVISOR.  TONIGHT IS MY FIRST NIGHT TO GET BACK TO

10  WORK.  I COULD FIND OUT TONIGHT.

11          **THE COURT:**  WHAT IS THE NAME OF YOUR UNION?

12          **PROSPECTIVE JUROR JOHNSON:**  IT'S LOCAL 1028 -- 1021.

13  I'M SORRY.

14          **THE COURT:**  WELL, EVERY UNION AGREEMENT I'VE SEEN --

15  THERE COULD BE EXCEPTIONS, I GUESS -- ALWAYS PROVIDE, IF YOU GET

16  CALLED FOR JURY SERVICE, THAT YOU GET PAID SURELY ENOUGH TO

17  COVER THE SERVICE THAT WOULD BE REQUIRED IN THIS TRIAL, AND YOU

18  DON'T HAVE TO WORK AT THE SAME TIME, BECAUSE, OTHERWISE, YOU

19  WOULD BE SLEEPY SITTING THERE IN THE JURY BOX.

20          **PROSPECTIVE JUROR JOHNSON:**  ABSOLUTELY, YEAH.

21          **THE COURT:**  IT WOULD BE LIKE BEING ON VACATION EXCEPT

22  YOU WILL BE COMING IN HERE, AND YOU'D GET FULL PAY.  YOU'D HAVE

23  TO CHECK WITH YOUR UNION TO MAKE SURE WHAT I'M TELLING YOU IS

24  RIGHT, BUT THAT'S THE NORMAL UNION ARRANGEMENT.  SO I DON'T

25  THINK I CAN EXCUSE YOU.  YOU SHOULD HAVE COME TO COURT KNOWING

1  THE ANSWERS TO THOSE QUESTIONS.  I CAN'T EXCUSE YOU.  IF IT

2  TURNS OUT THAT I'M WRONG, AND YOU GET PICKED, YOU'RE STUCK.

3           **PROSPECTIVE JUROR JOHNSON:**  OKAY.

4           **THE COURT:**  I CAN'T JUST LET YOU OFF ON THE SMALL

5  CHANCE THAT MAYBE I'M WRONG.  I THINK I'M RIGHT, BUT THIS IS THE

6  KIND OF THING YOU SHOULD HAVE KNOWN BEFORE YOU CAME TO COURT.

7           **PROSPECTIVE JUROR JOHNSON:**  I'LL CHECK --

8           **THE COURT:**  WE WILL HAVE SOME BREAKS BEFORE LONG, AND

9  I URGE YOU TO GO CALL YOUR UNION AND FIND OUT THE ANSWERS TO

10  THESE QUESTIONS.  AND, BASICALLY, IT IS THAT THE JUDGE IS SAYING

11  YOU SHOULD NOT WORK AT ALL, YOU SHOULD JUST DO JURY SERVICE, GET

12  PAID FULL PAY, WHATEVER, AND THEN YOU FIND OUT WHAT YOUR

13  SITUATION IS, AND THEN COME BACK HERE.  IF TIME PERMITS, I'LL

14  CONSIDER -- IF I'M WRONG, I'LL CONSIDER A HARDSHIP ISSUE.  BUT I

15  MAY NOT HAVE ENOUGH TIME, BECAUSE IT DEPENDS ON WHETHER YOU'RE

16  ABLE TO GET THROUGH OR NOT, I GUESS.  OKAY?

17           **PROSPECTIVE JUROR JOHNSON:**  OKAY.  THANK YOU.

18           **THE COURT:**  WHO ELSE RAISED YOUR HAND ON THAT FRONT

19  ROW?  MR. MONTOYA.  WHAT'S YOUR SITUATION?

20           **PROSPECTIVE JUROR MONTOYA:**  GOOD MORNING, YOUR HONOR.

21  I AM A SMALL CONTRACTOR, AND I HAVE TWO PEOPLE THAT DEPEND ON

22  ME.  I JUST WANT TO MAKE SURE THAT THE TRIAL IS NOT GOING TO

23  EXTEND OVER TWO WEEKS, BECAUSE I CANNOT AFFORD TO BE WITHOUT

24  WORK FOR TWO WEEKS.

25           **THE COURT:**  IT WILL BE OVER BY FRIDAY OF NEXT WEEK.

1          **PROSPECTIVE JUROR MONTOYA:**  IS THAT AN ASSURANCE?

2          **THE COURT:**  I THINK SO.  RIGHT, COUNSEL?

3          **MR. LEUNG:**  YES, YOUR HONOR.

4          **MR. CHAZIN:**  I DO BELIEVE SO, YOUR HONOR.

5          **PROSPECTIVE JUROR MONTOYA:**  THANK YOU.

6          **THE COURT:**  THAT'S THE BEST I CAN GIVE YOU.  THANK

7  YOU.  ALL RIGHT.  ALL RIGHT.  ANYONE ELSE?

8          MR. BURGIN, I'M GOING TO EXCUSE YOU ON ACCOUNT OF

9  HARDSHIP.  BUT I WANT YOU TO KNOW IT'S NOT ACCEPTABLE TO SAY

10 YOU'RE GOING TO WAIT UNTIL YOU RETIRE TO SERVE YOUR COUNTRY AS A

11 JUROR IN THE U.S. DISTRICT COURT.

12         **PROSPECTIVE JUROR BUETTELL:**  I DON'T MIND SERVING MY

13 COUNTRY.  I WAS IN THE NAVY FOR OVER THREE YEARS.

14         **THE COURT:**  THAT'S GOOD.

15         **PROSPECTIVE JUROR BURGIN:**  I HAVE BEEN ON JURY DUTY,

16 TOO.  AT THAT TIME I COULD DO IT BECAUSE OF MY EMPLOYMENT.

17         **THE COURT:**  IN THE FUTURE, BEFORE SIX YEARS RUN, I

18 HOPE YOU GET THE CHANCE TO SERVE ON SOME -- THIS WOULD HAVE BEEN

19 A SHORT ONE TO DO IT ON.  BUT SINCE YOU SAY THAT YOU HAVE ALL

20 THESE -- YOU GOT A GIGANTIC, LUXURIOUS HOUSE AND YOU HAVE TO

21 WORK HARD TO PAY FOR IT, ALL RIGHT.  BUT, PLEASE, NEXT TIME I

22 HOPE YOU ARE WILLING TO SERVE ON THE JURY.

23         **PROSPECTIVE JUROR BURGIN:**  I HAVE NO PROBLEM SERVING

24 ON THE JURY.  IT'S JUST THE SITUATION.

25         **THE COURT:**  LET'S LEAVE YOU RIGHT HERE, IF YOU DON'T

```
 1  HAVE A PROBLEM.  DO YOU HAVE A PROBLEM OR NOT?

 2          PROSPECTIVE JUROR BURGIN:  YES.  YOU ARE SAYING MY

 3  HOUSE IS A GIGANTIC BEAUTIFUL HOUSE.  IT'S NOT.

 4          THE COURT:  YOU'RE SAYING IT'S BIGGER THAN YOU SHOULD

 5  HAVE BOUGHT.

 6          PROSPECTIVE JUROR BURGIN:  IT HAS A BIG PAYMENT.  I'M

 7  SORRY, SIR, BUT I'M TELLING YOU THE TRUTH.  I HAVE THE BIG

 8  PAYMENT.  I'M NOT SAYING IT'S LUXURIOUS.  THAT'S MY FAULT.  I'M

 9  TAKING CARE OF IT.  OKAY?  I HAVE NO PROBLEM SERVING ON A JURY.

10  NOT NOW.  AND IF I HAVE OPPORTUNITY BETWEEN NOW AND THE SIX

11  YEARS I SPOKE OF, I'LL DO IT.

12          THE COURT:  ALL RIGHT.

13          PROSPECTIVE JUROR BURGIN:  OKAY.

14          THE COURT:  FINE.  YOU'RE EXCUSED.

15          PROSPECTIVE JUROR BURGIN:  THANK YOU VERY MUCH.

16          THE COURT:  ALL RIGHT.  LET'S REPLACE MR. BURGIN.

17          THE CLERK:  NOAH GEPHART, G-E-P-H-A-R-T.

18          THE COURT:  ALL RIGHT.  MR. GEPHART, WELCOME.  HOW

19  ARE YOU?

20          PROSPECTIVE JUROR GEPHART:  I'M DOING WELL.

21          THE COURT:  HAVE A SEAT IN THE CORNER OVER THERE.  DO

22  YOU HAVE A HARDSHIP ISSUE YOU WANT TO RAISE?

23          PROSPECTIVE JUROR GEPHART:  NO.

24          THE COURT:  ALL RIGHT.  I WANT TO GO BACK OVER

25  EVERYBODY.  ANY HARDSHIP ISSUE THAT HASN'T BEEN RAISED THAT YOU
```

1   WANT TO RAISE, PLEASE RAISE YOUR HAND, AND WE'LL GO OVER IT.

2          HERE'S THE THING:  IF YOU GET SELECTED, YOU ARE IN

3   FOR THE DURATION.  I'VE HAD A FEW TIMES WHEN SOMEBODY, AFTER

4   THEY GET SELECTED AND THEY'RE SWORN IN THE NEXT DAY THEY SAY, I

5   CAN'T DO THIS, I'VE GOT THIS PROBLEM, MY EMPLOYER WON'T LET ME

6   DO THIS, OR, WHATEVER.  AND I SAY, I'M SORRY, YOU SHOULD HAVE

7   RAISED THAT AHEAD OF TIME, YOU'RE STUCK NOW, YOU HAVE TO SERVE

8   BECAUSE WE'VE RELIED ON YOUR AVAILABILITY, AND THE LAWYERS HAVE

9   MADE THEIR DECISIONS BASED UPON WHO WAS AVAILABLE.

10         SO ONE LAST TIME.  ANYONE WANT TO RAISE THEIR HAND

11  FOR HARDSHIP?

12         OKAY.  NO ONE.  NO HANDS ARE GOING UP.  WE ARE AT A

13  GOOD PLACE TO TAKE A BREAK FOR 15 MINUTES, AND THEN WHEN WE COME

14  BACK, WE'RE GOING TO START GETTING YOUR BIOGRAPHICAL

15  INFORMATION.  AND THE REASON FOR THAT IS SO THE LAWYERS AND I

16  CAN LEARN SOMETHING ABOUT YOUR BACKGROUND, AND THE ULTIMATE

17  THING THAT WE'RE TRYING TO DO TODAY IS TO PICK TWELVE, PLUS TWO,

18  FOURTEEN TOTAL PERSONS WHO -- GOOD CITIZENS WHO WILL TAKE AN

19  OATH OF OFFICE, DECIDE THIS CASE FAIR AND SQUARE AND FOLLOW THE

20  LAW.

21         IN ORDER TO FIND OUT IF YOU MIGHT HAVE SOME KIND OF A

22  BIAS ONE WAY OR THE OTHER, WE'LL BE ASKING YOU SOME QUESTIONS,

23  AND THAT'S JUST NORMAL.  I'M SURE MANY OF YOU HAVE BEEN THROUGH

24  THAT BEFORE.

25         AGAIN, IF THERE'S SOMETHING THAT -- I'LL GIVE YOU AN

1    EXAMPLE BEFORE WE GET THERE.  IF THERE'S SOMETHING THAT YOU

2    THINK IS SO PRIVATE THAT YOU JUST WANT TO RAISE WITH ME AND THE

3    LAWYERS AND NOT IN PUBLIC -- FOR EXAMPLE, I'VE HAD CASES WHERE

4    SOMEONE WAS THE VICTIM OF A CRIME, OR MAYBE THEY GOT ACCUSED OF

5    BEING A PERPETRATOR OF A CRIME, AND IT'S SOMETHING THAT THEY

6    DON'T WANT TO HAVE DISSEMINATED WIDELY, I WOULD HONOR THAT.  I

7    COULDN'T DO IT RIGHT AWAY.  IT WOULD TAKE US SOME TIME TO DO IT

8    OFFLINE, SO TO SPEAK.  I WOULD HONOR THAT REQUEST.

9            ALL YOU WOULD HAVE TO DO IN THAT INSTANCE IS SAY YOU

10   WOULD LIKE TO COVER THAT IN A SIDEBAR OR PRIVATELY, OF COURSE WE

11   WOULD DO THAT.

12           REMEMBER, DON'T TALK WITH EACH OTHER OR ANYONE ELSE

13   ABOUT THIS CASE.

14           I SHOULD ALSO SAY ONE LAST THING FOR THE -- IF THE

15   PARTIES OR THE LAWYERS SEE YOU IN THE HALLWAY, THE MOST THEY'RE

16   EVER GOING TO DO IS NOD AND MOVE ON, OR SMILE AND MOVE ON.  THEY

17   WILL NOT TRY TO ENGAGE YOU IN SMALL TALK.  WHY IS THAT?  HERE'S

18   THE REASON:

19           THEY DON'T WANT YOU TO THINK THAT THEY'RE TRYING TO

20   INGRATIATE THEMSELVES WITH YOU.  SO BECAUSE OF THE IMPORTANT JOB

21   THAT YOU WOULD BE UNDERTAKING TO DECIDE THE CASE UNDER AN OATH

22   OF OFFICE, THEY ARE BEING RESPECTFUL OF YOU.  THEY ARE NOT BEING

23   RUDE.  THEY'RE BEING RESPECTFUL.  SO PLEASE DON'T HOLD IT

24   AGAINST THEM IF YOU PASS THEM AND THEY SEEM TO BE, YOU KNOW,

25   IGNORING YOU.  THEY'RE NOT.  THEY'RE BEING RESPECTFUL.

1          SO ANY OF YOU HAVE ANY QUESTIONS ABOUT THE PROCESS OR

2   ANYTHING I CAN ANSWER BEFORE WE TAKE OUR BREAK?  THE BREAK, FOR

3   THIS TIME, YOU GO THROUGH THE DOUBLE DOORS, AND YOU GO BACK DOWN

4   TO USE THE FACILITIES IN THE JURY ASSEMBLY ROOM.  THEN PLEASE

5   COME BACK HERE AND READY TO GO IN 15 MINUTES.

6          YOU'RE FREE TO LEAVE STUFF HERE FOR NOW.  I WOULD

7   URGE YOU TO TAKE YOUR PURSES AND ANYTHING OF VALUE, BUT IF YOU

8   HAVE A BOOK YOU WANT TO LEAVE, THAT'S FINE.  WE'LL SEE YOU BACK

9   HERE IN 15 MINUTES.

10          CAN THE LAWYERS STAY HERE?  WE HAVE ONE OF THE VENIRE

11   WHO WANTED TO TALK TO US IN PRIVATE.

12                    THE PROSPECTIVE JURY PANEL EXITED THE

13                    COURTROOM.)

14          **THE COURT:**  ALL RIGHT.  THIS IS MS. MORGAN.

15          **PROSPECTIVE JUROR J. MORGAN:**  MORGAN.

16          **THE COURT:**  MS. MORGAN, DO YOU WANT TO -- IS IT

17   OKAY -- EVERYONE ELSE BE SEATED.  IS IT OKAY?  DO YOU WANT TO

18   HAVE IT EVEN MORE PRIVATE THAN IT IS NOW, OR DO YOU --

19          **PROSPECTIVE JUROR J. MORGAN:**  KIND OF, YEAH.  IF I

20   COULD.

21          **THE COURT:**  ALL RIGHT.  WE'LL HAVE A SIDEBAR.  ONE

22   LAWYER FROM EACH SIDE AND THE COURT REPORTER.

23                    (SIDEBAR DISCUSSION HELD AS FOLLOWS:)

24          **THE COURT:**  WE ARE NOW AT THE SIDEBAR WITH MS. MORGAN

25   AND COUNSEL.

```
 1              MS. MORGAN, DID YOU WANT TO SAY --

 2         PROSPECTIVE JUROR J. MORGAN:  I THINK -- I HAVE TO GO

 3    TO A FUNERAL.  A FRIEND OF MY HUSBAND'S DIED YESTERDAY MORNING,

 4    AND MY HUSBAND HAD FACE SURGERY, AND HE HASN'T SEEN ANY OF THESE

 5    FRIENDS FOR A COUPLE OF YEARS, AND I HAVE TO -- I'M SORRY.  I

 6    HAVE TO GO WITH HIM.  HE LOOKS TOTALLY DIFFERENT.  IT'S --

 7         THE COURT:  WHEN IS THE FUNERAL?

 8         PROSPECTIVE JUROR J. MORGAN:  HE DIED YESTERDAY.  I

 9    DON'T KNOW WHEN.  HE'S 78, MY HUSBAND IS 78.  HE HAD MOST OF HIS

10    CHEEK REMOVED ABOUT TWO YEARS AGO.  AND HE JUST DOESN'T SEE

11    ANYONE THAT HE USED TO SEE.

12         THE COURT:  WHEN DO YOU EXPECT THE FUNERAL WOULD BE?

13         PROSPECTIVE JUROR J. MORGAN:  I'D SAY THURSDAY OR

14    FRIDAY.

15         THE COURT:  OF THIS WEEK?

16         PROSPECTIVE JUROR J. MORGAN:  I'M GUESSING, YEAH.

17         THE COURT:  YOU THINK IT WOULD BE IN THE MORNING?

18         PROSPECTIVE JUROR J. MORGAN:  USUALLY, THEY'RE AT

19    10:00 O'CLOCK IN THE MORNING, A CATHOLIC CHURCH IN FREMONT.  IT

20    HASN'T BEEN KNOWN YET.  IT HASN'T -- I DON'T KNOW IF IT'S

21    SCHEDULED YET.

22         THE COURT:  ANY OBJECTION TO EXCUSING MS. MORGAN?

23         MR. LEUNG:  NO, YOUR HONOR.

24         MR. CHAZIN:  NO, YOUR HONOR.

25         THE COURT:  ALL RIGHT.  MS. MORGAN, GO BACK TO THE
```

1    JURY ASSEMBLY ROOM.

2            DO YOU WANT TO HAVE A SIDEBAR WHILE WE'RE SET UP?

3    WHY DON'T YOU COME OVER, TOO?  REMIND ME WHAT YOUR NAME IS.

4            **PROSPECTIVE JUROR CARROLL:**  MEGAN CARROLL.

5            **THE COURT:**  MS. CARROLL, WHAT'S YOUR SITUATION?

6            **PROSPECTIVE JUROR CARROLL:**  I WAS JUST CURIOUS ABOUT

7    WHAT IT IS ABOUT.  I HAVE HAD A HISTORY OF SOMEBODY VANDALIZING

8    MY CAR, AND I HAVE A POLICE REPORT ON IT.  I DON'T WANT TO JUDGE

9    SOMEBODY FOR DOING SOMETHING.  I WASN'T SURE WHAT THIS WAS

10   ABOUT.

11           **THE COURT:**  THIS CASE -- THE ALLEGATION -- AND IT'S

12   THE BURDEN ON THE GOVERNMENT TO PROVE IT -- THAT MR. NOCHEZ, THE

13   DEFENDANT, STOLE EIGHT CARS WITH THE INTENT TO EXPORT THEM OUT

14   OF THE COUNTRY.

15           **MR. CHAZIN:**  NO, I WOULD REPHRASE IT.  IF I COULD,

16   YOUR HONOR?

17           THAT HE ATTEMPTED TO EXPORT STOLEN VEHICLES, KNOWING

18   THEY WERE STOLEN.

19           **THE COURT:**  THAT'S CORRECT.  FORGET WHAT I SAID.

20           THE OFFENSE, IF IT CAN BE PROVEN, IS ATTEMPTING TO

21   EXPORT A STOLEN CAR, KNOWING THAT THE CAR HAD BEEN STOLEN.

22   RIGHT?

23           **MR. LEUNG:**  CORRECT, YOUR HONOR.

24           **THE COURT:**  I MISSPOKE.

25           LET ME ASK THE GOVERNMENT.  IS THERE GOING TO BE

1   EVIDENCE THAT THE DEFENDANT HIMSELF ACTUALLY STOLE ANY CARS?

2          **MR. LEUNG:**  THERE'S GOING TO BE EVIDENCE THAT THE

3   DEFENDANT PARTICIPATED IN THE THEFT OF SEVERAL VEHICLES.

4          **THE COURT:**  HOW DOES THAT FIT WITH YOUR --

5          **PROSPECTIVE JUROR CARROLL:**  FOR ME, IT WAS A REALLY

6   PERSONAL SITUATION, AND I FOUND OUT THE PERSON -- THEY DID IT,

7   AND THEY TRIED TO BREAK INTO MY CAR.  I DON'T KNOW WHAT ELSE

8   THEY TRIED TO DO.  BUT THEY SLASHED MY TIRES AND THINGS LIKE

9   THAT.  I WASN'T SURE IF IT WAS GOING TO BE AN ISSUE.  I DIDN'T

10  WANT TO ANNOUNCE IT TO EVERYBODY.

11         **THE COURT:**  THE FACT THAT YOU'VE HAD YOUR EXPERIENCE,

12  DOES IT MEAN YOU CAN'T BE A FAIR JUROR?  HOW WOULD THAT AFFECT

13  YOUR ABILITY TO BE FAIR AND IMPARTIAL?

14         **PROSPECTIVE JUROR CARROLL:**  JUST BECAUSE I FEEL LIKE

15  I ALREADY -- FROM THE PAST, AND I ALREADY JUDGED SOMEONE FOR

16  THAT.  I DIDN'T KNOW IF IT WOULD BE AN ISSUE.

17         **THE COURT:**  IT HAS NOTHING TO DO WITH OUR DEFENDANT

18  HERE.

19         **PROSPECTIVE JUROR CARROLL:**  I KNOW.  I JUST WANTED TO

20  BRING THAT UP.

21         **THE COURT:**  ARE YOU SAYING -- HERE'S THE THING:  IF

22  YOU -- MANY PEOPLE HAVE BEEN THE VICTIMS OF CRIMES, MANY PEOPLE,

23  BUT THAT DOESN'T MEAN THEY CAN'T BE FAIR AND IMPARTIAL AND PUT

24  TO ONE SIDE WHAT HAPPENED TO THEM AND SO FORTH.  ON THE OTHER

25  HAND, IF WHAT YOU'RE TELLING ME IS THAT YOU WERE SO TRAUMATIZED

1   BY HAVING YOUR OWN CAR STOLEN THAT YOU WOULD, YOU KNOW, BE

2   LOOKING TO CONVICT SOMEBODY OF A SIMILAR CRIME, EVEN THOUGH THEY

3   MAY BE INNOCENT, THEN I HAVE TO EXCUSE YOU.

4           **PROSPECTIVE JUROR CARROLL:**  I WOULD TRY TO BE AS FAIR

5   AS I COULD.  I WANTED TO BE HONEST WITH YOU GUYS.

6           **THE COURT:**  YOU SAID TRY.  WILL YOU BE FAIR?  YOU

7   KNOW YOURSELF.  WILL YOU BE FAIR?

8           **PROSPECTIVE JUROR CARROLL:**  YEAH.

9           **THE COURT:**  ALL RIGHT.  ANY QUESTIONS THAT ANY OF YOU

10  TWO WANT TO ASK?

11          **MR. LEUNG:**  NO, YOUR HONOR.

12          **MR. CHAZIN:**  WELL, I'LL JUST -- LET ME JUST ASK.  I

13  SAW YOU HESITATE BEFORE YOU ANSWERED ABOUT WHETHER OR NOT YOU

14  WOULD BE FAIR.  DO YOU HAVE A QUESTION ABOUT WHETHER OR NOT YOU

15  COULD BE FAIR?

16          **PROSPECTIVE JUROR CARROLL:**  NO, I CAN TOTALLY BE

17  FAIR.  I JUST WANTED TO BRING IT UP WITH EVERYBODY THAT I HAVE A

18  PAST WITH SOMETHING LIKE THAT.  I KNOW HE HAS NOTHING TO DO WITH

19  WHAT HAPPENED TO ME, AND I KNOW EVERYBODY ELSE IS A VICTIM OF

20  SOMETHING.  I JUST WANT IT TO BE KNOWN I HAVE AN ISSUE.

21          **THE COURT:**  YOU ARE RIGHT TO BRING IT UP.  I WAS

22  GOING TO ASK THAT QUESTION ANYWAY.

23          **MR. CHAZIN:**  COULD I ASK ONE MORE?

24          **THE COURT:**  OF COURSE.

25          **MR. CHAZIN:**  DO YOU THINK ANYTHING ABOUT THAT

1  EXPERIENCE THAT OCCURRED MAY IN SOME WAY MAKE IT DIFFICULT FOR

2  YOU TO BE FAIR AND IMPARTIAL IN THIS CASE?

3            **PROSPECTIVE JUROR CARROLL:**  I BELIEVE SO.  I THINK --

4  THAT'S WHY I WANTED TO BRING IT UP.  I JUST FEEL I'M -- THE

5  SITUATION IS -- I DON'T KNOW.  I DON'T WANT TO BE, LIKE,

6  JUDGMENTAL AGAINST HIM, BECAUSE HE HAS NOTHING TO DO WITH IT,

7  BUT I ALREADY HAVE BAD FEELINGS TOWARDS THINGS LIKE THIS.  I

8  WOULDN'T WANT TO THINK OF MY OWN -- BRING UP MY OWN PAST.  DO

9  YOU KNOW WHAT I MEAN?

10            **MR. CHAZIN:**  YOU ARE SAYING YOU HAVE BAD FEELINGS

11 WHEN YOU HEARD WHAT THE CHARGES WERE?

12            **PROSPECTIVE JUROR CARROLL:**  YEAH.

13            **MR. CHAZIN:**  YOU HAVE BAD FEELINGS?  IT MIGHT BE

14 DIFFICULT FOR YOU TO SIT AS A FAIR AND IMPARTIAL JUROR?

15            **PROSPECTIVE JUROR CARROLL:**  I WOULD BE FAIR, BUT I DO

16 FEEL LIKE I HAVE BAD FEELINGS TOWARDS IT, YES.

17            **THE COURT:**  I DON'T THINK THAT'S ENOUGH TO EXCUSE

18 YOU.

19            **PROSPECTIVE JUROR CARROLL:**  THAT'S FINE.

20            **THE COURT:**  IF YOU ARE WILLING TO BE FAIR, THE FACT

21 THAT YOU WERE THE VICTIM OF A SIMILAR CRIME IS NOT ENOUGH TO

22 EXCUSE FOR CAUSE.

23            **PROSPECTIVE JUROR CARROLL:**  YOU DON'T HAVE TO EXCUSE

24 ME.  I JUST WANT EVERYBODY TO KNOW WHAT MY BACKGROUND ON THAT

25 IS.  AND I DIDN'T WANT TO BRING IT UP IN FRONT OF EVERYBODY.

1    I'M NOT ASKING YOU TO EXCUSE ME.  I JUST WANT YOU TO KNOW MY

2    BACKGROUND.

3            **THE COURT:**  WHY DON'T YOU GO TAKE YOUR 15-MINUTE

4    BREAK, OR 12 MINUTES AT THIS POINT?

5            **PROSPECTIVE JUROR CARROLL:**  OKAY.

6            **THE COURT:**  NOW WE HAVE SOME PROSPECTIVE JURORS HERE.

7    CAN WE TAKE OUR BREAK, COUNSEL?

8            **MR. CHAZIN:**  I DID HAVE ONE MATTER I DID WANT TO

9    RAISE, YOUR HONOR.

10           **THE COURT:**  IS IT SOMETHING THAT HAS TO BE DONE NOW,

11   OR CAN IT WAIT?

12           **MR. CHAZIN:**  IT COULD WAIT, YOUR HONOR.

13           **THE COURT:**  ALL RIGHT.  WE'RE GOING TO TAKE ABOUT A

14   12-MINUTE BREAK.

15                   (SIDEBAR DISCUSSION CONCLUDED, RECESS

16                   TAKEN.)

17           **THE COURT:**  ALL RIGHT.  BACK TO WORK.

18           **THE CLERK:**  PLEASE REMAIN SEATED AND COME TO ORDER.

19           **THE COURT:**  PLEASE BE SEATED.

20           **THE CLERK:**  HEIDE MILLER, M-I-L-L-E-R.

21           **THE COURT:**  MS. MILLER, WHERE ARE YOU?

22           **PROSPECTIVE JUROR MILLER:**  HERE.

23           **THE COURT:**  HOW ARE YOU TODAY?

24           **PROSPECTIVE JUROR MILLER:**  GOOD.  THANKS.

25           **THE COURT:**  WOULD YOU LIKE TO SIT IN THE SECOND SEAT

1    OVER BY THE THERMOSTAT?

2           ANY HARDSHIP ISSUE YOU WOULD LIKE TO RAISE?

3           **PROSPECTIVE JUROR MILLER:**  NO.

4           **THE COURT:**  ANY HARDSHIP ISSUE?

5           **PROSPECTIVE JUROR MILLER:**  NO.

6           **THE COURT:**  ALL RIGHT.  THAT'S GREAT.

7           WHO WAS IT THAT WAS GOING TO CALL THE UNION?  DID YOU

8    GET THROUGH?

9           **PROSPECTIVE JUROR JOHNSON:**  I SPOKE WITH MY

10   SUPERVISOR.

11          **THE COURT:**  I'M SORRY.  LET ME ASK YOU TO USE THE

12   MICROPHONE, MS. JOHNSON.  IT'S HARD TO HEAR IN THIS BIG ROOM.

13          **PROSPECTIVE JUROR JOHNSON:**  I SPOKE WITH MY

14   SUPERVISOR, YOUR HONOR.  HE DIDN'T HAVE CLEAR INFORMATION, SO I

15   HAD TO LEAVE A MESSAGE FOR OUR MANAGER.  BY THE TIME I GET HOME

16   TODAY, I'LL KNOW SOMETHING.

17          **THE COURT:**  IF YOU'RE SELECTED, IT WILL BE TOO LATE

18   TO GET OUT OF SERVICE.  KEEP THAT IN MIND.  I THINK MAYBE IF,

19   TIME PERMITTING, WE MAY HAVE ANOTHER BREAK -- YOU'VE CALLED YOUR

20   SUPERVISOR.

21          **PROSPECTIVE JUROR JOHNSON:**  YES.

22          **THE COURT:**  ALL RIGHT.  WE'LL JUST LEAVE IT THERE FOR

23   NOW.  BUT, AGAIN, I HAVE TO SAY IF YOU'RE SELECTED -- THIS IS

24   SOME INFORMATION YOU SHOULD HAVE COME TO COURT WITH.  SO IF

25   YOU'RE SELECTED, YOU'RE IN FOR THE DURATION.  SO I'M URGING YOU

1    AT THE NEXT BREAK TO TRY TO GET WHATEVER INFORMATION YOU CAN ON

2    THIS.

3              **PROSPECTIVE JUROR JOHNSON:**  I'LL DO THAT.

4              **THE COURT:**  I APPRECIATE IT.  THANK YOU.

5              OKAY.  WE ARE NOW AT THE POINT WHERE WE ARE GOING TO

6    START GETTING SOME BACKGROUND, BIOGRAPHICAL INFORMATION AND GET

7    TO KNOW EACH OTHER BETTER.

8              SO, LET'S SEE.  MS. JOHNSON WOULD YOU BRING THE

9    MICROPHONE UP TO MS. STORNETTA.  WE'LL START WITH HER.

10             JUST SO YOU'LL ALL KNOW, BY WAY OF INTRODUCTION, MY

11   NAME IS WILLIAM ALSUP.  I'M THE JUDGE IN THIS COURTROOM, AND I

12   HAVE BEEN HERE TEN YEARS, AND BEFORE THAT I WAS A LAWYER.

13   THAT'S KIND OF MY BACKGROUND.  BUT I'M NOT THE ONE THAT GETS TO

14   DECIDE THE CASE.  IT'S THE JURY.

15             IT'S REALLY YOUR BACKGROUND THAT EVERYONE'S

16   INTERESTED IN TODAY.  SO WE ARE GOING TO TAKE OUR TIME NOW AND

17   LEARN A LITTLE BIT MORE ABOUT YOU, AND YOU'LL JUST SEE HOW IT

18   GOES.

19             FOR THOSE OF YOU IN THE BACK OF THE ROOM YOUR TURN

20   MAY COME YET.  PLEASE PAY CLOSE ATTENTION TO HOW IT WORKS,

21   BECAUSE WHEN YOUR TURN COMES, I MAY BE ABLE TO SAY, DID YOU HEAR

22   ALL THE QUESTIONS, AND YOU SAY, YES, AND DID ANY OF THEM REQUIRE

23   YOU TO RAISE YOUR HAND.

24             MS. STORNETTA, DO YOU SEE THE CHART?

25             **PROSPECTIVE JUROR STORNETTA:**  I DO.  MY NAME IS

1  TERRIS STORNETTA.  I LIVE IN SAN RAFAEL.  MY EDUCATION, SOME

2  COLLEGE AND HEALD BUSINESS SCHOOL.  I WORK FOR THE MARIN COUNTY

3  OFFICES OF EDUCATION AS A TEACHING ASSISTANT IN SPECIAL DAY

4  CLASS FOR PRESCHOOL CHILDREN.

5          MY ONLY ORGANIZATION IS MY UNION.  HOBBIES ARE

6  GARDENING.  I AM MARRIED.  MY HUSBAND IS LARRY CLAYMAN

7  (PHONETIC).  HE WORKS FOR SONY PICTURES HOME ENTERTAINMENT.  I

8  HAVE ONE DAUGHTER WHO IS 25 AND WORKS FOR GOOGLE.  I HAVE NO

9  PRIOR JURY SERVICE AT ALL.  I'VE NEVER BEEN IN THE MILITARY OR

10 LAW ENFORCEMENT, AND I'VE NEVER BEEN A PARTY OR A WITNESS IN

11 COURT.

12          **THE COURT:**  THANK YOU.  THANK YOU VERY MUCH.  THAT

13 WAS VERY QUICK AND GOOD.

14          MR. CUEVAS.

15          **PROSPECTIVE JUROR CUEVAS:**  YES.  I'M GARY CUEVAS.  I

16 LIVE IN SAN RAMON, HAVE A HIGH SCHOOL EDUCATION.  MY MOST RECENT

17 JOB IS I'M DIRECTOR OF SOFTWARE AT A SMALL PUBLIC COMPANY CALLED

18 SOCKET MOBILE IN NEWARK.

19          I DON'T BELONG TO ANY ORGANIZATION OR CLUBS.  MY

20 HOBBY IS BICYCLING.

21          I AM MARRIED.  MY SPOUSE IS A GAIL LARSON.  SHE'S A

22 SOFTWARE TESTER AT AT&T.  WE HAVE NO CHILDREN.

23          I'VE BEEN ON A JURY TWO TIMES, AND WE DID REACH A

24 VERDICT BOTH TIMES.  I'VE NEVER BEEN IN THE MILITARY OR LAW

25 ENFORCEMENT.  AND I'VE NEVER BEEN A PARTY OR WITNESS IN COURT.

1          **THE COURT:**  OKAY.  AND MS. TURNER.

2          **PROSPECTIVE JUROR TURNER:**  GOOD MORNING.  I'M CATHY

3   TURNER.  I LIVE IN PACIFICA.  I HAVE SOME COLLEGE AND

4   CERTIFICATION FOR ORACLE.  MY MOST RECENT JOB IS SANTA CLARA

5   COUNTY SOCIAL SERVICES AGENCY.  I'M AN INFORMATION SYSTEMS

6   MANAGER THAT DEALS IN BUSINESS INTELLIGENCE.

7          **THE COURT:**  A LITTLE LOUDER, PLEASE.

8          **PROSPECTIVE JUROR TURNER:**  I WORK IN BUSINESS

9   INTELLIGENCE, BUSINESS SUPPORT-TYPE FUNCTIONS AND TRAINING.

10          ORGANIZATIONS I BELONG TO ARE THE COUNTY MANAGERS

11   UNION, ORACLE USERS GROUP, BUSINESS OBJECTS USERS GROUP.  I'M A

12   BOARD MEMBER ON MY ASSOCIATION IN MY HOMEOWNER'S GROUP.  AND I

13   ALSO VOLUNTEER AT THE SENIOR CENTER TO HELP WITH COMPUTERS.

14          MY HOBBIES ARE HIKING AND GARDENING.  I'M DIVORCED.

15   I HAVE ONE DAUGHTER, 36 YEARS OLD.  AND SHE WORKS FOR A LAWYER

16   WHO DOES PRIMARILY BANKRUPTCIES AND COLLECTIONS.

17          I HAVE BEEN ON TWO JURIES PREVIOUSLY, AND WE DID

18   REACH A VERDICT.  I HAVE NEVER BEEN IN THE MILITARY OR LAW

19   ENFORCEMENT, AND I HAVE NEVER BEEN A PARTY OR WITNESS IN COURT.

20          **THE COURT:**  OKAY.  MS. SIMS.

21          **MR. CHAZIN:**  EXCUSE ME, YOUR HONOR.  I WOULD JUST

22   MAKE A REQUEST TO ASK PEOPLE TO PLEASE SLOW DOWN A LITTLE BIT,

23   BECAUSE WE ARE TRYING TO TAKE DOWN THE INFORMATION.  WE'RE DOING

24   THE BEST WE CAN.  I'M SURE IT WILL ASSIST THE COURT REPORTER AS

25   WELL.

1          **THE COURT:**  ALL RIGHT.  DO YOUR BEST TO HELP OUT THE

2    LAWYERS ON THAT, MS. SIMS.

3          **PROSPECTIVE JUROR SIMS:**  MY NAME IS ANN SIMS.  I LIVE

4    IN MOSS BEACH.  I WAS EDUCATED TO BE AN ELEMENTARY SCHOOL

5    TEACHER IN ENGLAND.  MY MOST RECENT JOB HAS BEEN FOR THE LAST 32

6    YEARS AT BAYSHORE CHILDCARE SERVICES WHERE I AM THE EXECUTIVE

7    DIRECTOR, AND IT'S A PRIVATE, NON-PROFIT, STATE-FUNDED CHILDCARE

8    AGENCY.

9          ORGANIZATION I'M MOST INVOLVED WITH IS, I'M ON THE

10   BOARD OF DALY CITY PARTNERSHIP.  HOBBIES, READING AND TRAVEL.  I

11   AM MARRIED.  MY SPOUSE IS RETIRED FROM WORKING IN CITY

12   GOVERNMENT.  I HAVE ONE CHILD WHO IS 38 AND IS INVOLVED IN

13   NATIONAL RESEARCH PROJECTS.

14         I HAVEN'T SERVED ON A JURY AS YET, AND I HAVEN'T BEEN

15   IN THE MILITARY OR LAW ENFORCEMENT, OR BEEN A PARTY OR WITNESS

16   IN COURT.

17         **THE COURT:**  GREAT.  MS. DIAZ.

18         **PROSPECTIVE JUROR DIAZ:**  I'M JAN DIAZ.  I'M FROM

19   NEWARK.  MY EDUCATION IS TWO-YEAR ASSOCIATE DEGREE IN EARLY

20   CHILDHOOD EDUCATION.  MY JOB IS CHALLENGER PRESCHOOL.  I HAVE

21   BEEN THERE FOR 19 YEARS.

22         I DON'T BELONG IN ANY ORGANIZATIONS OR CLUBS.  MY

23   HOBBY IS READING.  I'M MARRIED.  MY SPOUSE'S NAME IS ERIC DIAZ.

24   HE'S A PRESSMAN FOR K.P. GRAPHICS IN SAN LEANDRO.  I HAVE ONE

25   DAUGHTER WHO IS 11.

1           I HAVE NO PRIOR JURY SERVICE OR DUTY.  I HAVE NEVER

2   BEEN IN THE MILITARY OR LAW ENFORCEMENT.  AND I HAVE NEVER BEEN

3   A PARTY OR WITNESS IN COURT.

4           **THE COURT:**  BEFORE YOU PASS, MS. SIMS, I MISSED ONE

5   THING YOU DID SAY.  DID YOU SERVE ON A JURY BEFORE?

6           **PROSPECTIVE JUROR SIMS:**  (SHAKES HEAD.)

7           **THE COURT:**  THANK YOU.

8           LET'S GO TO MS. PUGH.

9           **PROSPECTIVE JUROR PUGH:**  MY NAME IS MARY EMILY PUGH,

10  AND I LIVE IN SEBASTOPOL.  I HAVE A MASTER'S IN SOCIOLOGY AND A

11  MASTER'S IN PSYCHOLOGY.  I WORK FOR CHOP'S TEEN CLUB IN SANTA

12  ROSA.  I ALSO WORK UNDER A TARGET GRANT FOR RUNNING AN ART

13  THERAPY GROUP IN SANTA ROSA.

14          I'M NOT PART OF ANY ORGANIZATIONS, AND MY HOBBIES ARE

15  VARIED.  I LIKE DOING ALL SORTS OF THINGS.  AND I AM NOT

16  MARRIED, AND I DON'T HAVE ANY CHILDREN.

17          I HAVE NEVER SERVED IN JURY -- NEVER SERVED JURY

18  SERVICE AND IN THE MILITARY AND LAW ENFORCEMENT.  I NEVER --

19  I'VE NEVER BEEN A PARTY OR A WITNESS IN COURT.

20          **THE COURT:**  THANK YOU.

21          MS. YU.

22          **PROSPECTIVE JUROR YU:**  MY NAME IS KAREN YU.  I LIVE

23  IN SAN CARLOS.  BACHELOR'S DEGREE.  REALTOR AS A JOB.

24  ORGANIZATION AND CLUBS, JUST MISCELLANEOUS REALTOR ASSOCIATIONS.

25          HOBBIES WOULD BE DOG TRAINING AND HORSE POLO.

1          MARRIED.  SPOUSE, YES.  OCCUPATION, ENGINEER.

2    CHILDREN, JUST THE ONE COMING.

3          NEVER SELECTED FOR JURY SERVICE, AND NO MILITARY AND

4    NEVER A PARTY OR WITNESS IN COURT.

5          **THE COURT:**  WHAT WAS THAT ABOUT THE DOG AND WHAT --

6          **PROSPECTIVE JUROR YU:**  FOR HOBBIES?  OH.  HORSE POLO

7    AND TRAINING MY DOG.

8          **THE COURT:**  THAT'S GOOD.  OKAY.

9          NOW WE GO TO?

10         **PROSPECTIVE JUROR MILLS:**  JOHN MILLS.

11         **THE COURT:**  MR. MILLS.

12         **PROSPECTIVE JUROR MILLS:**  JOHN MILLS, AS YOU HEARD.

13         I LIVE IN SAN FRANCISCO.  I HAVE A BACHELOR'S IN

14   COMPUTER INFORMATION SYSTEMS.  I'M A LEAD ENGINEER AT A STARTUP

15   HERE IN SOUTH PARK.

16         I BELONG TO TWO DIFFERENT CAR CLUBS.  RUN A BURNING

17   MAN CAMP.  MY HOBBIES ARE BUILDING CARS AND WORKING ON HOUSES.

18   I'M SINGLE.  NO CHILDREN.

19         NEVER BEEN IN COURT, NEVER SERVED IN THE MILITARY,

20   AND NEVER BEEN A WITNESS IN COURT.

21         **THE COURT:**  ALL RIGHT.  YOU DO WHAT AT THE BURNING

22   MAN?

23         **PROSPECTIVE JUROR MILLS:**  I STARTED A THEME CAMP FOR

24   BURNING MAN.

25         **THE COURT:**  A THEME CAMP?

1              **PROSPECTIVE JUROR MILLER:**  THEME CAMP, YEAH.

2              **THE COURT:**  I KNOW WHAT BURNING MAN IS.

3              **PROSPECTIVE JUROR MILLS:**  I DON'T KNOW HOW MUCH

4    DETAIL YOU WANT, BUT IT'S A WILD PARTY.

5              **THE COURT:**  ALL RIGHT.  LET'S GO TO MS. TORREGROSA.

6              **PROSPECTIVE JUROR TORRESGROSA:**  HI.  I AM ALICIA

7    TORREGROSA.  I LIVE IN MENLO PARK, CALIFORNIA.  I HAVE A

8    MASTER'S DEGREE IN ECOLOGY.  I'M A SCIENTIST WITH THE U.S.

9    GEOLOGICAL SURVEY.  MY ORGANIZATIONS ARE SCIENTIFIC.

10             MY HOBBIES ARE READING, BIKING, HIKING.  I HAVE A

11   HUSBAND.  HE'S ALSO A SCIENTIST, BUT HE'S EMPLOYED FREELANCE.  I

12   HAVE NO CHILDREN.

13             I'VE NEVER SERVED ON A JURY.  I'VE NOT BEEN IN THE

14   MILITARY OR THE LAW ENFORCEMENT, AND I'VE NOT BEEN A PARTY OR

15   WITNESS IN COURT.

16             **THE COURT:**  THANK YOU.

17             MS. CARROLL.

18             **PROSPECTIVE JUROR CARROLL:**  MY NAME IS MEGAN CARROLL.

19   I LIVE IN SANTA ROSA.  I GRADUATED HIGH SCHOOL AND FROM THE

20   INTERNATIONAL COLLEGE OF COSMETOLOGY.  I AM AN ESTHETICIAN AT A

21   SALON IN ROHNERT PARK.

22             I'M NOT IN ANY CLUBS OR ORGANIZATIONS.  I LIKE TO

23   WORK OUT, GO TO THE RIVER, SHOPPING.  I'M NOT MARRIED, I DON'T

24   HAVE CHILDREN.

25             I'VE NEVER SERVED IN A JURY.  I'VE NEVER BEEN IN THE

1   MILITARY OR LAW ENFORCEMENT, AND I HAVE NEVER BEEN A PARTY OR A

2   WITNESS IN COURT.

3            **THE COURT:**  ALL RIGHT.  THANK YOU.

4            AND MR. RUCKER.

5            **PROSPECTIVE JUROR RUCKER:**  MY NAME IS BRUCE RUCKER.

6   I LIVE IN OAKLAND, CALIFORNIA.  I HAVE A MASTER'S DEGREE IN

7   GEOLOGY.  MY CURRENT JOB IS A HAZARDOUS WASTE GEOLOGIST FOR CE2

8   CORPORATION.

9            NO ORGANIZATIONS OR CLUBS TO SPEAK OF.  HOBBIES ARE

10  COLLECTING ANTIQUES.

11           I AM MARRIED.  MY WIFE IS A CORPORATE WEB

12  COMMUNICATIONS MANAGER HERE IN SAN FRANCISCO.  I HAVE ONE CHILD,

13  TEN YEARS OLD.

14           NO PRIOR JURY SERVICE.  NO MILITARY OR LAW

15  ENFORCEMENT.  AND MY ONLY EXPERIENCE IN COURT HAS BEEN A PARTY

16  TO A SMALL CLAIMS.

17           **THE COURT:**  WHAT WAS THE NATURE OF THE SMALL CLAIMS

18  CASE?

19           **PROSPECTIVE JUROR RUCKER:**  A BROKEN VCR 20 YEARS AGO.

20           **THE COURT:**  OKAY.

21           MR. LAUFF.

22           **PROSPECTIVE JUROR LAUFF:**  YEP, THAT'S RIGHT.

23           **THE COURT:**  GO AHEAD.

24           **PROSPECTIVE JUROR LAUFF:**  I'M KARL LAUFF.  I LIVE IN

25  OAKLAND.  I HAVE A MASTER'S IN URBAN PLANNING.  I WORK FOR

1 CHRISTIAN CHURCH HOMES, WHICH IS A NON-PROFIT AFFORDABLE HOUSING

2 DEVELOPER.  I'M INVOLVED IN A NUMBER OF ORGANIZATIONS ASSOCIATED

3 WITH NON-PROFIT HOUSING.

4          MY HOBBIES ARE HIKING AND TRAVELING.

5          I'M NOT MARRIED.  NO SPOUSE, NO CHILDREN.

6          NO PRIOR JURY SERVICE, NEVER IN THE MILITARY.  AND I

7 APPEARED IN COURT FOR FISHING WITHOUT A FISHING LICENSE ABOUT

8 FIVE YEARS AGO.

9          **THE COURT:**  ALL RIGHT.  MR. MORGAN.

10          **PROSPECTIVE JUROR D. MORGAN:**  I'M DAVE MORGAN FROM

11 SANTA ROSA.  MY EDUCATION IS HIGH SCHOOL.  I'M A CONSTRUCTION

12 WORKER.

13          ORGANIZATIONS, I'M AFFILIATED WITH THE PEARL HARBOR

14 SURVIVORS.  MY HOBBIES IS GROWING GIANT PUMPKINS.  I'M MARRIED.

15 MY SPOUSE IS A OUTDOOR WRITER.  WE HAVE NO CHILDREN.

16          NEVER BEEN ON A JURY.  NEVER BEEN IN THE MILITARY.

17 BUT I WAS A WITNESS IN COURT.

18          **THE COURT:**  WHAT KIND OF CASE WAS THAT?

19          **PROSPECTIVE JUROR D. MORGAN:**  LIQUOR STORE HOLDUP.

20          **THE COURT:**  HOW LONG AGO WAS THAT?

21          **PROSPECTIVE JUROR D. MORGAN:**  TWENTY YEARS.

22          **THE COURT:**  ALL RIGHT.

23          **THE INTERPRETER:**  EXCUSE ME.  THE INTERPRETER DID NOT

24 HEAR HOW LONG.

25          **THE COURT:**  THE ANSWER WAS 20 YEARS.  RIGHT?

1          **PROSPECTIVE JUROR D. MORGAN:**  YES.

2          **THE COURT:**  ALL RIGHT.  MS. KAUR.

3          **PROSPECTIVE JUROR KAUR:**  MY NAME IS PARDEEP KAUR.  I

4   LIVE IN PITTSBURG, CALIFORNIA.  EDUCATION, I'M GRADUATE FROM

5   HIGH SCHOOL.  I WORK FOR WAL-MART.

6          NO ORGANIZATIONS, AND MY HOBBIES I LIKE TO GO FOR

7   SHOP.  I'M DIVORCED.  I HAVE ONE DAUGHTER.  SHE'S TWO AND A

8   HALF.

9          NEVER BEEN PRIOR JURY SERVICE, NO MILITARY, NEVER

10  BEEN WITNESS IN COURT.

11         **THE COURT:**  ALL RIGHT.  BEFORE WE -- MR. MORGAN, IN

12  THE CASE WHERE YOU HAD BEEN A JUROR, YOU SAID -- YOU WERE NOT A

13  JUROR.  YOU WERE A WITNESS?

14         **PROSPECTIVE JUROR KAUR:**  NO.

15         **THE COURT:**  I'M TALKING TO MR. MORGAN.

16         AND MS. KAUR, HAVE YOU EVER BEEN A JUROR BEFORE?

17         **PROSPECTIVE JUROR KAUR:**  NO.

18         **THE COURT:**  ALL RIGHT.  I'M GOING TO ASK YOU NOW TO

19  WALK ACROSS THE ROOM WITH THE MICROPHONE, PLEASE, OVER TO

20  MR. HERDA AND LET HIM START WITH HIS -- MAY I ASK ONE OF THE

21  LAWYERS TO FLIP THE CHART AROUND SO THAT THE JURORS OVER THERE

22  WILL BE ABLE TO SEE WHAT THEY'RE SUPPOSED TO ANSWER?  ALL RIGHT.

23         MR. HERDA, CAN YOU SEE THE CHART OKAY?

24         **PROSPECTIVE JUROR HERDA:**  YEAH, I CAN.

25         MY NAME IS WOLF HERDA.  I LIVE IN MILL VALLEY.  I

1   HAVE A MASTER'S DEGREE IN COMPUTER SCIENCE.  I WORK AS THE

2   SOFTWARE DIRECTOR FOR INTERNET STARTUP.

3           REALLY NO ORGANIZATION AND CLUBS.  HOBBIES, I GUESS

4   MUCH TO THE CHAGRIN OF MY WIFE, I PLAY ONLINE POKER, WHICH I

5   MIGHT LIKE TO ADD I DON'T LIKE THE FEDERAL GOVERNMENT'S

6   INTERFERENCE IN IT.

7           I'M MARRIED.  MY WIFE STAYS AT HOME.  NO CHILDREN.  I

8   HAVE DONE ONE JURY SERVICE UP IN MARIN COUNTY THAT WENT FOR,

9   LIKE, TWO MONTHS, AND THEN IT WAS SETTLED OUT OF COURT.

10          NO MILITARY, NO LAW ENFORCEMENT, NO PARTY OR WITNESS

11  IN COURT.

12          **THE COURT:**  THANK YOU.  ALL RIGHT.

13          HOW DOES THE FEDERAL GOVERNMENT INTERFERE WITH POKER?

14          **PROSPECTIVE JUROR HERDA:**  GEORGE BUSH TRIED TO MAKE

15  IT ILLEGAL.

16          **THE COURT:**  MAKE POKER ILLEGAL?

17          **PROSPECTIVE JUROR HERDA:**  ONLINE GAMBLING.

18          **THE COURT:**  ONLINE GAMBLING?

19          **PROSPECTIVE JUROR HERDA:**  YEAH.

20          **THE COURT:**  THERE YOU GO.

21          SO, NOW WE GO TO MS. MILLER.

22          **PROSPECTIVE JUROR MILLER:**  HI.  MY NAME IS HEIDE

23  MILLER.  I LIVE IN WALNUT CREEK.  I HAVE A BACHELOR'S DEGREE AND

24  A TEACHING CREDENTIAL.  I WORK AS AN ARTS EDUCATOR IN SEVERAL

25  MUSEUMS IN THE BAY AREA.

```
 1                  I DON'T BELONG TO ANY ORGANIZATIONS OF CLUBS.
 2      HOBBIES ARE ART AND TRAVEL.
 3                  I'M MARRIED.  MY HUSBAND WORKS FOR KAISER PERMANENTE,
 4      PRODUCT DEVELOPMENT.  I HAVE TWO CHILDREN.  ONE IS IN COLLEGE,
 5      AND ONE IS IN HIGH SCHOOL.
 6                  I'VE NEVER SERVED ON A JURY BEFORE.  I'VE NEVER BEEN
 7      IN THE MILITARY OR LAW ENFORCEMENT, AND I'VE NEVER BEEN A PARTY
 8      OR WITNESS IN COURT.
 9                  THE COURT:  THANK YOU.  NOW WE GO TO MS. ORTA.
10                  PROSPECTIVE JUROR ORTA:  MY NAME IS TERESA ORTA.  I
11      LIVE IN SAN FRANCISCO.  MY EDUCATION IS TOO LOW.  I WENT TO THE
12      U.S. SCHOOL.  NOW I TAKING CLASSES, ESL CLASS AT CITY COLLEGE.
13      MY EMPLOYER IS FOUR SEASONS HOTEL.  I WORK FOR THE UNION 2,
14      LOCAL 2.
15                  AND I WENT TO THE GYM, MY HOBBY.  MY MARITAL STATUS,
16      I'M SINGLE.  MY CHILDREN IS TWO.  MY SON LIVES IN SAN FRANCISCO,
17      AND MY DAUGHTER LIVES IN MEXICO.
18                  I'M NOT CRIMINAL, NO VERDICT.
19                  THE COURT:  SAY THAT AGAIN.
20                  PROSPECTIVE JUROR ORTA:  I'M NOT PRIOR JURY SERVICE.
21                  THE COURT:  I'M SORRY.  YOU DO OR DO NOT HAVE PRIOR
22      JURY SERVICE?
23                  PROSPECTIVE JUROR ORTA:  DO NOT.  OR MILITARY OR LAW
24      ENFORCEMENT, AND NEVER PARTY OR WITNESS ON COURT.
25                  THE COURT:  THANK YOU.
```

1           **PROSPECTIVE JUROR ORTA:**  YOU'RE WELCOME.

2           **THE COURT:**  NEXT.

3           **PROSPECTIVE JUROR PERRY:**  MY NAME IS LINDA PERRY.  I

4    LIVE IN PLEASANTON.  I HAVE A MASTER'S IN ECONOMICS.  I'M A

5    DIRECTOR FOR JACOBS CONSULTANCY, WHICH IS AN AIRPORT MANAGEMENT

6    CONSULTING FIRM.

7           NO ORGANIZATIONS OR CLUB AFFILIATIONS.  HOBBIES, I

8    DON'T REALLY HAVE TIME FOR HOBBIES.

9           I'M MARRIED.  MY HUSBAND'S NAME IS EDWARD LOPEZ.

10   HE'S AN ATTORNEY.  HE'S CHIEF LEGAL OFFICER FOR SILICON IMAGE,

11   HIGH-TECH COMPANY IN SANTA CLARA.  I HAVE TWO SONS.  ONE'S A

12   JUNIOR IN COLLEGE.  THE OTHER IS A SENIOR IN HIGH SCHOOL.

13          I SERVED ON A JURY ABOUT 10 TO 15 YEARS AGO.  IT WAS

14   A CRIMINAL CASE.  IT LASTED ABOUT A MONTH, AND WE DID REACH A

15   VERDICT.  NO MILITARY OR LAW ENFORCEMENT EXPERIENCE, AND I'VE

16   NEVER BEEN A PARTY OR A WITNESS IN COURT.

17          **THE COURT:**  ALL RIGHT.  THANK YOU.

18          MS. MERKIN.

19          **PROSPECTIVE JUROR MERKIN:**  HI.  MY NAME IS CAROLYN

20   MERKIN.  I CURRENTLY LIVE IN SAN FRANCISCO, BUT I'LL BE MOVING

21   TO NOVATO NEXT WEEK.  I HAVE A MASTER'S IN BUSINESS

22   ADMINISTRATION, AND I'M CURRENTLY WORKING AS A BUSINESS ANALYST

23   FOR WELLS FARGO.  I'M SELF-EMPLOYED.  I'M A VOLUNTEER FOR A

24   MENTORSHIP GROUP CALLED CITY OF DREAMS, WHICH HELPS AT-RISK

25   YOUTH IN SAN FRANCISCO.

1          I LIKE TO DO YOGA, AS WELL AS VOLUNTEER, AS WELL AS

2   PLAY GUITAR.

3          I'M SINGLE, BUT ENGAGED.  MY SPOUSE'S NAME IS JOSEPH

4   KING, JUNIOR.  HE IS A GARDENER FOR THE CITY'S PARK AND REC

5   DEPARTMENT.  I HAVE NO CHILDREN.

6          DON'T HAVE ANY PRIOR JURY SERVICE.  NEVER BEEN IN

7   MILITARY OR LAW ENFORCEMENT.  AND I'VE NEVER BEEN A PARTY OR

8   WITNESS IN COURT.  THANK YOU.

9          **THE COURT:**  THANK YOU.

10         MR. BROWN.

11         **PROSPECTIVE JUROR BROWN:**  LORING BROWN, PLEASANTON.

12  SOME COLLEGE.  CURRENTLY UNEMPLOYED.  LAST WORKED FOR

13  HEWLETT-PACKARD AS A LARGE SCALE SYSTEM INTEGRATOR.

14         NO CLUBS OR ORGANIZATIONS.  HOBBIES WOULD BE READING.

15  I'M DIVORCED.  I HAVE TWO CHILDREN, BOTH BOYS.  ONE'S IN

16  COLLEGE.  ONE'S IN HIGH SCHOOL.  AGES ARE 16 AND 19.

17         I'VE SERVED ON TWO CRIMINAL CASES.  ONE REACHED A

18  VERDICT.  ONE WAS DISMISSED.  AND NO AND NO.

19         **THE COURT:**  OKAY.  ALL RIGHT.

20         MR. HOVERMALE.

21         **PROSPECTIVE JUROR HOVERMALE:**  I'M BEN HOVERMALE.

22  EXCUSE ME.  I LIVE IN BELVEDERE.  I HAVE A BACHELOR'S OF

23  ECONOMICS.  I'M A PARTNER AT A REGISTERED INVESTMENT ADVISER.

24         A MEMBER OF THE OLYMPIC CLUB AND SAN FRANCISCO YACHT

25  CLUB.  PLAY GOLF, SAIL, AND MOUNTAIN BIKE.  MARRIED, MY WIFE,

1    ALISON, WAS A REGISTERED NURSE, IS NOW A HOMEMAKER.  THREE KIDS,

2    EIGHT, SIX, FOUR; GIRL, GIRL, BOY.

3           I HAVE HAD PRIOR JURY SERVICE.  I HAVE BEEN CALLED

4    FOR JURY SERVICE FOUR TIMES, SERVED ON ONE JURY, REACHED A

5    GUILTY VERDICT.  HAVE NOT SERVED IN THE MILITARY OR LAW

6    ENFORCEMENT.  MY WIFE'S BROTHER-IN-LAW AND HIS FATHER ARE BOTH

7    JUDGES IN VANCOUVER, BRITISH COLUMBIA.  I HAVE NEVER BEEN A

8    PARTY OR A WITNESS IN COURT.

9           **THE COURT:**  ALL RIGHT.  WHEN YOU'RE ALL ANSWERING

10   WHETHER YOU SERVED ON A JURY, WHAT I WOULD LIKE TO KNOW IS

11   WHETHER IT WAS CIVIL, WHETHER IT WAS CRIMINAL, WHETHER YOU WERE

12   ABLE TO REACH A VERDICT, BUT YOU SHOULD NOT -- IT'S NOT

13   DRAMATIC, IF YOU DO, BUT YOU DON'T NEED TO TELL US WHICH WAY YOU

14   CAME OUT, WHETHER IT WAS GUILTY OR NOT GUILTY, JUST THAT YOU

15   REACHED A VERDICT.  ALL RIGHT.  THANK YOU.

16          NEXT IS MR. WATHEN.

17          **PROSPECTIVE JUROR WATHEN:**  MY NAME IS MATT WATHEN.

18   I'M REQUESTING A SIDEBAR.

19          **THE COURT:**  ABOUT THE WHOLE -- YOU CAN'T EVEN GIVE US

20   ANY INFORMATION?

21          **PROSPECTIVE JUROR WATHEN:**  I CAN GIVE THAT FIRST.

22          MY NAME IS MATT WATHEN.  I'M A RESIDENT OF ALBANY.  I

23   HAVE TWO BACHELOR DEGREES.  I'M A RETIRED AIRPLANE PILOT.

24   ORGANIZATIONS, I BELONG TO MASTER'S SWIMMING GROUP, BICYCLE

25   GROUP, SIERRA CLUB, SWIMMING, BIKING, HIKING.

1           MARRIED.  MY SPOUSE IS A SOCIAL SCIENTIST, WORKS ON

2    GRANTS FROM NONPROFITS.  I HAVE TWO GRANDCHILDREN AND ONE

3    STEPSON WHO'S 11.  HE LIVES WITH US.

4           I DO NOT HAVE PRIOR JURY DUTY.  I AM RETIRED

5    MILITARY.  AND I HAVE BEEN INVOLVED IN COURT CASES, ALL TO DO

6    WITH FAMILY COURT, DIVORCE AND CUSTODY ISSUES.

7           **THE COURT:**  ALL RIGHT.  WE'LL COME TO THE SIDEBAR.  I

8    DON'T WANT TO INCONVENIENCE EVERYONE ELSE.  SO IT WILL HAVE TO

9    BE A LITTLE BIT LATER.  WE'LL GET TO IT.

10          MS. SPATH.

11          **PROSPECTIVE JUROR SPATH:**  TAMMY SPATH.  I LIVE IN

12   BERKELEY.  I HAVE A BACHELOR'S DEGREE.  I WORK FOR THE

13   UNIVERSITY OF CALIFORNIA AT BERKELEY AS A FUNDRAISER.  I AM A

14   BOARD MEMBER OF THE UNIVERSITY OF CHICAGO ALUMNI CLUB IN THE BAY

15   AREA.

16          MY HOBBIES ARE TRAVELING, DANCE, SHOPPING, READING,

17   EATING, ALL SORTS OF THINGS.

18          I AM SINGLE.  I DO NOT HAVE CHILDREN.

19          I HAVE NEVER SERVED ON A JURY, AND I'VE NEVER BEEN IN

20   THE MILITARY OR LAW ENFORCEMENT.  AND I HAVE NEVER BEEN A PARTY

21   OR A WITNESS IN COURT.

22          **THE COURT:**  ALL RIGHT.  THANK YOU.  WONDERFUL.  CAN

23   YOU HAND THE MICROPHONE OVER TO MS. CLARKE?

24          **PROSPECTIVE JUROR CLARKE:**  MY NAME IS PAULINE CLARKE.

25   I LIVE IN BRENTWOOD.  I HAVE ABOUT THREE YEARS OF COLLEGE

1   EDUCATION.  I HAVE BEEN RETIRED ALMOST TEN YEARS FROM SANTA

2   CLARA COUNTY SOCIAL SERVICES AGENCY.

3          HOBBIES ARE READING AND TRAVELING.  I HAVE BEEN

4   DIVORCED FOR OVER 40 YEARS.  MY CHILDREN ARE 46 AND 44.  MY SON

5   IS A CARPET INSTALLER.  MY DAUGHTER WORKS INFORMATION TECHNOLOGY

6   FOR ONE OF THE LAW FIRMS IN THE CITY.

7          I HAVE HAD PRIOR JURY SERVICE.  IT WAS A CIVIL CASE.

8   WE DID REACH A VERDICT.  NO MILITARY OR LAW ENFORCEMENT.

9          AS AN ELIGIBILITY WORKER, I WAS -- I HAVE SERVED AS A

10  WITNESS IN COURT IN WELFARE FRAUD CASES.  AND ONE TIME, IT

11  WAS -- IT'S BEEN ABOUT 30 YEARS, I WAS IN COURT AS A VICTIM OF

12  AN ASSAULT.

13          **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU.

14          NOW WE GO TO MR. MONTOYA.

15          **PROSPECTIVE JUROR MONTOYA:**  MY NAME IS GUILLERMO

16  MONTOYA.  I LIVE IN CORTE MADERA.  I HAVE A COLLEGE EDUCATION.

17  I HAVE BEEN SELF-EMPLOYED FOR OVER 25 YEARS.  I BELONG TO THE

18  ACLU, THE LIONS CLUB AND ALCOHOLIC ANONYMOUS.  MY HOBBIES ARE

19  READING, HISTORY, AND THE LAW, AND COACHING BASKETBALL.

20          I'M HAPPILY MARRIED FOR 25 YEARS.  MY WIFE IS A

21  NUTRITIONIST.  AND I HAVE TWO DAUGHTERS, AND THEY'RE STUDENTS.

22          AND I BEEN CALLED TO SERVE AT A JURY, BUT I HAVE

23  NEVER BEEN SELECTED.  I WAS IN THE AIR FORCE MANY, MANY YEARS

24  AGO IN EL SALVADOR, AND I BEEN PART OF WITNESS IN LAWSUITS IN

25  COURT.

1          **THE COURT:**  WOULD YOU BRIEFLY DESCRIBE THOSE?

2          **PROSPECTIVE JUROR MONTOYA:**  YES.  MOSTLY, THEY HAD TO

3   DO WITH TAKING CLIENTS THAT HAVE NOT PAID TO SMALL CLAIMS, AND

4   THAT'S IT.

5          **THE COURT:**  OKAY.  THANK YOU.

6          ALL RIGHT.  NEXT WE GO TO MR. NOVELLY?

7          **PROSPECTIVE JUROR NOVELLY:**  JEREMIAH NOVELLY.

8          **THE COURT:**  YES.

9          **PROSPECTIVE JUROR NOVELLY:**  MY NAME IS JEREMIAH

10  NOVELLY.  I LIVE IN NAPA, CALIFORNIA.  I DO HAVE COLLEGE.  I'M A

11  PROBLEM SOLVER FOR BAY AREA REFINERIES AND STUFF LIKE THAT FOR

12  EA SERVICES.  I BELONG TO THE VFW.  WORK, I GUESS, IS MY MAIN

13  HOBBY.

14          I'M MARRIED.  MY WIFE IS AN ACCOUNTANT.  I HAVE TWO

15  CHILDREN, 7 AND 11.  EVIDENTLY, THEY'RE BOTH IN SCHOOL.  I HAVE

16  BEEN ASKED TO BE ON A JURY ON A CIVIL CASE, BUT HAD PRIOR

17  DEALINGS, SO WAS DISMISSED.  I WAS IN THE MILITARY, AND I'VE

18  NEVER BEEN A WITNESS OR A PARTY.

19          **THE COURT:**  I'M SORRY.  YOU WERE ON A JURY?

20          **PROSPECTIVE JUROR NOVELLY:**  I WAS DISMISSED RIGHT

21  BEFORE BECAUSE I'VE HAD PRIOR DEALINGS WITH THE COMPANY THAT WAS

22  IN SUIT.

23          **THE COURT:**  I SEE.  YOU WERE NOT SELECTED TO SERVE?

24          **PROSPECTIVE JUROR NOVELLY:**  CORRECT.

25          **THE COURT:**  OKAY.  THANK YOU.

1              MS. NGUYEN-YOSHI.

2              **PROSPECTIVE JUROR YOSHI:**  MY NAME IS KIM

3   NGUYEN-YOSHI.  I WOULD PREFER TO GO BY KIM YOSHI, JUST TO KEEP

4   THINGS SHORT.  I AM A RESIDENT OF PACIFICA.  I HAVE A COLLEGE

5   DEGREE IN ACCOUNTING.  MY CURRENT EMPLOYER IS -- I'M A

6   CONTROLLER FOR UB SOFT, WHICH IS A SOFTWARE COMPANY.  MOST OF MY

7   EDUCATION WOULD BE ACCOUNTING ORIENTED.  HOBBY WOULD BE CRAFT.

8              I'M MARRIED.  MY HUSBAND IS AN ACCOUNTANT FOR CLOROX.

9   I HAVE TWO TWIN GIRLS, FIVE AND A HALF.

10             I HAVE SERVED ON A CRIMINAL -- AS, AN ALTERNATE JUROR

11  ON A CRIMINAL CASE, AND THERE'S NO VERDICT.  NEVER BEEN IN

12  MILITARY OR LAW ENFORCEMENT.  AND I WAS A WITNESS TO A -- IN

13  COURT ABOUT 20 YEARS AGO.  CRIMINAL CASE.

14             **THE COURT:**  WHEN YOU DID SERVE ON THE -- AS AN

15  ALTERNATE JUROR, DID YOU GET SWORN INTO THE MAIN JURY, OR DID

16  YOU REMAIN AS AN ALTERNATE?

17             **PROSPECTIVE JUROR YOSHI:**  I REMAINED AS AN ALTERNATE.

18             **THE COURT:**  WHAT KIND OF CASE WAS IT?

19             **PROSPECTIVE JUROR YOSHI:**  WITNESS WAS ALSO CRIMINAL.

20             **THE COURT:**  WHEN YOU WERE A WITNESS, WHAT KIND OF

21  CASE WAS IT?

22             **PROSPECTIVE JUROR YOSHI:**  IT WAS A CRIMINAL CASE.

23             **THE COURT:**  I KNOW BUT --

24             **PROSPECTIVE JUROR YOSHI:**  SORRY.  IT WAS BATTER.

25             **THE COURT:**  BATTERY?

1          **PROSPECTIVE JUROR YOSHI:**  YEAH.

2          **THE COURT:**  OKAY.  ALL RIGHT.  NOW WE GO TO --

3          **PROSPECTIVE JUROR NOMBRADO:**  I'M REX NOMBRADO.  I

4    LIVE IN SAN BRUNO, CALIFORNIA.  MY EDUCATION, UNDERGRADUATE,

5    HIGH SCHOOL.  MY RECENT JOB RIGHT NOW IS I HAVE TWO JOBS, AS A

6    SHUTTLE DRIVER FROM THE AIRPORT.  AND I HAVE NO ORGANIZATION.

7    MY HOBBY IS JUST LISTENING MUSIC.

8          I'M MARRIED WITH MY MERLINA NOMBRADO.  AND I HAVE

9    CHILDREN.  I HAVE ONE SON RIGHT NOW JUST ARRIVE FROM THE

10   PHILIPPINES.  THEY HAVE NO JOBS.  AND I SEND MY TWO GRANDSON TO

11   SCHOOL RIGHT NOW.  ONE IS IN E (PHONETIC) AND ONE IS HIGH

12   SCHOOL.  SO I'M NOT IN THE JURY AND MILITARY, AND ALSO NOT A

13   WITNESS.  THANK YOU.

14         **THE COURT:**  I'M SORRY.  HAVE YOU EVER BEEN ON A JURY?

15         **PROSPECTIVE JUROR NOMBRADO:**  NOT YET, NO.

16         **THE COURT:**  ALL RIGHT.  THANK YOU.  NEXT.

17         **PROSPECTIVE JUROR FUGELSETH:**  MY NAME IS ROBERT

18   FUGELSETH.  I LIVE IN CONCORD.  I HAVE A BACHELOR'S DEGREE IN

19   COMMUNICATION.  I AM CURRENTLY A CUSTOMER SERVICE REPRESENTATIVE

20   WITH TICKETS.COM.  I DON'T BELONG TO ANY ORGANIZATIONS OR CLUBS.

21   HOBBIES ARE EXERCISING, TRAVELING, AND COACHING A HIGH SCHOOL

22   BASEBALL TEAM IN WALNUT CREEK.

23         I AM MARRIED.  MY WIFE JACQUELINE IS A CASE MANAGER

24   OR SOCIAL WORKER WITH REGIONAL CENTER OF THE EASTBAY.  I HAVE

25   ONE CHILD, A ONE-YEAR-OLD SON.

1          NO PRIOR JURY SERVICE, MILITARY OR LAW ENFORCEMENT

2     SERVICE, OR A WITNESS OR PARTY IN COURT.

3          **THE COURT:**  OKAY.  THANK YOU.

4          NOW WE GO TO MS. NATHAN.

5          **PROSPECTIVE JUROR NATHAN:**  THANK YOU.

6          WOULD YOU TURN THAT CHART JUST A LITTLE FOR ME?

7          **THE COURT:**  IT'S GETTING PRETTY HARD TO SEE ALL THE

8     WAY ACROSS THE ROOM.  DO YOU WANT US TO MOVE IT CLOSER?

9          **PROSPECTIVE JUROR NATHAN:**  ACTUALLY, THAT'S GOOD.

10    THANK YOU.

11         MY NAME IS RUTH NATHAN.  I LIVE IN ALAMO, CALIFORNIA.

12    I HAVE A DOCTORATE IN THE PSYCHOLOGY OF READING.  MY MOST RECENT

13    JOB IS I'M A VISITING SCHOLAR AT U.C. BERKELEY.  I'M ALSO A

14    CONSULTANT TO A NEW STARTUP ON SOCIAL NETWORKING WITH HIGH

15    SCHOOL STUDENTS, WITH AN EDUCATIONAL TWIST TO IT.

16         I AM A MEMBER OF THE BOARD FOR THE FOUNDATION FOR

17    EARLY EDUCATION AND ALSO THE CURRICULUM STUDY COMMISSION OF

18    CALIFORNIA.  MY HOBBIES ARE GARDENING AND SWIMMING, AND I PLAY

19    THE PIANO.

20         YES, I AM MARRIED.  MY SPOUSE, LARRY NATHAN, HE IS

21    CHIEF OF LABORATORY MEDICINE FOR NORTHERN CALIFORNIA KAISER.  I

22    HAVE THREE CHILDREN.  THEY'RE 37 -- NO -- 35, 33 AND 31.  ONE IS

23    A WEB -- ONE LIVES IN GERMANY AND IS A WEB DESIGNER FOR SIEMENS.

24    THE MIDDLE ONE LIVES IN BERKELEY AND HAS A DESIGN FIRM.  AND THE

25    LITTLE ONE IS A PHOTOGRAPHER, LIVING IN OAKLAND, TWO

1   GRANDCHILDREN.

2              I HAVE NEVER SERVED BEFORE.  I HAVE NEVER BEEN IN THE

3   MILITARY, AND I'VE NEVER BEEN A PARTY OR A WITNESS.

4              **THE COURT:**  AND YOU'RE A VISITING SCHOLAR AT U.C.

5   BERKELEY?

6              **PROSPECTIVE JUROR NATHAN:**  YES.

7              **THE COURT:**  IN WHAT SUBJECT?

8              **PROSPECTIVE JUROR NATHAN:**  IN THE FIELD OF EDUCATION,

9   SPECIFICALLY IN THE COGNITIVE PSYCHOLOGY RELATED TO READING.

10             **THE COURT:**  DO YOU TEACH OVER THERE, TOO?

11             **PROSPECTIVE JUROR NATHAN:**  NO, NOT NOW.  I'M JUST

12  VISITING AND WORKING WITH THEIR PH.D. CANDIDATES ON THEIR

13  DISSERTATIONS.

14             **THE COURT:**  THANK YOU.

15             NEXT.

16             **PROSPECTIVE JUROR JOHNSON:**  MY NAME IS RELIA JOHNSON.

17  I LIVE IN SAN FRANCISCO.  I WENT TO SAN FRANCISCO STATE

18  UNIVERSITY.  I WORK FOR THE CITY AND COUNTY OF SAN FRANCISCO,

19  DEPARTMENT OF PUBLIC HEALTH.  I BELONG TO JUMP START, WHICH

20  TEACHES THREE AND FOUR YEAR OLDS HOW TO READ BEFORE THEY ENTER

21  KINDERGARTEN.  I LIKE TO COOK AND BAKE.

22             PRESENTLY, I AM IN A DIVORCE WITH MY HUSBAND AFTER 23

23  YEARS.  I HAVE A 21-YEAR-OLD SON IN COLLEGE.

24             I HAVE SERVED ON A JURY.  IT WAS A CIVIL CASE, AND WE

25  DID REACH A VERDICT.  NO MILITARY OR LAW ENFORCEMENT, AND I'VE

1   NEVER BEEN A PARTY OR WITNESS IN COURT.

2               **THE COURT:**  YOU WORK FOR THE DEPARTMENT OF PUBLIC

3   HEALTH, RIGHT?

4               **PROSPECTIVE JUROR JOHNSON:**  YES.

5               **THE COURT:**  IN SAN FRANCISCO?

6               **PROSPECTIVE JUROR JOHNSON:**  MM-HMM.

7               **THE COURT:**  YOU SAID IT, I THINK, BUT I FORGOT.  WHAT

8   IS IT YOU DO FOR THEM?

9               **PROSPECTIVE JUROR JOHNSON:**  I WORK IN THE EMERGENCY

10  DEPARTMENT.  I WORK AS A HOSPITAL ELIGIBILITY WORKER.

11              **THE COURT:**  WHICH HOSPITAL IS IT?

12              **PROSPECTIVE JUROR JOHNSON:**  SAN FRANCISCO GENERAL.

13              **THE COURT:**  SO WHENEVER SOMEBODY COMES INTO THE

14  EMERGENCY ROOM, YOU ARE THE PERSON THEY SEE RIGHT AWAY?

15              **PROSPECTIVE JUROR JOHNSON:**  THEY SEE A TRIAGE NURSE

16  RIGHT AWAY.  AFTER THAT THEY SEE ME.

17              **THE COURT:**  THANK YOU.  VERY GOOD.

18              NOW WE GO FINALLY TO MR. GEPHART.

19              **PROSPECTIVE JUROR GEPHART:**  MY NAME IS NOAH GEPHART.

20  I LIVE IN SANTA ROSA, CALIFORNIA.  I'M CURRENTLY A STUDENT AT

21  SANTA ROSA JUNIOR COLLEGE STUDYING BIOLOGY.  BEFORE I WENT BACK

22  TO SCHOOL TWO YEARS AGO, I WAS A CARPENTER FOR A PERIOD OF SIX

23  YEARS FOR PTERODACTYL CONSTRUCTION.  I DON'T BELONG TO ANY

24  ORGANIZATIONS OR CLUBS.  HOBBIES INCLUDE READING AND TRAVELING.

25  I ALSO COACH HIGH SCHOOL SOCCER AT SUMMERFIELD HIGH SCHOOL.

1          I'M SINGLE.  I HAVE NO CHILDREN.

2          I WAS SUMMONED ONCE, BUT I WAS NOT SELECTED.  AND NO

3  MILITARY OR LAW ENFORCEMENT.  AND I WAS CHARGED WITH A DUI, BUT

4  REDUCED TO A WET RECKLESS TEN YEARS AGO.

5          **THE COURT:**  LET'S MOVE THE CHART, THE CHART BACK, SO

6  THAT I CAN SEE EVERYBODY NOW.

7          I'M GOING TO -- AND I KNOW YOU WANTED TO HAVE A

8  SIDEBAR, AND WE'RE GOING TO DO THAT, BUT STILL I NEED TO -- I

9  DON'T WANT TO INCONVENIENCE EVERYONE ELSE.  WE ARE GOING TO

10  FORGE AHEAD FOR THE MOMENT.

11          I'M GOING TO START NOW WITH SOME QUESTIONS TO THE

12  GROUP OF YOU, ALL 32 OF YOU.  AND THEN THOSE OF YOU IN THE BACK,

13  YOU DON'T HAVE TO RAISE YOUR HAND, BUT REMEMBER MY QUESTIONS,

14  AND THEN I MAY ASK YOU WHAT WOULD THE ANSWERS HAVE BEEN, IF YOU

15  GET CALLED FORWARD.  ALL RIGHT?

16          SO, REMEMBER WHAT THIS CASE IS ABOUT.  MY QUESTION IS

17  GOING TO BE:  HAVE ANY OF YOU HEARD ANYTHING ABOUT THIS CASE

18  BEFORE?  AND, AGAIN, THE CASE IS EIGHT COUNTS ASSERTED AGAINST

19  MR. RODIL NOCHEZ FOR ALLEGED ATTEMPTED EXPORTATION OF STOLEN

20  VEHICLES, KNOWING THAT THE VEHICLE WAS STOLEN.

21          SO HAVE ANY OF YOU HEARD ABOUT THIS CASE BEFORE?  IF

22  SO, RAISE YOUR HAND.  ALL RIGHT.  NOBODY IS RAISING THEIR HAND.

23          OH, YES.  MR. MONTOYA?

24          **PROSPECTIVE JUROR MONTOYA:**  THIS SPECIFIC CASE OR

25  SIMILAR CASES?

1          **THE COURT:**  THIS SPECIFIC CASE.

2          **PROSPECTIVE JUROR MONTOYA:**  NO.

3          **THE COURT:**  NO ONE HAS HEARD ABOUT THIS CASE?

4          DO ANY OF YOU KNOW ANY OF THE PARTIES?  DO YOU KNOW

5   MR. NOCHEZ, OR DO YOU KNOW ANY OF THE AGENTS, OR THE GOVERNMENT

6   LAWYERS, OR MR. CHAZIN?  IF SO, RAISE YOUR HAND.

7          **THE COURT:**  OKAY.  SO YOU KNOW SOMEBODY, MR. WATHEN?

8          **PROSPECTIVE JUROR WATHEN:**  YES.

9          **THE COURT:**  ONE OF THE PEOPLE AT THE TABLE HERE?

10         **PROSPECTIVE JUROR WATHEN:**  YES, SIR.

11         **THE COURT:**  OKAY.  WE'RE GOING TO COME TO THAT.

12         ANYONE ELSE?  ALL RIGHT.  OKAY.

13         ALL RIGHT.  DO ANY OF YOU KNOW ANY OF THE OTHER

14  POTENTIAL JURORS HERE?  SOMETIMES IT TURNS OUT THAT TWO PEOPLE

15  KNOW EACH OTHER WHO ARE IN THE VENIRE.  IF SO, IT'S USUALLY NOT

16  A PROBLEM, BUT IT COULD BE.  ANYBODY HAPPEN TO KNOW EACH OTHER

17  BEFORE YOU CAME TO COURT TODAY?  NO ONE IS RAISING THEIR HAND.

18         ANYONE KNOW ME OR ANY OF THE COURT PERSONNEL HERE

19  TODAY?  IF SO, RAISE YOUR HAND.  INCLUDING THE INTERPRETERS.

20  NO, ALL RIGHT.

21         OKAY.  LET'S -- WE'RE GOING TO HAVE THE GOVERNMENT

22  READ, AND THE DEFENSE READ, IF THEY HAVE ANY SUPPLEMENTS, BUT I

23  THINK, IS IT POSSIBLE FOR THE GOVERNMENT TO READ THE LIST OF

24  WITNESSES, AND INCLUDE EVERYONE, INCLUDING THE POSSIBLE DEFENSE

25  WITNESSES, SO THAT WE JUST HAVE IT ALL IN ONE READING, OR CAN

1    YOU JUST DO YOURSELF?

2          **MR. LEUNG:**  THE GOVERNMENT CAN CERTAINLY READ ITS

3    INTENDED WITNESSES.

4          **THE COURT:**  OKAY.  THE GOVERNMENT IS GOING TO READ A

5    LIST OF NAMES, AND THE QUESTION IS GOING TO BE:  DO YOU KNOW ANY

6    OF THEM?  AND IF YOU DO, RAISE YOUR HAND IF -- EVEN IF YOU'RE

7    NOT SURE WHETHER YOU KNOW THEM, I WANT YOU TO RAISE YOUR HAND.

8    IT COULD TURN OUT TO BE A DIFFERENT PERSON, OR NOT, AND WE'LL

9    INQUIRE FURTHER.

10          GOVERNMENT IS GOING TO READ PROBABLY A LONGER LIST

11    THAN THEY ACTUALLY ARE GOING TO CALL, BUT OUT OF CAUTION, WE DO

12    IT THAT WAY.

13          MR. LEUNG, PLEASE PROCEED.

14          **MR. LEUNG:**  THE GOVERNMENT WITNESSES WOULD CONSIST OF

15    JAIME MARTINEZ, XAVIER SPENCER, RIO DELANEY, RAYMOND DOMINGUEZ,

16    KELLY GREENAN, ALISON KIM, ROCKY LOUIE, ERIK MONGE, CLINTON

17    REDUS, ANNE TREVOR, LINDA TYWONIAK.  AND THERE'S STILL A PERSON

18    FROM METRO PCS, A DOCUMENT CUSTODIAN WHO HAS NOT BEEN

19    IDENTIFIED.

20          **THE COURT:**  ANYONE KNOW ANY OF THOSE NAMES THAT WERE

21    CALLED OUT?  NO ONE IS RAISING THEIR HAND.

22          ALL RIGHT.  MR. CHAZIN, DO YOU HAVE NAMES YOU WOULD

23    LIKE TO RAISE AT THIS TIME?

24          **MR. CHAZIN:**  YOUR HONOR, I THINK AT THIS TIME NOT --

25    WE WOULDN'T -- DEPENDING ON THE STATE OF THE EVIDENCE, WE WOULD

1  AT THAT POINT PERHAPS CALL WITNESSES.  WE DON'T KNOW THAT AT

2  THIS TIME.

3          **THE COURT:**  I KNOW, BUT EVEN POTENTIALLY.  I WOULD

4  HATE FOR SOMEBODY TO COME IN AND IT TURNED OUT A JUROR KNEW

5  THEM.

6          **MR. CHAZIN:**  CLAUDIA LOPEZ.  I THINK AT THIS POINT

7  TITO POZA, CHRIS MERENDINO, JOHN MASALSKI, ANDREA GRAY, ENRIQUE

8  OLIVAS.

9          **THE COURT:**  ANYBODY KNOW ANY OF THOSE NAMES?  IF SO,

10  RAISE YOUR HAND.  NO ONE IS RAISING THEIR HAND.  ALL RIGHT.

11          DO ANY OF YOU, YOURSELVES -- HAVE ANY OF YOU EVER

12  WORKED FOR LAW ENFORCEMENT IN THE PAST?  IF SO, RAISE YOUR HAND,

13  EVEN IF IT'S NOT NOW.  AT SOME TIME IN THE PAST, HAVE YOU EVER

14  WORKED FOR A LAW ENFORCEMENT AGENCY IN ANY CAPACITY?  IF SO,

15  RAISE YOUR HAND.  ALL RIGHT.  NO ONE IS RAISING THEIR HAND.

16          HOW ABOUT, HAVE ANY OF YOU -- DO YOU HAVE A SPOUSE OR

17  A PARTNER WHO WORKS OR HAS WORKED FOR LAW ENFORCEMENT?  IF SO,

18  RAISE YOUR HAND.  OKAY.  NOBODY.

19          ALL RIGHT.  NOW, HOW ABOUT YOUR PARENTS, BROTHERS OR

20  SISTERS, ANY OF THOSE WORK FOR LAW ENFORCEMENT NOW OR IN THE

21  PAST?  IF SO, RAISE YOUR HAND.  ALL RIGHT.  WE HAVE A FEW.  WHO

22  HAS OUR MICROPHONE?  I FORGET WHERE IT IS.  DID YOU RAISE YOUR

23  HAND AS WELL?

24          WHO RAISED THEIR HAND OVER THERE?  MS. JOHNSON, WHY

25  DON'T YOU GO FIRST.

1               **PROSPECTIVE JUROR JOHNSON:**  MY SISTER WORKS FOR THE

2    SAN FRANCISCO --

3               **THE COURT:**  STILL NOT COMING IN.  DAWN, CAN YOU HELP?

4               **PROSPECTIVE JUROR JOHNSON:**  MY SISTER WORKS FOR THE

5    SAN FRANCISCO POLICE DEPARTMENT.

6               **THE COURT:**  OKAY.  WHAT DOES SHE DO FOR THEM?

7               **PROSPECTIVE JUROR JOHNSON:**  SHE'S NOT A POLICE

8    OFFICER.  SHE WORKS LIKE AN ADMINISTRATIVE ASSISTANT OR

9    SECRETARY, SOMETHING LIKE THAT.

10              **THE COURT:**  IS THAT OVER AT THE HALL OF JUSTICE?

11   WHICH STATION HOUSE IS IT?

12              **PROSPECTIVE JUROR JOHNSON:**  I BELIEVE SHE'S AT THE

13   POLICE ACADEMY.

14              **THE COURT:**  HOW LONG HAS SHE BEEN THERE?

15              **PROSPECTIVE JUROR JOHNSON:**  MAYBE ABOUT FIVE OR SIX

16   MONTHS.  SHE JUST TRANSFERRED OVER.

17              **THE COURT:**  FROM WHERE?

18              **PROSPECTIVE JUROR JOHNSON:**  DEPARTMENT OF PUBLIC

19   HEALTH.

20              **THE COURT:**  WHAT IS HER JOB OTHER THAN BEING

21   ADMINISTRATIVE ASSISTANT?

22              **PROSPECTIVE JUROR JOHNSON:**  I'M NOT SURE.  I'M NOT

23   SURE.

24              **THE COURT:**  DOES SHE EVER GET INVOLVED IN THE

25   INVESTIGATION OF ACTUAL CRIMES?

1         **PROSPECTIVE JUROR JOHNSON:**  I DON'T BELIEVE SO.

2         **THE COURT:**  NOW, SOMETIMES SOMEBODY WHO HAS A BROTHER

3  OR A SISTER WHO WORKS FOR THE POLICE, THEY WOULD BE BIASED IN

4  FAVOR OF THE POLICE AND IN FAVOR OF THE PROSECUTION.  DO YOU

5  THINK THAT APPLIES TO YOU?

6         **PROSPECTIVE JUROR JOHNSON:**  NO, SIR.

7         **THE COURT:**  ALL RIGHT.  THANK YOU.  ANYONE ELSE ON

8  THAT ROW RAISE YOUR HAND A MOMENT AGO?  OKAY.  AGAIN, YOUR NAME?

9         **PROSPECTIVE JUROR FUGELSETH:**  ROBERT FUGELSETH.

10        **THE COURT:**  YES.  ALL RIGHT.

11        **PROSPECTIVE JUROR FUGELSETH:**  I DON'T HAVE A

12 BROTHER -- I HAVE A BROTHER-IN-LAW WHO'S A DETECTIVE WITH

13 BOSEMAN, MONTANA POLICE DEPARTMENT, INVESTIGATING DRUG CASES.

14        **THE COURT:**  OKAY.  AND HOW LONG HAS HE BEEN IN THAT

15 JOB?

16        **PROSPECTIVE JUROR FUGELSETH:**  TEN YEARS.

17        **THE COURT:**  HOW LONG HAS HE BEEN YOUR BROTHER-IN-LAW?

18        **PROSPECTIVE JUROR FUGELSETH:**  TEN YEARS.

19        **THE COURT:**  OKAY.  NO CONNECTION?

20        **PROSPECTIVE JUROR FUGELSETH:**  NOT A CLOSE CONNECTION.

21 I WASN'T SURE IF IT NEEDED TO BE TO BE MADE KNOWN OR NOT.

22        **THE COURT:**  DO YOU TALK WITH HIM VERY OFTEN ABOUT HIS

23 WORK?

24        **PROSPECTIVE JUROR FUGELSETH:**  EVERY SO OFTEN, THREE

25 OR FOUR MONTHS, EVERY THREE OR FOUR MONTHS.

```
 1              THE COURT:  AND DOES HE TELL YOU WAR STORIES ABOUT

 2   WHAT HAPPENED IN COURT, OR ANYTHING LIKE THAT?

 3              PROSPECTIVE JUROR FUGELSETH:  NOT IN COURT, BUT OUT

 4   IN THE FIELD, QUOTE/UNQUOTE.

 5              THE COURT:  ALL RIGHT.  NOW, YOU HAVE TO -- YOU KNOW

 6   WHAT HE'S TOLD YOU AND SO FORTH.  IS THAT GOING TO AFFECT YOUR

 7   ABILITY TO BE FAIR AND IMPARTIAL OR TO GIVE YOU SOME BIAS HERE

 8   IN FAVOR OF THE LAW ENFORCEMENT?

 9              PROSPECTIVE JUROR FUGELSETH:  I WON'T BE BIASED.  IT

10   WOULDN'T AFFECT ME EITHER WAY.

11              THE COURT:  ALL RIGHT.  THANK YOU.

12              ANYONE ELSE ON THAT ROW?  NO ONE ELSE?

13              HOW ABOUT OVER HERE IN THE JURY BOX?  ANYONE RAISE

14   THEIR HAND?  WE GO BACK TO MS. PUGH.

15              PROSPECTIVE JUROR PUGH:  MY BROTHER IS A NAVY SEAL,

16   BUT HE WENT INTO THE RESERVES.  SO HIS MAIN JOB RIGHT NOW IS

17   WORKING FOR THE KING COUNTY SHERIFF DEPARTMENT IN SEATTLE.

18              THE COURT:  HE IS IN THE NAVY SEALS?

19              PROSPECTIVE JUROR PUGH:  NOW HE'S DOING RESERVE.  HIS

20   MAIN JOB IS WORKING FOR THE KING COUNTY SHERIFF DEPARTMENT IN

21   SEATTLE.

22              THE COURT:  WHAT DOES HE DO FOR THEM?

23              PROSPECTIVE JUROR PUGH:  I THINK HE WAS AN OFFICER

24   LIKE, YOU KNOW, ON THEIR STREETS.  THEN HE JUST PASSED HIS

25   HELICOPTER LICENSE.  NOW HE'S FLYING HELICOPTERS FOR THE KING
```

1   COUNTY SHERIFF.

2              **THE COURT:**  IS HE A SWORN OFFICER IN THE SENSE HE

3   CARRIES A GUN, OR HAS CARRIED A GUN, FOR THE POLICE DEPARTMENT?

4              **PROSPECTIVE JUROR PUGH:**  YES.

5              **THE COURT:**  SO HE'S OUT THERE ARRESTING PEOPLE, OR AT

6   LEAST HE WAS?

7              **PROSPECTIVE JUROR PUGH:**  NO, HE -- YES, HE HAS.  YES.

8              **THE COURT:**  THAT'S YOUR BROTHER, RIGHT?

9              **PROSPECTIVE JUROR PUGH:**  YES.  CORRECT.

10             **THE COURT:**  HOW LONG HAS HE BEEN DOING THE POLICE

11  WORK?

12             **PROSPECTIVE JUROR PUGH:**  MAYBE EIGHT TO TEN YEARS.

13             **THE COURT:**  HOW OFTEN DO YOU TALK TO HIM ABOUT HIS

14  WORK?

15             **PROSPECTIVE JUROR PUGH:**  SEEMS LIKE QUITE A BIT WHEN

16  HE WAS WORKING -- YOU KNOW, HAVING HIS OWN POLICE CAR.  HE WAS

17  TELLING ME KIND OF INTERESTING STORIES.  AND I HEARD HE GOT HIS

18  LICENSE ABOUT A COUPLE OF WEEKS AGO, SO...

19             **THE COURT:**  ALL RIGHT.  IS THERE ANYTHING ABOUT THAT

20  THAT WOULD CAUSE US TO QUESTION WHETHER OR NOT YOU CAN BE FAIR

21  AND IMPARTIAL?

22             **PROSPECTIVE JUROR PUGH:**  NO.  I LIKE TO THINK I WAS A

23  FAIR PERSON.

24             **THE COURT:**  I KNOW, BUT -- I DIDN'T PHRASE MY

25  QUESTION VERY WELL.  LET ME REPHRASE IT.

1          WILL YOU BE FAIR AND IMPARTIAL DESPITE THE FACT AND

2   PUT TO ONE SIDE THE FACT THAT YOUR BROTHER IS A POLICE OFFICER?

3          **PROSPECTIVE JUROR PUGH:**  YES.

4          **THE COURT:**  ALL RIGHT.  OKAY.  ANYONE ELSE IN THE

5   JURY BOX RAISE THEIR HANDS?

6          **PROSPECTIVE JUROR SIMS:**  MY BROTHER-IN-LAW WHO

7   RECENTLY PASSED AWAY.  HE WAS THE CHIEF OF POLICE FOR DALY CITY

8   AND WAS A CAREER POLICEMAN.

9          **THE COURT:**  FOR THE RECORD, YOU'RE MS. SIMS, RIGHT?

10         **PROSPECTIVE JUROR SIMS:**  YES.

11         **THE COURT:**  SAY IT AGAIN.  YOUR BROTHER --

12         **PROSPECTIVE JUROR SIMS:**  BROTHER-IN-LAW WAS THE CHIEF

13   OF POLICE FOR DALY CITY.

14         **THE COURT:**  HOW LONG DID YOU KNOW HIM?

15         **PROSPECTIVE JUROR SIMS:**  TWENTY-FIVE YEARS.

16         **THE COURT:**  AND HE RECENTLY PASSED AWAY?

17         **PROSPECTIVE JUROR SIMS:**  YEAH.

18         **THE COURT:**  I'M SORRY TO HEAR THAT.

19         DID YOU TALK WITH HIM FROM TIME TO TIME ABOUT ANY

20   PARTICULAR CASES?

21         **PROSPECTIVE JUROR SIMS:**  NO, JUST -- NOT

22   SPECIFICALLY.  YOU KNOW, HE HAD HIS WAR STORIES LIKE EVERYBODY

23   ELSE DOES, BUT IT WASN'T THAT MUCH.

24         **THE COURT:**  DID -- IS THERE ANYTHING IN THAT --

25   ANYTHING ABOUT THAT RELATIONSHIP OR WHATEVER HE TOLD YOU THAT

1    WOULD CAUSE YOU TO BE LEANING ONE WAY OR THE OTHER, FOR OR

2    AGAINST LAW ENFORCEMENT IN A CASE LIKE THIS?

3              **PROSPECTIVE JUROR SIMS:**  I DON'T THINK SO, NO.

4         **THE COURT:**  WILL YOU BE FAIR AND IMPARTIAL IN THIS

5    CASE DESPITE THE FACT THAT YOUR BROTHER-IN-LAW FOR A LONG PERIOD

6    OF TIME WAS A CHIEF OF POLICE?

7              **PROSPECTIVE JUROR SIMS:**  YES.

8         **THE COURT:**  ALL RIGHT.  ANYONE ELSE IN THE JURY BOX

9    RAISE THEIR HAND?

10             OKAY.  MS. TURNER.

11             **PROSPECTIVE JUROR TURNER:**  MY SON-IN-LAW IS A POLICE

12   SERGEANT IN CENTRALIA, WASHINGTON.  WE DON'T REALLY TALK ABOUT

13   HIS WORK MUCH.  HE DOESN'T LIKE TO TALK ABOUT IT.  SO -- AND HE

14   DOESN'T LIKE TALKING COMPUTERS TOO MUCH WITH ME, SO IT'S A DEAL.

15        **THE COURT:**  WILL THAT RELATIONSHIP HAVE ANY RISK OF

16   AFFECTING YOUR ABILITY TO BE FAIR AND IMPARTIAL?

17             **PROSPECTIVE JUROR TURNER:**  NO, IT WON'T.

18        **THE COURT:**  ANYBODY ELSE IN THE JURY BOX?

19             HOW ABOUT OVER THERE ON THAT ROW?  I NEED TO ASK

20   SOMEONE TO WALK THE MICROPHONE OVER TO THE ROW.  WHO RAISED

21   THEIR HAND?  OKAY.  THAT'S GOING TO BE MS. MILLER.

22             **PROSPECTIVE JUROR MILLER:**  I HAVE A BROTHER-IN-LAW

23   WHO JUST FINISHED ABOUT 12 YEARS BEING A FEDERAL PROSECUTOR IN

24   CHICAGO.

25        **THE COURT:**  OKAY.  SO THAT WOULD BE LIKE MR. LEUNG

```
 1   AND MS. WONG, THESE TWO PROSECUTORS RIGHT HERE?  IS THAT WHAT

 2   YOU'RE SAYING?

 3             PROSPECTIVE JUROR MILLS:  YES.

 4             THE COURT:  THAT WAS A BROTHER-IN-LAW?

 5             PROSPECTIVE JUROR MILLER:  MY HUSBAND'S BROTHER.

 6             THE COURT:  WHAT KIND OF CASES DID HE DO, DO YOU

 7   KNOW?

 8             PROSPECTIVE JUROR MILLER:  WE WENT TO VISIT ONCE TO

 9   GO TO COURT AND SEE HIM IN ACTION, AND HE WAS DOING AN

10   IMMIGRATION CASE AT THAT POINT.  BUT HE ALSO WORKED ON THE

11   TRUCKING SCANDAL CASE THAT CAME OUT OF CHICAGO.

12             THE COURT:  ALL RIGHT.  SO DID YOU EVER TALK WITH HIM

13   ABOUT SOME OF HIS CASES AND LAW ENFORCEMENT?

14             PROSPECTIVE JUROR MILLER:  NOT UNTIL AFTER THE

15   VERDICT WOULD COME IN.  HE WOULDN'T DISCUSS ANYTHING.

16             THE COURT:  DID YOU -- WELL -- SO, YOU MUST BE CLOSE

17   TO THIS PERSON, RIGHT?

18             PROSPECTIVE JUROR MILLER:  YES.

19             THE COURT:  YOU STILL ARE?

20             PROSPECTIVE JUROR MILLER:  YES.

21             THE COURT:  HOW OFTEN DO YOU SEE HIM?

22             PROSPECTIVE JUROR MILLER:  NOT SO OFTEN.  HE AND HIS

23   WIFE JUST MOVED TO BOSTON BECAUSE HE'S NOW PART OF HARVARD

24   UNIVERSITY'S GENERAL COUNSEL.

25             THE COURT:  OKAY.
```

1          **PROSPECTIVE JUROR MILLER:**  SO HE JUST LEFT HIS

2    FEDERAL PROSECUTOR JOB IN OCTOBER OF LAST YEAR.

3          **THE COURT:**  TO GO BE IN THE GENERAL COUNSEL'S OFFICE

4    AT HARVARD?

5          **PROSPECTIVE JUROR MILLER:**  MM-HMM.

6          **THE COURT:**  OKAY.  SO HOW WILL THAT AFFECT YOUR

7    ABILITY TO BE FAIR AND IMPARTIAL?

8          **PROSPECTIVE JUROR MILLER:**  I DON'T BELIEVE IT WILL

9    HAVE AN IMPACT ON HOW I DELIBERATE IN A CASE.

10         **THE COURT:**  WOULD YOU -- I MEAN, YOU UNDERSTAND THAT

11   WE HAVE TWO FEDERAL PROSECUTORS WHO HAD THE SAME JOB AS YOUR

12   BROTHER-IN-LAW?

13         **PROSPECTIVE JUROR MILLER:**  YES.

14         **THE COURT:**  SO I'M SURE YOU HAVE A VERY HIGH OPINION

15   OF YOUR BROTHER-IN-LAW, RIGHT?

16         **PROSPECTIVE JUROR MILLER:**  YES.

17         **THE COURT:**  SO IS THAT GOING TO SOMEHOW CAUSE YOU TO

18   FAVOR THESE PROSECUTORS HERE?

19         **PROSPECTIVE JUROR MILLER:**  NO, I DON'T BELIEVE SO.

20         **THE COURT:**  WILL YOU BE FAIR AND IMPARTIAL EVALUATING

21   THIS CASE?

22         **PROSPECTIVE JUROR MILLER:**  YES.

23         **THE COURT:**  YES?

24         **PROSPECTIVE JUROR MILLER:**  YES.

25         **THE COURT:**  ALL RIGHT.  WHO ELSE ON THAT FRONT ROW

```
1   RAISED THEIR HAND?  OKAY.

2              LET'S GO TO MS. PERRY.  YES.

3              PROSPECTIVE JUROR PERRY:  I HAVE TWO BROTHER-IN-LAWS.

4   ONE IS AN FBI AGENT IN NEW YORK.  HE DOES IT APPLICATIONS.  AND

5   WE NEVER TALK ABOUT WHAT HE DOES.  HE DOESN'T TALK ABOUT IT.

6              THE OTHER BROTHER-IN-LAW IS A STATE TROOPER FOR NEW

7   YORK.  I DON'T TALK TO HIM ABOUT HIS WORK.

8              THE COURT:  SO WILL -- THESE ARE BROTHERS-IN-LAW OR

9   BROTHERS?

10             PROSPECTIVE JUROR PERRY:  BROTHER-IN-LAW.  I DON'T

11  SEE THEM VERY OFTEN.  THEY'RE ON THE OTHER SIDE OF THE U.S.

12             THE COURT:  WOULD THIS IN ANY WAY CAUSE YOU TO BE

13  BIASED IN FAVOR OF THE GOVERNMENT IN THIS CASE?

14             PROSPECTIVE JUROR PERRY:  NO.

15             THE COURT:  WILL YOU BE FAIR AND IMPARTIAL IN

16  EVALUATING THE EVIDENCE HERE?

17             PROSPECTIVE JUROR PERRY:  YES.

18             THE COURT:  WHO ELSE RAISED THEIR HAND OVER HERE?

19             OKAY.  LET'S GO TO MR. BROWN.  IS THAT CORRECT?

20             PROSPECTIVE JUROR BROWN:  THAT'S CORRECT.

21             MY FATHER WAS A PATROLMAN FOR THE CALIFORNIA HIGHWAY

22  PATROL.

23             THE COURT:  WHERE DID HE PATROL?

24             PROSPECTIVE JUROR BROWN:  NOVATO.

25             THE COURT:  HOW LONG DID HE SERVE?
```

1          **PROSPECTIVE JUROR BROWN:**  TEN YEARS, I BELIEVE.  TEN

2   YEARS, I REMEMBER ANYWAY.

3          **THE COURT:**  IS HE RETIRED NOW?

4          **PROSPECTIVE JUROR BROWN:**  YES.

5          **THE COURT:**  HE MUST HAVE BEEN INVOLVED IN SOME

6   SERIOUS OFFENSES FROM TIME TO TIME WHERE HE ARRESTED SOMEBODY OR

7   HAD STORIES TO TELL, CORRECT?

8          **PROSPECTIVE JUROR BROWN:**  YES.  MOST OF THE STORIES

9   USUALLY WERE AROUND ACCIDENTS OR SOMETHING OF THAT NATURE, OF

10  COURSE.

11         **THE COURT:**  ALL RIGHT.  WOULD -- DID HE EVER GET

12  INVOLVED IN CASES INVOLVING STOLEN CARS?

13         **PROSPECTIVE JUROR BROWN:**  NOT THAT I RECALL.

14         **THE COURT:**  ALL RIGHT.  NOW, WILL THE FACT THAT YOUR

15  DAD WAS A HIGHWAY PATROLMAN -- OF COURSE, THAT'S LAW

16  ENFORCEMENT -- WILL THAT CAUSE YOU TO LEAN IN FAVOR OF THE LAW

17  ENFORCEMENT IN THIS CASE?

18         **PROSPECTIVE JUROR BROWN:**  NO, YOUR HONOR.

19         **THE COURT:**  WILL YOU BE FAIR AND IMPARTIAL?

20         **PROSPECTIVE JUROR BROWN:**  YES, YOUR HONOR.

21         **THE COURT:**  ANYONE ELSE ON THE FRONT ROW RAISE YOUR

22  HAND?

23         OKAY.  WE GO NOW TO MR. HOVERMALE.

24         **PROSPECTIVE JUROR HOVERMALE:**  MY WIFE'S

25  BROTHER-IN-LAW IS A JUDGE, AND HIS FATHER IS A JUDGE, BOTH IN

1  VANCOUVER BRITISH, COLUMBIA.

2          **THE COURT:**  ALL RIGHT.  SO TELL US ABOUT HOW CLOSE

3  YOU ARE TO THOSE TWO.

4          **PROSPECTIVE JUROR HOVERMALE:**  I SEE HER

5  BROTHER-IN-LAW TWICE A YEAR.  I SEE HER FATHER-IN-LAW ONCE A

6  YEAR -- OR HIS FATHER ONCE A YEAR.  I HAVE SPOKEN TO HER

7  BROTHER-IN-LAW ABOUT CASES.

8          **THE COURT:**  IS THAT IN SOME WAY GOING TO AFFECT YOUR

9  ABILITY TO BE FAIR AND IMPARTIAL?

10          **PROSPECTIVE JUROR HOVERMALE:**  I CAN'T GUARANTEE I

11  WOULD BE FAIR AND IMPARTIAL.

12          **THE COURT:**  ALL RIGHT.  I'M GOING TO HAVE SOME MORE

13  QUESTIONS FOR YOU IN A BIT.  BUT ANYONE ELSE ON THE FRONT ROW

14  RAISE THEIR HAND?  OKAY.

15          NOW I'M GOING TO ASK A DIFFERENT QUESTION, AND AFTER

16  THIS ROUND, WE'LL TAKE A BREAK, UNLESS SOMEBODY NEEDS A BREAK

17  NOW.

18          SO THIS IS KIND OF A QUESTION THAT GOES THE OTHER

19  WAY, TRYING TO FIND BIAS.  SOMETIMES PEOPLE HAVE HAD BAD

20  EXPERIENCES WITH THE POLICE.  IT HAPPENS.  I MEAN -- SO THEY

21  COME TO COURT WITH A BIAS AGAINST LAW ENFORCEMENT BECAUSE OF

22  SOMETHING THAT MIGHT HAVE HAPPENED TO THEM, OR IN THEIR FAMILY,

23  AND SO THEY -- WE NEED INQUIRE ABOUT THAT, TOO.

24          SO HAVE ANY OF YOU EVER HAD -- YOU OR YOUR IMMEDIATE

25  LOVED ONES EVER HAD A BAD EXPERIENCE WITH LAW ENFORCEMENT?  IF

1   SO, RAISE YOUR HAND.  OKAY.  UP GOES ONE HAND.

2           SO, MS. PUGH.  WE NEED TO GET YOU THE MICROPHONE,

3   THOUGH.  WHAT HAPPENED IN YOUR CASE?

4           **PROSPECTIVE JUROR PUGH:**  I WAS PULLED OVER FOR

5   DRINKING AND DRIVING.  AND WHILE I WAS ABOVE THE LEGAL LIMIT, IT

6   WASN'T A FUN EXPERIENCE FOR ME.  I USE THE "BAD" IN LIKE A

7   PERSONAL EXPERIENCE AS BAD.  BUT WERE THE POLICE BAD, NO.

8           **THE COURT:**  DID THEY BEHAVE PROFESSIONALLY IN THE

9   INCIDENT?

10          **PROSPECTIVE JUROR PUGH:**  YES, YES.

11          **THE COURT:**  DID THEY BEAT YOU UP OR SOMETHING?

12          **PROSPECTIVE JUROR PUGH:**  NO.

13          **THE COURT:**  DID THEY PUT YOU IN HANDCUFFS?

14          **PROSPECTIVE JUROR PUGH:**  YES.

15          **THE COURT:**  THEY MUST HAVE -- BECAUSE YOU WERE OVER

16  THE LIMIT, THEY WOULDN'T LET YOU DRIVE, AND THEY HAD TO TAKE YOU

17  AWAY?

18          **PROSPECTIVE JUROR PUGH:**  YES.

19          **THE COURT:**  LOOKING BACK ON IT NOW, WITH THE BENEFIT

20  OF TIME, DO YOU THINK YOU WERE TREATED AT LEAST PROFESSIONALLY?

21          **PROSPECTIVE JUROR PUGH:**  YES.  DEFINITELY.

22          **THE COURT:**  WOULD YOU HOLD IT AGAINST LAW ENFORCEMENT

23  BECAUSE OF THAT INCIDENT THAT HAPPENED TO YOU?

24          **PROSPECTIVE JUROR PUGH:**  NO.

25          **THE COURT:**  ALL RIGHT.  ANYONE ELSE?

```
 1              OKAY.  ANY OF YOU EVER BEEN THE VICTIM OF A CRIME?
 2   YOU PERSONALLY.  IF SO, RAISE YOUR HAND.  ALL RIGHT.  LET'S SEE.
 3   LET'S GO THROUGH -- I'M SORRY.  WHERE IS THE MICROPHONE?  WE
 4   NEED TO PASS THE MICROPHONE BACK DOWN TO MRS. TURNER.  RIGHT.
 5              MS. TURNER, WHAT WAS YOUR SITUATION?
 6              PROSPECTIVE JUROR TURNER:  MY PURSE WAS STOLEN.
 7              THE COURT:  HOW LONG AGO?
 8              PROSPECTIVE JUROR TURNER:  FIFTEEN YEARS.
 9              THE COURT:  DO YOU KNOW WHO DID IT?
10              PROSPECTIVE JUROR TURNER:  NO.
11              THE COURT:  DID THEY EVER FIND ANYBODY?
12              PROSPECTIVE JUROR TURNER:  NO.
13              THE COURT:  WHAT CITY?
14              PROSPECTIVE JUROR TURNER:  SAN FRANCISCO.
15              THE COURT:  DID YOU REPORT IT TO THE POLICE?
16              PROSPECTIVE JUROR TURNER:  YES.
17              THE COURT:  HOW MUCH MONEY DID YOU LOSE?
18              PROSPECTIVE JUROR TURNER:   TEN DOLLARS AND MY
19   PASSPORT.
20              THE COURT:  SO THAT WAS VERY IRRITATING, WASN'T IT?
21              PROSPECTIVE JUROR TURNER:  YES, IT WAS.
22              THE COURT:  WOULD YOU -- NOW, SOMETIMES PEOPLE WHO
23   HAVE BEEN THE VICTIM OF A CRIME CAN'T WAIT TO GET INTO COURT TO
24   CONVICT SOMEBODY OF SOMETHING JUST BECAUSE THEY FEEL THE SYSTEM
25   IS NOT CONVICTING ENOUGH PEOPLE AND THERE'S SO MUCH CRIME.  WE
```

1  ALL GET FRUSTRATED LIKE THAT, AND I CAN UNDERSTAND IT, BUT DO

2  YOU HAVE ANY HINT OF THAT IN YOU?

3     **PROSPECTIVE JUROR TURNER:**  NO, I DON'T.  NO, I DON'T.

4     **THE COURT:**  MR. NOCHEZ HAD NOTHING TO DO WITH YOUR

5  PURSE, YOU UNDERSTAND THAT?

6     **PROSPECTIVE JUROR TURNER:**  I DO.  THANK YOU.

7     **THE COURT:**  SO HE'S PRESUMED INNOCENT, AND THE BURDEN

8  IS ON THE GOVERNMENT TO PROVE THAT HE'S GUILTY, IF THEY CAN DO

9  THAT.  THE JURY HAS GOT TO BE FAIR AND SQUARE ABOUT THAT AND

10 FORGET ABOUT ALL THE PRIOR INCIDENTS OF CRIME.  CAN YOU DO THAT?

11    **PROSPECTIVE JUROR TURNER:**  YES.

12    **THE COURT:**  ALL RIGHT.  WHO ELSE RAISED THEIR HAND

13 OVER HERE?  OKAY.

14    PASS THE MICROPHONE BACK TO MR. LAUFF.  RIGHT?

15    **PROSPECTIVE JUROR LAUFF:**  YES.

16    **THE COURT:**  ALL RIGHT.  TELL US WHAT HAPPENED TO YOU.

17    **PROSPECTIVE JUROR LAUFF:**  I'VE HAD MY CAR BROKEN INTO

18 TWICE.

19    **THE COURT:**  HOW RECENTLY?

20    **PROSPECTIVE JUROR LAUFF:**  SEVERAL YEARS AGO.  SEVEN

21 TO TEN YEARS AGO FOR BOTH OCCURRENCES.

22    **THE COURT:**  IN WHAT CITY WAS THAT?

23    **PROSPECTIVE JUROR LAUFF:**  CHARLOTTE AND GREENVILLE,

24 NORTH CAROLINA.

25    **THE COURT:**  CAN YOU PUT THAT TO ONE SIDE AND FORGET

1   IT AND BE FAIR AND SQUARE TO BOTH SIDES?

2          **PROSPECTIVE JUROR LAUFF:**  I BELIEVE SO.

3          **THE COURT:**  MR. RUCKER, DID YOU RAISE YOUR HAND?

4          **PROSPECTIVE JUROR RUCKER:**  YES, SIR.

5          **THE COURT:**  WHAT'S YOUR SITUATION?

6          **PROSPECTIVE JUROR RUCKER:**  STOLEN CAR IN OAKLAND TEN

7   YEARS.  RECOVERED.  MINIMAL DAMAGE.

8          **THE COURT:**  THAT WOULD BE VERY AGGRAVATING, WASN'T

9   IT, AT THE TIME?

10          **PROSPECTIVE JUROR RUCKER:**  YES.

11          **THE COURT:**  THIS CASE HERE INVOLVES ALLEGATIONS OF

12   STOLEN CARS.  SO ARE YOU GOING TO BE ABLE TO PUT YOUR INCIDENT

13   TO ONE SIDE AND BE COMPLETELY FAIR, OR ARE YOU GOING TO BE

14   THINKING IN THE BACK OF YOUR MIND ABOUT WHAT HAPPENED TO YOU?

15          **PROSPECTIVE JUROR RUCKER:**  I BELIEVE I CAN BE FAIR.

16   IT WAS A CRIME OF CONVENIENCE.  IT WAS NOT A CRIME OF ECONOMIC

17   GAIN, IF THAT HELPS.

18          **THE COURT:**  HOW DO YOU KNOW THAT?

19          **PROSPECTIVE JUROR RUCKER:**  BECAUSE THE CAR WAS ONLY

20   DRIVEN A COUPLE OF MILES AND ABANDONED.

21          **THE COURT:**  OKAY.

22          WHO ELSE RAISED YOUR HAND OVER THERE?

23          **PROSPECTIVE JUROR CARROLL:**  MY CAR WAS VANDALIZED TWO

24   YEARS AGO IN SANTA ROSA.

25          **THE COURT:**  DID THEY CATCH WHO DID IT?

1          **PROSPECTIVE JUROR CARROLL:**  YES.

2          **THE COURT:**  WHAT HAPPENED?

3          **PROSPECTIVE JUROR CARROLL:**  I JUST FILED A POLICE

4     REPORT, AND THEY ASKED IF I WANTED TO PRESS CHARGES.  I SAID NO.

5     IT WAS A PERSONAL MATTER.  IT WAS AGAINST ME AND NOT JUST THE

6     CAR.

7          **THE COURT:**  THIS WAS SOMEBODY YOU KNEW?

8          **PROSPECTIVE JUROR CARROLL:**  YES.

9          **THE COURT:**  CORRECT?

10         **PROSPECTIVE JUROR CARROLL:**  YES.

11         **THE COURT:**  IS THIS GOING TO AFFECT YOUR ABILITY TO

12    BE FAIR IN THIS CASE, OR DOES IT PUT SOME GLOSS ON IT FOR YOU?

13         **PROSPECTIVE JUROR CARROLL:**  I DO KNOW IT HAS NOTHING

14    TO DO WITH HIM, SO I WILL BE FAIR.

15         **THE COURT:**  NO.  BUT ARE YOU -- BECAUSE OF THE FACT

16    THAT SOMEBODY VANDALIZED YOUR CAR, DO YOU THINK YOU'RE GOING TO

17    BE SLIGHTLY LEANING IN FAVOR OF FINDING SOMEBODY GUILTY JUST AT

18    THE OUTSET BECAUSE YOU HAVE BEEN THE VICTIM OF A CRIME?

19         **PROSPECTIVE JUROR CARROLL:**  IT IS IN THE BACK OF MY

20    MIND, BUT I WILL BE FAIR.

21         **THE COURT:**  WHY CAN'T YOU PUT IT OUT OF YOUR MIND?

22         **PROSPECTIVE JUROR CARROLL:**  JUST BECAUSE IT'S

23    PERSONAL.

24         **THE COURT:**  ALL RIGHT.

25         **PROSPECTIVE JUROR CARROLL:**  IT'S NOT EASY TO...

1    **THE COURT:**  ALL RIGHT.  ANYONE ELSE OVER THERE RAISE

2  YOUR HAND?

3    GO RIGHT AHEAD, MS. TORREGROSA.

4    **PROSPECTIVE JUROR TORREGROSA:**  I'D ALMOST FORGOTTEN

5  ABOUT THIS, BUT WHEN YOU SAID THAT YOUR PURSE HAD GOTTEN STOLEN,

6  I REMEMBERED, OH YEAH, MY PURSE GOT STOLEN LAST YEAR WHEN I WAS

7  A TOURIST IN MADRID.

8    **THE COURT:**  ALL RIGHT.  CAN YOU PUT THAT OUT OF YOUR

9  MIND AND DECIDE THIS CASE FAIRLY AND SQUARELY?

10    **PROSPECTIVE JUROR TORREGROSA:**  YEAH.

11    **THE COURT:**  ALL RIGHT.  THANK YOU.

12    ALL RIGHT.  OVER HERE ON THAT ROW, WHO DO WE HAVE?

13    **PROSPECTIVE JUROR FUGELSETH:**  ROBERT FUGELSETH.  MY

14  CAR WAS STOLEN AT LOS ANGELES AIRPORT IN 1998.  THEY FOUND THE

15  CAR TWO MONTHS LATER AT SAN DIEGO AIRPORT.  DIDN'T FIND OUT WHO,

16  CATCH WHO DID IT, OR WHY IT WAS STOLEN, BUT THAT'S WHEN THEY

17  FOUND IT.

18    **THE COURT:**  ALL RIGHT.  HOW DID YOU FEEL ABOUT THAT?

19    **PROSPECTIVE JUROR FUGELSETH:**  WELL, AT THAT TIME, OF

20  COURSE, I WAS UPSET AND SOMEWHAT ANGRY, BUT I CAN -- IT'S BEEN

21  SO LONG, AND I HARDLY THINK ABOUT IT ANYMORE, TO BE PERFECTLY

22  HONEST.

23    **THE COURT:**  TO BE A FAIR JUROR HERE, YOU WOULD HAVE

24  TO PUT THAT OUT OF YOUR MIND AND DECIDE THIS CASE BASED ON THE

25  EVIDENCE YOU ARE GOING TO HEAR IN THE COURTROOM.

1          **PROSPECTIVE JUROR FUGELSETH:**  I CAN.  I CAN BE

2    IMPARTIAL.  IT WAS SO LONG AGO.

3          **THE COURT:**  THANK YOU.  ANYONE ELSE ON THAT ROW?

4    OKAY.  WE GO TO MS. CLARKE.

5          **PROSPECTIVE JUROR CLARKE:**  PAULINE CLARKE.  I WAS THE

6    VICTIM OF AN ASSAULT THAT I MENTIONED EARLIER.  IT WAS OVER 30

7    YEARS AGO, AND HE WENT TO PRISON FOR TWO YEARS.

8          **THE COURT:**  WAS THERE A WEAPON INVOLVED?

9          **PROSPECTIVE JUROR CLARKE:**  A KNIFE.

10         **THE COURT:**  LIKE A GUN OR A KNIFE OR ANYTHING?

11         **PROSPECTIVE JUROR CLARKE:**  A KNIFE.

12         **THE COURT:**  WHERE DID THIS OCCUR?

13         **PROSPECTIVE JUROR CLARKE:**  IN SAN JOSE AT MY HOME.

14   IT WAS AN EX-BOYFRIEND.

15         **THE COURT:**  AN EX-BOYFRIEND.  SO IT WAS SOMEBODY YOU

16   KNEW?

17         **PROSPECTIVE JUROR CLARKE:**  YES.

18         **THE COURT:**  DID THEY BREAK INTO THE HOUSE, OR DID YOU

19   LET HIM IN, OR WHAT?  IN OTHER WORDS, DID THEY, IN ADDITION

20   TO -- WAS IT A BREAK-IN OF YOUR HOUSE?

21         **PROSPECTIVE JUROR CLARKE:**  NO, HE DIDN'T BREAK IN.

22         **THE COURT:**  SO THE CASE WENT TO COURT, AND HE WAS

23   CONVICTED?

24         **PROSPECTIVE JUROR CLARKE:**  YES.

25         **THE COURT:**  HOW LONG AGO WAS THAT?

1          **PROSPECTIVE JUROR CLARKE:**  1977.

2          **THE COURT:**  NOW, THAT HAS NOTHING TO DO WITH OUR

3  CASE, CORRECT?

4          **PROSPECTIVE JUROR CLARKE:**  CORRECT.

5          **THE COURT:**  CAN YOU, IN DECIDING THIS CASE, CAN YOU

6  PUT THAT OUT OF YOUR MIND?

7          **PROSPECTIVE JUROR CLARKE:**  YES.

8          **THE COURT:**  ALL RIGHT.  THANK YOU.

9          ANYONE OVER THERE?  OKAY.  WE GO TO MS. SPATH.  DID I

10 GET IT RIGHT YET?

11         **PROSPECTIVE JUROR SPATH:**  YES.  THANK YOU, YOUR

12 HONOR.

13         **THE COURT:**  ALL RIGHT.

14         **PROSPECTIVE JUROR SPATH:**  MY APARTMENT WAS

15 BURGLARIZED IN 1997 IN CHICAGO, AND I HAD PERSONAL PROPERTY

16 STOLEN.

17         IN DECEMBER OF '09 I WAS INVOLVED IN A HIT AND RUN

18 ACCIDENT WHERE THE OTHER PARTY WHO WAS RESPONSIBLE WAS NEVER

19 APPREHENDED.

20         **THE COURT:**  JUST THIS LAST DECEMBER?

21         **PROSPECTIVE JUROR SPATH:**  YES.

22         **THE COURT:**  WERE YOU IN A CAR?

23         **PROSPECTIVE JUROR SPATH:**  I WAS DRIVING THE CAR.  SHE

24 T-BONED MY CAR, TOTALED IT, BACKED UP, DROVE AWAY.

25         **THE COURT:**  WHERE DID THAT HAPPEN?

1          **PROSPECTIVE JUROR SPATH:**  IN BERKELEY.

2          **THE COURT:**  DID YOU SEE THE PERSON?

3          **PROSPECTIVE JUROR SPATH:**  I DIDN'T SEE THE PERSON,

4   BUT WITNESSES, SEVERAL WITNESSES, SAW THE PERSON, AND THEY GOT

5   THE PLATES OF THE DRIVER, BUT THEY WEREN'T ABLE TO FIND HER.

6          **THE COURT:**  HOW DO YOU KNOW IT WAS A HER?

7          **PROSPECTIVE JUROR SPATH:**  BECAUSE OF THE WITNESSES.

8          **THE COURT:**  ALL RIGHT.  IS THAT CASE STILL PENDING,

9   OR IS IT CLOSED?

10         **PROSPECTIVE JUROR SPATH:**  NO.  THEY SORT OF JUST

11  REACHED A DEAD END.  SO I HAD TO SETTLE WITH UNINSURED MOTORIST

12  COVERAGE WITH MY INSURANCE COMPANY.

13         **THE COURT:**  DID YOU REPORT IT TO THE POLICE?

14         **PROSPECTIVE JUROR SPATH:**  I DID.

15         **THE COURT:**  ALL RIGHT.  NOW, YOU KNOW THAT HAS

16  NOTHING TO DO WITH OUR IMMEDIATE CASE, CORRECT?

17         **PROSPECTIVE JUROR SPATH:**  YES, YOUR HONOR.

18         **THE COURT:**  ARE YOU ABLE TO PUT IT OUT OF YOUR MIND

19  AND DECIDE THIS CASE FAIRLY AND SQUARELY BASED UPON THE EVIDENCE

20  AS PRESENTED HERE IN THIS TRIAL?

21         **PROSPECTIVE JUROR SPATH:**  YES.

22         **THE COURT:**  ALL RIGHT.  THANK YOU.

23         LET'S GO TO MR. BROWN.

24         **PROSPECTIVE JUROR BROWN:**  MY CAR WAS VANDALIZED IN

25  PLEASANT HILL.

1        **THE COURT:** WHEN?

2        **PROSPECTIVE JUROR BROWN:** YEARS AGO.

3        **THE COURT:** YEARS AGO. ALL RIGHT. DID THEY EVER

4    FIND OUT WHO DID IT?

5        **PROSPECTIVE JUROR BROWN:** NO, THEY NEVER DID.

6        **THE COURT:** SO HOW DO YOU FEEL ABOUT THAT?

7        **PROSPECTIVE JUROR BROWN:** I ACTUALLY DIDN'T THINK

8    ABOUT IT UNTIL YOU ASKED THE QUESTION.

9        **THE COURT:** ALL RIGHT. SO CAN YOU PUT THAT OUT OF

10   YOUR MIND AND DECIDE THIS CASE BASED SOLELY ON THE EVIDENCE

11   HERE?

12       **PROSPECTIVE JUROR BROWN:** YES, YOUR HONOR.

13       **THE COURT:** OKAY. THANK YOU.

14       NEXT.

15       **PROSPECTIVE JUROR MERKIN:** I WAS ASSAULTED IN NEW

16   YORK ABOUT SIX YEARS AGO. AND ALSO HAD MY PURSE STOLEN ANOTHER

17   TIME AND HAD IDENTITY THEFT FROM THAT. I DON'T THINK THAT WOULD

18   AFFECT MY CASE OR JUDGING THIS CASE RIGHT NOW, MOVING TO YOUR

19   NEXT QUESTION.

20       **THE COURT:** ALL RIGHT. I KNOW THAT WOULD BE. LET ME

21   MAKE SURE.

22       YOU HAD YOUR PURSE STOLEN AND YOUR IDENTITY STOLEN?

23       **PROSPECTIVE JUROR MERKIN:** THAT WAS ONE TIME.

24   ANOTHER TIME I WAS ASSAULTED AND HAD MY PURSE STOLEN.

25       **THE COURT:** WAS THERE A WEAPON INVOLVED?

1           **PROSPECTIVE JUROR MERKIN:**  JUST SOMEONE'S FISTS.

2           **THE COURT:**  I'M SORRY TO HEAR ALL THAT.  BUT CAN YOU

3    ASSURE US THAT YOU CAN SET THAT EXPERIENCE TO ONE SIDE AND

4    PROFESSIONALLY DECIDE THIS CASE BASED ON THE EVIDENCE AS

5    PRESENTED HERE?

6           **PROSPECTIVE JUROR MERKIN:**  I COULD FOR THAT.  BUT I

7    HAVE SOMETHING THAT WASN'T PERSONALLY DONE TO ME.  I DON'T KNOW

8    IF YOU WANT TO HEAR THAT, TOO.

9           **THE COURT:**  I WAS GOING TO COME TO THAT, BUT GO

10   AHEAD.

11          **PROSPECTIVE JUROR MERKIN:**  MY FIANCE'S TRUCK WAS

12   STOLEN NOT TOO LONG AGO.  WE STILL HAVEN'T GOT THE TRUCK BACK,

13   EVEN THOUGH IT WAS FOUND.  THAT'S AN OPEN CASE.  THAT HAS HAD A

14   VERY, VERY STRONG EFFECT ON MY ME.  DON'T THINK I COULD BE

15   PARTIAL BECAUSE OF THAT.

16          **THE COURT:**  WHY IS THAT?

17          **PROSPECTIVE JUROR MERKIN:**  I MIGHT NEED TO HAVE A

18   SIDEBAR ABOUT THAT.

19          **THE COURT:**  ALL RIGHT.

20          **PROSPECTIVE JUROR MERKIN:**  A LOT OF EMOTION CAME OUT

21   OF IT, A LOT OF DRAMA.  I WOULD RATHER NOT SUBJECT EVERYBODY TO

22   THAT.  IT'S STILL AN OPEN CASE.

23          **THE COURT:**  ALL RIGHT.  WE'LL DO THE SIDEBAR.  LET'S

24   GO TO MS. PERRY.

25          **PROSPECTIVE JUROR PERRY:**  ABOUT 10 OR 15 YEARS AGO WE

1    HAD TWO CARS STOLEN FROM OUTSIDE OUR HOUSE IN BERKELEY.  THEY

2    WERE RECOVERED.  I DON'T KNOW WHO TOOK THEM.  AND UNTIL YOU

3    BROUGHT IT UP, I HADN'T REALLY THOUGHT ABOUT IT.

4            **THE COURT:**  CAN YOU PUT IT OUT OF YOUR MIND AND

5    DECIDE THE CASE FAIRLY?

6            **PROSPECTIVE JUROR PERRY:**  YES.

7            **THE COURT:**  ANYONE ELSE?  TWO MORE.

8            **PROSPECTIVE JUROR MILLER:**  I HAD MY CAR STOLEN, I

9    THINK LAST APRIL, FROM THE PLEASANT HILL BART STATION.  IT WAS

10   RECOVERED IN RICHMOND, BUT TOTALED, AND WE HAD TO REPLACE IT.

11           **THE COURT:**  WHEN WAS THAT?

12           **PROSPECTIVE JUROR MILLER:**  I THINK LAST SPRING.  I

13   THINK IN APRIL.

14           **THE COURT:**  ALL RIGHT.  CAN YOU -- CAN YOU DECIDE

15   THIS CASE BASED ONLY ON THE EVIDENCE HERE AND FORGET ABOUT THE

16   FACT YOUR CAR WAS STOLEN?

17           **PROSPECTIVE JUROR MILLER:**  YES.

18           **THE COURT:**  MR. HERDA?

19           **PROSPECTIVE JUROR HERDA:**  I HAD MY APARTMENT BROKE

20   INTO.  THIS WAS WHAT?  THIRTY YEARS AGO.

21           **THE COURT:**  CAN YOU FORGET ABOUT THAT AND DECIDE THIS

22   CASE FAIRLY?

23           **PROSPECTIVE JUROR HERDA:**  SURE.  I FORGOT ABOUT IT

24   UNTIL YOU BROUGHT IT UP.

25           **THE COURT:**  THANK YOU.  ALL RIGHT.  I THINK WE NEED

1   TO TAKE A RECESS HERE.  BUT THERE WERE THREE PEOPLE WHO I NEED

2   ASK TO STAY BEHIND.  THAT'S MS. MERKIN, MR. HOVERMALE, AND

3   MR. WATHEN.  EVERYONE ELSE, I'M GOING TO ASK YOU TO STEP OUTSIDE

4   FOR AT LEAST -- WAIT, WAIT.  BEFORE I DO THAT, PLEASE -- PLEASE

5   HAVE A SEAT.

6           I SHOULD MENTION, I'D ASK YOU NOT TO TALK WITH EACH

7   OTHER AND SO FORTH.

8           HAVE ANY OF YOU GONE ON LINE WITH A LITTLE BLACKBERRY

9   AND PUT THE NAMES OF ANYBODY YOU HEARD OR ANYTHING ABOUT THIS

10  CASE, TRY TO DO ANY RESEARCH ON LINE?  I'VE HAD THAT HAPPEN.

11  YOU KNOW, HAVE ANY OF YOU DONE THAT?  PLEASE DO NOT DO THAT.

12  LET ME EXPLAIN WHY.

13          WHENEVER WE HAVE A TRIAL, WE ARE AS FAIR TO BOTH

14  SIDES AS WE CAN BE, AND THAT MEANS THAT THE TRIAL IS DECIDED

15  BASED ON WHAT HAPPENS IN THIS COURTROOM.  AND IF ONE OF YOU WERE

16  TO GO OUT AND DO SOME RESEARCH AND HAVE ADDITIONAL INFORMATION

17  ABOUT THIS CASE THAT WE DON'T KNOW ABOUT, THAT PRESENTS A BIG

18  PROBLEM, SO YOU CAN'T DO THAT.

19          IN ONE CASE I HAD A JUROR WHO WAS ACTUALLY SEATED

20  AFTER THE TRIAL STARTED.  THEY CAME TO WORK ONE DAY, AND THEY

21  WERE USING THEIR LITTLE BLACKBERRY OUT IN FRONT OF THE

22  COURTHOUSE, DIGGING UP INFORMATION ABOUT SOMETHING ONE OF THE

23  LAWYERS HAD SAID IN THE CLOSING ARGUMENT, SOME OTHER CASE THAT

24  HAD COME UP IN THE EVIDENCE.

25          WE HAD TO HOLD AN EVIDENTIARY HEARING, WENT ON FOR

1    ABOUT TWO HOURS, TO FIND OUT WHAT SHE HAD LEARNED, WHILE ALL THE

2    OTHER JURORS WERE SITTING BACK THERE IN THE JURY ROOM, COOLING

3    THEIR HEELS ON ACCOUNT OF THIS ONE JUROR VIOLATING THAT

4    ADMONITION.

5            SO THIS IS A IMPORTANT ASSIGNMENT, AND YOU MUST

6    DECIDE THE CASE SOLELY ON THE EVIDENCE THAT COMES INTO EVIDENCE

7    RIGHT HERE IN THE COURTROOM AND NOWHERE ELSE.  SO NO RESEARCH,

8    NO TALKING WITH ANYONE ABOUT THE CASE.  YOU KEEP YOUR MIND AS

9    PURE AS IT CAN BE KEPT SO THAT WHEN THE DAY COMES THAT YOU HAVE

10   TO RENDER A VERDICT, YOU CAN HONESTLY SAY YOU DID IT BASED ON

11   THE EVIDENCE HERE AND BASED ON THE LAW.

12           ALL RIGHT.  WITH THAT, I'M GOING TO LET YOU GO FOR AT

13   LEAST 15 MINUTES.  PLEASE DON'T STAY IN THE COURTROOM, BECAUSE I

14   NEED TO TALK TO THESE THREE.

15           COME BACK IN 15 MINUTES.

16                   (THE PROSPECTIVE JURY PANEL EXITED THE

17                   COURTROOM.)

18       **THE COURT:**  MR. MONTOYA, DID I ASK YOU TO STAY, TOO?

19       **PROSPECTIVE JUROR MONTOYA:**  NO, YOUR HONOR, BUT I

20   HAVE -- I JUST REMEMBERED THAT MY DAUGHTER HAD --

21       **THE COURT:**  WAIT.  YOU WANT TO SAY SOMETHING AT THE

22   SIDEBAR, TOO?

23       **PROSPECTIVE JUROR MONTOYA:**  YES.

24       **THE COURT:**  WE'LL COME TO YOU.  JUST STAND BY.

25           ALL RIGHT.  WE WILL HAVE -- I GUESS THE WAY TO DO

1  THIS IS EVERYBODY BE SEATED.  I'LL HAVE THE COURT REPORTER COME

2  OVER TO THE SIDEBAR, AND WE CAN MAKE THIS AS PRIVATE AS NEED BE.

3           MS. MERKIN, WHY DON'T YOU COME FORWARD FIRST?

4               (SIDEBAR DISCUSSION HELD AS FOLLOWS)

5           **THE COURT:**  ALL RIGHT.  WE'RE AT THE SIDEBAR.

6           **PROSPECTIVE JUROR MERKIN:**  I THINK I GOT A LITTLE BIT

7  EMOTIONAL BACK THERE, WHICH IS WHY I NEEDED TO STOP AND KIND OF

8  COLLECT MYSELF.  SO, MY FIANCE'S TRUCK WAS STOLEN.  THERE'S BEEN

9  A LOT OF DRAMATIC ISSUES THAT HAPPENED LIKE THAT.  HE HAD TO GET

10 A RENTAL CAR.  HE WAS SO UPSET ABOUT HIS TRUCK BEING STOLEN, HE

11 GOT IN A CAR ACCIDENT.  HE'S OKAY NOW.  HE STILL HAS SOME

12 LINGERING INJURIES HE'S TRYING TO DEAL WITH, WHICH HE CAN'T FIX

13 IF HE TAKES CARE OF THAT.  HE HAS TO BE OFF OF WORK.

14           THERE IS A LOT OF OPEN THINGS AROUND THAT THAT I'M

15 STILL GOING TO HAVE IN THE BACK OF MY HEAD WHEN I'M THINKING

16 ANYONE WHO STOLE A TRUCK.  I DON'T KNOW HOW IT WOULD AFFECT

17 ANYONE ELSE IF I THINK HE MAY HAVE DONE IT.  I WOULD BE PARTIAL

18 IF I THINK IT COULD HAVE BEEN HIM.  I AM PROBABLY GOING TO LEAN

19 TOWARDS HAVING THE PERSON WHO COMMITTED THE CRIME PUNISHED.  I'M

20 STILL SUFFERING FROM THE CRIME.

21           **THE COURT:**  WHAT WAS THE MODEL OF THE VEHICLE THAT

22 WAS STOLEN?

23           **PROSPECTIVE JUROR MERKIN:**  IT WAS AN F350 TRUCK, FORD

24 F350.

25           **THE COURT:**  IS ANY OF THE EIGHT VEHICLES HERE THAT --

1          **MR. CHAZIN:**  NO.

2          **MR. LEUNG:**  NO, YOUR HONOR.

3          **PROSPECTIVE JUROR MERKIN:**  IT WAS A BIG RING THAT

4     THEY JUST BROKE RECENTLY FOR CARS THAT WERE BEING STOLEN IN SAN

5     FRANCISCO RELATED TO A DRUG RING WHICH IS AN OPEN CASE.

6          **THE COURT:**  TELL US MORE ABOUT THAT.

7          **PROSPECTIVE JUROR MERKIN:**  THEY THINK THERE'S ABOUT

8     12 OR 13 GUYS WHO MAY HAVE BEEN -- AN ASIAN GANG THAT'S BASED

9     OUT OF THE SUNSET AREA IN SAN FRANCISCO.  AND HIS TRUCK WAS WHAT

10    CAUSED THEM TO BE ABLE TO CRACK THE CASE, BECAUSE THEY FINALLY

11    FOUND HIS TRUCK, WHICH IS LIKE THIS HUGE JACKED-UP TRUCK.  I

12    DON'T KNOW HOW IT COULDN'T HAVE BEEN FOUND.

13          IT WAS STOLEN IN OCTOBER.  THEY FOUND IT RIGHT AFTER

14    THANKSGIVING, WHICH IS RIGHT AFTER WE FINALLY GOT MONEY FOR THE

15    TRUCK FROM INSURANCE.

16          SO HE HAD GONE AND HAD A RENTAL CAR FOR A WHILE.  HE

17    HAD TO BUY ANOTHER CAR.  WE HAD TO FIGHT FOR HIM TO HAVE THE

18    OPPORTUNITY TO BUY THAT TRUCK BACK.  SORRY.  YOU ASKED ABOUT THE

19    CASE.

20          SO THERE'S ABOUT 13 GUYS IN THE CASE.  THEY CAUGHT

21    MOST OF THEM, BUT NOT ALL OF THEM.  THEY WERE STILL TRYING TO

22    FIND THE RINGLEADER LAST I HEARD.  I DON'T KNOW ANY OF THE

23    DETAILS OF THE CASE.  I DON'T KNOW IF IT'S IN COURT RIGHT NOW.

24          **THE COURT:**  YOU SAY THIS WAS AN ASIAN GANG?

25          **PROSPECTIVE JUROR MERKIN:**  I BELIEVE SO.

1            **MR. CHAZIN:**  YOUR HONOR, I WOULD MOVE SHE BE EXCUSED

2   FOR CAUSE, I THINK IN LIGHT OF ALL THE DIFFERENT ISSUES THAT

3   SHE'S RAISED, TO SPARE HER AT THIS POINT.

4            **THE COURT:**  WHAT DOES THE GOVERNMENT SAY?

5            **MR. LEUNG:**  THAT'S FINE WITH THE GOVERNMENT, YOUR

6   HONOR.

7            **THE COURT:**  ALL RIGHT.  BOTH SIDES ARE WILLING TO

8   EXCUSE YOU, BUT I KNOW ENOUGH ABOUT THIS CASE TO KNOW THERE'S NO

9   WAY ANYTHING -- YOUR FIANCE'S TRUCK WAS NOT INVOLVED IN THIS

10  CASE.

11           **PROSPECTIVE JUROR MERKIN:**  I THINK IT'S A SEPARATE

12  CASE.  JUST FROM MY GUT INTUITION, I THINK IT'S A SEPARATE CASE.

13           **THE COURT:**  WELL --

14           **PROSPECTIVE JUROR MERKIN:**  I THINK I STILL WOULD HAVE

15  A BIAS FOR ANYONE WHO MAY HAVE COMMITTED THAT CRIME.

16           **THE COURT:**  ALL RIGHT.

17           **PROSPECTIVE JUROR MERKIN:**  I'M STILL SUFFERING FROM

18  IT.  WE STILL DON'T HAVE THE TRUCK BACK.

19           **THE COURT:**  MS. MERKIN, I'M GOING TO EXCUSE YOU BASED

20  ON THE LAWYER'S STIPULATION.  YOU MAY GO BACK TO THE JURY

21  ASSEMBLY ROOM AND SEE IF THEY CAN USE YOU IN A DIFFERENT CASE.

22  ALL RIGHT?

23           **PROSPECTIVE JUROR MERKIN:**  THANK YOU.

24           **THE COURT:**  OKAY.  MR. WATHEN, PLEASE.

25           ALL RIGHT.  MR. WATHEN IS AT THE SIDEBAR.

```
1              WHAT IS YOUR SITUATION?

2              PROSPECTIVE JUROR WATHEN:  MR. CHAZIN DEFENDED MY SON

3    IN A LONG CRIMINAL CASE.  IT WAS 2-1/2 YEARS AGO.

4              MR. CHAZIN:  APPROXIMATELY.

5              PROSPECTIVE JUROR WATHEN:  PLUS, I KNOW HIM

6    PERSONALLY.

7              THE COURT:  DON'T YOU THINK THAT'S A BASIS FOR

8    EXCUSING HIM?

9              MR. CHAZIN:  I THINK SO.

10             THE COURT:  WE'RE GOING TO EXCUSE YOU.  I FIGURED IT

11   WAS SOMETHING LIKE THAT WHEN YOU TOLD US YOU KNEW SOMEBODY IN

12   THE COURTROOM.  YOU CAN GO BACK TO THE JURY ASSEMBLY ROOM, TELL

13   THEM THAT YOU HAVE BEEN EXCUSED, AND MAYBE THEY CAN USE YOU ON A

14   DIFFERENT CASE.  ALL RIGHT.

15             PROSPECTIVE JUROR WATHEN:  THANK YOU.

16             THE COURT:  MR. HOVERMALE, YOUR SITUATION?

17             PROSPECTIVE JUROR HOVERMALE:  MY WIFE'S

18   BROTHER-IN-LAW IS A JUDGE, AND HIS FATHER IS A JUDGE.  MY FAMILY

19   SPENDS EVERY AUGUST IN BRITISH COLUMBIA.  THERE ARE A GROUP OF

20   PEOPLE THAT ARE IN THE LEGAL PROFESSION, BOTH LAWYERS AND JUDGES

21   WHO ARE ALSO IN THE GROUP WHO I SPEND TWO WEEKS EVERY AUGUST

22   WITH.  WE SPEAK ABOUT THINGS FROM TIME TO TIME OVER THE LAST 12

23   YEARS NOW.  THAT HAS SHOWN ME EXAMPLES OF HOW PEOPLE THAT BROKE

24   THE LAW GET OFF ON WHAT I SEE AS TECHNICALITIES.

25             IF UNDER OATH YOU ARE GOING TO ASK ME IF I'M GOING TO
```

1   BE UNBIASED, I CAN'T GUARANTEE THAT.

2           **THE COURT:**  I DON'T KNOW THAT ANYONE CAN EVER

3   GUARANTEE THAT.  THAT'S A HUNDRED PERCENT THING.  BUT YOU HAVE

4   TO USE YOUR OWN JUDGMENT AND TELL US WHETHER OR NOT YOU THINK

5   YOU WOULD BE UNFAIR.

6           **PROSPECTIVE JUROR HOVERMALE:**  AND I THINK I TOLD YOU

7   I DON'T THINK I COULD BE.

8           **THE COURT:**  SO YOU ARE SAYING YOU WOULD BE BIASED IN

9   FAVOR OF THE GOVERNMENT AND COULD NOT PUT THAT TO ONE SIDE?

10          **PROSPECTIVE JUROR HOVERMALE:**  THAT'S CORRECT.

11          **THE COURT:**  ARE YOU JUST SAYING THAT TO GET OUT OF

12  JURY SERVICE?

13          **PROSPECTIVE JUROR HOVERMALE:**  NO, I AM NOT.

14          **THE COURT:**  THERE ARE OTHER CASES WHERE IF YOU GET

15  SELECTED THERE WILL BE EIGHT OR NINE WEEKS OF JURY.

16          I'M GOING TO EXCUSE MR. HOVERMALE UNLESS THERE'S AN

17  OBJECTION.

18          **MR. LEUNG:**  NO, YOUR HONOR.

19          **THE COURT:**  GO BACK TO THE JURY ASSEMBLY ROOM AND SEE

20  IF THEY CAN USE YOU ON ANOTHER CASE.

21          **PROSPECTIVE JUROR HOVERMALE:**  THANK YOU.

22          **THE COURT:**  MR. MONTOYA, PLEASE.  ALL RIGHT,

23  MR. MONTOYA.  HOW ARE YOU?

24          **PROSPECTIVE JUROR MONTOYA:**  GOOD.

25          **THE COURT:**  WHAT IS THE ISSUE YOU WANT TO RAISE?

1          **PROSPECTIVE JUROR MONTOYA:**  EVEN THOUGH WHAT HAPPENED

2   TO MY DAUGHTER, THEY STOLE HER PURSE AT SCHOOL, I AM VERY

3   FAMILIAR WITH THESE TYPE OF CASES THROUGH THE NEWS, AND WHAT I

4   HAVE READ.  AND THROUGH PERSONAL EXPERIENCE IN TALKING TO

5   PEOPLE, YOU KNOW, I KNOW WHAT THEY DO WITH THE CARS AND HOW

6   THEY -- IN MIAMI, FOR EXAMPLE, IT GOES TO OTHER PARTS OF LATIN

7   AMERICA.  HERE WE ARE NEXT TO MEXICO.  THEY GO TO THE BORDER

8   SOMETIMES IN CAHOOTS WITH OFFICERS OF THE LAW IN MEXICO.  AND I

9   THINK THAT, YOU KNOW, EVEN THOUGH I DON'T KNOW EXACT COUNTS THAT

10  MR. NOCHEZ IS CHARGED, THAT I KNOW A LOT ABOUT, IT'S A CRIME OF

11  OPPORTUNITY AND IT'S -- IT'S VERY COMMON.

12          **THE COURT:**  ANY QUESTIONS BY THE LAWYERS?

13          **MR. LEUNG:**  MR. MONTOYA, CAN YOU STILL BE FAIR

14  DESPITE THE BACKGROUND?

15          **PROSPECTIVE JUROR MONTOYA:**  YOU KNOW, I WAS BORN

16  ELSEWHERE, AND I KNOW THAT IT'S DONE FAIRLY OFTEN, AND I DON'T

17  KNOW IF I COULD BE COMPLETELY FAIR.

18          **THE COURT:**  ANY QUESTIONS?

19          **MR. CHAZIN:**  ARE YOU SAYING THAT BECAUSE YOU KNOW

20  THAT IT IS -- IT HAPPENS OFTEN.  YOU'RE FROM EL SALVADOR?

21          **PROSPECTIVE JUROR MONTOYA:**  YES.

22          **MR. CHAZIN:**  AND BECAUSE IT HAPPENS, YOU'VE KNOWN IT

23  TO HAPPEN IN THAT AREA OF THE WORLD?

24          **PROSPECTIVE JUROR MONTOYA:**  I KNOW IT TO HAPPEN IN

25  CALIFORNIA.

1          **MR. CHAZIN:**  RIGHT.

2          **PROSPECTIVE JUROR MONTOYA:**  AND I KNOW THAT MOST OF

3    THE CARS STOLEN IN THIS AREA, THEY GO TO MEXICO.  AND THE OTHER

4    ONES THAT GO TO OTHER PARTS OF LATIN AMERICA, YOU PUT THEM IN A

5    CONTAINER, YOU FAKE THE BILL OF LADING.  IT GETS RECEIVED DOWN

6    THERE, SOMETIMES IN CAHOOTS WITH PEOPLE THERE, AND IT'S VERY

7    EASY TO PASS THEM ALONG.  I KNOW THAT FOR A FACT.  IT'S A

8    PROBLEM THERE, TOO.

9          **MR. CHAZIN:**  DOES IT BOTHER YOU, JUST THE FACT THAT

10   THOSE CRIMES -- THE FACT THEY OCCUR, IT BOTHERS YOU?

11         **PROSPECTIVE JUROR MONTOYA:**  YEAH, IT BOTHERS ME,

12   ESPECIALLY IF THE PEOPLE ARE DOING IT ARE NOT CITIZENS OF THE

13   UNITED STATES.  YEAH, IT BOTHERS ME.

14         **MR. CHAZIN:**  IF YOU WERE TO KNOW THAT THIS CASE

15   INVOLVED PEOPLE FROM EL SALVADOR, WOULD THAT MAKE A DIFFERENCE

16   AS TO YOUR ABILITY TO BE FAIR AND IMPARTIAL?

17         **PROSPECTIVE JUROR MONTOYA:**  YES, BECAUSE I KNOW

18   FIRSTHAND THAT THERE IS A TRAFFIC OF STOLEN CARS TO EL SALVADOR.

19         **MR. CHAZIN:**  OKAY.

20         **THE COURT:**  I THINK WE ARE GOING TO EXCUSE

21   MR. MONTOYA, BECAUSE I THINK MAYBE HE KNOWS TOO MUCH.  SO THANK

22   YOU FOR TELLING US.  DO YOU WANT TO BE EXCUSED?

23         **PROSPECTIVE JUROR MONTOYA:**  I WOULD LIKE TO BE

24   EXCUSED.

25         **THE COURT:**  ALL RIGHT.  I DON'T THINK YOU CAN BE FAIR

1   AND IMPARTIAL GIVEN WHAT YOU ALREADY KNOW ABOUT THE

2   CIRCUMSTANCES.  SO, IS IT OKAY WITH MR. CHAZIN?  YOU TELL ME.

3   YOU MAKE THE MOTION OR NOT.

4            **MR. CHAZIN:**  I'M NOT MAKING A MOTION.

5            **THE COURT:**  YOU'RE NOT -- YOU'RE HAPPY TO KEEP

6   MR. MONTOYA?

7            **MR. CHAZIN:**  WELL -- NO.  I WILL MAKE THE MOTION.

8            **THE COURT:**  I'M NOT GOING TO EXCUSE HIM WITHOUT YOUR

9   CONSENT.

10           **MR. CHAZIN:**  I WILL MAKE THE MOTION.

11           **THE COURT:**  ALL RIGHT.  MR. CHAZIN HAS MADE THE

12   MOTION.

13           SO, MR. MONTOYA, I'M GOING TO EXCUSE YOU FOR CAUSE.

14   GO BACK TO THE JURY ASSEMBLY ROOM AND TELL THEM WHAT HAPPENED.

15   OKAY.

16           **PROSPECTIVE JUROR MONTOYA:**  OKAY.

17           **THE COURT:**  ALL RIGHT.  THANK YOU.

18           WHILE I HAVE YOU BOTH HERE, IT LOOKS LIKE WE HAVE

19   FOUR TO REPLACE HERE, I THINK.

20           WHILE WE'RE AT IT, IN MY OPINION, I WON'T DO IT

21   UNLESS YOU BOTH STIPULATE, THAT MRS. CARROLL IS GOING TO HAVE TO

22   EVENTUALLY BE EXCUSED.  SHE'S THE WOMAN WHO HAS NOW BROUGHT UP

23   SOMETHING AND IS EQUIVOCAL ON WHETHER SHE CAN BE FAIR AND

24   IMPARTIAL.  I THINK THE BEST THING TO DO IS EXCUSE HER NOW.  I

25   WON'T DO THAT UNLESS YOU BOTH AGREE.

1          **MR. LEUNG:**  I WOULD AGREE WITH EXCUSING HER.

2          **MR. CHAZIN:**  YES.

3          **THE COURT:**  ALL RIGHT.  SO WE'RE GOING TO EXCUSE HER,

4    TOO.  ALL RIGHT.  OKAY.  WE'LL TAKE A SHORT BREAK OURSELVES.

5          **MR. CHAZIN:**  YOUR HONOR, I DID HAVE AN ISSUE I WANTED

6    TO RAISE, THE PROSECUTOR BROUGHT UP, WHICH WAS THE FACT THAT

7    HE -- TWO ISSUES.  ONE IS HAVING TO DO WITH PROSECUTOR'S

8    INDICATION THEY PLAN ON INTRODUCING EVIDENCE THAT MY CLIENT WAS

9    INVOLVED WITH STOLEN VEHICLES, AND I THINK THE ISSUE IS

10   HIGHLIGHTED WHEN WE WERE UP HERE AND TALKING ABOUT WHAT HE'S

11   ACTUALLY CHARGED WITH, WHICH IS ATTEMPTED EXPORTATION OF STOLEN

12   VEHICLES.

13         **THE COURT:**  BUT IF HE'S THE ONE THAT STOLE IT, THAT

14   PROVES HE KNEW IT WAS STOLEN.  HOW WOULD THAT NOT BE RELEVANT?

15         **MR. CHAZIN:**  IF WE STIPULATED HE KNEW IT WAS STOLEN,

16   WOULD THEN IT BE RELEVANT?

17         **THE COURT:**  GOVERNMENT HAS TO -- THE *OLD CHIEF* CASE,

18   I THINK YOU HAVE THE RIGHT TO PROVE YOUR CASE WITHOUT

19   STIPULATIONS.  YOU CANNOT STIPULATE THE GOVERNMENT IN

20   UNILATERALLY.  IF YOU TWO WERE TO ENTER INTO A STIPULATION, THAT

21   PROBABLY WOULD NOT -- BUT UNTIL THERE'S A STIPULATION LIKE THAT,

22   THE GOVERNMENT IS ENTITLED TO LAY ITS EVIDENCE BEFORE THE JURY.

23         **MR. CHAZIN:**  WOULD YOU STIPULATE?

24         **MR. LEUNG:**  I WOULD HAVE TO THINK ABOUT IT AND CONFER

25   WITH MY CO-COUNSEL.  AT THIS POINT WE WOULD NOT AGREE TO SUCH A

1  STIPULATION.  I SHOULD PROBABLY CONFER WITH MY INTELLECTUAL

2  BETTER.

3         **THE COURT:**  UNTIL YOU TELL ME TO THE CONTRARY, I AM

4  GOING TO ASSUME IT'S STILL IN THE CASE.  IF AND WHEN YOU REACH A

5  STIPULATION, LET ME KNOW.

6         **MR. CHAZIN:**  THE ONE OTHER ISSUE?

7         **THE COURT:**  OF COURSE.

8         **MR. CHAZIN:**  I JUST GOT A TEXT MESSAGE FROM MY OFFICE

9  THAT MS. KLAUS (PHONETIC), THE TRANSLATOR, TRANSCRIBER, SHE'S

10 AGREED TO TRY TO GET THAT TRANSLATION, TRANSCRIPTION DONE ON THE

11 TELEPHONE CALL WE DISCUSSED.  SHE'S INDICATING THAT SHE WON'T BE

12 ABLE TO GET IT DONE UNTIL FRIDAY.  AND WHAT I'M ASKING IS -- I

13 NEED TO BE ABLE TO CROSS-EXAMINE, USE THAT TO CROSS-EXAMINE

14 1218.

15        **THE COURT:**  IF SHE GETS IT DONE BY FRIDAY -- I DON'T

16 KNOW WHY CAN'T SHE DO IT SOONER.  THIS IS TUESDAY.

17        **MR. CHAZIN:**  SHE SAID SHE'S IN COURT ALL DAY TODAY.

18 THIS IS THE TEXT I GOT.  SHE'S IN COURT ALL DAY TODAY.  ONCE SHE

19 STARTS ON IT, SHE WON'T BE ABLE TO GET IT DONE UNTIL FRIDAY.

20        **THE COURT:**  I'LL CONSIDER WHAT YOU'RE SAYING, BUT I'D

21 APPRECIATE IF YOU WOULD TELL HER THAT THE JUDGE WOULD LIKE HER

22 TO DO IT SOONER.

23        **MR. CHAZIN:**  I'VE ALREADY TOLD HER I WOULD LIKE TO DO

24 IT SOONER.  MAYBE IT MIGHT HELP HAVING THE JUDGE.

25        **THE COURT:**  TELL HER I MAY HAVE HER COME IN TO

1    EXPLAIN IT TO ME.  I WANT HER TO DO IT SOONER, IF POSSIBLE.  I

2    AM CONSIDERING YOUR REQUEST.  I WON'T DENY IT.  I WANT TO SEE

3    HOW REASONABLE IT IS AT THE TIME.  THANK YOU.

4              **MR. LEUNG:**  THANK YOU.

5              **MR. CHAZIN:**  THANK YOU.

6                   (SIDEBAR DISCUSSION CONCLUDED, RECESS

7                   TAKEN.)

8              **THE COURT:**  ALL RIGHT.  PLEASE BE SEATED.  LET'S GO

9    BACK TO WORK.

10             WE HAD TO EXCUSE A FEW PEOPLE.  IN ADDITION -- WELL,

11   FIRST, WHERE WAS MS. MERKIN SITTING?  WE NEED TO CALL SOMEONE TO

12   REPLACE MS. MERKIN.

13             **THE CLERK:**  SYLVIA REALI, R-E-A-L-I.

14             **THE COURT:**  GOOD MORNING.  IF YOU WILL SIT WHERE

15   MS. MERKIN WAS PLACED?  THANK YOU.

16             I THINK THE NEXT TO BE LET GO WAS MR. WATHEN.  SO

17   LET'S CALL A NAME FOR MR. WATHEN.

18             **THE CLERK:**  JACQUELINE PALHEGYI, P-A-L-H-E-G-Y-I.

19             **THE COURT:**  ALL RIGHT.  YOU CAN SIT RIGHT THERE.

20   MOVE OVER A LITTLE TO YOUR RIGHT.

21             HOW DO YOU PRONOUNCE THAT NAME?

22             **PROSPECTIVE JUROR PALHEGYI:**  "PALHEGYI."

23             **THE COURT:**  LIKE APOLOGY BUT JUST "POLOGY"?.

24             **PROSPECTIVE JUROR PALHEGYI:**  YEAH.  ALMOST.

25             **THE COURT:**  GOT IT.  OKAY.  ALL RIGHT.

```
 1              NOW TO REPLACE MR. HOVERMALE.

 2         THE CLERK:  OKAY.  DELANIE BUETTELL, B-U-E-T-T-E-L-L.

 3         THE COURT:  WELCOME.  HAVE A SEAT.

 4              NOW TO REPLACE MR. MONTOYA.

 5         THE CLERK:  ANN MARIE SNYDER, S-N-Y-D-E-R.

 6         THE COURT:  ALL RIGHT.  MS. SNYDER, YOU NEED TO SIT

 7    IN THAT SECOND SPOT THERE.  THANK YOU.

 8              AND WHILE WE'RE AT IT, MS. CARROLL, WE'RE GOING TO

 9    EXCUSE YOU BASED ON SOME OF YOUR PRIOR ANSWERS.  SO, PLEASE, GO

10    BACK TO THE JURY ASSEMBLY ROOM.  TELL THEM WHAT HAPPENED, AND

11    MAYBE THEY CAN USE YOU ON A DIFFERENT CASE.  THANK YOU.

12         PROSPECTIVE JUROR CARROLL:  THANK YOU.

13         THE COURT:  LET'S NOW REPLACE MS. CARROLL.

14         THE CLERK:  MARYLYNN MONTGOMERY, M-O-N-T-G-O-M-E-R-Y.

15         THE COURT:  MS. MONTGOMERY, HOW ARE YOU?

16         PROSPECTIVE JUROR MONTGOMERY:  GOOD.  THANK YOU.

17         THE COURT:  NOW WE ARE BACK TO A FULL COMPLEMENT.

18    LET ME ASK YOU FIVE WHO HAVE JUST JOINED US -- WHERE IS OUR

19    MICROPHONE, BY THE WAY?

20         THE CLERK:  ON THE SIDE TABLE BY THE THERMOSTAT.

21         THE COURT:  DO ANY OF YOU FIVE HAVE A HARDSHIP ISSUE

22    YOU WISH TO RAISE?  ALL RIGHT.  I SEE NO HANDS GO UP.  SO NOW WE

23    GO TO THE POSTER BOARD.  AND SINCE WE GOT IT TURNED RIGHT THERE,

24    WE HAD A FEW JOIN US RIGHT OVER THERE.  LET'S GO TO THEM.

25              PLEASE GO AHEAD.
```

1          **PROSPECTIVE JUROR REALI:**  MY NAME IS SYLVIA REALI.  I

2     LIVE IN NOVATO, SOME COLLEGE EDUCATION.  I AM A SENIOR TAX

3     ADVISER FOR H&R BLOCK, PART TIME.  I AM A MEMBER OF THE OUR LADY

4     OF LORETO FINANCE COMMITTEE, AND HELPING HANDS.  I'M A MEMBER OF

5     THE ITALIAN CATHOLIC FEDERATION.  AND I HAVE MEMBERSHIP IN A

6     COUPLE SENIOR CLUBS.

7          FOR HOBBIES I DO EMBROIDERY AND BABYSIT MY GRANDKIDS.

8     I'M A WIDOW.  MY CHILDREN ARE AGE 46, 45 AND 37.  MY SON WORKS

9     FOR GOLDEN GATE DISPOSAL.  ONE OF MY DAUGHTERS WORKS FOR

10    BIOMARIN PHARMACEUTICAL IN NOVATO, AND MY OTHER DAUGHTER WORKS

11    IN SAN JOSE FOR KEENAN AS A WORKER'S COMP ADJUSTER.

12          I HAVE BEEN ON TWO JURIES, ONE CRIMINAL, ONE CIVIL.

13    CRIMINAL CAME TO THE JURY.  THE CIVIL WAS SETTLED OUT OF COURT.

14    I HAVE NOT BEEN IN THE MILITARY OR LAW ENFORCEMENT, AND I'VE

15    NEVER BEEN A PARTY OR WITNESS IN COURT.

16          **THE COURT:**  THANK YOU.

17          WOULD YOU PLEASE PASS THE MICROPHONE TO MS. BUETTELL?

18          **PROSPECTIVE JUROR BUETTELL:**  HI.  I'M DELANIE

19    BUETTELL.  I LIVE IN MILL VALLEY.  I HAVE A BACHELOR'S DEGREE.

20    I AM AN ICU NURSE AT MARIN GENERAL HOSPITAL.  I BELONG TO

21    VARIOUS NURSING ORGANIZATIONS, AS WELL AS CALIFORNIA NURSING

22    UNION.

23          I LIKE TO TRAVEL.  I AM SINGLE.  I HAVE A 12-YEAR-OLD

24    DAUGHTER.

25          I HAVE NEVER BEEN ON A JURY, NEVER BEEN IN MILITARY

1   OR LAW ENFORCEMENT, AND NEVER BEEN A WITNESS OR A PARTY.

2           **THE COURT:**  THANK YOU.

3           MS. PALHEGYI.

4           **PROSPECTIVE JUROR PALHEGYI:**  JACQUELINE PALHEGYI.  I

5   LIVE IN SAN FRANCISCO.  I HAVE A BA AND A SECONDARY TEACHING

6   CREDENTIAL CURRENTLY, WORK FOR JEFFERSON UNIFIED HIGH SCHOOL

7   DISTRICT IN DALY CITY.  I AM A MEMBER OF CALIFORNIA TEACHERS'

8   ASSOCIATION.

9           DANCE, READING AND WRITING.  I AM SINGLE.  NO

10  CHILDREN.  I HAVE NEVER SERVED ON A JURY BEFORE, NEVER BEEN IN

11  THE MILITARY, AND I'VE NEVER BEEN A PARTY OR WITNESS IN COURT.

12          **THE COURT:**  THANK YOU.

13          NOW, LET'S PASS THE MICROPHONE OVER TO MS. SNYDER.

14          **PROSPECTIVE JUROR SNYDER:**  MY NAME IS ANN SNYDER.  I

15  LIVE IN MARTINEZ.  I HAVE SOME COLLEGE EDUCATION.  I'M CURRENTLY

16  WORKING FOR J.P. MORGAN CHASE IN THEIR COMPLIANCE REO

17  DEPARTMENT.  I AM CURRENTLY THE PRESIDENT AND A BOARD MEMBER OF

18  A NONPROFIT ORGANIZATION.  WE RAISE MONEY FOR BRAIN TUMOR

19  RESEARCH.  MY HOBBIES ARE RUNNING, WORKING OUT AND TRAVEL.

20          I'M MARRIED.  MY HUSBAND'S NAME IS LYNN, AND HE IS

21  RETIRED.  I HAVE A DAUGHTER WHO'S 32, AND SHE'S A STOCK BROKER.

22          I DO NOT HAVE ANY PRIOR JURY SERVICE.  I HAVE NOT

23  BEEN IN THE MILITARY, NOR IN LAW ENFORCEMENT.  I HAVE BEEN A

24  WITNESS ON NUMEROUS OCCASIONS FOR MY EMPLOYER OR PAST EMPLOYERS.

25          **THE COURT:**  IN WHAT KIND OF CASES?

1          **PROSPECTIVE JUROR SNYDER:**  MOST IS COLLECTIONS WORK.

2   I WORKED FOR WELLS FARGO FOR MANY YEARS.  I WAS THEIR OFFICER OF

3   RECORDS, SO I WOULD MAKE APPEARANCES IN COURT FOR THEM.

4          **THE COURT:**  ALL RIGHT.  THANK YOU.

5          COULD YOU PASS THE MICROPHONE OVER PLEASE TO

6   MS. MONTGOMERY?  ALL RIGHT.  MS. MONTGOMERY, CAN YOU SEE IT AT

7   THAT ANGLE, OR DO YOU WANT TO --

8          **PROSPECTIVE JUROR MONTGOMERY:**  MY NAME IS MARYLYNN

9   MONTGOMERY.  I LIVE IN RICHMOND.  I HAVE SOME COLLEGE.  I AM

10  CURRENTLY A SENIOR BENEFITS ADMINISTER FOR MILLIMAN.  I HAVE NO

11  ORGANIZATION, AFFILIATIONS.  MY HOBBY IS JUST HANGING OUT WITH

12  MY TEENAGE DAUGHTER BEFORE SHE FLIES THE COOP.

13         I HAVE BEEN SEPARATED FROM MY HUSBAND FOR THE LAST

14  TWO YEARS.  HE WORKS FOR THE U.S. POSTAL SERVICE.  MY DAUGHTER

15  IS 17.  SHE'S A SENIOR IN HIGH SCHOOL.

16         I HAVE BEEN SUMMONED FOR A JURY DUTY THREE TIMES.  I

17  SERVED ONCE IN A CIVIL TRIAL, AND IT DID GO TO VERDICT.  I HAVE

18  NOT BEEN IN THE MILITARY OR LAW ENFORCEMENT.  AS FAR AS PARTY TO

19  COURT, IT'S JUST ON TWO TRAFFIC VIOLATIONS THAT I HAD TO SHOW UP

20  TO COURT ON.

21         **THE COURT:**  ALL RIGHT.  NOW I ASK ALL FIVE OF YOU,

22  DID YOU HEAR THE QUESTIONS THAT I ASKED PREVIOUSLY ABOUT WHETHER

23  YOU KNEW ANY OF THE WITNESSES OR THE PARTIES IN THE CASE, ANYONE

24  THE COURTROOM?  DID YOU HEAR ALL THAT?  IF SO, TELL ME, WOULD

25  YOU HAVE HAD TO RAISE YOUR HAND FOR ANY OF THOSE QUESTIONS?  ALL

1   RIGHT.

2          DID YOU HEAR THE QUESTIONS ABOUT WHETHER YOU HAD

3   HEARD ANYTHING ABOUT THIS CASE OR -- JUST LET ME ASK YOU

4   DIRECTLY.  RAISE YOUR HAND IF YOU'VE EVER HEARD ANYTHING ABOUT

5   THIS CASE?  NO ONE IS RAISING THEIR HAND.  ALL RIGHT.

6          DO YOU KNOW ANY OF THE OTHER POTENTIAL JURORS OR ANY

7   OF THE COURT PERSONNEL?  RAISE YOUR HAND IF YOU DO, PLEASE.  NO

8   ONE IS RAISING THEIR HAND.  ALL RIGHT.

9          HOW ABOUT DO ANY OF YOU EVER WORK FOR LAW ENFORCEMENT

10  OR ANY OF YOUR RELATIVES WORK FOR LAW ENFORCEMENT?  IF SO, RAISE

11  YOUR HAND.  MS. SNYDER IS RAISING HER HAND.

12         MS. MONTGOMERY, YOU HAVE THE MICROPHONE.  TELL US

13  YOUR SITUATION.

14         **PROSPECTIVE JUROR MONTGOMERY:**  MY COUSIN, WHO IS LIKE

15  A SISTER TO ME, WORKS FOR THE SHERIFF'S DEPARTMENT.  SHE'S A

16  LIEUTENANT THERE.  WE DON'T TALK ABOUT ANY OF HER JOB

17  SITUATIONS.  IT'S JUST, YOU KNOW, CERTAIN INSTANCES THAT MAY

18  COME UP, BUT NO NAMES OR ANYTHING ARE DISCUSSED.  AND I DON'T

19  THINK IT WILL AFFECT MY -- YOU KNOW, MY BEING BIASED EITHER WAY.

20         **THE COURT:**  ALL RIGHT.  THANK YOU.

21         MS. SNYDER, LET'S PASS THE MICROPHONE TO YOU.  GO

22  AHEAD.

23         **PROSPECTIVE JUROR SNYDER:**  MY HUSBAND RETIRED FROM

24  THE MILITARY WHERE HE WAS A MEMBER OF THE SECRET SERVICE, AS

25  WELL AS THE MILITARY POLICE.

1              **THE COURT:**  ALL RIGHT.  YOU MEAN LIKE THE SECRET

2    SERVICE THAT PROTECTS THE PRESIDENT?

3              **PROSPECTIVE JUROR SNYDER:**  YES.

4              **THE COURT:**  DID HE WORK AT THE WHITE HOUSE, OR DID HE

5    WORK IN COUNTERFEITING OR WHAT?

6              **PROSPECTIVE JUROR SNYDER:**  HE WAS IN THE MILITARY AT

7    THE TIME.  HE WAS ASSIGNED WHEN KENNEDY WAS PRESIDENT.

8              **THE COURT:**  THAT EXPERIENCE, WILL THAT CAUSE YOU TO

9    BE BIASED IN THIS CASE?

10             **PROSPECTIVE JUROR SNYDER:**  NO.  HE COULD SHARE VERY

11   LITTLE WHAT HIS BACKGROUND IN THE MILITARY WAS WITH ME.  WE

12   DON'T TALK ABOUT IT.

13             **THE COURT:**  NONETHELESS, WILL YOU ABLE TO PUT THAT TO

14   ONE SIDE AND BE FAIR AND IMPARTIAL IN THIS CASE?

15             **PROSPECTIVE JUROR SNYDER:**  YES.

16             **THE COURT:**  THANK YOU.  ANYONE ELSE?

17             NEXT QUESTION -- I WANT TO MAKE SURE.  ANY -- IT'S

18   NOT JUST YOU, BUT ANY OF YOUR RELATIVES I'M ASKING THAT QUESTION

19   ABOUT.  ANY OF YOUR LOVED ONES IN LAW ENFORCEMENT.  RAISE YOUR

20   HAND.  ALL RIGHT.  I THINK WE NOW COVERED EVERYONE ON THAT.

21             HOW ABOUT VICTIM OF A CRIME?  ANY OF YOU THAT HAVE

22   JOINED US BEEN THE VICTIM OF A CRIME?

23             YES.  THE MICROPHONE GOES TO MS. PALHEGYI.

24             **PROSPECTIVE JUROR PALHEGYI:**  JUST A COUPLE OF MINOR

25   THINGS.  I HAD MY PURSE STOLEN ABOUT SIX YEARS AGO IN BERKELEY.

1    AND MY FAMILY'S CAR WAS STOLEN, I BELIEVE, ABOUT A YEAR AND A

2    HALF AGO.  BUT, AGAIN, I DON'T EXPECT THAT WOULD MAKE ME BIASED

3    IN EITHER DIRECTION.

4              **THE COURT:**  ALL RIGHT.  ANYONE ELSE?  OKAY.

5              HAVE ANY OF YOU EVER HAD A BAD EXPERIENCE WITH LAW

6    ENFORCEMENT?  IF SO, RAISE YOUR HAND.  I'M TALKING REALLY TO THE

7    FIVE OF YOU WHO HAVE JOINED US RECENTLY, BUT IF ANY OF THE REST

8    OF YOU HAVE REMEMBERED SOMETHING YOU SHOULD HAVE RAISED YOUR

9    HAND ON, OF COURSE, RAISE YOUR HAND.

10             ANY OF YOU HAD A BAD EXPERIENCE WITH LAW ENFORCEMENT?

11   NO ONE IS RAISING THEIR HAND.  ALL RIGHT.

12             NOW, SOMETIMES THIS HAPPENS; I HOPE IT DIDN'T.

13   BECAUSE WE HAD AN INTERRUPTION, I MAY HAVE FORGOTTEN TO GO BACK

14   AND ASK SOMETHING TO FOLLOW UP ON SOMEBODY THAT RAISED THEIR

15   HAND ON ONE OF THE PRIOR QUESTIONS.  DID I DO THAT?  DID

16   EVERYONE GET THEIR SAY IF YOU RAISED YOUR HAND?  ANYONE THAT I

17   OVERLOOKED BY ACCIDENT?  OKAY.  ALL RIGHT.  I GUESS WE CONTINUE

18   ON THEN.

19             JUST TO GIVE YOU ALL A HEADS UP, IT'S NOW 11:30.

20   ROUGHLY IN 45 MINUTES TO AN HOUR, I AM GOING TO GIVE YOU A SHORT

21   LUNCH BREAK.  IT WON'T BE AN HOUR.  THIS IS NOT A UNION THING

22   HERE.  IT'S A NON-UNION DEAL.  BUT I'M DOING IT SO IT WILL

23   REALLY GET YOU OUT OF HERE SOONER.  THAT'S THE ONLY REASON.  SO

24   WE WILL PROBABLY JUST TAKE LIKE HALF AN HOUR FOR LUNCH AND KEEP

25   AT IT.

1          I'M GUESSING ONLY TODAY, WE'LL GO TO AT LEAST

2     3:00 O'CLOCK.  SO FOR YOUR PLANNING PURPOSES, KEEP THAT IN MIND.

3     AND I CAN'T GUARANTEE YET THAT, 3:00 O'CLOCK.  I'LL KEEP YOU

4     POSTED AS WE GO ALONG.  OKAY.

5          DO ANY OF YOU HAVE SOME PERSONAL EXPERIENCE IN YOUR

6     LIFE, NOW THAT YOU KNOW SOMETHING ABOUT THAT CASE -- YOU MUST AT

7     LEAST BE ABLE TO GUESS WHAT THE CASE IS ABOUT.  IS THERE

8     ANYTHING IN YOUR PERSONAL BACKGROUND THAT -- SOME LIFE

9     EXPERIENCE THAT YOU'VE HAD THAT YOU FEEL THE LAWYERS OUGHT TO AT

10    LEAST KNOW ABOUT IT, EVEN IF YOU THINK IT CAN BE PUT TO ONE

11    SIDE?  THAT THEY OUGHT TO KNOW ABOUT IT?  IF SO, I WANT YOU TO

12    RAISE YOUR HAND.

13          MS. PUGH?  WHERE'S THE MICROPHONE?  PLEASE, WOULD YOU

14    TAKE IT OVER TO MS. PUGH?  ALL RIGHT.  LET'S HEAR FROM YOU

15    AGAIN.

16          **PROSPECTIVE JUROR PUGH:**  WELL, I WAS A WITNESS TO A

17    MURDER ABOUT TEN YEARS AGO IN SACRAMENTO, AND NOTHING HAS REALLY

18    COME OF IT.  I WAS QUESTIONED BY THE DETECTIVE -- BY A DETECTIVE

19    LAST YEAR, AND THEN I CAN'T REMEMBER IF IT WAS THE PROSECUTOR,

20    THE DEFENDING LAWYERS WANTED MY -- WANTED TO TALK TO ME AT THE

21    END OF LAST YEAR.  THEN WE WERE PLAYING PHONE TAG, AND THEN I

22    HAVEN'T HEARD FROM HER SINCE.  SO I ACTUALLY KIND OF FORGOT

23    ABOUT IT UNTIL NOW.

24          **THE COURT:**  SO THIS WAS A MURDER ON THE STREET, A

25    MURDER?

1          **PROSPECTIVE JUROR PUGH:**  YEAH.  I WAS LIVING IN

2   SACRAMENTO, AND THERE WAS TWO MEN FIGHTING IN, LIKE, THE YARD

3   NEXT TO MY HOUSE.  SO I CALLED THE POLICE, AND THEN IT ENDED UP

4   BEING THAT ONE OF THE GUYS WHO WAS FIGHTING ENDED UP KILLING THE

5   OTHER GUY, SO HE ENDED UP KIND OF DYING RIGHT NEXT TO MY PORCH.

6   BUT THEN NOTHING EVER CAME OF IT, AND I DON'T KNOW WHERE IT IS

7   OR WHAT'S GOING ON WITH IT.

8          **THE COURT:**  DID YOU SEE -- WAS IT A GUNSHOT, A KNIFE,

9   OR WHAT WAS THE WEAPON?

10         **PROSPECTIVE JUROR PUGH:**  I COULDN'T SEE ANYTHING, BUT

11  TALKING TO THE DETECTIVES WHO, YOU KNOW, QUESTIONED ME LIKE

12  RIGHT AFTER IT HAPPENED, EXPLAINED THAT MAYBE IT WAS A KNIFE,

13  JUST BECAUSE OF THE MOVEMENT OF THE HAND.  BUT I COULDN'T SEE

14  ANYTHING.

15         **THE COURT:**  ALL RIGHT.  NOW, HOW, IF AT ALL, WOULD

16  THAT AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL HERE IN THIS

17  CASE?

18         **PROSPECTIVE JUROR PUGH:**  I DON'T THINK IT WOULD

19  AFFECT ME, BUT I'M JUST KIND OF REMEMBERING IT'S STILL

20  OUTSTANDING.  I DON'T THINK IT WOULD AFFECT ME EITHER WAY.

21         **THE COURT:**  ALL RIGHT.  I KNOW ENOUGH ABOUT OUR CASE

22  TO TELL YOU THIS CASE HAS NOTHING TO DO WITH THAT.  SO CAN YOU

23  PUT THAT OUT OF YOUR MIND AND DECIDE THIS CASE FAIR AND SQUARE

24  ON THE FACTS PRESENTED HERE IN THE COURT?

25         **PROSPECTIVE JUROR PUGH:**  YEAH, DEFINITELY.

1        **THE COURT:**  ALL RIGHT.  ANYONE ELSE?  ALL RIGHT.

2   LET'S GO TO THE BACK ROW AND TO MR. LAUFF.

3        **PROSPECTIVE JUROR LAUFF:**  I HAD A FRIEND WHOSE CAR

4   WAS STOLEN.  IT WAS STOLEN IN BERKELEY, FOUND THREE OR FOUR DAYS

5   LATER.  I GUESS THE PEOPLE HAD JUST GONE ON A JOYRIDE WITH IT.

6   IT WAS FULL OF GARBAGE WHEN THEY FOUND IT.

7        **THE COURT:**  ALL RIGHT.  WILL THAT AFFECT YOUR ABILITY

8   TO BE A FAIR AND IMPARTIAL JUROR IN THIS CASE?

9        **PROSPECTIVE JUROR LAUFF:**  I DON'T BELIEVE SO.

10        **THE COURT:**  ALL RIGHT.  ANYONE ELSE?  YES?  LET'S

11   PASS THE MIC DOWN TO MR. MILLS.

12        **PROSPECTIVE JUROR MILLS:**  THANKS.  I FORGOT.  I MIGHT

13   AS WELL BRING IT UP NOW.  I WORK ON CARS, AND I HAVE HAD MANY

14   FRIENDS' CARS STOLEN AND PARTED OUT.  NOT MINE, LUCKILY.  I

15   THINK I'M OKAY.  I DON'T THINK IT AFFECTS ME TOO MUCH IN THIS

16   CASE.

17        **THE COURT:**  ALL RIGHT.  AGAIN, THE KEY QUESTION IS

18   CAN YOU -- YOU'VE GOT TO SUBTRACT THAT OUT OF YOUR MIND, DO A

19   PROFESSIONAL AND CLINICAL JOB HERE OF EVALUATING THE EVIDENCE

20   PRESENTED, AND IT EITHER MEASURES UP TO THE BURDEN OF PROOF OR

21   IT DOESN'T.  CAN YOU DO THAT?

22        **PROSPECTIVE JUROR MILLS:**  SURE.

23        **THE COURT:**  ALL RIGHT.  ANYONE ELSE?  NO ONE IS

24   RAISING THEIR HAND.  ALL RIGHT.  I'M GOING TO ASK YOU A

25   DIFFERENT SET OF QUESTIONS.  AND I NEED TO PREFACE THIS WITH --

1   YOU KNOW, JUST COMES AS SECOND NATURE TO ME, AND HAVING BEEN A

2   LAWYER FOR A LONG TIME AND SO FORTH, BUT I THINK MOST OF YOU

3   KNOW THIS, BUT LET'S BE REAL CLEAR.

4           WHAT IS THE ROLE OF A JURY IN A TRIAL?  THEN I HAVE

5   TO MAKE SURE THAT YOU ARE PREPARED TO AND THINK YOU COULD CARRY

6   OUT THAT ROLE.

7           THE ROLE OF A JURY IN THE TRIAL IS TO DECIDE THE CASE

8   ON BEHALF OF THE UNITED STATES.  YOU WOULD BE DELEGATED THE DUTY

9   TO DECIDE THE CASE.  AND WHEN I SAY "THE UNITED STATES," I MEAN

10  YOUR COUNTRY.  I DON'T MEAN THE PROSECUTION.  I MEAN, JUST LIKE

11  I AM A UNITED STATES JUDGE, YOU WOULD BE A JURY DELEGATED BY

12  YOUR COUNTRY TO DECIDE THIS CASE.  AND JUST AS I TAKE AN OATH TO

13  UPHOLD THE LAW AND CARRY OUT THE LAW AS CONGRESS HAS WRITTEN IT,

14  YOU WOULD HAVE TO DO THE SAME, AND YOU WOULD TAKE AN OATH TO BE

15  FAIR IN EVALUATING THE EVIDENCE, WITHOUT BIAS, AND TO, IN FACT,

16  PAY CLOSE ATTENTION TO THE EVIDENCE AND THEN EVALUATE AT THE END

17  WHETHER THE GOVERNMENT HAD PROVEN EACH AND EVERY ELEMENT OF THE

18  OFFENSE, COUNT BY COUNT, BEYOND A REASONABLE DOUBT.

19          IF THE ANSWER TO THAT IS YES AS TO A COUNT, THEN YOUR

20  DUTY WOULD BE TO RETURN A VERDICT OF GUILTY.  IF THE ANSWER TO

21  THAT IS NO, THE GOVERNMENT HAD FALLEN EVEN A LITTLE SHORT OF THE

22  PROOF BEYOND A REASONABLE DOUBT, EVEN ON JUST ONE ELEMENT OF A

23  COUNT, THEN YOUR DUTY WOULD BE TO ACQUIT AS TO THAT COUNT.

24          SO THIS IS A -- THIS IS THE WAY OUR SYSTEM WORKS, IS

25  THAT THE JURY TAKES AN OATH TO UPHOLD THE LAW IN THE SENSE OF

1  CARRYING OUT THE LAW AND FOLLOWING THE LAW AS I GIVE IT TO YOU,

2  AND NOT APPLYING WHATEVER -- IF YOU DON'T LIKE THE LAW, THAT'S

3  TOO BAD.  JUST LIKE THERE ARE A FEW LAWS I DON'T THINK ARE SO

4  GOOD, I STILL APPLY AND I UPHOLD THEM BECAUSE CONGRESS HAS

5  PASSED THEM, AND IT'S MY DUTY TO UPHOLD THEM, JUST AS IT WOULD

6  BE YOUR DUTY TO UPHOLD OR CARRY OUT ANY LAW THAT CONGRESS HAS

7  PASSED.  I WILL TELL YOU AT THE END OF THE CASE WHAT THOSE LAWS

8  THAT APPLY HERE ARE.

9          SO THAT IS THE GENERAL CHARGE, A VERY IMPORTANT

10  CHARGE, AND THAT'S -- IT'S VERY IMPORTANT FOR YOU TO KNOW, EVEN

11  THOUGH YOU WILL HEAR A LOT ABOUT ME TODAY, REALLY, YOU ARE THE

12  ONES THAT WOULD DECIDE THIS CASE.  AND IT'S IMPORTANT TO LET

13  THAT SINK IN.  IT'S NOT THE JUDGE WHO DECIDES IT, IT'S THE JURY.

14          ALL RIGHT.  NOW, ONE OF THE THINGS ABOUT UPHOLDING

15  THE LAW IS THERE'S SOME IMPORTANT RIGHTS IN OUR CONSTITUTION

16  THAT I WANT YOU TO KNOW ABOUT.  IF YOU DISAGREE WITH THESE SO

17  MUCH THAT YOU COULD NOT UPHOLD THESE, THEN YOU SHOULD NOT SERVE

18  ON THE JURY.  I WANT TO GO OVER THESE BECAUSE THESE ARE

19  FUNDAMENTAL THINGS THAT APPLY TO EVERYBODY IN THIS COUNTRY.

20          SO, FIRST, YOU'VE HEARD THAT THE GOVERNMENT HAS MADE

21  THESE ACCUSATIONS IN THIS CASE, OR THAT THE GRAND JURY HAS

22  RETURNED AN INDICTMENT OF CERTAIN COUNTS.  ALL RIGHT.  THAT

23  MEANS NOTHING, ZERO, IT IS NO PROOF OF ANYTHING, NO PROOF OF

24  ANYTHING.  IT IS THE OCCASION -- IT'S THE PROCEDURAL WAY IN

25  WHICH WE COME TO COURT TO SEE IF THE GOVERNMENT CAN PROVE ITS

1   CASE.

2           NOW, I HAVE LEARNED OVER THE YEARS THAT THERE'S SOME

3   PEOPLE OUT THERE WHO SAY THE FOLLOWING, THEY SAY THINGS LIKE

4   THIS:  WELL, IF THEY WEREN'T GUILTY OF SOMETHING, THEY WOULDN'T

5   HAVE BEEN INDICTED, OR IF THEY WEREN'T GUILTY OF SOMETHING, THE

6   GOVERNMENT WOULDN'T HAVE PROSECUTED THEM.

7           DO ANY OF YOU THINK THAT IS THE -- IS THAT THE WAY --

8   BE HONEST.  RAISE YOUR HAND IF THAT'S THE WAY YOU THINK.  NO ONE

9   IS RAISING THEIR HAND.

10          I WANT TO EMPHASIZE -- OKAY, MS. PUGH.  YOU ARE

11  RAISING YOUR HAND.  LET'S GIVE YOU THE MICROPHONE MIC.  I WANT

12  TO HEAR WHAT YOU HAVE TO SAY.

13          **PROSPECTIVE JUROR PUGH:**  I THINK MY INTUITIVE

14  RESPONSE IS YES, I SORT OF ASSUME THAT.  IF YOU ARE A

15  LAW-ABIDING CITIZEN, I DON'T KNOW, CHANCES ARE YOU WON'T BE, YOU

16  KNOW, WHERE SOME PEOPLE ARE, WHICH IS IN JAIL OR BEING ACCUSED

17  OF SOMETHING.

18          BUT I ALSO KNOW THAT THERE ARE CASES WHERE PEOPLE

19  ARE -- THEY ARE -- THEY'RE INNOCENT, AND THEN THEY CAN WALK AWAY

20  AND EVERYTHING IS FINE.  I GUESS I HAVE MIXED FEELINGS ABOUT

21  THAT.

22          **THE COURT:**  LET'S TALK ABOUT THAT FOR A SECOND.

23          I CAN GUARANTEE YOU THE FOLLOWING, THAT THERE ARE

24  INNOCENT PEOPLE WHO SOMETIMES GET PROSECUTED, MAYBE BECAUSE OF A

25  WITNESS WHO HAS MADE AN ERROR.  IT WOULD BE ANY NUMBER OF

1   INNOCENT REASONS WHY IT HAPPENS, BUT IT DOES HAPPEN.

2            AND, ALSO, THERE ARE TIMES WHEN, WHETHER OR NOT THE

3   PERSON IS ACTUALLY INNOCENT OF NOT, THE GOVERNMENT JUST CAN'T

4   PROVE THE CASE, AND THE DUTY OF THE JURY IS TO ACQUIT IN THAT

5   CASE.  NOW, FOCUS ON THAT.

6            DO YOU THINK THE MERE FACT GOING INTO THIS TRIAL --

7   DOES THE GOVERNMENT HAVE THE EDGE IN THIS CASE, AS FAR AS YOU'RE

8   CONCERNED?  WITHOUT HAVING HEARD ANY EVIDENCE, ARE YOU LEANING

9   IN FAVOR OF THE GOVERNMENT?

10           **PROSPECTIVE JUROR PUGH:**  YES AND NO.  I GUESS I THINK

11   THAT IF SOMEONE HAS COME THIS FAR WITH THE FEDERAL GOVERNMENT

12   CHARGING THEM WITH SOMETHING, IT SEEMS LIKE SOMETHING HAPPENED

13   AND I -- BUT THEN I GUESS I HAVE TO KNOW THAT IF I WAS CALLED TO

14   SERVE ON A JURY, THEN I WOULD, YOU KNOW, DISMISS FEELINGS AND

15   EMOTIONS AND BE FAIR, IMPARTIAL AND UNBIASED, AND LISTEN TO THE

16   FACTS.  THAT'S WHAT I WOULD LIKE TO BELIEVE ABOUT MYSELF.

17           **THE COURT:**  WELL, THE DUTY OF THE JURY IS TO WEIGH

18   THE EVIDENCE.  FIRST OF ALL, THE DEFENDANT IS PRESUMED INNOCENT.

19   DO YOU UNDERSTAND THAT?

20           **PROSPECTIVE JUROR PUGH:**  YES.

21           **THE COURT:**  ALL RIGHT.  SO THAT MEANS WE START WITH A

22   CLEAN SLATE.  AND IF WE JUST GOT UP RIGHT NOW AND WENT INTO THE

23   JURY ROOM AND SAID, HAS THE GOVERNMENT PROVEN ITS CASE?  THE

24   ANSWER WOULD HAVE TO BE NO, THEY HAVEN'T PROVEN ANYTHING YET.

25   IT'S A CLEAN SLATE.  DO YOU ACCEPT THAT?

1          **PROSPECTIVE JUROR PUGH:**  YES, DEFINITELY.  YES.

2          **THE COURT:**  ALL RIGHT.  SO YOU HAVE TO BE ABLE TO

3   TELL ME THAT YOU'RE GOING TO PUT OUT OF YOUR MIND ALL OF THIS

4   STUFF ABOUT, WELL, HOW COME IT GOT THIS FAR.  IT GOT THIS FAR

5   BECAUSE IN THIS CASE MR. NOCHEZ IS STANDING ON HIS

6   CONSTITUTIONAL RIGHT TO A TRIAL AND IS ASSERTING THAT HE IS

7   INNOCENT AND SAYING TO THE GOVERNMENT, PROVE IT.

8          HE HAS A RIGHT TO DO THAT, AND HE HAS A RIGHT TO BE

9   PRESUMED INNOCENT UNTIL THE GOVERNMENT AT THAT TABLE CAN PRODUCE

10  ENOUGH EVIDENCE TO SHOW BEYOND A REASONABLE DOUBT THAT HE'S

11  GUILTY.  THAT IS FUNDAMENTAL IN THIS COUNTRY.

12         NOW, DO YOU ACCEPT THAT?

13         **PROSPECTIVE JUROR PUGH:**  NO, I DO.  AND THANK YOU FOR

14  REMINDING ME.  IT IS DEFINITELY FUNDAMENTAL, YES.

15         **THE COURT:**  ALL RIGHT.  NOW, I HAVE TO ASK YOU AGAIN:

16  AS THE CASE GOES ALONG, ARE YOU GOING TO BE CUTTING THE

17  GOVERNMENT SLACK AND SAYING, OH, THAT CASE GOT THIS FAR, THERE

18  MUST BE SOMETHING TO IT?  YEAH, THEY DIDN'T PROVE THAT, BUT HE

19  MUST BE GUILTY OF SOMETHING, SO I'M GOING TO SAY GUILTY?

20         **PROSPECTIVE JUROR PUGH:**  NO, NO.  I THINK IF I WAS IN

21  THE JURY, THEN I WOULD JUST -- I WOULD DO THE BEST I COULD DO.

22  I'M JUST SAYING I GUESS THESE -- MY ORIGINAL HUNCH WAS, YEAH,

23  MAYBE I HAVE THESE STRANGE FEELINGS ABOUT BEING IN THE COURTROOM

24  WITH SOMEONE WHO'S BEING CHARGED WITH SOMETHING.  BUT IF I WAS

25  CALLED TO SERVE AS A JURY MEMBER, THEN I WOULD DEFINITELY DO MY

1   PART --

2             **THE COURT:**  WILL YOU HOLD THE GOVERNMENT TO ITS

3   BURDEN OF PROOF?

4             **PROSPECTIVE JUROR PUGH:**  YES.

5             **THE COURT:**  ALL RIGHT.  THANK YOU.

6             ANYONE ELSE HAVE ANY DOUBTS ABOUT THAT?  YOU MIGHT AS

7   WELL -- I WANT YOU TO TELL ME NOW.  IF YOU GET SELECTED, IT'S

8   TOO LATE.  YOU'VE GOT TO TELL US NOW.  ANYONE HAVE DOUBTS ABOUT

9   THAT?  ALL RIGHT.  NO ONE IS RAISING THEIR HAND.  OKAY.

10            WELL, LET'S GO TO ANOTHER RELATED THING.  IT'S

11  IMPLIED IN WHAT I SAID, BUT LET'S BE VERY CLEAR.  IN OUR COUNTRY

12  AND UNDER OUR CONSTITUTION, NO DEFENDANT EVER HAS TO PROVE

13  THEY'RE INNOCENT.  THE GOVERNMENT HAS TO PROVE THEY'RE GUILTY.

14            THERE ARE A LOT OF VERY GOOD REASONS WHY THAT'S TRUE.

15            SOME PEOPLE DON'T HAVE THE WHEREWITHAL TO COME UP

16  AGAINST THE RESOURCES.  I DON'T NEED TO GET INTO ALL THE

17  REASONS.  THERE ARE JUST A LOT OF GOOD REASONS THAT THE PEOPLE

18  WHO WROTE THE CONSTITUTION PUT IT IN THERE.

19            THE GOVERNMENT'S GOT TO PROVE THE CASE.  THE

20  DEFENDANT NEVER HAS TO PROVE THEY'RE INNOCENT.  THE GOVERNMENT

21  MUST PROVE THEY'RE GUILTY.  ANYONE HAVE PROBLEMS WITH THAT?

22  ANYONE THINK THEY DON'T QUITE AGREE WITH THAT PRINCIPLE?  RAISE

23  YOUR HAND.  EVEN IF YOU THINK YOU HAVE TROUBLE WITH IT, RAISE

24  YOUR HAND.  ALL RIGHT.  NO ONE IS RAISING THEIR HAND.

25            SO, RELATED TO THAT IS NO DEFENDANT EVER HAS TO

1   TESTIFY BECAUSE THEY DON'T HAVE -- THEY HAVE A RIGHT NOT TO

2   TESTIFY.  THEY DON'T HAVE TO GET UP THERE AND PROVE THEY'RE

3   INNOCENT.  IT'S THE GOVERNMENT THAT'S GOT TO PROVE THEY'RE

4   GUILTY.  DOES EVERYBODY UNDERSTAND THAT?

5          SO IT OFTEN IS THE CASE THAT A DEFENDANT WILL NOT

6   TESTIFY BECAUSE THEY DON'T HAVE TO PROVE THE -- THEY DON'T HAVE

7   TO PROVE INNOCENCE.  IT'S THE GOVERNMENT THAT'S GOT TO PROVE

8   GUILT.  DO YOU ALL SEE THAT?  THIS IS PART OF THE LAW YOU WOULD

9   BE SWORN TO UPHOLD.  YOU MUST UPHOLD THIS LAW, TOO.  ANYONE

10  GOING TO HAVE TROUBLE FOLLOWING THAT LAW?  NO ONE IS RAISING

11  THEIR HAND.

12         IF A DEFENDANT IN A TRIAL DOES NOT TESTIFY, I WILL

13  TELL YOU AT THE END OF THE TRIAL YOU CANNOT HOLD IT AGAINST HIM

14  IN ANY WAY.  YOU CAN'T ASSUME THEY'RE NOT TESTIFYING BECAUSE

15  THEY'RE GUILTY, NO WAY.  YOU CANNOT HOLD IT AGAINST THE

16  DEFENDANT OR DRAW ANY ADVERSE INFERENCE BECAUSE A DEFENDANT DOES

17  NOT TESTIFY.  SOME PEOPLE SAY IF THEY'RE INNOCENT, THEY WOULD

18  HAVE TESTIFIED.  THAT'S EXACTLY WHY WE HAVE THE LAW THAT SAYS

19  YOU CAN'T DO THAT.  WILL YOU UPHOLD THAT LAW?  IF ANYBODY THINKS

20  THEY WOULD HAVE TROUBLE UPHOLDING THAT PART OF THE CONSTITUTION,

21  RAISE YOUR HAND.  NO ONE IS RAISING THEIR HAND.

22         LET'S PUT IT DIFFERENTLY.

23         DO ANY OF YOU THINK THIS -- OR EVEN ENTERTAIN THE

24  THOUGHT THAT MAYBE IF SOMEBODY IS INNOCENT, THEY WOULD GET UP

25  THERE ON THE STAND AND TESTIFY?  RAISE YOUR HAND IF THAT'S -- IF

1    THAT'S WHAT YOU THINK.  NOBODY IS RAISING THEIR HAND.  SEE, I

2    TOLD YOU WHAT THE ANSWER WAS AT FIRST.  NOW YOU'RE NOT RAISING

3    YOUR HAND.

4              I WANT YOU TO BE HONEST AND TELL ME IF YOU WOULD HAVE

5    TROUBLE.  YOU MUST FOLLOW THAT PART OF THE LAW, TOO.  ALL RIGHT,

6    OKAY.  ALL RIGHT.

7              NOW, HERE'S ANOTHER THING:  SOMETIMES WE HAVE LAW

8    ENFORCEMENT OFFICERS TESTIFY.  IN FACT, IT HAPPENS IN ALMOST

9    EVERY CASE, AND THERE ARE PEOPLE OUT THERE WHO WILL GIVE EXTRA

10   CREDIBILITY TO A LAW ENFORCEMENT OFFICER, AND THERE ARE OTHER

11   PEOPLE OUT THERE WHO WOULD GIVE NEGATIVE CREDIBILITY TO A LAW

12   ENFORCEMENT OFFICER.  IT GOES BOTH WAYS.  I'VE SEEN IT BOTH

13   WAYS.

14             I REMEMBER ONE POTENTIAL JUROR SAID, WELL, INSTANT

15   CREDIBILITY COMES WITH THE BADGE.  THAT WAS HIS PHRASE, INSTANT

16   CREDIBILITY COMES WITH THE BADGE.  I'VE HAD OTHER PEOPLE WHO

17   SAID, I'VE HAD SO MANY BAD EXPERIENCES WITH LAW ENFORCEMENT, I

18   WOULDN'T BELIEVE MUCH OF WHAT ANY OF THEM SAID.

19             SO I HAVE TO EXPLAIN TO YOU THAT LAW ENFORCEMENT

20   OFFICERS ARE TREATED JUST LIKE ANY OTHER WITNESS.  YOU CANNOT

21   GIVE THEM EXTRA CREDIBILITY BECAUSE THEY WORK FOR THE FBI OR THE

22   IMMIGRATION AND CUSTOMS, OR ANY OTHER LAW ENFORCEMENT AGENCY.

23   AND YOU CAN'T GIVE THEM ANY CREDIBILITY EITHER.  YOU HAVE TO

24   TAKE EACH ONE OF THEM BASED ON WHAT COMES OUT FROM THEIR ACTUAL

25   EXPERIENCE AND TESTIMONY.

```
1            FOR EXAMPLE, IF SOMEBODY HAS HAD A LOT OF TRAINING IN

2   EYEWITNESS IDENTIFICATION AND/OR TRAINING IN OBSERVING WHAT

3   HAPPENED IN A FAST MOVING EVENT, YOU COULD TAKE THAT TRAINING

4   INTO ACCOUNT FOR WHATEVER IT WAS WORTH IN THE TESTIMONY.  BUT

5   YOU COULDN'T JUST ASSUME RIGHT UP FRONT THAT A POLICE OFFICER IS

6   A BETTER EYEWITNESS THAN THE ORDINARY PERSON.  YOU HAVE TO HEAR

7   IT OUT IN EACH CASE.

8            SO WITH THAT LITTLE EXPLANATION, I NEED TO ASK YOU:

9   WOULD ANY OF YOU GIVE MORE OR LESS CREDIBILITY TO A WITNESS

10  BECAUSE THEY WERE WORKING FOR LAW ENFORCEMENT?  IF YOU THINK THE

11  ANSWER TO THAT IS YES, YOU NEED TO RAISE YOUR HAND.  PLEASE LET

12  ME KNOW.  NO ONE IS RAISING THEIR HAND.

13           NOW, I KNOW -- SEE, I'VE TOLD YOU WHAT THE LAW IS,

14  AND I DON'T WANT YOU JUST SITTING THERE THINKING, NOW HE'S TOLD

15  ME, I DON'T WANT TO RAISE MY HAND BECAUSE I WOULD BE

16  EMBARRASSED.  IT'S OKAY TO BE A LITTLE EMBARRASSED, BECAUSE IF

17  YOU HAVE TROUBLE WITH THIS ASPECT OF THE LAW, I NEED TO

18  UNDERSTAND IT.  THE LAWYERS NEED TO UNDERSTAND IT.  I NEED TO

19  PUT IT OUT THERE.

20           AGAIN, WOULD ANY OF YOU HAVE TROUBLE FOLLOWING THAT

21  ASPECT OF THE LAW?  ALL RIGHT.  NO ONE IS RAISING THEIR HAND.

22  OKAY.

23           ANY OF YOU SPEAK SPANISH?  KEEP YOUR HANDS UP THERE

24  FOR A MOMENT.  THE REASON I ASK THAT QUESTION IS THAT YOU'RE

25  GOING TO BE HEARING SOME TAPES -- RIGHT?  SPANISH IS GOING TO BE
```

1  USED, RIGHT?

2          **MR. LEUNG:**  YES, YOUR HONOR.

3          **THE COURT:**  ALL RIGHT.  NOW, I THINK I'M RIGHT ON

4  THIS.  I'LL INVITE THE LAWYERS TO TELL ME IF I'M RIGHT ABOUT

5  THIS.  WE'RE GOING TO HAVE INTERPRETATIONS PROVIDED TO YOU BY

6  WITNESSES WHOSE QUALIFICATIONS YOU WOULD HAVE TO JUDGE IN THE

7  END, BUT WHO WILL AT LEAST TESTIFY THAT THEY CAN TRANSLATE AND

8  TELL YOU WHAT IS THERE.  AND YOU'RE OWN -- YOU'RE NOT SUPPOSED

9  TO LISTEN TO IT YOURSELF AND SAY, NO, I KNOW SPANISH AND I

10  DISAGREE WITH THAT INTERPRETATION.  AM I RIGHT ABOUT THAT,

11  COUNSEL?

12          **MR. LEUNG:**  THAT'S CORRECT, YOUR HONOR.

13          **THE COURT:**  THAT IS RIGHT, MR. CHAZIN?

14          **MR. CHAZIN:**  I BELIEVE THAT'S CORRECT, YOUR HONOR.

15          **THE COURT:**  ALL RIGHT.

16          **MR. CHAZIN:**  I THINK I SHOULD JUST SAY THAT THERE IS

17  GOING TO BE SOME EVIDENCE THAT'S GOING TO BE SUBMITTED AND THAT

18  CLAIMS THAT THE TAPES, AUDIO RECORDINGS, PURPORT TO SAY

19  SOMETHING, BUT IT'S GOING TO BE UP TO THE JURORS WHETHER OR NOT

20  THAT EVIDENCE IS CREDIBLE AND BELIEVABLE.

21          **THE COURT:**  THAT PART IS TRUE.  BUT THOSE ARE ALL

22  FROM THE TRANSLATORS THAT YOU WILL BE HAVING TO EVALUATE.  BUT

23  WHAT MIGHT BE PROBLEMATIC IS IF YOU WERE TO THINK, OH, I

24  DISAGREE A LITTLE BIT WITH THAT INTERPRETATION.  SO LET'S -- FOR

25  THOSE OF YOU WHO RAISED YOUR HAND A MINUTE AGO -- SO THAT'S

1    MS. -- I'M SORRY, MY EYES ARE GOING ON ME -- TORREGROSA.  YOU

2    SPEAK SPANISH?  HOW WELL DO YOU SPEAK SPANISH?

3              **PROSPECTIVE JUROR TORREGROSA:**  I'M FLUENT IN SPANISH

4    AND OTHER LANGUAGES.

5           **THE COURT:**  OKAY.  WHAT'S YOUR FIRST LANGUAGE?

6           **PROSPECTIVE JUROR TORREGROSA:**  IT WAS GERMAN, BUT I

7    DON'T REMEMBER IT ANYMORE.

8           **THE COURT:**  ALL RIGHT.  THEN WHAT WAS YOUR SECOND

9    LANGUAGE?

10             **PROSPECTIVE JUROR TORREGROSA:**  A COMBINATION OF

11   ENGLISH AND SPANISH.

12          **THE COURT:**  ALL RIGHT.  ARE YOU GOING TO BE ABLE TO

13   KEEP STRAIGHT WHAT IT IS THAT YOU HEAR YOURSELF ON THE TAPE AND

14   KEEP THAT SEPARATE AND DISTINCT FROM WHAT THE INTERPRETERS SAY

15   IS ON THE TAPE?  AND THERE MIGHT BE MORE THAN ONE

16   INTERPRETATION.  I DON'T KNOW.  I THINK FOR THE MOST PART THERE

17   WILL ONLY BE -- I THINK THE LAWYERS ARE GOING TO AGREE.  BUT

18   THERE MIGHT BE SOME INSTANCES WHERE THERE ARE TWO TYPES OF

19   DISPUTES, ONE IS WHAT WAS SAID AND THE OTHER IS WHO SAID IT.

20          THAT'S IF THOSE DISPUTES DO COME UP, THE WHO SAID IT

21   PART IS GOING TO BE FOR THE JURY TO DECIDE, BUT I MAY HAVE TO

22   INSTRUCT YOU ON KEEPING STRAIGHT AND FOLLOWING WHAT THE OFFICIAL

23   INTERPRETERS SAY, AT LEAST THE ONES THAT ARE SPEAKING FROM THE

24   WITNESS STAND VERSUS WHAT YOUR OWN INDEPENDENT OPINION IS; DO

25   YOU SEE THE PROBLEM?

1    **PROSPECTIVE JUROR TORREGROSA:** I SEE THE PROBLEM, AND

2    I CAN DEFINITELY KEEP EVERYTHING DISTINCT, BUT IT WOULD BE -- I

3    HAVEN'T BEEN IN THAT SITUATION BEFORE WHERE MY INTERPRETATION OF

4    SOMETHING HAS TO COME SECOND TO SOMEONE ELSE'S INTERPRETATION.

5    IF I THINK MY INTERPRETATION IS CORRECT, I'VE BEEN IN SITUATIONS

6    WHERE MY INTERPRETATION -- AND MOSTLY THIS IS WITH SCIENCE

7    STUFF, BUT WHERE MY INTERPRETATION AND OTHER PEOPLE'S

8    INTERPRETATIONS ARE DIFFERENT, AND WE DISCUSS WHAT THOSE

9    DIFFERENCES ARE TO SOME COMMON AGREEMENT ABOUT WHAT THE

10   INTERPRETATION IS.

11       FROM WHAT YOU'VE SAID SO FAR, THAT'S NOT THE

12   SITUATION THAT HAPPENS HERE, THAT THERE'S AN INTERPRETATION,

13   THEN AN INTERPRETER HAS GIVEN -- WELL, TAKE POEMS, FOR EXAMPLE.

14   TRANSLATORS WILL TRANSLATE POEMS, AND SOME OF THEM ARE GOOD

15   TRANSLATORS, AND SOME OF THEM ARE POOR TRANSLATORS. THEY

16   HAVEN'T -- I CAN DEFINITELY KEEP THINGS DISTINCT. I MEAN, I

17   KNOW WHAT THE DIFFERENT LINES ARE.

18       **THE COURT:** ALL RIGHT. I WANT YOU TO FINISH YOUR

19   THOUGHT. I DON'T WANT TO INTERRUPT YOU.

20       **PROSPECTIVE JUROR TORREGROSA:** WOULD THERE BE AN

21   OPPORTUNITY, IF I UNDERSTOOD SOME WORDS OR SOMETHING TO BE VERY

22   MUCH AT ODDS WITH HOW THE INTERPRETER INTERPRETED IT, WOULD

23   THERE BE AN OPPORTUNITY TO CHECK IN ABOUT THAT?

24       I SHOULD ALSO QUALIFY THIS BY SAYING I CAN EASILY

25   ACCEPT THAT SOMEONE ELSE KNOWS A PARTICULAR SITUATION OR SLANG

1    OR INTENT MUCH BETTER THAN I DO, AND THAT I WOULD ACCEPT THAT

2    THEIR VERSION OF IT IS, WITH THE BENEFIT OF ALL OF THAT, AND,

3    THEREFORE, I WOULD NOT BE THE AUTHORITY, AND I COULD LET THAT

4    INTERPRETATION BE THE AUTHORITATIVE INTERPRETATION.  BUT IS

5    THERE SOME OPPORTUNITY FOR CHECKING IN ABOUT THAT?

6         **THE COURT:**  WELL, HERE'S THE ONLY WAY THAT COULD

7    POSSIBLY WORK, AND I THINK I'M RIGHT ABOUT THIS, IS IF YOU GOT

8    TO THE POINT IN THE TRIAL WHERE YOU FELT THAT THE INTERPRETATION

9    WAS DIFFERENT FROM YOUR OWN IN A MATERIAL WAY AND THAT YOU FELT

10   STRONGLY ABOUT IT, THE THING YOU WOULD HAVE TO DO THEN, WITHOUT

11   TALKING TO ANY OF THE OTHER JURORS -- YOU WOULD NOT DO THAT; YOU

12   COULD NOT TELL THEM YOUR PRIVATE THINKING ON THAT.  YOU WOULD

13   HAVE TO BRING IT TO MY ATTENTION.  THEN I WOULD BRING IT TO THE

14   LAWYERS' ATTENTION, AND WE MIGHT HAVE TO HAVE A HEARING ON THIS.

15   I DON'T KNOW.

16        I DON'T KNOW EVEN THAT THIS IS GOING TO COME UP, BUT

17   THAT WOULD BE THE OPPORTUNITY.  THINGS LIKE THAT DO HAPPEN FROM

18   TIME TO TIME, AND THE ONLY WAY TO DEAL WITH IT WOULD BE TO HAVE

19   YOU TELL US THAT THAT IS ON YOUR MIND, AND LET US THEN TRY TO

20   GIVE YOU INSTRUCTIONS ON WHAT TO DO AND SEE IF YOU WOULD BE ABLE

21   TO FOLLOW THOSE INSTRUCTIONS.

22        ONE THING FOR SURE I WOULD TELL YOU IS YOU COULD NOT

23   DISCUSS YOUR OWN PRIVATE INTERPRETATIONS WITH OTHER MEMBERS OF

24   THE JURY.

25         **PROSPECTIVE JUROR TORREGROSA:**  THAT SEEMS VERY

1    REASONABLE, ESPECIALLY GIVEN THAT ALL THE JURORS WOULD NEED TO

2    HAVE THE SAME INFORMATION AND THE SAME ACCESS TO THE

3    INFORMATION.  AND I WOULD SAY MY FIRST LANGUAGE IS ENGLISH,

4    BECAUSE THAT'S THE CULTURE THAT IS MOST DOMINANT IN MY LIFE.  SO

5    I WOULD DEFINITELY DEFER TO SOMEONE WHOSE FIRST LANGUAGE WAS

6    SPANISH.

7            **THE COURT:**  ALL RIGHT.  WHO RAISED THEIR HAND OVER

8    HERE?  YES.  IS THAT IS MRS. NATHAN?

9            **PROSPECTIVE JUROR NATHAN:**  I DON'T SPEAK SPANISH, BUT

10   AS THIS CAME UP, I'VE READ MANY TRANSLATIONS, JUST AS YOU WERE

11   SAYING, OF THE SAME POEM OR SHORT STORY, AND THEY'RE OFTEN QUITE

12   DIFFERENT IN SUBTLE WAYS.  SO, THE ONLY THING THAT WOULD CONCERN

13   ME IN A TRIAL LIKE THIS WOULD BE IF THE DEFENDANT DIDN'T FEEL

14   THE TRANSLATION WAS CORRECT.  YOU KNOW, I WOULD FEEL BETTER IF

15   THERE WERE MORE THAN ONE PERSON TRANSLATING SOMETHING THAT WE

16   HEAR SO THAT, YOU KNOW, THAT THERE'S SOME CORROBORATION.

17            I MEAN, I CAN'T TELL YOU HOW MANY BOOKS I'VE READ OF

18   DIFFERENT PEOPLE TRANSLATING THE SAME POEM.  SO I'M SORRY TO

19   BRING IT UP, BECAUSE I FEEL VERY POSITIVE ABOUT BEING A JUROR,

20   AND I WANT TO BE A JUROR HERE, BUT THAT WOULD REALLY CAUSE A

21   PROBLEM FOR ME IF THE DEFENDANT --

22            **THE COURT:**  LOOK, IT'S PART OF THE BURDEN OF PROOF

23   THAT -- I MEAN, YOU DON'T SPEAK SPANISH, RIGHT?

24            **PROSPECTIVE JUROR NATHAN:**  NO.

25            **THE COURT:**  SO THE GOVERNMENT HAS THE BURDEN OF

1   PROOF, AND THE GOVERNMENT IS THE ONE THAT'S GOT TO CONVINCE YOU

2   THAT THE WORDS THAT ARE SPOKEN IN SOME FOREIGN LANGUAGE SAY WHAT

3   THE GOVERNMENT SAYS THEY'RE GOING TO SAY.  THEY'VE GOT TO PROVE

4   THAT IN THE NORMAL WAY WITH WITNESSES UNDER OATH THAT CAN SAY,

5   HERE ARE MY QUALIFICATIONS AS A TRANSLATOR, I'VE LISTENED TO

6   THIS, I'VE DONE A LITTLE TRANSCRIPT, HERE'S WHAT I THINK IT

7   MEANS, THIS IS THE WAY I INTERPRET IT.  THEN THE OTHER SIDE GETS

8   TO CROSS-EXAMINE AND TRY TO SHOW FLAWS OR INCONSISTENCIES, MAKE

9   THEIR POINTS.

10          **PROSPECTIVE JUROR NATHAN:**  OKAY.

11          **THE COURT:**  SO BOTH SIDES CAN HAVE THEIR OPPORTUNITY

12   TO MAKE THEIR CASE ON THIS.  BUT, AT THE END OF THE DAY, IF YOU

13   HAVE RESERVATIONS, IF YOU DON'T THINK THE GOVERNMENT HAS

14   CONVINCED YOU AS TO WHAT THOSE WORDS MEAN AND THAT'S -- AND

15   THERE WILL BE OTHER EVIDENCE, I'M SURE IN THE CASE, BUT IF THAT

16   WOULD BE THE THING ON WHICH THE WHOLE CASE TURNED FOR YOU,

17   THEN -- AND YOU'RE NOT CONCERNED ABOUT THAT, THEN THERE WOULD BE

18   A DOUBT IN YOUR MIND AS TO WHETHER OR NOT THE GOVERNMENT HAS

19   CARRIED IT.

20          SO THE GOVERNMENT HAS GOT TO PROVE UP ITS CASE.  I

21   DON'T KNOW ALL THE EVIDENCE THAT THE GOVERNMENT IS GOING TO

22   PRESENT.  IT MAY BE I'M OVERBLOWING THIS, BUT I KNOW FROM

23   PRETRIAL HEARINGS, THERE ARE GOING TO BE SOME OF THESE TAPE

24   RECORDINGS, THESE RECORDINGS, AND THAT THEY'RE ALL IN SPANISH.

25          SO HOW ARE YOU GOING TO UNDERSTAND IT WITHOUT

1    TRANSLATIONS?  WELL, THAT IS ONE OF THE BURDENS THAT THE

2    GOVERNMENT HAS TO PROVE TO YOU WHAT IT SAYS.  YOU DON'T TAKE THE

3    GOVERNMENT'S WORD FOR IT.  THEY'VE GOT TO PROVE IT.  SO IF THEY

4    DON'T PROVE IT, AND THAT MATTERS, THEN THEY LOSE.  IF THEY DO

5    PROVE IT, IF THEY CARRY THEIR BURDEN OF PROOF ON EVERYTHING

6    THEY'RE SUPPOSED TO, THEN YOUR DUTY WOULD BE TO CONVICT.

7             SO THAT'S THE BEST I CAN TELL YOU.

8             **PROSPECTIVE JUROR NATHAN:**  OKAY.

9             **THE COURT:**  THERE ARE LOTS OF THINGS IN LIFE JURORS

10   HAVE TO SORT OUT THAT THEY DON'T KNOW.

11            FOR EXAMPLE, SOME HIGHLY TECHNICAL THING ABOUT HOW

12   EARTHQUAKES HAPPEN.  THEY ARE GOING TO HAVE PEOPLE WHO TRANSLATE

13   THE SCIENCE, COME IN HERE AND TELL US ABOUT EARTHQUAKES, OR, YOU

14   KNOW, WHAT THE BUILDING DESIGN OUGHT TO BE.  YOU PROBABLY

15   WOULDN'T KNOW THAT EITHER, BUT YOU WOULD LISTEN TO THE EVIDENCE,

16   AND SEE HOW STRONG IT IS, AND WHETHER IT'S CONVINCING TO YOU.

17   THAT'S THE ONLY WAY WE CAN DO IT.  THAT'S THE ONLY WAY I KNOW

18   HOW TO DO IT.  WE'RE GOING TO PROCEED IN THE NORMAL WAY.

19            **PROSPECTIVE JUROR NATHAN:**  THANK YOU.

20            **THE COURT:**  CAN YOU DO THAT?  IS THAT OKAY?

21            **PROSPECTIVE JUROR NATHAN:**  YEP.

22            **THE COURT:**  WHO RAISED THEIR HAND OVER HERE?

23   SOMEBODY RAISED THEIR HAND ABOUT SPEAKING SPANISH.

24            YOUR NAME AGAIN?  DON'T TELL ME.  IT'S MRS. ORTA.

25   WHAT YOU WOULD LIKE TO SAY?

1          **PROSPECTIVE JUROR ORTA:**  FOR ME IT'S GOOD, SEE, IF I

2   HAVE TRANSLATION, BECAUSE I DON'T UNDERSTAND ONE HUNDRED PERCENT

3   WHAT YOU SAID.  I NEED TRANSLATIONS.

4          **THE COURT:**  YOU WHAT?

5          **PROSPECTIVE JUROR ORTA:**  I NEED TO KNOW WHAT

6   INFORMATION MEAN IF I BE PART OF JURY.  I DON'T UNDERSTAND ONE

7   HUNDRED PERCENT WHAT THE CASE.

8          **THE COURT:**  ARE YOU SAYING YOU WOULD HAVE TROUBLE

9   EVEN FOLLOWING THE ENGLISH PART?

10          **PROSPECTIVE JUROR ORTA:**  YES, I DO.

11          **THE COURT:**  WELL, THAT IS -- THAT WOULD BE -- COULD

12   BE A PROBLEM, BECAUSE THAT'S WHAT THE WHOLE CASE IS GOING TO BE

13   PRESENTED IN, FOR THE MOST PART IS ENGLISH.  YOU'LL BE HEARING

14   THESE TRANSLATIONS -- YOU'LL BE HEARING THE TAPES, BUT

15   90 PERCENT OF THE EVIDENCE IS GOING TO BE IN ENGLISH.

16          **PROSPECTIVE JUROR RUCKER:**  WHY COULDN'T SHE

17   PARTICIPATE IN THE TRANSLATION THAT'S BEING PRESENTED IN HER

18   LANGUAGE?

19          **THE COURT:**  BECAUSE THE LAW WON'T ALLOW THAT.  A

20   JUROR IS NOT HERE TO BE A SWORN WITNESS.  A JUROR IS HERE TO

21   LISTEN CAREFULLY TO THE EVIDENCE THAT'S PRESENTED BY THE

22   GOVERNMENT AND ANSWER ONE QUESTION:  HAS THE GOVERNMENT CARRIED

23   ITS BURDEN OF PROOF BEYOND A REASONABLE DOUBT.  AND IN THE JURY

24   ROOM, THEY CANNOT START TESTIFYING -- FOR EXAMPLE, IF YOU WERE

25   IN AN AUTOMOBILE ACCIDENT CASE AND ONE OF THE JURORS SAID, I WAS

1    AT THAT INTERSECTION, AND I REMEMBER THAT STOP SIGN IS IN THE

2    WRONG PLACE.  NO, HE CAN'T DO THAT.  IF THAT WASN'T PROVEN, THE

3    JUROR CAN'T SAY THAT.  SO A JUROR CAN'T SAY, I LISTENED TO THAT

4    TAPE, AND HERE'S WHAT I THINK IT MEANS.

5            THAT'S A GOOD QUESTION.  YOU GET AN A FOR ASKING THE

6    QUESTION.  BUT THE ANSWER IS NO, YOU CAN'T DO THAT.

7            ALL RIGHT.  I WANT TO GO BACK.

8            YOU'RE TELLING US THAT YOU, MS. ORTA, THAT YOU THINK

9    YOU ARE GOING TO HAVE TROUBLE JUST UNDERSTANDING THE ENGLISH

10   PART.

11           **PROSPECTIVE JUROR ORTA:**  SOMETIMES I HAVE TROUBLE

12   WITH -- I UNDERSTAND ENGLISH.  SOMETIMES I HAVE TROUBLE.

13           **THE COURT:**  OF WHAT HAS HAPPENED HERE TODAY, SINCE WE

14   CAME BACK IN IN THE LAST HOUR OR SO, HAVE YOU UNDERSTOOD

15   EVERYTHING?

16           **PROSPECTIVE JUROR ORTA:**  SOME.

17           **THE COURT:**  SOME?

18           **PROSPECTIVE JUROR ORTA:**  YES.

19           **THE COURT:**  WHAT PERCENTAGE DO YOU THINK YOU

20   UNDERSTAND?

21           **PROSPECTIVE JUROR ORTA:**  MAYBE 70 PERCENT.

22           **THE COURT:**  SEVENTY PERCENT.

23           **PROSPECTIVE JUROR ORTA:**  YES.  WE ARE HERE BECAUSE WE

24   ARE FOR THE JURY, UH-HUH.  WE PICK PEOPLE FOR JURY DUTY, MAYBE

25   FOR 15 DAYS, FOR TWO WEEKS.

1          **THE COURT:**  ALL RIGHT.  I'M GOING TO -- I MAY HAVE

2    SOME MORE QUESTIONS FOR YOU ON THAT IN A MOMENT.

3          **PROSPECTIVE JUROR ORTA:**  OKAY.

4          **THE COURT:**  ALL RIGHT.  ANYONE ELSE SPEAK SPANISH?

5    OKAY.  ALL RIGHT.  I WANT TO CHANGE THE SUBJECT, BUT I'M GOING

6    TO MAKE A NOTE.

7          ALL RIGHT.  I FOUND IN THIS JOB THAT OCCASIONALLY

8    THERE ARE SOME GOOD CITIZENS WHO DO NOT LIKE TO SIT IN JUDGMENT

9    ON OTHER PEOPLE.  AND THEY FIND THAT WHEN PUSH COMES TO SHOVE,

10   AND IT GETS RIGHT DOWN TO THEM, THEY SAY, I CAN'T DO IT, I CAN'T

11   DECIDE WHO'S TELLING THE TRUTH OR WHO'S NOT TELLING TRUTH, OR I

12   DON'T WANT TO BE THE ONE -- I HEARD IT PHRASED MANY WAYS.  IT

13   COULD BE ONLY GOD CAN SIT IN JUDGMENT ON SOMEONE.  I'VE HEARD

14   THAT SAID.  SOMEBODY WILL SAY, IF ONE PERSON SAYS THE LIGHT WAS

15   GREEN, AND THE OTHER PERSON SAYS THE LIGHT WAS RED, WHO AM I TO

16   SAY ONE OF THEM IS NOT TELLING THE TRUTH?

17         SO SOME PEOPLE ACTUALLY DON'T LIKE TO SIT IN JUDGMENT

18   ON SOMEBODY ELSE.  ANY OF YOU FEEL THAT WAY?  IF YOU DO, YOU

19   SHOULD RAISE YOUR HAND.  ALL RIGHT.  BECAUSE, THINK ABOUT IT.

20   THAT'S WHAT A JURY DOES.  IT HAS TO SIT IN JUDGMENT ON SOMEBODY

21   ELSE.  ALL RIGHT.  NO ONE IS RAISING THEIR HAND ON THAT ONE.

22   OKAY.

23         ALL RIGHT.  I TOLD YOU EARLIER WHAT THE JURY DOES.

24   THE JURY LISTENS TO THE EVIDENCE RIGHT HERE IN THE COURTROOM.

25   THEY DON'T GO OFF AND DO ANY HOMEWORK.  THEY DON'T GO ON THE

1   INTERNET.  THEY DON'T DO RESEARCH.  THEY MAKE THE GOVERNMENT

2   PRESENT THE EVIDENCE HERE IN COURT.  YOU'LL GET

3   CROSS-EXAMINATION.  EVERYTHING THAT YOU NEED TO DECIDE THE CASE

4   WILL BE PRESENTED HERE IN COURT.

5          IN FACT, NOTHING MORE CAN BE CONSIDERED.  YOU CANNOT

6   GO OUTSIDE AND DO HOMEWORK, TALK TO YOUR LOVED ONES, TALK TO

7   EACH OTHER.  YOU HAVE TO -- YOU CAN TALK TO EACH OTHER IN THE

8   DELIBERATIONS, YES, BUT YOU CAN'T BE GETTING INFORMATION THAT

9   WILL BE THE FACTUAL BASIS FOR DECIDING THE CASE EXCEPT RIGHT

10  HERE IN COURT.

11         YOU SIT BACK AND SEE WHAT THE LAWYERS PRESENT.  THEN

12  YOU DECIDE IS THAT GOOD ENOUGH OR NOT TO CONVICT SOMEBODY.  THE

13  ANSWER IS, IF IT'S YES, BEYOND A REASONABLE DOUBT, THE DUTY IS

14  TO CONVICT.  IF THE ANSWER IS NO, IT'S NOT QUITE GOOD ENOUGH,

15  THE DUTY IS TO ACQUIT.

16         SO IS THERE ANY REASON WHY ANY OF YOU COULD NOT CARRY

17  OUT THAT FUNCTION IN A FAIR AND IMPARTIAL WAY?  RAISE YOUR HAND

18  IF YOU HAVE DOUBTS ABOUT THAT.  ALL RIGHT.  NO ONE IS RAISING

19  THEIR HAND.

20         ANYBODY HAVE A MEDICAL CONDITION -- WE KNOW ABOUT

21  YOUR PREGNANCY.  BUT ANYONE HAVE A MEDICAL CONDITION THAT WOULD

22  MAKE IT UNCOMFORTABLE OR HARD FOR YOU TO SIT IN THIS TRIAL?

23         MS. STORNETTA, I NEED TO GET YOU THE MICROPHONE.

24  WHO'S GOT THE MIC, PLEASE?

25         **PROSPECTIVE JUROR STORNETTA:**  I COULD JUST TALK LOUD.

1            **THE COURT:**  NO, NO.  DON'T DO THAT.  I WOULD RATHER

2   YOU HAVE THE MIC.  ALL RIGHT.  GO AHEAD.

3            **PROSPECTIVE JUROR STORNETTA:**  I HAVE A LOWER BACK

4   ISSUE.  IF IT'S ALREADY ALL RIGHT THAT I'M DOING THIS AND

5   STRETCHING MY LEGS --

6            **THE COURT:**  NO PROBLEM.

7            **PROSPECTIVE JUROR STORNETTA:**  AND OCCASIONALLY

8   STANDING UP.

9            **THE COURT:**  FINE.

10           **PROSPECTIVE JUROR STORNETTA:**  REALLY?

11           **THE COURT:**  NOT A PROBLEM.

12           **PROSPECTIVE JUROR STORNETTA:**  OKAY.

13           **THE COURT:**  NOT A PROBLEM.  SOMETIMES I MIGHT EVEN DO

14  THAT.  AT LEAST I'VE REACHED THE POINT IN LIFE WHERE THERE'S ANY

15  NUMBER OF PROBLEMS.  NECK PROBLEMS, BACK PROBLEMS, KNEE

16  PROBLEMS.  THAT'S PERFECTLY FINE.  OKAY.

17           ANY OF YOU HAVE LEGAL TRAINING?  LEGAL TRAINING?  NO.

18  OKAY.  GOOD.

19           HERE'S A QUESTION FOR YOU.  IF YOU THINK YOU'RE GOOD

20  AT LISTENING TO THE DETAILS OF SOMETHING, RAISE YOUR HAND, IF

21  YOU ARE A GOOD DETAIL PERSON.  KEEP YOUR HAND UP.  I WANT THE

22  LAWYERS TO BE ABLE TO SEE WHO'S RAISING THEIR HAND.  ALL RIGHT.

23  THESE ARE THE DETAIL PEOPLE.  OKAY.

24           NOW, WHO AMONG YOU WOULD BE THOSE THAT THINK YOU'RE

25  NOT GOOD AT DETAILS, THAT YOU'RE -- YOU KNOW, AFTER FIVE OR SIX

1   POINTS, YOU GET KIND OF CONFUSED, AND YOU'RE NOT SO GOOD AN

2   KEEPING -- YOU CAN DO THE PICTURE, BUT NOT THE DETAILS?  RAISE

3   YOUR HAND IF YOU ARE IN THAT CATEGORY.  OKAY, MS. PUGH.  REALLY,

4   YOU'RE THE ONLY ONE.

5          OKAY.  HOW ABOUT THIS:  ANY OF YOU HAVE TROUBLE

6   GETTING HERE AT 7:30 IN THE MORNING?  I'M SORRY.  7:45 IN THE

7   MORNING?  RAISE YOUR HAND FOR A MINUTE.  OKAY.

8          MS. NATHAN?

9          **PROSPECTIVE JUROR NATHAN:**  I CAN DO IT.

10         **THE COURT:**  I KNOW IT'S HARD.

11         **PROSPECTIVE JUROR NATHAN:**  YEAH.

12         **THE COURT:**  YOU ARE LIKE MY SON.  YOU ARE ONE OF

13  THOSE PEOPLE WHO LIKE TO SLEEP IN, MAYBE.  BUT I PROMISE YOU

14  THIS SYSTEM IS GOOD.  IT GIVES YOU HALF THE DAY TO CARRY ON WITH

15  THE REST OF YOUR LIFE, AND IT -- BUT WILL YOU DO IT?

16         **PROSPECTIVE JUROR NATHAN:**  I WILL TRY.

17         **THE COURT:**  WHO ELSE?  ANYONE ELSE RAISE THEIR HAND?

18  MS. YU, WILL YOU DO IT ANYWAY?

19         **PROSPECTIVE JUROR YU:**  (NODS HEAD.)

20         **THE COURT:**  THANK YOU.

21         THOSE OF YOU WHO RAISED YOUR HAND, WILL YOU DO IT

22  ANYWAY?  WILL YOU BE HERE?  IF YOU'RE NOT, WE HAVE TO WAIT FOR

23  YOU.  ALL RIGHT.  THANK YOU.  OKAY.  WE'RE GOING TO TAKE A BREAK

24  IN A MINUTE, BUT I HAVE ONE LAST ROUND OF QUESTIONS THAT

25  SOMETIMES I ASK, AND SO LET'S DO THIS:

1          IF THERE'S A BOOK OR A MOVIE, BOOK OR A MOVIE -- THE

2   ANSWER COULD BE NO, I DON'T LIKE MOVIES, I DON'T LIKE BOOKS.

3   BUT IF THERE'S SOMETHING LIKE THAT THAT YOU HAVE READ RECENTLY,

4   SAY WITHIN THE LAST SIX MONTHS, THAT REALLY YOU LIKED A LOT, YOU

5   VERY MUCH ENJOYED, SOMETIMES IT HELPS THE LAWYERS TO KNOW A

6   LITTLE BIT MORE ABOUT YOU, TO KNOW WHAT SOME OF THE THINGS YOU

7   HAVE FOUND INTERESTING.  LIKE IT MAY BE NATIONAL GEOGRAPHIC

8   MAGAZINE, OR IT COULD BE A MOVIE YOU SAW, OR SOME BOOK THAT IS A

9   GREAT BOOK.  DOESN'T EVEN HAVE TO BE GREAT BOOK, IT'S JUST ONE

10  YOU LIKED.

11          THEN THE SECOND QUESTION IS WHETHER OR NOT YOU THINK

12  YOU WOULD BE A GOOD JUROR, AND, IF SO, WHY.  OR IF YOU THINK YOU

13  WOULD NOT BE SUCH A GOOD JUROR, EXPLAIN WHY.  I'M GOING TO ASK

14  YOU TO DO THAT.

15          SINCE YOU HAVE THE MIC, MS. STORNETTA -- THIS IS LIKE

16  A 20-SECOND ANSWER.  WE'LL DO IT VERY QUICKLY.

17          GO AHEAD, MS. STORNETTA, YOU GO FIRST.

18          **PROSPECTIVE JUROR STORNETTA:**  OKAY.  THE BOOK I READ

19  RECENTLY I REALLY ENJOYED WAS, "THE BIBLE ACCORDING TO BIFF

20  CHRIST'S BEST FRIEND."  AND SECOND QUESTION WAS?

21          **THE COURT:**  WOULD YOU BE A GOOD JUROR, AND, IF SO,

22  WHY?

23          **PROSPECTIVE JUROR STORNETTA:**  I THINK I WOULD BE A

24  GOOD JUROR BECAUSE I'M SO CONSCIENTIOUS.

25          **THE COURT:**  GOOD.  I DON'T WANT ANYONE TO BE MODEST.

```
 1   IF YOU ARE CONSCIENTIOUS AND YOU KNOW THAT, SAY SO.

 2           MR. CUEVAS.

 3           PROSPECTIVE JUROR CUEVAS:  YES, I REALLY ENJOYED

 4   WATCHING THE MOVIE "DISTRICT 9." I FOUND THAT REALLY STIMULATING

 5   AND INTERESTING.

 6           THE COURT:  WHAT'S THAT ABOUT?

 7           PROSPECTIVE JUROR CUEVAS:  IT'S ABOUT AN ALIEN

 8   INVASION THAT DOESN'T QUITE HAPPEN, AND THE ALIENS ARE STUCK

 9   OVER SOUTH AFRICA.

10           THE COURT:  COULD I ASK A QUESTION?  DO YOU BELIEVE

11   IN UFO'S?

12           PROSPECTIVE JUROR CUEVAS:  NO, I DON'T.

13           THE COURT:  DO ANY OF YOU?  YOU'RE THE BURNING MAN,

14   RIGHT?  DO YOU BELIEVE IN UFO'S?  WE'LL COME TO YOU IN A MINUTE.

15           PROSPECTIV JUROR MILLS:  I QUESTION IT.

16           THE COURT:  LET'S GO TO MS. TURNER.

17           PROSPECTIVE JUROR TURNER:  A RECENT FILM I LIKED WAS

18   "THE WHITE LINE," AND IT'S A HISTORICAL DOCUMENTARY ABOUT AFTER

19   WORLD WAR I IN GERMANY WITH HITLER AND HOW HITLER CAME ABOUT.

20           YES, I THINK I WOULD BE A GOOD JUROR.  I'M

21   CONSCIENTIOUS AND VERY DETAILED.

22           MR. CHAZIN:  YOUR HONOR, I DIDN'T HEAR MR. CUEVAS --

23   DID HE ANSWER THE QUESTION ABOUT WHY HE WOULD BE A GOOD JUROR?

24           THE COURT:  I MAY HAVE INTERRUPTED YOU.  WOULD YOU BE

25   A GOOD JUROR?
```

1              **PROSPECTIVE JUROR CUEVAS:**  I BELIEVE I WOULD BECAUSE

2   I UNDERSTAND WHAT'S REQUIRED, AND I BELIEVE I CAN FOLLOW ALL OF

3   THE REQUIREMENTS.

4              **THE COURT:**  ALL RIGHT.  WE NOW GO TO MS. SIMS.

5              **PROSPECTIVE JUROR SIMS:**  MY DAUGHTER GAVE ME THE

6   FIRST SEASON OF "LOST" FOR CHRISTMAS, AND I SPENT ALL THIS TIME

7   CATCHING UP.  SO THAT'S ALL I HAVE DONE IN THE WAY OF MOVIES.

8              AND I THINK, YOU KNOW, I TRY TO BE FAIR IN MY LIFE;

9   HOPEFULLY, WOULD BE A GOOD JUROR.

10             **THE COURT:**  THANK YOU.

11             MS. DIAZ.

12             **PROSPECTIVE JUROR DIAZ:**  THE BOOK I JUST FINISHED WAS

13  "THE CURIOUS CASE OF BENJAMIN BUTTON." I REALLY ENJOYED THAT.

14             AS FAR AS BEING ON A JURY, I TRY TO BE FAIR.  TO BE

15  HONEST WITH YOU, I GET A LITTLE TOO NERVOUS.

16             **THE COURT:**  ALL RIGHT.  THAT'S FINE TO BE NERVOUS.

17  EVEN THOUGH YOU WOULD BE NERVOUS, WOULD YOU, WHEN YOU TAKE THE

18  OATH, WHICH IS TO BE FAIR AND IMPARTIAL TO BOTH SIDES, EVALUATE

19  THE EVIDENCE AND FOLLOW THE LAW, WOULD YOU DO THAT?

20             **PROSPECTIVE JUROR DIAZ:**  YES, I COULD, YES.

21             **THE COURT:**  YOUR POINT IS YOU WOULD BE A LITTLE

22  NERVOUS ABOUT CARRYING THAT OUT.  ALL RIGHT.  THAT'S A GOOD

23  POINT TO MAKE.

24             LET'S GO TO MS. PUGH.

25             **PROSPECTIVE JUROR PUGH:**  I CAN'T REMEMBER THE LAST

1   BOOK I READ.  I THINK IT'S BEEN ABOUT A YEAR, OR ACTUALLY

2   SEVERAL.  AND I DON'T REALLY WATCH MOVIES.

3          **THE COURT:**  IT COULD BE MOVIES OR TV PROGRAM.

4          **PROSPECTIVE JUROR PUGH:**  YOU KNOW, I DON'T REALLY

5   WATCH TV.  I WATCH THE NEWS.  THE MOST RECENT MOVIE I'VE SEEN,

6   MAYBE BECAUSE MY BOYFRIEND WANTED TO SEE IT WAS JUST "OFFICE

7   SPACE."  IT WAS ON TV, BUT I HAVEN'T SEEN A MOVIE IN A LONG

8   TIME.

9          **THE COURT:**  ALL RIGHT.  THANK YOU.

10          MS. YU.

11          **MR. CHAZIN:**  SHE DIDN'T SPEAK TO --

12          **THE COURT:**  OH.  WOULD YOU BE A GOOD JUROR?

13          **PROSPECTIVE JUROR PUGH:**  TO THE BEST OF MY ABILITY, I

14   WOULD JUST TRY HARD.  YES.

15          **THE COURT:**  YOU WOULD TRY HARD?  ALL RIGHT.  THANK

16   YOU.

17          MS. YU.

18          **PROSPECTIVE JUROR YU:**  FOR THE BOOK PROBABLY,

19   "ANIMALS IN TRANSLATION."

20          AND I WOULD PROBABLY BE A GOOD JUROR.  MAYBE.  I FEEL

21   REALLY FIDGETY.  I'M LIKE A BEACHED WHALE, BUT OTHER THAN THAT,

22   I WOULD TRY TO BE VERY IMPARTIAL AND YEAH.

23          **THE COURT:**  OKAY.  MR. MILLS.

24          **PROSPECTIVE JUROR MILLS:**  SHOULD I START WITH THE

25   ALIENS, OR CAN WE GET TO THE --

1          **THE COURT:** GO AHEAD. TELL ME HOW YOU FEEL ABOUT

2  ALIENS.

3          **PROSPECTIVE JUROR MILLS:** I JUST FEEL IT'S VERY

4  SELF-CENTERED FOR US TO THINK WE'RE ALONE IN THE UNIVERSE.

5  WHETHER WE ARE ALONE ON THIS PLANET, I DON'T KNOW. THERE IS

6  SOMETHING OUT THERE.

7          **THE COURT:** ALL THESE INSTANCES ON THE UFO CHANNEL,

8  DO YOU THINK THERE'S ANY TRUTH TO THAT STUFF?

9          **PROSPECTIVE JUROR MILLS:** THAT'S UNKNOWN TO ME. WHO

10 AM I TO JUDGE?

11          **THE COURT:** TELL US ABOUT THE -- THAT'S FOR A

12 DIFFERENT --

13          **PROSPECTIVE JUROR MILLS:** FAREED ZAKARIA'S "FUTURE OF

14 FREEDOM," RECENTLY.

15          IF I WOULD BE A GOOD JUROR? PROBABLY. I DON'T KNOW

16 THE CASE SPECIFICS. I'M A CAR FANATIC. IT MAKES ME NERVOUS.

17 IF SOMETHING HAPPENED, I NEED MY CARS, I DON'T KNOW WHAT I WOULD

18 DO.

19          **THE COURT:** THANK YOU.

20          LET'S GO TO MRS. TORREGROSA.

21          **PROSPECTIVE JUROR TORREGROSA:** IT'S ACTUALLY MS.

22          **THE COURT:** WHAT DID I SAY?

23          **PROSPECTIVE JUROR TORREGROSA:** MRS. THAT'S MY MOM.

24          **THE COURT:** I'M SORRY. MS.

25          **PROSPECTIVE JUROR TORREGROSA:** THE BOOK I'M READING

1  RIGHT NOW IS "THE LOST CITY OF Z."  IT'S THE LAST GREAT EXPLORER

2  OF SOUTH AMERICA.  IT'S AN AMAZING TALE.  I'M REALLY INTO IT.

3         WHETHER I WOULD MAKE A GOOD JUROR, I BELIEVE SO.  I'M

4  VERY MUCH INTO MEDITATION AND SORT OF AN EQUANIMITY ABOUT

5  REALITY IN LIFE AND OUR SITUATION AS WE PROCEED THROUGH IT.

6         **THE COURT:**  THANK YOU.

7         MS. MONTGOMERY?

8         **PROSPECTIVE JUROR MONTGOMERY:**  I HAVEN'T THE

9  OPPORTUNITY TO DO ANY PLEASURE READING.  I DO ENJOY JOHN GRISHAM

10 WHENEVER I GET A CHANCE.  I'VE READ MOST OF HIS BOOKS.  I DON'T

11 REALLY GET TO WATCH MOVIES TOO MUCH, AND TV NOT TOO MUCH.  I DO

12 TAPE MY SOAPS.  "ALL MY CHILDREN" AND "YOUNG AND THE RESTLESS."

13        AS FAR AS BEING A GOOD JUROR, I BELIEVE I CAN BE A

14 GOOD JUROR BECAUSE I'M FAIR AND OBJECTIVE.

15        **MR. CHAZIN:**  I'M SORRY.  I COULDN'T HEAR THAT.

16        **THE COURT:**  FAIR AND OBJECTIVE.  ALL RIGHT.

17        MR. RUCKER.

18        **PROSPECTIVE JUROR RUCKER:**  LAST GOOD BOOK I READ,

19 HIGHLY RECOMMEND IT, IS "THE RAPE OF EUROPA" ABOUT NAZI GERMANY

20 PILLAGING ART OUT OF EUROPE DURING WORLD WAR II AND ITS

21 SUBSEQUENT RECOVERY.

22        I SELFISHLY DID NOT WANT TO BE PICKED FOR THE JURY

23 BECAUSE I'M BUSY AT WORK, BUT NOW I'M RATHER INTRIGUED BEING

24 CHARGED WITH THIS RESPONSIBILITY.  SO I HOPE I'M NOT VIEWED AS

25 OVEREAGER.

1          **THE COURT:**  WOULD YOU BE A GOOD JUROR?

2          **PROSPECTIVE JUROR RUCKER:**  I BELIEVE SO, BECAUSE I'M

3    NOW INTERESTED.

4          **THE COURT:**  ALL RIGHT.  GREAT.

5          MR. LAUFF.

6          **PROSPECTIVE JUROR LAUFF:**  YES.  THE BOOK I'M WORKING

7    ON NOW IS "DOWN AND OUT IN PARIS AND LONDON" BY GEORGE ORWELL,

8    WHICH IS A BOOK ABOUT LIVING CONDITIONS IN PARIS AND LONDON

9    AROUND 1900.

10          AND I THINK I'D BE A GOOD JUROR.  I CAN BE FAIR.

11          **THE COURT:**  ALL RIGHT.  I READ THAT BOOK MANY YEARS

12    AGO.  I ENJOYED IT, TOO, THEN.

13          ALL RIGHT.  LET'S GO TO MR. MORGAN.

14          **PROSPECTIVE JUROR D. MORGAN:**  THE ONLY THING I WATCH

15    IS "CASH CAB."

16          **THE COURT:**  ISN'T THAT GREAT?  ISN'T THAT GREAT?

17          **PROSPECTIVE JUROR D. MORGAN:**  YEAH, I THINK I COULD

18    BE A FAIR JUROR.

19          **THE COURT:**  WHY WOULD THAT BE?

20          **PROSPECTIVE JUROR D. MORGAN:**  I DON'T KNOW.

21          **THE COURT:**  YOU VIEW YOURSELF AS FAIR PERSON?

22          **PROSPECTIVE JUROR D. MORGAN:**  YES.

23          **THE COURT:**  ALL RIGHT.  VERY WELL.

24          AND MS. KAUR.

25          **PROSPECTIVE JUROR KAUR:**  ACTUALLY, I DON'T READ BOOKS

1    VERY MUCH.

2            **THE COURT:**  ALL RIGHT.  NO PROBLEM.

3            WOULD YOU BE A GOOD JUROR?

4            **PROSPECTIVE JUROR KAUR:**  YEAH, I THINK SO.

5            **THE COURT:**  WHY WOULD YOU BE A GOOD JUROR?  WHY WOULD

6    YOU BE GOOD AS A JUROR, DO YOU THINK?

7            **PROSPECTIVE JUROR KAUR:**  I DON'T HAVE AN ANSWER.

8            **THE COURT:**  DO WHAT?

9            **PROSPECTIVE JUROR KAUR:**  I DON'T HAVE ANY ANSWER.

10           **THE COURT:**  ALL RIGHT.  OKAY.  IS YOUR ENGLISH GOOD?

11           **PROSPECTIVE JUROR KAUR:**  YEAH.

12           **THE COURT:**  HAVE YOU UNDERSTOOD EVERYTHING THAT WE'VE

13    TALKED ABOUT?

14           **PROSPECTIVE JUROR KAUR:**  YES.

15           **THE COURT:**  YOU HAVE?  ALL RIGHT.  VERY WELL.

16           OKAY.  LET'S PASS THE MICROPHONE DOWN TO MR. GEPHART

17    AND GO ACROSS THE ROOM, AND THEN WE'LL TAKE OUR BREAK.

18           MR. GEPHART.

19           **PROSPECTIVE JUROR GEPHART:**  THE LAST BOOK I READ IS

20    CALLED "KON TIKI."  IT'S ABOUT THE TRIALS AND TRIBULATIONS OF A

21    NORWEGIAN MAN NAMED THOR HEYERDAHL WHO SAILED ACROSS THE PACIFIC

22    OCEAN IN A BALSA WOOD RAFT IN THE '50'S TO TEST A THEORY THAT'S

23    WHERE THE ORIGINAL POLYNESIAN ISLANDERS CAME FROM WAS PERU

24    RATHER THAN SOUTHEAST ASIA.

25           ANYWAYS, I THINK I WOULD BE A GOOD JUROR BECAUSE I

1   BELIEVE THIS IS A NECESSARY PART OF OUR SYSTEM IN ORDER TO

2   UPHOLD THE LAW.

3          **THE COURT:**  MS. JOHNSON.

4          **PROSPECTIVE JUROR JOHNSON:**  THE LAST MOVIE I SAW WAS

5   "CHANGELING" ANGELINA JOLIE.  I REALLY ENJOYED THAT MOVIE.

6          I WOULD BE A GOOD JUROR BECAUSE I KNOW HOW TO CLOSE

7   MY EYES AND LISTEN TO EVIDENCE AND WEIGH EVERYTHING I HEAR.

8          **THE COURT:**  ALL RIGHT.

9          MS. NATHAN.

10          **PROSPECTIVE JUROR NATHAN:**  I AM SORT OF EMBARRASSED.

11   I'M READING "THE SCARLET LETTER."

12          AND, YES, I THINK I WOULD BE A FINE JUROR.  I BELIEVE

13   IN THE SYSTEM, AND I BELIEVE IN BEING A PART OF THE SYSTEM.

14          **THE COURT:**  GOOD.

15          MR. FUGELSETH.

16          **PROSPECTIVE JUROR FUGELSETH:**  THE LAST MOVIE I SAW

17   WAS "AVATAR."  I FOUND THE VISUAL SPECIAL EFFECTS REALLY

18   INTERESTING, HAVING BEEN A FILM MAJOR IN COLLEGE.

19          I THINK I WOULD BE A GOOD JUROR.  I COULD BE FAIR AND

20   IMPARTIAL AND HAVE A RESPECT FOR THE SYSTEM.

21          **THE COURT:**  VERY WELL.

22          MR. NOMBRADO.

23          **PROSPECTIVE JUROR NOMBRADO:**  I'M NOT FOND OF READING

24   BOOKS AND SEEING MOVES BECAUSE OF MY JOB.  I WORK 16 HOURS A

25   DAY. IF I'M SLEEPY UP HERE, MAYBE I DECIDE.

1      **THE COURT:** WHY WOULD YOU BE A GOOD JUROR?

2      **PROSPECTIVE JUROR NOMBRADO:** I'M NOT REALLY SURE, BUT

3  MAYBE I'M FAIR TO DECIDE WHATEVER.

4      **THE COURT:** ALL RIGHT. VERY WELL.

5      MS. YOSHI.

6      **PROSPECTIVE JUROR YOSHI:** THE LAST MOVIE I SAW, MORE

7  FOREIGN FILMS. I DON'T CARE TO -- WISH TO DELAY YOU ON THAT,

8  BUT JUST FOREIGN FILM IS WHAT I LIKE TO WATCH A LOT.

9      IN REGARDS TO A JUROR, I FEEL I'M A FAIR JUROR, CAN

10  BE FAIR. I DO LIKE -- AS TRAINING AS ACCOUNTANT, I DO EVALUATE

11  A LOT OF FACTS, AND THAT'S WHERE I APPROACH A LOT OF MY

12  LIFESTYLE, IS FACTS.

13      **THE COURT:** ALL RIGHT. OKAY.

14      **PROSPECTIVE JUROR NOVELLY:** PROBABLY A SHOW THAT I

15  WATCH MORE IS "SMALLVILLE." I DVR IT. THAT'S HOW I GET TO

16  WATCH IT. THAT'S PROBABLY ONE OF MY FAVORITES.

17      MY VALUE AS A JUROR, OR IF I WOULD BE GOOD AS A

18  JUROR, I'M VERY ANALYTICAL WITH WHAT I DO. I GUESS I'D ANALYZE

19  IT. AT THE SAME TIME I DEBATE MYSELF ON A LOT OF THE FACTS WITH

20  MY WORK. I'VE GOT TO GET IT RIGHT THE FIRST TIME.

21      **PROSPECTIVE JUROR SNYDER:** CURRENTLY, BELIEVE IT OR

22  NOT, THE BOOK IN MY POCKET IS "CATCHER IN THE RYE," BECAUSE I'VE

23  NEVER READ IT, AND THERE WAS SO MUCH PUBLICITY WHEN THE AUTHOR

24  DIED, I THOUGHT MAYBE SOMEDAY I WOULD HAVE GRANDCHILDREN THAT

25  WERE GOING TO READ IT, THAT I HAD TO BE ABLE TO SAY I READ THAT,

1   TOO.

2          I THINK I WOULD MAKE A GOOD JUROR.  I CONSIDER MYSELF

3   TO BE A VERY FAIR PERSON.

4          **THE COURT:**  ALL RIGHT.  THIS IS MRS. CLARKE.  THAT

5   WAS MRS. SNYDER IMMEDIATELY BEFORE THAT.

6          **PROSPECTIVE JUROR CLARKE:**  I RECENTLY FINISHED A BOOK

7   BY NORA EPHRON, WHICH IS A COLLECTION OF ESSAYS ABOUT AGING.

8   IT'S VERY FUNNY.  "THANK HEAVEN WE CAN LAUGH ABOUT IT."

9          I THINK I WOULD BE A GOOD JUROR BECAUSE I HAVE ALWAYS

10  BEEN CONCERNED ABOUT FAIRNESS, AND I'M VERY CONSCIENTIOUS.

11         **THE COURT:**  THANK YOU.

12         WE GO TO MS. SPATH.

13         **PROSPECTIVE JUROR SPATH:**  ONE RECENT BOOK I READ WAS

14  CALLED "GWEILO."  IT IS A MEMOIR BY MARTIN BOOTH WHO GREW UP IN

15  HONG KONG.  I RECENTLY VISITED CHINA AND HONG KONG.  IT WAS

16  INTERESTING.

17         I THINK I WOULD BE A FAIR JUROR, OR I WOULD BE A GOOD

18  JUROR BECAUSE I'M FAIR AND I HAVE A GOOD ATTENTION TO DETAIL.

19         **THE COURT:**  ALL RIGHT.  AND NOW WE GO TO

20  MS. PALHEGYI.

21         **PROSPECTIVE JUROR PALHEGYI:**  I MOST RECENTLY READ

22  "YEAR OF THE FLOOD," BY MARGARET ATWOOD.  IT'S KIND OF A

23  DYSTOPIAN NOVEL.  I THINK I WOULD BE A GOOD JUROR BECAUSE MOSTLY

24  AS A TEACHER I'M GOOD AT LISTENING TO LOTS OF DIFFERENT POINTS

25  OF VIEW.

1        **THE COURT:**  NEXT IS MS. BUETTELL.

2        **PROSPECTIVE JUROR BUETTELL:**  MOSTLY, I READ NURSING

3   JOURNALS.  AND WHEN I'M NOT DOING THAT, I READ TRAVEL GUIDES TO

4   DO BETWEEN WHEN I'M WORKING.

5        I THINK THAT I WOULD BE A GOOD JUROR BECAUSE IN MY

6   JOB I TAKE CARE OF A LOT OF DEATH ROW INMATES, AND I HAVE TO BE

7   IMPARTIAL TO THEM.  SO I'M PRETTY UNBIASED WITH A LOT OF --

8        **THE COURT:**  ARE YOU OUT AT THE PRISON?

9        **PROSPECTIVE JUROR BUETTELL:**  NO.  I WORK AT MARIN

10  GENERAL, AND WE GET ALL THE SAN QUENTIN INMATES.

11       **THE COURT:**  ALL RIGHT.

12       THANK YOU.

13       NOW WE GO TO MR. BROWN.

14       **PROSPECTIVE JUROR BROWN:**  CURRENTLY READING "DON'T

15  KNOW MUCH ABOUT THE BIBLE."

16       AND I BELIEVE I WOULD BE A GOOD JUROR.  I'M FAIR AND

17  IMPARTIAL.

18       **THE COURT:**  THANK YOU.

19       MS. REALI.

20       **PROSPECTIVE JUROR REALI:**  REALI.

21       THE LAST BOOK I ENJOYED IS CALLED "THE SHACK."

22       I THINK I WOULD BE A GOOD JUROR.  I'VE DONE IT A

23  COUPLE TIMES AND DELIBERATED, AND I'M A STICKLER FOR DETAILS.

24       **PROSPECTIVE JUROR PERRY:**  THE MOST RECENT MOVIE I

25  HAVE I'VE SEEN IS "AVATAR."  A GOOD MOVIE.

1          I THINK I WOULD BE A GOOD HAVE BECAUSE I'M FAIR, FAIR

2    AND OBJECTIVE.

3          **THE COURT:**  THAT WAS MS. PERRY.

4          **PROSPECTIVE JUROR ORTA:**  I NOT READ BOOKS, BUT I LIKE

5    TO READ THE NEWSPAPER EVERY DAY, AND I WATCH NEWS, WATCHING TV.

6          **THE COURT:**  ALL RIGHT.  AND WOULD YOU BE A FAIR

7    JUROR?

8          **PROSPECTIVE JUROR ORTA:**  I'M AFRAID BECAUSE I DON'T

9    SPEAK FULL ENGLISH.

10          **THE COURT:**  WE'LL TALK ABOUT THAT IN A MINUTE.  LET'S

11    PASS THE MICROPHONE TO MS. MILLER.

12          **PROSPECTIVE JUROR MILLER:**  THE LAST TWO MOVIES I SAW

13    THAT I ENJOYED WAS "UP IN THE AIR" AND "THE VISITOR."

14          AND I THINK I'D BE A GOOD JUROR BECAUSE I LIKE TO

15    DECONSTRUCT DETAILS AND SEE HOW IT FITS INTO A BIGGER PICTURE.

16          **THE COURT:**  THANK YOU.

17          AND MR. HERDA.

18          **PROSPECTIVE JUROR HERDA:**  THE BOOK SERIES THAT I READ

19    RECENTLY THAT I LIKE WAS "THE GIRL WITH THE RED DRAGON TATTOO."

20          AND I THINK I WOULD PROBABLY BE A GOOD JUROR BECAUSE

21    IN MY JOB I HAVE TO LISTEN TO A LOT OF THINGS AND MAKE A FAIR

22    DECISION.

23          **THE COURT:**  OKAY.  OKAY.

24          DO ANY OF YOU -- RAISE YOUR HAND IF ANY OF YOU THINK

25    YOU ARE PARTICULARLY STUBBORN PEOPLE, YOU ARE A STUBBORN PERSON.

1   IF YOU ARE STUBBORN, I WANT YOU TO RAISE YOUR HAND, NOT THAT

2   THAT DISQUALIFIES YOU.  IT DOESN'T.  BUT SOMETIMES THE LAWYERS

3   LIKE TO KNOW WHO'S STUBBORN.

4           OKAY.  GREAT.

5           NOW, HERE'S WHAT WE ARE GOING TO DO.  IT'S OKAY IF

6   YOU WANT TO TALK ABOUT "CATCHER IN THE RYE," OR THE BIBLE, OR

7   ANY OF THE OTHER THINGS YOU BROUGHT IN TERMS OF BOOKS OR MOVIES.

8   YOU CAN'T TALK ABOUT THIS CASE.

9           I'M GOING TO LET YOU TAKE THE NEXT 30 MINUTES AND GO

10  TO LUNCH.  THERE'S A LUNCH ROOM ON THE SECOND FLOOR.

11          I'M GOING TO HAVE TO CANCEL A HEARING.  I DIDN'T

12  REALIZE I HAD ONE.

13          WE WILL RESUME HERE IN 30 MINUTES WITH JURY SELECTION

14  CONTINUING ON, AND I THINK WE ARE MAYBE -- I THINK 3:00 O'CLOCK

15  TO MAYBE 3:30.  I DON'T KNOW.  SOMEWHERE IN THERE IS PROBABLY

16  WHERE WE'RE GOING TO END THE DAY.

17          PLEASE REMEMBER THE ADMONITION.  DON'T TALK WITH EACH

18  OTHER ABOUT THIS CASE AND DON'T DO ANY HOMEWORK ABOUT THE CASE.

19  DON'T GO ON LINE.  NO RESEARCH.  WE'LL SEE YOU BACK HERE IN 30

20  MINUTES, EXCEPT MRS. ORTA.  I WANT YOU TO STAY HERE, PLEASE.

21                  (THE PROSPECTIVE JURY PANEL EXITED THE

22                  COURTROOM.)

23          **THE COURT:**  ALL RIGHT.  LET'S -- MS. ORTA, WOULD YOU

24  MIND COMING UP HERE, PLEASE?  JUST STAND RIGHT HERE?

25          **PROSPECTIVE JUROR ORTA:**  YES.

1          **THE COURT:**  SO TELL ME ABOUT -- WHEN DID YOU FIRST

2    START SPEAKING ENGLISH?

3          **PROSPECTIVE JUROR ORTA:**  MY FIRST TIME I SPEAK

4    ENGLISH IS IN THE UNITED STATES.

5          **THE COURT:**  WHEN WAS THAT?

6          **PROSPECTIVE JUROR ORTA:**  TEN YEARS AGO.

7          **THE COURT:**  TEN YEARS AGO?

8          **PROSPECTIVE JUROR ORTA:**  YEAH.

9          **THE COURT:**  WHAT IS YOUR JOB?

10         **PROSPECTIVE JUROR ORTA:**  MY JOB IS I WORK AT THE FOUR

11   SEASONS HOTEL.  I WORK AT THE PANTRY STATION.

12         **THE COURT:**  YOU WORK AT THE WHAT?

13         **PROSPECTIVE JUROR ORTA:**  THE PANTRY STATION, COLD

14   FOOD.  I MAKE COLD FOOD.

15         **THE COURT:**  DO YOU SPEAK ENGLISH OR SPANISH IN YOUR

16   WORK?

17         **PROSPECTIVE JUROR ORTA:**  BOTH.

18         **THE COURT:**  DOES YOUR SUPERVISOR SPEAK ENGLISH OR

19   SPANISH TOO?

20         **PROSPECTIVE JUROR ORTA:**  NO.  MY SUPERVISOR SPEAK

21   ENGLISH.

22         **THE COURT:**  SO WHEN YOUR SUPERVISOR GIVES YOU

23   INSTRUCTIONS, IT'S IN ENGLISH?

24         **PROSPECTIVE JUROR ORTA:**  I HAVE TO UNDERSTAND WHAT HE

25   SAYS, BUT I SPEAK BASIC ENGLISH.  WHAT I USE IN MY WORK, WHAT I

1   HAVE TO USE -- I GO TO SCHOOL AFTER WORK, BUT I'M NOT SPEAK

2   FLUENTLY ENGLISH, AND I DON'T UNDERSTAND EVERYTHING.  I LEARN

3   WHAT THEY, THE SCHOOL, TEACH ME.

4         **THE COURT:**  IN THIS COURTROOM TODAY, THIS TODAY, WHAT

5   PERCENTAGE OF EVERYTHING THAT'S BEEN SAID HAVE YOU UNDERSTOOD?

6         **PROSPECTIVE JUROR ORTA:**  MAYBE 70 PERCENT.  SOME

7   WORDS I DON'T UNDERSTAND.  I'M NERVOUS BECAUSE I DON'T

8   UNDERSTAND EVERYTHING.

9         **THE COURT:**  PLEASE.  I'M SURE YOUR ENGLISH IS MANY

10  TIMES BETTER THAN, SAY, MY SPANISH WOULD BE.  YOU SHOULD BE VERY

11  PROUD THAT YOU CAN SPEAK TWO LANGUAGES.

12        CAN I ASK YOU, DO ANY OF THE LAWYERS HAVE QUESTIONS

13  FOR MS. ORTA?

14        **MR. LEUNG:**  NO, YOUR HONOR.

15        **MR. CHAZIN:**  NO.

16        **PROSPECTIVE JUROR ORTA:**  OKAY.

17        **THE COURT:**  MAY I ASK YOU JUST TO STEP INTO THE

18  HALLWAY, BUT DON'T GO -- I HAVE TO ASK YOU TO COME BACK.  CAN

19  YOU JUST STEP INTO THE HALLWAY?  DO YOU UNDERSTAND WHAT I'M

20  SAYING?  CAN YOU DO THAT?  I DON'T THINK YOU UNDERSTAND --

21        **THE CLERK:**  WAIT OUTSIDE.  JUST WAIT OUTSIDE, PLEASE.

22        **THE COURT:**  JUST GO INTO THE HALLWAY AND WAIT IN THE

23  HALLWAY.  I WILL BRING YOU BACK IN IN A MOMENT.

24        **PROSPECTIVE JUROR ORTA:**  OKAY.

25        **THE COURT:**  DON'T GO VERY FAR STAY RIGHT THERE.  YES.

1                    (PROSPECTIVE JUROR ORTA EXITED THE

2                    COURTROOM.)

3          **THE COURT:**  I QUESTION WHETHER MS. ORTA SHOULD SERVE

4    BECAUSE OF HER LIMITED ENGLISH.

5          **MR. LEUNG:**  YOUR HONOR, THE GOVERNMENT WOULD AGREE.

6    SHE INDICATED SHE WAS ENROLLED IN ESL.  IT SEEMS LIKE IF SHE'S

7    ONLY GETTING 70 PERCENT OF WHAT HAS TRANSPIRED THUS FAR, THE

8    GOVERNMENT'S CONCERN IS SHE MAY BE A LIABILITY IN DELIBERATIONS.

9          **MR. CHAZIN:**  YOUR HONOR, I HAVE TO SAY THAT I DON'T

10   KNOW WHAT THE PROTOCOL, OR RULE IS, WHEN THEY FILLED OUT THEIR

11   RESPONSES TO JURY -- INITIAL JURY FORMS, BUT I DON'T KNOW IF

12   SHE'S ENTITLED AS A PERSON WHO'S ELIGIBLE TO SERVE TO HAVE A

13   INTERPRETER HERSELF.

14         **THE COURT:**  NO.  I THINK -- ISN'T ONE OF THE

15   STATUTORY REQUIREMENTS THAT THEY SPEAK ENGLISH?

16         **MR. LEUNG:**  YES, YOUR HONOR, THAT THEY UNDERSTAND

17   ENGLISH.

18         **THE COURT:**  SHE'S A CITIZEN, OBVIOUSLY.  BUT SHE

19   WHEN -- YOU FILL OUT YOUR FORM, I'M SURE SHE COULD HAVE SAID SHE

20   SPEAKS ENGLISH AND DONE THAT, BUT THERE'S NO TEST.  THAT'S WHAT

21   WE HAVE.  WE'RE SUPPOSED TO FILTER OUT HERE IN VOIR DIRE ANYONE

22   WHOSE ENGLISH IS NOT GOOD ENOUGH.

23              THERE'S NO WAY WE ARE GOING TO GET AN INTERPRETER.  I

24   NEVER HEARD OF THAT.  DO YOU REALLY NOT STIPULATE EXCUSING HER?

25         **MR. CHAZIN:**  WELL, I JUST THINK -- WELL, I THINK

1  SHE'S BEEN RESPONSIVE TO EVERY QUESTION YOU ASKED.

2       **THE COURT:**  SHE SAYS SHE CAN ONLY -- EVEN THAT'S NOT

3  QUITE TRUE.  SHE HAS BEEN RESPONSIVE TO MOST, I AGREE, WITH

4  MOST.  I AGREE WITH THAT.  THEY HAVE BEEN VERY SIMPLE QUESTIONS.

5  WHEN I ASKED HER IF SHE UNDERSTANDS WHAT'S GOING ON, SHE SAYS

6  70 PERCENT.  I THINK THEY SHOULD UNDERSTAND A HUNDRED PERCENT,

7  NOT 70.

8       **MR. LEUNG:**  THE GOVERNMENT AGREES WITH THE COURT,

9  YOUR HONOR.  WE'RE CONCERNED, WHEN TIME COMES FOR SUMMATION AND

10  JURY INSTRUCTIONS, MS.  ORTA WILL NOT BE ABLE TO UNDERSTAND

11  ESPECIALLY THE COURT'S INSTRUCTIONS ON ISSUES OF LAW, WHICH ARE

12  COMPLICATED.

13       **THE COURT:**  JUST A MINUTE.  MR. DAVID WEIR, OUR JURY

14  ADMINISTRATOR HAPPENED TO WALK IN.

15       CAN YOU COME UP HERE A MOMENT, PLEASE?  ISN'T ONE OF

16  THE REQUIREMENTS FOR A JUROR THAT THEY SPEAK AND UNDERSTAND

17  ENGLISH?

18       **MR. WEIR:**  YES.

19       **THE COURT:**  IS THAT A STATUTORY REQUIREMENT?

20       **MR. WEIR:**  YES, SIR.

21       **THE COURT:**  HAVE YOU EVER HEARD OF A SITUATION IN

22  WHICH SOMEBODY COULD ONLY UNDERSTAND 70 PERCENT, SO WE GAVE THEM

23  THEIR OWN PRIVATE INTERPRETER IN THE JURY BOX?  HAS THAT EVER

24  HAPPENED?

25       **MR. WEIR:**  NOT FOR LACK OF SPEAKING ENGLISH.  THE

1   ONLY INSTANCES I AM AWARE OF IS WHEN A JUROR HAS BEEN HEARING

2   IMPAIRED.  THAT IS AN ADA ISSUE, NOT ACCOMMODATION OF ENGLISH

3   ISSUE.

4           **THE COURT:**  HOW IS THE STATUTE WORDED IN TERMS OF

5   ENGLISH?

6           **MR. WEIR:**  THAT A JUROR MUST BE ABLE TO SPEAK AND

7   READ -- I'M WORKING FROM MEMORY HERE -- ENGLISH.

8           **THE COURT:**  WHAT IS THE CODE SECTION?

9           **MR. WEIR:**  1860, 1861?

10          **THE COURT:**  TWENTY-EIGHT USC?

11          **MR. WEIR:**  I BELIEVE SO.

12          **THE COURT:**  OR 18?

13          **MR. LEUNG:**  MY GUESS WOULD BE TITLE 28, YOUR HONOR.

14          **THE COURT:**  TWENTY-EIGHT.  SAY IT AGAIN.

15          **MR. WEIR:**  1861.  I'M WORKING FROM MEMORY HERE.

16          **THE COURT:**  WELL, THAT'S THE FIRST ONE.  HERE'S 1865.

17   HERE IT IS, UNLESS HE IS -- UNLESS -- IT SAYS:

18              "UNLESS HE IS UNABLE TO READ, WRITE OR

19              UNDERSTAND THE ENGLISH LANGUAGE WITH A DEGREE OF

20              PROFICIENCY SUFFICIENT TO FILL OUT

21              SATISFACTORILY THE JUROR QUALIFICATION FORM."

22              NUMBER THREE IS, "UNABLE TO SPEAK THE ENGLISH

23   LANGUAGE."

24              DO YOU HAVE HER FORM?

25          **MR. WEIR:**  I COULD GET IT.

1          **THE COURT:**  CAN YOU GO GET THAT RIGHT NOW?

2          **MR. WEIR:**  THE JUROR'S LAST NAME, PLEASE?

3          **THE COURT:**  ORTA.

4          **MR. WEIR:**  IT WILL TAKE ME ABOUT FIVE MINUTES.

5          **THE COURT:**  ALL RIGHT.

6          DAVID, WOULD YOU MENTION TO MS. ORTA IT'S OKAY FOR

7   HER TO COME TO LUNCH.  WE ARE GOING TO HAVE TO DEAL WITH HER

8   ISSUE WHEN WE RESUME.  I WANT HER TO GO AHEAD AND GO TO LUNCH

9   NOW AND COME BACK IN 30 MINUTES.

10          IF YOU CAN BRING THE FORM TO ME IN CHAMBERS.

11          THEN IF THE LAWYERS WANT TO GO TO THE LIBRARY AND DO

12   ANY RESEARCH ON THIS, WE'LL TAKE IT UP IN 30 MINUTES.  UNLESS

13   THERE'S SOMETHING YOU WANT TO BRING UP WITH ME RIGHT NOW,

14   ANYTHING ELSE YOU LAWYERS HAVE?  YES?

15          **MR. CHAZIN:**  JUST LOOKING AHEAD, YOUR HONOR, I WAS

16   UNDER THE IMPRESSION THAT WE WOULD BE GOING UNTIL 1:30 TODAY,

17   BECAUSE THAT'S WHAT YOU HAD INDICATED, 7:30 TO 1:30 EVERY DAY.

18          **THE COURT:**  I'VE GOT TO CONTINUE ON UNTIL WE GET THE

19   JURY SELECTED.

20          **MR. CHAZIN:**  I UNDERSTAND THAT.  I DON'T KNOW HOW I

21   MIGHT BE ABLE TO REQUEST SOME ACCOMMODATION, BECAUSE I KIND OF

22   SCHEDULED MY PREPARATION ACCORDING TO THAT SCHEDULE YOU HAD

23   INDICATED.

24          **THE COURT:**  I'M SORRY.  YOU GOT TO ADJUST.  WE'VE GOT

25   TOO MANY JURORS HERE.  WE'RE GOING TO GET THE JURY SELECTED HERE

1    TODAY.

2          **MR. CHAZIN:**  I'M NOT ASKING THAT, YOUR HONOR.  I

3    DON'T KNOW --

4          **THE COURT:**  WHAT ARE YOU ASKING?

5          **MR. CHAZIN:**  POSSIBLY, ONCE WE GET THEM SELECTED,

6    MAYBE TOMORROW MORNING, IF I COULD HAVE A LITTLE LEEWAY THERE AS

7    FAR AS WHEN WE START.

8          **THE COURT:**  WE WILL START AT 7:30.

9          **MR. CHAZIN:**  WELL, ALL RIGHT.

10         **THE COURT:**  MR. CHAZIN, YOU ARE A YOUNG MAN.

11         **MR. CHAZIN:**  I AM NOT AS YOUNG AS I LOOK, PERHAPS.

12         **THE COURT:**  YOU CAN DO THIS.  WE ARE GOING TO TAKE

13   OUR BREAK.  ALL RIGHT.  THANK YOU.

14         **MR. LEUNG:**  HALF AN HOUR, YOUR HONOR?

15         **THE COURT:**  HALF AN HOUR.

16         ALL RIGHT.  I THINK WE'RE ALL RIGHT TO START AS SOON

17   AS JOAN IS READY.  ARE YOU READY, JOAN?

18         WE WILL -- I NEED TO HAVE A SIDEBAR AND WITH THE

19   LAWYERS FIRST, AND THEN I MAY HAVE ONE OF THE PROSPECTIVE JURORS

20   COME VISIT WITH US AT THE SIDEBAR.

21         LET'S GO TO THE SIDEBAR.

22              (SIDEBAR DISCUSSION HELD AS FOLLOWS:)

23         **THE COURT:**  THERE ARE TWO THINGS WE NEED TO TAKE UP

24   OVER HERE.  WITH RESPECT TO MS. ORTA, I'M GOING TO RESERVE

25   RULING UNTIL YOU ALL GET A CHANCE TO TALK WITH HER IN YOUR OWN

1 QUESTIONING, BUT THE STATUTE DOES NOT CALL OUT UNDERSTANDING.

2 IT ONLY CALLS OUT SPEAKING. AND SHE HAS TO BE ABLE TO READ AND

3 WRITE WELL ENOUGH TO FILL OUT THE QUALIFICATION FORM.

4 IT CERTAINLY WOULD BE ENOUGH ON A GOOD FAITH BASIS TO

5 EXCUSE HER UNDER THE *BATSON* LINE OF CASES ON A PEREMPTORY, BUT

6 TALKING NOW ABOUT FOR CAUSE, AND I AM NOT PREPARED TO SAY YES OR

7 NO TO THAT. BUT I'M INCLINED TO SAY SO FAR THE RECORD IS A

8 CLOSE CALL, AND I'M NOT WILLING AT THIS POINT TO EXCUSE HER FOR

9 CAUSE. SO THAT'S WITH RESPECT TO HER. WE CAN REVISIT IT AFTER

10 THE LAWYERS ASK QUESTIONS.

11 THE NEXT THING IS DAWN TOLD ME MRS. KAUR HAS

12 SOMETHING SHE WANTS TO SAY TO US PRIVATELY. I'M GOING TO ASK

13 HER TO COME OVER HERE NOW.

14 MS. KAUR, WOULD YOU COME OVER HERE, PLEASE?

15 MS. KAUR, DAWN, THE CLERK, SAID THAT YOU HAD SOME

16 PROBLEM WITH YOUR DAUGHTER.

17 **PROSPECTIVE JUROR KAUR:** YES, SHE'S ACTUALLY SICK.

18 **THE COURT:** WHAT'S WRONG WITH HER?

19 **PROSPECTIVE JUROR KAUR:** SHE GOT THE VOMITING. I

20 JUST CALLED MY GRANDMA. SHE SAID SHE'S VOMITING. SHE HAD A

21 FEVER LAST NIGHT.

22 **THE COURT:** WHEN DID YOU LEARN THIS?

23 **PROSPECTIVE JUROR KAUR:** I'M SORRY?

24 **THE COURT:** WHEN DID YOU LEARN THIS?

25 **PROSPECTIVE JUROR KAUR:** LEARN SHE WAS SICK? SHE HAD

1  A FEVER LAST NIGHT.

2          **THE COURT:**  WHY DIDN'T YOU BRING THIS UP EARLIER?

3          **PROSPECTIVE JUROR KAUR:**  I KNOW.  I STILL CAME --

4          **THE COURT:**  WHO IS TAKING CARE OF YOUR DAUGHTER NOW?

5          **PROSPECTIVE JUROR KAUR:**  MY GRANDMA.

6          **THE COURT:**  DO YOU NEED TO BE THERE TO BE TAKING CARE

7  OF HER OR NOT?

8          **PROSPECTIVE JUROR KAUR:**  I NEED TO TAKE HER TO THE

9  DOCTOR.

10         **THE COURT:**  I'M GOING TO EXCUSE MS. KAUR UNLESS

11 THERE'S AN OBJECTION.

12         **MR. LEUNG:**  NO OBJECTION, YOUR HONOR.

13         **MR. CHAZIN:**  NO.

14         **THE COURT:**  I WANT YOU TO GO BACK TO THE JURY

15 ASSEMBLY ROOM BECAUSE OF YOUR SICK DAUGHTER.  I'M LETTING YOU

16 GO.  NEXT TIME BRING THIS UP.

17         BEFORE WE GET STARTED, DID I ASK THE JURY

18 ADMINISTRATOR TO LET COUNSEL SEE THE QUALIFICATIONS CARD?  DO

19 YOU STILL HAVE THAT?

20         **MR. LEUNG:**  WE GAVE IT BACK TO --

21         **MR. CHAZIN:**  MR. WEIR.

22         **THE COURT:**  TO WHAT?

23         **THE CLERK:**  TO DAVID.

24         **THE COURT:**  DAVID, DO YOU STILL HAVE THAT?

25         **MR. WEIR:**  YES, SIR.

1          **THE COURT:**  HOLD ONTO IT.  I WANT TO MAKE SURE WE

2     KEEP THAT.

3          NOW, LADIES AND GENTLEMEN, YOU CAN SEE WE NOW HAVE

4     ANOTHER EMPTY SEAT.  MS. KAUR'S DAUGHTER WAS ILL AND THROWING

5     UP.  WE HAD TO EXCUSE HER SO SHE COULD TAKE HER DAUGHTER TO THE

6     HOSPITAL.

7          I KNOW THAT I'M A LITTLE TOUGH, A LITTLE TOUGH, BUT

8     JUST A LITTLE TOUGH ON -- I'M NOT CRITICIZING -- BUT

9     SCRUTINIZING HARDSHIP EXCUSES.  I CERTAINLY WOULD NOT WANT ANY

10    OF YOU THINKING IF YOUR DAUGHTER OR SON IS SICK AND NEEDS TO GO

11    TO THE DOCTOR, THAT I WOULD NOT LET YOU DO THAT.  PLEASE.  I

12    DON'T WANT YOU TO BE UNDER THAT KIND OF A MISAPPREHENSION.

13          ALL RIGHT.  WE NEED REPLACE MS. KAUR.

14          **THE CLERK:**  SOPHIA MORRIS, M-O-R-R-I-S.

15          **THE COURT:**  ALL RIGHT.  HOW ARE YOU TODAY?

16          **PROSPECTIVE JUROR MORRIS:**  I'M GREAT.  GETTING A

17    COMFY CHAIR.

18          **THE COURT:**  WE NEED TO GIVE YOU THE MICROPHONE.

19    WHO'S GOT THAT?  HERE IT COMES.  SO YOUR NAME IS MORRIS.

20          **PROSPECTIVE JUROR MORRIS:**  YES, MORRIS.

21          **THE COURT:**  DIDN'T WE ALREADY HAVE A MORRIS?

22          **THE CLERK:**  WE HAVE TWO MORGANS.

23          **THE COURT:**  THAT'S IT.  SO MS. MORRIS.

24          MS. MORRIS, DO YOU HAVE ANY HARDSHIP ISSUE YOU WANT

25    TO RAISE?

1        **PROSPECTIVE JUROR MORRIS:**  NO.

2        **THE COURT:**  GREAT.  CAN YOU SEE THE CHART?

3        **PROSPECTIVE JUROR MORRIS:**  MY NAME IS SOPHIA ROSE

4    MORRIS, AND I LIVE IN NOVATO.  AND I HAVE MY AA IN MUSICAL

5    THEATER.  I WORK CURRENTLY AS A WAITRESS AT MARIN BREWING

6    COMPANY.  I ALSO HAVE A PART-TIME JOB WORKING AS AN ASSISTANT

7    DIRECTOR FOR A YOUTH THEATER COMPANY.  I DON'T OWN (SIC) ANY

8    UNIONS, BUT MY HOBBY IS MUSICAL THEATER.  I DO IT ALL OVER THE

9    BAY AREA.  I'M SINGLE.  I DON'T HAVE CHILDREN, AND I'VE NEVER

10   BEEN ON A JURY, AND I'VE NEVER BEEN IN THE MILITARY, AND I'VE

11   NEVER BEEN IN COURT.

12        **THE COURT:**  DO YOU REMEMBER ALL THOSE QUESTIONS THAT

13   I ASKED?

14        **PROSPECTIVE JUROR MORRIS:**  YEAH.

15        **THE COURT:**  ARE ANY OF THOSE -- WOULD ANY OF THOSE

16   REQUIRE YOU TO RAISE YOUR HAND?

17        **PROSPECTIVE JUROR MORRIS:**  NO.

18        **THE COURT:**  I WANT TO JUST ASK YOU SOME OF THEM OVER

19   AGAIN TO BE DOUBLE CHECKED.

20        DID YOU KNOW ANY OF THE WITNESSES, ANY OF THE

21   PARTIES, ANY OF THE LAWYERS, ANY OF THAT?

22        **PROSPECTIVE JUROR MORRIS:**  NO.

23        **THE COURT:**  YOU'VE GOT TO SAY YES OR NO INTO THE

24   MICROPHONE.

25        **PROSPECTIVE JUROR MORRIS:**  NO.

1        **THE COURT:**  THAT'S GOOD.

2        OKAY.  NOW, DO YOU KNOW ANYTHING ABOUT THIS CASE?

3        **PROSPECTIVE JUROR MORRIS:**  NO.

4        **THE COURT:**  ALL RIGHT.  EVER BEEN THE VICTIM OF A

5   CRIME?

6        **PROSPECTIVE JUROR MORRIS:**  NO.

7        **THE COURT:**  EVER WORKED FOR LAW ENFORCEMENT OR ANY

8   LOVED ONE CLOSE TO YOU WORKED FOR LAW ENFORCEMENT?

9        **PROSPECTIVE JUROR MORRIS:**  NO.

10       **THE COURT:**  DID YOU UNDERSTAND ALL THOSE -- ALL THE

11  CONSTITUTIONAL RIGHTS THAT I EXPLAINED?

12       **PROSPECTIVE JUROR MORRIS:**  YES.

13       **THE COURT:**  LIKE THE BURDEN OF PROOF IS ON THE

14  GOVERNMENT, PRESUMPTION OF INNOCENCE; DO YOU UNDERSTAND ALL

15  THOSE?

16       **PROSPECTIVE JUROR MORRIS:**  YES.

17       **THE COURT:**  ARE YOU WILLING TO FOLLOW THE LAW AS I

18  TELL YOU ABOUT THE -- INCLUDING FOLLOW THE CONSTITUTIONAL RIGHTS

19  OF THE DEFENDANT?

20       **PROSPECTIVE JUROR MORRIS:**  YES.

21       **THE COURT:**  WHAT'S YOUR FAVORITE BOOK OR MOVIE

22  RECENTLY?

23       **PROSPECTIVE JUROR MORRIS:**  I JUST SAW "ACCEPTED," AND

24  IT WAS KIND OF FUNNY.

25       I DON'T KNOW IF I WOULD BE A GOOD JUROR.  I'M -- I

1   DON'T REALLY KNOW WHAT TO SAY ABOUT IT.

2          **THE COURT:**  IT DOESN'T DISQUALIFY IF YOU THINK YOU

3   WOULD BE A BAD JUROR, NECESSARILY, BUT WE WOULD LIKE TO KNOW

4   WHY.  IF SO, WHY?  DO YOU HAVE ANY RESERVATIONS ABOUT YOUR

5   ABILITY TO BE A JUROR?

6          **PROSPECTIVE JUROR MORRIS:**  MAYBE.  I HAVE THOUGHTS IN

7   MY MIND ABOUT THE CASE ALREADY.

8          **THE COURT:**  YOU WHAT?

9          **PROSPECTIVE JUROR MORRIS:**  I JUST HAVE THOUGHTS IN MY

10  MIND ALREADY.

11         **THE COURT:**  YOU MEAN YOU ARE LEANING ONE WAY OR THE

12  OTHER ALREADY?

13         **PROSPECTIVE JUROR MORRIS:**  KIND OF.

14         **THE COURT:**  YOU KNOW THAT WOULD BE IMPROPER.

15         **PROSPECTIVE JUROR MORRIS:**  YEAH, IT WOULD BE.

16         **THE COURT:**  CAN'T YOU PUT ALL THOSE THOUGHTS OUT OF

17  YOUR MIND AND LISTEN TO THE EVIDENCE ONE STEP AT A TIME AND SEE

18  IF, IN THE END, IT ADDS UP TO PROOF BEYOND A REASONABLE DOUBT?

19         **PROSPECTIVE JUROR MORRIS:**  I DON'T KNOW.  I'M NOT

20  SURE.

21         **THE COURT:**  WELL, THE OATH THAT YOU WOULD HAVE TO

22  TAKE BASICALLY SAYS THIS:  THAT YOU WILL CAREFULLY LISTEN TO THE

23  EVIDENCE, THAT YOU WILL NOT TAKE SIDES ON THE EVIDENCE, THAT YOU

24  WILL BE FAIR TO BOTH SIDES AND IMPARTIAL ABOUT THE EVIDENCE,

25  EVALUATE THE EVIDENCE OBJECTIVELY, THEN LAY IT ALONGSIDE THE

1  INSTRUCTIONS OF LAW THAT I TELL YOU AT THE END AND SEE IF THE

2  GOVERNMENT HAS PROVEN ITS CASE BEYOND A REASONABLE DOUBT.

3        IF THE ANSWER TO THAT IS YES, THEN THE JURY WOULD

4  HAVE AN OBLIGATION TO CONVICT.  IF THE ANSWER TO THAT IS NO,

5  THEN THE JURY WOULD HAVE AN OBLIGATION TO ACQUIT.

6        NOW, CAN YOU DO THAT?

7        **PROSPECTIVE JUROR MORRIS:**  NO.

8        **THE COURT:**  WHY NOT?

9        **PROSPECTIVE JUROR MORRIS:**  I DON'T THINK I CAN.

10  SORRY.

11        **THE COURT:**  ALL RIGHT.

12        **PROSPECTIVE JUROR MORRIS:**  SORRY.

13        **THE COURT:**  ANYBODY WANT TO OBJECT IF I EXCUSE

14  MS. MORRIS?

15        **MR. LEUNG:**  NO OBJECTIONS, YOUR HONOR.

16        **MR. CHAZIN:**  NO.  I WOULD JUST ASK IF MAYBE YOU COULD

17  ARTICULATE A LITTLE BIT MORE AS TO WHY.

18        **PROSPECTIVE JUROR MORRIS:**  EIGHT COUNTS, JUST THE

19  LIST OF HOW MANY PEOPLE WERE ON THE GOVERNMENT SIDE, HOW MANY

20  THEY HAD ON THEIR LIST OF WITNESSES.  IS THAT GOOD ENOUGH?

21        **MR. CHAZIN:**  DO YOU WANT ME TO CARRY ON QUESTIONING,

22  YOUR HONOR?

23        I THINK EVERYBODY SHOULD BE INFORMED THAT IT'S NOT

24  THE NUMBER OF WITNESSES THAT SHOULD BE THE DETERMINING FACTOR IN

25  A CASE, BUT THE EVIDENCE ITSELF -- AND THAT'S WHAT, IF YOU TAKE

1   THE OATH, THAT'S WHAT YOU'RE REQUIRED TO DO.  THAT'S WHAT

2   EVERYBODY HERE IS REQUIRED TO DO.  DO YOU THINK --

3          **THE COURT:**  WELL, LET ME FOLLOW UP.

4          COUNSEL IS CORRECT.  IT'S NOT THE NUMBER OF WITNESSES

5   THAT EVER MATTER.  YOU COULD HAVE ONE WITNESS SAYING THE LIGHT

6   WAS RED AND EIGHT WITNESSES SAYING THE LIGHT WAS GREEN, AND IF

7   THE ONE WITNESS IS WORTHY OF BELIEF AND THE OTHER EIGHT ARE NOT,

8   THEN YOU COULD COME OUT IN FAVOR OF THE ONE WITNESS.  SO IT'S

9   NOT A MATHEMATICAL TEST ABOUT HOW MANY WITNESSES THERE ARE; DO

10  YOU UNDERSTAND THAT?

11         **PROSPECTIVE JUROR MORRIS:**  YEAH, I DO.

12         **THE COURT:**  ARE YOU WILLING TO EVALUATE EACH WITNESS

13  ONE BY ONE AND GIVE EACH ONE INDIVIDUAL CREDIBILITY

14  DETERMINATION?

15         **PROSPECTIVE JUROR MORRIS:**  I MEAN, I WOULD.  I'M JUST

16  SAYING THAT I ALREADY -- MAYBE IT'S IGNORANT BUT...

17         **THE COURT:**  THE FACT THAT THERE ARE EIGHT DIFFERENT

18  COUNTS MEANS ZERO.  JUST MEANS THE GOVERNMENT HAS GOT TO PROVE

19  EIGHT OF THEM.  IT DOESN'T MEAN THEY SOMEHOW PROVE EACH OTHER

20  UP.

21         **PROSPECTIVE JUROR MORRIS:**  OKAY.

22         **THE COURT:**  DO YOU UNDERSTAND?

23         **PROSPECTIVE JUROR MORRIS:**  YEAH.

24         **THE COURT:**  SO EVEN UNDERSTANDING THAT, ARE YOU

25  TELLING ME THAT YOU THINK YOU ALREADY START OFF WITH BEING

1   BIASED IN THE CASE?

2              **PROSPECTIVE JUROR MORRIS:**  A LITTLE BIT.

3         **THE COURT:**  ALL RIGHT.  MR. CHAZIN, DO YOU WANT ME TO

4   ASK MORE QUESTIONS?  ARE YOU WILLING TO STIPULATE?

5              **MR. CHAZIN:**  I WILL STIPULATE, YOUR HONOR.

6         **THE COURT:**  ALL RIGHT.  MS. MORRIS, I'M GOING TO

7   EXCUSE YOU BECAUSE IT SEEMS LIKE YOU'RE NOT WILLING TO BE A FAIR

8   JUROR.  SO YOU GO BACK TO THE JURY ASSEMBLY ROOM.  MAYBE THERE'S

9   THAT EIGHT-WEEK ANTITRUST CASE THEY'RE TRYING TO GET SOME JURORS

10  FOR.  THEY MAY BE ABLE TO USE YOU, INSTEAD OF ON THIS ONE-WEEK

11  CASE.

12             PLEASE GO BACK AND VOLUNTEER.  THEY WILL BE HAPPY TO

13  SEE SOMEBODY LIKE YOU COME IN.  AND MAYBE YOU WILL BE ABLE TO

14  SERVE ON THAT CASE.  THANK YOU.

15             ALL RIGHT.  LET'S REPLACE MS. MORRIS.

16        **THE CLERK:**  EDMUND LIU, L-I-U --

17        **THE COURT:**  WELCOME, MR. LIU.  AM I SAYING THAT

18  RIGHT?  IS IT --

19             **PROSPECTIVE JUROR LIU:**  YES, IT'S LIU.

20        **THE COURT:**  OKAY.  MICROPHONE IS CONVENIENTLY RIGHT

21  THERE.  HOW ARE YOU TODAY?

22             **PROSPECTIVE JUROR LIU:**  GOOD.

23        **THE COURT:**  ALL RIGHT.  ANY HARDSHIP?

24             **PROSPECTIVE JUROR LIU:**  NO.

25        **THE COURT:**  PLEASE GO DOWN THE BIOGRAPHICAL

1   INFORMATION.

2          **PROSPECTIVE JUROR LIU:**  MY NAME IS EDMUND LIU.  I

3   LIVE IN THE CITY OF SAN FRANCISCO.  I HAVE A COLLEGE DEGREE.

4   I'M CURRENTLY EMPLOYED WITH THE GAP AS A CORPORATE OPERATIONS

5   REPRESENTATIVE.  I DO NOT BELONG TO ANY ORGANIZATIONS, CLUBS OR

6   UNIONS.  MY HOBBIES ARE TRAVEL AND SPORTS.  I'M SINGLE WITH NO

7   CHILDREN.

8          MY PRIOR JURY SERVICE IS IN A CIVIL -- WAS IN A CIVIL

9   CASE WHERE IT WAS -- THE CASE WAS DISMISSED.  NEVER BEEN IN THE

10  MILITARY OR LAW ENFORCEMENT, NOR A PARTY OR WITNESS IN COURT.

11          **THE COURT:**  GREAT.  DO YOU REMEMBER ALL THE QUESTIONS

12  THAT I ASKED BEFORE?

13          **PROSPECTIVE JUROR LIU:**  YES.

14          **THE COURT:**  ANY OF THOSE YOU WOULD HAVE TO RAISE YOUR

15  HAND TO?

16          **PROSPECTIVE JUROR LIU:**  NO.

17          **THE COURT:**  SO NEVER BEEN A VICTIM OF A CRIME, NO

18  LOVED ONES BEEN A VICTIM OF A CRIME, NO LAW ENFORCEMENT, NO

19  LOVED ONES IN LAW ENFORCEMENT, THAT SORT OF THING?

20          **PROSPECTIVE JUROR LIU:**  NO.

21          **THE COURT:**  CAN YOU BE A FAIR AND IMPARTIAL JUROR?

22          **PROSPECTIVE JUROR LIU:**  I BELIEVE SO.

23          **THE COURT:**  DID YOU UNDERSTAND IT WHEN I SAID YOUR

24  JOB WOULD BE TO LISTEN TO THE EVIDENCE, CAREFULLY WEIGH THE

25  EVIDENCE, DECIDE IF THE GOVERNMENT HAS CARRIED ITS PROOF BEYOND

1    A REASONABLE DOUBT AS TO EACH AND EVERY ELEMENT OF THE ALLEGED

2    OFFENSE?  IF THE ANSWER TO THAT IS YES, THEN YOU WOULD VOTE FOR

3    CONVICTION; IF THE ANSWER TO THAT IS NO, YOU WOULD BE OBLIGATED

4    TO VOTE FOR ACQUITTAL.  DO YOU UNDERSTAND THAT?

5             **PROSPECTIVE JUROR LIU:**  YES.

6             **THE COURT:**  DO YOU THINK YOU CAN DO THAT?

7             **PROSPECTIVE JUROR LIU:**  I BELIEVE SO.

8             **THE COURT:**  WILL YOU DO THAT?

9             **PROSPECTIVE JUROR LIU:**  YES.

10            **THE COURT:**  HOW ABOUT YOUR BOOK, MOVIE, AND WHY YOU

11   WOULD BE A GOOD JUROR?

12            **PROSPECTIVE JUROR LIU:**  RECENTLY SAW "AVATAR."

13            AND I BELIEVE I WILL BE A GOOD JUROR JUST BECAUSE I'M

14   OBJECTIVE AND CONSCIENTIOUS.

15            **THE COURT:**  YOU KNOW, I WENT THROUGH ALL THE

16   CONSTITUTIONAL RIGHTS THAT'S PART OF THE LAW YOU WOULD BE

17   UPHOLDING.  DO YOU HAVE ANY PROBLEM -- NOT PROBLEM, BUT WILL

18   YOU, IN YOUR DELIBERATIONS, IF YOU'RE SELECTED, UNDERSTAND AND

19   CARRY OUT THOSE IMPORTANT CONSTITUTIONAL RIGHTS?

20            **PROSPECTIVE JUROR LIU:**  YES.

21            **THE COURT:**  DID YOU KNOW ANY OF THE PARTIES,

22   WITNESSES OR ANYTHING ABOUT THIS CASE?

23            **PROSPECTIVE JUROR LIU:**  NO.

24            **THE COURT:**  ANY OF THE COUNSEL?

25            **PROSPECTIVE JUROR LIU:**  NO, I DO NOT.

1       **THE COURT:**  EVER BEEN IN TROUBLE WITH THE LAW?

2       **PROSPECTIVE JUROR LIU:**  NO.

3       **THE COURT:**  EVER BEEN THE VICTIM OF A CRIME, OR DID I

4  ASK YOU THAT?

5       **PROSPECTIVE JUROR LIU:**  I DON'T BELIEVE DID YOU, BUT

6  I'VE NEVER BEEN A VICTIM OF A CRIME.

7       **THE COURT:**  OKAY.  I HAVE GOTTEN TO THE POINT WHERE

8  I'M GOING TO LET THE LAWYERS ASK SOME QUESTIONS, BUT BEFORE I DO

9  THAT, I WANT TO GIVE EVERYONE ONE LAST OPPORTUNITY TO RAISE YOUR

10 HAND AND EXPRESS ANY RESERVATIONS YOU MAY HAVE THAT YOU HAVEN'T

11 ALREADY EXPRESSED ABOUT YOUR ABILITY TO BE FAIR AND IMPARTIAL OR

12 TO FOLLOW THE LAW, BECAUSE THAT'S THE OATH YOU WOULD BE TAKING,

13 AND YOU WOULD BE VIOLATING YOUR OATH IF YOU DIDN'T DO IT.

14       IF YOU THINK YOU HAVE ANY DOUBTS ON THAT SCORE, I

15 WANT YOU TO RAISE YOUR HAND NOW AND LET ME ASK YOU SOME MORE

16 QUESTIONS.  DON'T BE EMBARRASSED IF YOU HAVE TO RAISE YOUR HAND.

17 THAT'S FINE.  BETTER TO FIND OUT NOW THAN LATER.

18       ANYBODY WANT TO RAISE YOUR HAND?

19       ALL RIGHT.  AT THIS TIME, MR. LEUNG, IF YOU HAVE

20 QUESTIONS, YOU MAY INQUIRE OF THE JURY.

21       **MR. LEUNG:**  ACTUALLY, IF IT'S OKAY, MY COLLEAGUE,

22 MS. WONG, WILL BE HANDLING THIS PORTION OF THE EXAMINATION.

23       **THE COURT:**  MS. WONG, PLEASE ASK ALL THE QUESTIONS

24 YOU WANT WITHIN THE TIME LIMITS WE HAVE.

25       **MS. WONG:**  THANK YOU, YOUR HONOR.

1          AGAIN, MY NAME IS CHRISTINE WONG.  I AM ONE OF

2   ASSISTANT UNITED STATES ATTORNEYS WHO ARE REPRESENTING THE

3   GOVERNMENT IN THIS CASE.

4          I JUST HAVE A COUPLE FOLLOW-UP QUESTIONS TO ASK YOU,

5   AND I'LL ASK THE FIRST FEW ONES GENERALLY AS A GROUP, AND I'LL

6   TRY TO FOLLOW UP IF ANYONE HAS ANY SPECIFIC CONCERNS OR RAISE

7   ANY PARTICULAR QUESTIONS.

8          MY FIRST QUESTION IS:  DOES ANYONE HAVE, OR HAS HAD

9   ANY PARTICULAR DISPUTES WITH THE UNITED STATES GOVERNMENT OR THE

10  FEDERAL GOVERNMENT?  FOR EXAMPLE, ANY SORT OF PAST DISPUTES, ANY

11  STONG OPINIONS YOU HAVE ABOUT THE FEDERAL GOVERNMENT ENFORCING

12  CERTAIN AREAS OF LAW?

13         I NOTICE MR. HERDA, YOU MENTIONED THE FEDERAL

14  GOVERNMENT GETTING INTO ONLINE POKER, WHICH I KNOW YOU SAID SORT

15  OF JOKINGLY.  I DO THINK I SHOULD FOLLOW UP A LITTLE BIT.

16         DO YOU HAVE ANY --

17         **PROSPECTIVE JUROR HERDA:**  THAT'S FINE.

18         **MS. WONG:**  IT WILL NOT AFFECT YOUR ABILITY TO BE FAIR

19  AND IMPARTIAL IN THIS CASE?

20         **THE REPORTER:**  EXCUSE ME.  I DID NOT HEAR.

21         **THE COURT:**  HE SAID NO.  CORRECT, YOU SAID NO, IT

22  WOULD NOT AFFECT?

23         **PROSPECTIVE JUROR HERDA:**  THAT'S WHAT I SAID.

24         **MS. WONG:**  MY NEXT QUESTION IS, YOU HEARD IN THIS

25  CASE THE GOVERNMENT WAS INVOLVED IN AN UNDERCOVER OPERATION

1 WHERE IT USED A CONFIDENTIAL INFORMANT, IN PART USED A

2 CONFIDENTIAL INFORMANT, ABOUT CERTAIN ACTIVITIES, AND THE

3 CONFIDENTIAL INFORMANT HIMSELF WAS INVOLVED IN SOME CRIMINAL

4 ACTIVITIES. DO ANY OF YOU HAVE ANY ISSUES OR PROBLEMS, CONCERNS

5 WITH THE GOVERNMENT BEING INVOLVED IN AN UNDERCOVER OPERATION?

6        ANY CONCERNS WITH USING AS A CONFIDENTIAL INFORMANT

7 SOMEONE WHO HIMSELF MAY HAVE BEEN INVOLVED IN CRIME ACTIVITIES?

8       **PROSPECTIVE JUROR SPATH:** HAS THAT PERSON --

9       **THE COURT:** WE NEED TO GIVE YOU THE MICROPHONE.

10 WHERE IS OUR MICROPHONE?

11       **PROSPECTIVE JUROR SPATH:** WOULD THAT PERSON HAVE

12 BENEFITED IN ANY WAY?

13       **MS. WONG:** ONE OF THE THINGS THAT YOU'LL HEAR ABOUT

14 DURING THE COURSE OF THE TRIAL IS, YOU'LL HEAR EVIDENCE ABOUT

15 THIS PERSON'S BACKGROUND. ONE OF THE THINGS I'M TRYING TO GET

16 AT IS, WOULD YOU BE BIASED ONE WAY OR THE OTHER KNOWING RIGHT

17 OFF THE BAT THAT THE PERSON WAS INVOLVED IN CRIMINAL ACTIVITIES?

18 NO?

19       **THE COURT:** JUST HOLD ON TO THE MIC UNTIL WE KNOW

20 WHERE IT'S HEADED NEXT.

21       **MS. WONG:** IF YOU WERE TO HEAR THAT A WITNESS HAD A

22 CRIMINAL HISTORY AS FAR AS BACKGROUND, WOULD YOU PREJUDGE THAT

23 PERSON? WOULD YOU BE ABLE TO EVALUATE HIS CREDIBILITY FAIR AND

24 IMPARTIALLY?

25       **THE COURT:** BE CAREFUL ON THE WAY THAT YOU'RE

1  PHRASING THESE QUESTIONS. I THINK YOU KNOW WHAT I'M GETTING AT.

2           **MS. WONG:** YES. I APOLOGIZE, YOUR HONOR.

3           WOULD YOU BE ABLE TO BE FAIR AND IMPARTIAL IN

4  EVALUATING THAT PERSON'S CREDIBILITY?

5           **MR. CHAZIN:** I WOULD ASK IF YOU COULD REPHRASE IT.

6  IT'S UNCLEAR WHAT THE QUESTION IS.

7           **THE COURT:** I DIDN'T HEAR --

8           **MR. CHAZIN:** I'M UNCLEAR BASED ON YOUR COMMENT. SHE

9  INDICATED SHE WOULD BE CAREFUL. I'M UNCLEAR WHAT THE PREFACE TO

10 THIS QUESTION IS. IF I COULD HAVE IT REPHRASED?

11          **THE COURT:** YOU ARE REFERRING TO WHICH WITNESS?

12          **MS. WONG:** I'M REFERRING TO THE WITNESS THAT WE'VE

13 REFERRED TO AS THE CONFIDENTIAL INFORMANT IN THIS CASE.

14          **THE COURT:** ALL RIGHT. WELL, WHAT WAS THE -- I LOST

15 TRACK. WHAT WAS THE LAST QUESTION THAT YOU JUST ASKED?

16          **MS. WONG:** WHETHER, GIVEN THE FACT THAT A WITNESS HAS

17 A CRIMINAL HISTORY, WOULD ANY MEMBER OF THE JURY HAVE ANY

18 HESITATION BEING FAIR AND IMPARTIAL IN JUDGING THE PERSON'S

19 CREDIBILITY?

20          **THE COURT:** THE WAY YOU PHRASE IT, I THINK I CAN TELL

21 YOU LATER WHY I THINK THAT'S A LITTLE PROBLEMATIC. I KNOW YOU

22 ARE PROCEEDING IN GOOD FAITH. BUT I THINK THE MOST THAT YOU'RE

23 ENTITLED TO ASK AT THIS POINT IS TO SAY THAT, DURING THE TRIAL,

24 YOU WILL PRESENT A WITNESS WHO HAS A CRIMINAL RECORD, RIGHT?

25          **MS. WONG:** YES, YOUR HONOR.

1          **THE COURT:**  RIGHT?  AND IS THERE ANYONE HERE WHO

2    WOULD REFUSE CATEGORICALLY TO BELIEVE ANYTHING THAT SOMEBODY

3    WITH A CRIMINAL RECORD TESTIFIED TO?  IN OTHER WORDS, JUST AS A

4    MATTER OF PERSONAL ETHICS, THE JUROR WOULD SAY, NO WAY I'M GOING

5    TO BELIEVE ANYTHING THAT PERSON EVER SAYS BECAUSE THEY GOT A

6    CRIMINAL RECORD.  YOU CAN ASK THAT.  BUT I THINK WHEN YOU GET

7    BEYOND THAT, YOU ARE BEGINNING TO FRONT YOUR CASE, ASKING THE

8    JURORS HOW THEY'RE GOING TO VOTE.  I DON'T THINK THAT'S THE WAY

9    TO GO.

10          **MS. WONG:**  I APPRECIATE YOUR REFORMULATION, YOUR

11   HONOR.  THAT WAS FAR MORE CLEAR THAN WHAT I WAS TRYING TO GET

12   AT.

13          SO THE JUDGE'S QUESTION?

14          **THE COURT:**  ALL RIGHT.  IS THERE ANYONE HERE WHO

15   WOULD SAY, BECAUSE SOMEBODY HAS BEEN CONVICTED PREVIOUSLY OF A

16   CRIME, THAT THERE'S NO WAY YOU WOULD BELIEVE ANYTHING THEY SAID?

17   ANYONE THINK THAT?  ALL RIGHT.  NO ONE IS RAISING THEIR HAND.

18          THEN I THINK IT WOULD BE PROPER TO ALSO ASK THE

19   QUESTION -- WAIT.  WHO RAISED THEIR HAND?  ALL RIGHT.  THEN GO

20   AHEAD AND FOLLOW UP, MS. WONG.  FIRST GIVE US YOUR ANSWER.

21          MR. HERDA, EXPLAIN WHY YOU RAISED YOUR HAND.

22          **PROSPECTIVE JUROR HERDA:**  I JUST HAVE A CLARIFICATION

23   TO YOUR QUESTION.  I MEAN, FOR ME TO MAKE THAT STATEMENT, I'D

24   HAVE TO KNOW, YOU KNOW, WHAT THIS PERSON WAS EVER CHARGED WITH.

25   IS HE AN HABITUAL CRIMINAL?  I MEAN, I JUST CAN'T CATEGORICALLY

1  SAY, YEAH, I'LL BELIEVE THIS GUY IF I KNOW THIS GUY HAS BEEN

2  CONVICTED OF 20, 30 CRIMES AND HE'S BEEN A LIAR ALL THIS TIME.

3       **THE COURT:**  ALL RIGHT.  WELL, THEN --

4       **PROSPECTIVE JUROR HERDA:**  WAS IT PERJURY HE WAS

5  CONVICTED OF?

6       **THE COURT:**  THOSE ARE PERFECTLY NATURAL QUESTIONS TO

7  ASK, AND I DON'T KNOW THE ANSWER TO THEM.  AND WE'RE NOT GOING

8  TO START PREVIEWING THE EVIDENCE TO FIND OUT WHAT THE ANSWERS TO

9  THAT ARE.  BUT THAT IS A NORMAL REACTION THAT LOTS OF PEOPLE

10  WOULD HAVE, AND THERE'S NOTHING WRONG WITH THAT.

11       YOU WOULD BE EVALUATING IT CASE BY CASE.  THAT'S WHAT

12  A JURY IS SUPPOSED TO DO.

13       ALSO, BUILT INTO MS. WONG'S QUESTION IS THIS:  IS

14  THERE ANYONE WHO WOULD SAY, AS A MATTER OF PRINCIPLE, IT JUST

15  OFFENDS YOUR SENSE OF JUSTICE FOR THE UNITED STATES GOVERNMENT

16  TO BE OUT THERE IN BED WITH CRIMINALS AND UNDERCOVER PEOPLE WHO

17  HAVE DONE BAD THINGS IN THE PAST, AND THEY'RE OUT THERE WORKING

18  UNDERCOVER NOW FOR PURPOSES OF LAW ENFORCEMENT?  DOES THAT

19  OFFEND YOUR SENSE OF JUSTICE?  IF IT DOES, YOU SHOULD RAISE YOUR

20  HAND, BECAUSE THERE ARE PEOPLE WHO DO FEEL THAT WAY.  LET'S SEE

21  IF YOU'RE ONE OF THEM.

22       NO ONE IS RAISING THEIR HAND.  OKAY.

23       MS. NATHAN, ARE YOU RAISING YOUR HAND OR SCRATCHING

24  YOUR HEAD?

25       **PROSPECTIVE JUROR NATHAN:**  NO, I'M NOT RAISING MY

1    HAND.

2              **THE COURT:** OKAY. GO AHEAD, MS. WONG.

3              **MS. WONG:** A NUMBER OF YOU MENTIONED YOU WERE EITHER

4    VICTIMS OF CRIMES, OR YOU WERE WITNESSES TO CRIME. MY QUESTION

5    IS THIS: WAS THERE ANYTHING ABOUT YOUR EXPERIENCE WITH LAW

6    ENFORCEMENT AND YOUR ACTION WITH LAW ENFORCEMENT THAT WOULD MAKE

7    YOU LEAN ONE WAY OR THE OTHER, EITHER EXTREMELY FOR THE

8    GOVERNMENT OR EXTREMELY AGAINST THE GOVERNMENT, OR LAW

9    ENFORCEMENT?

10             FOR EXAMPLE, MS. PUGH, I THINK YOU MENTIONED YOU WERE

11   A WITNESS TO A MURDER AND THAT CASE IS STILL PENDING. IS THERE

12   ANYTHING ABOUT THE WAY THAT INVESTIGATION HAS PROCEEDED THAT

13   CONCERNS YOU? ARE YOU HAPPY WITH HOW IT'S PROCEEDING, OR

14   AMBIVALENT?

15             **PROSPECTIVE JUROR PUGH:** I GUESS AMBIVALENT. I

16   ACTUALLY FORGET ABOUT IT.

17             **THE COURT:** WE NEED THAT MICROPHONE TO GO OVER.

18             **PROSPECTIVE JUROR PUGH:** AMBIVALENT. I FORGET ABOUT

19   IT. ACTUALLY, I DIDN'T FORGET ABOUT IT. I JUST ASSUMED NOTHING

20   WAS GOING TO HAPPEN, BECAUSE I HADN'T HEARD ANYTHING. THEN WHEN

21   IT WAS REOPENED LAST YEAR, I HAD TO REMEMBER ALL OF IT. THEN I

22   DON'T -- I GUESS IT'S KIND OF CONFUSING, BECAUSE I DON'T KNOW

23   WHERE IT IS, AND THERE SEEMED TO BE A PERSON THAT NEEDED TO

24   CONTACT ME. WHEN I FINALLY CALLED THEM -- I THINK SHE CALLED

25   ONCE, AND I HAVEN'T HEARD FROM HER SINCE.

1          I GUESS IT'S A LITTLE DISCONCERTING WHEN I THINK

2   ABOUT IT, BUT WHEN I DON'T, WHICH IS MORE TIMES THAN NOT -- LIKE

3   IN MY DAY-TO-DAY LIFE, I DON'T EVER THINK ABOUT IT.  NOW THAT

4   I'M THINKING ABOUT IT, I THINK, OH, YEAH, THAT'S NOT FUN.

5          **MS. WONG:**  MS. SPATH, YOU MENTIONED YOU WERE A VICTIM

6   OF A HIT AND RUN, AND THERE WAS AN INVESTIGATION THAT FOLLOWED,

7   THAT THEY WEREN'T ABLE TO FIND THE PERPETRATOR, FROM WHAT I

8   UNDERSTAND.  DO YOU HAVE ANY FEELINGS AGAINST LAW ENFORCEMENT AS

9   A RESULT OF THEIR INABILITY TO FIND THE PERPETRATOR?

10          **PROSPECTIVE JUROR SPATH:**  I THINK ONE THING THAT

11  CONCERNED ME WITH MY INCIDENT IS THAT THE PERSON WHO HAD THE CAR

12  IS ALSO WAS UNDER AN ARREST WARRANT FOR ANOTHER CITY.  SO THIS

13  PERSON HAD OBVIOUSLY DONE SOMETHING EARLIER AND HAD NOT BEEN

14  APPREHENDED.  ACCORDING TO THE POLICE REPORT THAT PERSON WASN'T

15  DRIVING THE CAR WHEN MY ACCIDENT OCCURRED, BUT THE PERSON WHO

16  HAD ACCESS TO THE CAR WAS THROUGH THAT INDIVIDUAL.

17          **MS. WONG:**  BASED ON YOUR EXPERIENCE IN THAT CASE,

18  WOULD YOU BE ABLE TO BE FAIR AND IMPARTIAL IN EVALUATING A LAW

19  ENFORCEMENT --

20          **PROSPECTIVE JUROR SPATH:**  I BELIEVE SO.

21          **MS. WONG:**  MR. GEPHART, I THINK YOU MENTIONED YOU HAD

22  ONCE BEEN ARRESTED FOR A DUI, AND THE CHARGES WERE REDUCED.  IS

23  THERE ANYTHING ABOUT THAT EXPERIENCE THAT WOULD MAKE YOU BIASED

24  ONE WAY OR THE OTHER TOWARDS LAW ENFORCEMENT?

25          **PROSPECTIVE JUROR GEPHART:**  DEFINITELY NOT.  I WAS

1 YOUNG, AND I WAS 18. THE ZERO TOLERANCE LAW JUST PASSED. I WAS

2 A .01. I THINK THEY FELT A LITTLE SYMPATHETIC I JUST TURNED 18

3 AND THAT WHOLE THING, SO THEY REDUCED IT TO THAT. I FEEL I

4 BROKE THE LAW. SO I SERVED WHAT I HAD TO.

5     **MS. WONG:** THE ONE FINAL QUESTION FOR MS. BUETTELL.

6 AM I PRONOUNCING IT CORRECTLY?

7     YOU MENTION YOU DO SOME WORK WITH INMATES AT SAN

8 QUENTIN. IS THERE ANY PART OF YOUR JOB, AS A RESULT OF YOUR

9 INTERACTIONS WITH THOSE INMATES, THAT WOULD MAKE YOU MORE OR

10 LESS SYMPATHETIC TO A CRIMINAL DEFENDANT?

11     **PROSPECTIVE JUROR BUETTELL:** NO. I HAVE TO REMAIN

12 IMPARTIAL ALL THE TIME. I TAKE CARE OF MURDERERS. I STILL

13 REMAIN UNBIASED.

14     **MS. WONG:** I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

15     **THE COURT:** ALL RIGHT. THANK YOU, MS. WONG.

16     MR. CHAZIN.

17     **MR. CHAZIN:** THANK YOU, YOUR HONOR.

18     GOOD AFTERNOON, LADIES AND GENTLEMEN. I JUST WANT TO

19 THANK YOU VERY MUCH FOR COMING, BECAUSE WE KNOW IT'S VERY

20 DIFFICULT TAKING YOUR TIME OUT OF YOUR DAILY LIVES TO COME HERE

21 TODAY AND POTENTIALLY THE REST OF THE WEEK AND BEYOND. SO WE

22 REALLY APPRECIATE IT ON BEHALF OF MR. NOCHEZ. AS WELL, WE

23 APPRECIATE IT VERY MUCH.

24     SO ONE THING I JUST WANT TO POINT OUT VERY QUICKLY IS

25 THAT WE MAY EXCUSE MORE JURORS. IN FACT, WE HAVE MORE

1   PEREMPTORY CHALLENGES THAN THE PROSECUTION.  I WANT TO MAKE SURE

2   YOU UNDERSTAND THAT WE MAY EXCUSE MORE JURORS, BUT YOU SHOULDN'T

3   TAKE ANYTHING FROM THAT.  WE'RE JUST TRYING TO PICK THE MOST

4   FAIR AND IMPARTIAL JURY FROM OUR OPINION, FROM OUR DECISION

5   MAKING BETWEEN MR. SAFAI AND MYSELF AND MR. NOCHEZ.  THAT CAN BE

6   SOMETIMES VERY SUBJECTIVE AND NOT AN EASY TASK.  SO I JUST WANT

7   TO MAKE SURE THAT EVERYBODY UNDERSTANDS THAT.

8           NOW, ONE QUESTION I WANT TO FOLLOW UP JUST BRIEFLY ON

9   WHAT MR. -- EXCUSE ME, NOT THE PROSECUTION, BUT WHAT THE JUDGE

10  HAD DISCUSSED EARLIER WAS THAT YOU -- IS THERE ANYBODY HERE WHO

11  FEELS LIKE THEY REALLY WANT TO HEAR FROM MR. NOCHEZ?

12          AS WAS SAID EARLIER, HE HAS THE RIGHT NOT TO TESTIFY.

13  HE HAS THE RIGHT TO SOLELY RELY ON THE BURDEN OF PROOF OF THE

14  PROSECUTION.  WHAT I'M WONDERING IS, IS THERE ANYBODY, DESPITE

15  THAT, FEELS LIKE, WELL, I'D READILY LIKE TO HEAR FROM HIM

16  REGARDLESS?  IS THERE ANYBODY WHO FEELS THE NEED FOR THAT?

17  ANYBODY?

18          I WANT TO ASK YOU, BECAUSE I KNOW THESE QUESTIONS CAN

19  BE SOMEWHAT -- MAYBE QUESTIONS IN A WAY WE'RE USED TO HEARING OR

20  EXPECT TO HEAR IN COURT.  WHAT WE'RE REALLY ASKING IS FOR YOU TO

21  REALLY SEARCH INSIDE AND LOOK INSIDE YOURSELF TO FIND -- TO MAKE

22  SURE THAT YOU'RE TRULY CHECKING IN WITH YOURSELF AND THAT YOU

23  ARE BEING ENTIRELY HONEST WITH YOURSELF, BECAUSE SOMETIMES IT'S

24  HARD TO GET IN TOUCH WITH SOME OF THOSE FEELINGS:  ACTUALLY,

25  MAYBE, I AM, YOU KNOW, MAYBE I AM A LITTLE BIT PREJUDICED BY

1 SIMPLY THE FACT THAT MR. NOCHEZ, FOR INSTANCE, HAS BEEN CHARGED

2 IN THE CASE ALONE, AS I THINK WAS DISCUSSED EARLIER BY ONE OF

3 THE JURORS. I WANT TO MAKE SURE YOU'RE ALL CHECKING IN IN THAT

4 WAY.

5          IF ANYBODY HAS ANY FURTHER THOUGHTS THAT HAVE COME

6 UP, I WOULD ASK THAT YOU PLEASE LET US KNOW RIGHT NOW. OR

7 BEFORE WE'RE DONE WITH SELECTION. IS THERE ANYBODY RIGHT NOW

8 WHAT MAYBE HAS SECOND THOUGHTS AT ALL? THANK YOU.

9          NOW, ONE THING THAT I WANT TO POINT OUT IS THAT

10 MR. NOCHEZ HAS THE RIGHT TO EACH OF YOUR INDIVIDUAL VERDICTS,

11 THAT IS, IF YOU GET SELECTED TO THE JURY, YOU'LL GO BACK ONCE

12 THE EVIDENCE HAS BEEN TAKEN AND IT'S BEEN SUBMITTED, THE CASE

13 HAS BEEN SUBMITTED TO THE JURY. YOU'LL GO IN THE DELIBERATIONS

14 ROOM, THE JURY ROOM, AND DELIBERATE WITH YOUR FELLOW JURORS.

15          IF, AFTER CONSIDERABLE DELIBERATIONS, YOU MAY HAVE AN

16 OPINION DIFFERENT FROM THE OTHER JURORS IN THE CASE AND YOU

17 CAN'T BE CONVINCED OTHERWISE THROUGH REASONABLE DELIBERATIONS,

18 THEN MR. NOCHEZ HAS THE RIGHT TO HAVE YOUR INDIVIDUAL VERDICT IN

19 THE CASE.

20          IS THERE ANYBODY WHO FEELS LIKE IT WOULD BE DIFFICULT

21 TO MAINTAIN YOUR INDIVIDUAL SELF, YOUR INDIVIDUAL VERDICT ONCE

22 YOU GO IN THE JURY ROOM AND YOU'RE CONFRONTED, LET'S SAY, WITH

23 11 OTHER JURORS WHO MAY HAVE A DIFFERENT OPINION? IS THERE

24 ANYBODY WHO FEELS LIKE THAT WOULD BE TOO DIFFICULT?

25          **PROSPECTIVE JUROR PUGH:** I'M WONDERING WHY.

1              **THE COURT:**  WHERE'S OUR MICROPHONE?

2              **PROSPECTIVE JUROR PUGH:**  I WAS JUST CURIOUS OF WHY.

3          **MR. CHAZIN:**  WHY WHAT?

4              **PROSPECTIVE JUROR PUGH:**  WHY SOMEONE HAS ACCESS TO

5   SUCH KNOWLEDGE, WHAT WOULD BE THE POINT OF THAT?

6          **MR. CHAZIN:**  YOU MEAN WHY DOES SOMEBODY HAVE THE

7   RIGHT TO -- WHY DOES MR. NOCHEZ HAVE THE RIGHT TO YOUR

8   INDIVIDUAL VERDICT?

9              **PROSPECTIVE JUROR PUGH:**  YES.

10         **MR. CHAZIN:**  BECAUSE THAT'S WHAT THE LAW SAYS.  AND

11  THE QUESTION IS, DO YOU FEEL YOU COULD COMPLY WITH THAT?

12             **PROSPECTIVE JUROR PUGH:**  YES.  YEAH.

13         **MR. CHAZIN:**  ARE YOU SAYING YOU THINK IT WOULD BE

14  DIFFICULT TO DO THAT?

15             **PROSPECTIVE JUROR PUGH:**  NO.  I WAS JUST CURIOUS.

16          **THE COURT:**  WELL, IT TAKES 12 PEOPLE ON THE JURY, ALL

17  HAVE TO AGREE THAT THE GOVERNMENT HAS CARRIED ITS BURDEN OF

18  PROOF.  IF EVEN ONE PERSON ON THE JURY SAYS NO, THE GOVERNMENT

19  DIDN'T CARRY ITS BURDEN OF PROOF, AND THAT'S THE WAY IT ALL

20  COMES OUT, 11-TO-1, THAT JURY CANNOT CONVICT THE DEFENDANT AT

21  LEAST ON THAT COUNT.

22             SO MR. CHAZIN IS CORRECT.  IT HAS TO BE UNANIMOUS,

23  AND EACH INDIVIDUAL JUROR MUST MAKE THEIR OWN CONSCIENTIOUS

24  DECISION.

25             IN FACT, AT THE END OF THE CASE, WE NORMALLY POLL --

1    I MEAN, ASK EACH INDIVIDUAL JUROR IF THE VERDICT READ IS THEIR

2    INDIVIDUAL VERDICT.  YOU HAVE TO MAKE YOUR OWN INDIVIDUAL

3    DECISION AND NOT JUST GO WITH THE FLOW.

4              **PROSPECTIVE JUROR PUGH:**  RIGHT.  RIGHT.

5              **MR. CHAZIN:**  OKAY.  NOW, JUST TO FOLLOW UP ON THIS

6    ONE OTHER ISSUE.  EVERYONE WANTS TO BELIEVE THAT A LAW

7    ENFORCEMENT OFFICER'S TESTIMONY IS ACCURATE AND CREDIBLE.

8    YOU'LL HAVE TESTIMONY FROM FEDERAL LAW ENFORCEMENT OFFICERS, AT

9    LEAST ONE, IN THIS CASE.

10             SO, MY QUESTION TO YOU IS, IS THERE ANYBODY HERE WHO

11   FEELS SIMPLY BY THE FACT THAT THEY'RE A FEDERAL LAW ENFORCEMENT

12   OFFICER, THEIR TESTIMONY IS NECESSARILY GOING TO BE CREDIBLE?

13   DOES ANYBODY HERE FEEL THAT WAY?  OR IS THERE ANYBODY HERE WHO

14   FEELS THAT -- OR WHO -- IS EVERYBODY HERE WILLING TO LISTEN TO

15   THE TESTIMONY, EVALUATE EVEN THE LAW ENFORCEMENT OFFICER'S

16   TESTIMONY AND, THEREFORE, THEIR CREDIBILITY BASED UPON THE

17   TESTIMONY THAT THEY GIVE, AND ALSO THE SURROUNDING CIRCUMSTANCES

18   AND OTHER EVIDENCE IN THE CASE?  CAN EVERYBODY DO THAT?  IS

19   THERE ANYBODY WHO FEELS THAT MIGHT BE DIFFICULT?

20             THIS CASE MAY GO ON FOR SEVERAL DAYS.  WE MAY END

21   UP -- PERHAPS THE CASE WILL GO TO THE JURY FOR DELIBERATIONS ON

22   FRIDAY AFTERNOON, AND WE'LL SEND YOU INTO THE JURY ROOM AT

23   3:00 O'CLOCK ON FRIDAY AFTERNOON.  I THINK THE NATURAL

24   TEMPTATION WOULD BE TO WANT TO GET THAT -- GET THE MATTER OVER

25   WITH, SINCE IT'S FRIDAY AFTERNOON, BE DONE WITH IT, YOU'LL HAVE

1   YOUR WEEKEND; YOU WON'T HAVE TO COME BACK THE NEXT WEEK.

2         BUT WE WANT TO MAKE SURE -- AND I WANT TO ASK THAT

3   IF -- IS THERE ANYONE -- OR CAN EVERYONE HERE PROMISE THAT

4   THEY'LL GIVE THIS MATTER COMPLETE CONSIDERATION AND THE FULL

5   LENGTH OF TIME IT TAKES, REGARDLESS OF HOW LONG IT TAKES,

6   BECAUSE SOMETIMES THINGS TAKE LONGER THAN WE LIKE?

7         IS THERE ANYBODY WHO FEELS THAT WOULD BE DIFFICULT TO

8   DO OR WOULD BE TEMPTED TO WANT TO JUST GET THE MATTER DISPENSED

9   WITH AS SOON AS POSSIBLE?

10        MS. SNYDER -- OKAY, I BETTER MAKE SURE I HAVE THE

11  RIGHT PERSON.  I THINK YOU SAID YOUR HUSBAND WAS A SECRET

12  SERVICE.

13        **PROSPECTIVE JUROR SNYDER:**  YES.

14        **MR. CHAZIN:**  WE ARE GOING TO HAVE FEDERAL LAW

15  ENFORCEMENT OFFICERS.  ESSENTIALLY, THEY WILL BE FROM A SIMILAR

16  OCCUPATION POSITION AS YOUR HUSBAND HAD.  DO YOU THINK IT'S

17  GOING TO BE POSSIBLE TO BE ABLE TO DIFFERENTIATE OUT PERHAPS THE

18  RESPECT OR CONNECTION YOU HAVE WITH FEDERAL LAW ENFORCEMENT,

19  BECAUSE YOUR HUSBAND HAS THAT JOB, FROM THIS PARTICULAR

20  INDIVIDUAL OR WITNESS'S TESTIMONY?

21        **PROSPECTIVE JUROR SNYDER:**  ABSOLUTELY.  YOU KNOW, I

22  CONSIDER MYSELF TO BE VERY FAIR, AND I DON'T THINK A JOB TITLE

23  GIVES ANYONE -- IN MY MIND, YOUR JOB TITLE DOESN'T HAVE ANYTHING

24  TO DO WITH YOUR BEING HONEST OR DISHONEST.  I FEEL I WOULD JUDGE

25  FAIRLY THAT PERSON.

```
 1              MR. CHAZIN:  WHAT WOULD YOU THEN BASE IT ON?

 2         PROSPECTIVE JUROR SNYDER:  WHAT I HEAR.

 3              MR. CHAZIN:  MR. MORGAN, WE HAVEN'T HEARD TOO MUCH

 4    FROM YOU.  WOULD YOU LIKE TO SERVE AS A JUROR ON THIS CASE?

 5         PROSPECTIVE JUROR D. MORGAN:  I'D RATHER NOT, BUT,

 6    YES.

 7              MR. CHAZIN:  YOU WOULD IF YOU HAD TO?

 8         PROSPECTIVE JUROR D. MORGAN:  YES.

 9         THE COURT:  YOU'RE SAYING YOU WOULD RATHER NOT?

10         PROSPECTIVE JUROR D. MORGAN:  I WOULD RATHER NOT,

11    YES.

12              MR. CHAZIN:  WHY IS THAT?

13         PROSPECTIVE JUROR D. MORGAN:  WELL, I HAVEN'T WORKED

14    IN A COUPLE OF YEARS, AND I'M REALLY LOOKING FOR WORK, AND THIS

15    IS REALLY HURTING, BUT...

16              MR. CHAZIN:  THIS IS KIND OF A HARDSHIP?

17         PROSPECTIVE JUROR D. MORGAN:  I WILL DO IT.

18              MR. CHAZIN:  SO YOU'RE SAYING THIS IS A HARDSHIP ON

19    YOU TO HAVE TO BE HERE?

20         PROSPECTIVE JUROR D. MORGAN:  IT'S GOING TO BE A

21    LITTLE TOUGH, YEAH, PROBABLY MORE THAN MOST, BUT IF I HAVE TO, I

22    DO.

23              MR. CHAZIN:  OKAY.  IS THE FACT THAT IT'S A FINANCIAL

24    HARDSHIP ON YOU, WOULD YOU PREFER THAT -- I ASSUME, THEN, YOU

25    PREFER TO NOT BE SELECTED?
```

1          **PROSPECTIVE JUROR D. MORGAN:**  THAT WOULD BE

2   PREFERABLE.

3          **MR. CHAZIN:**  AND DO YOU THINK THE FACT THIS IS A

4   FINANCIAL HARDSHIP ON YOU, MIGHT CAUSE YOU TO WANT TO, FOR

5   INSTANCE, GET THE CASE OVER WITH AS SOON AS POSSIBLE?

6          **PROSPECTIVE JUROR D. MORGAN:**  NO, NO, NOT AT ALL.

7          **MR. CHAZIN:**  OKAY.  DO YOU THINK IN ANY WAY IT MIGHT

8   MAKE IT DIFFICULT FOR YOU TO SIT AS A FAIR AND IMPARTIAL JUROR,

9   THE FACT IT'S A HARDSHIP ON YOU?

10          **PROSPECTIVE JUROR D. MORGAN:**  NO, NO.  IT WON'T

11   AFFECT MY JUDGMENT AT ALL, NO.

12          **MR. CHAZIN:**  OKAY.  YOU WOULDN'T HAVE ANY OUTSTANDING

13   RESENTMENT AS A RESULT OF BEING HERE?

14          **PROSPECTIVE JUROR D. MORGAN:**  WHAT'S THAT?

15          **MR. CHAZIN:**  WOULD YOU HAVE ANY RESENTMENT,

16   POTENTIALLY, AS A RESULT OF BEING, LET'S SAY, FORCED HERE IF YOU

17   WERE SELECTED?

18          **PROSPECTIVE JUROR D. MORGAN:**  NO.

19          **MR. CHAZIN:**  MRS. YU, I KNOW THAT YOU SEEM, AND

20   UNDERSTANDABLY SO, PRETTY TIRED.

21          **PROSPECTIVE JUROR YU:**  YEAH.

22          **MR. CHAZIN:**  MY WIFE HAD TWO KIDS, AND I SEE THE

23   FATIGUE THAT'S SET IN IN THE PAST.  I'M JUST WONDERING IF YOU

24   FEEL LIKE IT MAY BE VERY DIFFICULT OR TOO DIFFICULT FOR YOU TO

25   SIT THROUGH A WHOLE WEEK OR MORE OF TESTIMONY, BEING HERE VERY

1 EARLY IN THE MORNING?  I JUST WANTED TO CHECK IN ABOUT THAT.  DO

2 YOU THINK THAT MIGHT COLOR YOUR WILLINGNESS OR SENSE OF BEING

3 ABLE TO SIT AS A JUROR IN THIS CASE?

4          **PROSPECTIVE JUROR YU:**  HONESTLY, I THINK IT WOULD BE

5 A BIT TOUGH, BECAUSE FOR MY JOB I'M NOT USED TO SITTING VERY

6 LONG PERIODS.  SO BEING STUCK TO A CHAIR IS NOT TYPICAL FOR MY

7 DAY.  SO HAVING TO BE IN A CHAIR IS VERY -- IT'S NOT VERY

8 COMFORTABLE.  I'M NOT COMPLAINING.  SO IF I GET PICKED, I'LL DO

9 IT.

10          **MR. CHAZIN:**  OKAY.  DO YOU THINK THERE MIGHT BE SOME

11 HESITANCY ABOUT WANTING TO DO IT, OR WILLINGNESS TO DO IT, SUCH

12 THAT IT MIGHT -- THAT MIGHT AFFECT YOU IN ANY WAY AS A JUROR?

13          **PROSPECTIVE JUROR YU:**  AT THIS MOMENT BEING A JUROR

14 IS NOT MY FIRST CHOICE.  AGAIN, IF I GET CHOSEN, THEN I WOULD

15 GLADLY DO MY CIVIL DUTY.

16          **MR. CHAZIN:**  NOW YOU SAID IT.  IT'S KIND OF, IF

17 CHOSEN, I WILL SERVE?

18          **PROSPECTIVE JUROR YU:**  (NODS HEAD.)

19          **MR. CHAZIN:**  MR. NOMBRADO?

20          **PROSPECTIVE JUROR NOMBRADO:**  YES.

21          **MR. CHAZIN:**  I NOTICE THAT YOU SAID THAT YOU ARE

22 WORKING 16-HOUR DAYS.

23          **PROSPECTIVE JUROR NOMBRADO:**  YES, SIR.

24          **THE COURT:**  I CAN RELATE TO THAT.  AND THAT'S VERY

25 DIFFICULT, I'M SURE.

1          **PROSPECTIVE JUROR NOMBRADO:**  YES, SIR.

2          **MR. CHAZIN:**  DO YOU THINK BECAUSE OF THE FACT THAT

3     YOU'RE WORKING 16-HOUR DAYS, THAT IT WOULD MAKE IT DIFFICULT FOR

4     YOU TO BE A JUROR IN THIS CASE?

5          **PROSPECTIVE JUROR NOMBRADO:**  YES, SIR.  IT'S VERY

6     DIFFICULT BECAUSE I'M ALWAYS SLEEPY.  NOW I'M SLEEPY.

7          **MR. CHAZIN:**  SO YOU'LL CONTINUE TO WORK THROUGH THIS

8     TRIAL?

9          **PROSPECTIVE JUROR NOMBRADO:**  YES, SIR.

10         **MR. CHAZIN:**  THIS WEEK?  AND SO YOU THINK IT WOULD BE

11    DIFFICULT TO PAY ATTENTION TO THE EVIDENCE AND REALLY TAKE

12    EVERYTHING IN?

13         **PROSPECTIVE JUROR NOMBRADO:**  I HOPE SO, SIR.

14         **MR. CHAZIN:**  HOW ABOUT AS FAR AS YOUR ENGLISH GOES,

15    ARE YOU ABLE TO UNDERSTAND EVERYTHING YOU'RE HEARING TODAY, OR

16    PART OF IT?

17         **PROSPECTIVE JUROR NOMBRADO:**  PART OF IT, BECAUSE I'M

18    NOT GRADUATED IN HIGH SCHOOL.  I'M ONLY INTERMEDIATE GRADUATE IN

19    THE PHILIPPINES.  IT'S HARD FOR ME TO UNDERSTAND.  MAYBE I GOT

20    ONLY 60 PERCENT ENGLISH TO UNDERSTAND.

21         **MR. CHAZIN:**  OKAY.  I THINK WHAT I'VE HEARD YOU SAY

22    IS, PARTICULARLY BECAUSE OF YOUR LONG WORK HOURS AND SUCH THAT,

23    AND YOUR INABILITY TO FOCUS, AND BECAUSE OF THOSE LONG WORK

24    HOURS, THAT YOU WOULD BE UNABLE TO BE ATTENTIVE AND FAIR AND

25    IMPARTIAL JUROR IN THE CASE?

1      **PROSPECTIVE JUROR NOMBRADO:**  YES, SIR.

2      **MR. CHAZIN:**  MR. LIU, I THINK YOU SAID THAT YOU'RE IN

3  CORPORATE -- WHAT IS YOUR POSITION AGAIN?

4      **PROSPECTIVE JUROR LIU:**  CORPORATE OPERATIONS.

5      **MR. CHAZIN:**  CORPORATE OPERATIONS.  COULD YOU

6  DESCRIBE EXACTLY WHAT THAT IS?

7      **PROSPECTIVE JUROR LIU:**  IT'S BASICALLY MAINTAINING

8  THE MAINTENANCE OF HEADQUARTERS BUILDING THAT WE RUN.

9  BASICALLY, SETTING UP ROOMS, ANY MEETING REQUESTS, ANY ODD JOBS

10  THAT NEED TO BE DONE AROUND THE BUILDING IN TERMS OF MAINTAINING

11  THE ATMOSPHERE OF THE BILLING.

12      **MR. CHAZIN:**  IS THERE ANY SECURITY ASPECT TO YOUR

13  POSITION?

14      **PROSPECTIVE JUROR LIU:**  NOT SO MUCH.  WE HAVE OUR

15  IN-HOUSE SECURITY, BUT WE ARE THE EYES AND EARS OF THE

16  DEPARTMENT, SO IN SOME ASPECT IT IS.

17      **MR. CHAZIN:**  OKAY.  IS THERE ANYTHING ABOUT THAT PART

18  OF YOUR JOB THAT YOU THINK MAY LEND ITSELF TO YOU BEING A JUROR

19  IN THE CASE OR DETRACT FROM IT?

20      **PROSPECTIVE JUROR LIU:**  I DON'T BELIEVE SO.  I CAN'T

21  SAY NOTHING CAN -- I CAN'T THINK OF ANYTHING RIGHT NOW THAT

22  WOULD.

23      **MR. CHAZIN:**  AND DO YOU DRAW ANY CONCLUSIONS SIMPLY

24  FROM THE FACT THAT MR. NOCHEZ IS HERE IN COURT AND HAS BEEN

25  CHARGED --

1              **PROSPECTIVE JUROR LIU:**  NO.

2              **MR. CHAZIN:**  AND DO YOU THINK YOU CAN SIT AS A FAIR

3  AND IMPARTIAL JUROR IN THIS CASE?

4              **PROSPECTIVE JUROR LIU:**  I THINK SO.

5              **MR. CHAZIN:**  DO YOU HAVE ANY QUESTION ABOUT THAT?

6              **PROSPECTIVE JUROR LIU:**  NO.

7              **MR. CHAZIN:**  BECAUSE WHEN YOU SAID "I THINK SO," YOU

8  KIND OF HAD A QUESTION ABOUT IT.

9              **PROSPECTIVE JUROR LIU:**  YEAH, I BELIEVE I CAN, YOU

10  KNOW, TO THE BEST OF MY ABILITY.

11             **MR. CHAZIN:**  OKAY.  DO YOU FEEL LIKE MR. NOCHEZ

12  SHOULD HAVE TO TAKE THE STAND AND TESTIFY IN HIS OWN BEHALF?

13             **PROSPECTIVE JUROR LIU:**  I DON'T BELIEVE SO.

14             **MR. CHAZIN:**  YOU'RE OKAY WITH HIM, IF HE TOTALLY --

15  IF WE RELY TOTALLY ON THE STATE OF THE EVIDENCE, IF WE DON'T

16  PRESENT ONE WITNESS, YOU CAN STILL EVALUATE THE TESTIMONY AND

17  THE EVIDENCE FROM THE PROSECUTION AND MAKE A DETERMINATION

18  WHETHER OR NOT THEY HAVE PROVEN THE CASE BEYOND A REASONABLE

19  DOUBT AS TO EVERY ELEMENT THEY'RE REQUIRED TO PROVE?

20             **PROSPECTIVE JUROR LIU:**  I BELIEVE SO.

21             **THE COURT:**  HOW CLOSE TO DONE ARE YOU?

22             **MR. CHAZIN:**  EXCUSE ME.

23             **THE COURT:**  ARE YOU ABOUT DONE?

24             **MR. CHAZIN:**  IF I COULD HAVE ONE MOMENT, YOUR HONOR.

25             **THE COURT:**  OF COURSE.

1          **MR. CHAZIN:**  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  MAY I SEE COUNSEL AT THE

3    SIDE?  DO YOU HAVE ANY MORE QUESTIONS OVER THERE, MS. WONG, ANY

4    FOLLOW-UP QUESTIONS?

5          **MS. WONG:**  NO, YOUR HONOR.

6          **THE COURT:**  LET ME SEE COUNSEL AT THE SIDEBAR.

7                    (SIDEBAR DISCUSSION HELD)

8          **THE COURT:**  COME IN CLOSE.  DOES ANYONE HAVE ANY

9    CHALLENGES FOR CAUSE?

10          **MR. LEUNG:**  YOUR HONOR, THE OTHER QUESTION -- THERE

11   IS ANOTHER GENTLEMEN WHO INDICATED HIS ENGLISH IS ONLY

12   60 PERCENT.

13          **THE COURT:**  YES, I UNDERSTAND THAT.  MR. CHAZIN, YOU

14   ARE THE ONE THAT BROUGHT THAT OUT.  ARE YOU GOING TO MOVE TO

15   CHALLENGE HIM FOR CAUSE?

16          **MR. CHAZIN:**  YES, PARTICULARLY BECAUSE HE'S SAYING

17   THAT HE DOESN'T THINK HE COULD CONCENTRATE.  YOU KNOW, HE'S

18   WORKING 16-HOUR DAYS.  THE TWO COMBINED, I WOULD SAY --

19          **THE COURT:**  HOW ABOUT MS. ORTA THEN?  HOW DO YOU

20   DISTINGUISH THE TWO?

21          **MR. CHAZIN:**  MR. NOMBRADO, TO ME, THE ISSUE IS THE

22   FACT HE'S WORKING 16-HOUR DAYS THROUGH THE TRIAL, WHICH DOESN'T

23   LEAVE MANY HOURS LEFT, IF ANY, FOR SLEEP.

24          **THE COURT:**  DO YOU TWO BOTH STIPULATE TO EXCUSING

25   HIM?

1          **MR. LEUNG:**  WE'LL STIPULATE, YOUR HONOR.

2          **THE COURT:**  MR. CHAZIN?

3          **MR. CHAZIN:**  YES.

4          **THE COURT:**  ALL RIGHT.  I GUESS I WILL HAVE TO EXCUSE

5   HIM.

6          ANY OTHER CHALLENGES FOR CAUSE?

7          **MR. CHAZIN:**  I DON'T, NO.

8          **THE COURT:**  WHAT?

9          **MR. LEUNG:**  NONE FROM THE GOVERNMENT, YOUR HONOR.

10         **THE COURT:**  THANK YOU.

11         ALL RIGHT.

12                 (SIDEBAR DISCUSSION CONCLUDED.)

13         **THE COURT:**  MR. NOMBRADO, WE'RE GOING TO EXCUSE YOU

14  ON ACCOUNT OF SOME OF THE COMMENTS YOU JUST MADE.  THANK YOU FOR

15  COMING TODAY.  YOU MAY GO BACK TO THE JURY ASSEMBLY ROOM FOR

16  FURTHER INSTRUCTIONS.  THANK YOU AGAIN.

17         **PROSPECTIVE JUROR NOMBRADO:**  THANK YOU, YOUR HONOR.

18         **THE COURT:**  ALL RIGHT.  LET'S CALL A NAME TO REPLACE

19  MR. NOMBRADO.

20         **THE CLERK:**  GARY MOE, M-O-E.

21         **THE COURT:**  ALL RIGHT.  MR. MOE?

22         **PROSPECTIVE JUROR MOE:**  YES, SIR.

23         **THE COURT:**  PLEASE COME FORWARD.  WHERE'S OUR

24  MICROPHONE?  HOW ARE YOU TODAY?

25         **PROSPECTIVE JUROR MOE:**  FINE, SIR.

1          **THE COURT:**  DON'T STICK ANYBODY WITH THAT UMBRELLA.

2          NOW, ANY HARDSHIP ISSUE FOR YOU?

3          **PROSPECTIVE JUROR MOE:**  NO, SIR.

4          **THE COURT:**  CAN YOU -- MR. CHAZIN, WOULD YOU MIND

5  ROTATING THE CHART ABOUT 30 DEGREES?  AND PLEASE GIVE US THE

6  BIOGRAPHICAL INFORMATION.

7          **PROSPECTIVE JUROR MOE:**  NAME IS GARY MOE.  I LIVE IN

8  THE VILLAGE OF KENWOOD IN SONOMA COUNTY.  COLLEGE EDUCATED.

9  RECENTLY RETIRED ABOUT A YEAR AGO AS ASSISTANT SUPERINTENDENT

10 FOR THE SONOMA COUNTY OF EDUCATION.  CURRENTLY WORKING PART TIME

11 FOR MIWOKS -- AT MIWOK SCHOOL AS A PRINCIPAL IN THE OLD ADOBE

12 SCHOOL DISTRICT TWO DAYS A WEEK.  BELONG TO SOME PROFESSIONAL

13 ORGANIZATIONS RELATED TO EDUCATION.  SIERRA CLUB, A COUPLE OF

14 OUTDOOR THINGS.  I DO A LOT OF HIKING, SKIING, GOLFING, STUFF

15 LIKE THAT, A LOT OF READING.

16         MARRIED 35 YEARS TO MARLENE SUMMERS MOE.  SHE'S A

17 RETIRED EDUCATOR.  CHILDREN, I'VE GOT TWO.  ONE IS 23, LIVES IN

18 KENTUCKY, A STUDENT IN CINCINNATI AND WORKS IN THE AIRLINE

19 INDUSTRY, AND ONE THAT'S 28 AND WORKS FOR THE PRODUCE INDUSTRY

20 IN SANTA ROSA.

21         I HAVE SERVED ON A JURY BEFORE, A CIVIL CASE.  IT DID

22 REACH A CONCLUSION.  I'VE NEVER BEEN IN THE MILITARY OR LAW

23 ENFORCEMENT.  I HAVE BEEN A PARTY OR A WITNESS IN A COUPLE OF

24 SITUATIONS.  I WAS INVOLVED IN APPREHENDING A MUGGER, PURSE

25 SNATCHER, AND HAD TO TESTIFY IN COURT AGAINST THAT PERSON.  AND

1   OUR HOUSE WAS BURGLARED A FEW YEARS AGO, AND WE LOST A FEW

2   THOUSAND DOLLARS IN JEWELRY.  THAT'S ABOUT IT.

3           **THE COURT:**  ALL RIGHT.  DID YOU HEAR ALL THE

4   QUESTIONS I ASKED BEFORE?

5           **PROSPECTIVE JUROR MOE:**  YES, SIR.

6           **THE COURT:**  DID YOU PAY ATTENTION TO THEM?

7           **PROSPECTIVE JUROR MOE:**  TRIED.

8           **THE COURT:**  DO YOU HAVE THOSE IN MIND NOW?

9           **PROSPECTIVE JUROR MOE:**  YES.

10          **THE COURT:**  ALL RIGHT.  WOULD YOU HAVE RAISED YOUR

11  HAND TO ANY OF THOSE QUESTIONS?

12          **PROSPECTIVE JUROR MOE:**  NO.

13          **THE COURT:**  WELL, THE ONE ABOUT BEING A VICTIM OF A

14  CRIME, SOUNDS LIKE YOU HAVE BEEN THE VICTIM OF A CRIME.

15          **PROSPECTIVE JUROR MOE:**  YES.

16          **THE COURT:**  BUT YOU ALREADY MENTIONED THAT.  ANYTHING

17  ELSE?

18          **PROSPECTIVE JUROR MOE:**  NO.

19          **THE COURT:**  THAT YOU WOULD HAVE -- ALL RIGHT.  DO YOU

20  KNOW ANY OF THE PARTIES, ANY OF THE LAWYERS, ANYTHING ABOUT THIS

21  CASE?

22          **PROSPECTIVE JUROR MOE:**  NO, I DO NOT.

23          **THE COURT:**  HAVE YOU EVER YOURSELF EVER WORKED FOR

24  LAW ENFORCEMENT?

25          **PROSPECTIVE JUROR MOE:**  NO.

1           **THE COURT:**  ANY OF YOUR LOVED ONES?

2           **PROSPECTIVE JUROR MOE:**  NO.

3           **THE COURT:**  ALL RIGHT.  DID YOU HAVE IN MIND ALL

4   THOSE CONSTITUTIONAL RIGHTS THAT I DESCRIBED?

5           **PROSPECTIVE JUROR MOE:**  YES, SIR.

6           **THE COURT:**  DO YOU UNDERSTAND THAT THEY'RE IMPORTANT?

7           **PROSPECTIVE JUROR MOE:**  I DO.

8           **THE COURT:**  AND WHETHER YOU AGREE WITH THEM OR NOT,

9   THEY'RE THE LAW OF THE LAND, AND YOU MUST FOLLOW THEM IF YOU'RE

10  SELECTED AS A JUROR.  DO YOU UNDERSTAND THAT?

11          **PROSPECTIVE JUROR MOE:**  I DO.

12          **THE COURT:**  THAT INCLUDES THE PRESUMPTION OF

13  INNOCENCE, THE BURDEN OF PROOF BEING ON THE GOVERNMENT, THE FACT

14  THAT THE DEFENDANT DOES NOT HAVE TO TESTIFY, YOU COULD NOT HOLD

15  IT AGAINST HIM IN ANY WAY IF HE CHOSE NOT TO TESTIFY?  DO YOU

16  UNDERSTAND ALL OF THOSE RIGHTS?

17          **PROSPECTIVE JUROR MOE:**  YES, SIR.

18          **THE COURT:**  AND ARE YOU WILLING TO HONOR THOSE RIGHTS

19  IN THIS CASE AS A JUROR?

20          **PROSPECTIVE JUROR MOE:**  I WILL.

21          **THE COURT:**  YOUR FAVORITE BOOK, MOVIE IN THE LAST FEW

22  MONTHS?

23          **PROSPECTIVE JUROR MOE:**  "THREE CUPS OF TEA" BY

24  MORTENSON ABOUT BUILDING A GIRLS SCHOOLS IN PAKISTAN AND

25  AFGHANISTAN.

1    WHAT WAS THE OTHER PART?

2    **THE COURT:**  WOULD YOU BE A GOOD JUROR?

3    **PROSPECTIVE JUROR MOE:**  I HOPE SO.  I BELIEVE IN THE

4 PROCESS AND WOULD PUT ALL MY ENERGY INTO IT.

5    **THE COURT:**  WHAT WOULD MAKE YOU A GOOD JUROR, OTHER

6 THAN BELIEVING IN THE PROCESS?

7    **PROSPECTIVE JUROR MOE:**  COMMITMENT TO FAIRNESS.

8    **THE COURT:**  ALL RIGHT.  ANY TROUBLE GETTING HERE AT

9 7:45 IN THE MORNING?

10    **PROSPECTIVE JUROR MOE:**  IT'S A THRILLING CHALLENGE.

11    **THE COURT:**  WELL, WOULD YOU DO IT?

12    **PROSPECTIVE JUROR MOE:**  YES, SIR.

13    **THE COURT:**  LET ME ASK YOU THE ULTIMATE QUESTION,

14 WHICH IS THE KEY THING.  I'LL DIVIDE IT IN TWO PARTS.

15    WOULD YOU BE FAIR AND OBJECTIVE IN LISTENING TO THE

16 EVIDENCE, CAREFULLY LISTEN TO IT WITHOUT ANY BIAS, AND THEN

17 DECIDE AT THE END OF THE CASE WHETHER OR NOT THE GOVERNMENT HAD

18 CARRIED ITS BURDEN OF PROOF BEYOND A REASONABLE DOUBT?

19    **PROSPECTIVE JUROR MOE:**  I BELIEVE I CAN.

20    **THE COURT:**  AND WOULD YOU DO THAT?

21    **PROSPECTIVE JUROR MOE:**  YES, SIR.

22    **THE COURT:**  NO MATTER WHAT YOU MAY FEEL ABOUT THE

23 LAW, WILL YOU FOLLOW THE LAW AS I TELL YOU THE LAW IS AT THE END

24 OF THE CASE?

25    **PROSPECTIVE JUROR MOE:**  YES, SIR.

```
 1            THE COURT:  ALL RIGHT.  IS THERE ANYTHING ELSE THAT
 2   COMES TO MIND THE LAWYERS SHOULD KNOW OR I SHOULD KNOW THAT MAY
 3   BEAR UPON YOUR ABILITY TO BE FAIR AND IMPARTIAL?
 4            PROSPECTIVE JUROR MOE:  I DON'T BELIEVE SO.
 5            THE COURT:  ALL RIGHT.  QUESTIONS BY THE GOVERNMENT?
 6            MS. WONG:  NONE, YOUR HONOR.
 7            THE COURT:  QUESTIONS BY THE DEFENSE?
 8            MR. CHAZIN:  JUST BRIEFLY.
 9            MR. MOE, YOU INDICATED, I GUESS, THAT YOU WERE
10   INVOLVED IN APPREHENDING A MUGGER AT ONE POINT.  YOU HAD TO --
11   IS THERE ANYTHING ABOUT THAT EXPERIENCE -- CAN YOU DESCRIBE A
12   LITTLE BIT MORE ABOUT HOW THAT MAY HAVE IMPACTED YOU AS WE SIT
13   HERE TODAY?
14            PROSPECTIVE JUROR MOE:  IT WAS ABOUT 30 YEARS AGO,
15   AND SOME GUY MUGGED AN OLD WOMAN ON THE STREET, AND I CHASED HIM
16   FOR ABOUT TWO BLOCKS.  THE POLICE APPREHENDED HIM.  I IDENTIFIED
17   HIM AND HAD TO TESTIFY AGAINST HIM.
18            MR. CHAZIN:  WAS THAT DIFFICULT IN COURT, TO HAVE TO
19   BE A WITNESS AND TESTIFY?
20            PROSPECTIVE JUROR MOE:  NO.
21            MR. CHAZIN:  HAVE YOU EVER BEEN A VICTIM OF A CRIME?
22            PROSPECTIVE JUROR MOE:  MY HOME WAS BURGLARIZED, AND
23   WE LOST SOME STUFF.
24            MR. CHAZIN:  IS THERE ANYTHING ABOUT THAT EXPERIENCE
25   THAT MAY AFFECT YOU TODAY WHERE THERE IS SOME IMPLICATION OF
```

1   STOLEN VEHICLES AND SIMILAR --

2           **PROSPECTIVE JUROR MOE:**  I DON'T BELIEVE SO.

3           **MR. CHAZIN:**  EXCUSE ME?

4           **PROSPECTIVE JUROR MOE:**  I DON'T BELIEVE SO.

5           **MR. CHAZIN:**  IS THERE ANYBODY CLOSE TO YOU, A LOVED

6   ONE OR FRIEND, WHO HAS BEEN A VICTIM AS WELL, FAMILY MEMBER OR

7   FRIEND?

8           **PROSPECTIVE JUROR MOE:**  NO, SIR.

9           **MR. CHAZIN:**  NO?  OKAY.

10          I HAVE NO FURTHER QUESTIONS.

11          **THE COURT:**  ALL RIGHT.  WITHOUT -- DO I NEED TO HAVE

12  A SIDEBAR, OR CAN I JUST ASK YOU ON THE RECORD NOW DO WE NEED A

13  SIDEBAR FOR ANY REASON?

14          **MR. CHAZIN:**  NO.

15          **MR. LEUNG:**  NOT FROM THE GOVERNMENT, YOUR HONOR.

16          **MR. CHAZIN:**  NO, YOUR HONOR.

17          **THE COURT:**  OTHER THAN WHAT THE COURT HAS ALREADY

18  RULED ON, ARE THERE ANY -- MAY  WE PASS THE PANEL FOR CAUSE THE

19  32?

20          **MR. CHAZIN:**  YES.

21          **MR. LEUNG:**  YES, YOUR HONOR.

22          **THE COURT:**  MR. CHAZIN?

23          **MR. CHAZIN:**  YES.

24          **THE COURT:**  ALL RIGHT.  SO WE'VE REACHED A MILESTONE

25  IN THE SELECTION OF THE JURY.  LET ME EXPLAIN TO ALL OF YOU WHAT

1  IS HAPPENING.

2          WE'VE NOW REACHED THE POINT WHERE YOU 32 HAVE BEEN

3  DETERMINED TO BE FAIR AND IMPARTIAL, AND THE THING IS WE DON'T

4  NEED 32, WE NEED 14.  WE ARE ABOUT TO EMBARK ON THE PROCESS

5  WHEREBY THE LAWYERS PASS A SHEET THAT LOOKS LIKE THIS BACK AND

6  FORTH, AND THEY WILL WRITE DOWN THE NAMES OF THOSE THAT THEY

7  WOULD LIKE TO, IN THE EXERCISE OF THEIR JUDGMENT, REMOVE FROM

8  CONSIDERATION, AND THE ONES WHO REMAIN, THE 14 WHO REMAIN, WILL

9  BE OUR JURY.  THAT'S THE WAY IT WORKS.

10          NOW, I NEED TO ASK YOU TO, UNLESS THE LAWYERS WOULD

11  LIKE TO ASK THE JURORS TO TAKE A BREAK, WE WILL ASK YOU ALL TO

12  STAY HERE.  WHAT ARE YOUR DRUTHERS ON THAT?

13          **MR. LEUNG:**  THE GOVERNMENT IS FINE WITH HAVING THE

14  JURORS HERE.

15          **THE COURT:**  YOU WANT TO LEAVE THE JURORS HERE?

16          **MR. LEUNG:**  THAT'S FINE WITH THE GOVERNMENT.

17          **MR. CHAZIN:**  I'M SORRY?

18          **THE COURT:**  DO YOU WANT TO HAVE THE JURORS PRESENT

19  WHILE YOU PASS THE SHEET BACK AND FORTH?  WE ARE NOT GOING TO

20  ANNOUNCE IT AS YOU GO.  IT WILL ONLY BE ANNOUNCED AT THE END.

21  LET'S JUST HAVE THE JURORS STAY HERE.  SOMETIMES IT'S HELPFUL IN

22  MAKING YOUR DECISIONS TO BE ABLE TO LOOK OUT THERE AND SEE WHO'S

23  WHO.

24          **MR. CHAZIN:**  YES.

25          **THE COURT:**  I HAVE TO APOLOGIZE IN ADVANCE.  THIS IS

1  GOING TO TAKE SOME TIME FOR THE LAWYERS TO DO THIS.  IF YOU HAVE

2  A BOOK OR SOMETHING TO READ WHILE WE DO THIS, THAT WOULD BE

3  GOOD.

4          THIS IS THE LAST OPPORTUNITY, THOUGH.  IS THERE

5  ANYONE OUT THERE AMONG YOU 32 WHO ARE SAYING, MAN, I SHOULD HAVE

6  SAID THAT, OR I GOT TO SAY ONE MORE, OH, I BETTER NOT.  I

7  PROMISE YOU, IF YOU ARE SELECTED, YOU WILL NOT BE EXCUSED ON

8  ACCOUNT OF ANYTHING THAT YOU COULD HAVE RAISED TODAY.

9          THE REASON IS THE LAWYERS ARE ABOUT TO MAKE THEIR

10  DECISIONS BASED UPON WHAT YOU TOLD US AND YOUR WILLINGNESS TO

11  SERVE.  SO IF THERE'S SOME REASON WHY YOU THINK YOU CAN'T SERVE,

12  YOU HAVE TO BRING IT UP NOW.  I'M GIVING YOU A LAST CHANCE.

13  RAISE YOUR HAND IF THERE'S SOMETHING YOU WOULD LIKE TO BRING UP.

14          WE HAVE MS. ORTA.  LET'S HAVE THE MICROPHONE.

15          MS. ORTA, WHAT WOULD YOU LIKE TO SAY?

16          **PROSPECTIVE JUROR ORTA:**  HOW I BE PART OF THE JURY IF

17  I DON'T UNDERSTAND ONE HUNDRED PERCENT OF THE CASE?

18          **THE COURT:**  WELL, YOU'VE ALREADY MADE THAT POINT, AND

19  I HAVE TAKEN THAT INTO CONSIDERATION, AND I'VE ALREADY MADE A

20  RULING ON THAT POINT.  SO IS THERE ANYTHING NEW YOU WANT TO

21  BRING UP BEYOND YOUR ENGLISH?  IS THERE ANYTHING ELSE YOU WANT

22  TO -- LET ME JUST -- LET ME JUST ASK YOU THIS QUESTION:  ARE YOU

23  ABLE TO SPEAK THE ENGLISH LANGUAGE?

24          **PROSPECTIVE JUROR ORTA:**  I ABLE TO SPEAK ENGLISH, BUT

25  BASIC ENGLISH.

1            THE COURT:  ALL RIGHT.  ALL RIGHT.  AND DID YOU FILL

2   OUT THE JUROR QUALIFICATION FORM?  THE ANSWER IS YES, I SAW IT.

3   DIDN'T YOU FILL IT OUT?

4            PROSPECTIVE JUROR ORTA:  I DID.

5            THE COURT:  ALL RIGHT.  SO YOU'VE ALREADY -- THE

6   LAWYERS ARE FREE TO TAKE INTO ACCOUNT THE FACT THAT YOU DON'T

7   FULLY UNDERSTAND ENGLISH, BUT I AM UNABLE TO EXCUSE YOU UNDER

8   THE STATUTE ON ACCOUNT OF THE FACT THAT YOU DON'T UNDERSTAND

9   EVERYTHING.

10            SO IS THERE ANYTHING ELSE YOU WOULD LIKE TO BRING UP

11   CONCERNING YOUR SERVICES AS SERVICE AS A JUROR?

12            PROSPECTIVE JUROR ORTA:  ONLY THAT.

13            THE COURT:  I DIDN'T HEAR YOU.

14            PROSPECTIVE JUROR ORTA:  IT'S ONLY FOR MY ENGLISH.

15            THE COURT:  ALL RIGHT.  WE UNDERSTAND THAT POINT.

16   ANYTHING ELSE?

17            PROSPECTIVE JUROR ORTA:  NOTHING ELSE.

18            THE COURT:  NOTHING ELSE?

19            PROSPECTIVE JUROR ORTA:  NO, NOTHING ELSE.

20            THE COURT:  ANYONE ELSE WANT TO BRING UP A POINT THAT

21   YOU WANT US TO BE AWARE OF BEFORE THE LAWYERS MAKE THEIR FINAL

22   DECISIONS?  ALL RIGHT.  NO ONE ELSE IS RAISING THEIR HAND.  ALL

23   RIGHT.

24            AT THIS TIME, WHO HAS THE CHALLENGE SHEET?

25            MR. LEUNG:  I THINK WE ALL DO, YOUR HONOR.  WHICH

1   SHEET SHOULD WE USE?

2          **THE COURT:**  WE JUST USE ONE.  YOU PASS IT BACK AND

3   FORTH.  THE GOVERNMENT GOES FIRST.  WE DON'T ANNOUNCE THIS AS WE

4   GO ALONG.

5          THE LAWYERS ARE GOING TO FILL THIS OUT.  IT COULD

6   TAKE UP TO 20 TO 30 MINUTES TO GET THIS DONE.  I AM -- LET ME,

7   BEFORE WE DO THAT, BEFORE WE DO THAT, JUST ONE SECOND.

8          I WANT -- I WANT TO GIVE THE LAWYERS ONE OTHER

9   CHANCE.  MR. CHAZIN, BEFORE YOU WRITE IN ANY CHALLENGES,

10  MR. LEUNG, BASED ON ANYTHING THAT YOU HEARD MS. ORTA SAY, DO YOU

11  WANT TO CHANGE YOUR MIND ABOUT ANYTHING THAT, ANY RULING THAT'S

12  PREVIOUSLY BEEN MADE?

13          **MR. CHAZIN:**  NO, YOUR HONOR.

14          **MR. LEUNG:**  YOUR HONOR, CAN WE APPROACH?

15          **THE COURT:**  ALL RIGHT.  WE'LL HAVE A SIDEBAR.

16                  (SIDEBAR DISCUSSION HELD AS FOLLOWS:)

17          **THE COURT:**  ALL RIGHT.  WE ARE AT THE SIDEBAR.  GO

18  AHEAD.

19          **MR. LEUNG:**  YOUR HONOR, I UNDERSTAND THE COURT HAS

20  MADE A FINDING REGARDING MS. ORTA.  IN LIGHT OF HER OWN

21  CONTINUED RESERVATION ABOUT HER ABILITY TO SPEAK ENGLISH, THE

22  GOVERNMENT IS CONCERNED SHE'LL SOMEHOW NOT PARTICIPATE IN

23  DELIBERATIONS, IF NOT BECAUSE OF AN ACTUAL LACK OF FACILITY IN

24  ENGLISH, BUT A PERCEIVED LACK OF FACILITY IN ENGLISH.  SHE

25  CLEARLY SEEMS CONCERNED ABOUT HER OWN ABILITY TO ASSUME THE

1  DUTIES OF A JUROR.

2           **THE COURT:**  MR. CHAZIN, WHAT DO YOU SAY TO THAT?

3           **MR. CHAZIN:**  I HAVE PASSED FOR CAUSE, AND I'M

4  PREPARED TO SUBMIT IT ON THE FACT THAT IT APPEARS THAT SHE MEETS

5  THE CODE.

6           **MR. LEUNG:**  WELL, YOUR HONOR, QUITE FRANKLY, THAT

7  JURY QUESTIONNAIRE FORM IS NOT REALLY THE MOST CHALLENGING.

8           **THE COURT:**  THAT'S WHAT THE STATUTE CALLS OUT.

9           **MR. LEUNG:**  THAT'S WHAT THE STATUTE CALLS OUT.

10  THAT'S ALSO WHAT VOIR DIRE IS FOR, AS WELL, IT'S TO SORT OUT

11  THOSE WHO MIGHT GET PAST THE JURY QUESTIONNAIRE.

12           **THE COURT:**  I'M GOING TO SAY THIS AS SOFTLY AS I CAN.

13  MS. ORTA'S SPANISH.  SHE SPEAKS SPANISH.  IF I WERE TO EXCUSE

14  HER AND THERE WAS A CONVICTION, MR. CHAZIN WOULD APPEAL ON THE

15  GROUND THAT WE HAD EXCUSED SOMEBODY OF HER NATIONALITY UNFAIRLY.

16  I DON'T THINK THAT I WANT TO BE IN THAT POSITION.  I THINK THAT

17  I AGREE WITH THE GOVERNMENT THAT SHE IS UNLIKELY TO BE A GOOD

18  JUROR, BUT I'M GOING TO LET MR. CHAZIN TAKE HIS OWN MEDICINE

19  HERE.  IF IT TURNS OUT THERE'S A CONVICTION, DON'T BLAME HER FOR

20  THE CONVICTION, MR. CHAZIN.

21           I THINK THERE'S CERTAINLY GROUNDS FOR ANYONE TO

22  EXERCISE A GOOD FAITH PEREMPTORY AGAINST HER, BUT I DON'T HAVE

23  THE AUTHORITY.  I'VE LOOKED FOR IT.  I THINK THAT I CANNOT ON

24  WHAT I KNOW EXCUSE HER FOR CAUSE, BECAUSE SHE FILLED OUT THE

25  FORM AND SHE'S ABLE TO SPEAK ENGLISH.

1           SO THAT'S AS FAR AS I'M GOING TO GO.  I'M NOT GOING

2    TO EXCUSE HER FOR CAUSE.

3           MR. CHAZIN, YOU WIN THIS ONE, BUT I QUESTION WHETHER

4    OR NOT AT THE END OF THE DAY IT'S -- JUST DON'T COME BACK LATER

5    IF THERE'S A CONVICTION AND SAY SHE SHOULDN'T HAVE BEEN ON THE

6    JURY, BECAUSE YOU ARE THE ONE THAT COULD TAKE HER OFF.

7           **MR. CHAZIN:**  I THINK IT WOULD BE HARD FOR ME TO SAY

8    THAT IF I PASSED FOR CAUSE.

9           **THE COURT:**  THAT'S TRUE.

10          **MR. CHAZIN:**  BUT I DO WANT TO ACTUALLY MAKE AN

11   OBJECTION NOW TO THE PETIT JURY AS A WHOLE AS NOT REPRESENTING A

12   FAIR CROSS-SECTION OF THE COMMUNITY.  FROM WHAT I'VE SEEN HERE

13   TODAY, IT DOESN'T APPEAR THAT'S THE CASE, AND SO I WOULD ASK TO

14   LODGE THAT OBJECTION FOR THE RECORD.

15          **THE COURT:**  WELL, I THINK THAT'S A BALONEY OBJECTION.

16   THIS IS A VERY GOOD CROSS-SECTION, ONE OF THE BEST I'VE EVER

17   SEEN.  I'M OVERRULING THAT OBJECTION.  YOUR POINT IS MADE FOR

18   THE RECORD, BUT IT'S NOT WELL FOUNDED.

19          ANYTHING MORE TO RAISE AT THE SIDEBAR?

20          **MR. CHAZIN:**  I WOULD JUST NOTE THAT THE -- WELL, I

21   GUESS THE -- I DON'T KNOW IF THAT'S -- I THINK IT IS -- I WOULD

22   ASK THAT THEIR DEMOGRAPHICS BE MADE PART OF THE RECORD.  I THINK

23   THEY ARE -- BY WAY OF THEIR QUESTIONNAIRE THEY FILLED OUT, I

24   BELIEVE THERE'S ONLY PERHAPS THREE HISPANIC PEOPLE IN THE COURT

25   POOL, THREE OR FOUR AT THE MOST, AND I THINK TWO AFRICAN

 1  AMERICANS.  SO THAT'S THE BASIS FOR MY OBJECTION.

 2          **MR. LEUNG:**  YOUR HONOR, I WOULD NOTE THAT THE LAW

 3  DOES NOT REQUIRE THAT THE PETIT JURY RESULT IN ANY PARTICULAR

 4  REPRESENTATION, BUT JUST REQUIRES THAT THE JURY PANEL FROM WHICH

 5  THE PETIT JURY IS ULTIMATELY DRAWN IS FAIR AND REPRESENTATIVE.

 6          **THE COURT:**  MR. CHAZIN, I AM GOING TO HAVE TO LEAVE

 7  IT TO YOU.  I DON'T HAVE THE FACILITIES TO DO THE KIND OF

 8  DEMOGRAPHICS THAT YOU WANT.  I'M GOING TO HAVE TO LEAVE IT TO

 9  YOU MAKE A RECORD HOWEVER -- YOU FILE YOUR OWN DECLARATION.

10          **MR. CHAZIN:**  OKAY.

11          **THE COURT:**  ANYTHING MORE AT THE SIDEBAR?

12          **MR. LEUNG:**  NOTHING FROM THE GOVERNMENT, YOUR HONOR.

13          **MR. CHAZIN:**  NO, THANK YOU.

14                  (SIDEBAR DISCUSSION CONCLUDED.)

15          **THE COURT:**  LADIES AND GENTLEMEN, PLEASE JUST SIT

16  THERE IN STONEY SILENCE.  I APOLOGIZE FOR THIS, BUT IT'S

17  NECESSARY.  THE LAWYERS WILL ACT AS QUICKLY AS THEY CAN TO

18  EXERCISE THEIR PEREMPTORY CHALLENGES.  WHEN THAT IS ALL DONE, WE

19  WILL ANNOUNCE WHO IS IN AND WHO IS OUT.

20          **MR. CHAZIN:**  EXCUSE ME, YOUR HONOR.  IS IT POSSIBLE

21  WE COULD HAVE AN OFF-THE-RECORD SIDEBAR?

22          **THE COURT:**  OFF THE RECORD?

23          **MR. CHAZIN:**  I DON'T THINK IT NEEDS TO BE ON THE

24  RECORD.  THAT WAY IT WILL SAVE A MINUTE OR TWO.

25          **THE COURT:**  I'LL HAVE TO SEE.  IS THAT ALL RIGHT WITH

1    THE GOVERNMENT?

2              **MR. LEUNG:**  IT DEPENDS, YOUR HONOR.

3              **THE COURT:**  I'LL LET YOU SAY THE FIRST SIX WORDS.  IF

4    I THINK NEED IT ON THE RECORD --

5              **MR. CHAZIN:**  IT'S JUST PROCEDURE.

6                        (DISCUSSION HELD OFF THE RECORD.)

7              **MR. CHAZIN:**  YOUR HONOR, COULD WE AGAIN, ON A

8    PROCEDURAL MATTER?

9              **THE COURT:**  SHOULD WE HAVE THE COURT REPORTER?

10             **MR. CHAZIN:**  I DON'T THINK IT'S NECESSARY.

11             **MR. LEUNG:**  NO, YOUR HONOR.

12             **THE COURT:**  ALL RIGHT.

13                       (DISCUSSION HELD OFF THE RECORD.)

14             **THE COURT:**  COUNSEL, I'M GETTING A HAND SIGNAL FROM

15   ONE OF THE JURORS THAT SHE NEEDS TO USE THE FACILITY.  CAN WE

16   EXCUSE MS. YU TO RUN DOWN THE HALL?  DO WE NEED HER HERE?  CAN

17   WE EXCUSE HER FOR THE MOMENT WHILE YOU CONTINUE TO DO YOUR WORK?

18             **MR. LEUNG:**  ABSOLUTELY, YOUR HONOR.

19             **MR. CHAZIN:**  DEFINITELY.

20             **THE COURT:**  ALL RIGHT.  WE'LL SEE YOU BACK HERE IN A

21   FEW MINUTES.

22             THE RECORD WILL REFLECT THAT MS. YU HAS RETURNED.

23             **MR. CHAZIN:**  YOUR HONOR, WE'RE DONE WITH ALL BUT THE

24   ALTERNATES.

25             **THE COURT:**  LET ME SEE WHAT YOU'VE DONE SO FAR.  YOU

1    TWO SHOULD BE ABLE TO IMAGINE WHO IS LEFT MENTALLY AND BE ABLE

2    TO GO AHEAD AND DO YOUR CHOICES HERE.  YOU UNDERSTAND PRIORITY

3    OF THE SEATING AND SO FORTH.

4              SO I THINK YOU SHOULD JUST GO AHEAD AND DO IT NOW IF

5    YOU HAVE AN OBJECTION TO THAT.  IF YOU WANT, I CAN GO AHEAD AND

6    SWEAR IN THE 12, AND THEN YOU CAN MAKE YOUR SELECTIONS.  IT

7    WOULD STILL COME OUT THE SAME WAY.

8              **MR. LEUNG:**  YES.

9              **MR. CHAZIN:**  SO WE CAN DO IT NOW?

10             **THE COURT:**  I GUESS IT'S TO THE GOVERNMENT'S TURN.

11             LADIES AND GENTLEMEN, WE'RE GETTING NEAR THE END

12   HERE.

13             ALL RIGHT.  LET ME ASK COUNSEL.  IS THERE ANY LEGAL

14   CHALLENGE TO ANY OF THE EXERCISE OF THESE PEREMPTORIES?

15             **MR. LEUNG:**  NONE FROM THE GOVERNMENT, YOUR HONOR.

16             **MR. CHAZIN:**  NO, YOUR HONOR.

17             **THE COURT:**  ALL RIGHT.  WHAT I WOULD THEN PROPOSE TO

18   DO, GIVEN THE WAY EVERYONE IS SEATED --

19             **MR. CHAZIN:**  I'M SORRY.  I DIDN'T QUITE -- I THINK

20   THERE IS ONE I DO.

21             **THE COURT:**  ALL RIGHT.  THEN LET'S GO TO THE SIDEBAR

22   AND HEAR YOUR CHALLENGE.

23                  (SIDEBAR DISCUSSION HELD AS FOLLOWS:)

24             **THE COURT:**  ALL RIGHT.  LET'S HEAR THE CHALLENGE.

25             **MR. CHAZIN:**  YOUR HONOR, BASED ON THE CHALLENGES BY

1   THE GOVERNMENT, WE WOULD SUBMIT THAT THERE IS AN INORDINATE

2   NUMBER OF HISPANICS THAT WERE DISQUALIFIED BY THE GOVERNMENT.

3            **THE COURT:**  WHO DID THE GOVERNMENT DISQUALIFY THAT

4   ARE HISPANIC?

5            **MR. CHAZIN:**  NUMBER 13, NUMBER 15, NUMBER 17, AND

6   THERE'S ONE OTHER WHO IS A MINORITY, NUMBER 23 IN PARTICULAR.

7   BUT, IN PARTICULAR, THE HISPANICS.  AND I DON'T BELIEVE THAT

8   THERE'S VALID OR LEGAL BASIS TO JUSTIFY CHALLENGES OTHER THAN

9   THE FACT THAT THEY WERE DISQUALIFIED BASED UPON THEIR RACE.

10            **THE COURT:**  FIRST OF ALL, TORREGROSA IS PROBABLY

11   HISPANIC.  SO IS MS. ORTA, WHO WE'VE TALKED ABOUT BEFORE.  BUT

12   THE OTHERS DON'T SEEM TO ME TO BE HISPANIC.  I DON'T UNDERSTAND

13   WHY YOU WOULD SAY THAT.

14            **MR. CHAZIN:**  WELL, THE OTHER ONE IS NUMBER 15,

15   MR. HERDA, WHICH IS MY UNDERSTANDING -- PERHAPS HE DOESN'T LOOK

16   LIKE IT, BUT THAT, I BELIEVE, IS A HISPANIC NAME.

17            **THE COURT:**  HE CERTAINLY DOES NOT LOOK OR ACT IN ANY

18   WAY HISPANIC TO ME.  WHAT IS THE OTHER ONE?  WHO ELSE DO YOU

19   THINK IS HISPANIC ON HERE?

20            **MR. CHAZIN:**  THE THREE I JUST MENTIONED.

21            **THE COURT:**  ALL RIGHT.  FIRST, I OUGHT TO SAY THAT

22   YOU, YOURSELF HAVE EXCLUDED SYLVIA REALI, JAN DIAZ AND GARY

23   CUEVAS.  SO THOSE CERTAINLY HAVE HISPANIC NAMES.  BUT BE THAT AS

24   IT MAY, I'M GOING TO ASK THE GOVERNMENT FOR ITS REASONS FOR THE

25   THREE THAT HAVE BEEN IDENTIFIED.

```
 1          MR. LEUNG:  YOUR HONOR, FIRST, AS A MATTER OF NOTE,
 2   THE GOVERNMENT ISN'T SURE IF MS. TORREGROSA IS -- NUMBER 13 IS
 3   HISPANIC.  SHE INDICATED HER FIRST LANGUAGE WAS GERMAN, AND IT'S
 4   NOT APPARENT TO US THAT SHE IS HISPANIC.  REGARDLESS, THE
 5   GOVERNMENT STRUCK HER BECAUSE SHE WAS THE ONE WHO INDICATED SHE
 6   MAY HAVE PROBLEMS ACCEPTING SOMEONE ELSE'S TRANSLATION.
 7          THE COURT:  WHAT'S WRONG WITH THAT AS A REASON, A
 8   RATIONAL GOOD FAITH BASIS FOR EXERCISING A PEREMPTORY,
 9   MR. CHAZIN?
10          MR. CHAZIN:  I DON'T THINK IN AND OF ITSELF IT IS.  I
11   WILL CONCEDE THAT.
12          THE COURT:  I DISAGREE.  I THINK IT IS PERFECTLY
13   LEGITIMATE.  IT HAS NOTHING TO DO WITH HER RACE.  IT HAS TO DO
14   WITH HER FACILITY IN FOREIGN LANGUAGES.  THAT'S A LEGITIMATE
15   CONDITION FOR THE GOVERNMENT, OR FOR YOU, FOR THAT MATTER.
16   THAT'S A GOOD FAITH BASIS.  I ACCEPT THAT.  ALL RIGHT.
17          MR. LEUNG:  TO CLARIFY, YOUR HONOR, MS. TORREGROSA
18   INDICATED SHE MAY HAVE DIFFICULTY ACCEPTING SOMEONE ELSE'S
19   TRANSLATION IF IT CONTRADICTS WITH HER OWN UNDERSTANDINGS.  THAT
20   WAS ONE OF THE PRINCIPAL CONCERNS THE GOVERNMENT HAD.
21          WITH RESPECT TO MR. WOLFGANG HERDA, THE GOVERNMENT IS
22   NOT REALLY SURE WHY MR. CHAZIN CHARACTERIZES HIM AS HISPANIC.
23   IN ANY EVENT, MR. HERDA WAS THE ONE WHO EXPRESSED A LITTLE BIT
24   OF THE CHAGRIN AT GEORGE BUSH'S ILLEGALIZATION OF GAMBLING.  SO,
25   WE ARE CONCERNED PERHAPS THAT WOULD SHOW SOME BIAS AGAINST THE
```

1   GOVERNMENT.

2           **THE COURT:**  WHY ISN'T THAT A RATIONAL AND LEGITIMATE

3   BASIS FOR THE EXERCISE OF THESE PEREMPTORIES, MR. CHAZIN?

4           **MR. CHAZIN:**  I THINK HE QUALIFIED THAT IN HIS FURTHER

5   RESPONSES THAT WERE POSED TO HIM.

6           **THE COURT:**  HE DID.  BUT, NONETHELESS, HE DID BRING

7   IT OUT.  I THINK HE WAS THE ONLY ONE IN THE ROOM WHO SAID HE HAD

8   SOME CONCERN OR GRIEVANCE AGAINST THE FEDERAL GOVERNMENT.  SO I

9   THINK THAT'S A LEGITIMATE BASIS FOR EXERCISE OF THE PEREMPTORY.

10  SO THAT OBJECTION IS OVERRULED.

11          HOW ABOUT MS. ORTA?

12          **MR. LEUNG:**  FINALLY, WE HAVE DISCUSSED MS. ORTA IN

13  DETAIL.  THE GOVERNMENT IS CONCERNED ABOUT HER FACILITY WITH THE

14  ENGLISH LANGUAGE.  SHE IS ENROLLED IN ESL CLASS.  SHE ALSO MADE

15  IT PLAIN FOR THE RECORD SHE IS NOT COMFORTABLE SERVING ON THE

16  JURY, AS EVIDENCED BY THE SEVERAL OCCASIONS WHEN SHE SPOKE UP IN

17  FRONT OF EVERYONE AND SPECIFICALLY ADVISED THE COURT AND COUNSEL

18  SHE DOESN'T FEEL COMFORTABLE.

19          **THE COURT:**  ISN'T THAT ALL TRUE, MR. CHAZIN?

20          **MR. CHAZIN:**  THE RECORD, I THINK, SPEAKS FOR ITSELF,

21  YOUR HONOR.

22          **THE COURT:**  ALL RIGHT.  THAT OBJECTION IS OVERRULED.

23  THE COURT FINDS THAT MS. ORTA HAS A SIGNIFICANT LANGUAGE

24  DIFFICULTY THAT SHE HERSELF HAS EXPRESSED, THAT SHE IS RELUCTANT

25  TO SERVE AND QUESTIONS HER OWN ABILITY TO SERVE AND BE FAIR, AND

1   THERE'S NOTHING WRONG WITH TAKING HER AT HER WORD AND EXERCISING

2   A PEREMPTORY.  IT WAS A CLOSE CALL WHETHER SHE SHOULD BE

3   EXCLUDED FOR CAUSE, BUT BECAUSE SHE WAS HISPANIC, I DIDN'T DO

4   THAT TO AVOID AN ISSUE.

5          ALL OF THOSE OBJECTIONS ARE OVERRULED.  UNDER *BATSON*,

6   DO I HAVE TO MAKE ANY MORE FINDINGS?

7          **MR. LEUNG:**  I THINK THAT'S SUFFICIENT.

8          **MR. CHAZIN:**  YOUR HONOR, THERE'S A COUPLE OF THINGS I

9   WANT TO CLEAR UP.

10          NUMBER ONE WOULD BE MS. DIAZ, ALTHOUGH SHE HAS THAT

11  LAST NAME, DOESN'T APPEAR TO BE HISPANIC.  I THINK SHE TOOK HER

12  HUSBAND'S NAME.  ALSO AS MS. REALI INDICATED, SHE WAS ITALIAN, I

13  BELIEVE.  AND ALSO MS. SPATH IS ASIAN.  AND THAT MAKES FOUR OUT

14  OF THE SEVEN CHALLENGES -- OR FOUR OF THE SIX CHALLENGES FOR THE

15  NON-ALTERNATE JURORS THAT ARE MEMBERS OF THE MINORITY THAT WERE

16  CHALLENGED BY THE GOVERNMENT.

17          **THE COURT:**  WHY DID YOU CHALLENGE MS. SPATH?

18          **MR. LEUNG:**  WE CHALLENGED MS. SPATH BECAUSE SHE WAS

19  INVOLVED IN A HIT AND RUN ACCIDENT AND WASN'T REALLY SOLVED.  WE

20  WERE CONCERNED SHE MAY HAVE RESIDUAL RESERVATIONS ABOUT LAW

21  ENFORCEMENT BASED ON THE FACT HER OLD CASE, IN WHICH SHE WAS A

22  VICTIM, WASN'T RESOLVED.  OBVIOUSLY, SHE SAID SHE DOESN'T HOLD

23  ANY BIAS AS A RESULT.  WE AGREE THAT SHE IS NOT A FOR-CAUSE

24  CHALLENGE, BUT OUT OF AN ABUNDANCE OF CAUTION, THE GOVERNMENT

25  DECIDED TO EXECUTE IN GOOD FAITH A PEREMPTORY IN ORDER TO REMOVE

1  HER.

2  **THE COURT:**  ASSUMING SHE IS ASIAN, WHY ISN'T THAT

3  CORRECT?  WHY ISN'T THAT A GOOD FAITH BASIS, MR. CHAZIN?

4  **MR. CHAZIN:**  I AM PREPARED TO SUBMIT IT ON -- I DON'T

5  KNOW THAT THAT'S AN ADEQUATE -- NECESSARILY AN ADEQUATE REASON.

6  BUT I'M PREPARED TO SUBMIT IT.

7  **THE COURT:**  I THINK THE GOVERNMENT HAS ARTICULATED A

8  RATIONAL, LEGITIMATE AND GOOD FAITH BASIS FOR CONCERN AND

9  POTENTIAL PREJUDICE, DESPITE WHAT SHE HAS SAID DURING THE VOIR

10  DIRE.

11  AND HAVING SAT THROUGH THIS ENTIRE VOIR DIRE, THE

12  COURT FINDS THAT THESE ARE LEGITIMATE AND PROPER EXERCISES, AND

13  I AM CONVINCED THAT THERE IS ABSOLUTELY NO RACIAL ANIMUS AT ALL

14  MOTIVATING ANY OF THESE EXERCISE OF PEREMPTORIES BY THE

15  GOVERNMENT.  SO THE *BATSON* CHALLENGE IS REJECTED.

16  ANYTHING MORE?

17  **MR. CHAZIN:**  NO, YOUR HONOR.

18  **MR. LEUNG:**  NOTHING, YOUR HONOR.

19  (SIDEBAR DISCUSSION CONCLUDED.)

20  **THE COURT:**  ALL RIGHT.  I WOULD NORMALLY DO THIS IN

21  THE REVERSE ORDER, BUT I WILL DO IT THE WAY THAT WILL BE BEST

22  FOR YOU, SINCE YOU HAVE BEEN HERE ALL DAY.  I'M GOING -- IF I

23  READ YOUR NAME OUT, THAT MEANS YOU SHOULD PICK UP YOUR

24  BELONGINGS AND MOVE TO THE BACK OF THE ROOM.  DON'T LEAVE YET.

25  JUST PICK UP YOUR BELONGINGS AND GO TO THE BACK OF THE ROOM AND

```
 1   HAVE A SEAT.  ALL RIGHT.  DON'T TRY TO READ INTO THIS WHO IT WAS
 2   WHO EXCUSED YOU.  IT WOULD BE FUTILE TO TRY TO DO THAT.
 3            BRUCE RUCKER.  ALICE TORREGROSA.  WOLFGANG HERDA,
 4   TERESA ORTA.
 5            PLEASE, ALL OF YOU GO BACK TO THE BACK OF THE ROOM
 6   AND HAVE A SEAT.
 7            TAMMY SPATH.  DAVID MORGAN.  RUTH NATHAN.  LINDA
 8   PERRY.  LORING BROWN.  WHERE'S LORING BROWN?  THERE WE GO.  ANN
 9   SNYDER.  SYLVIA REALI.  ANN SIMS.  JAN DIAZ.  GARY CUEVAS.
10   HEIDE MILLER.  WHERE IS HEIDE MILLER?
11            PROSPECTIVE JUROR MILLER:  OVER HERE.
12            THE COURT:  JEREMIAH NOVELLY.  ROBERT FUGELSETH.
13            COUNSEL, DID I READ THAT OUT CORRECTLY?
14            MR. LEUNG:  YES, YOUR HONOR.
15            MR. CHAZIN:  YES.  YES, YOUR HONOR.
16            THE COURT:  ALL RIGHT.  NOW, ALL OF YOU PLEASE HAVE A
17   SEAT IN THE BACK OF THE ROOM.  WE'RE GETTING CLOSE TO THE END.
18   ALL RIGHT.
19            WHAT I'M GOING TO ASK ON OUR FRONT ROW, WOULD ALL OF
20   YOU SCOOT DOWN TO -- SCOOT DOWN, AND AT THIS POINT, REALLY, I
21   DON'T THINK IT MATTERS, BUT LET'S -- OKAY.  THE TWO GENTLEMEN IN
22   THE BACK, PLEASE GO SIT IN THE FRONT ROW BY MS. YU.  AND,
23   MR. LIU, YOU SIT BY MS. YU.  AND THEN, MS. MONTGOMERY, YOU GET
24   TO GO SIT IN THAT LAST SEAT IN THE FRONT ROW.  MR. MILLS, YOU
25   GET TO HAVE THE SEAT IN THE BACK ROW THE CLOSEST TO THE COURT
```

1   REPORTER.  OKAY.  OUR NURSE -- DON'T TELL ME.  MS. PERRY, RIGHT?

2           **PROSPECTIVE JUROR BUETTELL:**  BUETELL.

3           **THE COURT:**  SAY IT AGAIN.

4           **PROSPECTIVE JUROR BUETTELL:**  BUETELL.

5           **THE COURT:**  OH, YES.  BUETELL.

6           MS. BUETTELL, YOU ARE NEXT.  PLEASE GO HAVE A SEAT

7   BACK THERE.

8               AND YOU ARE MS. PALHEYGI, RIGHT?  YOU GET TO GO NEXT.

9   AND THEN MS. CLARKE, RIGHT?  YOU'RE NEXT.  MS. YOSHI, YOU WILL

10  BE NEXT.  NOW, MS. JOHNSON AND MR. GEPHART, YOU TWO JUST STAY

11  RIGHT WHERE YOU ARE FOR THE MOMENT.

12              ALL RIGHT, COUNSEL, THE WAY I SEE THIS, THESE 12 WILL

13  BE THE PRIMARY JURY, CORRECT?

14          **MR. LEUNG:**  THAT IS CORRECT, YOUR HONOR.

15          **MR. CHAZIN:**  THAT'S CORRECT, YOUR HONOR.

16          **THE COURT:**  ALL RIGHT.  I ASK YOU ALL 12 TO PLEASE

17  STAND AND RAISE YOUR RIGHT HAND.

18                  (THE JURY WAS SWORN.)

19          **THE COURT:**  VERY WELL, THANK YOU.  AND

20  CONGRATULATIONS.  PLEASE HAVE A SEAT.

21              MS. JOHNSON, AND MR. GEPHART, WOULD YOU TWO --

22  MS. JOHNSON, YOU TAKE THE NEXT SEAT, AND MR. GEPHART, YOU GET

23  THE LAST SEAT IN THE CORNER.  YOU TWO WILL BE OUR ALTERNATE

24  JURORS.  THAT MEANS YOU COULD BE CALLED IN TO BE SWORN INTO THE

25  MAIN JURY, AND YOUR DUTIES WILL BE EXACTLY THE SAME AS THE

1   REGULAR JURY UP UNTIL VERY CLOSE TO THE END, WHEN I WILL GIVE

2   YOU A SLIGHTLY DIFFERENT INSTRUCTION.  BUT, FOR THE TIME BEING,

3   IT'S EXACTLY THE SAME.

4           WE NEED TO ASK YOU TWO TO STAND, AND RAISE YOUR RIGHT

5   HAND AND TAKE THE OATH.

6                   (THE ALTERNATE JURORS WERE SWORN.)

7           **THE COURT:**  VERY WELL.  HAVE A SEAT.

8           NOW, HERE'S WHAT'S GOING TO HAPPEN.  I'M GOING TO

9   GIVE YOU ABOUT A ONE-MINUTE ADMONITION, SEND YOU BACK INTO THE

10  JURY ROOM, WHERE DAWN WILL MEET YOU TO GIVE YOU SOME BADGES AND

11  THINGS.

12          YOU ARE NOW DEPUTIZED BY THE UNITED STATES OF AMERICA

13  TO DECIDE THIS CASE.  JUST LIKE I GET A CREDENTIAL, YOU'VE GOT

14  TO GET A CREDENTIAL.  YOU ARE GOING TO BE BEHIND THE CURTAIN

15  NOW, INSTEAD OF OUT FRONT, AND YOU COME OUT HERE AND HEAR THE

16  EVIDENCE AND DECIDE THIS CASE.

17          BUT I NEED TO GIVE YOU A FEW ADMONITIONS AGAIN.  I'VE

18  ALREADY SAID MOST OF THEM.

19          YOU ARE NOT TO DISCUSS THIS CASE WITH ANYBODY OR

20  PERMIT ANYBODY TO DISCUSS IT WITH YOU UNTIL YOU RETIRE TO THE

21  JURY ROOM AT THE END OF THE CASE.  YOU SIMPLY ARE NOT TO TALK

22  ABOUT THE CASE.

23          AT THE TIME THAT DELIBERATIONS START, IT WILL BE YOUR

24  DUTY TO TALK, TALK, TALK ABOUT THE CASE, BUT NOT YET.  YOU HAVE

25  TO KEEP MUM ABOUT IT FOR THE TIME BEING.  ALL RIGHT?

1          SECOND, DON'T READ OR LISTEN TO ANYTHING TOUCHING ON

2   THIS CASE IN ANY WAY.  IF SOMEBODY COMES UP TO YOU AND TRIES TO

3   TALK TO YOU ABOUT THIS CASE, YOU TELL ME.  THEY WILL BE IN BIG

4   TROUBLE.  SO YOU MUST TELL ME IF SOMEBODY TRIES TO TALK TO YOU

5   ABOUT THE CASE.

6          THIRD, DO NOT TRY TO DO ANY RESEARCH OR MAKE ANY

7   INVESTIGATION ABOUT THE CASE ON YOUR OWN.  THAT INCLUDES NO

8   INTERNET, NO GOOGLE, NO NOTHING LIKE THAT.  PLEASE.  DOES

9   EVERYONE HEAR ME ON THIS?  BECAUSE LAST TIME THIS JUROR WHO WAS

10  A VERY COMPETENT YOUNG WOMAN, I COULDN'T BELIEVE IT.  SHE WAS

11  WALKING DOWN THE STREET GOOGLING SOMETHING ON HER BLACKBERRY

12  ABOUT OUR CASE.  YOU CANNOT DO THAT.  DO YOU ALL UNDERSTAND

13  THAT?  ALL RIGHT.  LET'S NOT DO THAT.  ALL RIGHT.  THANK YOU.

14         FINALLY, KEEP AN OPEN MIND, AND DO NOT FORM ANY

15  OPINION ABOUT THE CASE UNTIL ALL THE EVIDENCE IS IN.  I HAVE

16  SEEN CASES WHERE THE MOST IMPORTANT THING YOU HEARD WAS THE LAST

17  THING YOU HEARD.  YOU MUST KEEP AN OPEN MIND.  THERE ARE ALWAYS

18  TWO SIDES.  KEEP AN OPEN MIND.

19         ALL RIGHT.  HERE'S THE THING, I'M GOING TO HAVE SOME

20  MORE ADMONITIONS FOR YOU TOMORROW.  IS THERE ANYTHING MORE I

21  NEED GIVE BY WAY OF ADMONITIONS BEFORE THE JURY LEAVES FOR THE

22  NIGHT?

23         **MR. LEUNG:**  NOT AS FAR AS THE GOVERNMENT IS

24  CONCERNED, YOUR HONOR.

25         **MR. CHAZIN:**  NO, THANK YOU, YOUR HONOR.

1       **THE COURT:**  HERE'S WHAT WE WILL NOW DO.  I'M GOING TO

2  ASK YOU TO STAND AND FOLLOW DAWN TOLAND INTO YOUR NEW HOME AWAY

3  FROM HOME, AND SHE'S GOING TO GET YOU ORIENTED.

4       WHILE YOU'RE GONE, I AM GOING TO THANK ALL THE REST

5  OF OUR GOOD CITIZENS, AND THEN WE'LL SEE YOU IN THE MORNING AT

6  7:45, 7:45, 7:45.  GOT IT?  OKAY.

7       ALL RIGHT.  PLEASE CLOSE THAT DOOR AS THE LAST ONE

8  GOES THROUGH.  GOT IT?  OKAY.

9            (THE JURY EXITED THE COURTROOM.)

10      **THE COURT:**  ALL RIGHT.  THE REST OF YOU, I WANT TO

11 THANK YOU FOR YOUR WILLINGNESS TO SERVE YOUR COUNTRY AND TO BE A

12 JUROR IN THIS CASE.  WE DIDN'T -- YOU KNOW, THE ONES THAT MADE

13 IT TO THE END HERE, ALL OF YOU WOULD HAVE BEEN GOOD JURORS, BUT

14 WE DON'T NEED 32, WE NEED TWELVE PLUS TWO.  SO THERE'S NO POINT

15 IN INCONVENIENCING SO MANY PEOPLE.  WE -- REALLY, THIS IS THE

16 WAY THE PROCESS OUGHT TO WORK.  IT'S A SHAME BECAUSE YOU'VE

17 INVESTED THIS ENTIRE DAY, AND NOW YOU WON'T GET TO PARTICIPATE

18 ANY LONGER, AND I REGRET THAT.

19      BUT, ON THE OTHER HAND, I AM HAPPY TO SAY YOU ARE

20 FREE NOW TO GO BACK TO YOUR NORMAL LIVES WITH THE SATISFACTION

21 THAT YOU ARE WILLING TO STEP FORWARD AND SERVE YOUR COUNTRY AND

22 DO A GOOD DEED FOR THE CITIZENRY BY DOING YOUR CIVIC DUTY.  I

23 VERY MUCH APPRECIATE THAT.  AND ON BEHALF OF THE U.S. DISTRICT

24 COURT AND YOUR COUNTRY, I THANK YOU FOR THAT.

25      AT THIS TIME, YOU ARE FREE TO GO BACK TO THE JURY

1   ASSEMBLY ROOM.  YOU'RE DONE.  I THINK THEY'LL GIVE YOU WHATEVER

2   FORMS AND MONEY AND VOUCHERS YOU WILL NEED.

3           THANK YOU VERY MUCH.

4           ALL RIGHT.  NOW, COUNSEL, I THINK WE'RE AT THE END.

5   IS THERE ANYTHING ELSE YOU NEED TO BRING UP WITH ME, OR SHALL I

6   JUST SAY I'LL SEE YOU AT 7:30 IN THE MORNING?

7           **MR. LEUNG:**  YOUR HONOR, EARLIER THIS MORNING

8   MR. CHAZIN LISTED HIS POTENTIAL WITNESSES.  HE LEFT OFF ANNA

9   RAMOS, 1211, FBI AGENTS LIZ WICKMAN AND FBI AGENT SANDRA FLORES,

10  WHO HE HAD PREVIOUSLY INDICATED HE WOULD SUBPOENA, AND FOR WHOM

11  THE GOVERNMENT WOULD MOVE TO QUASH.  I'M JUST WONDERING IF

12  MR. CHAZIN INTENDS TO PURSUE THOSE SUBPOENAS?

13          **THE COURT:**  MR. CHAZIN, WHY DIDN'T YOU BRING THOSE

14  UP?  WHAT IF IT TURNS OUT ONE OF THE JURORS KNOWS ONE OF THOSE

15  PEOPLE?

16          **MR. CHAZIN:**  THAT WAS AN OVERSIGHT ON MY PART, YOUR

17  HONOR.  I APOLOGIZE.  BUT AS FAR AS MR. MARTINEZ, WELL, THEY HAD

18  NAMED HIM AS A WITNESS.  I WAS KIND OF RELYING ON THAT AS FAR AS

19  THAT GOES.  BUT THE OTHER ONES, I WOULD HAVE TO SAY THAT'S AN

20  OVERSIGHT.

21          **THE COURT:**  I HOPE IT DOESN'T BECOME AN ISSUE,

22  BECAUSE IT DOES HAPPEN ONCE IN A WHILE THAT A JUROR KNOWS

23  SOMEONE, JUST LIKE ONE OF THE POSSIBLE JURORS KNEW YOU.

24          SO ANYTHING MORE?

25          **MR. LEUNG:**  THAT'S IT, YOUR HONOR.

1    **MR. CHAZIN:** YOUR HONOR, THERE ARE TWO ISSUES I

2    WANTED TO RAISE. ONE IS THE GOVERNMENT THIS MORNING GAVE ME

3    THEIR EXHIBITS. ONE OF THEM IS A -- ALTHOUGH THEY DID DISCLOSE

4    A COUPLE OF PHOTOS TO ME EARLIER, ONE IS OF MR. GONZALEZ. I

5    DON'T KNOW WHAT THE RELEVANCE NECESSARILY OF HAVING A PICTURE OF

6    HIM WOULD BE IN THIS CASE, PARTICULARLY THIS ONE WHICH LOOKS

7    SOMEWHAT IMPOSING. AND SO I WOULD --

8    **THE COURT:** WHAT IS THE PROFFER ON MR. GONZALEZ?

9    **MR. LEUNG:** YOUR HONOR, MR. GONZALEZ AND MR. NOCHEZ

10   TOGETHER WENT TO STEAL CARS, AND, AS A RESULT, THE TESTIMONY

11   WILL DETAIL THEIR JOINT ACTIVITIES. MR. GONZALEZ OBVIOUSLY HAS

12   PLED GUILTY, BUT THE PHOTOGRAPH IS USEFUL BECAUSE THE JURORS

13   COULD SEE THERE'S A REAL PERSON THERE.

14   **THE COURT:** WHO IS GOING TO IDENTIFY HIM?

15   **MR. LEUNG:** IT COULD EITHER BE BOTH MR. MARTINEZ AND

16   THE UNDERCOVER OFFICER.

17   IN ADDITION, YOUR HONOR, WE HAD SENT MR. CHAZIN TWO

18   SEPARATE PHOTOGRAPHS. WE CHOSE THE ONE THAT SEEMED TO US LESS

19   UNFAIRLY -- LESS PREJUDICIAL IN THE SENSE THAT THE OTHER

20   PHOTOGRAPH HAD MR. GONZALEZ IN A JUMPSUIT.

21   **THE COURT:** I DON'T THINK THE ONE YOU HELD UP IS

22   PREJUDICIAL. SHOW IT TO ME AGAIN. WHAT'S SO BAD ABOUT THAT?

23   **MR. CHAZIN:** THE OTHER THING, YOUR HONOR, IS THERE'S

24   GOING TO BE VIDEO SHOWN OF MR. GONZALEZ. I WOULD SUBMIT THAT

25   SHOULD BE ADEQUATE SORT OF A PICTURE.

1          **THE COURT:**  THAT PICTURE LOOKS OKAY.  THERE'S

2     PICTURES ON FACEBOOK THAT LOOK LIKE THAT.  I DON'T THINK THERE'S

3     ANYTHING WRONG WITH THAT PICTURE.  IF THE NINTH CIRCUIT

4     DISAGREES, MORE POWER TO THEM, BUT TO ME IT LOOKS OKAY.

5          **MR. CHAZIN:**  I WOULD SUBMIT THE ACTUAL VIDEOS THEY'RE

6     INTRODUCING ANYWAY WILL SHOW MR. GONZALEZ, AND, THEREFORE, IT'S

7     CUMULATIVE.  I DON'T SEE THE NEED NECESSARILY.

8          **THE COURT:**  THOSE WILL BE GRAINY.  NO.  I CAN'T --

9     THE GOVERNMENT CAN TRY ITS CASE THE WAY THEY WANT.  THAT'S NOT

10    PREJUDICIAL.

11         WHAT'S NEXT?

12         **MR. CHAZIN:**  THE ONLY OTHER ISSUE OUTSTANDING, YOUR

13    HONOR, IS KIND OF LOOKING AHEAD, WE HAVE THE ISSUE THAT I RAISED

14    EARLIER ABOUT OUR ATTEMPTS TO GET THE TRANSCRIPTION DONE OF THE

15    AUDIO RECORDING FROM THE JAIL OF MR. MARTINEZ AND HIS COMMON-LAW

16    WIFE, AND THE ISSUE REGARDING THE ORDER OF WITNESSES.

17         **THE COURT:**  WELL, ON THE ONE ABOUT THE RECORDING, THE

18    GOVERNMENT HAS DIRECTED YOU TO THE PERTINENT PARTS.  THAT'S

19    WHERE YOU SHOULD GIVE YOUR PRIORITY.  BUT IF YOU WANT TO GET THE

20    WHOLE THING DONE, THEN GO HUCKELY BUCK AND GET YOUR TRANSLATOR

21    GOING ON IT.  TELL YOUR TRANSLATOR THE COURT WANTS HER TO GIVE

22    IT PRIORITY.  I'M NOT GOING TO PUSH ANY PANIC BUTTONS UNTIL

23    THERE'S A NEED TO.  THEN WE'LL SEE WHICH WAY IT COMES.

24         **MR. CHAZIN:**  ALL I'M SAYING IS ASSUMING WE ARE GOING

25    TO GET INTO TESTIMONY TOMORROW, WHICH, CLEARLY, WE ARE, THE

1  GOVERNMENT HAS INDICATED THEIR INTENTION TO CALL MR. MARTINEZ

2  FIRST THING.  IF THAT'S THE CASE, WE ARE NOT GOING TO BE ABLE TO

3  PREPARE TO FULLY CROSS-EXAMINE.

4          **THE COURT:**  THEN I'LL LET YOU BRING HIM BACK.  I'LL

5  LET YOU START YOUR CROSS.  IF YOU WANT TO DEFER YOUR ENTIRE

6  CROSS UNTIL LATER ON, I WILL LET YOU DO THAT.  THAT'S GOT TO BE

7  REASONABLE GIVEN THE CIRCUMSTANCE OF THE RECORDING.  BUT THAT'S

8  THE BEST I CAN DO.  THAT'S WORKABLE.

9          **MR. CHAZIN:**  WELL, AS I INDICATED EARLIER, WE DID

10  NEED -- WE DO NEED TO DO FOLLOW-UP.  OUR REQUEST IS FOR A

11  CONTINUANCE UNTIL IT IS PREPARED SO WE CAN BE PROPERLY PREPARED

12  AND PRESENT MR. NOCHEZ'S CASE AND DEFEND HIM PROPERLY TO THE

13  UTMOST OF OUR ABILITY, WHICH IS WHAT WE'RE REQUIRED TO DO.  WE

14  ARE INSTEAD REQUESTING A CONTINUANCE.

15          **THE COURT:**  MOTION DENIED.  WE'VE GONE OVER THIS

16  SEVERAL TIMES.  FOR THE REASONS ALREADY STATED.  NOTHING NEW HAS

17  BEEN BROUGHT UP.  THAT'S WITHOUT PREJUDICE TO ASKING FOR A SHORT

18  CONTINUANCE DURING THE MIDDLE OF THE TRIAL IF CIRCUMSTANCES THEN

19  WARRANT, BUT RIGHT NOW IT DOESN'T WARRANT IT.

20          WE HAVE A LOT OF GOOD WORK AHEAD OF US THAT WE CAN

21  DO.  I HAVE CONFIDENCE THAT YOU AND YOUR TRANSLATOR ARE GOING TO

22  GET THROUGH THAT THING HUCKELY BUCK, AND IT WILL BE A NON-ISSUE.

23          LET'S GO.  WHAT'S YOUR NEXT ISSUE?

24          **MR. CHAZIN:**  THAT'S ALL I HAVE RIGHT NOW.

25          **MR. LEUNG:**  NOTHING FROM THE GOVERNMENT, YOUR HONOR.

1          **THE COURT:**  ALL RIGHT.  HOW MUCH TIME DO YOU WANT FOR

2     YOUR OPENING STATEMENTS?

3          **MR. LEUNG:**  PROBABLY 15 MINUTES, YOUR HONOR.

4          **THE COURT:**  HOW ABOUT YOU, MR. CHAZIN?

5          **MR. CHAZIN:**  I WOULD SAY APPROXIMATELY A HALF AN

6     HOUR.

7          **THE COURT:**  FINE.

8          **MR. CHAZIN:**  MAXIMUM.  THAT WOULD BE MAXIMUM.

9          **THE COURT:**  YOU GET 30 MINUTES.  I'LL GIVE EACH SIDE

10    30 MINUTES.  IF YOU DON'T WANT TO USE IT ALL, THAT'S FINE.

11         BE READY TO GO WITH YOUR FIRST WITNESS RIGHT AWAY.

12    I'LL HAVE SOME SHORT, MAYBE TEN MINUTES WORTH OF PRELIMINARY

13    INSTRUCTIONS FOR THE JURY, THINGS LIKE THE CONSTITUTIONAL

14    RIGHTS, WHICH I'M GOING TO MAKE SURE THEY UNDERSTAND, AND

15    PRESUMPTION OF INNOCENCE AND SO FORTH.  THEN WE'LL GET RIGHT

16    INTO IT.

17         ALL RIGHT.  I THINK WE'RE DONE FOR THE DAY, RIGHT?

18         **MR. CHAZIN:**  TOMORROW WE'LL GO UNTIL --

19         **THE COURT:**  ONE O'CLOCK.  FROM NOW ON IT'S GOING TO

20    BE ONE O'CLOCK UNTIL THE DAY THEY DELIBERATE.  THEN THEY CAN

21    DECIDE TO GO LATER IF THEY WANT.  ALL RIGHT.

22         **MR. CHAZIN:**  THANK YOU.

23         **MR. LEUNG:**  THANK YOU, YOUR HONOR.

24         **THE COURT:**  ALL RIGHT.  SEE YOU TOMORROW.

25              (PROCEEDINGS ADJOURNED.)

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

CERTIFY THAT THE FOREGOING PROCEEDINGS IN CR 08-0730 WHA,

UNITED STATES OF AMERICA V. IVAN CERNA, ET AL., WERE REPORTED

BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER

TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE

FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

COURT FILE.


S/B JOAN MARIE COLUMBINI

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

WEDNESDAY, MARCH 3, 2010